## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

In re:
ZETIA (EZETIMIBE) ANTITRUST
LITIGATION

MDL No. 2:18-md-2836

THIS DOCUMENT RELATES TO:
ALL END PAYER CASES

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION BY DEFENDANTS MERCK & CO., INC.; MERCK SHARP & DOHME CORP.; SCHERING-PLOUGH CORP.; SCHERING CORP.; MSP SINGAPORE CO. LLC; GLENMARK PHARMACEUTICALS, LTD.; AND GLENMARK GENERICS INC., USA, TO DISMISS ALL CLAIMS ASSERTED BY END PAYER PLAINTIFFS**

Defendants Merck & Co., Inc., Merck Sharp & Dohme Corp., Schering-Plough Corp.,

Schering Corp., and MSP Singapore Co. LLC (collectively, "Merck"), and Defendants Glenmark

Pharmaceuticals, Ltd., and Glenmark Pharmaceuticals Inc, USA, incorrectly identified as

Glenmark Generics Inc., USA (collectively, "Glenmark"), submit this memorandum of law in

support of their motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6), all claims asserted in the End Payer Plaintiffs' ("EPPs") Consolidated Class Action

Complaint ("Complaint").[1]

## I.    INTRODUCTION AND OVERVIEW OF ARGUMENT

EPPs seek to represent a nationwide class of indirect purchasers who allegedly overpaid

---

[1]  This brief incorporates by reference the summary of Plaintiffs' allegations and the arguments made in the concurrently filed Motion to Dismiss Direct Purchaser Plaintiffs' Consolidated Class Action Complaint and accompanying documents (the "DPP Motion to Dismiss"). Dismissing EPPs' claims on the basis of the incorporated arguments would dispose of EPPs' Complaint in its entirety.  In addition to the incorporated arguments, this brief asserts jurisdiction-specific arguments for dismissing most claims pleaded by EPPs.

for Zetia® (ezetimibe), a prescription drug used to treat high cholesterol.  EPPs contend that the proposed class overpaid for Zetia® due to the terms of a settlement agreement defendants Merck and Glenmark entered to resolve long-running patent litigation involving Zetia®.  Specifically, EPPs contend that the agreement unreasonably delayed entry of generic competition for Zetia®, leading to class members allegedly paying millions of dollars in overcharges.  (Compl. ¶ 7.)

It is undisputed that EPPs cannot pursue these overcharge damages under the federal Sherman Act because the Supreme Court held in *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), that a plaintiff must purchase a product *directly* from the defendant to have antitrust standing to recover an overcharge under the federal antitrust laws.  Undeterred, EPPs "stitch[] together a hodge-podge of state-law claims" in an "attempt to build a Frankensteinian equivalent" of a federal antitrust claim to "reach the very same conduct but without that formidable obstacle" of *Illinois Brick.  In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 255-56 (D. Conn. 2015).  EPPs do so by pursuing claims under the laws of the District of Columbia, Puerto Rico, and thirty-eight separate states.  But this scattershot approach is unavailing; as reflected in the attached summary Appendices and described in detail below, nearly all of these claims fail as a matter of law.

Because all of EPPs' claims are based on the same fundamentally flawed allegations of anticompetitive conduct alleged by the Direct Purchaser Plaintiffs, EPPs' Complaint should be dismissed in its entirety for the reasons set forth in the DPP Motion to Dismiss.  The majority of EPPs' state law claims also fail for multiple additional reasons.

To begin with, a named plaintiff representing a putative class may assert claims only under the laws of jurisdictions where that plaintiff has standing to sue.  EPPs fail to allege that they reside, or purchased (or reimbursed purchases of) Zetia®, in eight of the forty jurisdictions whose

laws they invoke.[2]  But EPPs have no standing to invoke the laws of a jurisdiction to which no named plaintiff has a connection and in which no named plaintiff has suffered an injury. Accordingly, EPPs' claims under the laws of jurisdictions where none of them reside or paid for Zetia® must be dismissed.

Even where EPPs have Article III standing, the vast majority of their claims fail as a matter of law.  First, EPPs' antitrust claims fail in jurisdictions that follow *Illinois Brick* and prohibit indirect purchasers from bringing antitrust claims for damages.  Other antitrust claims fail because EPPs do not plead that anticompetitive conduct occurred within the jurisdictions' boundaries.  Still other jurisdictions require EPPs to give notice before filing suit, or limit standing to sue to the Attorney General or residents of the jurisdiction.  *See infra* Section IV.B.

Second, many of EPPs' claims under various consumer protection statutes—several of which had been voluntarily withdrawn and are now being reasserted—fail to state a claim as a matter of state law.  Some jurisdictions require EPPs to plead reliance or deception targeted at consumers.  Other jurisdictions' statutes target only intrastate conduct, or allow only consumers to sue, not health trusts like EPPs.  And some jurisdictions require EPPs to comply with a notice provision, while Florida requires particularized pleading.  *See infra* Section IV.C.  EPPs have not pleaded reliance, have not pleaded intrastate conduct, have not satisfied any notice provision, and have not made particularized allegations against any of the Defendants.

Finally, EPPs' unjust enrichment claims fail because EPPs have not properly pleaded facts

---

[2]  The named plaintiffs include The City of Providence, Rhode Island; International Union of Operating Engineers Local 49 Health and Welfare Fund; Painters District Council No. 30 Health & Welfare Fund; Philadelphia Federation of Teachers Health & Welfare Fund; Self-Insured Schools of California; Sergeants Benevolent Association health & Welfare Fund; The Uniformed Firefighters' Association of Greater New York Security Benefit Fund and the Retired Firefighters' Security Benefit Fund of the Uniformed Firefighters' Association; and United Food and Commercial Workers Local 1500 Welfare Fund.

that would establish unjust enrichment.  Instead, EPPs simply presume that the antitrust violation they allege somehow constitutes unjust enrichment in thirty-nine jurisdictions, while ignoring the differences in these laws and failing to plead how the unjust enrichment law of each jurisdiction applies to the facts of this case.  EPPs' bald legal assertions cannot survive a motion to dismiss. EPPs' unjust enrichment claims in several jurisdictions also fail because (1) those jurisdictions prohibit EPPs from circumventing the rule of *Illinois Brick* by simply repackaging their antitrust claim, (2) EPPs lack a direct relationship with, and did not confer a direct benefit on, the Defendants, and/or (3) EPPs fail to allege a lack of remedy at law.  *See infra* Section IV.D.

Accordingly,  in addition to dismissing all of EPPs' claims for the reasons set forth in the DPP Motion to Dismiss, the Court should dismiss the majority of EPPs' claims for the additional reasons set forth in this Memorandum, as follows: all of EPPs' antitrust claims (the First and Second Claims for Relief) except for those arising under the laws of Iowa, Kansas, Michigan, Minnesota, New Mexico, North Dakota, and Oregon;  all of EPPs' consumer protection claims (the Third Claim for Relief) except for those arising under the laws of California, Nevada, and New Mexico; and  all of EPPs' unjust enrichment claims (the Fourth Claim for Relief).

## II.    BACKGROUND

Merck sells a prescription cholesterol medication, ezetimibe, under the name Zetia®, which is covered by various patents.  (Compl. ¶¶ 2.)[3]  In 2006, Glenmark filed an Abbreviated New Drug Application ("ANDA") seeking FDA approval to market a generic version of Zetia®.  (*Id.* ¶ 151.) Glenmark's ANDA was the first filed for generic Zetia® that claimed that its subject generic product did not infringe any valid Merck patents.  Under the federal regulatory scheme established by the Hatch-Waxman Act, the first generic applicant to challenge the patents of a branded drug

---

[3]  For purposes of this Motion, Defendants assume the truth of the facts alleged in the Complaint.

receives a 180-day period of exclusivity during which no other generic manufacturer can receive FDA approval to sell their product. (*Id.* ¶ 44.) Merck sued Glenmark for patent infringement within 45 days of Glenmark filing its ANDA, as required by the Hatch-Waxman Act to prevent approval of the ANDA, alleging that the product described in Glenmark's ANDA would infringe Merck's patent, U.S. Patent No. RE37,721 (the "RE'721 patent"). (*Id.* ¶ 155.) Glenmark counterclaimed, alleging that the RE'721 patent was invalid and unenforceable. (*Id.* ¶ 159.)

Two days before trial, Merck and Glenmark settled their dispute. (*Id.* ¶ 184.) EPPs allege (inaccurately) that, as part of the settlement, Glenmark agreed not to launch a generic ezetimibe until December 2016, and in return, Merck agreed not to undermine Glenmark's entry by launching its own authorized generic version of Zetia® during Glenmark's 180-day exclusivity period. (*Id.* ¶¶ 186, 188.) On December 12, 2016, Glenmark launched its generic. (*Id.* ¶ 254.)

After Merck and Glenmark settled, Merck sued Mylan Pharmaceuticals, Inc., ("Mylan") for infringement once Mylan filed a Paragraph IV ANDA for generic Zetia®. (*Id.* ¶¶ 226-28.) The Court granted in part Merck's motion for summary judgment in ruling that Mylan infringed certain claims in Merck's relevant patent. (*Id.* ¶ 240.) The Court later ruled, following a bench trial, that Merck's patent was not invalid or unenforceable on the basis of inequitable conduct. (*Id.* ¶ 246.)

Notwithstanding the merits of Merck's patent positions, EPPs brought this suit on behalf of a putative class of indirect purchasers of Zetia® and generic ezetimibe. EPPs allege that, as a result of the settlement agreement, Glenmark's entry was delayed, causing members of the class to purchase Zetia® without the option of a generic equivalent. (*Id.* ¶ 6.) EPPs also allege that, once Glenmark entered, it was able to keep its price higher because Merck did not launch an authorized generic. (*Id*. ¶ 273.) EPPs pursue these allegations via four causes of action seeking damages under the laws of thirty-eight states, Puerto Rico, and the District of Columbia.

## III.    APPLICABLE LEGAL STANDARD

Defendants' argument that EPPs lack Article III standing to assert several of their claims challenges the Court's subject matter jurisdiction and thus is brought under Federal Rule of Civil Procedure 12(b)(1). *Beck v. McDonald*, 848 F.3d 262, 269 (4th Cir. 2017). "To invoke federal jurisdiction, a plaintiff bears the burden of establishing the three 'irreducible minimum requirements' of Article III standing," which are injury-in-fact, causation, and redressability. *Id.* In deciding a facial challenge to jurisdiction brought pursuant to Rule 12(b)(1), the court must ascertain whether the "plaintiff's allegations standing alone and taken as true [plead] jurisdiction and a meritorious cause of action." *Allianz Ins. Co. v. Cho Yang Shipping Co.*, 131 F. Supp. 2d 787, 789 (E.D. Va. 2000) (Smith, C.J.) (internal quotation marks and citation omitted).

Defendants' remaining arguments arise under Rule 12(b)(6). "[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). To survive a 12(b)(6) motion, plaintiffs must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court need not "accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009). To decide a state law claim, federal courts follow the rulings of the respective states' highest appellate courts. *See, e.g.*, *Johnson v. Fankell*, 520 U.S. 911, 916 (1997).

## IV.    ARGUMENT

### A.    EPPs Lack Standing to Assert Any Claims Under the Laws of Jurisdictions in Which No Named Plaintiff Suffered an Injury.

#### 1.    EPPs' Claims Must Be Dismissed in Jurisdictions Where No Named Plaintiff Was Injured

EPPs assert claims under the laws of thirty-eight states, Puerto Rico, and the District of Columbia. (Compl. ¶¶ 327-73.) Yet EPPs allege no connection between themselves and Alaska,

Hawaii, Maine, Nebraska, New Hampshire, Vermont, Puerto Rico, or D.C.  Because no named

plaintiff alleges it resides in, purchased, or reimbursed purchases of Zetia® in these jurisdictions,

these claims must be dismissed for lack of Article III standing.[4]

      Under Article III of the U.S. Constitution, a party invoking federal jurisdiction must plead

standing by alleging, at a minimum, three elements: (1) injury-in-fact, (2) causation (or

traceability), and (3) redressability.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Article III's requirements apply to "each claim that a plaintiff seeks to press," *Bostic v. Schaefer*,

760 F.3d 352, 370 (4th Cir. 2014), and "a plaintiff must demonstrate standing separately for each

form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006).

      In a class action, the *named plaintiff*—not an unnamed member of the putative class—must

"allege and show that [it] personally ha[s] been injured, not that injury has been suffered by other,

unidentified members of the class to which [it] belong[s] and which [it] purport[s] to represent."

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (internal quotation marks and

citation omitted); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996); *Doe v. Obama*, 631 F.3d 157,

160 (4th Cir. 2011).  "In a class action, [the court] analyze[s] standing based on the allegations of

personal injury made by the named plaintiffs."  *Beck*, 848 F.3d at 269.  "Without a sufficient

allegation of harm to the named plaintiff in particular, [he] cannot meet [his] burden of establishing

standing."  *Dreher v. Experian Info. Solutions, Inc.*, 856 F.3d 337, 343 (4th Cir. 2017) (internal

quotation marks omitted) (alterations in original).  EPPs, therefore, may only sue as class

representatives for claims they could bring on their own behalf in an individual action.

      As a general matter, a plaintiff lacks standing to sue under a state law if that plaintiff neither

---

[4] Defendants presently seek to dismiss under Rule 12(b)(1) only claims under laws of states in
which no EPP named in the consolidated action has standing.  Any case sent back to the
original district for trial should be limited to claims of states where the EPP has standing.

resided in, nor was injured in, the state at issue.  *See In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 152 (E.D. Pa. 2009).  As the court explained in *In re Wellbutrin XL*, "a plaintiff whose injuries have no causal relation to Pennsylvania, or for whom the laws of Pennsylvania cannot provide redress, has no standing to assert a claim under Pennsylvania law, although it may have standing under the law of another state."  *Id.*  In the indirect purchaser context, this means that a plaintiff can bring a state law claim on behalf of a class in federal court only if a named plaintiff resided or purchased the relevant drug in the jurisdiction whose laws the plaintiff seeks to invoke.  *See id.*  That is, "the 'named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury.'"  *In re Niaspan Antitrust Litig.*, 42 F. Supp. 3d 735, 758 (E.D. Pa. 2014) (quoting *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657 (E.D. Mich. 2011)); *see In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 925 (N.D. Cal. 2015) ("Consequently, at least one of the five named plaintiffs must have Article III standing for each of the state law antitrust and consumer protection claims alleged in the [indirect purchaser] complaint.  Otherwise, the Court lacks jurisdiction over the claim and must dismiss it.").[5]

Here, EPPs together assert more than one hundred claims under the laws of thirty-eight individual states, Puerto Rico, and the District of Columbia.  EPPs, however, do not allege any

---

[5]  *See also In re Wellbutrin XL*, 260 F.R.D. at 156-58 (dismissing claims under the laws of states where no named plaintiff suffered an injury); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 64 F. Supp. 3d 665, 692-94 (E.D. Pa. 2014) (same); *Fenerjian v. Nongshim Co.*, 72 F. Supp. 3d 1058, 1082-83 (N.D. Cal. 2014); *Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, No. CIV. 13-2664 ADM/SER, 2014 WL 943224, at *10-12 (D. Minn. Mar. 11, 2014), *aff'd*, 797 F.3d 538 (8th Cir. 2015); *In re Ductile Iron Pipe Fittings (DIPF) Indirect Purchaser Antitrust Litig.*, No. CIV. 12-169, 2013 WL 5503308, at *11-13 (D.N.J. Oct. 2, 2013); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 09 CV 3690, 2013 WL 4506000, at *6-9 (N.D. Ill. Aug. 23, 2013); *In re Checking Account Overdraft Litig.*, 694 F. Supp. 2d 1302, 1324-25 (S.D. Fla. 2010); *In re G-Fees Antitrust Litig.*, 584 F. Supp. 2d 26, 35-36 (D.D.C. 2008); *In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1106-07 (N.D. Cal. 2007); *In re Terazosin Hydrochloride Antitrust Litig.*, 160 F. Supp. 2d 1365, 1370-72 (S.D. Fla. 2001).

contact with several of these jurisdictions—Alaska, Hawaii, Maine, Nebraska, New Hampshire, Vermont, Puerto Rico, or the District of Columbia—let alone that they reside or somehow paid for Zetia® there. (*See* Compl. ¶¶ 8-15.) EPPs' claims arising under the laws of these eight jurisdictions must therefore be dismissed for want of standing. *See* Appendices A, B, C.

### 2. EPPs' Standing Is a "Threshold Inquiry," and Disposition of Defective Standing May Not Be Deferred Until Class Certification Is Decided.

"Standing is a threshold jurisdictional question" and thus must be resolved at the outset of the case when raised on a motion to dismiss. *Dreher*, 856 F.3d at 343 (internal quotation marks and citation omitted). In the class action context, "Article III requirements must be met 'at the time the complaint is filed, *and* at the time the class action is certified'" by the district court. *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 188 (4th Cir. 1993) (quoting *Sosna v. Iowa*, 419 U.S. 393, 402 (1975)) (emphasis added).

Nonetheless, plaintiffs in these types of cases often seek to defer the issue of standing until class certification. *In re Propranolol Antitrust Litig.,* 249 F. Supp. 3d 712, 726-27 (S.D.N.Y. 2017); *In re Capacitors*, 154 F. Supp. 3d at 923-28. That is not appropriate here. The Supreme Court has permitted this approach only in the context of a settlement-only class action in which the standing of absent class members is at issue, where class certification is "logically antecedent" to issues of standing. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999). In that context, whether absent class members have standing does not matter until and unless the court certifies a class. *In re Wellbutrin XL*, 260 F.R.D. at 153 ("Had the Court found that certification of the proposed class was improper, the issue of certain class members' standing would have been moot."). Accordingly, "[t]o rule on the issue of standing at that point in the case would have required the Court to make a determination as to the standing of persons who were not actually parties to the case, but who were only proposed parties to the case." *Id.*; *see also Rivera v. Wyeth-*

*Ayerst Labs.*, 283 F.3d 315, 319 n.6 (5th Cir. 2002) (class certification not "logically antecedent" to "the standing question" because standing concerns "would exist whether [plaintiff] filed her claim alone or as part of a class; class certification did not create the jurisdictional issue").

Properly read, the *Ortiz* exception is inapplicable when the standing of *named* plaintiffs is at issue. *In re Propranolol*, 249 F. Supp. 3d at 726-27; *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 533 (E.D. Pa. 2010); *In re Ditropan XL*, 529 F. Supp. 2d at 1107; *In re Dairy Farmers of Am., Inc. Cheese*, 2013 WL 4506000, at *8. In *In re Propranolol,* 249 F. Supp. 3d at 727, the court explained that "since a plaintiff must demonstrate standing for each claim she seeks to press, each state law claim must be accompanied by a named plaintiff who has suffered an injury under that state's statute, and class certification does not remedy this requirement" (internal quotation marks and citation omitted). *See also In re Capacitors*, 154 F. Supp. 3d at 923-28 (deferring inquiry until class certification is "the exception to the rule," and "the strong trend in this district and in other courts is to require an in-state purchase to establish Article III standing for state antitrust and related consumer protection claims like the ones alleged in this case"); *In re Wellbutrin XL*, 260 F.R.D. at 153.

While this Court in *United Food and Commercial Workers Unions and Employers Midwest Health Benefits Fund v. Pfizer, Inc.*, applied *Ortiz* to conclude that class certification was logically antecedent to issues of standing, that decision incorrectly overlooked the critical distinction that in *Ortiz* it was the unnamed class members, not the named plaintiff, whose standing was challenged. No. 2:14-CV-395, at *6-8 (E.D. Va. Aug. 26, 2016) (Allen, J.) (Appendix D). That distinction makes *Ortiz* inapplicable to this case. In any event, in *Pfizer*, the Court's holding was ultimately only that the plaintiffs had "standing to bring claims against Pfizer under the state antitrust and consumer protection laws of the states in which they reside and/or have purchased Celebrex." *See*

*id.* at *6-7.  Defendants are objecting to EPPs' standing only in jurisdictions in which no EPP resides or has somehow paid for Zetia® or generic equivalents.  In those jurisdictions, EPPs' claims should be dismissed.  *See* Appendices A, B, C.

**B.      EPPs Fail to State a Claim Under Most Jurisdictions' Antitrust Laws.**

In the First and Second Claims for Relief, EPPs assert conspiracy and/or monopolization claims under the antitrust statutes of the District of Columbia, Puerto Rico, and twenty-four states. (Compl. ¶¶ 337, 347.)  Antitrust claims in nineteen of these states should be dismissed either for lack of standing (*supra* Section IV.A) or for the reasons addressed in this section.[6]

**1.      EPPs Cannot State Claims Under Puerto Rico's Antitrust Statutes Because Puerto Rico Follows *Illinois Brick*.**

EPPs' claims under Puerto Rico's antitrust statutes fail because Puerto Rico does not allow indirect purchasers to sue for damages.  Indeed, when Merck previously moved to dismiss the original end payer actions in this jurisdiction, several of the "EPPs agree[d] to dismiss without prejudice their claims under . . . the Puerto Rico antitrust statute."[7]  In *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977), the Supreme Court held that indirect purchasers of a product lack antitrust standing to seek damages for antitrust violations under the Sherman Act.  Where, as in Puerto Rico, there is no "express indication to the contrary," the Court should "presume[s] that state law is guided by the federal rule of *Illinois Brick*."  *In re Relafen Antitrust Litig.*, 225 F.R.D. 14, 22

---

[6]  Defendants do not at this time move to dismiss on standing or the other grounds set forth in this section EPPs' antitrust claims asserted under the laws of Iowa, Kansas, Michigan, Minnesota, New Mexico, North Dakota, and Oregon.  All should be dismissed, however, for the reasons set forth in the DPP Motion to Dismiss.

[7]  Consolidated Opposition of End-Payor Plaintiffs Fraternal Order of Police, Miami Lodge 20, Insurance Trust Fund; Sergeants Benevolent Association Health & Welfare Fund; and International Union of Operating Engineers Local 49 Health and Welfare Fund to Merck's Motions to Dismiss, Civil Action Nos. 2:18-cv-00035, 2:18-cv-00108, 2:18-cv-00130 (April 18, 2018), at 11-12 ("EPP Consolidated Opp.").

(D. Mass. 2004); *In re Aggrenox Antitrust Litig.*, 94 F. Supp. 3d 224, 252 (D. Conn. 2015) ("conclud[ing] that Puerto Rico follows the rule of *Illinois Brick*" and dismissing "all indirect-purchaser claims under its antitrust law"); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. CV 14-MD-02503-DJC, 2015 WL 5458570, at *15 (D. Mass. Sept. 16, 2015); *United Food & Commercial Workers Local 1776 & Participating Emp'rs Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1086-87 (N.D. Cal. 2014) ("agree[ing] with the weight of authority" that *Illinois Brick* applies to antitrust claims under Puerto Rico laws and dismissing claims).  As a result, EPPs' antitrust claim under Puerto Rico law should be dismissed.

### 2. EPPs Fail to State Claims Under Antitrust Statutes Requiring EPPs to Plead a Special Connection Between Defendants' Conduct and the Jurisdiction.

The antitrust laws of the District of Columbia, Mississippi, Nevada, New York, North Carolina, South Dakota, Tennessee, West Virginia, and Wisconsin require a plaintiff to plead a special connection between the defendant's conduct and the jurisdiction.  *See* Appendix A.  Yet EPPs do not claim that any of Defendants' conduct occurred within these jurisdictions, that the conduct had a predominantly intrajurisdictional link, or that the conduct had substantial effects within these jurisdictions.  Nor would the factual allegations support such a claim.  While EPPs do claim in conclusory terms that the alleged conduct "substantially affected intrastate, interstate and foreign commerce" (Compl. ¶ 306), "has substantial intrastate effects" (*id.* ¶ 307), and that exchanges occurred "in each state" (*id.* ¶ 308), EPPs fail to allege any specific facts that would suggest a specific effect on the economy of any individual jurisdiction.  Each of the following jurisdictions requires such allegations and thus does not permit EPPs' antitrust claims here:

- **District of Columbia**: *Sun Dun, Inc. v. Coca-Cola Co.*, 740 F. Supp. 381, 397 (D. Md. 1990) ("the only claims of Sun Dun to which the D.C. Code might possibly apply are those for direct and indirect purchases within the District of Columbia which do not involve an interstate link, and which thus do not fall within the scope of federal antitrust law").

12

- **Mississippi**: *Cal. v. Infineon Techs. AG*, 531 F. Supp. 2d 1124, 1159 (N.D. Cal. 2007) ("[P]laintiffs' complaint, since it is wholly devoid of any allegations relating to intrastate trade or commerce, fails to properly allege a claim under the Mississippi Antitrust Act . . . .") (citing *Standard Oil Co. of Ky. v. State ex rel. Attorney Gen.*, 65 So. 468, 471 (Miss. 1914)); *In re Microsoft Corp. Antitrust Litig.*, No. MDL 1332, 2003 WL 22070561, at *2 (D. Md. Aug. 22, 2003) ("at least some conduct . . . performed wholly intrastate" must be alleged to come within Mississippi antitrust statute (citation and emphasis omitted)).

- **Nevada**: *In re Cast Iron Soil Pipe and Fittings Antitrust Litig.*, 1:14-MD-2508, 2015 WL 5166014, at *24-26 (E.D. Tenn. June 24, 2015) (dismissing Nevada antitrust claim where plaintiffs did not address connection between Nevada and wrongful conduct); *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 397 (E.D. Pa. 2010) (Nevada antitrust statute requires "that the plaintiffs show that some part of the prohibited activity caused harm in Nevada"); Nev. Rev. Stat. § 598A.060(1) (2017) (declaring it "unlawful to conduct any part of any such activity in this State").

- **New York**: *Conergy AG v. MEMC Elec. Materials, Inc.*, 651 F. Supp. 2d 51, 58, 60-61 & n.83 (S.D.N.Y. 2009) (dismissing claim because the alleged conduct "predominantly affects interstate commerce rather than New York commerce"); *Two Queens, Inc. v. Scoza*, 296 A.D.2d 302, 304 (N.Y. App. Div. 2002) (holding that New York's Donnelly Act applies only to conduct that has a "significant intrastate or local anticompetitive impact in violation of State antitrust law"); N.Y. Gen. Bus. Law § 340(1) (2018) (prohibiting anticompetitive conduct "in this state").

- **North Carolina**: *In re Cast Iron Soil Pipe and Fittings*, 2015 WL 5166014, at *25-26 (dismissing claim because "to state a claim under this statute, plaintiffs must allege that at least part of the violation took place in North Carolina"); *In re Flonase*, 692 F. Supp. 2d at 540 (holding that North Carolina antitrust statute requires pleading a "substantial in-state effect on North Carolina trade or commerce") (citation omitted); N.C. Gen. Stat. § 75-1 (2017) ("Every contract, combination . . . or conspiracy in restraint of trade or commerce in the State of North Carolina is hereby declared to be illegal.").

- **South Dakota**: *In re Cast Iron Soil Pipe and Fittings*, 2015 WL 5166014, at *26 (dismissing claim alleging that defendants "engaged in a contract, combination, or conspiracy in unreasonable restraint of trade and commerce in violation of" South Dakota law that failed to address how actions affected intrastate commerce); S.D. Codified Laws § 37-1-3.1 (2018) (prohibiting a "contract, combination, or conspiracy between two or more persons in restraint of trade or commerce any part of which is within this state").

- **Tennessee**: *Infineon Techs.*, 531 F. Supp. 2d at 1159-60 (holding that "plaintiffs have failed to properly allege that defendants' anticompetitive conduct affects Tennessee trade or commerce to a substantial degree"); *Freeman Indus., LLC v. Eastman Chem. Co.*, 172 S.W.3d 512, 524 (Tenn. 2005) (requiring plaintiff to allege "substantial effects" on "Tennessee commerce" and holding mere in-state sales at "higher prices" insufficient). Tenn. Code § 47-25-101 *et seq.* (2018).

- **West Virginia**: *In re Cast Iron Soil Pipe and Fittings*, 2015 WL 5166014, at *25 (requiring allegations "that the wrongful conduct occurred in West Virginia or was felt in West Virginia to assert a violation of the West Virginia Antitrust Act"); W. Va. Code § 47-18-3(a) (2018) (prohibiting "[e]very contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce in this State").

- **Wisconsin**: *Meyers v. Bayer AG, Bayer Corp.*, 735 N.W.2d 448, 460 (2007) ("[A] plaintiff must allege that the conduct complained of has impacts in Wisconsin, and not merely nationwide impacts."); *Olstad v. Microsoft Corp.*, 700 N.W.2d 139, 158 (Wis. 2005) ("actionable conduct . . . [must have] occurred within this state" or that the "conduct complained of 'substantially affects' the people of Wisconsin and has impacts in this state"); *see also In re Urethane Antitrust Litig.*, 663 F. Supp. 2d 1067, 1084 (D. Kan. 2009).

Because EPPs make only conclusory, unsupported allegations regarding intrastate activities or effects, their antitrust claims in these jurisdictions must be dismissed.

### 3. EPPs Cannot State a Claim Under State Antitrust Laws Requiring Notice.

EPPs' claims under the antitrust laws of Arizona, Hawaii, Nevada, Rhode Island, and Utah also fail because EPPs have not alleged that any of them complied with statutory requirements to provide written notice to Defendants in advance of bringing suit:

- **Arizona**: Ariz. Rev. Stat. § 44-1415(A) (2018) (any person filing a complaint for a violation of the act must simultaneously file a copy of the complaint on the Attorney General and file proof of service on the Attorney General in the court); *In re Asacol Antitrust Litig.*, 15-CV-12730-DJC, 2016 WL 4083333, at *14-15 (D. Mass. July 20, 2016) (dismissing claim for failing to fulfill notice requirement).

- **Hawaii**: Haw. Rev. Stat. § 480-13.3 (2017) (indirect purchasers who seek to pursue a class action raising a claim other than one for unfair or deceptive acts or practices—e.g., an antitrust claim—must serve the Attorney General with the complaint within seven days of filing the complaint, and not serve the defendant until the court so orders); *In re Asacol*, 2016 WL 4083333, at *14-15 (dismissing claim for failing to fulfill notice requirement); *In re Flash Memory Antitrust Litig.*, 643 F. Supp. 2d 1133, 1158 (N.D. Cal. 2009) (dismissing antitrust claim as unripe for failing to abide by the service requirement).

- **Nevada**: Nev. Rev. Stat. § 598A.210(3) (2017) ("Any person commencing an action for any violation of the provisions of this chapter shall, simultaneously with the filing of the complaint with the court, mail a copy of the complaint to the Attorney General."); *In re Asacol*, 2016 WL 4083333, at *14-15 (dismissing claim not fulfilling notice requirement).

- **Rhode Island**: R.I. Gen. Laws Ann. § 6-36-21 (2018) ("Upon commencement of any civil action by a person, other than the attorney general, for a violation of this chapter, the plaintiff shall mail a copy of the complaint to the attorney general and shall file proof of

service on the attorney general with the court. The civil action may not proceed until the proof of service is filed.").

- **Utah:** Utah Code § 76-10-3109(9) (2017) ("The attorney general shall be notified by the plaintiff about the filing of any class action involving antitrust violations that includes plaintiffs from this state. The attorney general shall receive a copy of each filing from each plaintiff."); *In re Asacol*, 2016 WL 4083333, at *14-15 (dismissing claim for failing to fulfill notice requirement).

Because EPPs did not meet these requirements, these claims must be dismissed.

In their consolidated opposition to Merck's motion to dismiss in a pre-MDL case, several of the EPP representatives noted that they had attempted to cure their violation of these state notice provisions by giving notice *after* Merck pointed out their failure to comply with state law. Consolidated Opp. at 14. But post-suit notice does not cure Plaintiffs' failure to send pre-suit notice. Pre-suit filing requirements are intended to give the state attorney general a chance to preempt the lawsuit. *See In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 183 (D. Me. 2004) (with respect to consumer protection notice provision, sending notice after filing "flies in the face of both the statutory language and its policy"). Because each of the EPPs that gave notice did so *after* initial filings of its complaint, that notice is insufficient.

### 4.     EPPs Do Not Have Standing Under the Antitrust Laws of Illinois and Utah.

EPPs' purported class action under Illinois's antitrust statute fails because "[t]he Illinois Antitrust Act only permits the state's Attorney General to bring a class action on behalf of indirect purchasers." *In re Suboxone*, 64 F. Supp. 3d at 700 (citing 740 Ill. Comp. Stat. 10/7(2) (2018). For this reason, courts routinely dismiss class actions under Illinois's Antitrust Act like that brought by EPPs; this Court should do the same. *See, e.g.*, *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 722 (N.D. Ill. 2016); *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 409 (D. Mass. 2013); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 415-16 (S.D.N.Y. 2011) (same); *In re Wellbutrin XL*, 756 F. Supp. 2d 670, 676-77 (E.D. Pa. 2010) (same).

EPPs' claims under Utah's antitrust statutes fail because Utah permits only citizens or residents to sue under the Utah state antitrust laws.  *See* Utah Code Ann. § 76-10-3109(1)(a) (2017) ("A person who is a citizen of this state or a resident of this state and who is injured or is threatened with injury in his business or property by a violation of the Utah Antitrust Act may bring an action for injunctive relief and damages"); *In re Aggrenox*, 94 F. Supp. 3d at 251-52 ("The indirect purchasers claim to be asserting claims under that law on behalf of residents of Utah, but they do not claim that any of the named plaintiffs are such residents. For the reasons discussed above, they lack Article III standing to assert such claims."); *In re Niaspan*, 42 F. Supp. 3d at 759-60 ("at least one named plaintiff must be a citizen or resident of Utah in order to seek classwide relief under the Utah Antitrust Act").  However, EPPs do not allege that any of them are residents of Utah. (Compl. ¶¶ 8-15.)  As a result, EPPs' antitrust claims under Utah law must be dismissed.

### 5.      EPPs Cannot Pursue Damages Under California's Unfair Competition Law

EPPs assert a monopolization claim under California's Unfair Competition Law—Cal. Bus. and Prof. Code §§ 17200, *et seq.*—and in doing so seek to recover damages under the statute. (Compl. ¶¶ 347(b), 349.).  But plaintiffs under this statute are limited to seeking equitable relief and cannot recover damages. *See Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003) ("A UCL action [pursuant to § 17200] is equitable in nature; damages cannot be recovered.").  Because EPPs seek damages under this statute, the claim must be dismissed. *AngioScore, Inc. v. TriReme Med., LLC*, 70 F. Supp. 3d 951, 963 (N.D. Cal. 2014) (dismissing a claim for damages brought under § 17200).

### C.      Most of EPPs' Claims Under Consumer Protection Statutes Fail as a Matter of Law.

In the Third Claim for Relief, EPPs assert claims for unfair or deceptive trade practices under the consumer protection statutes of District of Columbia, as well as Arizona, Arkansas, California, Florida, Hawaii, Idaho, Illinois, Kansas, Maine, Massachusetts, Michigan, Minnesota,

Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, Oregon, Rhode Island, South Dakota, Tennessee, Utah, Vermont, Virginia, and West Virginia.  (*Id.* ¶ 356.) Unfair or deceptive trade practices claims should be dismissed under the laws of 25 of these jurisdictions, either for lack of standing (*supra* Section IV.A) or for the reasons addressed in this section.[8]  *See* Appendix B.  Indeed, in their consolidated opposition to Merck's motion to dismiss several of the original cases filed in this district, several representatives of EPPs voluntarily dismissed claims in Idaho, Illinois, Maine, Massachusetts, Michigan, Minnesota, South Dakota, Tennessee, and Virginia—yet EPPs' Consolidated Complaint revives the claims in those states.

### 1.  EPPs Cannot Sue Under Consumer Protection Statutes to Circumvent Prohibitions on Indirect Purchaser Suits

EPPs bring no antitrust claims under the laws of Missouri, which follows *Illinois Brick*. Nonetheless, EPPs seek to circumvent that law by bringing claims under Missouri's consumer protection laws.  Although the Missouri Supreme Court has concluded that indirect purchasers are not *per se* barred from asserting claims under Missouri's consumer protection statute, *Gibbons v. J. Nuckolls, Inc.*, 216 S.W.3d 667 (Mo. 2007), the court "did not consider facts in the antitrust context," and "allowing a claim under Missouri's consumer protection law would provide an end-run around the state's prohibition of antitrust claims by indirect purchasers." *In re Suboxone*, 64 F. Supp. 3d at 702; *see also In re New Motor Vehicles Canadian Exp. Antitrust Litig.*, 350 F. Supp. 2d 160, 191-92 (D. Me. 2004) (similar).  Because allowing EPPs' antitrust-based claim under Missouri's consumer protection law would frustrate Missouri's prohibition on antitrust claims by indirect purchasers, this claim should be dismissed.

---

[8]  Defendants do not at this time move to dismiss EPPs' consumer protection claims asserted under the laws of California, Nevada, and New Mexico.

Similarly, EPPs' consumer protection claims under the law of Illinois must be dismissed. As noted above, Illinois permits only the Attorney General to pursue an antitrust claim on behalf of indirect purchasers in a class action lawsuit. *See supra* Section IV.B.4; 740 Ill. Comp. Stat. § 10/7(2) (2018). As other courts have held, Illinois made a specific policy judgment to forbid private indirect purchaser antitrust suits, and the consumer protection statute cannot be used to circumvent that policy decision. *See In re Suboxone*, 64 F. Supp. 3d at 700 (holding that "in light of this prohibition, claims based on alleged antitrust violations under Illinois' consumer protection law must be dismissed"); *In re Flonase*, 692 F. Supp. 2d at 539 (to allow the indirect purchaser plaintiffs to bring a claim for antitrust conduct under Illinois's consumer protection law "would constitute an end run around the Illinois legislature's determination"). *See* Appendix B.

## 2. EPPs Cannot State Claims Under Consumer Protection Laws That Require Reliance or Deception Targeted at Consumers.

In several of the jurisdictions whose consumer protection laws EPPs invoke, plaintiffs cannot assert claims without pleading a causal connection between the plaintiff's purchase and the alleged misrepresentation or reliance on the alleged misrepresentation. Other jurisdictions require a plaintiff to allege that the defendant's actions related to a consumer transaction or that a defendant's unlawful conduct was targeted at consumers. Here, EPPs do not make any such allegations. Indeed, EPPs' allegations of "deception" relate only to generic drug manufacturers, the PTO, and the FDA, not consumers. (Compl. ¶¶ 3, 163-65, 183, 239.) And EPPs' allegations that "Defendants engaged in unfair methods of competition, and unfair, unconscionable, and/or deceptive acts," (Compl. ¶ 351; *see also id.* ¶ 352-53), say nothing about whether consumers relied on such allegedly deceptive conduct. As a result, EPPs fail to state a claim under the consumer protection laws of Arizona, Arkansas, the District of Columbia, Idaho, Maine, Michigan, Minnesota, New York, Rhode Island, South Dakota, and Vermont.

18

- **Arizona**: *Sheet Metal Workers*, 737 F. Supp. 2d at 404 (dismissing claim because plaintiffs failed to allege that the defendant "misrepresented the nature or price of its product to consumers" and that "those misrepresentations were relied upon by consumers of Wellbutrin SR").

- **Arkansas**: *In re Broiler Chicken Antitrust Litig.*, 16-CV-8637, 2017 WL 5574376, at *30 (N.D. Ill. Nov. 20, 2017) (dismissing claims because the catch-all provision of Ark. Code Ann. § 4-88-107(10) "must be interpreted in light of the enumerated conduct, such that it only serves to prohibit other instances of false representation, fraud, or the improper use of economic leverage") (internal quotation marks omitted); *see also Apex Oil Co., Inc. v. Jones Stephens Corp.*, 881 F.3d 658, 662-63 (8th Cir. 2018) (affirming dismissal for failure to allege reliance); Ark. Code Ann. § 4-88-113(f)(1)(A) (2018) ("A person who suffers an actual financial loss as a result of *his or her reliance* on the use of a practice declared unlawful" by the Act." (emphasis added)).

- **District of Columbia**: *Williams v. Purdue Pharm. Co.*, 297 F. Supp. 2d 171, 178 (D.D.C. 2003) (dismissing plaintiffs' claim under D.C. Consumer Protection Procedures Act in part because plaintiffs did not allege that they were deceived by defendants' conduct).

- **Idaho**: *Sheet Metal Workers*, 737 F. Supp. 2d at 411 ("Plaintiffs have presented no authority supporting a broad construction of subsection (17) of the [Idaho consumer protection law] to include conduct which, though generally deceptive, was not aimed at consumers, but rather was aimed at the PTO and other drug manufacturers."); *Wasden*, 106 P.3d at 4435 ("When construed in the context of the first three subsections, this subsection is designed to prohibit unconscionable 'sales conduct' that is directed at the consumer.").

- **Maine**: *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1126-27 (N.D. Cal. 2008) (Me. Stat. tit. 5, § 207 does not apply to price-fixing conspiracy because higher prices could not have deceived plaintiffs or induced them to purchase the product at issue); *In re Graphics Processing Units*, 527 F. Supp. 2d at 1031 (dismissing claim because plaintiff failed to allege higher prices could have induced plaintiffs' purchases).

- **Michigan**: *Sheet Metal Workers*, 737 F. Supp. 2d at 413 ("Even construing the allegations of the second amended complaint broadly, plaintiffs have failed to claim that [defendant] made misrepresentations directed at them or upon which they, as consumers of Wellbutrin SR, relied. They have also failed to allege that [defendant] had the intent to deceive consumers rather than the PTO or generic manufacturers.") (emphasis in original); *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1076-77 (S.D. Cal. 2017 (dismissing claim for failure to sufficiently allege that the defendants "employed fraudulent and deceptive means" (internal quotation marks omitted)).

- **Minnesota**: *In re New Motor Vehicles*, 350 F. Supp. 2d at 190 (dismissing claim because plaintiffs failed "to allege any fraud or deception by the defendants"); *Alsides v. Brown Inst., Ltd.*, 592 N.W.2d 468, 474 (Minn. 1999) ("To sustain a claim for consumer fraud, a plaintiff must demonstrate that the defendant made a false promise or misrepresentation with the intent that others rely thereon . . . .").

19

- **New York**: *Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 263 F.R.D. 205, 214 (E.D. Pa. 2009) ("The deceptive conduct in this case—whether fraud on the patent examiners through misrepresentations or on the federal courts through sham litigation—was not directed at consumers. Accordingly, the [N.Y. Gen. Bus. Law § 349] claim will be dismissed."); *In re Digital Music*, 812 F. Supp. 2d at 410 ("anticompetitive conduct that is not premised on consumer deception," like that alleged here, "is not within the ambit of [New York's consumer protection] statute." (internal quotation marks omitted)); *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d at 666 (requiring plaintiffs to "establish that the false or deceptive act . . . was directed at New York consumers").

- **Rhode Island**: *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2009 WL 3754041, at *11 (N.D. Ill. Nov. 5, 2009) (R.I. Gen. Law § 6-13.1-2 "requires that defendants' conduct reasonably intended to confuse and mislead the general public into purchasing defendants' product when the actual intent was to buy someone else's product") (citing *ERI Max Entm't, Inc. v. Streisand*, 690 A.2d 1351, 1353-54 (R.I. 1997)).

- **South Dakota**: *In re New Motor Vehicles*, 350 F. Supp. 2d at 190 (dismissing a claim under S.D. Codified Laws § 37-24-6(1) where plaintiffs did not allege "fraud or deception"); *Schoenbaum v. E.I. Dupont De Nemours & Co.*, 517 F. Supp. 2d 1125, 1155 (E.D. Mo. 2007) (dismissing claim where plaintiffs failed to "allege[] intentional misrepresentation or concealment on the part of Defendants") *clarified and amended on other grounds*, 4:05CV01108 ERW, 2007 WL 3331291 (E.D. Mo. Nov. 6, 2007).

- **Vermont**: *In re Propranolol*, 249 F. Supp. 3d at 729 (dismissing Vermont consumer protection claim where complaint contained no allegations that price increases resulted from deceptive conduct); *see also In re Aggrenox Antitrust Litig.*, 3:14-MD-2516 (SRU), 2016 WL 4204478, at *9 (D. Conn. Aug. 9, 2016) ("[Plaintiff] has not offered authority for the proposition that the Vermont Consumer Fraud Act reaches antitrust conduct.").

Because EPPs do not allege that Defendants engaged in the required deception or generated the required reliance, EPPs' consumer protection claims in these jurisdictions should be dismissed.

### 3. EPPs Cannot Recover Under Consumer Protection Statutes That Do Not Cover Alleged Antitrust Violations

EPPs cannot recover under the consumer protection laws of the Idaho, Illinois, Kansas, Oregon, Tennessee, Utah, and West Virginia because these states' consumer protection laws do not encompass conduct that amounts to a pure antitrust violation. Appendix B.  EPPs' conclusory allegation that "Defendants engaged in unfair methods of competition, and unfair, unconscionable, and/or deceptive acts or practices," (Compl. ¶ 341), does not suffice, given that the heart of EPPs'

20

allegations is that Defendants' alleged agreement was "anticompetitive" (*id.* ¶¶ 219, 274, 291-92,

302-04), and that Defendants denied EPPs "the benefits of competition" (*id.* ¶ 301).

- **Idaho**: *See In re DRAM Antitrust Litig.*, 516 F. Supp. 2d at 1110 (citing *Wasden v. Daicel Chem. Indus.*, 106 P.3d 428 (Idaho 2005), and granting defendants' motion for judgment on the pleadings because "allegations of antitrust price-fixing do not qualify as a type of prohibited conduct under the [Idaho Consumer Protection Act]").

- **Illinois**: *See Gaebler v. N.M. Potash Corp.*, 676 N.E.2d 228, 230 (Ill. App. Ct. 1996) (anticompetitive conduct is not actionable under Illinois's consumer fraud statute); *Laughlin v. Evanston Hosp.*, 550 N.E.2d 986, 990 (Ill. 1990) (same).

- **Kansas**: *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 584 (M.D. Pa. 2009) (dismissing price-fixing claims because "pricing harms [are] governed by the Kansas antitrust statute"); *In re Photochromic Lens Antitrust Litig.*, No. 8:10-CV-1158-T-27EAJ, 2011 WL 13141933, at *7 (M.D. Fla. Oct. 26, 2011) ("anticompetitive conduct is not actionable under Kansas' unfair trade law.").

- **Oregon**: *See In re DRAM*, 516 F. Supp. 2d at 1115 (plaintiffs could not state an antitrust claim under Oregon's Unfair Trade Practices Act); *In re Lidoderm Antitrust Litig.*, 103 F. Supp. 3d 1155, 1171 (N.D. Cal. 2015) (Oregon's statute does not cover claims about allegedly anticompetitive settlement because they are "not sufficiently similar to the examples provided in the statute of actionable unconscionable acts").

- **Tennessee**: *In re Flonase Antitrust Litig.*, 610 F. Supp. 2d 409, 417 (E.D. Pa. 2009) ("[P]laintiffs cannot bring claims based on anticompetitive conduct under the Tennessee Consumer Protection Act."); *Bennett v. Visa U.S.A. Inc.*, 198 S.W.3d 747, 754-55 (Tenn. Ct. App. 2006) (TCPA "does not apply to anti-competitive conduct").

- **Utah**: *In re DRAM*, 516 F. Supp. 2d at 1117 (plaintiffs' antitrust claim could not be asserted under Utah's Consumer Sales Practices Act).

- **West Virginia**: *See In re DRAM*, 516 F. Supp. 2d at 1118-19 (plaintiffs could not bring an antitrust claim under West Virginia's Consumer Credit and Protection Statute); *In re Lidoderm*, 103 F. Supp. 3d at 1172-73 (dismissing claim because prohibition on unfair methods of competition did not encompass "antitrust allegations and fraud on the PTO").

### 4. EPPs Fail to State Claims Under Consumer Protection Statutes That Require Intrastate Connections.

The consumer protection laws of New Hampshire and New York require that EPPs plead

that the complained-of conduct occurred in these states. The *effect* of an allegedly deceptive

practice is not sufficient to create a cause of action under these statutes when the defendant's

allegedly unlawful *conduct* occurred elsewhere.  And North Carolina's consumer protection law requires allegations of either in-state conduct or substantial in-state effects.  EPPs' Complaint contains no allegations concerning the specific intrastate connections these statutes require:

- **New Hampshire**: *In re Refrigerant Compressors Antitrust Litig.*, 2:09-MD-02042, 2013 WL 1431756, at *17-18 (E.D. Mich. Apr. 9, 2013) (dismissing claim under N.H. Rev. Stat. § 358-A:1 because complaint failed to allege "that any unfair or deceptive act or practice took place in New Hampshire" and increased prices paid in New Hampshire were insufficient); *In re Lithium Ion Batteries Antitrust Litig.*, 13-MD-2420 YGR, 2014 WL 4955377, at *22 (N.D. Cal. Oct. 2, 2014) ("[M]erely selling a good in New Hampshire is not enough when the proscribed conduct occurs elsewhere."); *In re Cast Iron*, 2015 WL 5166014, at *33 (dismissing claim because merely selling good in New Hampshire was insufficient where proscribed conduct occurred elsewhere); *In re Flash Memory*, 643 F. Supp. 2d at 1159.

- **New York**: *Sheet Metal Workers*, 263 F.R.D. at 214 (dismissing claim because "the End-Payor Plaintiffs have made no allegation that any deceptive conduct took place in New York") (citing *Goshen v. Mut. Life Ins. Co.*, 774 N.E.2d 1190, 1196 (N.Y. 2002)).

- **North Carolina**: *In re Cast Iron*, 2015 WL 5166014, at *33 ("North Carolina federal courts have interpreted [N.C. Gen. Stat. § 75–1] as addressing primarily local concerns.") (citing *ITCO Corp. v. Michelin Tire Corp., Com. Div.*, 722 F.2d 42, 47-48 (4th Cir. 1983)); *Verona v. U.S. Bancorp*, 7:09-CV-057-BR, 2011 WL 1252935, at *15 (E.D.N.C. Mar. 29, 2011) (concluding that North Carolina's Unfair and Deceptive Trade Practices Act extends only to cases in which the defendant's conduct took place in North Carolina or where the conduct had a substantial in-state effect).

EPPs' claims under the consumer protection statutes of these states must be dismissed.

### 5.     EPPs Cannot Assert Claims Under the Tennessee Consumer Protection Statute Because It Precludes Class Actions.

EPPs' claims under the Tennessee consumer protection statute fail because it precludes class actions.  Tenn. Code Ann. § 47-18-109(a)(1) (2018) (plaintiff may "bring an action individually"); *In re Ford Tailgate Litig.*, No. 11-CV-2953-RS, 2014 WL 1007066, at *9 (N.D. Cal. Mar. 12, 2014) (dismissing class action); *In re DDAVP Indirect Purchaser Antitrust Litig.*, 903 F. Supp. 2d 198, 229 (S.D.N.Y. 2012) (same); *Bearden v. Honeywell Int'l Inc.*, No. 3:09-1035, 2010 WL 3239285, at *8-10 (M.D. Tenn. Aug. 16, 2010) (same).

**6.      EPPs Are Not "Consumers" and Thus Lack Standing.**

The consumer protection laws of the District of Columbia, Kansas, Maine, Massachusetts, Missouri, Rhode Island, Vermont, and Virginia provide a cause of action only for certain types of consumers, which do not include health trusts like EPPs that reimburse their local members or otherwise pay for their members' use of Zetia® or generic Zetia®. (Compl. ¶¶ 8-15.) *See* Appendix B. EPPs therefore lack standing to assert claims in these jurisdictions:

- **District of Columbia**: *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1043 (D.C. Cir. 2010) ("consumer" is "a person who receives or demands good or services that are primarily for personal, household, or family use"); *In re Refrigerant Compressors*, 2013 WL 1431756, at \*22 (dismissing claim because it was "implausible" that corporation purchased for such uses).

- **Kansas**: Kan. Stat. Ann. § 50-624(b) (2018) ("'Consumer' means an individual, husband and wife, sole proprietor, or family partnership who seeks or acquires property or services for personal, family, household, business or agricultural purposes."); *In re Solodyn*, 2015 WL 5458570, at \*17 ("As institutional purchasers, the end payors do not fall within the statutory definition of consumers and cannot state a claim for relief").

- **Maine**: Me. Rev. Stat. tit. 5, § 213 (2018) (granting a cause of action to "[a]ny person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes"); *Sanford v. Nat'l Ass'n for the Self-Employed, Inc.*, 640 F. Supp. 2d 82, 90 (D. Me. 2009) (dismissing claim because membership in professional association did not primarily serve "personal, family, or household purposes").

- **Massachusetts**: *In re Asacol*, 2016 WL 4083333, at \*13 (dismissing claims brought by health funds because they "cannot show that they undertook the relevant transactions for purely personal reasons (such as the purchase of an item for personal use)" (internal quotation omitted)); *In re Lidoderm*, 103 F. Supp. 3d at 1163-64 (same).

- **Missouri**: Mo. Rev. Stat. § 407.025(1) (limiting claims to those "who purchase[] or lease[] merchandise primarily for personal, family or household purposes"); *In re Asacol*, 2016 WL 4083333, at \*12 (dismissing claims brought by health funds).

- **Rhode Island**: R.I. Gen. Laws § 6-13.1-5.2(a) (2017) (cause of action for person who "purchase or leases goods or services primarily for personal, family, or household purposes"); *In re TFT-LCD (Flat Panel)*, 586 F. Supp. 2d at 1130 ("Plaintiffs do not cite any authority to support their position that a business entity may bring a claim under the [Rhode Island consumer protection statute], and defendants cite a case strongly suggesting that one may not." (citing *ERI Max Entm't, Inc. v. Streisand*, 690 A.2d 1351, 1354 (R.I. 1997)); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 07-5944 SC, 2010 WL 9543295, at

*15 (N.D. Cal. Feb. 5, 2010) ("And the courts of Rhode Island appear to have decided that the UTPCPA benefits only consumers and not businesses.").

- **Vermont**: Vt. Stat. Ann. tit. 9, § 2451a(a) (defining "consumer" in part as "any person who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services not for resale in the ordinary course of his or her trade or business but for his or her use or benefit or the use or benefit of a member of his or her household . . . ."); *In re Aggrenox*, 2016 WL 4204478, at *9 (prohibiting health association from suing for purchases "in connection with drugs of which [plaintiff's] members are consumers").

- **Virginia**: Va. Code Ann. § 59.1-200 (prohibiting acts "committed by a supplier in connection with a consumer transaction"); Va. Code Ann. § 59.1-198 (defining a consumer transaction as one that deals with the advertisement or sale of goods or services "to be used primarily for personal, family or household purposes"); *Microsoft Corp. v. #9 Software, Inc.*, 405CV106, 2005 WL 3447965, at *4 (E.D. Va. Dec. 15, 2005) (limiting "the right to bring suit to those who have purchased goods for personal, family, or household use.").

EPPs have not stated a cause of action under these state consumer protection statutes.

### 7.     EPPs Cannot State a Claim Under Consumer Protection Statutes with a Notice Provision.

EPPs' claims under the consumer protection laws of Massachusetts and West Virginia also fail. *See* Appendix B. Under the laws of these states, a plaintiff must allege that it complied with statutory requirements to provide written notice to the defendant in advance of bringing suit. Here, EPPs do not allege that they satisfied these requirements. "The [pre-suit notice] procedure presumably is designed to encourage settlement and to avoid unnecessary lawsuits," and failing to provide notice or providing notice months after filing "flies in the face of both the statutory language and its policy." *In re New Motor Vehicles*, 350 F. Supp. 2d at 183 (dismissing similar claim under the Georgia consumer protection law). EPPs do not allege that they complied with pre-suit notice requirements in Massachusetts or West Virginia:

- **Massachusetts**: Mass Gen. Laws ch. 93A, § 9(3) (2018) (requiring a plaintiff to deliver a "written demand for relief" to a potential defendant thirty days prior to the filing of a court action); *In re Suboxone*, 64 F. Supp. 3d at 700-01 (dismissing claim where plaintiff "acknowledge[d] that they did not satisfy the pre-suit demand requirement") (citing *Entrialgo v. Twin City Dodge, Inc.*, 333 N.E.2d 202, 204 (Mass. 1975)).

- **West Virginia**: W. Va. Code § 46A-6-106(c) (2018) ("no action . . . may be brought . . . until the person has informed the seller or lessor in writing and by certified mail, return receipt requested, of the alleged violation and provided the seller or lessor twenty days from receipt of the notice of violation . . . to make a cure offer"); *In re Processed Egg Prods. Antitrust Litig.*, 851 F. Supp. 2d 867, 911 (E.D. Pa. 2012) (dismissing claim for failure to provide pre-suit notice); *Perry v. Tri-State Chrysler Jeep, LLC*, No. CIV.A. 3:08-0104, 2008 WL 1780938, at *4 (S.D. W. Va. Apr. 16, 2008) (same).

As set forth above with respect to the antitrust notice requirements (*see supra* Section IV.B.3), post-suit notice of violations does not satisfy pre-suit notice requirements. *See, e.g., Waters v. Electrolux Home Prods., Inc.*, 154 F. Supp. 3d 340, 354 (N.D. W. Va. 2015) (dismissing claim "[b]ecause providing written notice is a prerequisite to filing a complaint" and "[t]he plaintiffs failed to plead that they notified Equitrans in writing of the alleged violations prior to filing their complaint"). EPPs' claims under the laws of these states must therefore be dismissed.

### 8. EPPs Fail to Plead a Violation of Florida's Consumer Protection Statute with Sufficient Particularity.

The heightened pleading requirements of Rule 9(b) govern pleading under Florida's consumer protection statute. Fla. Stat. § 501.204. As a result, EPPs must plead the circumstances of any alleged fraudulent conduct with particularity. *Sunoptic Techs., LLC v. Integra Luxtec, Inc.*, No. 08-cv878, 2009 WL 722320, at *2 (M.D. Fla. Mar. 18, 2009) (holding that "[l]ike fraud, a claim pursuant to the FDUTPA . . . must meet the heightened pleading standard under Rule 9(b)"). While some courts have held that Florida requires specificity under Rule 9(b) only for deceptive, not anticompetitive, conduct, *see, e.g., In re Auto. Parts Antitrust Litig.*, No. 12-MD-02311, 2013 WL 2456612, at *23 (E.D. Mich. June 6, 2013), "[m]ost courts construing claims alleging violations of the Federal Deceptive Trade Practices Act or its state counterparts have required the heightened pleading standard requirements of Rule 9(b). In light of this trend, claims arising under the FDUTPA must be pled with particularity." *Wrestlereunion, LLC v. Live Nation Television Holdings, Inc.*, No. 8:07-CV-2093-JDW-MSS, 2008 WL 3048859, at *3 (M.D. Fla. Aug. 4, 2008).

EPPs do not allege fraud or deceit with particularity. The Complaint fails to allege deceptive acts by Defendants, and also fails to contain statements alleging with particularity how the deception was perpetrated or the content of any deceptive statements. In fact, EPPs fail to identify any statement made by Defendants *at all*. Instead, EPPs merely allege that Defendants engaged in "unfair methods of competition, and unfair, unconscionable, and/or deceptive conduct" (Compl. ¶ 351), without any more specificity—this alone is grounds for dismissal. *See In re Refrigerant Compressors*, 2013 WL 1431756, at *21 (dismissing Florida consumer protection claim because plaintiffs did not address "whether they have pleaded a FDUTPA claim based on a price-fixing theory *with the requisite particularity*") (emphasis in original). Accordingly, EPPs' Florida consumer protection claims fail to meet Rule 9(b)'s requirement to allege "with particularity the circumstances constituting fraud or mistake." *See* Fed. R. Civ. P. 9(b).

**D.    EPPs' Unjust Enrichment Claims Should Be Dismissed.**

**1.    EPPs Have Not Adequately Alleged A Claim of Unjust Enrichment Under the Laws of Any Jurisdiction.**

In the Fourth Claim for Relief, EPPs repackage their antitrust and consumer protection claims as unjust enrichment claims under the laws of the District of Columbia and thirty-seven states. (Compl. ¶ 370.) The unjust enrichment claims fail, however, because EPPs "have not truly *pleaded* claims under [the various state unjust enrichment laws] sufficient to show their entitlement to recover under them, as required by Rule 8." *In re Aggrenox*, 94 F. Supp. 3d at 255 (emphasis in original). Instead, EPPs have asserted antitrust claims, and then merely "allege[d] that those claims are also actionable . . . as unjust enrichment." *Id.* (dismissing claims) (internal citations omitted). As the Supreme Court clarified in *Iqbal*, "[a] pleading that offers labels and conclusions or formulaic recitation of the elements of a cause of action will not do." 556 U.S. at 678 (internal quotation marks omitted). Yet a "formulaic recitation" is all that EPPs provide here.

EPPs' unjust enrichment allegations consist of thirteen paragraphs that are purportedly applicable to *all* jurisdictions in which EPPs assert a claim, and that do not plead any specific fact about any jurisdiction.  EPPs' unjust enrichment claims merely repackage—and are explicitly predicated on—the underlying antitrust allegations.  Instead of properly pleading each claim, as required under Rule 8, EPPs "simply enumerate a long list of state-law claims for states where they might otherwise have no available antitrust recovery and rely on the defendants and the court to sort out whether or how those laws can act as surrogates for antitrust law." *In re Aggrenox*, 94 F. Supp. 3d at 255.[9]  But this "bald assertion that the alleged antitrust conduct violates dozens of non-antitrust laws, or the implication that there are no consequential differences between those laws, is not entitled to deference, because 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678).  Thus, EPPs' claims for unjust enrichment must be dismissed.  *See* Appendix C.

## 2. EPPs Cannot Use Unjust Enrichment to Circumvent *Illinois Brick*.

Several of EPPs' unjust enrichment claims fail for another independent reason.  Numerous courts have concluded that "where an antitrust defendant's conduct cannot give rise to liability under state antitrust and consumer protection laws, Plaintiffs should be prohibited from recovery under a claim for unjust enrichment." *In re Flonase*, 692 F. Supp. 2d at 542; *see also In re Niaspan*, 42 F. Supp. 3d at 763 ("join[ing] the majority of courts in concluding" that indirect purchasers cannot circumvent *Illinois Brick* via unjust enrichment claims); *In re K-Dur Antitrust Litig.*, No. 01-CV-1652, 2008 WL 2660780, at *5 (D.N.J. Feb. 28, 2008) ("[W]here the applicable state law bars antitrust actions for damages by indirect purchasers . . . a plaintiff cannot circumvent the

---

[9]  *See also In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1033, 1088 (S.D. Cal. 2017); *In re Opana ER*, 162 F. Supp. 3d at 726; *Avenarius v. Eaton Corp.*, 898 F. Supp. 2d 729, 740 (D. Del. 2012); *In re Wellbutrin XL*, 260 F.R.D. at 167.

statutory framework by recasting an antitrust claim as one for unjust enrichment."). Nine states in which EPPs raise unjust enrichment claims have adopted the *Illinois Brick* rule and prohibit indirect purchasers from pursuing antitrust claims. Allowing otherwise would "end run around the policies allowing only direct purchasers to recover." *In re Terazosin*, 160 F. Supp. 2d at 1380 (internal citation and quotation marks omitted). Here, EPPs try to convert their antitrust claims into unjust enrichment claims, even in states where *Illinois Brick* controls. EPPs allege claims that would impermissibly circumvent an *Illinois Brick* rule under the laws of Alaska, Arkansas, Colorado, Connecticut, Maryland, Massachusetts, Missouri, Montana, and South Carolina.[10] *See* Appendix C. The unjust enrichment claims under these states' laws should be dismissed.

### 3.    EPPs Cannot State Unjust Enrichment Claims in States Requiring EPPs to Confer a Direct Benefit on, or Have a Direct Relationship with, the Defendants.

Unjust enrichment in Florida, Idaho, Kansas, Maine, Michigan, New York, North Carolina, and North Dakota requires plaintiffs to plead they conferred a direct benefit on, or had a direct relationship with, the defendant. *See* Appendix C. EPPs fail to meet this requirement because they allege that they "purchased substantial amounts of Zetia . . . indirectly from the Defendants," not directly. (Compl. ¶ 297.) EPPs have therefore failed to allege that they conferred a direct benefit on any Defendant, as required under the laws of these states:

- **Florida**: *In re Suboxone*, 64 F. Supp. 3d at 705-06 ("Florida law requires that a benefit be conferred upon the defendant directly in order to state a claim for unjust enrichment.").

- **Idaho**: *In re Solodyn*, 2015 WL 5458570, at *18 ("Idaho, Maine and North Dakota require a direct benefit to state a claim for unjust enrichment so the unjust enrichment claims arising under these states' laws must be dismissed.").

---

[10]    *See In re DDAVP*, 903 F. Supp. 2d at 233 (Alaska, Colorado); *In re Lidoderm*, 103 F. Supp. at 1175 & n.18 (Arkansas); *In re Niaspan*, 42 F. Supp. 3d at 763 & n.26 (Colorado, Maryland); *United Food & Commercial Workers*, 74 F. Supp. 3d at 1088-90 & n.49 (Connecticut, Missouri, South Carolina); *In re Suboxone*, 64 F. Supp. 3d at 704 (Massachusetts); *In re TFT-LCD (Flat Panel)*, 599 F. Supp. 2d at 1192 (Montana).

- **Kansas**: *In re Aftermarket Filters Antitrust Litig.*, No. 08 C 4883, 2010 WL 1416259, at *2-3 (N.D. Ill. Apr. 1, 2010) ("requir[ing] plaintiffs to plead that they have conferred a direct benefit on the defendant," and any benefit conferred by indirect purchasers "would be on others in the chain of distribution from whom they purchased, not on defendants").

- **Maine**: *In re Aftermarket Filters*, 2010 WL 1416259, at *2-3 (dismissing unjust enrichment claims of indirect purchasers "under the laws of . . . Maine" because "[o]nly the direct purchasers have conferred a direct benefit on defendants") (citing *Rivers v. Amato*, 2001 WL 1736498 (Me. Super. June 22, 2001)).

- **Michigan**: *See Fenerjian*, 72 F. Supp. 3d at 1086-88 (compiling cases and holding that the transactions between the indirect purchasers and the defendant in the case before it were "too attenuated to state an unjust enrichment claim under Michigan Law").

- **New York**: *Merced Irrigation Dist. v. Barclays Bank PLC*, 165 F. Supp. 3d 122, 146 (S.D.N.Y. 2016) ("At no time does [Plaintiff] allege that it or any members of the proposed Class traded or dealt directly with [Defendant] in any manner.  Since [Plaintiff] has not pled facts that make out any direct or substantive relationship between itself, or any other members of the purported Class, and [Defendant], the facts alleged in the Complaint do not sustain an unjust enrichment claim."); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 WL 3988488, at *21 (N.D. Ill. June 29, 2015) (dismissing unjust enrichment claim because indirect purchasers "did not themselves confer any benefit directly on Defendants").

- **North Carolina**: *In re Flonase*, 692 F. Supp. 2d at 545 & n.15 (dismissing indirect purchaser claims because North Carolina law requires "a plaintiff to establish that it directly conferred a benefit on the defendant") (citing *Effler v. Pyles,* 380 S.E.2d 149, 152 (N.C. Ct. App. 1989)); *In re Relafen*, 221 F.R.D. at 287 ("The end payor plaintiffs have similarly failed to satisfy this burden. Any enrichment that [Defendant] received was conferred more directly by pharmaceutical wholesalers than by end payors, who by definition purchased Relafen from sources other than [Defendant].").

- **North Dakota**: *Apache Corp. v. MDU Res. Grp., Inc.*, 603 N.W.2d 891, 895 (N.D. 1999) ("The essential element" for unjust enrichment "is the receipt of a benefit by the defendant from the plaintiff which would be inequitable to retain without paying for its value.").

### 4.     EPPs' Claims for Unjust Enrichment Fail in States That Require EPPs to Allege a Lack of Remedy at Law.

To properly plead a claim for unjust enrichment under the laws of Alabama, Hawaii, and Massachusetts, EPPs must allege that they lack an adequate remedy at law.  *See* Appendix C. Although EPPs' offer the conclusory allegation that they "have no adequate remedy at law," (Compl. ¶ 365), the Complaint contradicts this by alleging that EPPs have an adequate damages

remedy under antitrust and/or consumer protection statutes.  (Compl. ¶¶ 349, 359.)  And Plaintiffs

offer no facts to support their conclusory allegation that they lack an adequate remedy at law.  It

does not matter if EPPs are ultimately unsuccessful in obtaining those other remedies.  For

example, under Massachusetts law, plaintiffs cannot bring "a claim for unjust enrichment where

an adequate remedy at law exists—regardless of the viability of that theory or whether it sounds

in contract, fraud, or tort."  *In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372,

419 (S.D.N.Y. 2017), *modified on reconsideration*, No. 14-MC-2543 (JMF), 2017 WL 3443623

(S.D.N.Y. Aug. 9, 2017).  The standard is availability of an adequate remedy, not the likelihood

of success.  The following states take this approach and claims in those states should be dismissed:

- **Alabama**: *See N. Assur. Co. v. Bayside Marine Constr., Inc.*, No. 08-CV-222 (KD), 2009 WL 151023, at *4 (S.D. Ala. 2009) (in Alabama, "unjust enrichment is an equitable remedy only to be invoked where there is no available remedy at law"); *Pearson's Pharm., Inc. v. Express Scripts, Inc.*, 505 F. Supp. 2d 1272, 1278 (M.D. Ala. 2007) (similar).

- **Hawaii**: *In re Chocolate Confectionary Antitrust Litig.*, 749 F. Supp. 2d 224, 237 (M.D. Pa. 2010) ("Under Hawaii law, '[t]he absence of an adequate remedy at law . . . is the necessary prerequisite to maintaining equitable claims.'") (quoting *AAA Haw., LLC v. Haw. Ins. Consultants, Ltd.*, CV. No. 08-00299 DAE-BMK, 2008 WL 4907976, at *3 (D. Haw. Nov. 12, 2008)); *see also Porter v. Hu*, 169 P.3d 994, 1007 (Haw. 2007).

- **Massachusetts**: *In re Gen. Motors LLC Ignition Switch*, 257 F. Supp. 3d at 419 (unjust enrichment claim prohibited where "adequate remedy at law exists—regardless of the viability of that theory or whether it sounds in contract, fraud, or tort").

## V.    CONCLUSION

For the reasons set forth in the Motion to Dismiss Direct Purchaser Plaintiffs' Consolidated

Class Action Complaint, incorporated herein by reference, Defendants respectfully request that the

Court dismiss EPPs' Complaint in its entirety.  Alternatively, Defendants respectfully request that

the Court dismiss EPPs' claims as follows, based on the grounds expressly argued above:

- First and Second Claims for Relief (antitrust claims):  All claims but those arising under the laws of Iowa, Kansas, Michigan, Minnesota, New Mexico, North Dakota, and Oregon.

- Third Claim for Relief (consumer protection claims):  All claims but those arising under the laws of California, Nevada, and New Mexico.

- Fourth Claim for Relief (unjust enrichment claims):  All claims.

Dated:  October 11, 2018


Respectfully submitted,


| | |
|---|---|
| /s/        *Stephen E. Noona* | /s/          *J. Kevin Fee* |
| Stephen E. Noona | J. Kevin Fee (Bar. No. 88376) |
| Virginia State Bar No. 25367 | Teri J. Diaz (Bar. No. 87457) |
| KAUFMAN & CANOLES, P.C. | MORGAN, LEWIS & BOCKIUS LLP |
| 150 W. Main Street, Suite 2100 | 1111 Pennsylvania Ave., NW |
| Norfolk, VA  23510-1665 | Washington, D.C.  20005 |
| Telephone:  (757) 624-3239 | Tel:  202.739.3000 |
| Facsimile:  (888) 360-9092 | Fax: 202.739.3001 |
| senoona@kaufcan.com | kevin.fee@morganlewis.com |
| | teri.diaz@morganlewis.com |
| Samuel G. Liversidge (*pro hac vice*) | |
| Christopher D. Dusseault (*pro hac vice*) | Steven A. Reed (admitted *pro hac vice*) |
| Michael M. Lee (*pro hac vice*) | R. Brendan Fee (admitted *pro hac vice*) |
| GIBSON, DUNN & CRUTCHER LLP | Zachary M. Johns (admitted *pro hac vice*) |
| 333 South Grand Avenue | Jessica J. Taticchi (admitted *pro hac vice*) |
| Los Angeles, CA  90071-3197 | MORGAN, LEWIS & BOCKIUS LLP |
| Telephone:  (213) 229-7855 | 1701 Market Street |
| Facsimile:  (213) 229-6855 | Philadelphia, PA  19103 |
| Sliversidge@gibsondunn.com | Tel:  215.963.5000 |
| CDusseault@gibsondunn.com | Fax: 215.963.5001 |
| MLee@gibsondunn.com | steven.reed@morganlewis.com |
| | brendan.fee@morganlewis.com |
| Veronica S. Lewis (*pro hac vice*) | zachary.johns@morganlewis.com |
| GIBSON, DUNN & CRUTCHER LLP | jessica.taticchi@morganlewis.com |
| 2100 McKinney Avenue | |
| Dallas, TX  75201-6912 | Stacey Anne Mahoney (admitted *pro hac vice*) |
| Telephone:  (214) 698-3320 | MORGAN, LEWIS & BOCKIUS LLP |
| Facsimile:  (214) 571-2936 | 101 Park Ave. |
| vlewis@gibsondunn.com | New York, NY  10178 |
| | Tel:  212.309.6000 |
| Eric J. Stock (*pro hac vice*) | Fax: 212.309.6001 |
| GIBSON, DUNN & CRUTCHER LLP | stacey.mahoney@morganlewis.com |
| 200 Park Avenue | |
| New York, NY  10166 | *Counsel for Defendants* |
| Telephone:  (212) 351-2301 | *Glenmark Pharmaceuticals, Ltd. and* |
| Facsimile:  (212) 716-0801 | *Glenmark Pharmaceuticals Inc. USA,* |
| estock@gibsondunn.com | *incorrectly identified as Glenmark Generics* |
| | *Inc., USA* |
| Tarek Ismail (*pro hac vice*) | |
| Jennifer L. Greenblatt (*pro hac vice*) | |

31

GOLDMAN ISMAIL TOMASELLI BRENNAN &
BAUM LLP
564 West Randolph Street, Suite 400
Chicago, IL 60661
Telephone: (312) 681-6000
Facsimile: (312) 881-5191
tismail@goldmanismail.com
jgreenblatt@goldmanismail.com

*Counsel for Defendants Merck & Co., Inc.,
Merck Sharp & Dohme Corp., Schering-
Plough Corp., Schering Corp., MSP
Singapore Co. LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 11, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send an email notification of such filing to all counsel of record who have filed an appearance.

Dated: October 11, 2018

/s/   *Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510-1665
Telephone:  (757) 624-3239
Facsimile:  (888) 360-9092
senoona@kaufcan.com

*Counsel for Defendants Merck & Co., Inc.; Merck*
*Sharp & Dohme Corp.; Schering-Plough Corp.;*
*Schering Corp. and MSP Singapore Co. LLC*