UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| In re: ZETIA (EZETIMIBE) ANTITRUST LITIGATION | |
| This Document Relates To: | MDL No. 2836 |
| All Direct Purchaser Actions | Civil Action No. 18-md-2836-RBS-DEM |

**REPLY IN FURTHER SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION TO COMPEL WILSON SONSINI GOODRICH & ROSATI TO PRODUCE SUBPOENAED DOCUMENTS**

Direct purchaser plaintiffs ("direct purchasers") are pleased to report that nonparty law firm Wilson Sonsini Goodrich and Rosati ("Wilson Sonsini") made a production of 290 documents in response to the subpoena on the same day it served its opposition brief to the Motion to Compel (the "Motion"). That production resolved much of what necessitated the Motion to begin with, namely Wilson Sonsini's refusal to produce *any* documents unless and until direct purchasers agreed to various unreasonable demands. There are, however, some lingering issues that still need to be resolved.

Wilson Sonsini's July 1 production disclosed for the first time the substantial involvement of four other Wilson Sonsini actors in the at-issue events, former partners Arthur Hoag and Dan Brown, former associate Jonathon Lutinski, and Linda North.[1] These documents show that Arthur Hoag and Dan Brown each played a distinctive leadership and/or liaison role such that there is a strong likelihood to expect that both communicated directly with other non-Wilson Sonsini actors

---

[1] Direct purchasers have been unable to confirm the position Ms. North held at Wilson Sonsini at the time.

1

(including Merck and Glenmark's outside counsel) without a copy to any one of the three present custodians, partner Seth Silber and former associates Eliot Choy and Jennifer Saionz.

Wilson Sonsini has met our request to add Mr. Hoag and Mr. Brown as custodians with the same sort of unreasonable conditions that necessitated the Motion to begin with, specifically conditioning resolution of the remaining disputes on direct purchasers' agreement to completely forgo: (i) any further privilege logging,[2] (ii) any further discovery requests, including any follow-ups regarding subsequently produced material, (iii) any depositions whatsoever, including the keeper of records authentication deposition that has been duly noticed. As it is presently unclear whether direct purchasers will even need any further privilege logging, further follow-ups, and/or any Wilson Sonsini depositions, there are no real ripe disputes on these issues for the Court to resolve *except* for Wilson Sonsini's use of these issues as a roadblock to discovery.

Wilson Sonsini's production also does not include any of the retainer-related materials Wilson Sonsini had previously agreed to produce but now claims are privileged and have been withheld. The at-issue retainer agreements and conflict waivers are not privileged and must be produced.

We accordingly request that the Court enter an order in the form of the attached revised proposal compelling Wilson Sonsini to: (i) conduct a search of Mr. Hoag and Mr. Brown's files using the same search parameters it used to generate the current production and produce all relevant materials from those custodians' files, and (ii) produce its 2007 retainer and 2010 conflict waiver documents.

---

[2] On July 10, Wilson Sonsini served a letter providing broad, unilaterally-determined categorical descriptions of the documents it has withheld on privilege grounds.

2

I.   **Wilson Sonsini Must Produce Documents from the Custodians Revealed for the First Time Through Its Eleventh-Hour Production**

Wilson Sonsini's July 1 production revealed for the first time four additional Wilson Sonsini actors that were materially involved in the April 2010 Par Distribution Agreement and the May 2010 Glenmark Settlement Agreement. ████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████[3]

████████████████████████████████████████[4]████

████████████████████████████████████████████████

---

[3] ████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████

[4] Beyond the Wilson Sonsini produced emails reflecting Mr. Brown's senior role in the at-issue events, a February 9-11, 2010 email thread Glenmark first produced in its 30,000-page June 7 production clarifies that Mr. Brown had particular oversight over the due diligence issues and was the lone Wilson Sonsini recipient of the non-privileged Merck-Glenmark patent litigation materials Par considered in connection with the proposed Glenmark-Par deal and contemplated joint subsequent settlement with Merck.

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████

At all times leading up to the Motion and the July 1 production Wilson Sonsini had ample opportunity to disclose the involvement of these four other material Wilson Sonsini actors and particularly Arthur Hoag and Dan Brown but did not do so. Instead, it proposed and maintained as the only appropriate custodians the three Wilson Sonsini attorneys the subpoena identified by name, notwithstanding that we repeatedly made clear throughout the meet and confer process that direct purchasers lacked the information necessary to determine the complete universe of Wilson Sonsini actors and that it was therefore incumbent on Wilson Sonsini to investigate the issues and "identify any other Wilson Sonsini personnel materially involved in the issues beyond the three identified in the subpoena." Demuth Decl. Ex. 2 (ECF 288-2) at 22. Given their material roles and responsibilities, Mr. Hoag and Mr. Brown should have been previously disclosed, and their files searched for responsive documents from the get go.[5]

---

[5] In its opposition, Wilson Sonsini did not meaningfully address the arguments made in the opening brief (at 12-13) concerning direct purchasers' right to seek additional searches. Instead, Wilson Sonsini argued that because it produced 290 documents, it should now be excused from any further discovery obligations. Opp. at 13-14. Direct purchasers most recent attempt to meet and confer on this issue was met with a similarly short shrift response. *See* Supplemental Declaration Ex. 10 at 2 ("From my perspective, there are no 'custodian issues' to discuss for the reasons that I made clear in our opposition brief.").

II. **Wilson Sonsini's Relies on Inapposite Mere Bystander and Litigation Counsel Cases in Support of Its Meritless Argument that It Should Be Shielded from Any Discovery**

Wilson Sonsini is not an uninvolved nonparty. It directly negotiated and advised its client regarding both of the at-issue agreements, including the Settlement Agreement containing the unlawful no-AG reverse payment agreement. The documents sought from Wilson Sonsini include patent litigation and settlement materials that Wilson Sonsini is ethically required to maintain, including communications between only outside counsel that would not be produced by any party in the litigation.

Wilson Sonsini's reliance on nonparty bystander cases such as *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180 (4th Cir. 2019) is misplaced. That case involved a challenge to the Mississippi's lethal-injection procedure in which plaintiffs subpoenaed records from bystander nonparty Virginia about its own lethal-injection procedures. The documents Virginia already produced in response to the subpoena demonstrated that it would not have any of the kind of materials the Mississippi death row plaintiffs theorized would support their challenge to Mississippi's lethal-injection procedure. 921 F.3d at 190-191. In contrast, the documents Wilson Sonsini produced confirm its direct role in at-issue events and the need for further discovery.

Wilson Sonsini similarly relies on inapposite litigation counsel cases to argue that it is presumptively immune from any discovery because it is a law firm. While some courts do take measures to "protect against the ills of deposing opposing counsel in a pending case which could potentially lead to the disclosure of the attorney's litigation strategy," *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 71 (2d Cir. 2003) (Sotomayor, J.) (quoting *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726 (8th Cir. 2002)), those cases do not "automatically insulate [even opposing litigation counsel] from a deposition nor automatically require prior resort to alternative

5

discovery devices." *Dennis Friedman*, 350 F.3d at 72. Moreover, any such "heightened protection [provided to litigation counsel does not extend] to attorneys who represented a client in a completed case." *Pamida, Inc.*, 281 F.3d at 730 (permitting deposition of a nonparty attorney who represented a party in a concluded patent infringement case). Wilson Sonsini is not litigation counsel in this antitrust case, nor was Wilson Sonsini litigation counsel in the Merck-Glenmark patent litigation proceedings. Its role was narrowly cabined to brokering the two at-issue agreements – basically a business transaction related to a now-concluded litigation. There is no heightened burden to overcome for the clearly relevant discovery sought here.[6]

### III. Wilson Sonsini's 2007 Retainer and 2010 Conflict Waivers Are Not Privileged But Are Responsive and Should Be Produced.



---

[6] All of Wilson Sonsini's other cases are plainly inapt. *In re Subpoenas for Documents Issued to ThompsonMcMullan, P.C.*, No. CV 3:16-MC-1, 2016 WL 1071016 (E.D. Va. Mar. 17, 2016) quashed the law firm subpoena because it sought documents concerning separate litigation in which the law firm represented the same client but which litigation bore little relevance to the litigation at hand. *Phillips & Cohen, LLP v. Thorpe*, 300 F.R.D. 16 (D.D.C. 2013), quashed the subpoena because it similarly sought documents "of no conceivable relevance in the context of the action now pending." 300 F.R.D. at 18. *Doubleday v. Ruh*, 149 F.R.D. 601 (E.D. Cal. 1993), quashed a deposition subpoena for criminal prosecutor testimony after directing production of relevant documents but relied on an expansive reading of *Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986), which the Eight Circuit itself later rejected in *Pamida, Inc. v. E.S. Originals, Inc.,* 281 F.3d 726 (8th Cir. 2002). Wilson Sonsini also incorrectly characterizes *Rhodes v. Sutter Gould Med. Found.*, No. 12-cv-13, 2014 WL 2091767 (E.D. Cal. May 16, 2014), as a case not involving present litigation counsel. *Compare* Opp. at 8 & n.4 *with* 2014 WL 2091767 at *1-2 & n.2 (subpoena sought counsel testimony concerning her efforts to comply with a prior discovery order).

6

### IV. Unless and Until Direct Purchasers Actually Seek Further Discovery There Is No Ripe Dispute for the Court to Resolve

No nonparty wants to be subject to discovery, and those that do get subpoenaed understandably want it to be over and done with. But these desires do not trump legitimate discovery needs. Wilson Sonsini's repeated demand that any responsive production be conditioned on direct purchasers first agreeing to forgo any and all checks on what it might do to satisfy the subpoena is unreasonable. It is presently unclear whether and to what extent further privilege logging, privilege challenges, follow-up discovery (including in response to yet to be produced documents), and/or deposition discovery will be necessary. It may very well be that no further action beyond the presently contemplated production is needed. However, with the discovery of additional custodians having central roles in the transactions at issue, revealed in the first production of documents but not identified by Wilson Sonsini's counsel in the meet and confer process, direct purchasers' cannot be certain at present. In the meantime, Wilson Sonsini has no basis in law to demand its various give ups from direct purchasers as the condition precedent to production of concededly relevant documents.[8]

### CONCLUSION

For the foregoing reasons and the reasons stated in direct purchasers opening brief, the Court should grant the Motion by entering the form of the attached revised proposed order directing Wilson Sonsini to promptly produce its 2007 and 2010 retainer and waiver materials as well as all non-privileged documents from Mr. Hoag and Mr. Brown that are responsive to the

---

[8] We need not belabor the waiver issues as direct purchasers have and will continue to treat Wilson Sonsini as if its failure to serve objections did not result in a complete waiver.

subpoena, without prejudice to direct purchasers right to seek, if necessary, further discovery in the ordinary course.

Dated: July 12, 2019     **/s/ William H. Monroe, Jr.**
William H. Monroe, Jr. (VSB No. 27441)
Marc C. Greco (VSB No. 41496)
Kip A. Harbison (VSB No. 38648)
Michael A. Glasser (VSB No. 17651)
GLASSER AND GLASSER, P.L.C.
Crown Center, Suite 600
580 East Main Street
Norfolk, VA 23510
Telephone: (757) 625-6787
Facsimile: (757) 625-5959
bill@glasserlaw.com
marcg@glasserlaw.com
kip@glasserlaw.com
michael@glasserlaw.com

*Local Counsel for Direct Purchaser Plaintiffs FWK Holdings, LLC, Rochester Drug Cooperative, Inc., Cesar Castillo, Inc. and the Proposed Direct Purchaser Class*

Thomas M. Sobol
Kristen A. Johnson
Edward Notargiacomo
Hannah Schwarzschild
Bradley Vettraino
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
tom@hbsslaw.com
kristenj@hbsslaw.com
ed@hbsslaw.com
hannahs@hbsslaw.com
bradleyv@hbsslaw.com

*Lead Counsel for the Proposed Direct Purchaser Class*

| | |
|---|---|
| John D. Radice<br>RADICE LAW FIRM, P.C.<br>475 Wall Street<br>Princeton, NJ 08540<br>Tel.: (646) 245-8502<br>Fax: (609) 385-0745<br>jradice@radicelawfirm.com<br><br>Joseph M. Vanek<br>David P. Germaine<br>John P. Bjork<br>Paul E. Slater<br>Matthew T. Slater<br>SPERLING & SLATER, P.C.<br>55 W. Monroe, Suite 3200<br>Chicago, IL 60603<br>Telephone: (312) 641-3200<br>Facsimile: (312)641-6492<br>jvanek@sperling-law.com<br>dgermaine@sperling-law.com<br>jbjork@sperling-law.com<br>pes@sperling-law.com<br>mslater@sperling-law.com | Sharon K Robertson<br>Donna M. Evans<br>COHEN MILSTEIN SELLERS & TOLL PLLC<br>88 Pine Street, 14th Floor<br>New York, NY 10005<br>Tel: (212) 838-7797<br>Fax: (212) 838-7745<br>srobertson@cohenmilstein.com<br>devans@cohenmilstein.com<br><br>Steve D. Shadowen<br>Matthew C. Weiner<br>HILLIARD & SHADOWEN LLP<br>1135 W. 6th Street, Suite 125<br>Austin, TX 78703<br>Tel.: (855) 344-3298<br>steve@hilliardshadowenlaw.com<br>matt@hilliardshadowenlaw.com<br><br>Joseph H. Meltzer<br>Terence S. Ziegler<br>KESSLER TOPAZ MELTZER & CHECK LLP<br>280 King of Prussia Road<br>Radnor, PA 19087<br>Telephone: (610) 667-7706<br>Facsimile: (610) 667-7056<br>jmeltzer@ktmc.com<br>tziegler@ktmc.com |

*Counsel for Plaintiff FWK Holdings, LLC and the Proposed Direct Purchaser Class*

| | |
|---|---|
| Linda P. Nussbaum<br>NUSSBAUM LAW GROUP, P.C.<br>1211 Avenue of the Americas, 40th Floor<br>New York, NY 10036-8718<br>Telephone: (917) 438-9189<br>lnussbaum@nussbaumpc.com | Jayne A. Goldstein<br>SHEPHERD, FINKELMAN, MILLER<br>&SHAH, LLP<br>1625 North Commerce Parkway, Ste. 320<br>Fort Lauderdale, FL 33326<br>Telephone: (954) 515-0123<br>Facsimile: (866) 300-7367<br>jgoldstein@sfmslaw.com |

*Counsel for Plaintiff Cesar Castillo, Inc. and the Proposed Direct Purchaser Class*

| | |
|---|---|
| David F. Sorensen<br>Zachary D. Caplan<br>BERGER & MONTAGUE, P.C.<br>1818 Market Street, Suite 3600<br>Philadelphia, PA 19103<br>Telephone: (215) 875-3000<br>Facsimile: (215) 875-4604<br>dsorensen@bm.net<br>zcaplan@bm.net | Barry Taus<br>Archana Tamoshunas<br>Kevin Landau<br>TAUS, CEBULASH & LANDAU, LLP<br>80 Maiden Lane, Suite 1204<br>New York, NY10038<br>Telephone: (646) 873-7654<br>btaus@tcllaw.com<br>atamoshunas@tcllaw.com<br>klandau@tcllaw.com |

| | |
|---|---|
| Peter R. Kohn<br>Joseph T. Lukens<br>FARUQI & FARUQI, LLP<br>1617 John F. Kennedy Boulevard, Suite 1550<br>Jenkintown, PA 19103<br>Telephone: (215) 277-5770<br>Facsimile: (215) 277-5771<br>pkohn@faruqilaw.com<br>jlukens@faruqilaw.com | Bradley J. Demuth<br>FARUQI & FARUQI, LLP<br>685 Third Avenue, 26th Floor<br>New York, NY 10017<br>Telephone: (212) 983-9330<br>Facsimile: (212) 983-9331<br>bdemuth@faruqilaw.com |

*Counsel for Rochester Drug Cooperative, Inc. and the Proposed Direct Purchaser Class*

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record who have made a formal appearance.

Dated: July 12, 2019　　　　　　　　　　　　　　　　**/s/ William H. Monroe, Jr.**
　　　　　　　　　　　　　　　　　　　　　　　　　　　William H. Monroe, Jr. (VSB No. 27441)