# Exhibit

# 1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| IN RE: ZETIA (EZETIMIBE) ANTITRUST LITIGATION | MDL No. 2:18-md-2836 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**SETTLEMENT AGREEMENT**

This Settlement Agreement is made and entered into by and between Par Pharmaceutical, Inc. ("Par"), by and through its undersigned counsel, Williams & Connolly, LLP, on the one hand, and the Direct Purchaser Plaintiffs,[1] by and through their undersigned counsel Hagens Berman Sobol Shapiro LLP (on behalf of themselves and a putative class of direct purchasers of brand and generic Zetia) (collectively, "Direct Purchaser Plaintiffs" or "Plaintiffs") in the multidistrict litigation captioned *In re Zetia (Ezetimibe) Antitrust Litigation*, MDL No. 2836 (the "Zetia Antitrust MDL"), pending in the Eastern District of Virginia (the "Court").

This Settlement Agreement is intended to, and upon occurrence of the Effective Date will, fully, finally, and forever resolve, compromise, discharge, and settle the claims of the Plaintiffs in the Zetia Antitrust MDL, and any future claims brought against Par based upon the same alleged conduct, as to Par only, subject to the terms and conditions set forth herein.

---

[1] Direct Purchaser Plaintiffs include FWK Holdings, LLC, Rochester Drug Co-Operative, Inc., and Cesar Castillo, Inc.

## RECITATIONS

WHEREAS, beginning in January 2018, Plaintiffs filed multiple lawsuits against Glenmark Pharmaceuticals, Ltd. and Glenmark Generics Inc., USA ("Glenmark") and Merck & Co., Inc., Merck Sharp & Dohme Corp., Schering-Plough Corp., Schering Corp., and MSP Singapore Co. LLC ("Merck"),[2] alleging those entities had entered into an unlawful "reverse payment" settlement agreement, delaying entry of generic substitutes from the market for ezetimibe, a prescription cholesterol drug, sold under the brand name Zetia by Merck for years.

WHEREAS, on July 3, 2018, Plaintiffs' actions, including all related actions later filed, were coordinated in the Zetia Antitrust MDL.

WHEREAS, before the alleged anticompetitive reverse payment settlement agreement between Merck and Glenmark was executed, Glenmark and Par entered into a distribution arrangement whereby Par agreed to become the exclusive distributor of Glenmark's generic Zetia for Glenmark, and Par performed under the terms of that agreement (which performance included Par's participation in the negotiation of the settlement of patent litigation between Glenmark and Merck relating to generic Zetia, Par's payment of a transfer price for the acquisition of generic Zetia product, and Par's distribution of that product);

WHEREAS, on May 8, 2019, the Direct Purchaser Plaintiffs filed a motion for leave to file an Amended Consolidated Class Action Complaint (ECF No. 250-1, the "Proposed Direct Purchasers' Amended Complaint") on behalf of the Direct Purchaser Class, seeking, among other things, to name Par as an additional defendant (Zetia Antitrust MDL, ECF Nos. 249, 250) (the "May 8 Motion to Amend");

---

[2] The Direct Purchaser cases include: *FWK Holdings, LLC v. Merck & Co., Inc.*, 2:18-cv-00023 (E.D. Va.); *Cesar Castillo, Inc. v. Merck & Co., Inc.*, 2:18-cv-00039 (E.D. Va.); and *Rochester Drug Cooperative, Inc. v. Merck & Co., Inc.*, 2:18-cv-00071 (E.D. Va.).

WHEREAS, Plaintiffs in the litigation do not assert that the transfer price that Par paid Glenmark for generic Zetia was supracompetitive, but instead assert (as to generic sold product) that the price that Plaintiffs paid Par for generic Zetia was supracompetitive as a result of the May 10, 2010 agreement between Merck and Glenmark;

WHEREAS, after investigation of all the facts and circumstances, including the expeditious prosecution of this case and the strategic goals of Plaintiffs, and in light of ongoing litigation against other defendants in the Zetia Antitrust MDL, Plaintiffs' counsel are of the opinion that it would be in the best interests of the Plaintiffs to enter into this Settlement Agreement with Par;

WHEREAS, in consideration for various promises, including this Settlement Agreement, an Agreement and Covenant Not to Sue (attached as Exhibit A), and a Discovery Rider (attached as Exhibit B), Plaintiffs are willing to release Par of any liability Plaintiffs did assert or could have asserted in this Zetia Antitrust MDL;

WHEREAS, while Par denies any and all liability in connection with the Zetia Antitrust MDL, Par has concluded that it would be in its best interests to enter into this Settlement Agreement to avoid the uncertainties and additional costs of further, and possibly additional, litigation and to finally put to rest all claims relating to the Zetia Antitrust MDL;

WHEREAS, Plaintiffs' counsel (on behalf of Plaintiffs and a proposed Direct Purchaser Class later defined) and counsel for Par have engaged in arm's-length settlement negotiations and have reached this Settlement Agreement, subject to Court approval, which embodies all of the terms and conditions of the Settlement between Plaintiffs, both individually and on behalf of the Direct Purchaser Class, and Par;

WHEREAS, counsel for the Direct Purchaser Class has concluded that the Settlement is fair, reasonable, and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure and is in the best interests of the Direct Purchaser Class;

WHEREFORE, in consideration of the foregoing and the representations, warranties, and covenants contained herein, and intending to be legally bound hereby, it is agreed by the undersigned, on behalf of Plaintiffs and the proposed Direct Purchaser Class, and Par, that the Zetia Antitrust MDL and all existing or prospective claims of the Plaintiffs and the proposed Direct Purchaser Class be settled, compromised, and dismissed with prejudice as to Par (and, except as provided herein, with each party bearing its own costs), subject to the approval of the Court, on the following terms and conditions:

1. **Par Covenant.**   Contemporaneously with the execution of this Settlement Agreement, Par shall execute the Agreement and Covenant Not to Sue attached as Exhibit A (the "Par Covenant"). The Par Covenant shall be held in escrow pending entry of an order granting the Preliminary Approval Order (as defined below) to be entered by the Court. Plaintiffs and Par agree and acknowledge that the Par Covenant is incorporated into the terms of this Settlement Agreement, and that is an integral part of this Settlement Agreement.

2. **Discovery Rider.** Contemporaneously with the execution of this Settlement Agreement, Par shall execute the Discovery Rider attached as Exhibit B (the "Discovery Rider"). The Discovery Rider shall be held in escrow pending entry of a Preliminary Approval Order to be entered by the Court. Plaintiffs and Par agree and acknowledge that the Discovery Rider is incorporated into the terms of this Settlement Agreement, and that is an integral part of this Settlement Agreement.

3.     **Motion to Add Par.**   The Direct Purchaser Plaintiffs agree to prosecute the May 8 Motion to Amend expeditiously to facilitate the purposes of this Settlement Agreement.  Par agrees it shall take no position with respect to the May 8 Motion to Amend.  Upon the Court granting leave for the filing of the Proposed Direct Purchasers' Amended Complaint, Par agrees to accept service of said complaint.

4.     **Extension of Par's Deadline to Respond.**  Within three (3) business days of the filing of the Proposed Direct Purchasers' Amended Complaint, Par and the Plaintiffs shall jointly move for the Court for an extension of Par's deadline to respond to the Amended Complaint until thirty (30) days following the Court's ruling on the Preliminary Approval Motion (as defined below).

5.     **Motion for Preliminary Approval of the Settlement.**  Simultaneous with the filing of the joint motion for an extension of Par's deadline to respond to the Amended Complaint, the Direct Purchaser Plaintiffs shall file with the Court a motion requesting entry of an order (a) certifying the Direct Purchaser Class for settlement purposes only, (b) preliminarily approving the Settlement, and (c) authorizing dissemination of notice to the Direct Purchaser Class within thirty days of the execution of this Settlement Agreement (the "Preliminary Approval Motion"). The Preliminary Approval Motion, to be provided by the Direct Purchaser Plaintiffs to Par for comment in advance of filing, shall request the entry of a preliminary approval order (the "Preliminary Approval Order") and:

     a.     Request preliminary approval of the Settlement set forth in this Settlement Agreement as fair, reasonable, and adequate, and in the best interests of the Direct Purchaser Class, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure;

     b.     Request approval of the notice plan, providing for direct mailed notice to all members of the Direct Purchaser Class;

c.     Seek the appointment of the law firm Hagens Berman Sobol Shapiro LLP as counsel for the Direct Purchaser Class and appointment of the named Direct Purchaser Plaintiffs as Class Representatives for the Direct Purchaser Class, pursuant to Rule 23(g) of the Federal Rules of Civil Procedure;

d.     Seek a schedule for a hearing by the Court after the notice period has expired to approve the Settlement; andSeek a stay of all proceedings (including any deadline to respond to the Amended Complaint) against Par in the Zetia Antitrust MDL, whether by Plaintiffs or others, except as expressly provided in this Settlement Agreement.

After preliminary approval of the Settlement by the Court, the Direct Purchaser Plaintiffs shall, in accordance with the Preliminary Approval Order entered by the Court, provide the Direct Purchaser Class with notice of the Settlement pursuant to Rule 23 of the Federal Rules of Civil Procedure.

6.     **Class Certification.**   In connection with this Settlement Agreement, the Direct Purchaser Plaintiffs shall seek at preliminary and final approval, and Par shall not oppose, certification of the following Direct Purchaser Class (or any modification necessary or appropriate in order to effectuate this Settlement Agreement) for purposes of this Settlement only:

All persons or entities in the United States and its territories that purchased Zetia or generic Zetia in any form directly from Merck, Glenmark/Par, or any other generic Zetia manufacturer (including, but not limited to, Teva, Sandoz, Amneal, Apotex, Aurobindo, Alkem Laboratories, Ohm Laboratories/Sun Pharmaceuticals, Zydus, and Watson) or any agents, predecessors, or successors thereof from December 6, 2011 until the effects of the defendants' conduct cease (the "class").

Excluded from the class are Merck, Glenmark, Par, and any of their officers, directors, management, employees, parents, subsidiaries, and affiliates.

Also excluded from the class are the government of the United States and all agencies thereof, and all state or local governments and all agencies thereof.

7.     **Discovery for Notice.**   The Direct Purchaser Plaintiffs and Par acknowledge that identification by name of some members of the Direct Purchaser Class may depend on some

defendants in the Zetia Antitrust MDL and third-party subpoena recipients producing data and information sufficient to allow the Direct Purchaser Class to identify the names and addresses of all purchasers of brand and generic Zetia during the Class Period.  Complete production of this information may not yet have occurred.  Par shall not oppose the Direct Purchaser Plaintiffs' efforts to procure such discovery from other persons or entities.

8.      **Par Covenant Escrow Withdrawal.**  Upon the entry of the Preliminary Approval Order substantially in the form as proposed by the parties, the Par Covenant shall be withdrawn from escrow and shall, for all purposes and at that time, have legal effect.  If, despite Par's Covenant Not to Sue, the Court expressly so requires in order for Direct Purchaser Plaintiffs and the Class to recover damages from Merck and Glenmark on purchases of generic ezetimibe from Glenmark/Par, nothing in this Settlement Agreement shall prevent Direct Purchaser Plaintiffs and the Class from seeking a judicial or jury finding that Par's conduct meets the standards of *Columbia Nitrogen Corp. v. Royster Co*., 451 F.2d 3 (4th Cir. 1971).

9.      **Discovery Rider Escrow Withdrawal.**  Upon the Court granting preliminary approval of the settlement substantially in the form as proposed by the parties, the Discovery Rider shall be withdrawn from escrow and shall for all purposes at that time have legal effect.

10.      **Par's Discovery Obligations.**  Upon execution of this Settlement Agreement, Par agrees to provide discovery cooperation to all Direct Purchaser Plaintiffs in the Zetia Antitrust MDL in the form of production of documents and deposition and trial testimony as follows:

    a.      To the extent not already produced, Par will conduct a diligent and good faith search pursuant to the Agreed Search Protocol (attached hereto as Exhibit E) for the documents requested in Plaintiffs' Requests for Production of Documents from Par, attached hereto as Exhibit C, and will exercise best efforts to produce such documents as soon is reasonably practicable, but in any event no later than five (5) business days prior to the close of fact discovery set by the Court.  Plaintiffs agree that a search pursuant to the Agreed Search Protocol, together with the documents

already produced by Par as of the execution of this Settlement Agreement, shall satisfy Par's obligations to search for documents pursuant to this subparagraph, Exhibit C, and the subpoenas previously served on Par in the Zetia Antitrust MDL.

b.   As soon as is reasonably practicable, but in any event no later than the close of fact discovery set by the Court, Par will make reasonable and good faith efforts to prepare and make available any and all witnesses reasonably necessary to testify, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, to the topics identified in the Schedule A to Plaintiffs' Rule 30(b)(6) subpoena to Par, attached hereto as Exhibit D.

c.   Plaintiffs and Par agree that the following categories of information sought for discovery under Exhibits C and D are unlikely to be protected by the attorney-client or work product privileges: (a) the contents of communications between Merck and Par concerning the Merck-Glenmark settlement preceding execution of said settlement; (b) the contents of communications between Glenmark and Par concerning the Glenmark-Par distribution agreement preceded execution of said agreement, and (c) internal Par financial analyses (actual or projected) of performance under the Merck-Glenmark settlement and/or the Glenmark-Par distribution agreement, or relating to the potential for other generic Zetia entry (the "Non-Assertion of Privilege").   Accordingly, absent truly unique circumstances, discovery information within these categories shall not be withheld from productions.  The foregoing shall not in any circumstance be construed as a waiver of the attorney-client or work product privileges of any kind or scope, and Plaintiffs agree not to assert such a waiver.

d.   In the event a dispute arises concerning Par's performance under this paragraph and accompanying exhibits, the parties agree to meet and confer in good faith to resolve the issue. Upon request to meet and confer, the non-requesting party shall provide at least one time during which they are available to meet-and-confer in the following three business days. If, after meeting-and-conferring, the dispute remains unresolved and Plaintiffs believe Par has failed to materially comply with its obligations under this paragraph and accompanying exhibits, Plaintiffs may present the issue to Judge Rebecca Beach Smith or Magistrate Judge Douglas Miller of the Eastern District of Virginia to decide whether Par has failed to materially comply with its discovery obligations under this paragraph. Such disputes may be raised and submitted to Judge Smith or Magistrate Judge Miller regardless of whether the Effective Date has passed. Any decision by Judge Smith or Magistrate Miller concerning Par's performance under this paragraph shall be final and binding upon the parties.

11.   **Limitations on Discovery Obligations**.   Upon execution of this Settlement Agreement, Plaintiffs agree that other than the discovery set forth in the immediate preceding

paragraph, Plaintiffs shall not seek any further discovery from Par, provided (a) that the discovery set forth in the immediate preceding paragraph does not reveal a material and meaningful disclosure of facts that for the sake of completeness warrants further discovery vis a vis the remaining claims against Merck and/or Glenmark, and (b) no further discovery is needed to facilitate the introduction into evidence at summary judgment or trial of any of the discovery acquired from Par.  The parties recognize that this limitation on discovery applies to Par witnesses in their capacity as current or former employees of Par, and not to any activities they may have undertaken under previous or subsequent employment (e.g., at either Merck or Glenmark). Plaintiffs agree to undertake all reasonable efforts to accommodate witnesses' schedules within the confines of any then-existing, court-ordered schedule.

12.    **Stay of Proceedings against Par.**  Pending Court approval of the Settlement Agreement, Plaintiffs and Par agree that a material purpose of this Settlement Agreement is that Par shall not be a party to the Zetia Antitrust MDL other than as required by this Settlement Agreement.  To that end, a condition of settlement is that there shall be a stay of all proceedings in the Zetia Antitrust MDL against Par other than as incident to the settlement process until the Court decides the Final Approval Motion, and Plaintiffs agree to sever Par in the event of a trial and agree to extensions of time or such other motions, filings or stipulations as necessary to effectuate the intent of this paragraph.  Nothing in this paragraph shall be read to affect Par's obligations pursuant to Paragraph 10 hereof.

13.    **Cooperation at Trial.**  When, as and if any case in the Zetia Antitrust MDL proceeds to trial, Par covenants and agrees that it will undertake reasonable and good faith efforts to prepare and make available a witness, or witnesses, as necessary, to testify about the topics

identified for discovery in Exhibit D.  Plaintiffs agree to undertake all reasonable efforts to avoid the need for attendance at trial of a Par witness.

14.     **Lack of Certain Obligations by Par.**  Par represents and warrants that it has assumed no contractual obligation that would, in fact or at law, in the event Plaintiffs prevailed against any other defendant on the claims made in the Zetia Antitrust MDL, obligate Par to indemnify, pay contribution to, be liable over to, or share in a judgment entered in favor of Plaintiffs against any other defendant. Par agrees that Plaintiffs justifiably rely upon this representation and warranty and that it is material to Plaintiffs' decision to enter into this Settlement Agreement with Par.

15.     **Reasonable Best Efforts to Effectuate Final Approval of the Direct Purchaser Class Settlement.**  Direct Purchaser Plaintiffs' counsel, the Direct Purchaser Plaintiffs, and Par and its counsel agree to recommend approval of this Settlement to the Court and to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement and any other steps and efforts that may be necessary or appropriate, to carry out the terms of this Settlement Agreement, and to secure the prompt, complete, and final dismissal with prejudice of claims in the Proposed Direct Purchasers' Amended Complaint against Par.  These efforts include Par serving notice of this Settlement on those entities required to receive notice under the Class Action Fairness Act.

16.     **Motion for Final Approval and Entry of Final Judgment**.  If the Court preliminarily approves this Settlement Agreement, Plaintiffs shall submit a motion for final approval of this Settlement Agreement by the Court (the "Final Approval Motion"), after notice has been disseminated to the Direct Purchaser Class pursuant to the Preliminary Approval Order. The Final Approval Motion shall seek entry of an order and final judgment:

a.      Finding this Settlement Agreement and its terms to be a fair, reasonable, and adequate settlement as to Plaintiffs and the Direct Purchaser Class within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms;

b.      Directing that all of the Direct Purchaser Plaintiffs' claims in the MDL be dismissed with prejudice as to Par only and, except as provided for herein, without costs;

c.      Prohibiting the filing of any future claims against Par based on the conduct alleged in the Zetia Antitrust MDL, including those alleged in the Direct Purchaser Plaintiffs' Amended Complaint;

d.      Retaining exclusive jurisdiction over the Settlement and this Settlement Agreement, including the administration and consummation of this Settlement;

e.      Directing that the judgment of dismissal as to Par shall be final and appealable; and

f.      Directing that, for a period of five (5) years, the Clerk of the Court shall maintain the record of those members, if any, who have timely excluded themselves from the Direct Purchaser Class ("Opt Outs") and that a certified copy of such records shall be provided to Par.

17.     **Release of Plaintiffs' Claims.**   Upon the occurrence of the Effective Date, Plaintiffs and the Direct Purchaser Class members, on behalf of themselves and their respective past, present and future parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and as applicable each of their past, present and future officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators, and representatives of each of the foregoing (the "Releasors"), hereby release and forever discharge, and covenant not to sue Par and its past, present and future parents, subsidiaries, affiliates, officers, directors, employees, agents, attorneys, servants, representatives (and as applicable each of their past, present and future officers, directors, employees, agents, attorneys, servants, and representatives), and the predecessors, successors, heirs, executors, administrators, and representatives of each of the foregoing (the "Releasees")

from any and all past, present, or future liabilities, claims, demands, obligations, suits, injuries, damages, levies, executions, judgments, debts, charges, actions, or causes of action, at law or in equity, whether class, individual, or otherwise in nature, and whether known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent, arising out of or relating to purchases of branded Zetia or its generic equivalents at any time prior to the Effective Date and arising under the Sherman Act, 15 U.S.C. §§ 1 & 2, et seq., section 4 of the Clayton Act, 15 U.S.C. § 15(a), or any other federal or state statute or common law relating to antitrust or unfair competition (the "Released Claims"). The Released Claims include, but are not limited to, any and all claims relating to or arising out of the facts, occurrences, transactions, or other matters alleged or asserted in the Zetia Antitrust MDL, or that could have been alleged or asserted therein. Notwithstanding the foregoing, and for avoidance of doubt:

a. This Release is not intended to release anyone other than the Releasees;

b. This Release is not intended to be on behalf of anyone other than the Releasors; and

c. This Release shall have no effect on any Releasor's claim arising in the ordinary course of business between Releasors and the Releasees under Article 2 of the Uniform Commercial Code (pertaining to sales) or the laws of breach of contract or express warranty, the laws of negligence, product liability, implied warranty, or personal injury, or other claims wholly unrelated to the allegations in the Zetia Antitrust MDL or wholly unrelated to allegations that could have been alleged or asserted in the Zetia Antitrust MDL.

18. **Additional Release.** In addition, each Releasor hereby expressly waives and releases, upon the Effective Date, any and all provisions, rights, and/or benefits conferred by § 1542 of the California Civil Code, which reads:

Section 1542. General Release; extent. A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the

> release and that, if known by him or her, would have materially
> affected his or her settlement with the debtor or released party;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable or equivalent to § 1542 of the California Civil Code, notwithstanding that the release in Paragraph 17 is not a general release and is of claims against Par only. Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or believes to be true with respect to the claims that are the subject matter of Paragraph 17. Nonetheless, upon the Effective Date each Releasor hereby expressly waives and fully, finally and forever settles and releases any known or unknown, foreseen or unforeseen, suspected or unsuspected, contingent or non-contingent claim that is the subject matter of Paragraph 17, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts. Each Plaintiff and member of the Direct Purchaser Class also hereby expressly waives and fully, finally and forever settles, releases and discharges any and all claims he, she, or it may have against any Released Party under § 17200, et seq., of the California Business and Professions Code or any similar comparable or equivalent provision of the law of any other state or territory of the United States or other jurisdiction, which claims are expressly incorporated into the definition of Released Claims with respect to the claims that are the subject matter of Paragraph 17.

19.   **Full Satisfaction; Limitation of Interest and Liability.**   In the event that the Effective Date occurs, Par's Cooperation in Discovery and Non-Assertion of Privilege will fully satisfy any and all claims released hereunder. Par shall not be liable for any costs, fees, or expenses of Plaintiffs, or the Direct Purchaser Class or the Plaintiffs' counsel, experts, consultants, advisors, agents, and representatives.

20.     **Reservation of Rights Against Non-Settling Defendants**.  Plaintiffs and the Direct Purchaser Class reserve all rights against the other defendants in the Zetia Antitrust MDL, and nothing in this Settlement Agreement is intended to affect or release any claims against any of the other defendants.

21.     **Dismissal of the Litigation as to Par Only**: No non-Releasee is intended to be, or is, included within the scope of this release.  For avoidance of doubt, neither Merck nor Glenmark is intended to be, or is, included within the scope of this release.

22.     **Finality of Settlement.**  This Settlement Agreement shall become final upon the occurrence of Par's performance of its obligations under subparagraphs (a) - (c) of paragraph 10 of this Settlement Agreement and following the entry of the Preliminary Approval Order (the "Effective Date"). From the date of execution of this Settlement Agreement until the Effective Date, this Settlement Agreement shall be held in escrow by Hagens Berman Sobol Shapiro LLP. Upon the Effective Date, the Settlement Agreement shall be released from escrow.

23.     **Notice.**  Notice to Par pursuant to this Settlement Agreement shall be sent by United States mail and electronic mail to:

> Benjamin Greenblum
> Williams & Connolly LLP
> 725 Twelfth Street, N.W.
> Washington, D.C. 20005
> bgreenblum@wc.com

Notice to the Direct Purchaser Plaintiffs pursuant to this Settlement Agreement shall be sent by United States mail and electronic mail to Interim Co-Lead Counsel:

Thomas M. Sobol
Kristen A. Johnson
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge MA 02142
Tel: 617-482-3700
Fax: 617-482-3003
Email: tom@hbsslaw.com
kristenj@hbsslaw.com

24. **Integrated Agreement**. This Settlement Agreement (including the exhibits hereto) contains the entire, complete, and integrated statement of each and every term and provision agreed to by and among the parties. This Settlement Agreement shall not be modified in any respect except by a writing executed by duly authorized representatives of all the parties hereto or by counsel on their behalf.

25. **Headings**. The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

26. **No Party Is the Drafter**. Each of the parties hereto participated meaningfully in the drafting of this Settlement Agreement. None of the parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

27. **Consent to Jurisdiction**. Par and Plaintiffs hereby irrevocably submit to the exclusive jurisdiction of the United States District Court for the Eastern District of Virginia for any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement. Nothing in this paragraph shall prohibit or restrict

the assertion and enforcement of this Settlement Agreement as a defense to a claim in the forum in which such claim is brought.

28.     **Choice of Law**.  All terms of this Settlement Agreement shall be governed by, and construed and enforced in accordance with, federal common law, without regard to its principles of conflicts of laws.

29.     **Execution in Counterparts**.  This Settlement Agreement may be executed in counterparts.  Signatures transmitted by electronic means shall be considered valid signatures as of the date signed.

30.     **Authority.**  Each of the Plaintiffs and Par represents and warrants that it is authorized to enter into this Settlement Agreement, that it has authorized its counsel to enter into the Settlement Agreement on its behalf, and that it intends this Settlement Agreement to be a valid and binding obligation, enforceable in accordance with its terms.  The undersigned counsel for Plaintiffs represent and warrant that they have authority to sign on behalf of the Plaintiffs, and that all of the Direct Purchaser Plaintiffs are parties to this Settlement Agreement even if one or more of them is mistakenly identified in this Settlement Agreement by an incorrect name.  The undersigned counsel for Par represents and warrants that he has authority to sign on behalf of Par.

31.     **Option to Rescind.**  If the Court refuses to approve this Settlement Agreement or any part thereof, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraph 16 hereof, or if the Court enters the final judgment and appellate review is sought and, on such review, such final judgment is not affirmed, then Par and the Plaintiffs shall each, in their sole discretion, have the unilateral option to rescind this Settlement Agreement in its entirety with ten (10) calendar days of the action giving rise to such option.

32. **Rescission.** In the event of rescission, Plaintiffs and Par agree that this Settlement Agreement, including its exhibits, shall have no legal effect, and that any and all negotiations, documents, information and discussions associated with it shall be without prejudice to the rights of Par and shall not be admissible as evidence or deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing, or of the truth of any of the claims or allegations made in the Zetia Antitrust MDL.

33. **Construction.** Neither this Settlement Agreement, including its exhibits, nor any negotiations or proceedings connected with it shall be deemed or construed to be an admission by any party to this Settlement Agreement or any Releasee or evidence of any fact or matter in the Zetia Antitrust MDL or in any related actions or proceedings, and evidence thereof shall not be discoverable or used, directly or indirectly, in any way, except in a proceeding to interpret or enforce this Settlement Agreement.

IN WITNESS WHEREOF, each of the signatories has read and understood this Settlement Agreement, has executed it, represents that he or she is authorized to execute this Settlement Agreement on behalf of the party for which he or she has signed, has agreed on behalf of his or her respective party to be bound by its terms, and has entered into this Settlement Agreement on behalf of the party or parties for which he or she has signed as of the date indicated below.

By: _____
Thomas M. Sobol
Kristen A. Johnson
Hagens Berman Sobol Shapiro LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Tel: (617) 482-3700
Fax: (617) 482-3003 (fax)
Email: tom@hbsslaw.com
        kristenj@hbsslaw.com

Dated: June 21, 2019

*Interim Liaison and Co-Lead Counsel for Proposed
Direct Purchaser Class*

By: _____
Benjamin Greenblum
Williams & Connolly LLP
725 Twelfth Street, N.W.
Washington, D.C. 20005
bgreenblum@wc.com

Dated: June 21, 2019

*Counsel for Par Pharmaceutical, Inc.*

**EXHIBIT A**

**AGREEMENT AND COVENANT NOT TO SUE**

THIS AGREEMENT AND COVENANT NOT TO SUE (this "Agreement") is made and entered into as of the 21st day of June, 2019 (the "Effective Date") by and among the Direct Purchaser Plaintiffs,[1] by and through their undersigned counsel Hagens Berman Sobol Shapiro LLP (on behalf of themselves and a putative class of direct purchasers of brand and generic Zetia) (collectively, "Direct Purchaser Plaintiffs" or "Plaintiffs") on the one hand, and Par Pharmaceutical, Inc. ("Par") on the other.  Each of the Plaintiffs and Par is a "Party" to this Agreement, and together they are the "Parties" hereunder.  There are several intended third-party beneficiaries to this agreement, namely Glenmark Pharmaceuticals, Ltd. and Glenmark Generics Inc., USA ("Glenmark") and Merck & Co., Inc., Merck Sharp & Dohme Corp., Schering-Plough Corp., Schering Corp., and MSP Singapore Co. LLC ("Merck"), and their respective "Affiliates" (defined in Section 1(a)(i) below).

WHEREAS, the Plaintiffs are parties to lawsuits coordinated, and currently pending, in *In re Zetia (Ezetimibe) Antitrust Litigation,* 2:18-md-02836-RBS-DEM, ( the "Zetia Antitrust MDL");

WHEREAS, Plaintiffs in the Zetia Antitrust MDL allege that on May 10, 2010 Merck and Glenmark entered into an agreement to delay launch of Glenmark's generic Zetia and Merck's authorized generic Zetia, which agreement Plaintiffs allege was illegal under Sections 1 and 2 of the Sherman Act, section 4 of the Clayton Act, 15 U.S.C. § 15(a), and under various other theories of federal or state statutory or common law relating to antitrust or unfair competition, and caused Plaintiffs to pay overcharges on their purchases of Zetia and generic Zetia;

WHEREAS, Par is not yet a party to the Zetia Antitrust MDL; Direct Purchaser Plaintiffs have moved to join Par, which motion is pending in the Zetia Antitrust MDL; and Par does not wish to be party to the Zetia Antitrust MDL;

WHEREAS, in consideration for various promises, including this Agreement and Covenant Not to Sue and a Settlement Agreement of even date, Plaintiffs are willing to dismiss Par from the Zetia Antitrust MDL pursuant to the terms set out in the accompanying Settlement Agreement;

WHEREAS, Par exclusively distributed Glenmark's generic Zetia for Glenmark, and under an April 30, 2010 Marketing and Distribution Agreement paid a Transfer Price to acquire generic Zetia from Glenmark;

WHEREAS, Plaintiffs in the Zetia Antitrust MDL do not assert that the Transfer Price that Par paid Glenmark for generic Zetia was supracompetitive, but instead assert that the price

---

[1] Direct Purchaser Plaintiffs include FWK Holdings, LLC, Rochester Drug Co-Operative, Inc., and César Castillo, Inc.

that Plaintiffs paid Par for generic Zetia was supracompetitive, as a result of the May 10, 2010 agreement between Merck and Glenmark;

NOW, THEREFORE, in consideration for the mutual promises and covenants contained herein, the Parties covenant and agree as follows:

1.     <u>Par Covenant Not to Sue Merck and/or Glenmark</u>.

(a)     For purposes of this Agreement, the following terms shall have the following meanings:

(i)     "Affiliate" means, with respect to a given entity, any person or legal entity directly or indirectly controlling, controlled by or under common control with such entity, where control shall mean the direct or indirect ownership of fifty percent (50%) or more of the outstanding voting securities of an entity or such other relationship as results in the actual control over the management, assets, business and affairs of an entity.

(ii)     "Subject Matter" means the alleged delay in the launch of generic or authorized generic Zetia resulting from a May 10, 2010 agreement between Merck and Glenmark.

(b)     <u>Covenant Not To Sue</u>.  Par, on behalf of itself, its Affiliates, and their respective predecessors, successors, and assigns forever covenants that it will not bring or assert any claim or counterclaim (whether known or unknown) for past, present or future damages under the Sherman or Clayton Act against Merck, Glenmark, or their Affiliates and each of their respective predecessors, successors, parents, subsidiaries, affiliates, divisions, general partners, limited partners, employees, representatives and assigns (collectively the "<u>Merck Covenantees</u> and the <u>Glenmark Covenantees</u>"), or cause, support, assist, aid, suggest, discuss, finance or authorize any person or entity to do any of the foregoing, in any action in equity, civil action, action at law, administrative complaint (whether formal or informal), or other process, proceeding, or litigation, of any kind or nature, under Section 4 of the Clayton Act or otherwise, asserting the Subject Matter.

(c)     <u>Binding Effect</u>.  The covenant not to sue provided for herein is effective, binding, and irrevocable upon the Court's final approval of the accompanying Settlement Agreement. It is fully enforceable by the Merck Covenantees and Glenmark Covenantees against Par.  It cannot be varied without the consent of the Merck Covenantees and Glenmark Covenantees.  It is intended to, and does, extinguish any and all liability in damages that the Merck Covenantees and Glenmark Covenantees could be alleged to have to Par concerning the Subject Matter.  It may be judicially noticed on a pre-answer motion and asserted as a complete defense by the Merck Covenantees, the Glenmark Covenantees, or any of them, to any claim brought by Par concerning the Subject Matter.

(d)     <u>Not a Release of Plaintiffs' Claims.</u>  The covenant not to sue provided for herein is not intended to, and does not, release or compromise Plaintiffs' claims against Merck and Glenmark in the Zetia Antitrust MDL, or Plaintiffs' claims against Par (the latter being the subject of the Settlement Agreement of even date).

2.      <u>Representations and Warranties; Disclaimers</u>.

(a)      <u>Representations and Warranties by the Parties</u>.  Each Party represents and warrants to the other Parties as of the Effective Date:

(i)      that it is an entity duly organized, validly existing and in good standing under the laws of the state of its organization, and has full corporate power and authority and the legal right to own and operate its property and assets and to carry on its business as it is now being conducted and as it is contemplated to be conducted by this Agreement;

(ii)      that it has the authority to (i) enter into this Agreement, (ii) extend the covenants and promises granted to the other Parties under this Agreement, and (iii) undertake and fully perform its obligations under this Agreement;

(iii)      that this Agreement has been duly executed and delivered by it and is a binding obligation of it, enforceable in accordance with its terms, subject, as to enforcement of remedies, to applicable bankruptcy, insolvency, moratorium, reorganization and similar laws affecting creditors' rights generally, and to general equitable principles;

(iv)      its execution, delivery, granting of rights, and performance of its obligations under this Agreement does not and will not, with or without the passage of time or the giving of notice or both, conflict with or result in any breach of any of the terms, conditions or provisions of, or constitute a default (or give rise to any right of termination, cancellation or acceleration) under any agreement or other document or instrument to which it is a party; and

(v)      all necessary consents, approvals and authorizations of all regulatory and governmental authorities and other third parties (including any of its Affiliates) required to be obtained by it in connection with the execution and delivery of this Agreement and the performance of its obligations hereunder have been obtained.

3.      <u>Miscellaneous</u>.

(a)      <u>Entire Agreement; Counterparts</u>.  This Agreement does not constitute the entire agreement between the Plaintiffs and Par relating to the subject matter hereof.  This Agreement is to be read in conjunction with the Settlement Agreement between Plaintiffs and Par of even date.  This Agreement may be executed in counterparts with the same force and effect as if each of the signatories had executed the same instrument.

(b)      <u>Other Parties</u>.  This Agreement shall be binding upon, and inure to the benefit of, the legal representatives, successors and permitted assigns of the Parties.  There are several express Third Party beneficiaries to this Agreement, namely Merck and Glenmark and their respective Affiliates.

(c)      <u>No Agency or Joint Venture Relationship</u>.  Nothing contained herein shall be deemed to create any association, partnership, joint venture or relationship of principal, agent, master or servant between the Parties hereto or any Affiliates thereof, or to provide any Party

with the right, power or authority to incur any obligation or make any representations, warranties or guarantees on behalf of any other Party.

(d)     <u>Retained Rights</u>.   The Parties retain their rights to petition the United States District Court for the Eastern District of Virginia for regarding any breach or violation of the terms or conditions of this Agreement.

(e)     <u>Severability</u>.   Except as otherwise expressly provided herein, if any term or condition of this Agreement or the application thereof to any Party or circumstance shall, to any extent, be held to be invalid or unenforceable, then (i) the remainder of this Agreement, or the application of such term, covenant or condition to Parties or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each term, covenant or condition of this Agreement shall be valid and be enforced to the fullest extent permitted by law; and (ii) the Parties hereto covenant and agree to renegotiate any such term, covenant or application thereof in good faith in order to provide a reasonably acceptable alternative to the term, covenant or condition of this Agreement or the application thereof that is invalid or unenforceable, it being the intent of the Parties that the basic purposes of this Agreement are to be effectuated.

(f)     <u>Waivers; Amendments; Supplements</u>.   No waiver by any Party of a breach of any covenant or condition of this Agreement by another Party shall be construed to be a waiver of any succeeding breach of the same or any other covenant or condition.   Except as otherwise expressly provided herein, this Agreement may not be changed or amended except by a writing expressly referring to this Agreement signed by all the Parties.

(g)     <u>Jurisdiction</u>.   The Parties hereby irrevocably consent to the exclusive jurisdiction and venue of the United States District Court for the Eastern District of Virginia over any action or proceeding arising out of or relating to this Agreement, and agree that all claims in respect of such action or proceeding may be heard and determined in such court.   Each of the Parties consents to the jurisdiction of such court and agrees that the service upon it of a summons and complaint by ordinary mail shall be sufficient for such court to exercise personal jurisdiction over the Parties.   The Parties waive any objection to any action or proceeding in the Eastern District of Virginia, on the basis of forum non conveniens or otherwise.   Notwithstanding the foregoing, if any action or proceeding may not be brought in such court because it lacks subject matter jurisdiction, the Parties may bring such action or proceeding in a court of appropriate jurisdiction.

(h)     <u>Governing Law</u>.  This Agreement shall be governed by, and construed and enforced in accordance with, federal common law, without regard to its principles of conflicts of laws.

(i)     <u>Certain Expenses</u>.  Each of the Parties hereto shall bear its own expenses that arise out of or in connection with the negotiation, execution or performance of this Agreement.

(j)      <u>Further Actions</u>.  Each Party agrees to execute, acknowledge and deliver such further instruments, and to do all such other acts, as may be necessary or appropriate in order to carry out the purposes and intent of this Agreement.

(k)      <u>Parties Advised by Counsel</u>.   This Agreement has been negotiated between unrelated Parties who are sophisticated and knowledgeable in the matters contained in this Agreement and who have acted in their own self interest.  In addition, each Party has been represented by legal counsel.  This Agreement shall not be interpreted or construed against any Party to this Agreement because that Party or any attorney or representative for that Party drafted or participated in the drafting of this Agreement.

(l)      <u>Captions, Section Headings, Interpretation</u>.  As used in this Agreement, "including" means "including but not limited to", and "herein", "hereof", and "hereunder" refer to this Agreement as a whole.   The Section headings used herein are for reference and convenience only, and shall not enter into the interpretation of this Agreement.  Unless otherwise expressly provided herein, any reference to a number of "days" hereunder shall refer to calendar days.  References to Sections include subsections, which are part of the related Section (*e.g.*, a section numbered "Section 4(a)" would be part of "Section 4", and references to "Section 3(a)" would also refer to material contained in the subsection described as "Section 3(a)(ii)").

(m)      <u>Mistakes of Fact or Law.</u>  Mistakes of fact or law shall not constitute grounds for modification, avoidance or rescission of the terms of this Agreement.

[*remainder of this page intentionally left blank*]

IN WITNESS WHEREOF, the Parties hereto, intending to be legally bound hereby, have each caused its duly authorized representative to execute and deliver this Agreement under seal as of the Effective Date.

PAR PHARMACEUTICAL, INC.

By:

Name: Matthew J. Maletta

Title: Executive Vice President, Chief Legal Officer

FWK HOLDINGS, LLC

By:

Name: Thomas L. Kolschowsky

Title: Manager

CESAR CASTILLO, INC.

By: _Linda Nussbaum_ w/p Bradley Vettraino

Name: Linda Nussbaum

Title: Outside Counsel

ROCHESTER DRUG COOPERATIVE, INC.

By:

Name: Peter Kohn

Title: Outside Counsel

**EXHIBIT B**

**DISCOVERY RIDER TO SETTLEMENT AGREEMENT**

This Rider incorporated as part of the accompanying Settlement Agreement.

Par is aware of and has had an opportunity to review the following documents identified by beginning Bates number as produced in the Zetia Antitrust MDL:

| | |
|---|---|
| GLENMARK-ZETIA-00056715 | GLENMARK-ZETIA-00261705 |
| GLENMARK-ZETIA-00201709 | GLENMARK-ZETIA-00261877 |
| GLENMARK-ZETIA-00218115 | GLENMARK-ZETIA-00267996 |
| GLENMARK-ZETIA-00242732 | GLENMARK-ZETIA-00272708 |
| GLENMARK-ZETIA-00261880 | GLENMARK-ZETIA-00275838-9 (a copy of GLENMARK-ZETIA-00275837 where all but the three earliest emails in the chain were redacted) |
| GLENMARK-ZETIA-00261852 | GLENMARK-ZETIA-00280735 |
| GLENMARK-ZETIA-00261795 | GLENMARK-ZETIA-00280767 |
| GLENMARK-ZETIA-00261825 | GLENMARK-ZETIA-00280768 |
| GLENMARK-ZETIA-00261670 | GLENMARK-ZETIA-00280800 |
| GLENMARK-ZETIA-00261672 | GLENMARK-ZETIA-00280899 |

Par does not dispute the above-referenced documents are authentic and acknowledges that they were created in the ordinary course of business.

**EXHIBIT C**

**REQUESTS FOR PRODUCTION OF DOCUMENTS**

**I.      Definitions**

      **A.      General Definitions**

1.      The words "and/or," "or" and "and" are used inclusively, not exclusively.  As such, "and/or," "or," and "and" should be construed so as to require the broadest possible response.  If, for example, a request calls for information about "A or B" or "A and B," you should produce all information about A and all information about B, as well as all information about A and B collectively.

2.      The words "any," "each," and "all" are to be construed as to be synonymous so as to bring within the scope of the discovery requests the broadest range of documents.

3.      The terms "relating to" and "regarding" include reflecting, constituting, evidencing, referring to, involving, dealing with, and bearing on (whether legally, factually, or otherwise) in whole or in part.

4.      As used in these requests, the singular is to be treated as plural and vice-versa.

5.      "Communication" means, without limitation, oral or written communications of any kind, such as electronic communications, emails, SMS messages, instant messages, facsimiles, telephone communications, correspondence, exchange of written or recorded information.  The phrase "communication between" is defined to include instances where one party addresses the other party but the other party does not necessarily respond.

6.      "Concerning" means, without limitation, the following concepts: referring to, regarding, relating, discussing, describing, reflecting, concerning, dealing with, pertaining to, analyzing, evaluating, evidencing, estimating, containing, constituting, studying, surveying,

projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

7. "Document" means, and is equal in scope to, the usage of this term in Fed. R. Civ. P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term. For avoidance of doubt, the term "document" includes any communication, as defined above.

8. "Including" is used to emphasize certain types of documents requested and should not be construed as limiting the request in any way.

9. "Internal communications" includes communications between and/or among Parand its Agents.

10. "Native format" means the file format in which a computer or other application or program reads and writes the electronically stored information.

11. "Person" means as any natural person or any business, legal, or governmental entity or association.

12. "Proposed" means, without limitation, the following concepts: proposed, considered, assessed, analyzed, and evaluated, in whole or in part, whether in the context of past, present, or future.

**B.    Specific Definitions**

13. "ANDA" means Abbreviated New Drug Application as defined in 21 U.S.C. § 355(j).

14. "Authorized Generic" means a version of a brand pharmaceutical that is manufactured and sold under the "Zetia NDA" (and any supplements thereto) but marketed as a generic product.

15.     "Zetia" means all pharmaceutical products that were or are labeled, marketed, or sold under the trademark or name "Zetia" (or any variant thereof), regardless of the dosage strength or package size, including but not limited to the pharmaceutical products described in New Drug Application No. 21-445, as well as any supplements thereto.

16.     "FDA" means the United States Food and Drug Administration, including its departments, committees, subdivisions, and individuals acting on its behalf or under its authority.

17.     "Generic Zetia" means any generic drug product that is or was the subject of an application seeking approval from the FDA for which Zetia is the reference listed drug.

18.     "Glenmark" means Glenmark Pharmaceuticals Limited, Glenmark Generics Inc., USA, Glenmark Pharmaceuticals Inc., USA, or any of their subsidiaries, divisions, subdivisions, affiliates, predecessor and successor entities, partners, officers, directors, employees, agents, legal counsel, or any other person acting on their behalf, particularly those involved in the prosecution of the Patents and the Patent Infringement Suits.

19.     "Glenmark/Par Distribution Agreement" means the April 30, 2010 "Marketing and Distribution Agreement" executed by Glenmark Generics Ltd., Glenmark Generics Inc., USA, and Par Pharmaceutical, Inc.

20.     "Glenmark Patent Infringement Action" means *Schering Corporation, et al. v. Glenmark Pharmaceuticals Inc., et al.*, C.A. No. 2:07-cv-01334 (D.N.J.).

21.     "Glenmark Settlement Agreement" means the agreement(s) through which Merck and Glenmark (and Par) settled *Schering Corporation, et al. v. Glenmark Pharmaceuticals Inc., et al.*, C.A. No. 2:07-cv-01334 (D.N.J.).

22.     "Merck" means any or all of Merck & Co., Merck Sharp & Dohme Corp., Schering-Plough Corp., and MSP Singapore Co. LLC or any of their subsidiaries, divisions,

subdivisions, affiliates, predecessor and successor entities, partners, officers, directors, employees, agents, legal counsel, or any other person acting on their behalf.

23.     "NDA" means New Drug Application as defined in 21 U.S.C. § 355.

24.     "Par," "You," or "Your" means Par Pharmaceutical, Inc., and any predecessor and successor entities, officers, directors, shareholders, parent and subsidiary companies (whether direct or indirect), and employees.

## II.     Instructions

1.     Plaintiffs seek production of the documents set forth in the numbered requests below in the possession, custody, and/or control of Par.  A search for such documents pursuant to the Agreed Search Protocol (Exhibit E to the contemporaneous Settlement Agreement) shall, for purposes of the Settlement, its approval by the Court, and Par's performance thereunder, be deemed to constitute a reasonable search for the requested documents.

2.     The terms defined above and the individual requests for production and inspection are to be construed broadly to the fullest extent of their meaning in a good faith effort to comply with the Federal Rules of Civil Procedure.

3.     All documents are to be produced in full, with all attachments. If any part of a document is responsive to any request, the whole document is to be produced, along with any attachments (regardless of whether the attachments are, in your view, responsive. Non-responsive portions of otherwise responsive documents may not be redacted.

4.     Documents not otherwise responsive to these requests shall be produced if such documents relate to the documents which are called for by any request, or if such documents are attached to documents called for by any request and constitute routing slips, transmittal memoranda, letters, comments, evaluations, or similar materials.

5.      Any alteration of a responsive document, including notes, underlining, stamps, drafts, revisions, modifications, and other versions of a final document, is a separate document and is to be produced as a separate document.

6.      Documents shall be produced either: (i) as they are kept in the usual course of business; or (ii) in a manner so that they are organized and labeled to correspond with these Requests.

7.      All documents are to be produced with the file folder, envelope, or other container in which the documents are maintained. If, for any reason, the container cannot be produced, copies of all labels or other identifying marks are to be produced instead.

8.      If a document is in a language other than English and an English translation exists, provide both documents.

9.      Any privilege log or list is to be produced in an Excel spreadsheet or other format capable of electronic sorting or as otherwise ordered by the court.

10.     Any purportedly privileged document containing non-privileged material must be produced, redacting only the portion purportedly privileged.

11.     Unless otherwise agreed to in writing, and pursuant to Fed. R. Civ. P. 34(b), all electronically stored information is to be produced in tiff. format. Any documents that are originally stored in .ZIP format, or any other compressed format, should be produced as extracted, uncompressed files. Microsoft Outlook files should be produced as tiff images with family relationships identified.

12.     The headings set forth within the numbered requests below are for convenience and are not intended to affect the meaning or construction of any request.

13.     These requests are continuing, and any document discovered or obtained after the service of these requests is to be produced promptly after it is discovered or obtained. Unless otherwise stated, these requests cover the period from January 1, 2009 to June 30, 2017 ("Relevant Time Period").

### III.     REQUESTS

1.     All documents concerning the use or possible use of Par and/or any other generic manufacturer or distributor to market, sell, and/or distribute Generic Zetia in the United States (which respect to an ANDA for which such manufacturer or distributor is not the holder).

2.     All documents concerning the Glenmark/Par Distribution Agreement and/or any of its terms.

3.     All documents concerning the Glenmark Patent Infringement Action, including, but not limited to:

    a.     the decision to settle the Glenmark Patent Infringement Action;

    b.     the Glenmark Settlement Agreement and/or any of its terms;

    c.     any consent to, approval, and/or ratification of the Glenmark Settlement Agreement and/or any of its terms;

    d.     the provision to (or withholding from) Par of any Glenmark Patent Infringement Action document(s) and/or information (including but not limited to materials designated confidential by Merck, Glenmark, and/or third-parties) and all such documents and/or information provided to Par; and

    e.     the costs, expenses, and/or attorney fees, whether estimated or actual, associated with the Glenmark Patent Infringement Action.

4.     All documents concerning any evaluation, analysis, and/or assessment of the Glenmark Patent Infringement Action and/or its patents at-issue, including but not limited to any merits, risks, and/or costs evaluations, analysis, assessments, and/or forecasts.

5.      All documents concerning the Steering Committee referenced in the Glenmark/Par Distribution Agreement (*see, e.g.*, Section 3.2 thereof, *et seq.*), including but not limited to its purpose, formation, membership and member roles and/or responsibilities (including changes to any of the foregoing over time), meetings, minutes, communications, and/or actions.

6.      Any common interest, joint defense, and/or indemnification agreement(s) between or among any of Glenmark, Par, and/or Merck concerning any Zetia, Generic Zetia, and/or Authorized Generic Zetia litigation, including possible future litigation.

7.      All documents produced to or concerning or regarding any communication with, or inquiry, evaluation, or review by, the United States Department of Justice, Federal Trade Commission, or any other government body or agency, including state governmental bodies or agencies, concerning or regarding any agreement involving Merck, Glenmark, and/or Par concerning or regarding Zetia or Generic Zetia, including but not limited to any documents filed with the Federal Trade Commission under the Medicare Prescription Drug, Improvement, and Modernization Act of 2003.

8.      All documents concerning any valuation, forecast, projection, model, or retrospective analysis (and any assumptions underlying any of the foregoing), whether created by Par, Glenmark, Merck, or any third party (e.g., outside accounting firms), concerning Generic Zetia costs, dollar and unit sales, pricing, and/or profits/profitability, including actual or anticipated: (i) Generic Zetia costs, dollar and unit sales, pricing, and/or substitution rates at, and following, market entry, and/or (ii) the effect(s) on costs, dollar and unit sales, and/or pricing by an Authorized Generic Product being launched at or at any point within the first 180 days of Generic Zetia market entry.

9.      All documents concerning or regarding or analyzing whether Glenmark and/or Par could not or would not commercially launch a Generic Zetia product before December 12, 2016.

10.      All documents concerning or regarding or analyzing (a) the timing or expected timing, i.e., projected or actual date(s) of market entry, of any version of Generic Zetia; (b) the timing or expected timing of market entry of any product used to treat the same conditions as Zetia; or (c) the expected impact of any such market entry.

11.      All documents concerning or regarding (a) actions considered or taken by Merck, Glenmark, Par, and/or agents of these entities that were designed to, intended to, or did in fact reduce, prevent, or delay the sale of Generic Zetia; (b) the impact on the actual or projected sales of Zetia anticipated to result from market entry of any version of Generic Zetia; or (c) the impact on the actual or projected sales of Zetia resulting from any actions considered or taken by Glenmark, Merck, Par, or their agents that were designed to, intended to, or did in fact, reduce, prevent or delay the sale of Generic Zetia.

12.      All documents concerning or regarding the projected or actual rate of substitution of or the projected, potential, forecasted, or actual impact of market entry or absence of market entry of any version of Generic Zetia on Zetia, including any projections, forecasts, analyses, or reports by Glenmark, Par, securities analysts, or financial of pharmaceutical industry reporters, including, without limitation, the impact on:

      a.      Unit and dollar volume sales and revenues derived from the sale of Zetia, Generic Zetia, and any other product treating the same condition as Zetia;

      b.      Market share of Zetia, Generic Zetia, and any other product treating the same condition as Zetia (including, but not limited to, projected rates of generic substitution);

      c.      Pricing of and profits derived from the sales of Zetia, Generic Zetia, and any other product treating the same condition as Zetia; and

d.      Competition or competitive conditions for Zetia, Generic Zetia, and any other product treating the same condition as Zetia.

13.     All documents regarding any potential, planned, projected, anticipated, or actual at-risk launch by Glenmark and/or Par of a Generic Zetia, including but not limited to documents assessing Glenmark and/or Par's history of launching generic products at risk.

14.     All documents concerning or regarding a potential or actual authorized generic version of Zetia, including all analyses of (a) the likely price and prescription volume of any potential or actual authorized generic version of Zetia, (b) the likely sales of and profits on any potential or actual authorized generic version of Zetia, (c) any supply and distribution agreements, (d) short term and long range strategies and objectives, (e) pricing plans, (f) budget and financial projections, (g) competitive assessments, market studies and presentations, (h) marketing plans, and (i) business plans, including short-term and long-range strategies and objectives.

15.     All internal communications of Par, and communications between Merck, Glenmark, and/or Par or any other third party, concerning any 180-day exclusivity period Glenmark is, was, or may have been entitled to with respect to its Generic Zetia ANDA.

16.     All documents concerning all communications between Merck, Glenmark, and/or Par including without limitation their directors, officers or employees concerning competition with or market entry of Generic Zetia, including any actual or potential Zetia ANDA filers.

17.     Documents sufficient to identify for Glenmark's and/or Par's Generic Zetia for each month from January 1, 2016 through the present the actual and projected:

a.      List price;

b.      Average marginal price;

c.      Average wholesale price;

d.      Wholesale acquisition cost;

e.      Direct price;

f.      Average discount off of wholesale price or wholesale acquisition cost;

g.      Price under Medicare program;

h.      Price under Medicaid program;

i.      Maximum allowable price;

j.      Average manufacturing price (AMP) as defined by, and reported to, the Centers for Medicare and Medicaid Services;

k.      Best price, as defined by, and reported to, the Centers for Medicare and Medicaid Services;

l.      Net revenue;

m.      Gross sales;

n.      Net sales;

o.      Units;

p.      Gross shipments;

q.      All measures of margin, income, earnings, and profits;

r.      Unit of volumes sold;

s.      Unit of volumes sold net of returns;

t.      Total product contribution; and

u.      All costs and expenses attributable to the product, including, but not limited to:

v.      Sales and distribution cost;

w.      Cost of goods sold;

x.      Manufacturing costs;

y.      Marketing, advertising, promotional, and sales expenses;

z.      Depreciable and capital improvements;

10

aa.     Research and development expenditures;

bb.     Marketing and promotional costs;

cc.     Public relations costs;

dd.     Sales force costs;

ee.     Co-promotion costs;

ff.     Clinical trials;

gg.     Publications;

hh.     Regulatory compliance;

ii.     Licensing fees and royalties paid and received;

jj.     Short-run average variable costs;

kk.     Long-run average variable costs;

ll.     Fixed costs;

mm.     Materials cost;

nn.     Labor cost;

oo.     Marginal cost;

pp.     Rebates, discounts, vouchers, or other product promotions, returns, or charge-backs.

18.     Electronic data in tab-delimited, comma-delimited, or semicolon-delimited ASCII flat text or similar electronic format from December 1, 2010 to the present sufficient to identify all sales of Zetia or Generic Zetia to direct or indirect purchasers in transaction-by-transaction format, as follows:

a.     All direct or indirect sales/invoice transactions (as well as any discounts, rebates, credits, chargebacks, or any other price adjustments or offsets contained in the transaction data) including the following fields: (i) price or dollar amount in USD, (ii) transaction number, (iii) source of the transaction price, (iv) number of units sold, (v) number of units returned or otherwise affected by the transaction, (vi) unit of measure, (vii) date of transaction, (viii) information sufficient to identify the type of transaction (e.g., a sale, a return, a discount, etc.), (ix) NDC, (x) UPC, (xi) SKU, (xii)

11

product description, (xiii) product form, (xiv) product strength, (xv) package size in extended units per package, (xvi) bill-to and ship-to customer name, (xvii)  customer number, (xvii) bill-to and ship-to customer address, (xix) customer class of trade code and the description of that code (all such customer information being provided for both the bill-to and ship-to customer), and (xx) the customer's parent company (if the data identify a subsidiary, corporate affiliate, division, satellite office, distribution center, warehouse, or the like).

b.      All data concerning chargebacks, rebates, discounts, and other consideration given or accrued, including the following fields: (i) each transaction, including the date thereof; (ii) the name and address of, and all unique codes or identifiers for, the person, firm corporation, or other business entity whom Merck paid, or on whose behalf Merck accrued, the chargeback, rebate, discount and/or other consideration; (iii) the name and address of, and all unique codes or identifiers for, the persons, firms, corporations, or other business entities that made the purchases in respect of which Merck paid or accrued the chargeback, rebate, discount, or other consideration; (iv) the sales, or groups of sales, upon which the rebate, discount, or other consideration is based, including: (aa) the number of units of the particular product sold, by package size, SKU, UPC, NDC, and any and all other unique codes or other identifiers for each sale or other transaction; (bb) the bill-to customer; (cc) the ship-to customer; (dd) the dates of the sales, or group of sales; (ee) the invoice amount in dollars for the sales or group of sales; (ff) the amount of the chargeback, rebate, discount, or other consideration paid or accrued; and (gg) the contract, agreement, or other basis upon which the chargeback, rebate, discount, or other consideration is calculated.

c.      All administrative fee transactions including: (i) fee amount paid, (ii) date of payment, (iii) date or date range of sales concerning the fee that was paid, (iv) information sufficient to identify the type of administrative fee (if applicable), (v) customer name, (vi) customer number, (vii) customer address, and (viii) customer class of trade code and the description of that code;

d.      Any other paid or accrued discounts, rebates, chargebacks, billbacks, unit adjustments, price adjustments, shelf-stock price adjustments, returns, third-party returns, error corrections, free goods, nominally-priced goods, and all other transaction types not reflected in the above (a through c), whether created or maintained daily, monthly, quarterly, or at some other periodicity.

e.      The complete documentation for all items above (a though d) including (i) lookup tables, (ii) data dictionaries, (iii) lists of fields, (iv) descriptions of information contained in those fields (e.g., field lengths, formats, etc.), and (v) descriptions of any codes used in any fields (such as class of trade

12

designations, etc.), including but not limited to (aa) a separate product list, including NDC, SKU, UPC, product description, and package size; (bb) a separate table that lists, for each "bill-to customer" and "ship-to customer," the customer number, parent customer number, customer group number, customer identity, contact information, address, and class of trade (e.g., SIC code); (cc) a separate table listing and defining each transaction code, abbreviation, or other field or entry code, and indicating (1) whether quantity values for each transaction type should be included in calculating net quantity sold, or should be ignored because they do not affect net quantity sold and (2) how negative unit and dollar values should be treated in calculating net quantities and dollar amounts; (dd) all data sets and calculations used to (1) determine accrued rebates and/or chargebacks and/or (2) periodically reconcile accrued rebates and/or chargebacks with actual rebates and/or chargebacks; (vi) return and/or exchange policies; and (vii) payment terms.

19.     Organization charts, personnel directories, telephone directories, and electronic mail user and address lists for Par concerning or regarding personnel with any responsibility relating to Generic Zetia.

**EXHIBIT D**

**SUBJECTS FOR EXAMINATION AT DEPOSITION AND/OR TRIAL**

**I.      Definitions**

1.      "Azetidinone Patents" means the U.S. Patent No. 5.631,365, U.S. Patent No. 5,767,115, U.S. Patent No. RE37,721, and U.S. Patent No. RE42,461.

2.      "Combination Patent" means U.S. Patent No. 5,846,966.

3.      "Concerning" means, without limitation, the following concepts: referring to, regarding, relating, discussing, describing, reflecting, concerning, dealing with, pertaining to, analyzing, evaluating, evidencing, estimating, containing, constituting, studying, surveying, projecting, assessing, recording, summarizing, criticizing, reporting, commenting, or otherwise involving, in whole or in part.

4.      "Including" should be read to include "including but not limited to" and is used to emphasize certain types of documents requested and should not be construed as limiting the request in any way.

5.      "Glenmark" means Glenmark Pharmaceuticals Limited, Glenmark Generics Inc., U.S.A., or any of their subsidiaries, divisions, subdivisions, affiliates, predecessor and successor entities, partners, officers, directors, employees, agents, legal counsel, or any other person acting on their behalf.

6.      "Generic Zetia" means any generic drug product that is or was the subject of an application seeking approval from the FDA for which Zetia is the reference listed drug.

7.       "Merck" means Merck & Co., Merck Sharp & Dohme Corp., Schering-Plough Corp., Schering Corp., MSP Singapore Co. LLC, or any of their subsidiaries, divisions,

subdivisions, affiliates, predecessor and successor entities, partners, officers, directors, employees, agents, legal counsel, or any other person acting on their behalf.

8.      "Merck/Glenmark Patent Infringement Action" means *Schering Corporation, et al. v. Glenmark Pharmaceuticals Inc., et al*., C.A. No. 2:07-cv-01334 (D.N.J.).

9.      "Merck/Glenmark Settlement Agreement" means all agreement(s) through which Merck and Glenmark settled the Merck/Glenmark Patent Infringement Action (i.e., *Schering Corporation, et al. v. Glenmark Pharmaceuticals Inc., et al*., C.A. No. 2:07-cv-01334 (D.N.J.)).

10.      "Par Distribution Agreement" means the marketing and distribution agreement made by and among Glenmark Generics Ltd and Glenmark Generics Inc., USA, on the one hand, and Par Pharmaceutical, Inc., on the other hand, on or about April 30, 2010, under which Par was appointed as the "exclusive distributor to market, distribute, and sell" Glenmark's Ezetimibe product in the United States.

11.      "Plaintiffs" means Direct Purchaser Plaintiffs, End Payer Plaintiffs, Retailer Plaintiffs, or any other Proposed Class Representative.

12.      "You," "Your," and "Par" means Par Pharmaceutical, Inc., or any of its subsidiaries, divisions, subdivisions, affiliates, predecessor and successor entities, partners, officers, directors, employees, agents, legal counsel, or any other person acting on its behalf.

13.       "Zetia" means all pharmaceutical products that were or are labeled, marketed, or sold under the trademark or name "Zetia" (or any variant thereof), regardless of the dosage strength or package size, including but not limited to the pharmaceutical products described in New Drug Application No. 21-445, as well as any supplements thereto.

## II.      Instructions

1.      The terms used herein shall have the broadest meaning possible under the Federal Rules of Civil Procedure.

2.      Reference to the singular in any of the subjects for examination herein shall also include a reference to the plural, and reference to the plural also shall include a reference to the singular.

3.      The following subjects for examination are intended to elicit as much information as possible concerning the issues identified, and to the extent any subject could be interpreted in more than one way, you should employ the interpretation of the subject most likely to encompass and elicit the greatest amount of information possible.

## III.    Subjects for Examination

1.      The Par Distribution Agreement, including, but not limited to, its terms, the circumstances leading to the execution of the Par Distribution Agreement, and Par's obligations and performance under the Par Distribution Agreement.

2.      The Merck/Glenmark Settlement Agreement, including, but not limited to, its terms, the circumstances of its execution, Par's involvement in and awareness of those circumstances, and any Par decision-making with respect to the Merck/Glenmark Settlement Agreement.

3.      Par's assessment and/or understanding of the value of the Par Distribution Agreement and/or the Merck/Glenmark Settlement Agreement, including but not limited to the value of any no-AG promise by Merck.

4.      Forecasts and projections that Par created, caused to be created, or reviewed (e.g., those provided to Par by Glenmark) that evaluated:

a. The actual or expected impact of the entry of Generic Zetia or any other branded or generic drug on the sales (in units and/or dollars), prices, erosion rates or erosion percentages of Zetia (also referred to as substitution rates or percentages); and profits to Par and/or Glenmark. This includes (without limitation) any (a) analyses of potential market entry or departure of Generic Zetia; (b) forecasts, projections, analyses, or estimates of the effects of the entry or departure of Generic Zetia, or any other branded or generic drug on Zetia unit sales, dollar sales (gross and net) and/or profits (or contribution); (c) forecasts, projections, analyses, or estimates concerning the rate of generic erosion on Zetia and/or substitution of Generic Zetia; (d) expected prices of Zetia or Generic Zetia; and (e) expected timing, number, and identity of Generic Zetia entrants, and their expected launch dates;

b. Forecasts or projections analyzing any actual, considered, or potential Merck strategy to retain unit sales of Zetia, including any effect that any such strategy might have (e.g., on sale units, prices, erosion rates or percentages of Zetia, and profits to Par, Glenmark, or Merck).

c. Your pricing of Generic Zetia, including, without limitation, how the following prices are and have been set to any customer, category of customer, or class of trade: (a) sale price; (b) list price; (c) average wholesale price ("AWP"); (d) direct price; (e) wholesale acquisition cost ("WAC"); and (f) published, potential, or expected price. This also includes how discounts, rebates, chargebacks, and/or other adjustments to price or

quantity were or are set or calculated and on what specific basis, and the personnel responsible for price setting.

    d.    The expected impact of an entry by Merck of its own Generic Zetia product, commonly referred to as an "authorized generic" product, at any point, including if such a product were launched by Merck during the six-month period of Generic Zetia market exclusivity granted to Glenmark under the Merck/Glenmark Settlement Agreement; or

    e.    The quantitative value, including monetary value, to Glenmark and/or Par of settling the Merck/Glenmark Patent Infringement Action.

5.   The sales data for Generic Zetia that You have produced in this litigation, including its completeness, the meaning of all terms and abbreviations contained therein, and the extent to which such data contains the information requested in Plaintiffs' October 26, 2018 document subpoena, and including all correspondence between, on the one hand, You or Your counsel, and, on the other hand, Plaintiffs concerning such sales data.

6.   Any non-privileged investigation or analysis conducted by, or on behalf of, Par, including by Par's in-house and external attorneys, concerning:

    a.    The strengths and/or weaknesses of Azetidinone Patents and/or the Combination Patent; or

    b.    The validity, enforceability and/or infringement of the Azetidinone Patents and/or the Combination Patent.

**EXHIBIT E**

**SEARCH TERMS AND CUSTODIANS**

Plaintiffs and Par agree that Par will run the below search strings pursuant to the terms of the Settlement Agreement. The search strings shall be run for a time period beginning January 1, 2009 and ending June 30, 2017. The agreed-upon custodians on whose electronic files the search strings shall be run are: (1) Paul Campanelli; (2) Lawrence (Larry) Brown; (3) Chad Gassert; (4) Terrance (Terry) Coughlin; and (5) Tunie Zaku. For custodians Campanelli, Brown, Gassert, and Coughlin non-email forms of communication will also be searched and produced, including SMS messages, instant messages, and voicemail. Par shall be permitted to use email threading, provided that all nonduplicative attachments for each lesser included email in the chain are also produced, and for privileged email chains, shall log the most recent privileged email in the chain.

| No. | Agreed-Upon Search Strings |
|---|---|
| 1 | (Zetia* or ezetim* or eze) and (lawsuit* or litig* or infring* or suit* or sue or sued or compl* or (para* w/5 (four or 4 or IV)) or counterclaim or (decl* w/15 (inval* or unenforc*))) and (Glen* or GP* or Merck* or Schering* or MRK or @merck* or @spcorp*) |
| 2 | (Zetia* or ezetim* or eze) w/50 (settl* or resol* or dismiss* or stipulat* or terminat* or withdraw* or agree* or licens* or negotiat* or deal* or consideration or compensation or valu* or MOU or (memo* w/3 understanding) or consent or judgment or pay* or paid or LOE or (entry w/3 date*)) and (Glen* or GP* or Merck* or Schering* or MRK or @merck* or @spcorp*) |
| 3 | (Zetia* or ezetim* or eze) w/100 (royal* or rate or RR) w/50 (Glen* or GP* or Merck* or Schering* or MRK or @merck* or @spcorp*) |
| 4 | (Zetia* or ezetim* or eze) w/25 (USDOJ* or DOJ* or (Dep* w/2 Justice*) or FTC* or ("Federal Trade" w/1 Commission*)) |
| 5 | (Merck* or Schering* or SP or MRK or @merck* or Glen* or GP* or "@glenmark-generics.com" or "@glenmarkpharma.com" or "@gtlaw.com") w/25 ("at risk" or ARL or "At-Risk") |
| 6 | (Zetia* or ezetim* or eze) w/50 (FWK* or (Cesar pre/1 Castillo*) or ("Rochester Drug" pre/1 Cooperative*) or RDC* or "UFCW Local 1500 Welfare Fund" or "Sergeants Benevolent Association Health & Welfare Fund" or "Philadelphia Federation of Teachers Health and Welfare Fund" or "Painters District Council No. 30 Health and Welfare Fund" or "International Union of Operating Engineers Local 49 Health and Welfare Fund") |

| | |
|---|---|
| 7 | (Zetia* or ezetim* or eze) w/50 ("City of Providence, Rhode Island" or "Self-Insured Schools of California" or "Uniformed Firefighters' Association of Greater New York Security Benefit Fund" or "Retired Firefighters' Security Benefit Fund of the Uniformed Firefighters' Association" or Walgreen or Walgreens or Kroger or Albertsons or HEB or "Rite Aid" or CVS) |
| 8 | (Zetia* or ezetim* or eze) /50 (bottleneck* or launch* or lifecycle or "life-cycle" or "life cycle" or LCM or evergreen or extension or antitrust or expir* or "180-day" or "180 day" or (FTF or (first w/5 fil*)) /50 (Glen* or GP* or Merck* or Schering* or MRK or @merck* or @spcorp*)) |
| 9 | ((Settl* or litigat*) /10 (cost* or exp* or valu* or est*)) w/50 (Merck* or Schering* or SP or MRK or @merck* or @spcorp* or Glen* or GP* or "@glenmark-generics.com" or "@glenmarkpharma.com" or "@gtlaw.com") |
| 10 | (Zetia* or ezetim* or eze) and (("auth* generic*" or GX or AG*) /100 (timeline or project or (plan* w/5 (launch or manufactur* or production or market*)))) |
| 11 | (Zetia* or ezetim* or eze) w/50 (IQVIA or Quintiles or IMS or Verispan or MediSpan or "Scott-Levin" or PriceCheck or Symphony or ImpactRx or "First Databank") |
| 12 | (Coughlin or Terry or Terrance) w/25 (Zetia or ezetim* or eze) |
| 13 | ((Glen* or GP* or Merck* or Schering* or MRK or @merck* or @spcorp*) w/50 (agree* or settl* or contract* or deal* or negotiat* or pay* or sell* or sale* or distrib* or market* or commit* or steer*) and (Zetia* or ezetim* or eze)) |
| 14 | (Zetia* or ezetim* or eze) w/25 ("Steering Committee" or JSC) |
| 15 | (Zetia* or ezetim* or eze) w/50 (GX* or AG* or "Authorized" or "Auth Gen" or "No-AG" or "No AG") |
| 16 | (Zetia* or ezetim* or eze) w/50 ("180 day" or "180-day" or 180d or "six month*" or "6 month*") |
| 17 | (Zetia* or ezetim* or eze) w/50 (LOE or "L.O.E." or forecast* or model* or assumption* or scenario* or erosion or erode or penetrat* or analog) |
| 18 | (Zetia* or ezetim* or eze) w/50 (invalid* or unenforc* or inheren* or metab* or inequit* or "prior art" or enable* or error* or obvious* or (double w/5 patent*)) |

| 19 | For custodians Campanelli, Brown, and Gassert: <br><br> (Zetia* or ezetim* or eze) and (*@cov.com or *@merck.com or *@spcorp.com) |