**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| In re: ZETIA (EZETIMIBE) ANTITRUST LITIGATION | |
| This Document Relates To:<br><br>All Direct Purchaser Class Actions | MDL No. 2836<br>Civil Action No. 18-md-2836-RBS-DEM |

**MEMORANDAM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
DEFENDANTS' IMMEDIATE PRODUCTION OF NEGOTIATOR
<u>CELL PHONE NUMBER AND CARRIER INFORMATION AND RELATED RECORDS</u>**

This motion seeks to compel Merck and Glenmark to immediately produce all April 1, 2009 through December 31, 2017 business and personal cell phone number and carrier information for each of the three Merck and two Glenmark negotiators of the May 10, 2010 Glenmark-Merck Settlement Agreement: Paul Matukaitis (Merck), Ed Murray (Merck), Lisa Jakob (Merck), Terrance Coughlin (Glenmark), and Vijay Soni (Glenmark) (collectively, the "Negotiators"). The motion also seeks Merck's and Glenmark's prompt production of any existent Negotiator telephone records whether reflected in expense reports, human resources files, or any other source that Defendants searched to ascertain the requested cell phone number and carrier information.

Discovery confirms that the Negotiators used various non-email forms of communication to negotiate the Settlement, including in-person meetings, telephone calls, and text messages. Defendants revealed for the first time only on July 11, 2019 that they did not maintain any text messages to produce, arguing, wrongly, that they had no obligation to maintain text messages because (i) most Negotiators left their employment prior to the filing of

the first antitrust complaint in this MDL,[1] and (ii) the Court's ESI Protocol Order (ECF 172) did not require text messages to be collected or searched. In the complete absence of any text message production from Defendants, Plaintiffs immediately requested production of relevant cell phone carrier and phone number information for each of the Negotiators' business and personal phones, for the purpose of serving nonparty subpoenas on the relevant carriers to at least discover the frequency and extent of otherwise off-the-record telephone calls and text messages exchanged between or among the Negotiators over the relevant period.  Defendants demurred, suggesting that they had no obligation to provide the information requested.

Plaintiffs disagree.  Plaintiffs' need for the carrier and number information is made necessary by Defendants' failure to maintain and produce relevant text messages.  The requested phone number and carrier information should be readily accessible to Defendants, including through centrally maintained personnel files, cell phone bills, cell phone reimbursement expense reporting, and/or other HR/finance sources.  Prejudice to Plaintiffs' ability to use the carrier and phone number information to obtain and analyze relevant nonparty carrier productions only increases each day Defendants' continue to drag their heels.  Plaintiffs respectfully request that the Court enter a form of the attached proposed order, directing Defendants to produce within three (3) business days all business and personal cell phone number and carrier information for each of the Negotiators.  Similarly, any readily available

---

[1] Plaintiffs' disagree that the Defendants' duty to preserve relevant text messages triggered only upon the filing of the first antitrust complaint.  Applicable law makes clear that Defendants' preservation obligations arose much earlier in time.  This motion, however, is not a spoliation motion, and the timing of when precisely Defendants' duty to preserve text messages triggered need not be resolved for purposes of Plaintiffs' present relief request.  Plaintiffs reserve all rights to separately move for spoliation relief.

Negotiator phone records in Defendants' possession, custody or control should likewise be promptly produced.

## BACKGROUND

**I.     Defendants Conducted Settlement Negotiations Offline.**

The negotiations leading to the May 10, 2010 Merck-Glenmark Settlement Agreement apparently began in earnest with the closing of Merck's November 2009 acquisition of Schering.  Merck sent Glenmark the first draft of the settlement agreement on March 29, 2010.[2] Prior to that March 29, 2010 transmission, Merck and Glenmark engaged in numerous and substantial Settlement negotiations only offline:

- On October 23, 2009, Glenmark negotiator Vijay Soni met in person with Merck negotiator Paul Matukaitis and Schering negotiator Henry Hadad;[3]

- In November 2009, Mr. Soni then sought to schedule a call with Mr. Matukaitis to follow-up on those settlement discussions;[4]

- Mr. Matukaitis did not respond to the call request until after the holidays, suggesting the follow-up call be had by the end of January;[5]

- In late January/early February 2010, Mr. Soni and Mr. Matukaitis appear to have negotiated over the phone;[6]

- On February 24, Merck held an internal call to discuss "█████████ ████████████████";[7]

- On February 25, Mr. Soni and Mr. Matukaitis negotiate over the phone, prefaced by Mr. Soni's forwarding to Mr. Matukaitis a report about █████████

---

[2] MRKZETIA000870261 (attached as Ex. 1 to the accompanying Declaration of Bradley J. Demuth, Esq. ("Demuth Decl.")).

[3] MRKZETIA_R000061829 (Demuth Decl. Ex. 2).

[4] *Id.*

[5] MRKZETIA_R000061593 (Demuth Decl. Ex. 3).

[6] MRKZETIA_R000061858 (Demuth Decl. Ex. 4) at '859.

[7] MRKZETIA_R000061917 (Demuth Decl. Ex. 5).

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇;[8]

- On February 26, Mr. Soni and Mr. Matukaitis negotiate over the phone (with Merck's Ed Murray also participating), after which Mr. Soni "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇";[9]

- On March 1, Mr. Soni, Mr. Matukaitis, and Mr. Murray again negotiate over the phone;[10]

- On March 3, Mr. Soni, Mr. Matukaitis, and Mr. Murray again negotiate over the phone, prefaced by Mr. Soni's text message to Mr. Matukaitis that "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇",[11]; immediately after that March 3 call, Mr. Matukaitis emails that he has "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇" and requests that Mr. Soni call him;[12]

- On March 8, Mr. Soni, Mr. Matukaitis, and Mr. Murray again negotiate over the phone;[13]

- On March 9, Mr. Soni, Mr. Matukaitis, and Mr. Murray again negotiate over the phone;[14]

- On March 10, Mr. Soni, Mr. Matukaitis, and Mr. Murray again negotiate over the phone;[15]

---

[8] MRKZETIA_R000061768 (Demuth Decl. Ex. 6).

[9] MRKZETIA_R000061858 (Demuth Decl. Ex. 4).

[10] MRKZETIA_R000061545 (Demuth Decl. Ex. 7).

[11] MRKZETIA000848697 (Demuth Decl. Ex. 8). In addition to Mr. Soni, other Negotiators are known to also communicate by text messaging. *See, e.g.*, GLENMARK-ZETIA-00218116 (Demuth Decl. Ex. 9) (June 4, 2009 Coughlin email advising Par Negotiator Paul Campanelli of text message regarding ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇); GLENMARK-ZETIA-00430747 (Demuth Decl. Ex. 10) (Oct. 14, 2016 Coughlin email referencing text sent from "▇▇▇" to Glenmark CEO Glenn Saldanha).

[12] GLENMARK-ZETIA-00272713 (Demuth Decl. Ex. 11).

[13] GLENMARK-ZETIA-00272715 (Demuth Decl. Ex. 12).

[14] MRKZETIA000845438 (Demuth Decl. Ex. 13).

[15] MRKZETIA_R000080385 (Demuth Decl. Ex. 14); GLENMARK-ZETIA-00272713 (Demuth Decl. Ex. 11).

- On March 22, Mr. Soni seeks another negotiations call with Mr. Matukaitis;[16]

- On March 23, Mr. Soni, Mr. Matukaitis, and Mr. Murray again negotiate over the phone;[17]

- On March 26, Mr. Matukaitis and Mr. Murray have a call with Merck's lead outside counsel Negotiator Tim Hester;[18]

- On March 29, Mr. Soni and Mr. Matukaitis, along with other Merck and Glenmark representatives meet in person to discuss the proposed settlement, which meeting Mr. Soni hoped would provide the opportunity to "███████ ███████████████████████████████████████████" and which Mr. Matukaitis indicated would instead "██████████████████";[19]

- After the March 29 meeting, Mr. Matukaitis sent Mr. Soni the first draft of the Settlement Agreement;[20] and

- On March 31, several follow-up negotiations calls were had or attempted.[21]

Par similarly negotiated the Settlement offline.[22] Apart from the limited disclosures noted above, prior to the March 29 transmission of the draft agreement, Glenmark and Merck did not identify any substantive settlement terms and conditions in their email communications.

---

[16] MRKZETIA000848259 (Demuth Decl. Ex. 15).

[17] MRKZETIA_R000080383 (Demuth Decl. Ex. 16); MRKZETIA_R000061915 (Demuth Decl. Ex. 17).

[18] MRKZETIA_R000061772 (Demuth Decl. Ex. 18).

[19] MRKZETIA_R000078807 (Demuth Decl. Ex. 19); MRKZETIA_R000061669 (Demuth Decl. Ex. 20).

[20] MRKZETIA000870261 (Demuth Decl. Ex. 1).

[21] GLENMARK-ZETIA-00231379 (Demuth Decl. Ex. 21).

[22] *See, e.g.*, MRKZETIA_R000080162 (Demuth Decl. Ex. 22) (in-person May 7 Settlement negotiation meeting between Merck and Par); GLENMARK-ZETIA-00272708 (Demuth Decl. Ex. 23) (May 9 and 10 Par-led negotiation calls).

## II. Plaintiffs Requested Defendants' Production of All Settlement Communications, Including Text Messages.

Plaintiffs' initial requests for production included requests for production of relevant Negotiator text messages.[23] Throughout several weeks of meet and confers on these production requests, Defendants did not raise objection to or any other concerns regarding production of text messages. Certainly, Defendants never indicated that they did not have any text messages to produce.

On July 11, Defendants revealed for the first time that they did not have any text messages to produce, indicating that most of the Negotiators left Defendants' employment prior to the filing of the first Zetia antitrust action in this MDL.

In the meet and confer process leading up to the July 11 revelations, Defendants took the position on June 20, 2019 that the Court's ESI Protocol Order (ECF 172) excused Defendants from having to "collect and search text messages, IMs, and voicemails" and otherwise suggested that Plaintiffs' June 14 inquiry regarding the absence of any text message

---

[23] *See, e.g.*, Plaintiffs' First Set of Requests for Production of Documents Directed to the Merck Defendants, dated Sept. 7, 2018 (Demuth Decl. Ex. 24), at Def. No. 6 (including in request for "communications" SMS text messages, instant messages, and telephone communications); RFP No. 28 (all communications between Merck and Glenmark concerning Zetia or Generic Zetia including settlement or any proposed business dealings); RFP No. 32 (all documents comprising or concerning settlement, including any communication or analysis pertaining to same), RFP No. 38 (all communications concerning any no-AG); Plaintiffs' Second Set of Requests for Production of Documents Directed to the Merck Defendants, dated Dec. 10, 2018 (Demuth Decl. Ex. 25), at RFP No. 117 (all communications to/from Par concerning Settlement). Plaintiffs' propounded on Glenmark substantially the same requests, including with respect to production of text messaging. Defendants' discovery responses did not clearly object to Plaintiffs' text message production requests. *See generally* Merck's Objections and Responses to Plaintiffs' First Set of Requests for Production, dated Oct. 19, 2018 (Demuth Decl. Ex. 26); Glenmark's Objections and Responses to Plaintiffs' First Set of Requests for Production of Documents, dated Oct. 19, 2018 (Demuth Decl. Ex. 27).

production was untimely raised under that Order.[24] Rather than excuse Defendants, however, the ESI Protocol Order explicitly requires Defendants to "preserve if potentially responsive" various forms of non-email communications, including text messages, and that searches and productions with respect to text messages may continue "after the agreed-upon date for the close of fact discovery."[25] In other words the Court's ESI Protocol Order explicitly required Defendants to investigate at the outset of this case the existence of all "potentially responsive" non-email sources to ensure preservation and prompt production. Follow-up efforts by Plaintiffs to resolve this dispute have gone unanswered.[26]

## ARGUMENT

Rule 1 requires the Federal Rules of Civil Procedure, including those pertaining to discovery, to be interpreted to "secure the just, speedy, and inexpensive determination" of the action.[27] To ensure "open, even-handed, and efficient development of the relevant facts so that justice may be delivered on the merits," an opposing party is obligated to cooperate and facilitate relevant discovery in good faith.[28] Plaintiffs' are entitled to relevant information reasonably accessible to Defendants; Defendants, in turn, have a duty to provide "true, explicit, responsive, complete and candid answers" to Plaintiffs' discovery requests.[29]

---

[24] *See* June 20, 2019 emails from B. Fee and C. Dusseault to B. Demuth (Demuth Decl. Ex. 28).

[25] *See* ESI Protocol Order at 7-8;

[26] *See, e.g.,* B. Demuth July 14, 2019 email to B. Fee and C. Dusseault (Demuth Decl. Ex. 28); B. Vettraino July 29, 2019 email to C. Dusseault (Demuth Decl. Ex. 29).

[27] Fed. R. Civ. P. 1.

[28] *See, e.g., In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 331, 342 (N.D. Ill. 2005) ("Courts ought not to reward those who needlessly allow confusion to persist or who are the cause of discovery delays.").

[29] *See Wagner v. Dryvit Systems, Inc.*, 208 F.R.D. 606, 609 (2001).

Plaintiffs' investigation of the Settlement issues reveals a deliberate effort by Defendants, consistent with a consciousness of guilt, to avoid creation of a written record of their Settlement negotiations. Defendants conducted virtually all Settlement terms and conditions negotiations prior to the March 29 draft Settlement, and for several of the negotiations thereafter, only through non-written means. Rather than exchange substantive emails, Defendants instead negotiated extensively through in-person meetings and telephone calls. They also conducted substantive negotiations through text messages, but Defendants apparently did not maintain those written text message records. Now Defendants balk at providing information that should be readily accessible to each of them that would permit Plaintiffs to document the frequency and duration of the phone calls and text messages exchanged between the Negotiators and draw appropriate inferences.

Under the Court's ESI Protocol Order (ECF 172), Defendants were obligated to "preserve if potentially responsive" all text messages. [30] Defendants did not disclose their inability to produce *any* text messages until July 11, 2019, notwithstanding Plaintiffs' explicit requests for production of text messages in their September 2018 requests for production. Even after Plaintiffs' June 14, 2019 email identifying the lack of any text message production, it took Defendants nearly a month to disclose that they would not be providing *any* relevant text messages, when the ESI Protocol Order obligated the Defendants to already have known for which custodians it had or did not have relevant text messages to produce.

Defendants now resist Plaintiffs' alternative discovery request for cell phone information, made necessary only by Defendants' eleventh-hour inability to produce any of the Settlement-related text messages. The requested phone number and carrier information should

---

[30] *See* ESI Protocol Order at 7-8.

be readily accessible to Defendants, including through centrally maintained personnel files, cell phone bills, cell phone reimbursement expense reporting, and/or other HR/finance sources. This information is necessary for Plaintiffs to serve subpoenas on the relevant carriers to obtain relevant phone/text records. Those records will permit Plaintiffs to assess the frequency and duration of Merck and Glenmark's telephone and text message communications during the relevant period and the inferences that may be drawn therefrom and in combination with events otherwise disclosed by other discovery.

Under the circumstances, Defendants should more cooperatively provide, and in the absence of such cooperation, Plaintiffs respectfully request that the Court order Defendants to immediately produce the cell phone number and carrier information Plaintiffs have requested for each of the Negotiators for the April 1, 2009 through December 31, 2017 period, along with whatever phone records either locates in the course of ascertaining such cell phone information.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion and enter a form of the attached proposed order directing Merck and Glenmark to each provide Plaintiffs within three (3) business days the cell phone number(s) and carrier(s) information for each of the Negotiators, with production of any applicable phone records to follow promptly thereafter.

Dated: July 30, 2019

/s/ William H. Monroe, Jr
William H. Monroe, Jr. (VSB No. 27441)
Marc C. Greco (VSB No. 41496)
Kip A. Harbison (VSB No. 38648)
Michael A. Glasser (VSB No. 17651)
GLASSER AND GLASSER, P.L.C.
Crown Center, Suite 600
580 East Main Street
Norfolk, VA 23510
Telephone: (757) 625-6787

Facsimile: (757) 625-5959
bill@glasserlaw.com
marcg@glasserlaw.com
kip@glasserlaw.com
michael@glasserlaw.com

*Local Counsel for Direct Purchaser Plaintiffs FWK Holdings, LLC, Rochester Drug Cooperative, Inc., Cesar Castillo, Inc. and the Proposed Direct Purchaser Class*

Thomas M. Sobol
Kristen A. Johnson
Edward Notargiacomo
Hannah Schwarzschild
Bradley Vettraino
HAGENS BERMAN SOBOL SHAPIRO LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
tom@hbsslaw.com
kristenj@hbsslaw.com
ed@hbsslaw.com
hannahs@hbsslaw.com
bradleyv@hbsslaw.com

*Lead Counsel for the Proposed Direct Purchaser Class*

John D. Radice
RADICE LAW FIRM, P.C.
475 Wall Street
Princeton, NJ 08540
Tel.: (646) 245-8502
Fax: (609) 385-0745
jradice@radicelawfirm.com

Joseph M. Vanek
David P. Germaine
John P. Bjork
Paul E. Slater
Matthew T. Slater
SPERLING & SLATER, P.C.
55 W. Monroe, Suite 3200
Chicago, IL 60603
Telephone: (312) 641-3200
Facsimile: (312)641-6492
jvanek@sperling-law.com

Sharon K Robertson
Donna M. Evans
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Tel: (212) 838-7797
Fax: (212) 838-7745
srobertson@cohenmilstein.com
devans@cohenmilstein.com

Steve D. Shadowen
Matthew C. Weiner
HILLIARD & SHADOWEN LLP
1135 W. 6th Street, Suite 125
Austin, TX 78703
Tel.: (855) 344-3298
steve@hilliardshadowenlaw.com
matt@hilliardshadowenlaw.com

dgermaine@sperling-law.com
jbjork@sperling-law.com
pes@sperling-law.com
mslater@sperling-law.com

Joseph H. Meltzer
Terence S. Ziegler
KESSLER TOPAZ MELTZER & CHECK LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jmeltzer@ktmc.com
tziegler@ktmc.com

*Counsel for Plaintiff FWK Holdings, LLC and the Proposed Direct Purchaser Class*

Linda P. Nussbaum
NUSSBAUM LAW GROUP, P.C.
1211 Avenue of the Americas, 40th Floor
New York, NY 10036-8718
Telephone: (917) 438-9189
lnussbaum@nussbaumpc.com

Jayne A. Goldstein
SHEPHERD, FINKELMAN, MILLER &SHAH, LLP
1625 North Commerce Parkway, Ste. 320
Fort Lauderdale, FL 33326
Telephone: (954) 515-0123
Facsimile: (866) 300-7367
jgoldstein@sfmslaw.com

*Counsel for Plaintiff Cesar Castillo, Inc. and the Proposed Direct Purchaser Class*

David F. Sorensen
Zachary D. Caplan
BERGER & MONTAGUE, P.C.
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
dsorensen@bm.net
zcaplan@bm.net

Peter R. Kohn
Joseph T. Lukens
FARUQI & FARUQI, LLP
1617 John F. Kennedy Boulevard, Suite 1550
Jenkintown, PA 19103
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
pkohn@faruqilaw.com
jlukens@faruqilaw.com

Barry Taus
Archana Tamoshunas
Kevin Landau
TAUS, CEBULASH & LANDAU, LLP
80 Maiden Lane, Suite 1204
New York, NY10038
Telephone: (646) 873-7654
btaus@tcllaw.com
atamoshunas@tcllaw.com
klandau@tcllaw.com

Bradley J. Demuth
FARUQI & FARUQI, LLP
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
bdemuth@faruqilaw.com

*Counsel for Rochester Drug Cooperative, Inc. and the Proposed Direct Purchaser Class*

James A. Cales III (VSB No. 41317)
Alan Brody Rashkind (VSB No. 12658)
FURNISS, DAVIS, RASHKIND AND SAUNDERS, PC
6160 Kempsville Circle, Suite 341B
Norfolk, Virginia 23502
Telephone: 757-461-7100

11

arashkind@furnissdavis.com
jcales@furnissdavis.com

*Liaison Counsel for the Proposed End-Payor Class*

| | |
|---|---|
| Marvin A. Miller | Michael M. Buchman |
| Lori A. Fanning | Michelle C. Clerkin |
| MILLER LAW LLC | MOTLEY RICE LLC |
| 115 S. LaSalle Street, Suite 2910 | 777 Third Avenue, 27th Floor |
| Chicago, IL 60603 | New York, NY 10017 |
| Telephone: (312) 332-3400 | Telephone: (212) 577-0040 |
| mmiller@millerlawllc.com | mbuchman@motleyrice.com |
| lfanning@millerlawllc.com | mclerkin@motleyrice.com |

*Co-Lead Counsel for the Proposed End-Payor Class*

Adam M. Carroll (VSB No. 68017)
WOLCOTT RIVERS GATES
Convergence Center IV
200 Bendix Road, Suite 300
Virginia Beach, VA 23452
Tel.: (757) 554-0249
Fax: (757) 554-0248
acarroll@wolriv.com

*Liaison Counsel for the Retailer Plaintiffs*

| | |
|---|---|
| Scott E. Perwin | Barry L. Refsin |
| Lauren C. Ravkind | Monica L. Kiley |
| Anna T. Neill | Eric L. Bloom |
| KENNY NACHWALTER P.A. | HANGLEY ARONCHICK SEGAL PUDLIN |
| Four Seasons Tower | & SCHILLER P.A. |
| 1441 Brickell Avenue, Suite 1100 | One Logan Square, 27th Floor |
| Miami, FL 33131 | Philadelphia, PA 19103 |
| Tel.: (305) 373-1000 | Tel.: (215) 568-6200 |
| Fax: (305) 372-1861 | brefsin@hangley.com |
| sperwin@knpa.com | mkiley@hangley.com |
| lravkind@knpa.com | ebloom@hangley.com |
| aneill@knpa.com | |

*Counsel for Retailer Plaintiffs (No. 2:18-cv-266)*

*Counsel for Retailer Plaintiffs (Nos. 2:18-cv-423 and 2:18-cv-439)*

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to all counsel of record who have made a formal appearance.

Dated: July 30, 2019  **/s/ William H. Monroe, Jr.**
William H. Monroe, Jr. (VSB No. 27441)