UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

In re:
ZETIA (EZETIMIBE) ANTITRUST
LITIGATION

MDL NO. 2:18md2836

THIS DOCUMENT RELATES TO:
ALL CASES

## OPINION

These matters come before the court on the Glenmark Defendants'[1] Motion to Dismiss Direct Purchaser Plaintiffs' Consolidated Class Action Complaint, ECF No. 157;[2] the Defendants' Joint Motion to Dismiss the Retailer Plaintiffs' Complaints, ECF No. 160; and the Defendants' Joint Motion to Dismiss All Claims Asserted by End Payer Plaintiffs, ECF No. 162.

On November 27, 2018, these matters were referred to United States Magistrate Judge Douglas E. Miller pursuant to the

---

[1] The Glenmark Defendants consist of Glenmark Pharmaceuticals, Ltd. and Glenmark Pharmaceuticals Inc., USA, the latter incorrectly identified as Glenmark Generics Inc., USA.

[2] The Merck Defendants filed a Notice of Joinder in the Glenmark Defendants' Motion to Dismiss Direct Purchaser Plaintiffs' Consolidated Class Action Complaint on October 11, 2018. ECF No. 164. The Merck Defendants consist of Merck & Co., Inc.; Merck Sharp & Dohme Corp.; Schering-Plough Corp.; Schering Corp.; and MSP Singapore Co. LLC.

provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), to conduct necessary hearings, including the hearing that was held on January 14, 2019, and to submit to the undersigned district judge proposed findings of fact, if applicable, and recommendations for the disposition of the Motions. Referral Order, ECF No. 208.

By copy of the Magistrate Judge's Report and Recommendation ("R&R"), filed on February 6, 2019, the parties were advised of their right to file written objections to the findings and recommendations made by the Magistrate Judge within fourteen (14) days from the date of service of the R&R on the objecting party. R&R at 105, ECF No. 234. Three sets of objections were filed on February 20, 2019: Retailer Plaintiffs' Objections to Report and Recommendation Regarding Motions to Dismiss ("Retailer Plaintiffs' Objections"), ECF No. 235; Glenmark Defendants' Objections to the February 6, 2019 Report and Recommendation Denying Motions to Dismiss Claims by Direct Purchaser Plaintiffs, End-Payor Plaintiffs, and Retailer Plaintiffs ("Glenmark Defendants' Objections"), ECF No. 236; and Merck Defendants' Written Objections to the Magistrate Judge's Report and Recommendation Dated February 6, 2019 ("Merck Defendants' Objections"), ECF No. 237.[3] Responses to each set of objections were filed on

---

[3] The Merck Defendants join in the Glenmark Defendants' Objections, Merck Defs.' Objs. at 2, and the Glenmark Defendants

March 6, 2019: Defendants' Joint Response to Retailer Plaintiffs' Objections ("Defendants' Response"), ECF No. 240; Plaintiffs' Response to Glenmark Defendants' Objections ("Plaintiffs' Response"), ECF No. 239; and End-Payor Plaintiffs' Opposition to the Merck Defendants' Objections ("EPPs' Opposition"), ECF No. 238. On March 6, 2019, the Glenmark Defendants filed a request for hearing on their Objections. ECF No. 241. The court finds a hearing unnecessary to resolve the Glenmark Defendants' Objections.

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the court, having reviewed the record in its entirety, hereby makes a de novo determination of those portions of the R&R to which the Defendants have specifically objected. See Fed. R. Civ. P. 72(b). The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

## I. Retailer Plaintiffs' Objections

The Retailer Plaintiffs object to the portion of the R&R "that recommends dismissal of Retailer Plaintiffs' per se claim under section 1 of the Sherman Act, 15 U.S.C. § 1." Retailer Pls.' Objs. at 1. Specifically, the Retailer Plaintiffs assert that this "recommendation rests on two legally untenable propositions." Id.

---

join in the Merck Defendants' Objections, Glenmark Defs.' Objs. at 1 n.1.

The first proposition is that Merck's existing patent rights preclude application of the per se rule. Id. (citing R&R at 51). The second proposition is that applying a per se rule would preclude the court from examining the Defendants' proffered justifications for settlement. Id. As explained below, the court finds that both propositions are legally tenable and consistent with controlling Supreme Court precedent.

The Retailer Plaintiffs' objections assume that the form of the alleged reverse payment settlement in this case, an agreement by Merck not to compete with Glenmark by launching an authorized generic (a "no-AG agreement"), requires this court to depart from FTC v. Actavis, Inc., 570 U.S. 136 (2013), and apply a per se rule. Retailer Pls.' Objs. at 15 ("Retailer Plaintiffs do not contend that all reverse-payment settlement[s] should be subject to per se condemnation, but rather that no-AG agreements should be subject to such condemnation."). However, the Retailer Plaintiffs have not put forth any meritorious argument why the form of a reverse payment settlement, such as a no-AG agreement, warrants a departure from Actavis. The Retailer Plaintiffs also have not identified any case in which a court applied a per se rule to a reverse payment settlement or a no-AG agreement, and courts have universally applied the rule of reason to reverse payment settlements, including those involving a no-AG agreement. See, e.g., United Food & Commercial Workers Local 1776 & Participating Emps. Health

4

& Welfare Fund v. Teikoku Pharma USA, Inc., 74 F. Supp. 3d 1052, 1075 & n.30 (N.D. Cal. 2014) (citing cases in which "district courts have considered no-authorized generic agreements under the rule of reason approach as set forth by the Court in Actavis"); see also Leegin Creative Leather Prods., Inc. v. PSKS, Inc., 551 U.S. 877, 886 (2007) ("[T]he per se rule is appropriate only after courts have had considerable experience with the type of restraint at issue." (citing Broadcast Music, Inc. v. Columbia Broadcasting System, Inc., 441 U.S. 1, 9 (1979))).

Instead, the Retailer Plaintiffs have analogized the alleged no-AG agreement to three instances in which per se rules apply: a horizontal market-allegation agreement, a horizontal output restriction, and a price-fixing agreement. See Retailer Pls.' Objs. at 18-23. In the R&R, the Magistrate Judge aptly concluded that these analogies to various per se violations all share "the same fatal defect. Each relies solely on a characterization of the [no-AG] Agreement's effects while ignoring entirely the admittedly lawful basis Defendants assert for those same effects." R&R at 54. The Retailer Plaintiffs do not challenge this conclusion by adjusting their analogies or making any new arguments for applying a per se rule. See Retailer Pls.' Objs. In fact, the Retailer Plaintiffs' objections appear to repeat verbatim their entire argument for applying a per se rule, including the analogies, from

5

their Memorandum in Opposition to Defendants' Motion to Dismiss. Compare id. at 15-23, with ECF No. 186 at 7-16.[4]

To undermine the Magistrate Judge's conclusion, the Retailer Plaintiffs attack his consideration of "the admittedly lawful basis Defendants assert for [the] effects [of the no-AG agreement]" in determining that a per se rule would be inappropriate. R&R at 54. The Retailer Plaintiffs do so by objecting to the Magistrate Judge's recognition of Merck's patent rights and the Magistrate Judge's proper application of Actavis, which permits courts to consider the proffered justifications for an alleged reverse payment settlement. Retailer Pls.' Objs. at 1. The Retailer Plaintiffs' objections overlook the very nature of the per se rules and disregard the clear and binding precedent of Actavis that directs courts to analyze reverse payment settlements under the rule of reason.

The per se rules treat certain business practices as "necessarily illegal." Leegin Creative Leather Prods., Inc., 551

---

[4] This portion of the Retailer Plaintiffs' Objections that repeats verbatim prior arguments is not a proper objection and is not entitled to de novo review. Objections that "do not attempt to undermine the Magistrate Judge's findings or recommendations by presenting additional arguments . . . do not require this court to make de novo determinations of the R&R findings." Bennett v. Zydron, No. 2:17CV92, 2017 WL 4176972, at *2 (E.D. Va. Sept. 21, 2017) (citing Nichols v. Colvin, 100 F. Supp. 3d 487, 498 (E.D. Va. 2015); Williams v. Astrue, No. 2:09cr60, 2010 WL 395631, at *1 (E.D. Va. Feb. 2, 2010)). Nevertheless, even after undertaking de novo review, the court agrees with the Magistrate Judge's conclusion that these arguments are meritless.

U.S. at 886 ("The per se rule, treating categories of restraints as necessarily illegal, eliminates the need to study the reasonableness of an individual restraint in light of the real market forces at work . . . ." (emphasis added) (citing Bus. Elecs. Corp. v. Sharp Elecs. Corp., 485 U.S. 717, 723 (1988))). Thus, if the court applied a per se rule to an alleged reverse payment settlement because it took the form of a no-AG agreement, the court must treat that settlement as "necessarily illegal." See id. By treating a particular business practice as "necessarily illegal," the per se rules, by their very nature, preclude a court from considering the surrounding circumstances of that practice before deeming it illegal. See id.

Thus, applying a per se rule to the alleged no-AG agreement and finding it to be necessarily illegal would preclude the court from balancing the competing patent and antitrust polices that arise in the context of a reverse payment settlement. See Actavis, 570 U.S. at 148 ("[P]atent and antitrust policies are both relevant in determining the 'scope of the patent monopoly'—and consequently antitrust law immunity—that is conferred by a patent."). The line of reasoning in the R&R related to Merck's patent rights does nothing more than recognize that applying a per se rule would be inappropriate in this case because of the balance that must be struck between competing patent and antitrust policies. See R&R at 51-53. This line of reasoning in the R&R further recognizes that

7

patent polices do not become any less relevant in determining the antitrust immunity conferred by a patent when the reverse payment settlement takes the form of a no-AG agreement. See id.

Similarly, applying a per se rule to the alleged no-AG agreement and finding it to be necessarily illegal would preclude the court from considering the reasonableness of and the procompetitive justifications for the alleged reverse payment settlement, as required by Actavis. See Actavis, 570 U.S. at 148 ("[I]t would be incongruous to determine antitrust legality by measuring the settlement's anticompetitive effects solely against patent law policy, rather than by measuring them against procompetitive antitrust policies as well."); id. at 154 ("We concede that settlement on terms permitting the patent challenger to enter the market before the patent expires would also bring about competition, again to the consumer's benefit.").

Moreover, this court is bound by Actavis to evaluate a reverse payment settlement under the rule of reason, regardless of the settlement's form. In Actavis, the Supreme Court held that "reverse payment settlements . . . can sometimes violate the antitrust laws." Id. at 141 (emphasis added). Accordingly, the Court specifically refused to evaluate reverse payment settlements under "presumptive rules (or a 'quick look' approach)." Id. at 159. The Court reasoned that applying presumptive rules "is appropriate only where 'an observer with even a rudimentary understanding of

economics could conclude that the arrangements in question would have an anticompetitive effect on customers and markets.'" Id. (quoting Cal. Dental Ass'n v. FTC, 526 U.S. 756, 770 (1999)). The Court did "not believe that reverse payment settlements . . . meet this criterion." Id.

The Court further reasoned that applying presumptive rules to reverse payment settlements would be inappropriate "because the likelihood of a reverse payment bringing about anticompetitive effects depends upon its size, its scale in relation to the payor's anticipated future litigation costs, its independence from other services for which it might represent payment, and the lack of any other convincing justification." Id. To account for "these complexities" of a reverse payment settlement, the Court also held that a court reviewing a reverse payment settlement should apply the "rule of reason" to determine whether that settlement violates the antitrust laws. Id.; see also Cont'l T. V., Inc. v. GTE Sylvania Inc., 433 U.S. 36, 49 (1977) ("Under th[e] rule [of reason], the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition."); United States v. Topco Assocs., Inc., 405 U.S. 596, 607 (1972) ("An analysis of the reasonableness of particular restraints includes consideration of the facts peculiar to the business in which the restraint is applied, the nature of the restraint and its effects,

and the history of the restraint and the reasons for its adoption."
(citing Chicago Board of Trade v. United States, 246 U.S. 231, 238
(1918))). In reaching this conclusion, the Court implicitly held
that applying a per se rule to a reverse payment settlement would
be inappropriate because a presumptive rule would not account for
the circumstances and complexities surrounding a reverse payment
settlement. See Actavis, 570 U.S. at 159.

Accordingly, the court finds that the reasoning and
conclusions in the R&R that the Retailer Plaintiffs have
specifically objected to are consistent with controlling Supreme
Court precedent. The court further agrees with the Magistrate
Judge's conclusion that the reverse payment settlement at issue in
this case is properly evaluated under the rule of reason.
Therefore, the Retailer Plaintiffs' Objections are hereby
**OVERRULED**, and the Retailer Plaintiffs' per se claim under § 1 of
the Sherman Act, 15 U.S.C. § 1, is **DISMISSED** with prejudice.[5]

## II. Glenmark Defendants' Objections

The Glenmark Defendants "object[] to Section V(A) of the R&R
that concludes Direct Purchaser Plaintiffs, End-Payor Plaintiffs,
and Retailer [Plaintiffs] have plausibly pled (1) the existence of

---

[5] "A district court's dismissal under Rule 12(b)(6) is, of
course, with prejudice unless it specifically orders dismissal
without prejudice. That determination is within the district
court's discretion." Carter v. Norfolk Cmty. Hosp. Ass'n, Inc.,
761 F.2d 970, 974 (4th Cir. 1985).

a reverse payment that is large and unjustified, and (2) anticompetitive effects." Glenmark Defs.' Objs. at 1. The Glenmark Defendants also object to Sections V(C), (D)(1), and (D)(4) of the R&R to the extent those Sections incorporate the reasoning in Section V(A). Id.

At this stage of the litigation, the Complaints must be dismissed if Plaintiffs' allegations "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Facial plausibility means that a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). It is, therefore, not enough for a plaintiff to allege facts demonstrating a "sheer possibility" or "mere[] consist[ency]" with unlawful conduct. Id. (citing Twombly, 550 U.S. at 557).

The court accepts facts alleged in the Complaints as true and views those facts in the light most favorable to the Plaintiffs. See, e.g., Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005). "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve

11

contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (emphasis added).[6]

## A. Objection Regarding the Existence of a Large and Unjustified Reverse Payment

The Glenmark Defendants object to two different aspects of the Magistrate Judge's finding that the Plaintiffs have plausibly pled the existence of a large and unjustified reverse payment. First, the Glenmark Defendants assert that the Magistrate Judge's conclusion that the Settlement Agreement contains a no-AG provision applies the improper legal standard and misreads the Settlement Agreement. Glenmark Defs.' Objs. at 4-5, 14-19. Second, the Glenmark Defendants assert that the Plaintiffs' circumstantial allegations of parallel conduct, without more, are insufficient to plausibly allege the existence of a no-AG agreement. Id. at 5, 19-22.

### 1. The Settlement Agreement

As a threshold matter, the Settlement Agreement is properly considered at this stage of litigation. Consideration of the Settlement Agreement does not convert, under Federal Rule of Civil

---

[6] To the extent that the analysis and conclusions in the R&R improperly relied upon Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 144 (4th Cir. 1990), R&R at 27, the court clarifies that the analysis and conclusions in this Order rely on the standards outlined here, and not on Advanced Health-Care Servs., 910 F.2d 139. See Glenmark Defs.' Objs. at 11.

Procedure 12(d), the Motions to Dismiss into Motions for Summary Judgment under Federal Rule of Civil Procedure 56, because the Settlement Agreement is "integral to and explicitly relied on in the [C]omplaint[s] and because [P]laintiffs do not challenge its authenticity." Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999). The Settlement Agreement must be viewed in the light most favorable to the Plaintiffs and all reasonable inferences from it must be drawn in the Plaintiffs' favor. See, e.g., Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 607 (4th Cir. 2015) ("[W]hen a court considers relevant facts from the public record at the pleading stage, the court must construe such facts in the light most favorable to the plaintiffs.").

The Glenmark Defendants assert that the R&R is incorrect when it states that the Settlement Agreement's "language is only relevant if it unambiguously contradicts the factual claims in the Complaint." Glenmark Defs.' Objs. at 14 (emphasis omitted) (quoting R&R at 34). There is no question that the Settlement Agreement's language is relevant, as its contents are directly at issue in this case, the point here being relevancy. Better stated, and what the court concludes, is that the Settlement Agreement language only requires dismissal of the Plaintiffs' claims if it unambiguously contradicts the allegations in the Complaints. See R&R at 40; see also, e.g., Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 588 (9th Cir. 2008) ("[W]e need not accept as true allegations

contradicting documents that are referenced in the complaint.");
Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30,
34-36 (1st Cir. 2001) (concluding the complaint was properly
dismissed under 12(b)(6) because the contract language at issue
was unambiguous and released defendant from liability as a matter
of law).

The Glenmark Defendants assert that three provisions of the
Settlement Agreement, sections 1.14, 5.3, and 7.2(c),
"unambiguously contradict" the Plaintiffs' allegations that Merck
agreed not to compete with Glenmark by launching an AG. Glenmark
Defs.' Objs. at 14 n.8. Section 5.3 of the Settlement Agreement
grants Glenmark a limited exclusive license to market "Generic
Ezetimibe":

> During any period of exclusivity to which Glenmark is
> entitled under 21 U.S.C. § 355(j)(5)(B)(iv), and through
> the expiration of Schering's rights under the '721
> Patent and Ezetimibe Pediatric Exclusivity, Schering's
> grant of the rights in Paragraphs 5.1 and 5.2 is
> exclusive to Glenmark and its Affiliates with respect to
> the commercial distribution and sale of Generic
> Ezetimibe, subject only to Schering's right to grant
> rights to or otherwise authorize Third Parties to make,
> have made, use, sell, offer to sell, import or distribute
> Generic Ezetimibe pursuant to such Third Parties' ANDAs
> or applications pursuant to 21 U.S.C. § 355(b)(2).

Settlement Agreement § 5.3, ECF No. 159.[7] Section 1.14 of the
Settlement Agreement defines the term "Generic Ezetimibe":

---

[7] The Settlement Agreement remains filed under seal. The
sections quoted and cited herein have previously been quoted or
cited in publicly filed documents. See, e.g., R&R at 19-20, 32.

> The term 'Generic Ezetimibe' shall mean a drug product
> containing ezetimibe as its sole active ingredient (a)
> that refers to the Approved Zetia Product as the
> reference-listed drug in an ANDA or pursuant to an
> application under 21 U.S.C. § 335(b)(2) or (b) that is
> sold pursuant to NDA No. 21-445 but is not sold under
> the trademark Zetia® or another trademark or trade name
> of Schering, MSP or their Affiliates.

Id. § 1.14. Section 7.2(c) reserves Merck's right to engage
in "conventional commercial conduct in competition with the
Glenmark Product." Id. § 7.2(c).

The Glenmark Defendants have aptly identified the current
question before the court as "whether [this] license can plausibly
be read to be an anticompetitive agreement by Merck not to compete
with Glenmark by launching an AG." Glenmark Defs.' Objs. at 10.
The answer to this question depends on the interpretation of the
Settlement Agreement's definition of "Generic Ezetimibe," and
whether that definition permits Merck to sell an AG. The Settlement
Agreement's definition of "Generic Ezetimibe" permits Merck to
sell a product pursuant to its NDA, provided the product is "sold
under the trademark Zetia® or another trademark or trade name of
Schering, MSP or their Affiliates." Settlement Agreement § 1.14.

The parties and the court agree that the Settlement
Agreement's definition of "Generic Ezetimibe" clearly permits
Merck to sell a branded product, that is, a product "sold under
the trademark Zetia® or another trademark . . . of Schering, MSP
or their Affiliates." Id.; Glenmark Defs.' Objs. at 17 ("'Zetia'

and 'trademark' already refer to branded products."); Pls.' Resp. at 10 ("Glenmark's exclusivity does not extend to branded Zetia or to an ezetimibe product that Merck might sell under another trademark or trade name."). The Magistrate Judge and the Plaintiffs agree that the Settlement Agreement's definition of "Generic Ezetimibe," permitting Merck to sell a product that is "sold under . . . another . . . trade name of Schering, MSP or their Affiliates," can plausibly be read to allow Merck to sell only a branded product. Settlement Agreement § 1.14 (emphasis added); R&R at 35-39; Pls.' Resp. at 10 ("Glenmark's exclusivity does not extend to branded Zetia or to an ezetimibe product that Merck might sell under another trademark or trade name."). The Glenmark Defendants contend that this same language unambiguously "allowed Merck to . . . launch a nonbranded form of Zetia under a 'trade name' of Merck or an affiliate, i.e., an in-house AG." Glenmark Defs.' Objs. at 14 (citing Settlement Agreement § 1.14).

The court agrees with the Magistrate Judge and the Plaintiffs that the Settlement Agreement's definition of "Generic Ezetimibe" can plausibly be read as a no-AG agreement because it permits Merck to sell only a branded, and not a generic, product. See Settlement Agreement § 1.14. As the Magistrate Judge noted, "pharmaceuticals are not sold 'under' a manufacturer's name, but under either a trademarked specialty name for branded drugs (e.g. Zetia, Lipitor, or Celebrex) or under the generic name assigned by the [United

16

States Adopted Names ("USAN")] Council (e.g. ezetimibe, atorvastatin, celecoxib)." R&R at 38. Moreover, the pharmaceutical industry uses the term "trade name" to refer to "a drug product, not the drug company." Pls.' Resp. at 13. This usage of the term "trade name" in the pharmaceutical industry is supported by statutory and regulatory provisions, industry publications, and the Glenmark Defendants' filings in the underlying litigation between the Defendants.

At least one provision of the Food, Drug, and Cosmetic Act ("FDCA") specifically uses the term "trade name" to refer to a pharmaceutical product, not a pharmaceutical company. See 21 U.S.C. § 355(t)(1)(A)(i). Title 21 U.S.C. § 355(t)(1)(A)(i) directs that the "drug trade name" and "brand company manufacturer" are to be included in a "[d]atabase for authorized generic drugs." Id. The United States Food & Drug Administration's ("FDA") Listing of Authorized Generics indicates that a drug's trade name is the same as its proprietary or brand name, as the Listing of Authorized Generics includes the "[p]roprietary [n]ame," but not the generic name of a given product.[8]

At least three provisions in Title 21 of the Code of Federal Regulations also use the term "trade name" to refer to a

_____

[8] FDA Listing of Authorized Generics as of July 1, 2019, https://www.fda.gov/media/77725/download.

17

pharmaceutical product, not a pharmaceutical company. See, e.g., 21 C.F.R §§ 1.101, 60.20, 316.28. At least two of these provisions also distinguish the "trade name" of a product from its "generic name." See, e.g., id. §§ 60.20, 316.28. Section 1.101 requires "[t]he product's trade name" be identified in the notifications required "for drugs, biological products, and devices exported under section 802 of the act." Id. § 1.101(d)(1)(i). Under § 60.20, the FDA will include "[t]he trade name and generic name (if applicable) of the product" in the "regulatory review period determination" notice published in the Federal Register. Id. § 60.20(c)(2). Pursuant to § 316.28, the FDA will include "[t]he generic name and trade name, if any, or if neither is available, the chemical name or a meaningful descriptive name of the drug" in a "publicly available cumulative posting of all drugs designated as orphan drugs." Id. § 316.28(b).

Publications from the FDA and Merck further support the Plaintiffs' reading of the term "trade name" to refer to a pharmaceutical product, not a pharmaceutical company. The FDA's publication Approved Drug Products with Therapeutic Equivalence Evaluations, commonly known as the "Orange Book," uses the term "trade name" to refer to the proprietary name of a pharmaceutical product. FDA, Approved Drug Products with Therapeutic Equivalence Evaluations ("Orange Book") at vi (39th ed. 2019) ("This publication also includes indices of prescription and OTC drug

18

products by trade name (proprietary name) or established name (if no trade name exists).”); see also id. at xii, xxii, 2-2. A publication from Merck discussing drug naming explains that pharmaceuticals are “given a [g]eneric (official) name” and a “[b]rand (proprietary or trademark or trade) name.”[9] This publication not only demonstrates the use of “trade name” to identify a drug, but further illustrates that a drug’s “trade name” refers to a brand, proprietary, or trademark name, not a generic name. See Marsh, supra note 9. This use and understanding of the term “trade name” is further confirmed by the Glenmark Defendants’ filing in the underlying litigation between the Glenmark and the Merck Defendants. In that litigation, Glenmark identified Zetia as “Schering’s trade name of the drug product at issue in this litigation.” Defendant/Counterclaim Plaintiff Glenmark Pharmaceuticals Inc. USA’s, Corrected Answer, Affirmative Defenses, and Counterclaims to Complaint ¶ 82, Schering Corp. v. Glenmark Pharm., Inc. USA, No. 2:07-cv-01334 (D.N.J. Jun. 7, 2007), ECF No. 20 (“Ezetimibe is the active ingredient in Schering’s drug product Zetia®, Schering’s trade name of the drug product at issue in this litigation.” (emphasis added)).

---

[9] Daphne E. Smith Marsh, Overview of Generic Drugs and Drug Naming, Merck Manual Consumer Version (Aug. 2017), https://www.merckmanuals.com/home/drugs/brand-name-and-generic-drugs/overview-of-generic-drugs-and-drug-naming.

Thus, the court can conclude that the term "trade name," as used in the Settlement Agreement's definition of "Generic Ezetimibe," can plausibly mean the proprietary or brand name of a drug product, and the Settlement Agreement permitted Merck to sell only a branded product. Because the Settlement Agreement allowed Merck to sell ezetimibe under a "trade name," or brand name, and not under the generic name "ezetimibe," the Settlement Agreement did not allow Merck to sell a generic product, including an AG. See R&R at 38. Therefore, the Settlement Agreement's definition of "Generic Ezetimibe" can plausibly be read as a no-AG agreement.

The Glenmark Defendants advance a competing interpretation of the Settlement Agreement that does not unambiguously contradict Plaintiffs' reading and render it implausible. See Glenmark Defs.' Objs. at 14-19. Instead, the Glenmark Defendants' competing interpretation highlights an ambiguity in the Settlement Agreement. See, e.g., Cooper River Plaza E., LLC v. Briad Grp., 359 N.J. Super. 518, 528 (App. Div. 2003) ("An ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonable alternative interpretations." (quoting Kaufman v. Provident Life & Cas. Ins. Co., 828 F. Supp. 275, 283 (D.N.J. 1992))); see also Settlement Agreement § 10.3 (selecting New Jersey Law). The Glenmark Defendants' interpretation relies upon the ordinary, dictionary, meaning of "trade name" to refer to a company. Glenmark Defs.' Objs. at 15-18; Flanigan v. Munson, 175

N.J. 597, 606 (2003) ("Consistent with familiar canons of construction, the words of an agreement are given their 'ordinary' meaning."). Whereas, the Plaintiffs' interpretation relies on the meaning of "trade name" as used in the pharmaceutical industry to refer to a branded product. Plfs.' Resp. at 13-14; Guide to New Jersey Contract Law § 5.4.5 (2013) ("Technical terms or words of art will be given their technical meaning, unless the context or local usage shows a contrary intention." (citing Josefowicz v. Porter, 32 N.J. Super. 585, 591 (App. Div. 1954))).

At this juncture, the court does not need to determine which interpretation is more probable or correct. Martin, 980 F.2d at 952 ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts."). Rather, the court finds that the Settlement Agreement's definition of "Generic Ezetimibe," specifically, the meaning of "sold under . . . another . . . trade name of Schering, MSP or their Affiliates," is open to at least two reasonable alternative interpretations, and thus, the meaning of "trade name" is ambiguous. See Cooper River Plaza E., LLC, 359 N.J. Super. 518. Accordingly, the Settlement Agreement does not clearly and unambiguously allow Merck to sell an AG, and it can plausibly be read as a no-AG agreement because it only permits Merck to sell a branded, rather than a generic, product.

## 2. The Circumstantial Allegations

The Glenmark Defendants assert that the Plaintiffs' circumstantial allegations of parallel conduct, without more, are insufficient to plausibly allege the existence of a no-AG agreement. Glenmark Defs.' Objs. at 5-6, 19-22. The Glenmark Defendants further assert that "[t]he R&R erred in concluding otherwise." Id. at 19. However, the Magistrate Judge did not conclude in the R&R that the Plaintiffs' circumstantial allegations alone plausibly allege the existence of a no-AG agreement. See R&R at 31-32, 39-40.

The Magistrate Judge's conclusion that the Plaintiffs had plausibly alleged the existence of a no-AG agreement relied on the Plaintiffs' detailed allegations in the Complaints and the language in the Settlement Agreement. Id. at 39-40 ("The other allegations in the Complaint[s], and the language of the Settlement Agreement itself, are sufficient to plausibly allege [a no-AG agreement]." (emphasis added)). The Magistrate Judge's analysis in the R&R viewed the Plaintiffs' circumstantial allegations as "corroborating," not independently supporting, the Plaintiffs' allegation of a no-AG agreement. Id. ("This is particularly so in light of other corroborating evidence of the Agreement, including Glenmark's claims to exclusivity on release of its generic ezetimibe and Merck's failure to release any authorized generic in

competition with Glenmark's generic product throughout the 180-day period of exclusivity.").

Moreover, the success of the Glenmark Defendants' argument relies on the court finding that the Settlement Agreement does not plausibly contain a no-AG clause. Glenmark Defs.' Objs. at 19 ("In the absence of a plausible allegation as to the existence of a full No-AG clause in the Settlement Agreement, Plaintiffs are left only with alleged circumstantial evidence."). As discussed above, the court agrees with the conclusion in the R&R that the Settlement Agreement, when viewed in the light most favorable to the Plaintiffs, plausibly contains a no-AG clause and does not render the Plaintiffs' allegation of a no-AG agreement implausible. Accordingly, the court agrees with the Magistrate Judge's analysis and views the Plaintiffs' circumstantial allegations as corroborating, rather than independently supporting, the Plaintiffs' plausible allegation of a no-AG agreement.

## B. Objection Regarding Anticompetitive Effects

The Glenmark Defendants object to the Magistrate Judge's finding that the Plaintiffs have plausibly pled anticompetitive effects. Glenmark Defs.' Objs. at 1, 6, 22-25. The Glenmark Defendants assert that the Magistrate Judge erred in two different ways with respect to this finding. Id. at 22-25. First, the Glenmark Defendants assert that the Magistrate Judge applied the wrong legal standard in the R&R. Id. at 22-23. Second, the Glenmark

Defendants assert that the Magistrate Judge incorrectly concluded that "important differences between the Mylan and Glenmark challenges undercut the Defendants' argument that the Plaintiffs' claims of anticompetitive effect lack plausibility." Id. at 23 (quoting R&R at 44).

First, the Magistrate Judge applied the correct legal standard. The plausibility pleading standard requires the Plaintiffs to plead sufficient facts that when accepted as true "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[A]t the pleading stage," the court "consider[s] plausibility, not probability." In re Lipitor Antitrust Litig., 868 F.3d 231, 260 (3d Cir. 2017); see also id. at 267-68 (considering whether prior litigation rendered plaintiffs' allegations implausible).[10] Thus, the Magistrate Judge applied the correct legal standard when he assessed whether the later Mylan litigation renders Plaintiffs' allegations implausible, not whether it makes Plaintiffs' allegations less probable. See R&R at 44-45, 47-48.

---

[10] To the extent the Glenmark Defendants' object to the Magistrate Judge's reliance on In re Lipitor Antitrust Litig., 868 F.3d 231, 260 (3d Cir. 2017), Glenmark Defs.' Objs. at 24 n.15, the court agrees with the Magistrate Judge's consideration of this persuasive authority as instructive, R&R at 44-45.

24

Second, the Magistrate Judge correctly concluded that Merck's success in the later Mylan patent litigation does not render the Plaintiffs' allegations of anticompetitive effects implausible. R&R at 47 ("In short, the fact that Merck successfully defeated a single challenge by a later-in-time ANDA filer does not totally undermine Plaintiffs' claims of anticompetitive effect."). The Plaintiffs' allegations of anticompetitive effects are that "but for the no-AG promise, the strength of Glenmark's patent challenge would have produced one of two outcomes. The two companies would have settled with an earlier generic entry date, or Glenmark would have prevailed in the litigation, invalidated the '721 patent, and launched its generic thereafter." Id. at 41 (citing DPP Compl. ¶¶ 199-203). If the Plaintiffs have plausibly alleged that Glenmark's patent claims against Merck had substantial merit, then the Plaintiffs have alleged "anticompetitive effect because Glenmark's delay is not entirely out of respect for a valid patent, but rather the result of the Defendants' agreement to allocate unlawful monopoly profits obtained by paying Glenmark to delay generic entry in the form of the no-AG agreement." Id. at 41-42.

The Glenmark Defendants' arguments to the contrary fail. The Glenmark Defendants again apply an incorrect probability standard, as opposed to the correct plausibility standard, to the Plaintiffs' allegations. Glenmark Defs.' Objs. at 23-25 ("Those allegations plainly are not enough to tip the scales in Plaintiffs' favor when

weighed against the actual outcome of the trial and appeal."). Additionally, the Glenmark Defendants' argument that the Plaintiffs' allegations are implausible because Merck prevailed in the Mylan litigation, id. at 24-25, ignores the Plaintiffs' allegations that not all claims raised in the Glenmark litigation were litigated to final judgment in the Mylan litigation.

The court agrees with the Magistrate Judge's review of the Plaintiffs' detailed allegations regarding the claims raised in the Glenmark litigation that were not litigated to final judgment in the Mylan litigation. R&R at 42, 45-47 (citing DPP Compl. ¶¶ 155-60). Accordingly, the court agrees with the Magistrate Judge's conclusion that the Mylan litigation does not render the Plaintiffs' allegations implausible and the Plaintiffs have adequately pled anticompetitive effects.[11] Because the Plaintiffs have plausibly alleged a no-AG agreement and anticompetitive effects, the Glenmark Defendants' Objections are hereby **OVERRULED**, and the Defendants' Motion to Dismiss the § 1 Sherman Act claims is **DENIED**.

---

[11] To the extent that the Glenmark Defendants object to other portions of the R&R because "they rely on or incorporate the reasoning of Section V(A), including Sections V(D)(1), and V(D)(4)," Glenmark Defs.' Objs. at 1, the court **OVERRULES** those objections for the reasons stated in Part II of this Order. Similarly, to the extent there are objections to Section V(B) of the R&R based on the arguments already addressed, the court **OVERRULES** those objections for the reasons stated in Part II of this Order.

### III. Merck Defendants' Objections

The Merck Defendants raise numerous objections to Sections V.D.2 through V.D.6 of the R&R. Merck Defs.' Objs. at 2. The court has conducted a <u>de</u> <u>novo</u> review of the record and will briefly address the objections by Section below.

**A. Objections to Section V.D.2.**

The Merck Defendants object to the Magistrate Judge's finding that the EPPs have Article III standing, and his conclusion that the ability of the named class representatives to represent absent class members' state law claims should be addressed under Federal Rule of Civil Procedure 23. Merck Defs.' Objs. at 3-7. The court agrees with the Magistrate Judge's well-reasoned analysis and conclusion that the Article III standing issue is properly addressed at the time of class certification. R&R at 59-62. Thus, the Merck Defendants' objection is **OVERRULED,** and the Defendants' Motion to Dismiss the EPPs' claims for lack of standing is **DENIED.**

**B. Objections to Section V.D.3.**

The Merck Defendants raise several objections to the Magistrate Judge's recommendation that the EPPs' state antitrust claims in nineteen jurisdictions should proceed. Merck Defs.' Objs. at 7-16.

**1. Objections Regarding Section V.D.3.a.**

The Merck Defendants object to the Magistrate Judge's finding that indirect purchasers have standing under Puerto Rico law. Merck

Defs.' Objs. at 8-11. The court agrees with the Magistrate Judge's conclusions and reliance on Pressure Vessels P.R. v. Empire Gas P.R., 137 D.P.R. 497, 518-20 (1994), and Riveria-Muniz v. Horizon Lines Inc., 737 F. Supp. 2d 57, 61 (D.P.R. 2010). R&R at 63-65. Thus, the Merck Defendants' objections is hereby **OVERRULED**, and the Defendants' Motion to Dismiss the EPPs' claim under Puerto Rico law is **DENIED**.

### 2. Objections Regarding Section V.D.3.b.

The Merck Defendants object to the Magistrate Judge's finding that the EPPs plausibly allege an intrastate connection sufficient to meet the requirements of state law. Merck Defs.' Objs. at 11-12. The court agrees with the Magistrate Judge's well-reasoned analysis and conclusion that EPPs have "sufficiently allege[d] the necessary intrastate connections in each of the challenged jurisdictions." R&R at 65-67. Thus, the Merck Defendants' objection is hereby **OVERRULED**, and the Defendants' Motion to Dismiss the EPPs' claims for insufficient intrastate connections is **DENIED**.

### 3. Objections Regarding Section V.D.3.c.

The Merck Defendants object to the Magistrate Judge's conclusion that the EPPs' failure to timely comply with statutory notice requirements does not warrant dismissal. Merck Defs.' Objs. at 12-13. The court agrees with the Magistrate Judge and finds the reasoning in In re Broiler Chicken Antitrust Litig., 290 F. Supp.

3d 772, 817 (N.D. Ill. 2017), and In re Aftermarket Filters Antitrust Litig., No. 08C4883, 2009 WL 3754041, at *6 (N.D. Ill. Nov. 5, 2009), to be persuasive that failure to timely comply with pre-suit notice requirements does not warrant dismissal. Assuming arguendo that the statutory notice requirements apply in federal court, the statutes do not require dismissal for failing to comply precisely with the notice requirement. See R&R at 69.[12] Moreover, the court agrees with the Magistrate Judge that dismissal is unwarranted in this case because the EPPs' delay in providing notice did not prejudice the Defendants. See id. Thus, the Merck Defendants' objection is hereby **OVERRULED**, and the Defendants' Motion to Dismiss the EPPs' claims for improper notice is **DENIED**.

### 4. Objections Regarding Section V.D.3.d.

The Merck Defendants object to the Magistrate Judge's conclusion that the Illinois Antitrust Act class-action bar does not apply in federal court. Merck Defs.' Objs. at 13-15. The court agrees with the Magistrate Judge's analysis of the plain text of the Illinois Antitrust Act, 740 Ill. Comp. Stat. 10/7(2), and the

---

[12] Contrary to the Merck Defendants' objection, the Magistrate Judge did not conclude that the notice requirements are procedural and inapplicable in federal court. See R&R at 67-69. Rather, the Magistrate Judge properly assumed the requirements apply in federal court, but the late or improper notice did not warrant dismissal. Id. at 68-69. The Magistrate Judge merely noted, without concluding, that "Shady Grove may preclude" "more complex procedural requirements" from applying in federal court. Id. at 69.

Magistrate Judge's finding that pursuant to <u>Shady Grove Orthopedic</u> <u>Assocs., P.A. v. Allstate Ins. Co.</u>, 559 U.S. 393 (2010), "Rule 23 governs class actions in federal court and permits the EPPs' suit under the Illinois statute." R&R at 69-72. Thus, the Merck Defendants' objection is hereby **OVERRULED**, and the Defendants' Motion to Dismiss the EPPs' Illinois antitrust claims is **DENIED**.

### 5. Objections Regarding Section V.D.3.e.

The Merck Defendants object to the Magistrate Judge's finding that the EPPs have standing under the Utah Antitrust Act. Merck Defs.' Objs. at 15-16. The court agrees with the Merck Defendants that the Magistrate Judge's reasoning seems to "conflat[e] Defendants' Article III standing arguments with the arguments Defendants actually make concerning Utah." <u>Id.</u> Specifically, the Merck Defendants argue that the EPPs have not sufficiently alleged that "any [named] EPP is a Utah citizen or resident," and only a Utah citizen or resident may bring a claim under the Utah Antitrust Act. <u>Id.</u> at 16 (citing Utah Code Ann. § 76-10-3109(1)(a)). This argument is distinct from the Merck Defendants' Article III argument that the EPPs lack standing to bring claims in jurisdictions where the named EPPs "do not reside and <u>do not claim</u> <u>to have made even a single purchase.</u>" <u>Id.</u> at 3-7 (emphasis added) (asserting the named EPPs have not alleged an injury in those jurisdictions); <u>see also</u> EPP Compl. ¶ 12, ECF No. 130 (alleging Self-Insured Schools of California "indirectly purchased, paid for

and/or provided reimbursement for Zetia and/or its generic equivalent" in Utah).[13]

Nevertheless, the court finds, drawing all reasonable inferences in favor of the EPPs, that the EPPs have sufficiently alleged that the class includes Utah residents. EPP Compl. ¶ 311 (bringing claims "on behalf of the following Class: All persons and entities in the Indirect Purchaser States that indirectly purchased, paid and/or provided reimbursement for some or all of the purchase price of Zetia or its AB-rated generic equivalents in any form . . . ."); id. ¶ 337(x) (alleging a violation of the Utah Antitrust Act "with respect to purchases of Zetia and AB-rated generic equivalents in Utah by Class members and/or purchases by Utah residents"). Moreover, to the extent that the Merck Defendants argue that the Utah Antitrust Act requires that a named EPP or class representative is a Utah citizen or resident, the court agrees with the EPPs that there is no such requirement in the text of the statute. See Utah Code Ann. § 76-10-3109(1)(a) ("A person

---

[13] Self-Insured Schools of California is the only named EPP that asserts it "indirectly purchased, paid for and/or provided reimbursement for Zetia and/or its generic equivalent" in Utah. EPP Compl. ¶ 12. On May 7, 2019, Self-Insured Schools of California voluntarily dismissed its claim without prejudice. ECF No. 248. To the extent this voluntary dismissal raises an Article III standing issue with respect to the ability of the named class representatives to represent absent class members' claims under Utah law, that issue should be addressed under Federal Rule of Civil Procedure 23 during class certification. See supra Part III.A.

31

who is a citizen of this state or a resident of this state and who is injured or is threatened with injury in his business or property by a violation of the Utah Antitrust Act may bring an action for injunctive relief and damages, regardless of whether the person dealt directly or indirectly with the defendant."); see also EPPs' Opp. at 12. Thus, a class representative that is not a Utah citizen or resident may bring claims on behalf of absent class members who are citizens or residents of Utah. See, e.g., In re Generic Pharm. Pricing Antitrust Litig., 368 F. Supp. 3d 814, 838-39 (E.D. Pa. 2019); In re Liquid Aluminum Sulfate Antitrust Litig., No. 16-md-2687, 2017 WL 3131977, at *28 (D.N.J. July 20, 2017); In re Asacol Antitrust Litig., No. 15-cv-12730, 2016 WL 4083333, at *13 (D. Mass. July 20, 2016).

Based on this reasoning set forth above, with supporting case law, the court agrees with the Magistrate Judge's conclusion that the EPPs can bring claims under Utah's Antitrust Statute. See R&R at 72-73. Thus, the court **MODIFIES** the reasoning in the R&R, **OVERRULES** the Merck Defendants' objection, and **DENIES** the Defendants' Motion to Dismiss the EPPs' Utah antitrust claim.

## C. Objection to Section V.D.4.

The Merck Defendants object to the Magistrate Judge's recommendation that the EPPs' state law monopolization claims may proceed, with the exception of the claim under California Code § 17200. Merck Defs.' Objs. at 16-17. The Merck Defendants

32

acknowledge that the EPPs' state law monopolization claims "rely on the same factual allegations [that] the DPPs and Retailers rely on for their federal monopolization claim." Id. at 16 (citing R&R at 73). For the reasons discussed supra Part II, the court agrees with the Magistrate Judge that all Plaintiffs have "alleged sufficient facts to state a claim of conspiracy to monopolize under" federal and state law. R&R at 74.

To the extent the Merck Defendants object to the Magistrate Judge's assertion that the Defendants did not raise any specific challenges to the state law monopolization claims, Merck Defs.' Objs. at 16-17, the court acknowledges that the Defendants' arguments and objections addressed supra Part III.B, would apply to both the EPPs' conspiracy and monopolization claims. See also Merck Defs.' Mem. Supp. Mot. Dismiss at 11, ECF No. 163 (addressing the EPPs' conspiracy and monopolization claims together). For the reasons stated supra Parts II and III.B, the court **OVERRULES** the Merck Defendants' objection and **DENIES** the Defendants' Motion to Dismiss the EPPs' state law monopolization claims, with the exception of the claim under California Code § 17200. The court **DISMISSES** with prejudice the EPPs' claim under California Code § 17200.

**D. Objections to Section V.D.5.**

The Merck Defendants raise several objections to the Magistrate Judge's recommendation that some of the EPPs' consumer protection claims should proceed. Merck Defs.' Objs. at 18-24.

**1. Objections Regarding Section V.D.5.a.**

The Merck Defendants object to the Magistrate Judge's conclusion that the EPPs can bring indirect purchaser actions under the consumer protection laws of Illinois and Missouri. Merck Defs.' Objs. at 18-19. The Merck Defendants objection regarding the EPPs' claim under the consumer protection laws of Illinois is based on the same reasoning as the objection previously addressed supra Part III.B.4. The court agrees with the Magistrate Judge's reasoning and conclusion that the EPPs can bring an indirect purchaser action under the consumer protection statutes of Illinois. See R&R at 75-76. The court further agrees with the Magistrate Judge's reasoning and conclusion that Gibbons v. J. Nuckolls, Inc., 216 S.W.3d 667 (Mo. 2007), permits an action by indirect purchasers under Missouri's consumer protection statutes. See R&R at 77. Thus, the Merck Defendants' objections are hereby **OVERRULED**, and the Defendants' Motion to Dismiss the EPPs' Illinois and Missouri consumer protection claims is **DENIED** on this basis. However, the court **DISMISSES** the EPPs' consumer protection claim under Missouri law without prejudice on other grounds, namely, the

EPPs are not proper plaintiffs under Missouri's consumer protection statutes. See R&R at 91, 93.

## 2. Objections Regarding Section V.D.5.b.

The Merck Defendants object to the Magistrate Judge's recommendation that the court permit the EPPs' claims to proceed under the consumer protection statutes of Arizona, Idaho, Maine, Rhode Island, and Vermont. Merck Defs.' Objs. at 19-20.

With respect to Arizona, the court agrees with the Magistrate Judge's conclusion that Arizona's consumer protection statute covers an "unfair act," Ariz. Rev. Stat. Ann. § 44-1522(A), includes a Federal Trade Commission Act ("FTC Act") harmonization provision, id. § 44-1522(C), and therefore, broadly covers unfair trade practices. See R&R at 79. Moreover, the court finds the Merck Defendants' citation to Watts v. Medicis Pharm. Corp., 365 P.3d 944 (Ariz. 2016), unpersuasive. Watts merely recites the elements of a consumer fraud claim under the Arizona consumer protection statute prior to the addition of "unfair act" to the statute in 2013. Id. at 953 ("[T]o succeed on a claim of consumer fraud, a plaintiff must show (1) a false promise or misrepresentation made in connection with the sale or advertisement of 'merchandise,' and (2) consequent and proximate injury resulting from the misrepresentation. (citing Kuehn v. Stanley, 91 P.3d 346, 351 (Ariz. Ct. App. 2004))). As such, the Merck Defendants' objection

is hereby **OVERRULED**, and the Defendants' Motion to Dismiss the EPPs' claim under Arizona's consumer protection statute is **DENIED**.

With respect to Idaho, the Merck Defendant's object to the Magistrate Judge's initial conclusion in § V.D.5.b of the R&R that the EPPs' claim premised on anticompetitive conduct may proceed under Idaho's consumer protection statute because the statute "prohibits unfair methods of competition and aligns its consumer protection statute with the FTC Act." R&R at 80 (citing Idaho Code §§ 48-603, -604). This part of the objection is well-taken, but it overlooks the Magistrate Judge's later conclusion in § V.D.5.c that the same claim should be dismissed because Idaho's consumer protection statute is limited to "unconscionable 'sales conduct' that is directed at the consumer." Id. at 85 (quoting State ex rel. Wasden v. Diacel Chem. Indus., Ltd., 106 P.3d 428, 433-35 (Idaho 2005)). The court agrees with the Magistrate Judge's conclusion that the EPPs cannot pursue a claim under Idaho's consumer protection statute because the EPPs have not alleged "unconscionable 'sales conduct' that is directed at the consumer." See Wasden, 106 P.3d at 433-35. Thus, the Merck Defendants' objection is **OVERRULED AS MOOT**, and the EPPs' claim under Idaho's consumer protection statute is **DIMISSED** with prejudice.

With respect to Maine, the court agrees with the Magistrate Judge's reasoning and conclusion that the EPPs' claim premised on anticompetitive conduct may proceed under Maine's consumer

protection statute. R&R at 80-81. The Merck Defendants assertion that "consumer-directed deception or inducement" is required, Merck Defs.' Objs. at 19, ignores the plain language of Maine's consumer protection statute that encompasses claims of "unfair methods of competition" and includes a FTC Act harmonization provision, Me. Stat. tit. 5, § 207. The court finds the Merck Defendants' citation to In re TFT-LCD (Flat Panel) Antitrust Litig., 586 F. Supp. 2d 1109, 1126-27 (N.D. Cal. 2008), unpersuasive because it misreads Tungate v. MacLean-Stevens Studios, Inc., 714 A.2d 792 (Me. 1988), a case about "unfair or deceptive acts or practices," specifically an unfair pricing claim, to apply to cases about unfair methods of competition. Thus, the Merck Defendants' objection is hereby **OVERRULED**, and the Defendants' Motion to Dismiss the EPPs' claim under Maine's consumer protection statute is **DENIED** on this basis. However, the EPPs' claim under Maine's consumer protection statute is **DISMISSED** without prejudice because the EPPs are not the proper plaintiffs under that statute. R&R at 91-92.

With respect to Rhode Island, the court agrees with the Magistrate Judge's reasoning and conclusion that the EPPs' claim premised on anticompetitive conduct may proceed under Rhode Island's consumer protection statute. R&R at 83. The court is persuaded by the Supreme Court of Rhode Island's broad reading of Rhode Island's consumer protection statute in Ames v. Oceanside

Welding & Towing Co., Inc., 767 A.2d 677, 681 (R.I. 2001). Thus, the Merck Defendants' objection is hereby **OVERRULED**, and the Defendants' Motion to Dismiss the EPPs' claim under Rhode Island's consumer protection statute is **DENIED** on this basis. However, the EPPs' claim under Rhode Island's consumer protection statute is **DISMISSED** without prejudice because the EPPs are not the proper plaintiffs under that statute. R&R at 91, 93.

With respect to Vermont, the court agrees with the Magistrate Judge's reasoning and conclusion that the EPPs' claim premised on anticompetitive conduct may proceed under Vermont's consumer protection statute. R&R at 84. Moreover, Elkins v. Microsoft Corp., 817 A.2d 9 (Vt. 2002), requires a broad reading of Vermont's consumer protection statute and clarifies that the FTC Act harmonization provision in Vermont's consumer protection statute applies "to § 2453(a), which sets out the practices prohibited under the Act." Id. at 13, 17. The court finds In re Propranolol Antitrust Litig., 249 F. Supp. 3d 712, 729 (S.D.N.Y. 2017), cited by the Merck Defendants, to be unpersuasive because it fails to account for the clear precedent of Elkins. Thus, the Merck Defendants' objection is hereby **OVERRULED**, and the Defendants' Motion to Dismiss the EPPs' claim under Vermont's consumer protection statute is **DENIED** on this basis. However, the EPPs' claim under Vermont's consumer protection statute is **DISMISSED**

without prejudice because the EPPs are not the proper plaintiffs under that statute. R&R at 91, 93.

### 3. Objections Regarding Section V.D.5.c.

The Merck Defendants object to the Magistrate Judge's finding that the consumer protection statutes of Illinois and West Virginia encompass antitrust violations. Merck Defs.' Objs. at 20-21. The Merck Defendants' objection regarding Illinois is premised on the assertion that only the Illinois Attorney General may bring an antitrust class action on behalf of indirect purchaser plaintiffs. Id. at 20. As the court concluded supra Part III.B.4, the Illinois Antitrust Act class-action bar does not apply in federal court. Because the court found that the EPPs' claims under Illinois's antitrust statute may proceed, the EPPs' claims under Illinois's consumer protection statute may also proceed. See Siegel v. Shell Oil Co., 480 F. Supp. 2d 1034, 1046-48 (N.D. Ill. 2007) ("[A] plaintiff may not use the Consumer Fraud Act when doing so would be inconsistent with the legislative intent manifested in the Illinois Antitrust Act."). Thus, the Merck Defendants' objection is hereby **OVERRULED,** and the Defendants' Motion to Dismiss the EPPs' claim under Illinois's consumer protection statute is **DENIED.**

With respect to West Virginia, the court agrees with the Magistrate Judge's reasoning and conclusion that the EPPs' claim under West Virginia's consumer protection laws may proceed. R&R

at 85. The court finds persuasive the reasoning in <u>In re Packaged Seafood Prods. Antitrust Litig.</u>, 242 F. Supp. 3d 1033, 1087-88 (S.D. Cal. 2017), which permitted claims to proceed under West Virginia's consumer protection statute on the basis of the statute's FTC Act harmonization provision. The Merck Defendants misread and misconstrue the citations in <u>In re Packaged Seafood Prods.</u> to require allegations of false or misleading statements for a claim to proceed under West Virginia's consumer protection statute. Merck Defs.' Objs. at 20-21. Thus, the Merck Defendants' objection is hereby **OVERRULED**, and the Defendants' Motion to Dismiss the EPPs' claim under West Virginia's consumer protection statute is **DENIED**.

### 4. Objections Regarding Section V.D.5.d.

The Merck Defendants object to the Magistrate Judge's finding that the EPPs have adequately alleged sufficient intrastate connections with respect to the EPPs' claims under the consumer protection laws of New Hampshire, New York, and North Carolina. Merck Defs.' Objs. at 21. In support of this objection, the Merck Defendants rely on arguments previously considered <u>supra</u> Part III.B.2. The court, again, agrees with the Magistrate Judge's reasoning and conclusion that the allegation of "a nationwide pattern of conduct that resulted in consumers in each of the challenged jurisdiction purchasing ezetimibe at elevated prices" adequately pleads sufficient intrastate connections. R&R at 87-88;

see also Sheet Metal Workers Local 441 Health & Welfare Plan v. GlaxoSmithKline, PLC, 737 F. Supp. 2d 380, 400 (E.D. Pa 2010) (denying motion to dismiss for failure to allege sufficient intrastate effects in North Carolina "[w]ithout clear authority for the proposition that the sale and marketing of a product in North Carolina is insufficient intrastate conduct to expose [the defendant] to antitrust liability there"); LaChance v. U.S. Smokeless Tobacco Co., 931 A.2d 571, 578 (N.H. 2007) (noting that New Hampshire's consumer protection statute covers "any trade or commerce directly or indirectly affecting the people of this state" (quoting N.H. Rev. Stat. Ann. § 358-A:1)); Goshen v. Mutual Life Ins. Co. of N.Y., 774 N.E.2d 1190, 1195 (N.Y. 2002) ("We conclude that the transaction in which the consumer is deceived must occur in New York.").

Thus, the Merck Defendants' objection is hereby **OVERRULED**, and the Defendants' Motion to Dismiss the EPPs' consumer protection claims for lack of intrastate connections is **DENIED**. However, the EPPs' claim under New York's consumer protection statute is **DISMISSED** without prejudice "[b]ecause the allegations here do not reflect consumer-oriented deception by any Defendants." R&R at 82.

**5. Objections Regarding Section V.D.5.e.**

The Merck Defendants object to the Magistrate Judge's conclusion that the EPPs are proper plaintiffs under Virginia's consumer protection statute. Merck Defs.' Objs. at 21-22. The Merck

Defendants contend that the Magistrate Judge's reasoning, that "the mere fact that the underlying transaction (that is, the drug purchase) is for 'personal, family, or household use,' as most of the laws at issue require, does not extend a right of action to third-party payors which reimburse those payments as part of a separate insurance obligation," should apply to the EPPs' claim under Virginia's consumer protection statute. Id. (quoting R&R at 91). The Magistrate Judge's reasoning, quoted above, is premised on the fact that the EPPs "do not actually make purchases— rather, they reimburse their members or pharmacies for the costs of Zetia or ezetimibe purchases when their members fill prescriptions." R&R at 90-91 (emphasis added).

The Merck Defendants overlook the plain language of Virginia's consumer protection statute, which does not require that the EPPs themselves purchased Zetia or ezetimibe. Cf. Me. Stat. tit. 5, § 213 (providing a remedy only to "[a]ny person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes"); Mo. Rev. Stat. § 407.025 (providing a remedy only to "[a]ny person who purchases or leases merchandise primarily for personal, family or household purposes"); 6 R.I. Gen. Laws § 6-13.1-5.2 (providing a remedy only to "[a]ny person who purchases or leases goods or services primarily for personal, family, or household purposes"). Instead, Virginia's consumer protection statute provides a remedy

for "[a]ny person who suffers loss as the result of a violation of this chapter." Va. Code Ann. § 59.1-204. "'Person' means any natural person, corporation, trust, partnership, association and any other legal entity." Id. § 59.1-198. And, the loss must be the result of "fraudulent acts or practices committed by a supplier in connection with a consumer transaction." Id. § 59.1-204, -200.

In sum, Virginia only requires that the EPPs suffered a loss in connection with a consumer transaction. Thus, the court agrees with the Magistrate Judge's interpretation of the plain language of Virginia's statute, and the court concludes that the EPPs have sufficiently alleged that they suffered a loss in connection with a consumer transaction by reimbursing consumer transactions. See R&R at 90. The Merck Defendants' objection is hereby **OVERRULED**, and the Defendants' Motion to Dismiss the EPPs' consumer protection claim under Virginia law is **DENIED**.

### 6. Objections Regarding Section V.D.5.f.

The Merck Defendants object to the Magistrate Judge's conclusion that the "EPPs' failure to send pre-suit notice to Defendants does not warrant dismissal of their Massachusetts and West Virginia consumer protection claims." Merck Defs.' Objs. at 22-23 (citing R&R at 93-95). With respect to West Virginia, the court agrees with the Magistrate Judge's interpretation of the plain text of the statute, which clearly permits a post-filing

demand letter. See R&R at 94-95 (citing W. Va. Code §46A-6-106(c)).[14]

With respect to Massachusetts, the Magistrate Judge recommended dismissal of the EPPs' Massachusetts consumer protection claim on other grounds. R&R at 92. The Magistrate Judge found that the EPPs "engaged in trade or commerce" and "must proceed under section 11 of the Massachusetts Consumer Protection Act." Id. "However section 11 bars indirect purchaser claims." Id. The EPPs "did not formally object" to this conclusion, but they "respectfully disagree with the court's finding." EPPs' Opp. at 22 n.16. 147. The court has reviewed the Magistrate Judge's finding and agrees that the EPPs' claims are properly brought under section 11. R&R at 92; see also United Food & Commercial Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA, Inc., 74 F. Supp. 3d 1052, 1084-85 (N.D. Cal. 2014) ("The Plan and the City appear to be engaged in the 'trade or commerce' of providing health and welfare benefits. I conclude that the City and Iron Workers were engaged in trade or commerce and are covered by Section 11."). The court further agrees with the Magistrate Judge that "[t]he Massachusetts notice provision only applies to claims under section 9 of the state's consumer

---

[14] To clarify, record of the West Virginia notice is located in MDL Member Case No. 2:18cv108, ECF No. 54-6. See R&R at 95 n.23 (misstating the MDL Member Case No. as 4:18cv108).

protection act." R&R at 94; see also Mass. Gen. Laws ch. 93A, § 11. Thus, no notice was required, and this is not a proper basis for dismissal. Nevertheless, the court agrees with the Magistrate Judge's recommendation of dismissal of the EPPs' Massachusetts consumer protection claim on other grounds. See R&R at 92.

Thus, the Merck Defendants' objections are hereby **OVERRULED**, and the Defendants' Motion to Dismiss the EPPs' consumer protection claims in West Virginia and Massachusetts for lack of pre-suit notice is **DENIED**. The EPPs' consumer protection claim in Massachusetts is **DISMISSED** without prejudice on other grounds, namely, the EPPs' claims must proceed under section 11, which bars indirect purchaser claims.

### 7. Objections Regarding Section V.D.5.g.

The Merck Defendants object to the Magistrate Judge's conclusion that Federal Rule of Civil Procedure 9(b)'s heightened pleading standard does not apply to the EPPs' claim under Florida's consumer protection laws. Merck Defs.' Objs. at 23-24. The court agrees with the Magistrate Judge's conclusion that Rule 9(b)'s heightened pleading standard is inapplicable in this case because "the EPPs are proceeding under the statute's 'unfair methods of competition' prong," and the EPPs are not bringing any claims alleging fraudulent conduct. R&R at 95; see also Hill v. Hoover Co., 899 F. Supp. 2d 1259, 1263 (N.D. Fla. 2012) (citing Jovine v. Abbott Labs., Inc., 795 F. Supp. 2d 1331 (S.D. Fla. 2011)). Thus,

the Merck Defendants' objection is hereby **OVERRULED**, and the
Defendants' Motion to Dismiss the EPPs' consumer protection claim
under Florida law is **DENIED**.

### 8. Objections Regarding Section V.D.5.h.

The Merck Defendants object to the Magistrate Judge's conclusion
that Tennessee's class-action bar does not apply in federal court.
Merck Defs.' Objs. at 24. As the Merck Defendants acknowledge, the
Magistrate Judge recommends that the court dismiss the EPPs' claim
under Tennessee's consumer protection statute on other grounds.
Id.; R&R at 86. The EPPs have not filed any objections to the R&R,
and the court agrees with the Magistrate judge that the EPPs' claim
under Tennessee's consumer protection statute should be dismissed
on those other grounds. R&R at 86 ("[P]laintiffs cannot bring
claims based on anticompetitive conduct under the Tennessee
Consumer Protection Act." (quoting In re Flonase Antitrust Litig.
(Flonase I), 610 F. Supp. 2d 409, 417 (E.D. Pa. 2009))).
Nevertheless, the court agrees with the Magistrate Judge's
conclusion that Shady Grove governs class actions in federal court
and permits the EPPs' suit under the Tennessee statute. R&R
at 95-96. Thus, the Merck Defendants' objection is hereby
**OVERRULED**, and the Defendants' Motion to Dismiss the EPPs' consumer
protection claim under Tennessee law is **DENIED** on this basis.
However, the EPPs' consumer protection claim under Tennessee law
is **DISMISSED** with prejudice on other grounds, namely, the EPPs'

cannot bring claims based on anticompetitive conduct under Tennessee's consumer protection statute. R&R at 86-87.

## E. Objections to Section V.D.6.

The Merck Defendants raise several objections to the Magistrate Judge's recommendation that some of the EPPs' unjust enrichment claims should proceed. Merck Defs.' Objs. at 25-28.

### 1. Objections Regarding Section V.D.6.a.

The Merck Defendants object to the Magistrate Judge's conclusion that the EPPs' Consolidated Complaint satisfies the Rule 8 pleading requirement for unjust enrichment. Merck Defs.' Objs. at 25-26. The Merck Defendants argue that because "the requirements for stating an unjust enrichment claim vary from jurisdiction to jurisdiction, . . . blanket incorporation of antitrust-based allegations without accounting for material differences in jurisdictions' requirements for unjust enrichment claims cannot satisfy Rule 8's pleading standards." Id. at 25. However, the Merck Defendants do not point to any specific material differences in jurisdictions' requirements for unjust enrichment claims that warrant consideration, other than those already raised before the Magistrate Judge. Id. at 25 ("The R&R itself shows the inadequacy of this broad-brush approach when it reasons that some jurisdictions require conferral of a direct benefit to state an unjust enrichment claim while others do not." (citing R&R at 100-03)). Moreover, the court agrees with the Magistrate

47

Judge's reasoning and conclusion that when considering the EPPs' Consolidated Complaint as a whole, it satisfies the Rule 8 pleading requirement for pleading unjust enrichment. R&R at 97-99. Thus, the Merck Defendants' objection is hereby **OVERRULED,** and the Defendants' Motion to Dismiss the EPPs' unjust enrichment claims is **DENIED** on this basis.

### 2. Objections Regarding Section V.D.6.c.

The Merck Defendants object to the Magistrate Judge's conclusion that indirect unjust enrichment claims are permitted in Kansas, Maine, New York, and North Dakota. Merck Defs.' Objs. at 26-27.

With respect to Kansas, the court agrees with the Magistrate Judge's conclusion and citation to In re Automotive Parts Antitrust Litig., 29 F. Supp. 982, 1019-1020 (E.D. Mich. 2014), which addresses and disposes of the arguments raised by the Merck Defendants regarding Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd, 910 P.2d 839 (1996), and Spires v. Hosp. Corp. of Am., 289 Fed. App'x 269 (10th Cir. 2008). The court also finds the reasoning in In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig., No. 14-MD-2542 (VSB), 2019 WL 1789789, at *54 (S.D.N.Y. Apr. 22, 2019), and In re Processed Egg Prods. Antitrust Litig., 851 F. Supp. 2d 867, 929-30 (E.D. Pa. 2012), to be persuasive and support the conclusion that the EPPs' unjust enrichment claim in Kansas may proceed.

With respect to Maine, the court agrees with the Magistrate Judge's conclusion that the EPPs' unjust enrichment claim in Maine may proceed. R&R at 102. In addition to the case cited by the Magistrate Judge, the court also finds the analysis in In re Keurig, 2019 WL 1789789, at *54, and Sergeants Benevolent Ass'n Health & Welfare Fund v. Actavis, PLC, No. 15 CIV. 6549 (CM), 2018 WL 7197233, at *62 (S.D.N.Y. Dec. 26, 2018), to be persuasive and support the conclusion that the EPPs' unjust enrichment claim in Maine may proceed.

With respect to New York, the court, the court agrees with the Magistrate Judge's reading of Sperry v. Crompton Corp., 863 N.E.2d 1012, 1018 (N.Y. 2007), and conclusion that the EPPs' unjust enrichment claim in New York may proceed. R&R at 102. For an unjust enrichment claim to proceed in New York, the relationship between the EPPs and the Defendants cannot be "too attenuated." Sperry, 863 N.E.2d at 1018 ("Here, the connection between the purchaser of tires and the producers of chemicals used in the rubber-making process is simply too attenuated to support such a claim."). The court also finds the reasoning in In re Processed Egg Prods., 851 F. Supp. 2d at 930 ("One federal court has explained that this means that 'a product's indirect purchaser cannot assert an unjust enrichment claim against an entity that manufactured one of that product's ingredients,' but that an 'indirect purchaser can assert such an unjust enrichment claim against the manufacturer of the

49

product itself.'" (quoting <u>Waldman v. New Chapter, Inc.</u>, 714 F. Supp. 2d 398, 403-04 (E.D.N.Y. 2010))), to be persuasive and support the conclusion that the EPPs' unjust enrichment claim in New York may proceed.

With respect to North Dakota, the court agrees with the Magistrate Judge's conclusion that the EPPs' unjust enrichment claim in North Dakota may proceed. R&R at 103. The court agrees with the Magistrate Judge's citation to <u>In re Automotive Parts Antitrust Litig.</u>, 29 F. Supp. 982, 1019-1020 (E.D. Mich. 2014), which distinguishes <u>Apache Corp. v. MDU Res. Grp., Inc.</u>, 603 N.W.2d 891, 895-96 (N.D. 1999), from the case at bar. The court further finds the reasoning and cases cited in <u>Sergeants Benevolent Ass'n Health & Welfare Fund</u>, 2018 WL 7197233, at *65-66, to be persuasive and support the conclusion that the EPPs' unjust enrichment claim in North Dakota may proceed.

Thus, the Merck Defendants' objections are hereby **OVERRULED**, and the Defendants' Motion to Dismiss the EPPs' unjust enrichment claims in Kansas, Maine, New York, and North Dakota is **DENIED**.

### 3. Objections Regarding Section V.D.6.d.

The Merck Defendants object to the Magistrate Judge's conclusion that the EPPs may plead unjust enrichment in the alternative. Merck Defs.' Objs. at 27-28. This objection applies to the EPPs unjust enrichment claims in Alabama, Hawaii, and Massachusetts. <u>Id.</u>

With respect to Alabama, the Merck Defendants objection is entirely premised on the assumption that the EPPs have an adequate remedy at law that precludes the EPPs from bringing an unjust enrichment claim. Merck Defs.' Objs. at 27 ("Merck's argument is that the EPPs cannot avail themselves of these claims at all given the existence of adequate remedies at law."). However, the Merck Defendants overlook the fact that the EPPs have not alleged claims in Alabama on a legal theory other than unjust enrichment. Cf. EPP Compl. ¶¶ 337, 347, 357 (alleging violations of state antitrust and consumer protection laws in jurisdictions, not including Alabama). Additionally, the Merck Defendants do not point to any available adequate remedy at law that would preclude the EPPs from pursuing an unjust enrichment claim in Alabama at this juncture. Thus, the court agrees with the Magistrate Judge that the EPPs' unjust enrichment claim in Alabama should proceed.

With respect to Massachusetts, the Magistrate Judge recommended dismissing the EPPs' unjust enrichment claim in Massachusetts on other grounds. R&R at 99-100. The EPPs have not filed any objections to the R&R, and the court agrees with the Magistrate judge that the EPPs' unjust enrichment claim in Massachusetts should be dismissed on those other grounds. Id. (finding that the EPPs cannot circumvent Illinois Brick by bringing unjust enrichment claims in jurisdictions that do not allow indirect purchaser antitrust actions). Nevertheless, as discussed

below with respect to Hawaii, the court agrees with the Magistrate Judge's reasoning and conclusion that the unjust enrichment claim in Massachusetts should not be dismissed on this basis.

With respect to Hawaii, the court agrees with the Magistrate Judge that Federal Rule of Civil Procedure 8 allows the EPPs to plead claims in the alternative and assert inconsistent claims. Fed. R. Civ. P. 8(d)(2)-(3). Moreover, the EPPs explicitly pled their claims of unjust enrichment in the alternative, and explicitly pled that they have no adequate remedy at law. EPP Compl. ¶¶ 361, 365. To the extent that the EPPs have alleged violations of Hawaii's antitrust and consumer protection laws, see EPP Compl. ¶¶ 337, 347, 357, it is not certain that the EPPs will prevail on those claims, and thus, it would be premature to dismiss the EPPs unjust enrichment claim in Hawaii. See, e.g., In re Choclate Confectionary Antitrust Litig., 749 F. Supp. 2d 224, 237 (M.D. Pa. 2007) (evaluating the same argument and declining to dismiss an unjust enrichment claim in Hawaii).

The Merck Defendants' objections are hereby **OVERRULED**, and the Defendants' Motion to Dismiss the EPPs' unjust enrichment claims in Alabama, Massachusetts, and Hawaii is **DENIED**. The EPPs' unjust enrichment claim in Massachusetts is **DISMISSED** with prejudice on other grounds, namely, the EPPs cannot circumvent Illinois Brick by bringing an unjust enrichment claim.

## IV. Conclusion

The court, having examined all of the Objections to the R&R, and having made de novo findings with respect thereto, hereby **OVERRULES** the Retailer Plaintiffs' Objections, ECF No. 235, and the Glenmark Defendants' Objections, ECF No. 236. The court **OVERRULES** the Merck Defendants' Objections. ECF No. 237. The court **MODIFIES** the reasoning in the R&R, as noted supra Part III.B.5. The court **ADOPTS AND APPROVES IN FULL** the recommended disposition of each claim as set forth in the Magistrate Judge's thorough and well-reasoned R&R, ECF No. 234, filed on February 6, 2019. Accordingly, the Defendants' Motions to Dismiss, ECF Nos. 157, 160 & 162, are **GRANTED IN PART AND DENIED IN PART** as set forth in the R&R and Exhibits A and B attached thereto. See R&R at 104, Exs. A & B.

The Clerk is **DIRECTED** to send a copy of this Opinion to counsel for all parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
United States District Judge

Rebecca Beach Smith
United States District Judge

August 9 , 2019

53