UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

In re: ZETIA (EZETIMIBE)
ANTITRUST LITIGATION

FILED

DEC 2 0 2019

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

MDL NO. 2:18md2836

THIS DOCUMENT RELATES TO:
ALL CASES

## MEMORANDUM OPINION AND ORDER

These matters come before the court on Motions to Dismiss
filed by the Merck Defendants[1] and Glenmark Defendants[2] against the
Direct Purchaser Plaintiffs'[3] (DPPs) and Retailer Plaintiffs'[4]
Amended Complaints.

### I. Claims in Motions to Dismiss

As an initial matter, a brief accounting of the claims made
in the Motions to Dismiss is appropriate. The Merck Defendants'

---

[1] The Merck Defendants consist of Merck & Co., Inc.; Merck
Sharp & Dohme Corp.; Schering-Plough Corp.; Schering Corp.; and
MSP Singapore Co. LLC.

[2] The Glenmark Defendants consist of Glenmark Pharmaceuticals,
Ltd. and Glenmark Pharmaceuticals Inc., USA, the latter
incorrectly identified as Glenmark Generics Inc., USA.

[3] The Direct Purchaser Plaintiffs consist of FWK Holdings,
LLC; Rochester Drug Cooperative, Inc.; and Cesar Castillo, Inc.

[4] The Retailer Plaintiffs consist of CVS Pharmacy, Inc.; Rite
Aid Corporation and Rite Aid Hdqtrs. Corp.; and Walgreen Co., The
Kroger Co., Albertsons Companies Inc., and HEB Grocery Company
L.P.

Motion to Dismiss New Claims and Allegations in Direct Purchaser Plaintiffs' Amended Consolidated Class Action Complaint, ECF No. 353, which the Glenmark Defendants joined, ECF No. 355, seeks dismissal of the DPPs' Amended Complaint "to the extent DPPs seek to recover under federal law for alleged overcharges on purchases made from any entity other than Glenmark or Merck." ECF No. 354 at 4. The Glenmark Defendants' Motion to Dismiss Retailer Plaintiffs' Amended Complaints, ECF No. 498, seeks dismissal of the Retailer Plaintiffs' Amended Complaints "in their entirety because they are founded on the existence of an implausible conspiracy involving Merck, Glenmark, and Par that is not supported by well-pled factual allegations," or, in the alternative, dismissal "for lack of standing insofar as they seek damages flowing from Retailers Plaintiffs' purchases of generic Zetia from Par," as well as dismissal of "Retailer Plaintiffs' per se claim in Count One with prejudice consistent with the Court's August 9, 2019 opinion." ECF No. 499 at 2-3. Finally, the Merck Defendants' Motion to Dismiss New Claims and Allegations in Retailers' Amended Complaints and to Strike Immaterial Reference to Permanent Injunctive Relief, ECF No. 500, seeks dismissal of the Retailers' Amended Complaints "to the extent they allege a three-way conspiracy among Merck, Glenmark, and Par, and to the extent they seek damages under the Sherman Act from Merck and Glenmark for alleged overcharges Retailers paid to Par," ECF No. 501 at 4, and

2

requests the court to strike "the references to 'permanent injunctive relief' in the introductory sections of Retailers' Amended Complaints," Id. at 4 n.3.

In order to overcome a motion to dismiss, a plaintiff alleging an antitrust conspiracy must submit pleadings that "raise a reasonable expectation that discovery will reveal evidence of illegal agreement." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007). "[A] conclusory allegation of agreement at some unidentified point" does not show an illegal agreement. Id. at 557. While the court must "construe factual allegations in the light most favorable to the plaintiff," Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 (4th Cir. 1999), it does not assume the validity of the plaintiffs' legal conclusions, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## II. Current Procedural Posture

On August 29, 2019, these matters were referred to United States Magistrate Judge Douglas E. Miller pursuant to the provisions of 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b), to conduct necessary hearings, including the hearing that was held on September 23, 2019, and to submit to the undersigned district judge proposed findings of fact, if applicable, and recommendations for the disposition of the Motions. Referral Order, ECF No. 570.

3

By copy of the Magistrate Judge's Report and Recommendation ("R&R"), filed on October 15, 2019, the parties were advised of their right to file written objections to the findings and recommendations made by the Magistrate Judge within fourteen (14) days from the date of service of the R&R on the objecting party. R&R at 34-35, ECF No. 698. Two sets of objections were filed on October 28, 2019: Retailer Plaintiffs' Objections to Report and Recommendation Regarding Motions to Dismiss ("Retailers' Objections"), ECF No. 705; and Objections by Direct Purchaser Class Plaintiffs to the Report and Recommendation Granting Defendants' Motions to Dismiss Direct Purchaser Class Plaintiffs' Amended Consolidated Class Action Complaint ("DPPs' Objections"), ECF No. 706. On November 12, 2019, counsel for the Merck Defendants and the Glenmark Defendants filed Defendants' Response to Plaintiffs' Objections to the Magistrate Judge's Report and Recommendation Granting Defendants' Motions to Dismiss New Claims and Allegations in Plaintiffs' Amended Complaints ("Defendants' Response"). ECF No. 715.

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the court, having reviewed the record in its entirety, hereby makes a de novo determination of those portions of the R&R to which the Defendants have specifically objected. See Fed. R. Civ. P. 72(b). The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit

4

the matter to him with instructions. 28 U.S.C. § 636(b)(1). Because the Retailers' Objections and DPPs' Objections make substantially similar arguments, this Memorandum Opinion and Order will address both sets of objections together.

## III. Defendants' Ability to Form an Antitrust Conspiracy

The Retailer Plaintiffs and DPPs first object to the R&R's conclusion that Par "lacked the capacity to engage in concerted action with respect to the antitrust harm alleged in the Amended Complaints." Retailers' Objs. at 3; DPPs' Objs. at 8; R&R at 16.[5] In particular, the objections contend that the R&R erred in applying Copperweld Corp. v. Indep. Tube Corp, 467 U.S. 752 (1984), to the facts of this case, and that its conclusion on the conspiracy issue is inconsistent with FTC v. Actavis, 570 U.S. 136 (2013). The court will consider the application of each of these cases to the facts at bar.

## A. Application of the Copperweld Doctrine and Par's Capacity to Participate in the Conspiracy

The basic premise of Copperweld is the Supreme Court's holding that a parent corporation and its wholly owned subsidiary are unable to enter into an antitrust conspiracy with each other under § 1 of the Sherman Act because they constitute a "single

---

[5] The existence of an antitrust conspiracy is a threshold element in claims under either Sherman Act § 1 or § 2. 15 U.S.C. § 1; Dickson v. Microsoft Corp., 309 F.3d 193, 202 (4th Cir. 2002).

enterprise" with "complete unity of interest." 467 U.S. at 771. The Retailer Plaintiffs and DPPs focus on the R&R's application of Copperweld in concluding that Par did not participate in the alleged antitrust conspiracy. The DPPs and Retailer Plaintiffs essentially make two claims regarding the R&R's treatment of Copperweld. First, they argue that the R&R erred in applying the Copperweld rule to Par and Glenmark, because Par and Glenmark are two independent entities that do not share a parent-subsidiary relationship. DPPs' Objs. at 8; Retailers' Objs. at 3-4. Second, the DPPs and Retailer Plaintiffs state that the R&R's conclusion that Par lacked the capacity to conspire with Glenmark or Merck is incorrect because it relied on a mistaken Copperweld analysis. Id.

The DPPs and Retailer Plaintiffs may be correct in their first claim, i.e., that Copperweld does not bar a finding of conspiracy between two legally and financially unrelated companies. Their second claim, however, is based on an incorrect reading of the R&R. Copperweld does not play the dispositive role in the R&R's analysis of the conspiracy issue that the Plaintiffs claim it does. The R&R consistently refers to Copperweld as an illustration of a type of functional approach common in antitrust law, and not as a rule to be mechanically and conclusively applied to Par and Glenmark. See R&R at 13 ("The Supreme Court's decisions in Copperweld and American Needle illustrate this functional

6

approach."[6]). Instead, the R&R's analysis in Part III.A, that the Amended Complaints do not "establish that Par entered into an antitrust conspiracy with Merck and Glenmark," focuses on the fact that Par was not a party to a conspiracy that produced the particular antitrust harm at issue in this case. See R&R at 10, 15. On this point, the R&R is clear: "In this case, the antitrust harm resulted from Glenmark dropping its patent challenge after securing first-filer status and the resulting period of generic exclusivity." Id. at 16. The R&R does borrow Copperweld's "independent center of decisionmaking" language to make the point that, on the facts alleged in the Amended Complaints, Par did not and could not influence the settlement negotiations between Merck and Glenmark. See id. at 17 ("As Glenmark's distributor, Par possessed no independent ability to influence the market for ezetimibe because it had no competing product to withhold from the market. In short, Par was not an 'independent center[] of decisionmaking.'" (quoting Copperweld, 467 U.S. at 769)). The R&R's conclusion that "Par lacked the capacity to engage in concerted action with Merck and Glenmark" thus turned on the factual allegations in the Amended Complaints, not, as the

---

[6] In American Needle, Inc. v. National Football League, 560 U.S. 183 (2010), the Supreme Court rejected NFL teams' argument that, because they acted through a joint venture, their conduct was that of a "single economic enterprise" under Copperweld.

7

Plaintiffs claim, a mistaken application of the Copperweld
doctrine.

## B. Par's Participation in the Antitrust Conspiracy

On the question of whether, as a factual matter, Par
participated in the alleged conspiracy, the R&R did not find any
allegation that Par was specifically involved in Glenmark's
agreement to drop the patent challenge, which is the source of the
alleged antitrust harm. R&R at 17. Instead, the R&R concluded that,
to the extent Par was involved in the negotiations that ended up
causing the alleged antitrust harm, it did so merely as Glenmark's
"agent." Id. at 18.

In this court's view, the Amended Complaints meet the
threshold of establishing "plausible grounds" to infer an
agreement. See Twombly, 550 U.S. at 556 ("Asking for plausible
grounds to infer an agreement does not impose a probability
requirement at the pleading stage; it simply calls for enough fact
to raise a reasonable expectation that discovery will reveal
evidence of illegal agreement."). The Amended Complaints contain
detailed allegations of Par's role in concluding a settlement with
Merck. See Retailers' Amend. Compl. at ¶ 132, ECF Nos. 455, 456,
457; DPPs Amend. Compl. at ¶ 178, ECF No. 315. That is not to say
that those allegations are necessarily true, and a few parts of
the record can be read to support either interpretation of Par's
actual influence over the settlement agreement. For example,

8

Section 9.2.2 of the Distribution Agreement, which the Plaintiffs point to as evidence that Par was an equal partner in the settlement negotiations, also appears to give Glenmark final decision-making power if there is even the slightest disagreement in strategy. But in deciding on a motion to dismiss, the court must accept facts alleged in the Amended Complaints as true and view those facts in the light most favorable to the Plaintiffs. See, e.g., Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005). In doing so, this court concludes that the allegations in the record lead to the conclusion that Par was an independent participant in the conspiracy, and not a mere "agent" of Glenmark. The actual nature and extent of Par's involvement in and influence over the settlement negotiations is a matter to be fleshed out during discovery.

The R&R makes the related conclusion that, in addition to not being a co-conspirator in fact, Par could not have been a co-conspirator for reasons of market structure. R&R at 16-18. As Glenmark's distributor, the R&R reasons, Par had "no independent ability to influence the market for ezetimibe because it had no competing product to withhold from the market." Id. at 17. In this case, where the alleged antitrust harm was an illegal reverse payment settlement, the R&R states that Par essentially had no power to cause the antitrust harm: it had no suit of its own

9

challenging Merck's patents, and it had not sought to force early generic entry. Id.

To the extent these passages from the R&R suggest a conclusion that Par must have had the ability to influence the market in the same way, or to the same degree, as Glenmark in order to be a co-conspirator, the court does not agree with such conclusion. Antitrust law takes a broader view of the sorts of activities that can make a party a co-conspirator under the Sherman Act. An antitrust conspirator need not be involved in all aspects of the conspiracy, for example. See Beltz Travel Serv., Inc. v. Int'l Air Transp. Ass'n, 620 F.2d 1360, 1367 (9th Cir. 1980) ("Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability."); Meredith Corp. v. SESAC LLC, 1 F. Supp. 3d 180, 213 (S.D.N.Y. 2014) ("To be held a part of a conspiracy, a conspirator need not know all dimensions of the wrongful conduct taken in its furtherance."). Likewise, a conspirator need not have exactly the same motives or goals as its co-conspirators. See Dickson v. Microsoft Corp., 309 F.3d 193, 205 (4th Cir. 2002); In re Electronic Books Antitrust Litigation, 859 F. Supp. 2d 671, 684-685, 690 (S.D.N.Y. 2012) (denying a motion to dismiss against Apple even though it had different interests, motivations, and role in the conspiracy than other defendants). And a party can still be a proper antitrust defendant even if it joined the conspiracy later than its

10

co-conspirators. See In re Electronic Books Antitrust Litigation, 859 F. Supp. 2d at 689.

The question of whether Par entered into an agreement with Merck and Glenmark that led to the alleged antitrust harm is a factual one, and at this stage, the court must not go beyond the allegations in the Amended Complaints to make what it views as conclusory inferences from the industry structure.[7]

## C.   **Rimless Wheel**

The DPPs' and Retailers' Objections indirectly address the R&R's conclusion that the alleged conspiracy constitutes a "rimless wheel." See Retailers' Objs. at 6 ("The fact that affiliated conspirators may be incapable of forming a conspiracy by themselves does not prevent them from forming a single conspiracy with a third party."). This issue was directly discussed in the briefing on the Motions to Dismiss,[8] and the relationship between Merck and Par features throughout the parties' Objections. See Retailers' Objs. at 6; DPPs' Objs. at 9, 11, 15. Accordingly, the court briefly discusses the "rimless wheel" concept here.

---

[7] The court notes that Copperweld and American Needle involved appeals from a trial verdict and grant of summary judgment, respectively, not of a motion to dismiss. See Copperweld, 567 U.S. at 758; American Needle, 560 U.S. at 188.

[8] In that briefing, the Defendants argued that the Amended Complaints did not contain allegations of an agreement between Merck and Par, and only alleged agreements between Glenmark and Merck, and Glenmark and Par. See Merck-DPP Mot. Dis. Memo. at 8, ECF No. 354.

11

Under Fourth Circuit law, so-called "rimless wheel" conspiracies—in which "spoke" defendants have a common agreement with a "hub" defendant, but not with each other—are not valid antitrust conspiracies. See Dickson, 309 F.3d at 203 ("[A] rimless wheel conspiracy is not a single, general conspiracy but instead amounts to multiple conspiracies between the common defendant and each of the other defendants."). Often, "[t]he question whether the evidence shows a single conspiracy or multiple conspiracies, however, is one of fact and is properly the province of the jury." United States v. Leavis, 853 F.2d 215, 218 (4th Cir. 1988); see also United States v. Banks, 10 F.3d 1044, 1051 (4th Cir. 1993) (restating the "basic proposition" that the issue of single vs. multiple conspiracies is an issue for the jury).

Even though the Amended Complaints clearly do not focus on the relationship between Merck and Par, they do include sufficient allegations to plead a single agreement without being conclusory. See DPP Amend. Compl. at ¶ 268 (referring to Merck's "settlement with Glenmark and Par"); Retailers' Amend. Compl. at ¶ 154 (referring to meetings between representatives of Merck, Glenmark, and Par). The Defendants emphasize that Par was not a signatory to the Settlement Agreement, and have argued that this fact "means that Par cannot be a co-conspirator of Merck's as to the claims raised here." Merck-DPP Mot. Dismiss. at 16-17. But while a Settlement Agreement, as a contractual instrument, is evidence of

an agreement to settle, as an antitrust matter, the two are not necessarily the same thing. See Sherman Act, 15 U.S.C. § 1 (listing contracts, combinations, and conspiracies as lists of possible agreements in violation of the antitrust laws); American Tobacco Co. v. United States, 328 U.S. 781, 809 (1946) ("No formal agreement is necessary to constitute an unlawful conspiracy.").

In this court's view, the issue of whether there was a single conspiracy — i.e., whether the "wheel" had a "rim" — goes to a fundamental factual issue of the case and is exactly what discovery and trial are meant to determine. At this stage, the allegations in the Amended Complaints are sufficient to plead a single agreement between Merck, Glenmark, and Par.

## C. Conclusion

This court disagrees with the R&R's conclusion that "Par lacked the capacity to engage in [the] concerted action" that is at the core of this matter. Accordingly, the court **SUSTAINS** the Retailers' and DPPs' Objections to the conclusion of Part III.A of the R&R, and **DENIES** the Motions to Dismiss insofar as they seek dismissal of those parts of the Amended Complaints that refer to a three-way conspiracy between Merck, Glenmark, and Par. However, as explained above, the court does not agree with the entirety of

13

the Plaintiffs' reasoning, particularly with regards to its reading of the R&R's treatment of the Copperweld case.[9]

## IV. Antitrust Standing and the Direct Purchaser Rule

The Retailer Plaintiffs and DPPs also object to the conclusion in Part III.B of the R&R, discussing antitrust standing, that they failed to allege an antitrust injury under § 4 of the Clayton Act and the direct purchaser rule in Illinois Brick Co. v. Illinois, 431 U.S. 720 (1977).

Section 4 of the Clayton Act creates a private cause of action for "any person who shall be injured . . . by reason of anything forbidden in the antitrust laws." 5 U.S.C. § 15(a) (emphasis added). Illinois Brick interpreted this injury requirement to extend only to an "overcharged direct purchaser, and not others in the chain of manufacture or distribution." 431 U.S. at 729. The Illinois Brick rule is not absolute, however. Some circuits have

---

[9] Because the court agrees with the DPPs' and Retailers' objection to Part III.A of the R&R, namely that the Amended Complaints plead facts that establish an antitrust conspiracy between Par, Merck, and Glenmark, see supra Section III.A of this Memorandum Opinion and Order, the court will not address their argument regarding the applicability of FTC v. Actavis, 570 U.S. 136, 141 (2013) (holding that "reverse payment settlements . . . can sometimes violate the antitrust laws"). See DPPs' Objs. at 13-14; Retailers' Objs. at 3-5. As the Plaintiffs read Actavis, the Supreme Court did not question Par's involvement as a co-conspirator where Par, in a similar arrangement to this case, "did not file an application of its own [i.e., an ANDA] but joined forces with Paddock, agreeing to share the patent litigation costs in return for a share of profits if Paddock obtained approval for its generic drug." 570 U.S. at 144-45.

adopted a "co-conspirator exception" to Illinois Brick, whereby indirect purchasers may sue an upstream antitrust violator, if the intermediary was involved in the antitrust conspiracy. See, e.g., Paper Sys. Inc. v. Nippon Paper Indus., 281 F.3d 629, 631–32 (7th Cir. 2002); Lowell v. American Cyanamid Co., 177 F.3d 1228, 1231 (11th Cir. 1999); Campos v. Ticketmaster Corp., 140 F.3d 1166, 1171 (8th Cir. 1998); Arizona v. Shamrock Foods Co., 729 F.2d 1208, 1211 (9th Cir. 1984). These circuits allowing such an exception interpret Illinois Brick to "allocate to the first non-conspirator in the distribution chain the right to collect 100% of the damages." Paper Systems, 281 F.3d at 632. The Fourth Circuit rejected this approach, and explicitly declined to adopt the co-conspirator exception in Dickson, 309 F.3d at 215. However, the court in Dickson raised the possibility that the co-conspirator exception may be appropriate in price-fixing conspiracies where the overcharge has been completely passed on to the consumer. Id.; discussed infra at 16.

Citing the direct purchaser rule, the R&R concluded that the Retailer Plaintiffs and DPPs are barred from recovering damages resulting from overcharges in their purchases of generic ezetimibe from Glenmark or Merck, because the Retailer Plaintiffs and DPPs bought their ezetimibe from Par, which in turn bought it from Glenmark, rendering them indirect purchasers. R&R at 22-23. The R&R further concluded that Par set prices according to its

15

"independent pricing decision," foreclosing the possibility of applying the price-fixing exception raised in Dickson. R&R at 23; id. at 26-27 (citing Dickson, 309 F.3d at 215).

The Retailer Plaintiffs and DPPs raise a number of objections to the R&R's conclusion that their claims against Glenmark are barred by the direct purchaser rule, none of which have merit. First, the Plaintiffs cite to the price-fixing exception to the direct purchaser rule raised in Dickson, and interpret it to extend to all situations where the "overcharge has been passed on to the consumer." 309 F.3d at 215; Retailers' Objs. at 9; DPPs' Objs. at 19-20. As a legal matter, the Fourth Circuit has never approved a price-fixing exception to the direct purchaser rule, much less an exception that extends to all instances of passed-on overcharges. In discussing the possibility of such a price-fixing exception, the court in Dickson made clear that it "need not resolve" the issue of whether the exception exists, but was merely raising it for discussion purposes. 309 F.3d at 215. The Plaintiffs' Objections also do not point to any case applying its aggressive interpretation of Dickson.

But even if there is a price-fixing or passed-on overcharge exception to the direct purchaser rule, the factual allegations in this case do not show that the alleged overcharges were, in fact, entirely passed on to the Plaintiffs. As the R&R notes, this is not an alleged price-fixing conspiracy; Par was "solely

16

responsible for establishing its selling prices." R&R at 26; Distribution Agreement at ¶ 3.1, ECF No. 666-1. Moreover, the payment structure suggests that Par absorbed some of the overcharge amount. The Distribution Agreement between Glenmark and Par provides for three different payments from Par to Glenmark: a per-unit purchase price of the manufacturing cost plus shipping; a one-time payment to Glenmark of $15,000,000; and a payment equal to a specified percentage of Par's net profits on sales of ezetimibe. See Distribution Agreement at ¶¶ 4.2.1, 5.1. While the at-cost purchase price supports the contention that the overcharge was entirely passed on, the other two payments do not. In particular, the profit splitting provision suggests that a portion of the overcharge was incurred by Par; mathematically, the larger the overcharge, the more money Par owed to Glenmark. See generally Apple, Inc. v. Pepper, 139 S. Ct. 1514, 1523 (2019) (dismissing the difference between commission pricing and markup pricing as "immaterial").

In any event, determining whether the overcharges were entirely absorbed by consumers would require a complicated economic analysis of which parties incurred the overcharges and whether the payments in § 5.1 of the Distribution Agreement accounted for these overcharges. The court in Dickson observed that this is "the exact analysis that Illinois Brick forbids" for purposes of the antitrust standing analysis. 309 F.3d at 215; see

17

Illinois Brick, 431 U.S. at 737 ("Permitting the use of pass-on theories under [§] 4 essentially would transform treble-damages actions into massive efforts to apportion the recovery among all potential plaintiffs that could have absorbed part of the overcharge . . . .").

Finally, the DPPs argue that the recent Supreme Court case, Apple v. Pepper, overrules Dickson's interpretation of the direct purchaser rule. DPPs' Objs. at 16. Apple involved a suit brought by retail purchasers of iPhone applications ("apps"), who sued Apple over allegations that it "unlawfully used its monopoly power to force iPhone owners to pay Apple higher-than-competitive prices for apps." Apple, 139 S. Ct. at 1520. Under the applicable pricing scheme, app developers created and set prices for the apps. Id. at 1519. The developers paid Apple an annual fee and a 30% commission for the right to sell their apps through Apple's App Store, and consumers bought the apps directly from Apple via the App Store. Id. The issue before the Court was whether the consumer-plaintiffs were direct purchasers under Illinois Brick. Apple, 139 S. Ct. at 1519. In ruling that they were, the Court rejected Apple's theory "that Illinois Brick allows consumers to sue only the party who sets the retail price." Apple, 139 S. Ct. at 1521. In particular, the DPPs cite the Court's statement that "'those who are the immediate buyers from the alleged antitrust violators . . . may sue.'" DPPs' Objs. at 15 (quoting Apple, 139

18

S. Ct. at 1521). The DPPs reason that, because Par was an antitrust violator from whom the DPPs directly purchased ezetimibe, the result in Apple requires that their case be permitted to go forward. DPPs' Objs. at 16.

Apple does not so require. If anything, the case emphasizes that the proper defendant for the Plaintiffs' claims regarding overcharges incurred in their purchases from Par is Par itself. Specifically, the Court in Apple repeatedly emphasized that antitrust suits are permitted only between neighbors on the distribution chain, even if there are multiple antitrust violators situated at different points on the chain. 139 S. Ct. at 1521 ("[I]f manufacturer A sells to retailer B, and retailer B sells to consumer C, then C may not sue A. But B may sue A if A is an antitrust violator. And C may sue B if B is an antitrust violator."); id. ("The iPhone owners pay the alleged overcharge directly to Apple. The absence of an intermediary is dispositive."); id. at 1522 ("[U]nder the [statutory] text, direct purchasers from monopolistic retailers are proper plaintiffs to sue those retailers.").

Under applicable Supreme Court and Fourth Circuit precedent, the DPPs and Retailer Plaintiffs are barred from pursuing claims against Merck and Glenmark for damages resulting from their purchases of ezetimibe from Par, because they were not direct purchasers from Merck or Glenmark with respect to those purchases.

19

Accordingly, this court **OVERRULES** the objections to Part III.B of the R&R, and **DISMISSES** the claims in the Retailer Plaintiffs' and DPPs' Amended Complaints insofar as they seek damages from Merck and Glenmark stemming from purchases made from Par.[10]

## V. Per Se § 1 Claim and Reference to Permanent Injunctive Relief

The R&R also recommends that the per se § 1 claim in Count One of the Retailers' Amended Complaints should be dismissed with prejudice, and that the reference to "permanent injunctive relief" should be stricken from ¶ 1 of the Retailers' Amended Complaints. R&R at 10 n.7, 34. In their Objection, the Retailer Plaintiffs incorporate their previous objections to dismissing the per se claim, contained in ECF No. 235, for purposes of preserving their appellate rights, but add no new arguments. Retailers' Objs. at 2 n.2. The Retailer Plaintiffs do not object to striking the "permanent injunctive relief" language from their Amended Complaints. This court previously ordered that the per se § 1 claim in the Retailer Plaintiffs' original complaints be dismissed with prejudice in its Opinion of August 9, 2019. ECF No. 489 at 10.

For the reasons stated in the R&R and in this court's Opinion of August 9, 2019, the court **DISMISSES WITH PREJUDICE** the per se § 1 claim in Count One of the Retailers' Amended Complaints and

---

[10] This Memorandum Opinion and Order is limited to the claims addressed herein and does not address any of the other claims involved in this case. See supra Section I.

**STRIKES** the reference to "permanent injunctive relief" in ¶ 1 of Retailers' Amended Complaints.

## VI. Conclusion

The court, having reviewed the record in its entirety, having examined the Objections to the R&R, and having made de novo findings with respect thereto, hereby **SUSTAINS IN PART** and **OVERRULES IN PART** the Retailer Plaintiffs' Objections, ECF No. 705, and the Direct Purchaser Plaintiffs' Objections, ECF No. 706. Specifically, the court **ADOPTS** the R&R's recommendations and conclusions, ECF No. 698, with the exception of the alternative legal reasoning in Part III.A. Accordingly, the Glenmark Defendants' and Merck Defendants' Motions to Dismiss, ECF Nos. 353, 498, 500, are **GRANTED**, as set forth in this Memorandum Opinion and Order. However, the court **DENIES** Glenmark's request "that the Court dismiss Retailer Plaintiffs' Amended Complaints in their entirety because they are founded on the existence of an implausible conspiracy involving Merck, Glenmark, and Par." See ECF No. 499 at 2. Further, the court **DISMISSES WITH PREJUDICE** the per se § 1 claim in Count One of the Retailers' Amended Complaints and **STRIKES** the reference to "permanent injunctive relief" in ¶ 1 of the Retailers' Amended Complaints.

In sum, the court **FINDS** that the Amended Complaints plead sufficient facts to establish an antitrust conspiracy between Par, Glenmark, and Merck with regard to the antitrust harm alleged, but

**FINDS** that the Retailer Plaintiffs and DPPs are barred under Illinois Brick from suing Merck and Glenmark for damages resulting from their purchases from Par. The Plaintiffs' claims shall proceed against Merck and Glenmark as outlined in the court's prior Opinions and in this Memorandum Opinion and Order.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to counsel for all parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

Rebecca Beach Smith
Senior United States District Judge

December 20, 2019