UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

In re ZETIA (EZETIMIBE)
ANTITRUST LITIGATION

CIVIL ACTION NO. 2:18md2836

THIS DOCUMENT RELATES TO:
All cases

## MEMORANDUM ORDER

Plaintiffs in this multidistrict antitrust litigation filed a Second Motion to Compel seeking additional production and re-review of documents Defendants Merck and Glenmark withheld as privileged during discovery.  (ECF Nos. 590, 598).  Both motions argue, in overlapping fashion, that Defendants have failed to meet their burden of establishing privilege and improperly withheld ordinary business documents regarding sales projections and expected loss of exclusivity.  They also challenge various privilege-log entries describing the review of drafts of documents that were later intended for public or third-party disclosure.

Each motion seeks additional production of documents enumerated from the Defendants' privilege log.  The court previously ruled on similar motions during a hearing that addressed several outstanding discovery issues, and in a later written Order (ECF No. 674).  Despite the court's prior guidance, and several iterations of privilege log challenges, the parties continue to

dispute the limits of privilege doctrine in the Fourth Circuit. To facilitate review of the motions, and for the reasons stated on the record at that time, the court directed in camera production of a sampling of documents identified in Plaintiffs' motions. (ECF Nos. 780, 781.) After reviewing the documents produced for in camera review, and for the reasons outlined in this Memorandum Order, the court directs Merck to confirm its production of certain email attachments and otherwise denies both motions.[1]

The largest category of material remaining in dispute relates to drafts of proposed communications with third parties that had been circulated between attorneys for input. Plaintiffs claim these documents must be produced under the Fourth Circuit's decisions in In re Grand Jury Proceedings, 727 F.2d 1352, 1358 (4th Cir. 1984), and United States v. (Under Seal), 748 F.2d 871, 875 n.7 (4th Cir. 1984). Defendants disagree, arguing neither case requires disclosure of attorney communication as long as it was intended to be kept confidential. As set forth in more detail below, the material produced for in camera review has been properly withheld as the communication sought to be protected relates to confidential requests for review and not to information conveyed

---

[1] It bears mention here that during this motion practice, both Merck and Glenmark voluntarily re-reviewed and produced extensive material originally listed as privileged. Thus, the small number of documents examined in camera represented the end product of extensive debate among the parties over the limits of privilege in this document-intensive case.

for the express purpose of later disclosure.   In addition, the
documents resulting from the review – various non-privileged
letters, presentations, filings, and intra-company guidance – have
all been produced in stand-alone form.

**1.   Glenmark's privilege logs accurately and adequately describe
the withheld materials and no further production or re-review is
warranted in light of the documents already disclosed.**

With respect to the Glenmark documents, they fall into two
categories, both of which are properly subject to claims of
privilege.  Log Nos. 1721–1723 are copies of charts reflecting the
status of various litigation matters either pending or of interest
to Glenmark's counsel.  The withheld copies were circulated among
Glenmark's in-house attorneys.  As the log description accurately
reflects, the charts "provide analysis of claims and current status
of various litigations involving Glenmark."  Plaintiffs argue the
documents are not privileged because they were created long after
the Glenmark/Merck settlement underlying this action, and that
purely factual information contained in the charts would still be
subject to disclosure.  To the extent the documents contain a
purely factual matter not subject to a claim of privilege, the
company has also asserted a work product objection.

After reviewing the charts in camera, any nonprivileged
factual matter they contain is readily available from other
sources.  The fact that the documents address other litigation
long after the Glenmark/Merck settlement does not render them any

less privileged.   The charts were prepared to inform counsel regarding the status of many other legal matters as to which such communication would remain privileged.   Moreover, to the extent that factual material is relevant to these proceedings, it is already well-known through other discovery, such that requiring further production, which risks waiving or compromising the privilege, is not necessary.

The other category of documents broadly attacked in the motion against Glenmark relates to drafts of proposed communications with third parties that had been circulated between attorneys for Par and Glenmark.   Plaintiffs claim these documents must be produced under the Fourth Circuit's decisions in In re Grand Jury Proceedings, 727 F.2d 1352 (4th Cir. 1984), and United States v. (Under Seal), 748 F.2d 871 (4th Cir. 1984).   Both Grand Jury Proceedings and (Under Seal) address the issue of attorney/client communications related to documents intended for public disclosure.   While Plaintiffs argue that the cases stand for the proposition that the eventual public disclosure voids the privilege as to information communicated to counsel, neither case departs from the general rule that communications with counsel for the purpose of obtaining legal advice, and intended to be confidential, remain privileged.   See Grand Jury Proceedings, 727 F.2d at 1358 (finding no privilege because "communication was not intended to be kept in confidence"); cf. (Under Seal), 748 F.2d at

4

878 (ordering redaction of privileged communication related to expected public tax filing where statement "is undoubtedly based on . . . communications . . . client would reasonably expect to remain confidential"). Thus, communication related to a confidential attorney review of draft documents, even those eventually disclosed to third parties or published, retains the privilege to the extent the client intended that the communication (i.e., the review) remain confidential. By contrast, even private communications between an attorney and client "are not privileged if it was understood that the information contained in the conversation was to be conveyed to others." Grand Jury Proceedings, 727 F.2d at 1357 (quoting United States v. Tellier, 225 F.2d 441, 447 (2nd Cir. 1958)).

In Grand Jury Proceedings, the Fourth Circuit held that no privilege attached where the client's communications with his counsel were not confidential. And they were not confidential, according to the court, specifically because the attorney had been engaged to prepare a prospectus for investors and the client had decided, prior to hiring counsel, to publish that prospectus. Reviewing the limits of this privilege doctrine later, the court observed that "the attorney had been employed to convey information to third parties rather than provide legal advice for his clients' own guidance." (Under Seal), 748 F.2d at 875. No privilege would attach to communication intended to inform counsel regarding

5

matters to be included in that public disclosure.  And in answering the sometimes "difficult question" of when a client intends communication to remain confidential, the court looks "to the services the attorney has been employed to provide and determines if those services would reasonably be expected to entail the publication of the client's communications."  Id. at 875.

In this case, the material submitted for in camera review by Glenmark contains explicit requests for review by counsel of draft communications intended for later disclosure to third parties. Specifically, the withheld items logged as Documents Nos. 1751, 1870, 1871, 2029, and 2034 are all emails circulating various draft letters intended for disclosure to Merck.  The letters (and hence the review) relate to legal interpretations of the Merck/Glenmark Settlement Agreement.  Although these letters, if eventually transmitted to Merck, are not privileged documents and have already been disclosed, the communications sought to be protected by Glenmark's logging of these emails involves the review itself. This communication was not intended to be made public or disclosed and is thus confidential and privileged.  Johnson v. Ford Motor Co., No. 3:13-cv-6529, 2015 WL 5193568, at *3 (S.D.W. Va. Sept. 3, 2015) (upholding the claim of privilege where clients sought legal advice about the wording of an investigation report intended for public disclosure because nothing about the request suggested that the client intended its communications with counsel to be

published); see also Koch v. Specialized Care Servs., Inc., 437 F. Supp. 2d 362, 369 (D. Md. 2005) (Fourth Circuit precedent does not "strip[] consultative attorney-client communications of privilege" simply because "public" letter of legal position is later sent to third parties).

Likewise, the items logged at 1948 and 2511 involve preparatory notes for a conversation with Merck lawyers on the same subjects.  To the extent these "talking points" were finalized and actually the subject of an inter-party communication, that communication is not privileged and may properly be discovered. However, the items submitted for in camera review appear to have been only transmitted between Glenmark and Par during a time encompassed by the common interest privilege the court previously addressed.  Order, at 7 (ECF No. 674).  These documents properly fall within the scope of that common interest and thus the exchange between Par and Glenmark does not defeat the privilege for the otherwise confidential materials.  See Hunton & Williams v. D.O.J., 590 F.3d 272, 285 (4th Cir. 2010) (discussing timing of common interest agreement arising from evidence of clear collaboration as opposed to "mere indicia" of joint strategy).

**2.   Documents produced by Merck for in camera review following its voluntary re-review and supplemental production are properly withheld as privileged.**

As with the Glenmark materials, many of the documents included with Merck's in camera production involved requests for legal review of documents or presentations intended for later disclosure. For example, the company withheld internal requests for legal advice concerning a draft PowerPoint board presentation (Log Nos. 15326, 15327); a draft 10-Q filing (Log Nos. 15248, 15249); a PowerPoint presentation related in part to Zetia's anticipated loss of exclusivity (Log Nos. 11459, 11464); and circulation of a draft "Quick Facts" summary related to Zetia (Log Nos. 13961, 14161). In each case, the document subject to review was eventually intended for wider distribution, but the communication withheld was not information conveyed for the purpose of that wider disclosure. Instead, the withheld communication reflects the ordinary – and, in this case, confidential – role of counsel to scrutinize drafts before their public disclosure in order to advise the client about legal implications contained in that disclosure. As a result, these communications are properly withheld as privileged. As Merck's counsel has acknowledged, however, confidential review by counsel does not cloak the later-disclosed document with any privilege. Given the apparently wide distribution of the materials under legal review, even if the final drafts of these materials incorporated

8

explicit attorney advice, they would not be privileged or exempt from discovery.[2] ePlus, Inc. v. Lawson Software, Inc., 280 F.R.D. 247, 252-53 (E.D. Va. 2012) (dissemination to "ten or more non-lawyers" waived privilege).

The other materials Merck submitted for in camera review involved circulation of attorney advice regarding various business matters described on the privilege log. Plaintiffs argue that the vague log descriptions and reference to an apparent business purpose of the communications render these log entries insufficient to sustain Merck's claim of privilege. After reviewing several items, the court concludes they have been accurately and appropriately described on the privilege log. Each of the produced items includes either explicit requests for legal advice or communications relating confidential legal advice to various necessary recipients in the company. (Log Nos. 15160, 1409, 1410). Both Log Nos. 1409 and 1410, for example, contain material related to an ANDA filing that was explicitly and contemporaneously designated as confidential and privileged. They

---

[2] During a follow-up telephone conference, Merck's discovery counsel confirmed that most of the documents under review had been produced in stand-alone form. The only questions remaining were the status of the board presentation and the Quick Facts documents. If it has not already done so, Merck is DIRECTED to confirm production of the board presentation under review in Log No. 15326 and the Quick Facts circulated in Log No. 13961, as well as any widely distributed versions of Quick Facts responsive to a discovery request.

include detailed legal analysis relevant to the filing and were authored by an attorney. The fact that this information was conveyed to a relatively small group of non-lawyers acting for the company does not render it non-privileged. Santrade, Ltd. v. Gen. Elec. Co., 150 F.R.D. 539, 545 (E.D.N.C. 1993). Likewise, Log No. 15160 is an email which conveys a specifically attributed legal opinion on marketing materials to a group of employees who are not attorneys, but who need access to the information to carry out other functions. The legal analysis contained in the communication may be limited, but it is specifically conveyed as being from an attorney. Moreover, the later wider, public disclosure of the information, regardless of whether it represented legal advice, would obviously waive the privilege as to that information. And, thus, the information conveyed is reflected in other produced material.

Log No. 10309 relates to attorney review of a proposed company response to expected inquiries. The log entry accurately describes this communication as an "[e]mail thread disseminating confidential legal advice" but does not name the attorney whose work appears in the forwarded message. While this log entry should have named the attorney who authored the forwarded message (Lawrence Reich), in camera production of the material has clarified the basis of the privilege and satisfies Merck's burden.

10

Two documents specifically related to the preparation of a joint press release to announce the Merck/Glenmark settlement (Log Nos. 15811, 20913).  But as with the other withheld materials, the two email threads submitted for in camera review related to internal (Merck only) communication regarding the eventual disclosure contemplated by the settlement.   The communication reflected in both these email threads specifically includes confidential legal analysis and justification for proposed revisions to the proposed press release.  The revisions themselves, to the extent they were incorporated in the final document, are not privileged.  Johnson, 2015 WL 5193568, at *5.  But the rationale and justification offered by Merck's attorneys and reflected in the email thread was not intended to be publicly disclosed.    It   remains   confidential   and   therefore   properly withheld as privileged.  (Under Seal), 748 F.2d at 878.

Finally, documents logged at 10988, 11296, and 11472 are all described   in   the   privilege   log   as   either   requesting   or disseminating legal advice concerning ordinary business topics, including "marketing materials," "loss of exclusivity," or "pricing strategy."  As Plaintiffs note, these materials are not rendered privileged just because an attorney was involved in their drafting; however, when documents specifically convey legal advice to the limited number of people necessary for the company to act on that legal advice, they retain their confidential and thus

11

privileged character.  See Upjohn v. United States, 449 U.S. 383, 392 (1981).

Given the distribution of these materials and their description as related to ordinary business activity, it is understandable why Plaintiffs might suspect an over assertion of privilege.  And, without the benefit of a complete understanding of Merck's production, it is difficult to know whether the company is claiming privilege in an attempt to avoid discovery of non-privileged business matters, or simply to guard against an inadvertent waiver of the privilege that might expose more sensitive deliberative documents that would otherwise be clearly protected.  But Merck has stated that it produced thousands of other documents related to topics like loss of exclusivity.  Merck Opp. 13 (ECF No. 656) (stating 6,000 documents have been produced on this subject).  The withheld materials specifically attribute communication to or from an attorney.  The information or facts encompassed in these statements are likely discoverable through other means.  See id. at 395 ("A fact is one thing and a communication concerning that fact is an entirely different thing.").  Accordingly, the court does not believe further production or re-review is warranted based on the limited sample identified in Plaintiffs' briefing and reviewed by the court in camera.

### 3.  Merck's logging of attachments to privileged emails that had been separately produced in stand-alone form is adequate.

Plaintiffs' motion against Merck also sought additional disclosure of Bates numbers associated with email attachments produced in stand-alone form.  This issue arises when emails contain confidential communication (such as a request for legal advice) and include an attachment that, standing alone, is non-privileged.  After extensive negotiation on how to handle the logging of these separately produced materials, Merck eventually agreed to supplement its privilege log by identifying when an attachment had been produced in stand-alone form, but preserving its argument that the production would remove "identifying family metadata and group identifiers," which the company argued was necessary to protect its claims of privilege.  Though discussed at length in both briefs, the parties' efforts to reach a definitive agreement on the subject failed, as the Plaintiffs understood that they would be receiving identifying information on the log, namely Bates numbers of the produced attachments that could be used to verify the exact non-privileged attachment withheld from each email.  Merck, for its part, consistently maintained that it would not provide such identifying information, which it claims would improperly allow Plaintiffs to decipher the content of otherwise privileged communications.

Both parties find some support in existing caselaw.  Compare
Gen. Elec. Co. v. United States, No. 3:14-cv-190, 2015 WL 5443479,
at *2 (D. Conn. Sept. 15, 2015) (explaining that "any public
document that a client sends a lawyer might be subject to a claim
of privilege if disclosure would reveal that it was communicated
in confidence to an attorney in connection with the seeking or
receipt of legal advice"); with Wellin v. Wellin, No. 2:13-cv-
1831, 2015 WL 9850704, at *5 (D.S.C. Dec. 4, 2015) (rejecting
claims of privilege where the only basis of privilege was the
"subsequent transmittal of documents to their attorney for
purposes of seeking legal advice"); R&R adopted, No. 2:13-cv-1831,
2016 WL 199625 (D.S.C. Jan. 15, 2016).  Merck does not dispute
Plaintiffs' claim that no privilege attaches to the stand-alone
document merely by sending it to an attorney for review.  And
Plaintiffs do not dispute Merck's claim that asserting a privilege
in the act of production might allow them to withhold the
identifying information.  But the parties fundamentally disagree
on whether the log, as presently documented, is sufficient to
sustain Merck's burden to establish privilege.

At this stage of the proceedings, the court finds Merck's log
adequately asserts its claims of privilege with respect to the
communications it seeks to protect, and it will not require the
company to further supplement the log by providing individual Bates
numbers specifying which stand-alone attachments accompanied each

withheld email.   It is important, however, to note the limits of Merck's claim.   It is not seeking to protect from disclosure the attachments themselves, which have already been produced.   As set forth above, the materials submitted for in camera review, which included several of these emails and their non-privileged attachments, they all reflect an ongoing process of review and revision.   The non-privileged materials were not conveyed to the attorney solely for information purposes such that the attorney's awareness of the material might have independent, non-privileged relevance.   Instead, they are the subject of the advice being sought.   Moreover, because the documents are in draft form, and several different versions have apparently already been produced, requiring each to be identified with a specific transmitting email would permit Plaintiffs to discern what changes may have actually been conveyed in the privileged communication.   Because the materials themselves have already been produced and have already been separately identified by Bates numbers in connection with that stand-alone production, no further logging of the attachments is warranted in connection with Merck's claim that the email communications are privileged.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Second Motion to Compel Defendant Merck (ECF No. 598) and Defendant Glenmark (ECF No. 590) are GRANTED IN PART as to the request for in camera

review; GRANTED IN PART as to the production addressed in footnote

2, and otherwise DENIED.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

February  6 , 2020

16