**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| IN RE: ZETIA (EZETIMIBE) ANTITRUST LITIGATION | MDL No. 2836 |
| THIS DOCUMENT RELATES TO:<br><br>All End-Payor Class Actions | No. 2:18-md-2836- RBS-DEM<br><br>**REDACTED PUBLIC VERSION** |

**END-PAYOR PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CLASS REPRESENTATIVES AND CLASS COUNSEL**

## TABLE OF CONTENTS

INTRODUCTION .......... 1

I. THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED .......... 3

A. Antitrust Impact Will be Proven on a Class-wide Basis and Individualized Issues Do Not Predominate Over Common Questions .......... 3

1. Dr. Lamb Establishes Antitrust Impact on a Class-Wide Basis .......... 3

2. Formulary "Variability" and Cost Sharing Among TPPs and Consumers Do Not Defeat Predominance .......... 6

3. Individualized Inquiry into Complex PBM Agreements Is Unnecessary .......... 9

4. Rebates Do Not Defeat Predominance .......... 10

5. Allegedly improper assumption that Merck would launch an authorized generic. .......... 11

6. There Are No Brand Loyal TPPs. .......... 11

7. TPPs Did Not "Pass On" Alleged Overcharges Through Premiums or Plan Contributions. .......... 12

8. Medicare Part D Plans Are Injured .......... 12

B. The Law of the State of Purchase Governs The Class Members' Claims .......... 13

C. Minor Variations in State Laws are Manageable and Do Not Defeat Predominance .......... 14

II. THE CLASS IS ASCERTAINABLE .......... 17

CONCLUSION .......... 20

# TABLE OF AUTHORITIES

## Cases

*Bigelow v. RKO Radio Pictures, Inc.*,
327 U.S. 251 (1946)........ 11

*Bunker's Glass Co. v. Pilkington PLC,*
206 Ariz. 9 (2003)........ 12

*Chiang v. Veneman*,
385 F.3d 256 (3d Cir. 2004) ........ 18

*Clayworth v. Pfizer, Inc.*,
49 Cal. 4th 758 (2010) ........ 12

*DG ex rel. Stricklin v. Devaughn*,
594 F.3d 1188 (10th Cir. 2010) ........ 5

*EQT Prod. Co. v. Adair*,
764 F.3d 347 (4th Cir. 2014) ........ 17, 18

*Grandalski v. Quest Diagnostics*,
767 F.3d 175 (3d Cir. 2014) ........ 15

*Hanover Shoe, Inc. United Shoe Mach. Corp.*,
392 U.S. 481 (1968)........ 4, 12

*Hawaii v. Standard Oil Co.*,
405 U.S. 251 (1972)........ 4

*Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cty., Tennessee v. Momenta Pharm., Inc.*,
No. 15-cv-1100, 2019 WL 4573433 (M.D. Tenn. Sept. 20, 2019) ........ 4

*In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Practices Litig.*,
No. 09-MD-2023 BMC, 2012 WL 4747441 (E.D.N.Y. Oct. 4, 2012)........ 19

*In re Cardizem CD Antitrust Litig.*,
200 F.R.D. 326 (E.D. Mich. 2001) ........ 4, 6

*In re Flonase Antitrust Litig,*
815 F. Supp. 2d 867 (E.D. Pa. 2011)........ 14

*In re Flonase Antitrust Litig.*,
284 F.R.D. 207 (E.D. Pa. 2012)........ 4, 5, 14, 15

*In re Hydrogen Peroxide Antitrust Litigation*,
552 F.3d 305 (3d Cir. 2008) ........ 20

*In re Lidoderm Antitrust Litig.*,
No. 14-md-02521, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017)................................ 4, 5, 15, 18

*In re Loestrin 24 FE Antitrust Litig*.,
410 F. Supp. 3d 352 (D.R.I. 2019) ................................................................ 4, 14, 18, 20

*In re Nexium (Esomeprazole) Antitrust Litig.*,
297 F.R.D. 168 (D. Mass. 2013)....................................................................... 14, 15, 17

*In re Nexium Antitrust Litig.*,
777 F.3d 9 (1st Cir. 2015)........................................................................................ passim

*In re Polyurethane Foam Antitrust Litig.*,
314 F.R.D. 226 (N.D. Ohio 2014) ............................................................................ 14, 15

*In re Prudential Ins. Co. Am. Sales Practice Litig Agent Actions*,
148 F.3d 283 (3d Cir. 1998) ........................................................................................ 15

*In re Relafen Antitrust Litig.*,
221 F.R.D. 260 (D. Mass. 2004)................................................................................ 4, 15

*In re Relafen Antitrust Litig.*,
No. 01-cv-12239, 2004 U.S. Dist. LEXIS 29834 (D. Mass. Nov. 24, 2004) ........................... 19

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
No. 14-md-2503, 2017 WL 4621777 (D. Mass. Oct. 16, 2017)...................................... passim

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
264 F.R.D. 603 (N.D. Cal. 2009)........................................................................................ 14

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
No. 13-MD-2445, 2019 WL 4735520 (E.D. Pa. Sept. 27, 2019) ................................ 17, 18, 19

*In re Terazosin Hydrochloride Antitrust Litig.*,
203 F.R.D. 551 (S.D. Fla. 2001)........................................................................................ 12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
267 F.R.D. 583 (N.D. Cal. 2010)........................................................................................ 14

*In re Warfarin Sodium Antitrust Litig.*,
391 F.3d 516 (3d Cir. 2004) ............................................................................................ 14, 15

*In re Wellbutrin XL Antitrust Litig.*,
282 F.R.D. 126 (E.D. Pa. 2011)......................................................................................... 14

*In re Wellbutrin XL Antitrust Litigation*,
308 F.R.D. 134 (E.D. Pa. 2015)........................................................................................... 9

*In re Zetia (Ezetimibe) Antitrust Litig.*,
400 F. Supp. 3d 418 (E.D. Va. 2019) .................................................................... 16, 17

*In re Zetia (Ezetimibe) Antitrust Litig.*,
No. 18-md-2836, 2019 WL 1397228 (E.D. Va. Feb. 6, 2019)......................................... 14, 17

*J. Truett Payne Co. v. Chrysler Motors Corp.*,
451 U.S. 557 (1981)............................................................................................... 11

*Jay Edwards, Inc. v. New England Toyota Distrib. Inc.*,
708 F.2d 814 (1st Cir. 1983)................................................................................... 11

*John v. Nat. Sec. Fire & Cas. Co.*,
501 F.3d 443 (5th Cir. 2007) .................................................................................. 18

*Kohen v. Pacific Inv. Mgmt. Co.*,
571 F.3d 672 (7th Cir. 2009) .................................................................................... 5

*Krakauer v. Dish Network, L.L.C.*,
925 F.3d 643 (4th Cir. 2019) ............................................................................ 17, 18

*K-S Pharmacies Inc. v. Abbott Labs.*,
No. 94-cv-02384, 1996 WL 33323859 (Wis. Cir. Ct. May 17, 1996)..................................... 12

*Mahoney v. Endo Health Solutions, Inc. et al.*,
No. 15-cv-9841 (S.D.N.Y Nov. 21, 2016)................................................................... 19

*McDonough v. Toys' R Us, Inc.*,
638 F. Supp. 2d 461 (E.D. Pa. 2009) .......................................................................... 4

*Mims v. Stewart Title Guar. Co.*,
590 F.3d 298 (5th Cir. 2009) .................................................................................... 5

*Overka v. Am. Airlines, Inc.*,
265 F.R.D. 14 (D. Mass. 2010)................................................................................ 16

*Randy's Studebaker Sales, Inc. v. Nissan Motor Corp.*,
533 F.2d 510 (10th Cir. 1976) ................................................................................ 11

*Soutter v. Equifax Info. Servs.*, LLC,
307 F.R.D. 183 (E.D. Va. 2015) ........................................................................ 18, 19

*State by Humphrey v. Philip Morris, Inc.*,
551 N.W.2d 490 (Minn. 1996) ................................................................................ 12

*Windham v. Am. Brands, Inc.*,
565 F.2d 59 (4th Cir. 1977) .................................................................................... 20

**Statutes**

D.C. Code § 28-4509(b)........................................................................................................ 12

Haw. Rev. Stat. § 480-13 ...................................................................................................... 12

N.D. Cent. Code § 51-08.1-08 .............................................................................................. 12

N.M. Stat. Ann. § 57-1-3 ...................................................................................................... 12

N.Y. Gen. Bus. Law § 340(6) ............................................................................................... 12

Neb. Rev. Stat. § 59-821.01 .................................................................................................. 12

Utah Code Ann. § 76-10-3109(6) ......................................................................................... 12

**Other Authorities**

Joshua P. Davis & Eric L. Cramer, *Antitrust, Class Certification, and the Politics of Procedure*, 17 Geo. Mason L. Rev. 968 (2010) ........................................................................ 4

**INTRODUCTION**

In their opening brief ("Pls. Mem."), End-Payor Plaintiffs ("Plaintiffs") demonstrated that, [redacted] Defendants fail to address this in their opposition papers and, therefore, concede this point. Plaintiffs also demonstrated in their opening brief that the proposed Class (the "Class") meets the criteria of Rule 23 and that members of the Class – the intended victims of Defendants' anticompetitive scheme – are "the very group that Rule 23(b)(3) was intended to protect." *In re Nexium Antitrust Litig.*, 777 F.3d 9, 23 (1st Cir. 2015). Numerous common questions of law or fact will be decided in this case, including: (i) whether Defendants engaged in anticompetitive conduct; (ii) whether Defendants had market power; (iii) whether Defendants' misconduct resulted in overcharges for purchases of brand and generic Zetia; and (iv) the extent of aggregate damages resulting from that misconduct. Pls. Mem. at 11-12. In the face of these overwhelming common issues, the fact that individual damages might be calculated at the claims administration stage, using individualized proof, *does not* defeat class certification.

Defendants fail to address and concede that numerosity, commonality, typicality, and adequacy are satisfied under Rule 23(a). In discussing the remaining elements, Defendants do not make a meaningful effort to distinguish the many pertinent End-Payor class certification decisions.[1] Instead, Defendants misstate the law and concoct an economic analysis that is wholly disconnected from the proper legal standards at class certification. For example:

---

[1] *See* Declaration of Michael M. Buchman in Support of End-Payor Plaintiffs' Motion for Class Certification ("Buchman Decl.") (ECF No. 730-1), Ex. 9 (ECF No. 730-10) (listing decisions wherein courts certified End-Payor classes in pharmaceutical antitrust cases).

- Defendants and their experts incorrectly assume that Plaintiffs are required at this stage to identify and exclude individual uninjured Class members using class-wide data or methods. To the contrary, the presence of uninjured class members at the class certification stage and the potential need to conduct an individual inquiry to exclude them do not defeat class certification.
- Defendants confuse antitrust injury or impact, which occurs "the moment a purchaser incurs an overcharge," with individual damages, which can be zero if the injury is later offset. *Id.* at 27. Antitrust injury is relevant to class certification and can be established here through class-wide proof. Individual issues as to the amount of damages, on the other hand, rarely defeat certification.
- Defendants inflate the number of purportedly uninjured Class members by, for example, ignoring the fact that a TPP Class member who was uninjured on one transaction may have been injured on others.
- Defendants claim that variations in state laws exist, but do not point to any material variations that cannot be managed through means routinely employed in complex litigation (*e.g.*, a special verdict form).
- Defendants improperly imply that Plaintiffs must identify each Class member at this stage and that doing so would be too difficult. Defendants misconstrue the ascertainability requirement and deny the obvious – the data exists (as confirmed by pharmacy benefit managers ("PBMs") that maintain the data) in electronic form and can be aggregated, standardized and reviewed to identify Class members. This has been accomplished in similar litigations and can be accomplished programmatically in an administratively feasible way in this case.

Defendants compound their errors with numerous other misstatements of law and fact. They include in their tally of "uninjured" Class members entities who are expressly not part of the Class, such as PBMs. In short, Defendants attempt to sow a great deal of confusion, but utterly fail to address the pertinent facts or properly apply governing law. They have not identified a single, valid justification for depriving Class members of "the only realistic mechanism to vindicate meritorious claims." *Nexium*, 777 F.3d at 23. Accordingly, Plaintiffs' respectfully submit this Motion for Class Certification should be granted in its entirety.

# I. THE REQUIREMENTS OF RULE 23(B)(3) ARE SATISFIED

## A. Antitrust Impact Will be Proven on a Class-Wide Basis and Individualized Issues Do Not Predominate Over Common Questions

Plaintiffs have demonstrated predominance. Plaintiffs allege that Defendants' actions, which allowed them to charge supracompetitive prices for Zetia and generic Zetia, injured all or virtually all class members in the same way. Defendants profess that not all class members were: (i) injured on all of their transactions; and (ii) injured to the same degree. These arguments do not defeat predominance. Plaintiffs' expert, Dr. Russell Lamb, has demonstrated overwhelming injury to all or virtually all class members. *See* Reply Declaration of Michael M. Buchman in Further Support of Plaintiffs' Motion for Class Certification dated February 20, 2020 ("Buchman Reply Decl.") Ex. 1, Reply Declaration of Dr. Russell L. Lamb Ph.D. ("Lamb Reply Decl."). In addition to challenging predominance on this motion, Defendants also seek to contest amendment of the class definition.

### 1. Dr. Lamb Establishes Antitrust Impact on a Class-Wide Basis

Dr. Lamb demonstrates, based on class-wide evidence (*e.g.*, Defendants' own documents, academic and industry studies, and market data), that all or virtually all members of the Class paid more for brand and generic Zetia in the actual world than they would have paid in a fully

competitive, but-for world. Buchman Reply Decl., Ex. 1, Lamb Reply Decl. ¶¶ 5, 8 He employs a methodology for demonstrating class-wide harm to the Plaintiffs. His approach was recently certified in *Hosp. Auth. of Metro. Gov't of Nashville & Davidson Cty., Tennessee v. Momenta Pharm., Inc.*, No. 15-cv-1100, 2019 WL 4573433, at *13-18 (M.D. Tenn. Sept. 20, 2019), and similar approaches have been certified in other generic drug antitrust cases.[2]

Defendants' expert, Dr. James Hughes, seeks to exaggerate differences in the degree of injury among Class members to contend these differences defeat predominance. He is wrong. It is well recognized that each TPP class member is injured the moment it pays an overcharge.[3] While rebates may affect or ameliorate a TPP's amount of damages, they do not erase such initial overpayment nor damages on the totality of a TPP's purchases. Defendants' structural arguments, including that some TPPs might avoid injury by supposedly passing on overcharges to their subscribers in the form of increased premiums or by receiving government payments, or that imaginary "brand loyal TPPs" or "PBM class members" exist, are unsupported, contrary to law, or both. Such arguments do not rebut the broad injury established by Dr. Lamb for four reasons.

---

[2] *See, e.g., In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 404 (D.R.I. 2019); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-2503, 2017 WL 4621777, at *17-19 (D. Mass. Oct. 16, 2017); *Nexium*, 777 F.3d at 26; *In re Lidoderm Antitrust Litig.*, No. 14-md-02521, 2017 WL 679367, at *18-24 (N.D. Cal. Feb. 21, 2017); *In re Flonase Antitrust Litig.*, 284 F.R.D. 207, 230 (E.D. Pa. 2012); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 276 (D. Mass. 2004); *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 346-50 (E.D. Mich. 2001).

[3] *See Loestrin*, 410 F. Supp. 3d at 404; *Solodyn*, 2017 WL 4621777, at *17-18; *Nexium*, 777 F.3d at 28 n.23; *Lidoderm*, 2017 WL 679367, at *22-23; *McDonough v. Toys' R Us, Inc.*, 638 F. Supp. 2d 461, 485-86 (E.D. Pa. 2009). *See also Hawaii v. Standard Oil Co.*, 405 U.S. 251, 254 n.14 (1972) ("[C]ourts will not go beyond the fact of this injury to determine whether the victim of the overcharge has partially recouped its loss . . . ."); *Hanover Shoe, Inc. United Shoe Mach. Corp.*, 392 U.S. 481, 489 (1968) ("A person whose property is diminished by a payment of money wrongfully induced is injured in his property."); Joshua P. Davis & Eric L. Cramer, *Antitrust, Class Certification, and the Politics of Procedure*, 17 Geo. Mason L. Rev. 968, 984-85 (2010) ("Paying an overcharge caused by the alleged anticompetitive conduct on a single purchase suffices to show—as a legal and factual matter—impact or 'fact of damage.'").

*First*, Defendants incorrectly contend that the presence of some uninjured Class members defeats certification. That is not the law. The presence of a *de minimus* number of uninjured class members *will not* defeat class certification. *Nexium*, 777 F.3d at 25; *see also Lidoderm*, 2017 WL 679367, at *20.[4] "Excluding all uninjured class members at the certification stage is almost impossible in many cases[.]" *Nexium*, 777 F.3d at 22. "At worst the inclusion of some uninjured class members is inefficient, but this is counterbalanced by the overall efficiency of the class action mechanism." *Id.* Defendants will suffer no prejudice from including uninjured members in the Class because the number can be estimated using class-wide evidence. [redacted] Defendants present only erroneous assumptions and speculative calculations in an attempt to identify more than a *de minimis* number of uninjured class members. [redacted]

*Second*, Defendants misstate Plaintiffs' burden at the class certification stage. Plaintiffs are not required to: (i) establish the fact of injury and extent of individual Class members' damages; (ii) "test" their models on an individual level; or (iii) show that individual damages can be calculated and uninjured Class members (or non-members) identified. Contrary to Defendants' contention, details of individual purchases, purchasers or plans, although they may be relevant to calculating individual damages at the allocation stage, *are not* relevant to whether a class can be certified. *Lidoderm*, 2017 WL 679367, at *1 (the fact that there may ultimately "be a need to

---

[4] *See also Kohen v. Pacific Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009) ("[A] class will often include persons who have not been injured by the defendant's conduct," and "[s]uch a possibility or indeed inevitability" does not preclude certification); *accord DG ex rel. Stricklin v. Devaughn*, 594 F.3d 1188, 1198 (10th Cir. 2010); *Mims v. Stewart Title Guar. Co.*, 590 F.3d 298, 308 (5th Cir. 2009); *Flonase*, 284 F.R.D. at 226-27.

conduct individualized analysis to determine which plaintiffs were injured and how much in damages they should receive" does not defeat class certification).[5]

*Third*, Defendants conflate the question of impact or antitrust injury with individual damages. Antitrust injury occurs "the moment the purchaser incurs an overcharge, whether or not that injury is later offset," by, for example, a rebate. *Nexium*, 777 F.3d at 27, 28 n.23. Impact is immediately established when a purchaser pays an overcharge for a single purchase. *See supra*, n. 3. This remains true even if that same purchaser receives a benefit or was otherwise undamaged in other transactions involving coupons or other discounts. *Nexium*, 777 F.3d at 27. Arguments concerning net or offsetting benefits relate only to the *quantum* of individual damages, not the *fact of injury*. *Cardizem*, 200 F.R.D. at 317. By making such arguments, Dr. Hughes demonstrates a significant disconnect between his analysis and class certification law.

*Fourth*, Defendants confuse injury to prescription drug *plans* with injury to *TPP Class members*. [redacted] The issue is whether the TPP was injured in at least one transaction.

**2. Formulary "Variability" and Cost Sharing Among TPPs and Consumers Do Not Defeat Predominance**

[redacted]

[5] *See also id.* at *23 n. 33.

*a. Copays*

[redacted] Notably, *actual* generic prices in December 2016, the month the first generic entered the market (and was priced at a higher level), *are not* the correct comparators. Plaintiffs contend that generic Zetia would have entered the market 25 months earlier, in November 2014. The correct comparator is, therefore, Dr. Lamb's but-for generic price. [redacted]

[6] The example Defendants cite for Plaintiff [redacted] is no longer relevant because Plaintiffs modified the Class definition to exclude branded Zetia transactions by TPPs using OptumRx as their PBM.

[redacted]

*b. Rebates*

[redacted] Those brand transactions, which occurred after generic entry, *are not* included in Plaintiffs' modified class definition. They are, therefore, no longer relevant.

[redacted]

[redacted]

**3. Individualized Inquiry into Complex PBM Agreements Is Unnecessary**

Defendants incorrectly argue that individual analysis is required because: (i) PBMs pay for part of some prescription drug purchases, including through "spread pricing"; and (ii) receive and pass on "guaranteed rebates." These are non-issues for four reasons. *First*, PBMs *do not* purchase prescription drugs as evidenced by multiple PBM Declarations.[8] [redacted] *Id*. *Third*, PBMs are explicitly excluded from the Class definition in this case.[9] [redacted]

---

[7] Buchman Reply Decl., Ex. 1, [redacted]

[8] *See* Buchman Decl. Ex. 15 (Express Scripts, Inc. Declaration) ¶ 5; Ex. 16 (Schaper (Caremark) Declaration) ¶ 6; Ex. 17 (Lahman (OptumRx) Declaration) ¶ 5; Ex. 18 (Express Scripts, Inc. Declaration) ¶¶ 6-8; Ex. 19 (OptumRx, Inc. Declaration) ¶¶ 7-10; Ex. 20 (Prime Therapeutics LLC Declaration) ¶¶ 9-12.

[9] Defendants' expert, [redacted]

[redacted]

**4. Rebates Do Not Defeat Predominance**

[redacted] Defendants conflate the question of impact or antitrust injury with individual damages. Antitrust injury occurs the instant a TPP purchases, pays or provides reimbursement for artificially inflated Zetia or generic ezetimibe (overcharge) during the Class Period. *See supra*, n. 3. Whether a TPP later receives a rebate or other offset is irrelevant. *Nexium*, 777 F.3d at 27, 28 n. 23. Rebates are not "damage setoff[s] and do not affect the fact of injury." *Id.* Defendants have not shown that any class member, much less a great many of them, were uninjured on *every purchase* they made.

---

[redacted].

### 5. The Assumption That Merck Would Have Launched an Authorized Generic Absent the Agreement with Glenmark is Proper

[redacted]

Merck should bear the consequences of any uncertainty its illegal conduct caused.[12] Whether Merck would have launched an authorized generic, if it had not entered into an unlawful "No AG" deal, is a question of fact for trial which cannot be resolved on this motion.

### 6. There Are No Brand Loyal TPPs

[redacted] It is extremely unlikely that any uninjured TPP class members exist because injury can arise as a result of a *single overcharge*. *Solodyn*, 2017 WL 4621777, at *18. Notably, Plaintiffs are not seeking overcharges on branded Zetia during the period that generic Zetia could have been chosen instead of branded Zetia, so no "brand loyal" transactions are within the Class.

---

[10] Buchman Reply Decl., Ex. 5, [redacted]

[11] Buchman Reply Decl., Ex. 6, [redacted].

[12] *Jay Edwards, Inc. v. New England Toyota Distrib. Inc.*, 708 F.2d 814, 821 (1st Cir. 1983) (citing *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 265 (1946)). *See also J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566-67 (1981); *Randy's Studebaker Sales, Inc. v. Nissan Motor Corp.*, 533 F.2d 510, 517 (10th Cir. 1976).

**7. TPPs Did Not "Pass On" Alleged Overcharges Through Premiums or Plan Contributions**

[redacted] This argument was characterized as "nonsensical" by Judge Underhill in *In re Aggrenox Antitrust Litigation*.[14] In connection with class certification, any contribution increase does not affect the fact of injury, which occurs the moment an overcharge is paid. *See supra*, n. 3. Plan contributions are set using aggregate, not drug-specific, information to predict aggregate future claims. [redacted]

**8. Medicare Part D Plans Are Injured**

[redacted]

[13] To the extent Defendants are attempting to assert a "pass-through" defense, that defense is barred under federal law by the Supreme Court's decision in *Hanover Shoe*, 392 U.S. at 487-93. Some states have expressly adopted *Hanover Shoe*. *See, e.g.*, *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 787 (2010); *State by Humphrey v. Philip Morris, Inc.*, 551 N.W.2d 490, 497 (Minn. 1996); *K-S Pharmacies Inc. v. Abbott Labs.*, No. 94-cv-02384, 1996 WL 33323859, at *12 (Wis. Cir. Ct. May 17, 1996); *Hyde v. Abbott Lab.*, 123 N.C. App. 572, 579 (Ct. App. 1996). Others have restricted application of the "pass-through" defense to the chain of distribution. *See* Haw. Rev. Stat. § 480-13; N.M. Stat. Ann. § 57-1-3; N.Y. Gen. Bus. Law § 340(6); Neb. Rev. Stat. § 59-821.01; N.D. Cent. Code § 51-08.1-08; D.C. Code § 28-4509(b); Utah Code Ann. § 76-10-3109(6); *Bunker's Glass Co. v. Pilkington PLC,* 206 Ariz. 9, 18 (2003) (*dictum* suggesting the allowance of a pass-through defense to avoid duplicative damages awards from competing groups of plaintiffs within the chain of distribution).

[14] Buchman Reply Decl., Ex. 7, Transcript of Oral Argument at 85, *In re Aggrenox Antitrust Litig,* No. 14-md-2516 (D. Conn. Oct. 21, 2016), ECF No. 568 ("The price of Aggrenox is a piece of sand, a grain of sand on the beach in terms of setting premiums . . . when you have hundreds of thousands of drugs, the idea that any one of them is driving the premium is nonsensical.").

[15] *See also In re Terazosin Hydrochloride*, 220 F.R.D. 672, 680 (S.D. Fla. 2004) (no evidence TPPs take cost of individual drugs into account in setting premiums).

[redacted]

Just as insurance premiums or contributions to a union health and welfare fund do not constitute a pass on of overcharges, neither do the government subsidies to Medicare Part D plans. Medicare Part D plans make bids to the federal government in advance of a plan year to receive a per member overall payment. This payment is not based on any particular drug or member. In addition, low income members may receive help with premiums. The federal government does not seek to reward illegal monopolization, nor does the federal government subsidize it. [redacted]

***Cost Sharing Levels.*** Moreover, to the extent that Defendants claim that different cost sharing levels and catastrophic drug coverage assistance by the federal government should insulate them from liability, they are relying on their own illegal conduct as their defense. *See supra*, n. 12. If they had not overcharged the patient as much, the patient would not be in the higher levels of the Part D plan reimbursement schedule. The fact that higher reimbursements have even been triggered is due to the illegal conduct. They cannot use this as a shield. *Id.* Plaintiffs do not seek to recover for government payments. But those government payments should not be applied in such a way to shield the Defendants from liability.

### B. The Law of the State of Purchase Governs The Class Members' Claims

While Defendants characterize Plaintiffs' choice of law analysis as not being "meaningful," they do not meet their burden to demonstrate that an alternative law should apply nor do they claim that Plaintiffs' conclusion is incorrect. [redacted] As explained in the opening brief, it is well settled that, in pharmaceutical antitrust cases, the law of the state where the drug was purchased from a pharmacy governs because the injury (*i.e.*, overcharge) occurs at

the point of sale.[16] [redacted] Accordingly, the law of the state where the Zetia and generic Zetia purchases occurred governs.

### C. Minor Variations in State Laws Are Manageable and Do Not Defeat Predominance

Defendants suggest there are significant "variations" among state antitrust, consumer protection and unjust enrichment laws. [redacted][17] Any purported variations are inconsequential because the state antitrust laws ("Little Sherman Acts") are modeled on the Sherman Act, 15 U.S.C. § 1, and the consumer protection statutes ("Little FTC Acts") are modeled off of the Federal Trade Commission Act, 15 U.S.C. § 45. This was addressed during argument on the motion to dismiss. Oral Arg. Tr. at 157-59, Jan. 14, 2019, ECF No. 233. Federal courts across the country routinely certify indirect purchaser classes in similar cases under the laws of multiple states.[18] In *Nexium*, the court held that any variations among End-Payors' claims under

---

[16] *See, e.g., In re Flonase Antitrust Litig.*, 815 F. Supp. 2d 867, 882-85 (E.D. Pa. 2011) (applying the laws of the states where Flonase purchases were made after performing a detailed choice of law analysis); *see also In re Wellbutrin XL Antitrust Litig.*, 282 F.R.D. 126, 135-36 (E.D. Pa. 2011); *Relafen*, 221 F.R.D. at 277-78.

[17] The Class encompasses claims from thirty jurisdictions, including 28 states, the District of Columbia and Puerto Rico. Def. Opp. at 25, n. 17. Defendants note that Plaintiffs' Exhibit 14 to their opening brief identified 28 jurisdictions. *Id.* This is because Exhibit 14 related to applicable state antitrust and consumer protection laws. Pls. Op. Mem. at 21 (citing Buchman Decl., Ex. 14). In addition, Plaintiffs' assert unjust enrichment claims under the laws of two additional states – Alabama and Vermont. *See In re Zetia (Ezetimibe) Antitrust Litig*., No. 18-md-2836, 2019 WL 1397228, at *39 (E.D. Va. Feb. 6, 2019).

[18] *See also Loestrin*, 410 F. Supp. 3d at 407 (certifying class under multiple state antirust, consumer protection and unjust enrichment laws); *Solodyn*, 2017 WL 4621777, at *19-*20 (recognizing that "courts in this Circuit and elsewhere have certified classes in antitrust actions like this one despite the need to apply numerous states' laws"); *In re Nexium (Esomeprazole) Antitrust Litig*., 297 F.R.D. 168, 176 (D. Mass. 2013), (certifying class where twenty-six state laws were at issue); *see also Lidoderm*, 2017 WL 679367, at *27 (variances in state laws did not bar class certification under Rule 23(b)(3)); *Flonase*, 284 F.R.D at 219; *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 608 (N.D. Cal. 2010); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603 (N.D. Cal. 2009); *In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226, 292 (N.D. Ohio 2014) ("[C]ourts rarely deny certification simply because the class spans many states and asserts state-law claims.").

the state antitrust and consumer protection laws were minor and *could not* defeat predominance. *See In re Nexium (Esomeprazole) Antitrust Litig.*, 297 F.R.D. 168, 175-76 (D. Mass. 2013).[19] Similarly in *Solodyn*, the court found that "state law variations regarding damages, for instance, are not sufficiently material to defeat class certification." 2017 WL 4621777, at *20. In *Lidoderm*, the court held "[t]he differences in the applicable state laws identified by defendants do not appear to be material or even significant" and, therefore, do not defeat certification. *Lidoderm*, 2017 WL 679367, at *27. Defendants' brief fails to explain *why* the purported variations are material and should defeat predominance. [redacted] Variations among the relevant state laws, to the extent they exist, are insignificant, manageable and do not pose a barrier to class certification.[20] Any differences in applicable state laws "can be readily accommodated on a special verdict form or through other mechanisms routinely employed in complex litigations like this one."[21] *Lidoderm*, 2017 WL 679367, at *27; *see also Solodyn*, 2017 WL 4621777, at *20. Plaintiffs' trial plan, modeled in part on *Nexium* and *Solodyn*, allows for grouping[22] of common elements and a special

---

[19] *See also Flonase*, 284 F.R.D. at 219 (predominance satisfied because the plaintiffs in that case would "utilize the same operative evidence" to prove defendants' liability for state antitrust, consumer protection and unjust enrichment claims); *Warfarin*, 391 F.3d at 528 (indirect purchasers' antitrust and consumer protection allegations "naturally raise several questions of law and fact common to the entire class and which predominate over any issues related to individual class members"); *Lidoderm*, 2017 WL 679367, at *27 (differences among state law claims "do not appear to be material or even significant").

[20] *See In re Prudential Ins. Co. Am. Sales Practice Litig Agent Actions*, 148 F.3d 283, 315 (3d Cir. 1998); *Solodyn*, 2017 WL 4621777, at *20; *Polyurethane Foam*, 2015 WL 4459636, at *5.

[21] Other issues will be addressed by the Court as a matter of law in pre- or post-trial rulings (*e.g.*, the interpretation of statutory language; retroactivity of statutes; and issues that are within the Court's discretion).

[22] Grouping is "a permissible approach to nationwide class action litigation." *Grandalski v. Quest Diagnostics*, 767 F.3d 175, 183 (3d Cir. 2014); *see also Prudential*, 148 F.3d at 315 ("Courts have expressed a willingness to certify nationwide classes on the ground that relatively minor differences in state law could be overcome at trial by grouping similar states laws together and apply them as a unit."); *Relafen*, 221 F.R.D. at 282 (certifying exemplar states based upon similarity in grouped states).

verdict form to allow the jury to decide any state-specific issues, such as multiple damages or additional defenses. *See* Buchman Decl. [redacted][23]

Defendants further contend the survey Plaintiffs conducted does not "critically analyze" the differences in each state's laws nor discuss how to address such variations. Conspicuously absent from Defendants' brief and exhibits is a survey which they have conducted demonstrating the inadequacy of Plaintiffs' survey. Citing a single case drawing a distinction concerning three states, Defendants baldly assert class certification should be denied. [redacted] This argument, unsupported by their own "critical analysis," anemically falls short given the weight of the End-Payor generic drug antitrust cases cited herein. *See supra*, n. 2. They also claim that proof of injury and the threshold of damages differs among the various states. [redacted] But they fail to come to grips with the fact that the core allegations of anticompetitive conduct in this case establishes a violation of each state's antitrust, consumer protection and unjust enrichment laws. Similarly with regard to Plaintiffs' unjust enrichment claims, Defendants have failed to identify any variations in the unjust enrichment laws at issue, much less "critically analyze" them. [redacted]; *In re Zetia (Ezetimibe) Antitrust Litig.*, 400 F. Supp. 3d 418, 441 (E.D. Va. 2019) (similarly noting that Defendants "do not point to any specific material differences in jurisdictions' requirements for unjust enrichment claims that warrant consideration."). Plaintiffs' opening brief

[23] *See also Overka v. Am. Airlines, Inc.*, 265 F.R.D. 14, 20 (D. Mass. 2010) (analyzing thirty-four states' laws and concluding that the court would manage trial proceedings by presenting the jury with a core claim composed of the elements common to all jurisdictions, plus special questions targeting any additional elements added by individual jurisdictions). As stated in the [redacted], Plaintiffs "reserve the right to suggest changes to this [redacted]

addresses the fact that any purported differences in the various unjust enrichment laws for which Plaintiffs have claims are *not* material. [redacted].[24]

Accordingly, Defendants' argument that purported variations among the applicable state antitrust, consumer protection and unjust enrichment laws should defeat certification is unavailing and should be rejected, as it has been in similar recent cases. *See, e.g., Nexium*, 297 F.R.D. at 175-76; *Solodyn*, 2017 WL 4621777, at *20; *Lidoderm*, 2017 WL 679367, at *27.

## II. THE CLASS IS ASCERTAINABLE

Defendants contend that the Class is not ascertainable. [redacted] Defendants suggest Plaintiffs are required to obtain data to identify each Class member at this stage of the proceeding. [redacted] That is incorrect. It is well recognized that "*the goal [of ascertainability] is not to 'identify every class member at the time of certification*[.]'" *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019), *cert. denied*, 140 S. Ct. 676 (2019) (emphasis added) (quoting *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014).[25] Instead, a plaintiff need only demonstrate that: (i) the class is defined based on reference to objective criteria; and (ii) there is an administratively feasible method to determine, at some point, whether

---

[24] Defendants' suggestion that they cannot determine the unjust enrichment laws under which Plaintiffs have claims is irrational. Magistrate Judge Miller's Report and Recommendation on Defendants' motion to dismiss provides a chart that identifies Plaintiffs' unjust enrichment claims the Court recommended sustaining. *See Zetia*, 2019 WL 1397228, at *39. Judge Smith subsequently adopted, over the Defendants' objections, Magistrate Judge Miller's recommendations. *See, Zetia*, 400 F. Supp.3d at 441-443.

[25] *See also In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, No. 13-MD-2445, 2019 WL 4735520, at*42 (E.D. Pa. Sept. 27, 2019) (stating that plaintiffs "need not identify the class members at this juncture of the litigation" and certifying end-payor class including TPPs).

a particular person or entity is a class member.[26] Defendants do not genuinely dispute[27] the first factor as courts in virtually identical pharmaceutical litigation have found that Class definitions, similar to the one in this case, are based on objective criteria and certified classes. *See, e.g.*, *Lidoderm,* 2017 WL 679367 at *25.[28]

As to the second factor, Defendants and their expert, Donald J. Dietz, speculate that [redacted][29] Defendants and Mr. Dietz ignore declarations from some of the largest PBMs establishing the data exists and can be obtained.[30] [redacted]

---

[26] *Krakauer,* 925 F.3d 643 at 658; *Suboxone*, 2019 WL 4735520, at *42 ("ascertainability only requires a showing of a process through which class members can be successfully identified.").

[27] The cases cited by Defendants are inapposite. In *Chiang v. Veneman*, 385 F.3d 256, 260 (3d Cir. 2004), the plaintiff sought to certify a class of individuals who "believed they were discriminated against[.]" *Id.* at 260.

In *EQT*, 764 F.3d 347, the court found that the proposed class, which consisted of current and former gas estate owners, required a determination of ownership based on land records, which could require complicated and individualized inquiry in light of heirship, title-defect, and intestacy issues. No similar issues are present here. In the pharmaceutical industry, detailed transaction-level data exists and can be used to identify class members. [redacted]

In *John v. Nat. Sec. Fire & Cas. Co.*, 501 F.3d 443 (5th Cir. 2007), the court affirmed the dismissal of class allegations from a complaint under Rule 12(b) where the plaintiffs improperly proposed two new classes on appeal instead of at the district court level. *Id.* at 444-45.

[28] In *Lidoderm,* the court found that "the class definition—while somewhat complex—is based on objective criteria that allow potential class members to determine whether they are included in the class." *Id.* *See also Loestrin* 410 F. Supp. 3d 352; *Nexium,* 297 F.R.D. 168; *Suboxone* 2019 WL 4735520; *Solodyn,* 2017 WL 4621777.

[29] Even if multiple steps would be conducted to identify Class members, "[t]he number of 'steps' in the process and the time and effort required have no bearing on whether the [class members] are or are not objectively ascertainable" *Soutter v. Equifax Info. Servs.*, LLC, 307 F.R.D. 183, 197 (E.D. Va. 2015) (Payne, J.). Defendants attempt to distinguish *Soutter* because it dealt with less class members than may exist here. Def. Opp. at 26 n.26. That is irrelevant. [redacted]

[30] *See supra*, n. 8.

[redacted] *See, e.g.*, *In re Relafen Antitrust Litig.*, No. 01-cv-12239, 2004 U.S. Dist. LEXIS 29834, at *17-19 (D. Mass. Nov. 24, 2004).[32] Notably, [redacted]. Had he done so, he would have seen that the individualized inquiry is unnecessary. He would have also understood that impracticalities which precluded a finding of ascertainability in other cases are not present here.[33] Mr. Dietz's rank speculation that this is too difficult a task cannot defeat class

---

31 [redacted]

32 *See also In re Bayer Corp. Combination Aspirin Prod. Mktg. & Sales Practices Litig.*, No. 09-MD-2023 BMC, 2012 WL 4747441, at *3 (E.D.N.Y. Oct. 4, 2012) ("it is rather standard practice for plaintiffs to subpoena third parties, in contexts similar to this one, in order to obtain information for the purpose of providing [class settlement] notice."); Buchman Reply Decl., Ex. 8, Order Preliminarily Approving Class Settlement, *Mahoney v. Endo Health Solutions, Inc. et al.*, No. 15-cv-9841 (S.D.N.Y Nov. 21, 2016), ECF No. 97 (permitting plaintiffs to serve subpoenas on six of the largest PBMs and pharmacy chains to identify class members who purchased fluoride tablets); Buchman Reply Decl., Ex. 9, Declaration of Dan Deschamps, *Mahoney v. Endo Health Solutions, Inc. et al.*, No. 15-cv-9841 (S.D.N.Y May 5, 2017), ECF No. 101-4 (explaining that the claims administrator utilized data obtained from PBMs and pharmacies to identify consumer settlement class members).

Similarly, if necessary here, Plaintiffs could subpoena PBMs for claims data at a later stage in these proceedings. As other federal courts have found, "[p]ost discovery, post class-certification subpoenas are permissible to identify class members and issue notice of the class action." *See Suboxone*, 2019 WL 4735520 at *43 (citing *Relafen*, 2004 U.S. Dist. LEXIS 29834, at *17-19. In *Suboxone*, the court found that the ascertainability requirement was met where the plaintiffs explained that TPP and consumer class members could be identified by subpoenaing PBMs, TPPs, and pharmacies. *Id.* at *42. Given that there are no consumers in the Class here, the process of obtaining data and identifying TPP Class members will be more simplistic than the method proposed in *Suboxone* in other class actions involving consumers.

33 In *Soutter*, the Eastern District of Virginia explained that "individualized fact-finding giving rise to mini-trials that defeat ascertainability are those requiring determinations on the merits—not an administrative review to determine whether an objective element of a class definition is met." 307 F.R.D. at 197. The court found that the class was ascertainable even where identifying members would require electronic searches, analysis, and manual member-by-member review to determine whether the individuals met the objective criteria of the class definition. *Id.*

certification. *Nexium*, 777 F.3d at 31. Conversely, [redacted] Multiple federal courts have found that the same or similar methodology proposed here satisfies the ascertainability requirement in pharmaceutical antitrust class actions.[34] Accordingly, Plaintiffs have demonstrated that the data exists to identify Class members and apply exclusions in an administratively feasible manner.[35]

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that their Motion for Class Certification be granted in its entirety and that the Court certify the Class as defined in Plaintiffs' Motion for Leave to Modify and Limit Their Class Definition.

[34] *See, e.g.*, *Loestrin*, 410 F. Supp. 3d at 399-401 (certifying a TPP class and finding that Plaintiffs, through their experts, including Ms. Craft, demonstrated that requisite data sufficient to identify TPP class members and excluded entities was "available and accessible" and could be compiled and analyzed); *Solodyn*, 2017 WL 4621777, at *13-14; *Lidoderm*, 2017 WL 679367, at *29 n.41 (finding that end-payor plaintiffs' expert's opinions that pharmacy and PBM records existed and were available supported ascertainability).

[35] *Windham v. Am. Brands, Inc.*, 565 F.2d 59 (4th Cir. 1977), cited by Defendants, is inapposite. The court affirmed denial of certification to a proposed class of tobacco growers based upon their "mere assurances" that they would develop a damages formula later. *Id.* at 70. This comment did not relate to ascertainability. The court also found that individual proof (*e.g.*, invoices and warehouse records) and complicated calculations that would take approximately ten years to perform would be required given that proposed class members were allegedly injured by different types of anticompetitive conduct. *Id.* Those issues are not present here.

In *In re Hydrogen Peroxide Antitrust Litigation*, the court stated the general proposition that "[a] party's assurance to the court that it intends or plans to meet the requirements is insufficient[.]" 552 F.3d 305, 318 (3d Cir. 2008). Plaintiffs do not seek to assure the court that they intend to meet the ascertainability requirement. They have met their burden here.

Dated: February 20, 2020

Respectfully submitted,

By: */s/ James A. Cales III*

Alan Brody Rashkind (VSB No. 12658)
James A. Cales III (VSB No. 41317)
**FURNISS, DAVIS, RASHKIND AND SAUNDERS, PC**
6160 Kempsville Circle, Suite 341B
Norfolk, Virginia 23502
(757) 461-7100
arashkind@furnissdavis.com
jcales@furnissdavis.com

*Liaison Counsel for End-Payor Plaintiffs and the Proposed End-Payor Class*

Michael M. Buchman
Michelle C. Clerkin
**MOTLEY RICE LLC**
777 Third Avenue, 27th Floor
New York, NY 10017
(212) 577-0040
mbuchman@motleyrice.com
mclerkin@motleyrice.com

Marvin A. Miller
Lori A. Fanning
Matthew Van Tine
**MILLER LAW LLC**
115 South LaSalle Street, Suite 2910
Chicago, IL 60603
(312) 332-3400
mmiller@millerlawllc.com
lfanning@millerlawllc.com
mvantine@millerlawllc.com

*Interim Co-Lead Counsel for End-Payor Plaintiffs and the Proposed End-Payor Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 20, 2020, a true copy of the foregoing document was served on all counsel of record by electronically filing the document with the Court's CM/ECF system.

*/s/ James A. Cales III*
James A. Cales III