# Exhibit 2

# HEARING ON DIRECT PURCHASER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

IN RE: ZETIA (EZETIMIBE) ANTITRUST LITIGATION
No. 2:18-md-2836 (E.D. Va.)

May 1, 2020

DEFENDANTS' PRESENTATION

## Summary of Issues

- **Numerosity and Practicability of Joinder**

  - Only 23 entities should be included in the proposed class.

  - Joinder of proposed class members, who have the ability and motivation to litigate independently, is practicable and would be efficient.

- **Predominance and Superiority**

  - Individual inquiries will be required, and a class action is not superior.

- **Adequacy and Typicality**

  - RDC is an inadequate class representative because its bankruptcy creates a conflict and its honesty is subject to reasonable question.

  - FWK is an inadequate class representative due to its lack of independence from class counsel.

  - CCI's idiosyncratic purchases make its claims atypical of the class.

2

## Standard Governing Motions for Class Certification

- **Class actions are the "*exception to the usual rule* that litigation is conducted by and on behalf of the individual named parties only.**" *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quotation omitted) (emphasis added).

- The ***plaintiffs bear the burden*** of demonstrating that each requirement of class certification has been met.  *Krakauer v. Dish Network LLC*, 925 F.3d 643, 654 (4th Cir. 2019).

- Plaintiffs must show that each requirement has been met by a ***preponderance of the evidence***.  *American Sales Co. v. Pfizer*, No. 2:14-cv-00361, 2017 WL 3669604, at *5 (E.D. Va. July 28, 2017) (citing *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008)).

- The Court must undertake a ***"rigorous analysis"*** to ensure that plaintiffs have met their burden.  *Wal-Mart*, 564 U.S. at 350–51 (emphasis added).

3

# Numerosity & Practicability of Joinder

## Numerosity & Practicability of Joinder

- **Two-step analysis considering:**

  - **Number of class members**

    - Generally, classes of more than 40 satisfy the numerosity requirement.

      - However, the Fourth Circuit has affirmed denial of certification of classes with more than 50 members.[1]

    - Classes of fewer than 20 do not satisfy the numerosity requirement.

    - If a putative class has **21–40** members, analysis varies and **depends on "the circumstances of each particular case."**[2]

  - **Impracticability of joinder**

1 *Roman v. ESB, Inc.*, 550 F.2d 1343 (4th Cir. 1976).
2 *In re Modafinil*, 837 F.3d at 249–50.

# Numerosity

| Reason for Exclusion | Number Excluded | Total |
|:---:|:---:|:---:|
| Initial DPP Proposal | -- | 70 |
| **Reductions That Are Uncontested or Based on Court Rulings** | | |
| DPPs' adjusted damages period | **5** | 65 |
| Purchasers from Par | **23** | 42 |
| **Contested Reductions** | | |
| Retailers | **7** | 35 |
| Subsidiaries | **6** | 29 |
| Brand-only purchasers | **2** | 27 |
| Idiosyncratic purchasers | **4** | **23** |

6

# Numerosity: Generic-Only Purchasers

- **Putative class members who purchased only generic ezetimibe from Par should be excluded.**

  - The Court has ruled that these entities are not direct purchasers.

  - The Court dismissed Plaintiffs' claims to the extent based on indirect purchases.

  - DPPs "recognize that the Court has ruled that direct purchasers from Par are indirect purchasers, and thus lack standing under federal antitrust law."  DPPs' Reply Brief at 1, n.4.

| Reason for Exclusion | Number Excluded | Total |
|---|---|---|
| **Reductions That Are Uncontested or Based on Court Rulings** | | |
| DPPs' adjusted damages period | 5 | 65 |
| **Purchasers from Par** | **23** | **42** |
| **Contested Reductions** | | |
| Retailers | 7 | 35 |
| Subsidiaries | 6 | 29 |
| Brand-only purchasers | 2 | 27 |
| Idiosyncratic purchasers | 4 | 23 |

7

# Numerosity: Retailer Plaintiffs

- **Retailer Plaintiffs should be excluded.**

- Retailers have chosen to proceed in the MDL with **their own lawsuits and their own counsel.**

- Retailers collectively retained one expert to address their own economics and damages issues.

- Retailers have **already opted out of this very case** with respect to DPPs' settlement with Par.

| Reason for Exclusion | Number Excluded | Total |
|---|---|---|
| **Reductions That Are Uncontested or Based on Court Rulings** | | |
| DPPs' adjusted damages period | 5 | 65 |
| Purchasers from Par | 23 | 42 |
| **Contested Reductions** | | |
| **Retailers** | **7** | **35** |
| Subsidiaries | 6 | 29 |
| Brand-only purchasers | 2 | 27 |
| Idiosyncratic purchasers | 4 | 23 |

# Numerosity: Retailer Plaintiffs

- DPPs do little to defend including Retailers in the class count.



> The seven retailer plaintiffs who have filed individual actions remain prospective class members until they opt-out and are excluded from the certified class.[17] Even if each opts out, a class of 35 is still larger than the class certified in *Celebrex*, and under Fourth Circuit law, no minimum number is required and 18 has been held enough to find joinder impractical.[18]

Source: DPPs' Reply Memorandum In Support of Motion for Class Certification at 4.

9

# Numerosity: Retailer Plaintiffs

- In other litigation, direct purchasers represented by many of the same counsel have *requested* that the court exclude retailer plaintiffs proceeding separately from the definition of the class.



Source: Memorandum In Support of Motion to Amend the Litigation Class Definition, *filed in King Drug Co. of Florence, Inc. v. Cephalon, Inc.*, No. 2:06-cv-01797-MSG, ECF No. 833-1 (E.D. Pa. Aug. 5, 2015).

## Numerosity: Retailer Plaintiffs

- Under Fourth Circuit precedent, the numerosity and practicability analysis focuses on whether **"joinder of those *not already plaintiffs* in the action"** is impracticable. *Roman v. ESB, Inc.*, 550 F.2d 1343, 1348 (4th Cir. 1976) (emphasis added).

  - In *Roman*, denial of class certification where there were only 11 additional class members to be joined was "**so apparently correct** as to require no discussion." *Id.* at 139.

| Reason for Exclusion | Number Excluded | Total |
|---|---|---|
| **Reductions That Are Uncontested or Based on Court Rulings** | | |
| DPPs' adjusted damages period | 5 | 65 |
| Purchasers from Par | 23 | 42 |
| **Contested Reductions** | | |
| **Retailers** | **7** | **35** |
| Subsidiaries | 6 | 29 |
| Brand-only purchasers | 2 | 27 |
| Idiosyncratic purchasers | 4 | 23 |

11

# Numerosity: Subsidiaries

- **Subsidiaries of other class members should be excluded.**

  - Plaintiffs have already excluded some subsidiaries.[1]

  - Joining subsidiaries is more practicable than joining unrelated companies.

  - Subsidiaries are different from partial assignees when it comes to practicability of joinder, because they have common ownership with, and are controlled by, another class member.

| Reason for Exclusion | Number Excluded | Total |
|---|---|---|
| **Reductions That Are Uncontested or Based on Court Rulings** | | |
| DPPs' adjusted damages period | 5 | 65 |
| Purchasers from Par | 23 | 42 |
| **Contested Reductions** | | |
| Retailers | 7 | 35 |
| **Subsidiaries** | **6** | **29** |
| Brand-only purchasers | 2 | 27 |
| Idiosyncratic purchasers | 4 | 23 |

1  Leitzinger Damages Report ¶ 23.

## Numerosity: Subsidiaries

- **Proposed class members that are subsidiaries:**
  - Bellco  **(AmerisourceBergen)**
  - Burlington Drug  (Smith Drug)
  - H.D. Smith  **(AmerisourceBergen)**
  - Harvard Drug  **(Cardinal Health)**
  - Smith Medical Partners  **(AmerisourceBergen)**
  - Valley Wholesale  **(AmerisourceBergen)**

- If Retailer Plaintiffs remain in the class, RiteAid Headquarters Corp. is also a subsidiary (of RiteAid Corp.).

Source:  Strombom Decl. ¶ 28.

13

## Numerosity: Brand-Only Purchasers

- **Brand-only purchasers should be excluded.**

  - Plaintiffs have not shown by a preponderance of the evidence that impact to these purchasers can be proven with common evidence.

  - Unlike other class members, brand-only purchasers did not purchase generic ezetimibe when it became available.

| Reason for Exclusion | Number Excluded | Total |
|---|---|---|
| **Reductions That Are Uncontested or Based on Court Rulings** | | |
| DPPs' adjusted damages period | 5 | 65 |
| Purchasers from Par | 23 | 42 |
| **Contested Reductions** | | |
| Retailers | 7 | 35 |
| Subsidiaries | 6 | 29 |
| **Brand-only purchasers** | **2** | **27** |
| Idiosyncratic purchasers | 4 | 23 |

Source:  Strombom Decl. ¶ 44–46.

# Numerosity: Brand-Only Purchasers

- These brand-only purchasers ***did not receive discounts*** on brand Zetia® before generic entry:

  - Caribe Rx

  - Eveready Wholesale Drugs

  - Harvard Drug (also a subsidiary)

- The evidence shows that DPPs with no discounts before generic entry typically ***do not receive discounts after generic entry***.

| Reason for Exclusion | Number Excluded | Total |
|---|---|---|
| **Reductions That Are Uncontested or Based on Court Rulings** | | |
| DPPs' adjusted damages period | 5 | 65 |
| Purchasers from Par | 23 | 42 |
| **Contested Reductions** | | |
| Retailers | 7 | 35 |
| Subsidiaries | 6 | 29 |
| **Brand-only purchasers** | **2** | **27** |
| Idiosyncratic purchasers | 4 | 23 |

Source: Strombom Decl. ¶¶ 44–46.

15

# Numerosity: Idiosyncratic Purchasers

- **Idiosyncratic purchasers should be excluded.**

  - Plaintiffs have not shown by a preponderance of the evidence that impact to these purchasers can be proven with common evidence.

  - Three idiosyncratic purchasers waited until long after generic entry to purchase generic product.

  - Two bought a very small quantity of brand Zetia® before generic entry.

  - The idiosyncratic purchasers did not receive discounts after generic entry.

| Reason for Exclusion | Number Excluded | Total |
|---|---|---|
| **Reductions That Are Uncontested or Based on Court Rulings** | | |
| DPPs' adjusted damages period | 5 | 65 |
| Purchasers from Par | 23 | 42 |
| **Contested Reductions** | | |
| Retailers | 7 | 35 |
| Subsidiaries | 6 | 29 |
| Brand-only purchasers | 2 | 27 |
| **Idiosyncratic purchasers** | **4** | **23** |

Source:  Strombom Decl. ¶¶ 48–51, 55.

16

## Numerosity: Idiosyncratic Purchasers

- **Cesar Castillo Inc.**
  - Did not purchase generic ezetimibe until January 2019—two years after generic entry, and after it was a plaintiff in this litigation

- **Henry Schein**
  - Did not purchase generic ezetimibe for more than a year after it became available, and only after at least six generics were on the market

- **Paragon**
  - Only purchased one bottle of brand Zetia® (containing 30 pills) in September 2015

- **A.F. Hauser**
  - Made just two indirect purchases of generic ezetimibe and four purchases of brand Zetia® (for a total of 450 brand pills)

Source:  Strombom Decl. ¶¶ 47–56.

17

## Joinder of All Proposed Class Members Is Practicable

- Analyzing practicability requires assessing multiple factors:[1]

  - The vast majority of proposed class members are large companies with multi-million dollar claims, so they have the **ability and motivation to litigate** as joined plaintiffs, as well as the **financial resources** necessary to do so.

  - **Judicial economy** does not weigh in favor of a class action because the case is already proceeding as an MDL, multiple class members are already litigating efficiently, plaintiffs have been sharing experts and resources, and additional discovery is unlikely.

  - The remaining practicability factors do not compel class certification.

- Joinder is practicable even with up to 42 class members.

1 *In re Modafinil*, 837 F.3d at 250.

## Practicability of Joinder: Ability and Motivation to Litigate

- The proposed class members **purport to have substantial claims** and therefore have the ability and motivation to litigate as joined plaintiffs.

- The **"Big Three"**—McKesson, AmerisourceBergen, and Cardinal Health— *each* **have supposed claims of** ██████████████ in treble damages.[1]

  - Their claims represent about **97% of the total DPP claims**.[2]

  - The Big Three are not "candidates who need the aggregative advantages of the class device."[3]

  - The Big Three have chosen not to sue, and the class action device was not intended to allow smaller entities to pursue the Big Three's claims for settlement leverage.

1  Strombom Decl. Fig. 5.
2  See Strombom Decl. ¶ 73 & Fig. 5; Leitzinger Damages Report at 26, Table 2.
3  *In re Modafinil*, 837 F.3d at 258.

# Practicability of Joinder: Ability and Motivation to Litigate

- **14 of the 23 class members** claim supposed treble **damages of over $10 million**, and **17 of the 23** claim supposed treble **damages of over $3 million.**

  - The 17 entities collectively account for over **99.98%** of total estimated damages for the 23 class members.

- All but 2 of the 23 class members claim supposed treble damages of more than $450,000.

**Individual Brand Overcharges of Putative Class Members**



Source: Strombom Decl. ¶ 74 & Fig. 5.

# Practicability of Joinder: Ability and Motivation to Litigate

- The proposed class members are large companies that have the **financial resources necessary to pursue litigation**.

  - All 22 entities that are still in business have annual revenue of more than $16 million.

  - More than half of them have annual revenue greater than $100 million.

  - The Big Three have annual revenues of more than $100 billion.

Source: Strombom Decl. ¶ 72 & Fig. 4.

**Annual Revenue of Putative Class Members**

| Putative Class Member | Revenue ($) |
| --- | --- |
| 1. McKesson | 214,319,000,000 |
| 2. AmerisourceBergen | 167,939,635,000 |
| 3. Cardinal Health | 145,534,000,000 |
| 4. Morris & Dickson | 4,200,000,000 |
| 5. Smith Drug | 2,500,000,000 |
| 6. RDC | 2,000,000,000 |
| 7. North Carolina Mutual Wholesale Drug | 1,200,000,000 |
| 8. Anda Inc. | 1,100,000,000 |
| 9. Value Drug | 715,430,000 |
| 10. Louisiana Wholesale | 380,410,000 |
| 11. Drogueria Betances | 290,521,000 |
| 12. Discount Drug Mart | 191,300,000 |
| 13. Pharmacy Buying Association | 136,440,000 |
| 14. Prescription Supply | 75,450,000 |
| 15. Dakota Drug | 73,586,000 |
| 16. Miami-Luken | 69,500,000 |
| 17. Capital Wholesale | 44,130,000 |
| 18. DMS Pharmaceutical | 41,803,000 |
| 19. HC Pharmacy Central | 39,830,000 |
| 20. Drugs Unlimited | 36,196,000 |
| 21. Dixon-Shane | 24,510,000 |
| 22. FMC Distributors | 16,170,000 |

21

## Practicability of Joinder: Ability and Motivation to Litigate

- **Plaintiffs' $3 million "negative claim" argument is a red herring.**

  - Plaintiffs present no evidence of the actual costs of joinder.

    - They wrongly assume that individual plaintiffs would have to bear the entirety of litigation costs on their own.

      - "As joined parties, no individual plaintiff will bear the costs of . . . experts completely on their own."[1]

      - The seven Retailers, for example, share the cost of a single expert.

- CCI has decided to litigate as a named plaintiff, even though its supposed treble damages are estimated at ███████.[2]

- However the class is defined, fewer than half of the class members have so-called negative claims, even under plaintiffs' unsupported theory.

1  *In re Androgel*, 2018 WL 3424612, at *3 (N.D. Ga. July 16, 2018).
2  Strombom Decl., Ex. 4.

22

## Practicability of Joinder: Ability and Motivation to Litigate

- Class certification may still be inappropriate even if a small number of class members would have negative-value claims.[1]

- **Contingent fees mitigate concerns over supposed negative-value claims.**[2]

  - "[T]he fact that all class members, even those with such so-called 'small' claims, would likely be represented on a contingent basis undermines [the Plaintiffs'] position that litigating via joinder would result in a negative claim."[3]

---

1  *In re Modafinil*, 837 F.3d at 259; *In re Androgel*, 2018 WL 3424612, at *3.
2  *King Drug Co. of Florence, Inc. v. Cephalon*, 2017 WL 3705715, at *10 (E.D. Pa. Aug. 28, 2017).
3  *In re Androgel*, 2018 WL 3424612, at *3 (quotation omitted).

## Practicability of Joinder: Judicial Economy

- Judicial economy favors certification where "the class action mechanism is **substantially more efficient** than joinder of all parties."[1]

- Proceeding with a class would not be substantially more efficient than joining additional class members to the ongoing cases in the MDL.

  - Proceedings have already been centralized by the JPML.

  - The 3 DPP named plaintiffs and 7 Retailer Plaintiffs are already litigating efficiently in this court.

  - Plaintiffs have been using many of the same experts and otherwise sharing resources.

  - No new discovery will likely be necessary if additional parties are joined.

[1] *In re Modafinil*, 837 F.3d at 253 (emphasis added).

## The Additional Practicability Factors Do Not Compel Certification

- **Geographic dispersion**
  - The proposed class members are already litigating their claims efficiently despite geographic dispersion.
  - The MDL also mitigates inefficiencies based on geography.
- **Identification of claimants**
  - Potential claimants have already been identified based on defendants' transaction data.
- **Nature of relief**
  - DPPs are seeking damages, not injunctive relief.

# Predominance & Superiority

## Predominance

- The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," a standard "'*far more demanding'* than the commonality requirement of Rule 23(a)."[1]

- "If proof of the *essential elements* of the cause of action *requires individual treatment*, then *class certification is unsuitable*."[2]

- Individual issues predominate on the essential element of *antitrust impact* for brand-only purchasers and idiosyncratic purchasers.

  - Assessing impact will require individualized inquiry into whether they would have purchased generic ezetimibe earlier and whether their costs for brand Zetia® would have been lower with earlier generic availability.

1  *In re Hydrogen Peroxide*, 552 F.3d at 310–11 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)) (emphasis added).
2  *Id.* at 311 (emphasis added).

# Predominance

- Beyond brand-only and idiosyncratic purchasers, Plaintiffs have not shown that common issues predominate when it comes to antitrust impact.

  - Dr. Leitzinger's methodology *relies on averages* for showing antitrust impact.

    - The literature and forecasts he cites are entirely averages-based; they do not even attempt to predict what individual purchasers would pay.

    - This use of averages does not show that each individual class member was impacted.

    - Dr. Leitzinger admits that **44 percent of purchasers *did not obtain increased discounts on brand purchases*** after generic ezetimibe entered the market.[1]

1   Leitzinger Decl. ¶ 44.

## Predominance

- Dr. Leitzinger's averages are **distorted by the size of the Big Three**.

  - Average prices are not necessarily indicative of the prices actually paid by proposed class members.

  - The Big Three account for more than 95% of class purchases of brand Zetia.®1



1  Strombom Decl. ¶ 40.                    Source: Deposition of Dr. Leitzinger at 236:4–15.

## The Court Cannot Rely on Averages Without a "Rigorous Analysis"

- In *In re Lamictal*, a reverse-payment case involving the drug lamotrigine, direct purchaser plaintiffs brought claims similar to DPPs' claims here.

- Plaintiffs there relied on similar evidence to establish predominance, including:

  - "**[E]conomic literature** showing that, on average, prices of generics are lower as more enter the market"

  - The generic manufacturer's "general **pricing forecast**"

  - "**[T]ransaction-level sales data**" showing "average actual price[s] paid"

  - A model that "relie[d] on an *average* hypothetical price" that would have been paid by each purchaser in the but-for world.[1]

---

1  *In re Lamictal Direct Purchaser Antitrust Litig.*, -- F.3d --, 2020 WL 1933260, at *5 (3d Cir. Apr. 22, 2020).

## The Court Cannot Rely on Averages Without a "Rigorous Analysis"

- The Third Circuit found that plaintiffs' model "**fail[ed] to account for individual negotiations** or the **effect of [the brand manufacturer's] Contracting Strategy** on each Direct Purchaser."

- It held that **"the District Court abused its discretion when it *assumed, absent a rigorous analysis*, that averages are acceptable."**

  - Instead, the district court should have "address[ed] the multi-leveled microeconomic analysis of what each Defendant would or would not have possibly done in the but-for world."

- The Third Circuit noted that ***averages are acceptable only "where they do not mask individualized injury,"*** and it vacated the district court's grant of class certification and remanded for further analysis.[1]

---

1  *Id.* at *5–6 (emphasis added).

## Superiority

- Considering the Rule 23(b)(3) factors regarding predominance and superiority make clear that **a class action is _not a superior method_** for litigating plaintiffs' claims.

  - Given the size of the claims at stake, **individual claimants have a strong interest** in controlling the prosecution of separate actions.

  - At least seven members of the proposed class **are already pursuing litigation _separately_** from the DPPs.

  - The JPML has centralized litigation of similar claims in this forum.

  - Managing a class action will introduce difficulties given the need for **individualized inquiries**.

# Adequacy & Typicality

## Adequacy & Typicality

- The three named plaintiffs *are not adequate class representatives* or are *not typical of the class*.

  - **Rochester Drug Cooperative, Inc.** has a conflicting duty to its creditors, including Defendants, and a history of dishonest criminal conduct.

  - **Frank W. Kerr Co.** is a shell company lacking independence from class counsel.

  - **Cesar Castillo, Inc.** did not buy generic ezetimibe until years after generic entry—when it was already a plaintiff in this lawsuit.

## RDC Is Not an Adequate Class Representative

- RDC's **bankruptcy proceeding** creates serious, immediate **conflicts of interest** with the class**.**

- RDC is now a debtor in possession, and thus has a duty to maximize and conserve its own resources.

  - During Chapter 11 proceedings, debtors in possession stand "as a fiduciary" and are "required to place the interests of [their] creditors before [their] own." *In re Massenburg*, 554 B.R. 769, 776 (D. Md. 2016).

- RDC's fiduciary duty to its creditors is in conflict with its duty to actively promote the interests of other class members in the litigation.

## RDC Is Not an Adequate Class Representative

- RDC also has a duty *to Defendants*.

- RDC has disclosed that Merck is its **fourth largest unsecured creditor**, and that RDC owes Merck approximately **$5 million**; RDC owes Glenmark over $150,000.

- Defendants now have a **unique defense** against RDC—that any recovery by RDC should be set off against its debt to Defendants.

# RDC Is Not an Adequate Class Representative



A trustee in bankruptcy or debtor in possession "has a duty to seek to maximize the value of his claim, and this duty may collide with his fiduciary duty as class representative . . . to represent all members of the class equally."

*Dechert v. Cadle Co., 333 F.3d 801, 803 (7th Cir. 2003).*



Where defendant had the largest unsecured claim against the bankrupt entity, the Trustee's "duties to the creditors of the Estate would collide jarringly with his duties to the members of the class.  This is because, as Trustee of the Estate, [Trustee] would have an obligation to represent the interests of [Defendant], as a creditor of the Estate . . . at the same time, as a class representative, [Trustee] would have a duty to the class to prosecute the instant claims *against"* the Defendant.

*In re Merrill Lynch & Co., Inc. Research Reports Securities Litig., 375 B.R. 719, 727 (S.D.N.Y. 2007).*

## RDC Is Not an Adequate Class Representative

- RDC's bankruptcy is the culmination of years of **legal and financial struggles.**

  - RDC and two of its top executives were charged with felonies for their role in the opioid epidemic, including conspiracy to defraud the United States.

  - RDC agreed to pay $20 million as a fine, yet defaulted on the payment schedule in less than a year from entering the deferred prosecution agreement.

- RDC's legal and financial problems and criminal conduct raise concerns that it will be distracted or ill-suited to serve in a position of trust.

38

# FWK Is Not an Adequate Class Representative

- FWK is a **litigation vehicle** formed only for "the purposes of pursuing antitrust claims pursuant to the assignment that [FWK] obtained from Frank Kerr in bankruptcy."

  - FWK was created by attorneys at Vanek Vickers & Masini P.C. and is owned by a longtime friend of Joseph Vanek (counsel for FWK in this case).

- The District of Massachusetts held that FWK was not an adequate class representative in an antitrust pharmaceutical case due to the "**close relationship between FWK and class counsel.**"

Source: Deposition of Thomas L. Kolschowsky at 22:7–18; *In re Intuniv Antitrust Litig.*, 2019 WL 4645502, at *7-8 (D. Mass. Sept. 24, 2019); Deposition of Michael Stahelin at 10:1–2, 45:20–46:5, 70:10–73:4.

# FWK Is Not an Adequate Class Representative



- "FWK has no employees, expenses, or assets aside from its antitrust claims, and its only revenue comes from settling lawsuits."

- The "sole member of FWK" is a "friend and business partner" of "class counsel Joseph M. Vanek."

- "FWK's purchase of Frank W. Kerr's antitrust claims was financed in large part with $300,000 in loans made . . . by Mr. Vanek and attorneys at his law firms . . . The interest rate on the loans was below prevailing inflation expectations at the time they were made."

- "Considering the close relationship between FWK and class counsel and the Court's assessment that FWK is not engaged in meaningful supervision of this case, the Court is unable to conclude th[at] FWK has shown that it is an adequate representative plaintiff."

*In re Intuniv Antitrust Litig., 2019 WL 4645502, at \*7-\*8 (D. Mass. Sept. 24, 2019).*

## CCI Is Not an Adequate Representative/Has Atypical Claims

- CCI's claims are **atypical** and it is **subject to unique defenses**.

  - CCI is essentially a brand-only purchaser: it purchased only a small quantity of generic ezetimibe, years after generic entry, and only after filing this lawsuit.

  - It received higher discounts on its brand purchases *before* generic entry than *after* generic entry.  Therefore, it is likely uninjured.

  - CCI admits that "Zetia was a more profitable drug for Castillo before generic entry rather than after generic entry."

Source: Strombom Decl. ¶¶ 49, 55; CCI Dep. at 78:24-79:4 [Exh. 2 to Dusseault Decl.].

# CCI Is Not an Adequate Representative/Has Atypical Claims



## CCI Is Not an Adequate Representative/Has Atypical Claims

- Even if CCI is not excluded from the class for DPPs' inability to demonstrate that it was injured, its likely lack of injury makes it inadequate and its claim atypical.

- The presence of a "unique defense" is a basis for "holding that plaintiff is not an adequate representative. . . . 'The justification for this principle is that the class representative may become distracted by the presence of a unique defense, causing plaintiff's representation of the class to be placed at a disadvantage.'"  *Shiring v. Tier Techs.*, 244 F.R.D. 307, 315 n.13 (E.D. Va. 2007) (quoting 1–14A Moore's Manual—Federal Practice and Procedure § 14A.25[4]).

## Conclusion

- **Numerosity and Practicability of Joinder**

  - The proposed class is small, and it is clearly practicable to join its members.

  - Plaintiffs should not be permitted to use the class device to leverage the claims of huge wholesalers who have thus far chosen not to bring claims.

- **Predominance and Superiority**

  - Individual inquiries will be required.

  - The class device is not a superior method for adjudicating these claims.

- **Adequacy and Typicality**

  - Each of the proposed class representatives is inadequate or has atypical claims.