# Exhibit 4

# In re Zetia (Ezetimibe) Antitrust Litigation

Case No: 2:18-md-2836

## EPP Class Certification Hearing: Defendants' Presentation on Ascertainability

*May 1, 2020*

Confidential – Subject to Protective Order

1

# EPPs Must Establish That the Class Is Ascertainable

- EPPs agree that "ascertainability" is a prerequisite to the certification of a class in the Fourth Circuit. (EPP Memorandum in Support of Class Certification, Dkt. No. 731, at 15.)

- For a class to be ascertainable, there must be an "administratively feasible way" for the court to "readily identify the class members in reference to objective criteria." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014).

- A plaintiff must establish ascertainability "by a preponderance of the evidence," and "a trial court must undertake a rigorous analysis of the evidence to determine if the standard is met." *Carrera v. Bayer Corp.*, 727 F.3d 300, 306–07 (3d Cir. 2013); *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2015 WL 3623005, at * 6 (E.D. Pa. June 10, 2015).

2

# EPPs Must Establish That the Class Is Ascertainable

- A party's "assurance" to the court that it "expects" to satisfy the requisite elements for class certification is not enough. *Windham v. Am. Brands, Inc.*, 565 F.2d 59, 70 (4th Cir. 1977).

- Nor can a plaintiff meet its burden by "merely propos[ing] a method of ascertaining a class without any evidentiary support that the method will be successful." *Carrera*, 727 F.3d at 306; *Vista Healthplan*, 2015 WL 3623005, at * 6.

3

## Ascertainability Turns on Two Key Questions

1. Is the necessary data available to *identify* class members?

2. Does sufficient data exist to *apply* class exclusions?

4

# EPPs Have Not Established That Sufficient Data Exists To Identify Class Members

- EPPs rely on the following to establish that sufficient data exists to identify class members:

    1. The opinions of Laura R. Craft

    2. PBM declarations from other litigations

- Neither is sufficient to satisfy EPPs' burden of showing by a preponderance of the evidence that data exists to identify all class members.

5

# Craft Asserts That Class Members Can Be Identified Exclusively Through PBM Data

In her initial November 15, 2019 declaration, Craft asserts that *four* different data sources can be relied upon to identify class members:

① PBM Data 
② TPP Data 
③ Pharmacy Data 
④ Form 5500 Data 

**Initial Position**

①: "There are at least three institutional sources of electronic, transaction-specific data for prescription drug sales: pharmacies, PBMs, and the TPPs…"
Craft Decl. ¶ 15

③: "…[I]t is worth noting that the largest retail pharmacies have a parallel set of transaction records containing the same key elements."
Craft Decl. ¶ 21

④: "The Form 5500 data can serve as a cross-check against subpoenaed PBM data."
Craft Decl. ¶ 34

**Revised Position**

②: "[No] expectation about whether the data that's actually physically in [the Named Plaintiffs'] possession is in any way representative of what's available, i.e., available from the PBM."
Craft Dep. at 149:15-20

③: "There is no need to rely on pharmacy data in this case…"
Craft Rebuttal Decl. ¶ 10

④: "…[Form 5500] data is unnecessary."
Craft Rebuttal Decl. ¶ 34

She now opines that *data from PBMs alone* is sufficient.

6

# Craft Is Not An Expert on PBM Data

**1** **Craft is a lawyer with an English literature degree**

> "Q: And I think we've already established that you have a JD degree…And what discipline is your BA in?
> A: English literature if you call that a discipline."
>
> Craft Dep. at 20:20-21:2

**2** **She has never been employed by a PBM**

> "Q: You never worked for a pharmacy benefit manager, correct?
> A: That's true."
>
> Craft Dep. at 21:8-10

**3** **She has not published on PBM data outside litigation**

> "Q: But am I correct that there's nothing specific to PBMs [in the book you published]?
> A: I believe you are correct."
>
> Craft Dep. at 35:14-24

7

# Mr. Dietz Is An Expert on PBM Business Practices



- Sc.B. in Pharmacy, Duquesne University
- Co-founder of Pharmacy Healthcare Solutions, LLC
- Vice President at Pharmacy Healthcare Solutions, Inc.
- Licensed pharmacist (Pennsylvania)

- Member of several industry organizations, including:
  - National Council of Prescription Drugs Programs (NCPDP)
  - National Association of Chain Drug Stores (NACDS)
  - National Community Pharmacists Association (NCPA)
  - Academy of Managed Care Pharmacy (AMCP)
- Extensive experience in PBM contracting, PBM claims adjudication, PBM formulary placement, and PBM invoicing and pharmacy payments. (Dietz Decl. ¶3.)

8

# Craft's Opinion That Data Exists to Identify All Members of the Class Is Pure Speculation

**1** **PBM data *has not* been produced and Craft has not reviewed it**

> "I'm not involved in negotiating the production of data" and
> "I have not reviewed data."
>
> Craft Dep. at 105:2-3; 73:11-12

**2** **Craft has *never gotten this data* in any other case**

> "Q: In any of the cases described in your CV...have you been provided all the data that you needed to actually run this exercise?
> A: ...[T]he answer is no."
>
> Craft Dep. at 159:7-12

**3** **Craft concedes that what she proposes to do is not "standard practice" and she *has never done it before***

> "A: Have I ever collected all of the PBM data necessary to identify all class members in a pharmaceutical class action? No, I have not."
>
> Craft Dep. at 157:18-20
>
> Craft acknowledges it is not "standard practice to collect *all* prescription data from *all* PBMs for a particular case."
>
> Craft Rebuttal Decl. ¶ 3

**4** **She only *speculates* that the data exist and the analysis can be done**

> "I don't actually need to see the data to know the answer to [the] question."
>
> Craft Dep. at 110:19-21

9

# Craft Ignores Significant Obstacles to Identifying Class Members Using PBM Data

- Although she cannot identify them, Craft posits there are **_at least 27,000_** TPPs in the class.

- Data from the top 7 PBMs would not cover all TPPs.
    - *E.g.,* ■■■■■■■■■■■■■■■■■■■■■■■■■■■■
      (■■■■■■■ Dep. at 134-35.)

- EPPs would need to request information from **40+** PBMs.
    - Each PBM has different data retention policies.
    - Individual contracts may preclude or limit disclosure.
    - Multiple diverse PBM processing platforms would need to be harmonized.  Even in harmonizing a much more limited set of non-PBM data Craft made errors.  (Errata to Craft Rebuttal Decl., Dkt. No. 913.)

- NCPDP standards do not eliminate these issues or ensure that data exists to identify class members.

10

# Even If It Exists, Craft Ignores That Obtaining PBM Data Will Require Substantial Litigation

- Express Scripts vigorously resisted producing data *Opana ER Antitrust Litigation*

> "EPPs essentially request that Express Scripts gather and produce an ***inordinate amount of data, and perform quasi-expert services***, to aid EPPs in their motion for class certification. Express Scripts, as a non-party, has no obligation to undertake such a burden. EPPs have not identified, and Express Scripts is not aware of, any case that requires a non-party to produce ***reams of sensitive, proprietary client information*** to aid a party in its efforts to ascertain class members." (Br. at 9 (emphasis added).)

Express Scripts claimed that "EPPs acted in bad faith, by attempting to leverage the burden of producing voluminous data responsive to overly broad and unreasonable document requests, to improperly force non-party Express Scripts into producing a declaration." (Br. at 15.)

11

# The PBM Declarations Do Not Establish That Class Members Can Feasibly Be Identified Using PBM Data

- Declarations from PBM representatives were all prepared in other cases and are not admissible in this case. (Decl. of M. Buchman in Support of EPPs' Motion, Dkt. No. 731, Exs. 15-20.)

    "With respect to Plaintiff's citation to a declaration in another case, documents filed in other cases are of no assistance to Plaintiff, as the Court cannot take judicial notice of the truth of facts set forth in filings in other cases."

    *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

- In any event, none of them address whether those PBMs have data concerning Zetia / ezetimibe for the entire class period.

- Even if they did, EPPs have not produced declarations for 3 of the top 7 PBMs, much less from any of the smaller PBMs.

12

# EPPs Have Not Met Their Burden of Demonstrating That Class Members Could Feasibly Be Identified

- EPPs must "***clearly establish*** that there is a method by which class membership could be clearly ascertained." *Harris v. Rainey*, 299 F.R.D. 486, 495 (W.D. Va. 2014) (emphasis added).

- EPPs have not established that PBM data (or other data) exists to identify the members of the class. Instead, they merely "assure" the court that it does without having looked at any data or ever having done the analysis before in any case. *See Windham*, 565 F.2d at 70; *Carrera*, 727 F.3d at 306.

- Even if one assumes that the necessary data for Zetia / ezetimibe exists in the hands of the 40+ PBMs, there is insufficient evidence that it can feasibly be obtained or that class members could be identified using such data without "engaging in a detailed review and analysis." *Dykes v. Portfolio Recovery Assocs., LLC*, 2016 WL 346959, at *5 (E.D. Va. Jan. 28, 2016) (denying class certification).

13

# EPPs Fail to Establish That Adequate Data Exists to Apply Their Multiple Class Exclusions

- EPPs' class definition has **_11 exclusions_**. Among them are:

  - Federal/state government plans except cities, towns, municipalities, or counties with self-funded plans.
  - Fully-insured insurance plans.
  - Plans that used Optum as their PBM.
  - Emblem Part D Plans

- There has been no evidence offered that the PBM data Craft surmises exists will allow these exclusions to be applied.

- Even if it did, applying such exclusions requires a "complicated and individualized process" that renders the class not ascertainable. *See Spotswood v. Hertz Corp.*, 2019 WL 498822 at *6 (D. Md. Feb. 7, 2019); *Vista Healthplan*, 2015 WL 3623005, at *11.

14

# Craft Ignores the Complexity and Individual Analysis Needed to Exclude Non-Class Members

**1**    Over **10,000** government plans may meet the proposed class definition and each will need to be individually analyzed. (Dietz Decl. ¶ 78.)

- Craft fails to acknowledge that she will need to analyze each one in order to *exclude* federal and state entities and *include* local and municipality entities.
- Craft admits that this analysis cannot be done based on plan names, so one would need to "separately ask" the PBMs to create a file. (Craft Dep. at 165-166.)

**2**    There are more than **10,000** plans where the funding type (self-funded vs. fully insured) cannot be easily determined from PBM data. (Dietz Decl. ¶ 66.)

- Craft admits that PBM data is not "required" to identify whether a plan is fully insured. (Craft Dep. at 193.)
- Instead, Craft initially stated that plan funding can be determined by "health plan IDs" and "group IDs" available on pharmacy ID cards.
- Her new reliance on BIN/IIN and PCN numbers from the NCPDP guidelines does not allow her to distinguish between plans with different funding arrangements.

**3**    There are more than **4,000** mixed-funded plans for which Craft's opinion does not account. (Dietz Decl. ¶ 60.)

15

# Craft Ignores the Complexity and Individual Analysis Needed to Exclude Non-Class Members

**4** OptumRx's acquisition of multiple PBMs during the proposed class period requires individual analysis. (Hughes Supp. Decl. ¶ 20, Fig. 1.)

- The carve-out of Optum TPPs injects questions as to whether clients of the entities acquired by Optum (e.g., ██████████████████) are excluded. (Id. ¶ 20.)
- This exclusion requires highly individualized analysis of multiple data sources in order to identify which TPPs had Optum as their PBM and for what time periods. (Id.)
- Craft's only response is that the identity of the PBM is an "indelible field in the data" but she cites nothing for that proposition and it is not among the NCPDP fields she identifies as standard. (Craft Supp. Decl. ¶ 38; Craft Decl. ¶ 27.)

**5** Emblem's partnership with the City of New York requires detailed analysis with respect to class membership (Hughes Supp. Decl. ¶ 22.)

- In light of the proposed exclusion of Emblem, complex individualized analysis would need to be undertaken to determine if TPPs that switched to Emblem as a result of this partnership are included or excluded from the class and for what time period. (Id.)
- Craft claims that she can perform this analysis by a "straightforward data query," but does not identify the data to be queried or whether it is available. (Craft Supp. Decl. ¶ 39.)

16