UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

In re:
ZETIA (EZETIMIBE) ANTITRUST
LITIGATION

MDL NO. 2:18md2836

## MEMORANDUM ORDER

This matter comes before the court on the Direct Purchaser Plaintiffs' ("DPPs")[1] Motion for Class Certification and accompanying Memorandum in Support, ECF Nos. 735 and 736, filed on November 18, 2019, and the DPPs' Motion to Modify Their Class Definition and accompanying Memorandum in Support, ECF Nos. 812 and 813, filed on January 17, 2020. On January 20, 2020, the Glenmark Defendants[2] and Merck Defendants[3] filed an Opposition to the Motion for Class Certification. ECF No. 819. On February 20, 2020, the DPPs filed a Reply. ECF No. 871. On April 3, 2020, the Glenmark Defendants and Merck Defendants filed a Supplemental

---

[1] The Direct Purchaser Plaintiffs consist of FWK Holdings, LLC; Rochester Drug Co-Operative, Inc.; and Cesar Castillo, Inc.

[2] The Glenmark Defendants consist of Glenmark Pharmaceuticals, Ltd. and Glenmark Pharmaceuticals Inc., USA, the latter incorrectly identified as Glenmark Generics Inc., USA.

[3] The Merck Defendants consist of Merck & Co., Inc.; Merck Sharp & Dohme Corp.; Schering-Plough Corp.; Schering Corp.; and MSP Singapore Co. LLC.

Brief in Opposition to the Motion for Class Certification. ECF No. 904.

On February 25, 2020, the Motion for Class Certification was referred to United States Magistrate Judge Douglas E. Miller pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), to conduct necessary hearings and to submit to the undersigned district judge proposed findings of fact, if applicable, and recommendations for the disposition of the Motion.[4] ECF No. 888. The Magistrate Judge held a hearing on the Motions on May 1, 2020. ECF No. 927.

On June 18, 2020, the Magistrate Judge submitted a Report and Recommendation ("R&R"). ECF No. 967. The R&R recommended that the court grant the DPPs' Motion to Modify Their Class Definition, ECF No. 812, and grant in part the DPPs' Motion for Class Certification, ECF No. 735, by further amending the modified class definition to exclude entities that purchased only generic Zetia from Par. R&R at 92-93. The R&R recommended that the court certify a class of thirty-five direct purchasers. Id. at 93. The R&R advised the Defendants of their right to file written objections to the findings and recommendations made by the Magistrate Judge within fourteen (14) days from the date of service of the R&R on the objecting party. Id. The Merck Defendants and Glenmark

---

[4] The Motion to Modify Their Class Definition was separately referred on February 18, 2020.

Defendants filed Objections to the R&R on July 2, 2020, ECF Nos. 995 and 996 ("Objs."), and the DPPs filed a Response on July 16, 2020, ECF Nos. 1002 and 1006 ("Resp."). On July 29, 2020, the DPPs filed a Notice of Filing of Supplemental Authority informing this court of a recent ruling of the United States Bankruptcy Court for the Western District of New York in the bankruptcy proceeding for proposed DPP class representative Rochester Drug Co-Operative, Inc.[5] ECF No. 1017. On August 7, 2020, the Merck Defendants filed a Response to the Notice as well as a Motion for Leave to File the Response. ECF Nos. 1028, 1028-2.

These matters are now ripe for review. Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the court, having reviewed the record in its entirety, hereby makes a de novo determination of those portions of the R&R to which the Defendants have specifically objected. See Fed. R. Civ. P. 72(b). The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

The Objections focus on the R&R's conclusions and analysis with respect to various elements of the Rule 23(a) and Rule

---

[5] See infra note 11.

3

23(b)(3) class certification inquiry.[6] The court will address each objected-to element in turn.

## I. Numerosity

### A. Number of Class Members

The Defendants object to the R&R's recommendation that the court certify a DPP class of thirty-five members. Objs. at 13-19. Generally, class sizes of forty or more are considered sufficiently numerous to satisfy Rule 23(a)(1)'s numerosity requirement, while class sizes below twenty members are considered insufficiently numerous to satisfy Rule 23(a)(1). See R&R at 8-9 (collecting cases). The R&R found the proper number of class members in this case to be thirty-five, squarely in the "gray area" between these two bookends. Id. at 32. The Defendants object to several steps in this calculation, specifically that the R&R separately counted various subsidiaries; that the R&R improperly considered "brand-only purchasers"; and that the R&R improperly counted other "idiosyncratic purchasers." Objs. at 13-18.

These same arguments were raised in the Defendant's Opposition to the Motion for Class Certification, ECF No. 819, and were individually addressed in the R&R. R&R at 8-32. While the

---

[6] There were no objections to the R&R's recommendation with respect to the DPPs' Motion to Modify Their Class Definition, ECF No. 812. The Glenmark Defendants and Merck Defendants had previously notified the court that they did not oppose that Motion. ECF No. 842.

4

Defendants argue that the R&R ignored the Defendants' evidence regarding the "brand-only purchasers" and "idiosyncratic purchasers," <u>see</u> Objs. at 15, 17, 18, each piece of evidence that they accuse of being ignored was, in fact, considered or explicitly cited to in the R&R's discussion on these points. <u>See, e.g.</u>, R&R at 16 & n.10, 24, 30.

The court agrees with the R&R's treatment of these arguments, including its consideration of the specific evidence raised in the Objections. The court also agrees with the R&R's conclusion that the DPP class, properly calculated, consists of thirty-five members. Because this number lies in the "gray area" of the Rule 23(a)(1) analysis, the court must make a fact-specific inquiry into the practicability of joinder.

### B. Numerosity Factors

For cases in the "gray area," courts closely scrutinize the practicability of joinder using a series of well-established factors. <u>See, e.g.</u>, <u>Ansari v. New York Univ.</u>, 179 F.R.D. 112, 114-15 (S.D.N.Y. 1998) (listing factors: judicial economy, geographic dispersion, ability and motivation to file individual suits, financial resources, and potential for relief to have a prospective effect on class members). The Defendants object to the analysis in the R&R of several of these factors. Specifically, the Defendants object to the analysis of judicial economy, particularly under <u>In re Modafinil Antitrust Litig.</u>, 837 F.3d 238 (3d Cir. 2016); the

5

conclusion that the DPPs' ability and motivation to litigate outside the class action context "slightly" favors class certification; and the weight given to the geographic dispersion factor. Objs. at 5-13. The Defendants also argue that the financial resources of the class members weigh heavily against a finding that joinder is impracticable. Id. at 12.

With respect to the judicial economy factor, the court agrees with the R&R's finding that judicial economy favors class certification. As a preliminary matter, the Defendants mischaracterize several aspects of the analysis on this point. Contrary to the Defendants' characterization, the R&R did not rely on the "sunk costs" of completed discovery. See Objs. at 6-7. Instead, the R&R appropriately used the existing record of discovery disputes to anticipate the prospective costs of further discovery.[7] Likewise, the R&R did not ignore the possibility that the case would proceed via joinder rather than as "separate lawsuits with separate trials," as claimed by the Defendants. See id. at 5-6. Rather, the R&R focused on the possibility that defendants would proceed via joinder, spending just a single

---

[7] R&R at 35-36 ("If history is any indication, the court will again be called to wade into discovery disputes [if the case proceeds via joinder]."); see In re Modafinil Antitrust Litig., 837 F.3d 238, 257 (3d Cir. 2016) ("[T]he District Court is free to rely on its superior understanding of how the case has proceeded to date for the purpose of determining whether the class mechanism would have actually been a substantially more efficient use of judicial resources than joinder . . . .").

paragraph on the possibility that there could be some separate trials.[8] In this way, the R&R's analysis is not comparable to the district court's in Modafinil, where the district court erred by "consider[ing] any lengthy period following the filing of a putative class action as weighing in favor of finding numerosity," and failed to give weight to potential efficiencies in future discovery, if the case proceeded via joinder instead of as a class action. Modafinil, 837 F.3d at 256. Accordingly, the Defendants' reliance on Modafinil is inapt.[9] The court agrees with the analysis in the R&R on the judicial economy factor, and similarly concludes that it weighs in favor of a finding that joinder would be impracticable.

The Defendants also object to the portions of the R&R discussing the geographic dispersion of the class members and their ability and motivation to join as plaintiffs, and relatedly argue that the class members' financial resources weigh heavily against class certification. Objs. at 7-13. The court agrees with the R&R

---

[8] R&R at 36 (discussing the possibility that "declining to certify the class could potentially result in multiple individual trials," even assuming most defendants proceeded by joinder (emphasis added)).

[9] In any event, the Third Circuit's statements in Modafinil are contrary to those of other courts, including the Fourth Circuit. See Ballard v. Blue Shield of S. W. Va., Inc., 543 F.2d 1075, 1080 (4th Cir. 1976) (considering the effects of repetitive discovery "if the parties engage in individual suits"); Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993) (considering issues of "judicial economy arising from the avoidance of a multiplicity of actions"); R&R at 41 n.24 (collecting sources).

that the ability and motivations of the class members to proceed via joinder weigh "slightly" in favor of a finding that joinder is impracticable. R&R at 37. The court agrees with the R&R and with the Defendants that the DPPs offered little case-specific and member-specific evidence that class members would not join the suit on their own. Id. at 41; Objs. at 7. However, the court determines that the R&R correctly balanced the relatively low quantity of specific evidence against the high standard in Rule 23(a)(1), which requires that the class must be so numerous that joinder of all members is impracticable. Ultimately, the R&R determined that the DPPs' expert testimony that many class members would not find it financially worthwhile to pursue their claims outside of a class action, as well as evidence from other cases regarding class members' motivation to pursue claims on their own, were enough to tip the scales "only slightly" in favor class certification. R&R at 37. The court fully agrees with the R&R's conclusion on this factor, including the low weight given to it in the overall analysis. Id. Moreover, the Defendants' Objections were fully considered by the R&R, and the court agrees with the treatment of those points therein. See, e.g., id. at 41 (discussing the lack of evidence on certain aspects of the negative value claims argument); id. at 40 (analyzing the text of Rule 23(a)(1)); id. at 44 (discussing the limited case-specific evidence of expected retaliation against class members).

Regarding the geographic dispersion of class members, the Defendants do not dispute that this factor weighs in favor of class certification and against the practicability of joinder. Objs. at 12. Instead, the Defendants object that this factor should be given relatively lower weight, because the class members are all corporations who would be less encumbered by the prospect of litigating the case from afar. Id. Notably, however, the R&R consistently says only that geographic dispersion "weigh[s] in favor" of a finding of impracticability, and does not assign any particularly great weight to it. R&R at 34. The court agrees with the R&R that geographic dispersion weighs in favor of an impracticability finding in this case, but concludes that it should be given relatively lower weight than the other factors.

In the Objections, the Defendants repeatedly emphasize the financial resources of the plaintiffs, arguing that "this factor weighs heavily against a finding that joinder is impracticable here." Objs. at 12 (emphasis in original). While the Defendants are correct that the DPP class consists of large and sophisticated businesses, the court agrees with the R&R that this factor must be viewed in context. See R&R at 43 ("These arguments ignore . . . the text of Rule 23(a)(1) [and] the aim of Rule 23 itself, namely 'to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.'" (quoting Amchem Prods., Inc., v.

9

Windsor, 521 U.S. 591, 617 (1997))). Even well-financed litigants might not pursue their claims, if those claims have a negative expected value. In re Niaspan Antitrust Litig., 397 F. Supp. 3d 668, 678 (E.D. Pa. 2019) ("To assess whether bringing a claim is economical, a claimant must consider not only the trebled value of the maximum possible recovery, but also the possibility that a lawsuit will result in a less favorable outcome."); see ECF No. 875-1 ¶ 44 (conclusion by DPPs' expert witness that over a third of the DPPs would not find it economically worthwhile to pursue their claims individually). And while the Defendants are surely correct that there would be considerable cost efficiencies through joinder, see Objs. at 12, that point tends to undercut the importance of the financial resources factor, because it suggests that the financial resources of most plaintiffs might not matter much at all. On balance, the court agrees that "this financial factor does not significantly inform the practicability assessment." R&R at 44.

The court agrees with the R&R's conclusion that judicial economy is the most persuasive of the numerosity factors, and that geographic dispersion and the class members' ability and motivation to bring individual suits also weigh in favor of class certification. Accordingly, the court adopts the R&R's analysis and finds that "the class is so numerous that joinder of all members is impracticable" under Rule 23(a)(1).

## II. Adequacy and Typicality of Class Representatives

The Defendants also challenge the R&R's conclusion that the three proposed class representatives, FWK Holdings, LLC ("FWK"), Cesar Castillo, Inc. ("CCI"), and Rochester Drug Co-Operative, Inc. ("RDC"), have claims and defenses that are "typical of the claims and defenses of the class," and that the class representatives "will fairly and adequately protect the interests of the class." Objs. at 19-28; see FED. R. CIV. P. 23(a)(3), (4).

### A. RDC

The Defendants object to the R&R's conclusion that RDC would adequately represent the interests of the class, arguing that its newly resolved criminal prosecution and recent Chapter 11 bankruptcy filing raise questions about its integrity and create an irreconcilable conflict of interest between its creditors and the class members. Objs. at 20-24. These points were squarely considered in the R&R, and the court agrees with the analysis therein. R&R at 59-73. In sum, the Defendants' argument about RDC's credibility in light of its criminal conduct is contradicted by the experiences of this court throughout this litigation, which far outweigh the potential inferences to be made from the unrelated criminal matter.[10] With respect to RDC's bankruptcy filing, the

---

[10] See Gortat v. Capala Bros., 257 F.R.D. 353, 364 (E.D.N.Y. 2009) (stating that a court may not find a potential class representative inadequate "for conduct that does not touch upon

only actual conflicts identified thus far are minor. See id. at 75 (calculating that the Defendants' claims on the estate are less than 5% of RDC's total liabilities). The court agrees with the analysis in the R&R of the Defendants' main cases on the bankruptcy issue, including that this case is factually distinguishable on several relevant grounds. See id. at 66-73 (carefully analyzing Dechert v. Cadle Co., 333 F.3d 801 (7th Cir. 2003), and In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation, 375 B.R. 719 (S.D.N.Y. 2007)). Finally, while the Defendants are certainly correct that these issues are marginally more concerning in combination than in isolation, see Objs. at 20 (arguing that the deferred prosecution and bankruptcy filing "have cumulative effect"), the court views them as raising largely separate, non-overlapping concerns. Even in combination, these two issues are not fatal to RDC's adequacy as class representative, particularly in light of RDC's performance thus far throughout this lengthy litigation.[11]

---

the central issues in this litigation"); R&R at 61 (collecting sources).

[11] The Defendants have seized upon RDC's bankruptcy filing to raise an additional reason why RDC is not an adequate class representative, namely that it may be uniquely subject to a "setoff defense," whereby Merck could offset a judgment against it in this litigation by the amount owed to it from the bankruptcy proceeding. See Objs. at 22. As of the filing of this Memorandum Order, Merck has abandoned its effort to amend its Answer to assert a setoff defense, after the court overseeing RDC's bankruptcy determined that the automatic stay applied to Merck's ability to pursue a

## B. FWK

The Defendants again raise their argument that FWK is an inadequate representative because it is a "litigation vehicle" and "shell company" that is controlled entirely by the class counsel. Objs. at 24-26. The R&R considered these points, ultimately crediting the testimony of FWK's manager regarding his independence from class counsel and concluding that the manager demonstrated "active involvement and familiarity with this litigation." R&R at 58. The Magistrate Judge's assessment of FWK's independence was the key factor in his conclusion that FWK meets the adequacy requirement. Id. at 59. The Defendants' other quibbles with the R&R's discussion, such as that FWK's finances are intertwined with class counsel's, do not negate the R&R's core conclusion on this matter. See Objs. at 26. The court agrees with the R&R's thorough treatment of this issue and its careful factual findings, including credibility findings, and concludes that FWK is an adequate class representative under Rule 23(a).

## C. CCI

Finally, the Defendants object that CCI fails the typicality requirement, primarily because it lacked any antitrust injury, and

---

setoff defense. See ECF No. 1028 at 2. Moreover, courts do not automatically disqualify a class representative because it may be subject to a unique defense, including a setoff defense, if the defense is unlikely to become a focus of the class representative's litigation efforts in the case. See, e.g., Carbajal v. Capital One, 219 F.R.D. 437 (N.D. Ill. 2004).

add that this lack of injury would make CCI susceptible to a
"unique defense" not shared by the other class members. Objs.
at 27; see FED. R. CIV. P. 23(a)(3) (requiring that the
representative's claims or defense be "typical" of those of the
class). The court disagrees. As the R&R points out, CCI alleges
the same injury as the other class members and therefore shares
the same litigation interests as the rest of the class. R&R at 51.
Contrary to the Defendants' assertions, the factual record before
the court does not indicate otherwise. The Defendants focus on
deposition testimony that they claim constitutes an "admission" of
lack of injury by CCI. See Objs. at 27; ECF No. 823-2 at 8-9. This
single sentence about CCI's profitability with regard to branded
Zetia cannot be considered conclusive evidence that CCI did not
suffer antitrust impact for reasons of customer demand and generic
availability that were discussed in that same deposition. See ECF
No. 875-5 at 3-7. Furthermore, to the extent that CCI's alleged
lack of injury makes it susceptible to a unique defense not shared
by other class members, the court agrees with the R&R that there
is no reason to conclude that this factor would so overwhelm the
proceedings as to "skew the focus of the litigation" and
"preoccup[y]" CCI from its duties as class representative. Meijer,
Inc. v. Warner Chilcott Holdings Co. III, 246 F.R.D. 293, 302
(D.D.C. 2007); see State of Alaska v. Suburban Propane Gas Corp.,
123 F.3d 1317, 1321 (9th Cir. 1997). For these reasons, the court

finds that CCI, as well, meets the qualifications for class representative under Federal Rule of Civil Procedure 23(a).

### III. Predominance

Finally, the Defendants object to the R&R's findings under Rule 23(b)(3) that common questions predominate over questions affecting only individual class members with regard to the merits element of whether the plaintiffs suffered antitrust impact. Objs. at 28-30. Specifically, the Defendants contend that the R&R ignored the Defendants' evidence showing that individualized, plaintiff-specific analyses of antitrust injury were necessary in this case, rather than an approach taking account of industry-wide and class-wide averages, as was used in the R&R and by the DPPs. Id.

It is a common practice to use averages to determine whether class members suffered a common antitrust injury in cases such as this one, even if the damages calculation, which occurs later in the proceedings, will require a more individualized inquiry. See R&R at 83 (collecting cases). The Defendants center this section of the Objections on the recent case In re Lamictal Direct Purchaser Antitrust Litig., 957 F.3d 184 (3d Cir. 2020), and use that case to illustrate that individualized evidence is sometimes required at the injury stage as well. Objs. at 30. However, Lamictal involved evidence of "nuance[s]" in that particular market that were ignored by the district judge and may have

15

defeated a predominance finding. 957 F.3d at 194. Without such evidence, there is no claim under Lamictal.[12]

This court agrees with the R&R that the Defendants have not provided convincing evidence that individualized issues will predominate over common ones with regards to the injury element. The evidence raised in the Objections does tend to show that several aspects of the pricing and purchasing process for Zetia were different for each plaintiff. But the fact that the amount of injury may have varied does not mean that the plaintiffs did not suffer common injury or that the individualized inquiries will predominate over common ones.[13] The Defendants have not pointed to any other evidence to contradict the significant evidence

---

[12] Contrary to the Defendants' assertions, this does not shift the burden of proof from the plaintiffs to the defendants, but rather requires the court to decide the issue on the basis of all of the "evidence and arguments presented." See In re Lamictal Direct Purchaser Antitrust Litig., 957 F.3d 184, 191 (3d Cir. 2020); Objs. at 29-30. This case involves extensive evidence showing that averages are appropriate here, including internal models from the Defendants. R&R at 18-22, 80-81. Moreover, the market structure in this case is fundamentally different from the one at issue in Lamictal in ways that support the evidentiary approach employed in the R&R, as explained by the Magistrate Judge. Id. at 83-86.

[13] See, e.g., Messner v. Northshore Univ. HealthSystem, 669 F.3d 802, 819 (7th Cir. 2012) (stating that Rule 23(b)(3) does not "require[e] uniformity of nominal price increases within and across contracts"); In re Nexium (Esomeprazole) Antitrust Litig., 296 F.R.D. 47, 57-58 (D. Mass. 2013) ("The Defendants' focus on the variations in purchase price among the putative class members directly challenges the Direct Purchasers' damages model, but it does not weaken their assertion of common impact." (emphasis added)).

supporting a predominance finding, and the court finds no reason why this evidence, including the averages-based evidence pointed to by the DPPs and in the R&R, should not be considered in this case. In sum, on the basis of the evidence and arguments presented, the court finds that the Rule 23(b)(3) predominance requirement is met with respect to antitrust impact.

## VI. Conclusion

The court, having reviewed the record in its entirety, having examined the Objections to the R&R, and having made de novo findings with respect thereto, hereby **OVERRULES** the Defendants' Objections, ECF No. 995. The court **ADOPTS AND APPROVES IN FULL** the findings and recommendations set forth in the Magistrate Judge's thorough and well-reasoned R&R, ECF No. 967. Accordingly, the court **GRANTS** the DPPs' Motion to Modify Their Class Definition, ECF No. 812, and **GRANTS IN PART** the DPPs' Motion for Class Certification, ECF No. 735, by further amending the modified class definition to exclude entities that purchased only generic Zetia from Par, in accordance with the court's previous orders. The court certifies a class of thirty-five direct purchasers, as delineated in the R&R and discussed in this Memorandum Order.[14]

The Clerk is **DIRECTED** to send a copy of this Memorandum Order to counsel for all parties.

---

[14] See supra Part I.A; R&R at 10-32.

IT IS SO ORDERED.

/s/
Rebecca Beach Smith
Senior United States District Judge

Rebecca Beach Smith
Senior United States District Judge

August 21, 2020