UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

In re:
ZETIA (EZETIMIBE) ANTITRUST
LITIGATION

MDL NO. 2:18md2836

<u>MEMORANDUM ORDER</u>

This matter comes before the court on the End-Payor Plaintiffs' ("EPPs'") Motion for Class Certification and Appointment of Class Representatives and Class Counsel, ECF No. 729, and EPPs' Motion for Leave to Modify and Limit Their Class Definition, ECF No. 809.

## I. Background

EPPs[1] filed the Motion for Class Certification on November 18, 2019, and the Motion to Modify the Class Definition on January 15, 2020. ECF Nos. 729, 809. On January 20, 2020, the Glenmark and Merck Defendants[2] filed an Opposition to the Motion for Class

---

[1] The named End-Payor Plaintiffs consist of the City of Providence, Rhode Island; International Union of Operating Engineers Local 49 Health and Welfare Fund; Painters District Council No. 30 Health & Welfare Fund; Philadelphia Federation of Teachers Health & Welfare Fund; Sergeants Benevolent Association Health & Welfare Fund; The Uniformed Firefighters' Association of Greater New York Security Benefit Fund; The Retired Firefighters' Security Benefit Fund of the Uniformed Firefighters' Association; and United Food and Commercial Workers Local 1500 Welfare Fund.

[2] The Glenmark Defendants consist of Glenmark Pharmaceuticals, Ltd. and Glenmark Pharmaceuticals Inc., USA, the latter incorrectly identified as Glenmark Generics Inc., USA. The Merck Defendants consist of Merck & Co., Inc.; Merck Sharp & Dohme Corp.; Schering-Plough Corp.; Schering Corp.; and MSP Singapore Co. LLC.

Certification, ECF Nos. 829, 833, and EPPs filed a reply on February 20, 2020, ECF Nos. 885, 886. On February 4, 2020, the Glenmark and Merck Defendants filed an Opposition to the Motion to Modify the Class Definition, ECF Nos. 854, 857, and EPPs filed a reply on February 20, 2020, ECF Nos. 884, 887.

On February 25, 2020, the Motion for Class Certification was referred to United States Magistrate Judge Douglas E. Miller pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b), to conduct necessary hearings and to submit to the undersigned district judge proposed findings of fact, if applicable, and recommendations for the disposition of the motion. ECF No. 888. The Motion to Modify the Class Definition was separately referred on February 21, 2020. The Magistrate Judge held hearings on the motions on May 1, 2020, and July 7, 2020. ECF Nos. 931, 1014. EPPs filed a Supplemental Brief in Support of their Motion for Class Certification and Motion to Modify the Class Definition on May 15, 2020, ECF Nos. 945, 949, and Defendants filed a Supplemental Brief in Opposition on May 22, 2020, ECF Nos. 954, 956.

On August 14, 2020, the Magistrate Judge submitted a Report and Recommendation ("R&R"). ECF No. 1094. The R&R recommends that the court grant EPPs' Motion for Class Certification, ECF No. 729, and grant EPPs' Motion for Leave to Modify Their Class Definition, ECF No. 809. R&R at 83-84.

The R&R advised Defendants of their right to file written objections to the findings and recommendations made by the Magistrate Judge within fourteen (14) days from the date of service of the R&R on the objecting party. Id. at 84. Defendants filed Objections to the R&R on August 28, 2020, arguing that EPPs cannot satisfy the predominance and ascertainability requirements of Federal Rule of Civil Procedure 23 even with EPPs' modified class definition. ECF No. 1103. EPPs filed a response on September 11, 2020. ECF No. 1129. On April 23, 2021, the court allowed Defendants to file a supplemental brief in further support of their Objections to the R&R. See ECF Nos. 1258-1261, 1271-1272.

These matters are now ripe for review. Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the court, having reviewed the record in its entirety, hereby makes a de novo determination of those portions of the R&R to which Defendants have specifically objected. See Fed. R. Civ. P. 72(b). The court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to him with instructions. 28 U.S.C. § 636(b)(1).

## II. Analysis

Defendants make two overarching objections to the R&R.[3] First, they argue that the class should not be certified because

_____

[3] After reviewing the R&R, the court agrees with and adopts the Magistrate Judge's factual findings, reasoning and conclusions with respect to all issues for which there were no objections, including the

3

EPPs have not shown by a preponderance of the evidence that issues that are common to the class will predominate over individual ones. Second, they argue that EPPs have not provided a reliable and administratively feasible method for ascertaining class membership. For the reasons below, the court rejects the Defendants' objections and affirms the R&R.

### A. Predominance

For the proposed class to be certified, EPPs must prove by a preponderance of the evidence that questions "of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). To satisfy this requirement, EPPs must specifically demonstrate that they can prove violation of antitrust laws, injury, and measurable damages through common proof on a classwide basis. See In re Restasis Antitrust Litig., 335 F.R.D. 1, 14 (E.D.N.Y. 2020). However, "individual questions need not be absent in order to certify a class," In re Namenda Direct Purchaser Antitrust Litig., 331 F. Supp. 3d 152, 204 (S.D.N.Y. 2018), as long as "common questions "predominate over any questions affecting only individual [class] members," Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 469 (2013) (alteration in original).

---

required numerosity, typicality, commonality, and adequacy findings under Federal Rule of Civil Procedure 23(a). See R&R at 9-18.

4

Defendants argue that the proposed class does not satisfy the predominance requirement as to classwide proof of injury because the class includes "thousands of uninjured class members" for which EPPs "offer no mechanism of identifying . . . without . . . individual inquiries." Defs.' Objs. at 7. They argue that the R&R mistakenly arrived at the opposite conclusion by (1) applying the wrong legal standard to assess injury and (2) erroneously using anecdotes and averages to mask large numbers of uninjured members.

## 1. **Nexium** Standard

Defendants first argue that in determining whether class members suffered injury, the R&R "wrongly relied on the Nexium single overcharge standard." Defs.' Objs. at 7. Under that standard, "antitrust injury occurs the moment the purchaser incurs an overcharge, whether or not that injury is later offset." In re Nexium, 777 F.3d 9, 27 (1st Cir. 2015). Defendants argue that the court should instead assess injury on a net basis. See Defs.' Objs. at 11.

After reviewing the record and case law, the court concludes that the Magistrate Judge properly rejected the Defendant's argument. See R&R at 47 (noting that "[t]he overwhelming weight of authority rejects Defendants' position"). Defendants mistakenly assert that "if an EPP was no worse off because of the alleged conduct (or in fact benefitted from it, on net) then it has not been injured by that conduct." Defs.' Objs. at 8. However, in the

5

antitrust context, injury occurs at the moment a single overcharge occurs due to the alleged anticompetitive conduct. <u>Nexium</u>, 777 F.3d at 27; <u>see also</u> <u>Mayor of Baltimore v. Actelion Pharms. Ltd.</u>, 995 F.3d 123, 131 (4th Cir. 2021) (asserting that "each time [pharmaceutical company] sold [branded drug] at a supracompetitive price . . ., it illegally exercised monopoly power . . . thus committing an overt act that caused injury and violated the antitrust laws"); R&R at 47-48 (collecting cases). When assessing injury, "no attempt is made to ask whether the injury is outweighed by benefits." <u>Alig v. Quicken Loans Inc.</u>, 990 F.3d 782, 792 (4th Cir. 2021) (affirming class certification and holding that an instance of financial harm, even if subsequently offset, constituted injury). Offsets are relevant to the issue of damages,[4] not injury. <u>Id.</u>

The court is not convinced otherwise by Defendants' reliance on vague statements in <u>Windham v. American Brands, Inc.</u>, 565 F.2d 59, 66-67 (4th Cir. 1977), a case that was based on patently different facts than this case, and involved an "unmanageable"

---

[4] The R&R correctly recognizes that "the predominance requirement applies to damages as well," such that "EPPs must still define class membership so as to limit the number of indirect purchases that experienced no net injury," and also present an administratively feasible method of identifying class members who suffered no net damages. R&R at 48-49. The court agrees with the R&R that EPPs have sufficiently done so, and that "[t]he individual net damages issues remaining after the [class definition] amendment do not present any individualized issues that would overwhelm common issues and defeat predominance." R&R at 66.

variety of antitrust claims "arising out of . . . several violations," and focused primarily on the unfeasible and individualized calculation of damages. See Defs.' Objs. at 10. Relatedly, the court rejects Defendants assertion that the <u>Nexium</u> standard is irrelevant to "many of the transactions" in this case because "[u]ndisputed evidence showed that some rebates are paid 'at the time of purchase,' and not as a later offset." Defs.' Objs. at 10 (quoting Hughes Decl., ECF No. 836, ¶ 50). However, Dr. Hughes failed to persuasively support that assertion, which is in fact disputed, with evidence related to Zetia during the applicable class period. <u>Cf.</u> Dietz Decl., ECF No. 835, ¶ 27,; May Hr'g Tr., ECF No. 931, at 99:15-100:23, 114:6-10.

## 2. Uninjured Class Members

Next, Defendants argue that the R&R underestimated the number of uninjured class members because the use of "averages and anecdotes offered by EPPs' expert" to support classwide injury "mask a large number of uninjured TPPs in the putative class." Defs.' Objs. at 12. Therefore, according to Defendants, the individualized inquiry necessary to identify uninjured members will predominate over common questions. Defendants rely on the case <u>In re Lamictal Direct Purchaser Antitrust Litig.</u>, 957 F.3d 184 (3d Cir. 2020), and argue that the use of averages is only "acceptable where they do not mask individualized injury." Defs.' Objs. at 12 (quoting <u>Lamictal</u>, 957 F.3d at 194). However, <u>Lamictal</u>

7

involved evidence of "nuance[s]" in that particular market that were ignored by the district judge and may have defeated a predominance finding. 957 F.3d at 194. Here, Defendants do not attempt to analogize the salient facts at issue in Lamictal, and therefore fail to provide persuasive evidence that the use of averages is inappropriate here. See In re Zetia (Ezetimibe) Antitrust Litig., No. 20-2184, 2021 WL 3379035, at *6 (4th Cir. Aug. 4, 2021) ("But we find no issue with the practice of proving injury by classwide averages, which the district court correctly characterized as 'common.'")

Additionally, the Magistrate Judge completed an extensive and rigorous analysis to find that EPPs presented sufficient evidence to show that the amended class does not include so many uninjured class members as to bar class certification. See R&R at 40-66. By limiting the class definition, EPPs have excluded certain government-subsidized plans and plans with high manufacturer rebates on branded Zetia, which likely included members with no injury or damages. See R&R at 58. Defendants contend that even the proposed class as amended should not be certified because too many uninjured members remain, particularly due to the inclusion of Medicare Part D Plans and TPPs that placed branded Zetia on Tier 4 of their formularies, among others. See Defs.' Objs. at 11-20. However, the court has reviewed Defendants' objection, and the court agrees with the Magistrate Judge's findings and the ultimate

8

conclusion that the proposed members in the modified class definition do not include so many uninjured members that this class should not be certified. See R&R at 60-66.

3. Summary

EPPs have shown by a preponderance of the evidence antitrust impact/injury as to all, or substantially all, members of the class through common evidence, and that individual issues regarding net damages do not so overwhelm common issues as to defeat predominance. See R&R at 50-70; see also In re Zetia (Ezetimibe) Antitrust Litig., 2021 WL 3379035, at *6 ("[E]ven if some individualized-injury inquiry is ultimately required at trial for some defendants, common issues will still predominate."). The court has reviewed the record of this case de novo, and the court now **AFFIRMS** the Magistrate Judge's factual findings and conclusions with respect to the predominance requirement under Rule 23.

## B. Ascertainability

Under Rule 23's implicit "ascertainability" requirement, a class should not be certified unless proposed class members are "readily identif[iable] in reference to objective criteria." Krakauer v. Dish Network, L.L.C., 925 F.3d 643, 655 (4th Cir. 2019) (quoting EQT Prod. Co. v. Adair, 764 F.3d 347, 358 (4th Cir. 2014)). The class must be defined "in such a way as to ensure that there will be some 'administratively feasible [way] for the court

to determine whether a particular individual is a member' at some point. Id. at 658 (quoting EQT Prod. Co., 764 F.3d at 358). A class should not be certified "[i]f class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials.'" EQT Prod. Co., 764 F.3d at 358 (quoting Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 593 (3d Cir. 2012)).

The R&R aptly describes EPPs' proposed methodology for identifying proposed class members through data maintained by pharmacy benefit managers ("PBMs"). See R&R at 20-25. The Magistrate Judge concluded that "EPPs have adequately shown that PBM data can be procured and standardized to identify class members" and that EPPs have provided "an administratively feasible method for ascertaining class members." Id. at 26, 37.

On this issue, Defendants make numerous objections to the Magistrate Judge's factual findings and recommendations, many of which were considered and appropriately rejected in the R&R itself. Defendants argue that PBM data is not sufficient to identify class members; EPPs have not demonstrated they can feasibly obtain that data even if it exists; the proposed methodology is inadequate given the multiple class exclusions; EPPs have not met their burden of showing that the methodology is not prohibitively expensive; and the Magistrate Judge's attempt to distinguish In re Niaspan Antitrust Litig., 2020 WL 2933824, at *15 (E.D. Pa. June 2, 2020), was erroneous. See Defs.' Objs. at 20-30. In their Objections and

10

a later-filed supplemental brief, Defendants also suggests that EPPs do not intend to utilize their proposed ascertainably methodology for class notice purposes, which, in their view, further undermines the conclusion that the proposed methodology is feasible or proper for class certification. <u>See</u> ECF Nos. 1103 at 22, 1272 at 5.

After voluminous briefing and an extensive evidentiary hearing regarding the feasibility of identifying class members using EPPs' proposed methodology, the Magistrate Judge found EPPs' expert, Laura Craft, reliable, credible, and persuasive. This court agrees.[5] After reviewing Defendants' objections on discrete factual issues, and a <u>de novo</u> review of the record, this court agrees with the R&R's underlying findings and concludes that EPPs have sufficiently demonstrated by a preponderance of the evidence an administratively feasible method for identifying class members.

The court reiterates that "[t]he plaintiffs need not be able to identify every class member at the time of certification," <u>EQT Prod. Co.</u>, 764 F.3d at 358, so long as class members can be

---

[5] Although courts in the Second Circuit are not required to determine whether a proposed ascertainability methodology is administratively feasible, <u>see</u> <u>In re Petrobras Sec.</u>, 862 F.3d 250, 264 (2d Cir. 2017), the court notes that since the R&R was issued, the Southern District of New York found that Ms. Craft's methodology was "sufficiently reliable" in a similar pay-for-delay antitrust action, <u>see</u> <u>In re Namenda Indirect Purchaser Antitrust Litig.</u>, No. 115CV6549CMRWL, 2021 WL 100489, at *1 (S.D.N.Y. Jan. 12, 2021).

determined "at some point," Krakauer, 925 F.3d at 658.[6] Ms. Craft provided extensive and detailed testimony, which the court finds credible, regarding her ability to obtain relevant PBM data, standardize it, then identify class members and exclude non-members--all without the type of individualized inquiry that would make any proposed methodology unfeasible.

Moreover, Ms. Craft's proposed methodology was found administratively feasible in another end-payor action, see In re Loestrin 24 FE Antitrust Litig., 410 F. Supp. 3d 352, 397 (D.R.I. 2019), and the R&R correctly distinguishes a decision to the contrary in In re Niaspan Antitrust Litig., No. 13-md-2460, 2020 WL 2933824 (E.D. Pa. June 2, 2020). See R&R at 28-31. Unlike Niaspan, the proposed class in this matter importantly does not involve potentially uninjured consumers, the inclusion of which would likely prove difficult to efficiently identify and exclude in an administratively feasible manner. See R&R at 28-29. Moreover, in this case, Ms. Craft "squarely addressed the . . . points of concern in Niaspan," and provided extensive and detailed testimony on the feasibility of identifying class members, in contrast to the lack of evidence provided on problematic issues in Niaspan. R&R at 31. After a de novo review, the court **AFFIRMS** the R&R's

---

[6] Defendants' arguments concerning the related, but distinct, issue of class notice do not change the court's analysis. See ECF No. 1260 at 4 ("EPPs have never contended that their ascertainability methodology," particularly the potential need to subpoena PBMs, "was necessary to implement class notice here.").

findings and recommendations as to Rule 23's ascertainability requirement.

### III. Conclusion

The court, having reviewed the record in its entirety, having examined the Objections to the R&R, and having made de novo findings with respect thereto, hereby **OVERRULES** Defendants' Objections, ECF No. 1103. The court **ADOPTS AND APPROVES IN FULL** the findings and recommendations set forth in the Magistrate Judge's thorough and well-reasoned R&R, ECF No. 1094. Accordingly, the court **GRANTS** EPPs' Motion for Class Certification, ECF No. 729, and **GRANTS** EPPs' Motion for Leave to Modify and Limit their Class Definition, ECF No. 809, and certifies the class of third-party payors as proposed and modified by EPPs, and as delineated in the R&R. See R&R at 4-5.

The Clerk is **DIRECTED** to send a copy of this Memorandum Order to counsel for all parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

_____
Rebecca Beach Smith
Senior United States District Judge

August 20, 2021