# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | |
|---|---|
| IN RE ZETIA (EZETIMIBE) ANTITRUST LITIGATION<br><br>This document relates to:<br><br>Direct Purchaser Actions<br>No. 2:22-cv-00268<br>No. 2:22-cv-00269 | MDL No. 2:18-md-2836 |

**NEW PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO RULING REGARDING DISCOVERY OF NEWLY FILED PLAINTIFFS**

**TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................................1

II.   STANDARD OF REVIEW ......................................................................................3

III.  ARGUMENT ...........................................................................................................4

      A.   Magistrate Judge Miller correctly found the majority of the defendants'
           proposed discovery irrelevant and disproportional to the needs of the case............4

           1.   Magistrate Judge Miller determined that the new plaintiffs'
                adoption of all prior orders significantly narrows the scope of
                discovery to which the defendants are entitled. ............................................4

           2.   Magistrate Judge Miller recognized that the defendants have made
                little use of the sweeping discovery they obtained of the original
                direct purchaser and retailer plaintiffs. .......................................................7

           3.   Magistrate Judge Miller correctly recognized that the defendants
                had ample opportunity to pursue the discovery they now seek from
                the new plaintiffs, but they failed to do so...................................................9

           4.   Magistrate Judge Miller properly recognized that any limited
                relevance of the discovery the defendants seek is outweighed by
                the burden on the new plaintiffs...................................................................10

      B.   The ruling grants the defendants more than sufficient discovery under
           Rule 26....................................................................................................................11

      C.   The ruling is a proper exercise of Magistrate Judge Miller's broad
           authority to manage this MDL. ..............................................................................12

IV.   CONCLUSION.......................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Buchanan v. Consol. Stores Corp.*,
   206 F.R.D. 123 (D. Md. 2002)...........................................................................................13

*Carlucci v. Han*,
   292 F.R.D. 309 (E.D. Va. 2013) ..........................................................................................3

*Dees v. Hyundai Motor Mfg. Ala., LLC*,
   524 F. Supp. 2d 1348 (M.D. Ala. 2007) ..............................................................................3

*Doe v. Marsh*,
   899 F. Supp. 933 (N.D.N.Y. 1995)......................................................................................3

*In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*,
   No. 2:12-cv-3605, 2017 WL 928944 (S.D.W. Va. Mar. 8, 2017) .........................................12

*Gelboim v. Bank of Am. Corp.*,
   574 U.S. 405 (2015).............................................................................................................13

*Guiden v. Leatt Corp.*,
   No. 5:10-cv-175, 2013 WL 4500319 (W.D. Ky. Aug. 21, 2013)....................................13, 14

*Neighborhood Dev. Collaborative v. Murphy*,
   233 F.R.D. 436 (D. Md. 2005)...........................................................................................13

*In re Outsidewall Tire Litig.*,
   267 F.R.D. 466 (E.D. Va. May 4, 2010).........................................................................3, 13

*In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*,
   953 F.2d 162 (4th Cir. 1992) ..............................................................................................13

*TFWS, Inc. v. Franchot*,
   572 F.3d 186 (4th Cir. 2009) ..............................................................................................3

*Toven v. Met. Life Ins. Co.*,
   517 F. Supp. 2d 1174 (C.D. Cal. 2007) .............................................................................3

**Statutes**

28 U.S.C. § 636.........................................................................................................................3

28 U.S.C. § 1407.....................................................................................................................12

**Other Authorities**

*Manual for Complex Litigation (Fourth)* (2004) ........................................................................13

## I.    INTRODUCTION

The Court should overrule the defendants' objections to Magistrate Judge Miller's oral ruling on the discovery the defendants may seek from the new plaintiffs[1] (the "ruling").

The ruling properly limits the defendants' discovery to what is relevant to any party's claims or defenses and proportional to the needs of the case. Magistrate Judge Miller's principal consideration in so ruling was the fact that the new plaintiffs are re-litigating *none* of the myriad issues resolved by the Court in the more than four years since the case's inception; they have agreed to adopt all material orders that have and will be entered in the case, to seek no additional discovery of the defendants, to serve no other expert reports other than supplemental reports on their damages, to pursue no additional or alternative claims and defenses, and to, in all respects, step into the shoes of the original direct purchaser plaintiffs. Their doing so dramatically narrows the universe of what is relevant in a case with an extensive and well-developed record.

Magistrate Judge Miller was unpersuaded by the defendants' speculation as to what their broad and wide-ranging proposed discovery requests might find—particularly when they obtained no such documents or testimony (or, for that matter, much else of use) in the hundreds of thousands of pages produced by the original direct purchaser and retailer plaintiffs and the ten depositions they took of their representatives. And he recognized that, if the discovery the defendants seek of the new plaintiffs were as important as they now argue it is, they had every

---

[1] The new plaintiffs are McKesson Corporation, AmerisourceBergen Corporation, AmerisourceBergen Drug Corporation, H.D. Smith, LLC, Smith Medical Partners, LLC, Valley Wholesale Drug Company, LLC, Cardinal Health, Inc., The Harvard Drug Group, L.L.C., Cardinal Health P.R. 120, Inc., Meijer, Inc., Meijer Distribution, Inc., SUPERVALU, Inc., Wegmans Food Markets, Inc., KPH Healthcare Services, Inc. a/k/a Kinney Drugs, Inc., and MLI RX, LLC; Burlington Drug Company, Inc., Dakota Drug, Inc., J. M. Smith d/b/a Smith Drug Company, Louisiana Wholesale Drug Co., Inc., North Carolina Mutual Wholesale Drug Company, Prescription Supply, Inc., and Value Drug Company; and Giant Eagle, Inc.

incentive and opportunity to pursue it years ago.

The defendants bemoan that the ruling unfairly denies them "virtually all discovery" from the new plaintiffs.[2] To the contrary, the ruling ensures that the defendants will receive (1) responses to all their requests for admission and 17 of their 21 interrogatories from all new plaintiffs; (2) assignment agreements and data sufficient to show the purchases covered by those assignments for the new plaintiffs whose claims arise by virtue of assignment, (3) forecasts (to the extent they exist) on the expected pricing of brand and generic Zetia following loss of exclusivity from the national wholesalers and three other new plaintiffs whose witnesses were identified in the new plaintiffs' Rule 26(a)(1) disclosures as having discoverable information, and (4) depositions of any witnesses listed in the new plaintiffs' Rule 26(a)(1) or 26(a)(3) disclosures. And the ruling does not foreclose the defendants from seeking additional discovery should the need to do so arise.

The scope of discovery the ruling grants is, as Magistrate Judge Miller put it, "not nothing."[3] It is entirely appropriate under Rule 26, providing the defendants all relevant and proportional discovery while preventing an unbridled fishing expedition. And the ruling grants the defendants precisely the kind of limited discovery the defendants themselves assured the Court throughout class certification proceedings that they would seek from joining plaintiffs if it denied certification. It also represents the very MDL-management discretion they repeatedly invited the Court to exercise here. The defendants may regret these arguments now, but their dissatisfaction with the ruling falls far short of the clear error required to justify reversal.

---

[2] Defs.' Objs. to Ruling Regarding Discov. of Newly Filed Pls. at 4, ECF No. 1709 ("Defs.' Objs.").

[3] Tr. of Aug. 17, 2022 Hr'g on Defs.' Mots. for Summ. J. & Discov. of New Pls. at 167:21–168:3 ("Aug. 17 Hr'g Tr.").

## II.    STANDARD OF REVIEW

A district court may overturn a magistrate judge's factual findings and legal conclusions on a non-dispositive pretrial matter only where the findings are clearly erroneous or the conclusions contrary to law.[4] A factual finding is clearly erroneous when the reviewing court is "left with the definite and firm conviction that a mistake has been committed."[5] This Court has observed that while the "contrary to law" standard "ordinarily suggests a plenary review of legal determinations, . . . many courts have noted that decisions of a magistrate judge concerning discovery disputes and scheduling should be afforded 'great deference.'"[6] "Indeed, the fact-specific character of most discovery disputes and the discretionary standard for resolution of discovery disputes under the Federal Rules suggest that magistrate judges ordinarily have ample discretionary latitude in disposition of those matters."[7] Alteration of a magistrate judge's non-dispositive order is therefore "extremely difficult to justify."[8]

---

[4] 28 U.S.C. § 636(b)(1)(A).

[5] *TFWS, Inc. v. Franchot*, 572 F.3d 186, 196 (4th Cir. 2009) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)).

[6] *In re Outsidewall Tire Litig.*, 267 F.R.D. 466, 470 (E.D. Va. May 4, 2010) (quoting *United States v. Abonce-Barrera*, 257 F.3d 959, 969 (9th Cir. 2001)) (citing *Graham v. Mukasey*, 608 F. Supp. 2d 50, 52 (D.D.C. 2009); *Dees v. Hyundai Motor Mfg. Ala., LLC*, 524 F. Supp. 2d 1348, 1350 (M.D. Ala. 2007); *Toven v. Met. Life Ins. Co.*, 517 F. Supp. 2d 1174, 1175 (C.D. Cal. 2007); *Doe v. Marsh*, 899 F. Supp. 933, 934 (N.D.N.Y. 1995); 12 Charles Alan Wright et al., *Federal Practice and Procedure* § 3069 & n.20 (2d ed. 1997)).

[7] *Id.*

[8] *Carlucci v. Han*, 292 F.R.D. 309, 312 (E.D. Va. 2013) (quoting Wright et al., *supra*, § 3069).

### III.   ARGUMENT

**A.   Magistrate Judge Miller correctly found the majority of the defendants' proposed discovery irrelevant and disproportional to the needs of the case.**

**1.   Magistrate Judge Miller determined that the new plaintiffs' adoption of all prior orders significantly narrows the scope of discovery to which the defendants are entitled.**

The defendants' objections disingenuously characterize the discovery ruling as motivated by little more than a desire to push the case to trial as quickly as possible, accusing Magistrate Judge Miller of "trad[ing] Defendants' basic discovery rights for an expedited trial after joinder."[9] But the hearing transcript makes clear that Magistrate Judge Miller's decision was foremost informed not by concerns of judicial economy and expediency, but by the fact that the new plaintiffs have agreed to be bound by all material issues decided by the Court over the past four years of litigation and, therefore, little additional discovery is necessary.[10] Indeed, during the hearing, Magistrate Judge Miller explicitly corrected the mischaracterization the defendants perpetuate throughout their objections, interjecting, "[A]gain, you characterize it as limiting

---

[9] Defs.' Objs. at 3; *see also id.* at 3–4 ("[T]he Magistrate Judge's Ruling . . . is based on findings that (1) judges presiding over MDL proceedings have discretion to control the case schedule, and (2) as a function of that discretion, Defendants' right to discovery from the Newly Filed Plaintiffs must give way to the Magistrate Judge's interest in 'keeping the train moving forward' toward an April 2023 trial."); *id.* at 12 ("[N]othing in the MDL statute states (or even implies) that a judge may force defendants to forgo basic, non-duplicative discovery from plaintiffs who first assert their claims at a late juncture of a case simply because a trial date is impending."); *id.* at 15 (stating that the argument that allowing the defendants' broad proposed discovery would delay the trial "seemed to resonate with the Magistrate Judge").

[10] *See, e.g.*, Aug. 17 Hr'g Tr. at 140:21–141:1 ("Yes, they're new, but they're not stepping in as brand-new plaintiffs. They are totally bound by a long history that's already taken place. And they've agreed that all things you won, you won and they lost, and all the things they won, they won and you lost, and that's where we are now."); *id.* at 149:19–21 (correctly recognizing the new plaintiffs' "main argument is, look, none of this stuff is relevant to the issues that have to be litigated in this case . . . ."); *id.* at 173:2–8 ("[T]he new plaintiffs are litigating a very, very well-established case on a very, very well-established record, and they're agreeing to be bound, and I'm going to hold the defendants to be bound by the record that they created.").

4

discovery because they joined late. I'm characterizing it as limiting discovery *because they're litigating a different case*. . . [T]hey've agreed to be bound by everything that's already passed."[11]

Magistrate Judge Miller prefaced oral arguments with the observation that the new plaintiffs' stipulation adopting all relevant prior orders was "critical" to the scope of discovery to which the defendants are entitled because "it means they're stuck, and they do not get to relitigate a bunch of questions."[12] As a result, "what needs to be discovered is different now than it was when this case began because . . . a lot has already been decided."[13] And he provided the following prologue to his oral ruling after hearing the parties' arguments:

> [A]ll these new plaintiffs agreed to join th[e] existing case. They agreed to be bound by all th[e] prior decisions. They agreed to give up their own right to relitigate all of the questions that the Court already decided, including very important questions of privilege . . . [They could have] hired a different law firm and decided to come in and re-argue all those questions. But they're not going to be permitted to do that because the procedural posture of the case is they are stuck with those rulings, and they have agreed to be bound by them and all the other rulings that the Court has made.[14]

The defendants suggest that Rule 26 entitles them to a fixed universe of discovery from any plaintiff, regardless of the circumstances (as Magistrate Judge Miller put it, "we haven't had a chance to bite this apple so we need to have the same bite that we had at the beginning"). But Magistrate Judge Miller correctly recognized that relevance and proportionality are flexible matrices that must be assessed in light of the parties' claims and defenses, the posture of the

---

[11] *Id.* at 146:15–21 (emphasis added).

[12] *Id.* at 127:15–16.

[13] *Id.* at 128:1–3; *see also id.* at 140:21–141:1.

[14] *Id.* at 166:12–167:5; *see also id.* at 173:2–8.

case, and the factors enumerated in Rule 26(b)(1). Even assuming *arguendo* the dubious proposition that the defendants would have been entitled to the same breadth and scope of discovery from the new plaintiffs as they obtained from the original direct purchasers had the new plaintiffs been named parties at the outset of the litigation,[15] the comparison is inapt. The new plaintiffs entered a "very, very well-established case [with] a very, very well-established record"[16] developed over more than four years and that is nearly trial-ready. They have agreed to be bound by all material orders that have been and will be entered on pending motions in the MDL—including all orders on motions to dismiss, motions related to fact and expert discovery, and *Daubert* and summary judgment motions.[17] They have stipulated that they will seek no additional discovery from the defendants or non-parties, will serve no expert reports other than supplemental damages reports, and will pursue no additional or alternative theories of liability or causation.[18] In other words, the new plaintiffs have agreed to step, for all intents and purposes, into the shoes of the existing direct purchaser plaintiffs.

The introduction of the new plaintiffs therefore has a negligible impact on the landscape

---

[15] *See* New Pls.' Resp. to Defs.' Br. Regarding New Pls. Discov. at 11 ("The defendants' brief tries to make hay of the fact that their proposed new plaintiff discovery is 'substantively identical to requests they propounded on all other named Plaintiffs,' and those plaintiffs provided substantive responses to nearly all the defendants' requests without the need for motion practice. But . . . the fact that Court intervention was not required resulted from the direct purchasers' willingness to compromise on many of the defendants' clearly objectionable discovery requests. And they *could* make those concession when the direct purchasers consisted of three relatively small regional wholesalers. The new plaintiffs, in contrast, constitute 23 entities, including national wholesalers McKesson, AmerisourceBergen, and Cardinal Health—companies with exponentially more employees, offices, and documents than FWK, RDC, and CCI combined. If the national wholesalers had been among the original direct purchasers, their counsel would surely have been far less conciliatory.").

[16] Aug. 17 Hr'g Tr. at 173:5–6.

[17] *See* Order at 2–5, ECF No. 1730.

[18] *Id.* at 5.

of the trial. Plaintiffs' counsel will call few, if any, new plaintiff witnesses at trial and will add

only the handful of documents necessary to prove their damages (namely, assignments and data

relevant to the assignee new plaintiffs) to their exhibit list. The vast majority of the evidence

offered at trial will be on the antitrust violations committed by the defendants, which consists

overwhelmingly of evidence in the defendants' possession that has long been in the record.

### 2. Magistrate Judge Miller recognized that the defendants have made little use of the sweeping discovery they obtained of the original direct purchaser and retailer plaintiffs.

The irrelevance of the defendants' proposed discovery is underscored by the fact that,

despite having pursued extensive discovery of the original direct purchaser and retailer plaintiffs,

the defendants have made little use of it. In response to the defendants' argument at the hearing

that "the plaintiffs didn't even—even the retailers, who are larger, didn't fight on most of these

questions," Magistrate Judge Miller observed, "They also didn't produce anything that you

apparently found valuable[,] right[?] I mean, all that production has happened, and the

hypotheticals that you're imagining didn't come to pass with respect to any of the ten that you

served."[19]

As the new plaintiffs pointed out in their briefing, the defendants obtained extensive

discovery of the original direct purchaser and retailer plaintiffs, a 13-month-long process that

resulted in hundreds of pages of detailed responses to interrogatories and RFAs, the production

of nearly 240,000 pages of responsive documents, and ten depositions of representatives for

those plaintiffs. Yet across the thousands of pages of the defendants' expert reports and summary

judgment briefing and exhibits, their only citation to plaintiff-produced evidence is in a single

---

[19] Aug. 17 Hr'g Tr. at 145:21–146:3; *see also id.* at 173:2–15 ("None of [the expansive
discovery the defendants obtained from the original direct purchasers] appears to be very
relevant . . . .").

footnote (which cites the retailers' assignments). A mere 36 of the 2,260 exhibits on the defendants' exhibit lists were documents produced by the original direct purchasers or retailers—less than 2% of the documentary evidence the defendants previously planned to introduce at trial. And this is typical in generic delay antitrust cases, in which direct purchasers need only prove that they purchased the relevant drug and the quantity of those purchases. The last two such cases that went to trial featured, combined, testimony from a total of three direct purchaser or retailer witnesses and the admission of virtually no plaintiff-produced documents in evidence.[20]

Having obtained little of value from the thousands of pages produced by the original plaintiffs, the defendants now seek to repeat this wasteful exercise with the new plaintiffs. While their earlier briefing tried (unconvincingly) to characterize their discovery requests to the new plaintiffs as "limited and targeted," they now unabashedly admit that the 88 written discovery requests and dozens of depositions they seek to take are "substantively identical to [the] requests that were propounded on the original named Plaintiffs."[21] Yet the defendants have been unable to articulate any compelling reasons for their sweeping requests at the July 21 and August 17 hearings, during meet and confers, and in their briefing and objections.

And the few and flimsy justifications the defendants have offered are rendered even more unconvincing by the fact that they obtained no such documents or testimony in the hundreds of thousands of pages already produced by the original three direct purchaser and eight retailer plaintiffs and many depositions of direct purchaser and retailer witnesses. Magistrate Judge Miller aptly identified as the "nub of the issue" the fact that the defendants "have completed [the same] discovery against 10 direct purchasers, including some very large retailers who have the

---

[20] *See* New Pls.' Resp. to Defs.' Br. Regarding Discov. from the New Pls. at 2–3, ECF No. 1681.

[21] *Compare* Defs.' Br. Regarding Discov. from Newly Filed Pls. at 2, *with* Defs.' Objs. at 8.

exact same type of claim [as the new plaintiffs] . . . [and] subject to the same defenses, and [the defendants] haven't been able to point the Court to anything that [they] think is likely to be there."[22]

> **3.    Magistrate Judge Miller correctly recognized that the defendants had ample opportunity to pursue the discovery they now seek from the new plaintiffs, but they failed to do so.**

Throughout their briefing, at the hearing, and in their objections, the defendants have fixated on national wholesalers McKesson, AmerisourceBergen, and Cardinal Health, arguing that their outsized share of the damages[23] justifies subjecting them to overbroad and wide-ranging discovery requests. But this fact instead further underscores that the defendants have no need for this discovery. If it were nearly as essential as the defendants now insist, they could and would have sought it at some point over the past four years of litigation. But they did not.[24]

This inherent contradiction was not lost on Magistrate Judge Miller, who, in response to the defendants' complaints at the hearing that it would be unfair to deny them discovery of the national wholesalers, retorted, "Because you didn't ask for it." He continued:

> I understand there is a slightly different standard if you were getting it from a thir[d] party. [But the national wholesalers] were the elephant in the room for the last four years. Everyone has known what was driving this case, and Merck and Glenmark certainly knew who [they] were selling Zetia and ezetimibe to, and

---

[22] Aug. 17 Hr'g Tr. 140:9–20.

[23] *See* Defs.' Objs. at 2, 12, 13 (mentioning that the national wholesalers "account for more than 95% of the claimed damages"). Indeed, the defendants reference the size of the national wholesalers' claims at least 10 separate times in their three briefs on new plaintiff discovery.

[24] As the new plaintiffs pointed out in their briefing, weeks after discovery opened, the defendants tried to obtain materials from the national wholesalers via requests for assignment-related documents and communications served on the retailer plaintiffs. *See* New Pls.' Br. Regarding Defs.' Proposed Discov. at 15, ECF No. 1667. When the retailers objected and informed the defendants that this proper vehicle for this discovery was Rule 45, the defendants neither challenged the retailers' objections nor served subpoenas on the national wholesalers. *See id.*; Ex. 14 to Sobol Decl. in Supp. of New Pls.' Br., ECF No. 1668-14.

> if [they believed] say, Amerisource or McKesson . . . might have some documents, they could have subpoenaed them. They could have done that. . . .
>
> [You made] no effort to obtain [discovery] from these very, very large wholesalers who everyone has known all along amounted to the lion share of the damages. I do think if it were that important, it would have been something that Merck or Glenmark would have pursued by subpoena or discovery practice earlier in this case.[25]

As Magistrate Judge Miller recognized, if the defendants' arguments had any merit, they had every incentive and opportunity to pursue this discovery earlier. But they failed to do so, and Magistrate Judge Miller properly held "the defendants [must be] bound by the record that they created."[26]

### 4.   Magistrate Judge Miller properly recognized that any limited relevance of the discovery the defendants seek is outweighed by the burden on the new plaintiffs.

Magistrate Judge Miller correctly articulated the relevant inquiry under Rule 26: "You don't have to convince me that it would be a very large burden [for the new plaintiffs] to respond to all of [the defendants' discovery requests]. The question is how much of a burden and weighing that against what the defendants are entitled to in light of the different posture."[27] And he correctly concluded that, because the new plaintiffs' adoption of the existing record vastly narrowed the universe of relevant additional discovery, any minimal relevance of the defendants' proposed requests is dwarfed by the burden that responding to them would impose on the new

---

[25] Aug. 17 Hr'g Tr. at 163:24–164:7, 173:2–15; *see also id.* at 153:21–154:2 ("You were already going against [the new plaintiffs previously], it's just that they were absent. You could have gotten this done by subpoena. You could have subpoenaed them for all their forecast documents. You could have, after receiving those forecast documents, said, well, we would like to depose the people who prepared them. All that could have happened two and a half years ago.").

[26] *Id.* at 173:2–8.

[27] *Id.* at 137:11–15.

plaintiffs.

Magistrate Judge Miller recognized that the requests proposed by the defendants "are so broad, they are so general" that "it would take [the new plaintiffs] a year" to respond.[28] Granting them would saddle the new plaintiffs with an enormously burdensome, time-consuming, and expensive document collection process. Custodial searches would require months of negotiations of custodians and search terms, collection, and attorney review. Even if the new plaintiffs prioritized discovery in this case above their own business activities, it is unlikely, if not impossible, that discovery would be completed by the end of 2022—particularly for the national wholesalers, which are entities hundreds of times larger than the original direct purchaser plaintiffs. Magistrate Judge Miller's ruling should stand.

**B.      The ruling grants the defendants more than sufficient discovery under Rule 26.**

In their objections, the defendants lament that the ruling "den[ies] Defendants virtually all discovery from the Newly Filed Plaintiffs" and "shield[s] parties that should have been named in the first place from basic and routine discovery obligations," Magistrate Judge Miller disagreed, saying that the new plaintiffs "are providing extensive discovery."[29] The ruling requires the new plaintiffs to respond to all of the defendants' requests for admission and 17 of their 21 interrogatories. The new plaintiffs proceeding by assignment will produce copies of their assignments and data sufficient to show the purchases covered by those assignments, which, in addition to the data already produced by the defendants and non-parties, is the only evidence required to establish the new plaintiffs' damages. The ruling permits the defendants to depose any witnesses identified in the new plaintiffs' already served Rule 26(a)(1) initial disclosures or

---

[28] *Id.* at 162:16–18.

[29] *Id.* at 166:23–168:3.

the Rule 26(a)(3) disclosures the Court ordered the new plaintiffs to serve by October 30, 2022. And it requires both the national wholesalers and the new plaintiffs whose representatives will testify at trial to produce copies of business forecasts from the relevant period related to the pricing of brand or generic Zetia following loss of exclusivity, to the extent such forecasts exist. Nor does the ruling foreclose the defendants from seeking additional depositions or documents should the discovery granted reveal further issues appropriate for discovery (an opening the defendants did not hesitate to exploit, having recently sent new plaintiffs' counsel a proposed 14 additional document requests and notices of 30(b)(6) deposition of the national wholesalers listing 11 topics for examination).

The defendants require nothing more than the discovery the ruling permits. And the ruling grants the defendants precisely the limited and proportional discovery they consistently assured the Court throughout class certification proceedings that they would seek from joining plaintiffs if class certification were denied.[30]

## C.   The ruling is a proper exercise of Magistrate Judge Miller's broad authority to manage this MDL.

The Federal Rules of Civil Procedure, 28 U.S.C. § 1407, and the Court's inherent power afford Magistrate Judge Miller substantial authority to manage discovery and the schedule in this

---

[30] *See* Defs.' Opp'n to Direct Purchaser Pls.' Mot. for Class Certification at 17, ECF No. 819 ("Enormous amounts of discovery have already been undertaken, and . . . the only discovery that may be necessary would be that into individualized issues . . . ."); Tr. of Jan. 4, 2022 Hr'g on Direct Purchaser Pls.' Renewed Mot. for Class Certification at 65:1–66:14 ("The Court has issued rulings, discovery rulings, there have been negotiations, a lot of material has already been produced. . . . I would not expect [the discovery the defendants would seek of joining plaintiffs] to be overly burdensome. And I don't see at all how it would burden this court. . . . But Your Honor, to answer your question directly, I don't anticipate there will be a great deal of additional discovery, and there will be efficiencies.").

case. In multi-district litigation, "case management becomes of utmost importance."[31] The primary aims of § 1407 are "eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts."[32] Once cases are consolidated under the umbrella of an MDL court's pretrial jurisdiction, "the court's express and inherent powers enable the judge to exercise extensive supervision and control [over the] litigation."[33] The Fourth Circuit also recognizes a district court must have "broad discretion in coordinating and administering multi-district litigation."[34]

Rule 72(a) grant magistrate judges especially significant latitude to resolve non-dispositive discovery disputes.[35] Thus "it is not the function of objections to discovery rulings to allow wholesale relitigation of issues resolved by the magistrate judge"[36]; the "critical inquiry"

---

[31] *In re Ethicon, Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, No. 2:12-cv-3605, 2017 WL 928944, at *1 (S.D.W. Va. Mar. 8, 2017) (citing *In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006)).

[32] *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 410 (2015) (quoting *Manual for Complex Litigation (Fourth)* § 20.131 (2004)).

[33] *Manual for Complex Litigation (Fourth)* § 10.1 (2004).

[34] *In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II*, 953 F.2d 162, 165 (4th Cir. 1992) (citing *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1019 (1st Cir. 1988)).

[35] *See Guiden v. Leatt Corp.*, No. 5:10-cv-175, 2013 WL 4500319, at *3 (W.D. Ky. Aug. 21, 2013) ("Numerous . . . federal courts have commented on the discretion afforded to magistrate judges under Rule 72(a) when resolving the discovery disputes."); *Outsidewall Tire Litig.*, 267 F.R.D. at 470 ("[T]he fact-specific character of most discovery disputes and the discretionary standard for resolution of discovery disputes under the Federal Rules suggest that magistrate judges ordinarily have ample discretionary latitude in disposition of those matters."); *Neighborhood Dev. Collaborative v. Murphy*, 233 F.R.D. 436, 438 (D. Md. 2005) ("Court[s] have consistently found discovery motions to be non-dispositive within the meaning of Rule 72(a). A district court owes substantial deference to a magistrate judge in considering a magistrate judge's ruling on a non-dispositive motion." (citing *FED v. Christian Coalition*, 178 F.R.D. 456, 460 (E.D. Va. 1998))).

[36] *Buchanan v. Consol. Stores Corp.*, 206 F.R.D. 123, 124 (D. Md. 2002).

in evaluating such objections is "whether there is legal authority that supports the magistrate's conclusion." There undoubtedly is here, and "[t]hat reasonable minds may differ on the wisdom of a legal conclusion" does not satisfy the high burden necessary for reversal.[37]

Throughout class certification proceedings, the defendants repeatedly reminded the Court that, if it declined to certify, it had broad discretion to limit excessive and unnecessary discovery of any joining plaintiffs.[38] Magistrate Judge Miller appropriately exercised this discretion for this very purpose, and the Court should affirm his well-reasoned ruling.

## IV.   CONCLUSION

For the foregoing reasons, the Court should overrule the defendants' objections and uphold Magistrate Judge Miller's ruling on the discovery the defendants may pursue from the new plaintiffs.

Dated: September 14, 2022

/s/ William H. Monroe, Jr.
William H. Monroe, Jr. (VSB No. 27441)
Marc C. Greco (VSB No. 41496)
Kip A. Harbison (VSB No. 38648)
Michael A. Glasser (VSB No. 17651)

---

[37] *Guiden*, 2013 WL 4500319, at *3 (quoting *Carmona v. Wright*, 233 F.R.D. 270, 276 (N.D.N.Y. 2006)).

[38] *See, e.g.*, Aug. 17 Hr'g Tr. at 166:1–11 ("[T]he defendants very expressly said that the additional discovery burden that would be created by individual joinder versus the class action could be managed by the transferring judge because this is an MDL and because the parties don't join in a vacuum."); Tr. of Jan. 4, 2022 Hr'g on Direct Purchaser Pls.' Renewed Mot. for Class Certification at 65:1–66:14 (Glenmark's counsel arguing, in response to Court's inquiry about the scope of additional discovery the defendants would seek of joining plaintiffs, that "I don't anticipate there will be a great deal of additional discovery, and there will be efficiencies" and "as an MDL court, the Court has a great deal of discretion how it manages cases . . . ."); Defs.' Opp'n to Direct Purchaser Pls.' Renewed Mot. for Class Certification, at 27, ECF No. 1383 ("The court could substantially limit further discovery [of joining plaintiffs] using its discretion under Rule of Civil Procedure 26."); Defs.' Opp'n to Direct Purchaser Pls.' Mot. for Class Certification at 17, ECF No. 819 ("Enormous amounts of discovery have already been undertaken . . . If the members all opted to join the case as individuals plaintiffs, the District Court could, in its discretion limit discovery . . . ." (quoting *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 256 (3d Cir. 2016))).

GLASSER AND GLASSER, P.L.C.
Crown Center, Suite 600
580 East Main Street
Norfolk, VA 23510
Telephone: (757) 625-6787
Facsimile: (757) 625-5959
bill@glasserlaw.com
marcg@glasserlaw.com
kip@glasserlaw.com
michael@glasserlaw.com

*Local Counsel for the Direct Purchaser
Plaintiffs, Counsel for Plaintiffs FWK
Holdings, LLC, Rochester Drug Cooperative,
Inc., Cesar Castillo, LLC, McKesson
Corporation, AmerisourceBergen
Corporation, AmerisourceBergen Drug
Corporation, H.D. Smith, LLC, Smith Medical
Partners, LLC, Valley Wholesale Drug
Company, LLC, Cardinal Health, Inc., The
Harvard Drug Group, L.L.C., Cardinal Health
P.R. 120, Inc., Meijer, Inc., Meijer
Distribution, Inc., SUPERVALU, Inc.,
Wegmans Food Markets, Inc., KPH
Healthcare Services, Inc. a/k/a Kinney Drugs,
Inc., and MLI RX, LLC, and Member of the
Direct Purchaser Executive Committee*

Thomas M. Sobol (*pro hac vice*)
Kristen A. Johnson (*pro hac vice*)
Hannah Schwarzschild (*pro hac vice*)
Erin C. Burns (*pro hac vice*)
Bradley J. Vettraino (*pro hac vice*)
Rachel Downey (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
One Faneuil Hall Square, 5th Floor
Boston, MA 02109
Telephone: (617) 482-3700
Facsimile: (617) 482-3003
tom@hbsslaw.com
kristenj@hbsslaw.com
hannahs@hbsslaw.com
erinb@hbsslaw.com
bradleyv@hbsslaw.com
racheld@hbsslaw.com

15

*Lead Counsel for the Direct Purchaser
Plaintiffs and Counsel for Plaintiffs FWK
Holdings, LLC, McKesson Corporation,
AmerisourceBergen Corporation,
AmerisourceBergen Drug Corporation, H.D.
Smith, LLC, Smith Medical Partners, LLC,
Valley Wholesale Drug Company, LLC,
Cardinal Health, Inc., The Harvard Drug
Group, L.L.C., and Cardinal Health P.R. 120,
Inc.*

David F. Sorensen (*pro hac vice*)
Ellen T. Noteware (pro hac vice)
BERGER MONTAGUE PC
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000
Facsimile: (215) 875-4604
dsorensen@bm.net
enoteware@bm.net

*Member of the Direct Purchaser Executive
Committee and Counsel for Plaintiffs
Rochester Drug Cooperative, Inc., McKesson
Corporation, AmerisourceBergen
Corporation, AmerisourceBergen Drug
Corporation, H.D. Smith, LLC, Smith Medical
Partners, LLC, Valley Wholesale Drug
Company, LLC, Cardinal Health, Inc., The
Harvard Drug Group, L.L.C., and Cardinal
Health P.R. 120, Inc.*

Joseph M. Vanek (*pro hac vice*)
David P. Germaine (*pro hac vice*)
John P. Bjork (*pro hac vice*)
Paul E. Slater
Matthew T. Slater
SPERLING & SLATER, P.C.
55 W. Monroe, Suite 3200
Chicago, IL 60603
Telephone: (312) 641-3200
Facsimile: (312)641-6492
jvanek@sperling-law.com
dgermaine@sperling-law.com
jbjork@sperling-law.com
pes@sperling-law.com

mslater@sperling-law.com

*Member of the Direct Purchaser Executive*
*Committee and Counsel for Plaintiffs FWK*
*Holdings, LLC, Meijer, Inc., Meijer*
*Distribution, Inc., and SUPERVALU, Inc.*

Peter R. Kohn (*pro hac vice*)
Joseph T. Lukens (*pro hac vice*)
FARUQI & FARUQI, LLP
One Penn Center, Suite 1550
1617 John F. Kennedy Boulevard
Philadelphia, PA 19103
Telephone: (215) 277-5770
Facsimile: (215) 277-5771
pkohn@faruqilaw.com
jlukens@faruqilaw.com

Bradley J. Demuth (*pro hac vice*)
FARUQI & FARUQI, LLP
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
bdemuth@faruqilaw.com

*Member of the Direct Purchaser Executive*
*Committee and Counsel for Plaintiffs*
*Rochester Drug Cooperative, Inc. and MLI*
*RX, LLC*

Linda P. Nussbaum (*pro hac vice*)
NUSSBAUM LAW GROUP, P.C.
1211 Avenue of the Americas, 40th Floor
New York, NY 10036-8718
Telephone: (917) 438-9189
lnussbaum@nussbaumpc.com

*Member of the Direct Purchaser Executive*
*Committee and Counsel for Plaintiffs Cesar*
*Castillo, LLC and Wegmans Food Markets,*
*Inc.*

Michael L. Roberts
Karen Sharp Halbert (*pro hac vice*)
Stephanie Smith (*pro hac vice*)

17

Sarah E. DeLoach (*pro hac vice*)
ROBERTS LAW FIRM, P.A.
20 Rahling Circle
Little Rock, AR 72223
Telephone: (501) 821-5575
Facsimile: (501) 821-4474
mikeroberts@robertslawfirm.us
karenhalbert@robertslawfirm.us
stephaniesmith@robertslawfirm.us
sarahdeloach@robertslawfirm.us

*Member of the Direct Purchaser Executive
Committee and Counsel for Plaintiffs FWK
Holdings, LLC and KPH Healthcare Services,
Inc. a/k/a Kinney Drugs, Inc.*

John D. Radice
RADICE LAW FIRM, P.C.
475 Wall Street
Princeton, NJ 08540
Telephone: (646) 245-8502
Facsimile: (609) 385-0745
jradice@radicelawfirm.com

*Member of the Direct Purchaser Executive
Committee and Counsel for Plaintiff FWK
Holdings, LLC*

Sharon K Robertson (*pro hac vice*)
Donna M. Evans (*pro hac vice*)
COHEN MILSTEIN SELLERS & TOLL PLLC
88 Pine Street, 14th Floor
New York, NY 10005
Telephone: (212) 838-7797
Facsimile: (212) 838-7745
srobertson@cohenmilstein.com
devans@cohenmilstein.com

*Member of the Direct Purchaser Executive
Committee and Counsel for Plaintiff FWK
Holdings, LLC*

Steve D. Shadowen (*pro hac vice*)
Matthew C. Weiner (*pro hac vice*)
HILLIARD & SHADOWEN LLP
1135 W. 6th Street, Suite 125

18

Austin, TX 78703
Telephone: (855) 344-3298
steve@hilliardshadowenlaw.com
matt@hilliardshadowenlaw.com

*Member of the Direct Purchaser Executive
Committee and Counsel for Plaintiff FWK
Holdings, LLC*

Joseph H. Meltzer (*pro hac vice*)
Terence S. Ziegler (*pro hac vice*)
KESSLER TOPAZ MELTZER & CHECK LLP
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
jmeltzer@ktmc.com
tziegler@ktmc.com

*Member of the Direct Purchaser Executive
Committee and Counsel for Plaintiff FWK
Holdings, LLC*

Barry Taus (*pro hac vice*)
Archana Tamoshunas (*pro hac vice*)
Kevin Landau (*pro hac vice*)
TAUS, CEBULASH & LANDAU, LLP
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone: (646) 873-7654
btaus@tcllaw.com
atamoshunas@tcllaw.com
klandau@tcllaw.com

*Member of the Direct Purchaser Executive
Committee and Counsel for Plaintiff Rochester
Drug Cooperative, Inc.*

Jayne A. Goldstein
MILLER SHAH, LLP
1625 North Commerce Parkway, Ste. 320
Fort Lauderdale, FL 33326
Telephone: (954) 515-0123
Facsimile: (866) 300-7367
jagoldstein@millershah.com

*Counsel for Plaintiff Cesar Castillo, LLC*

/s/ John F. Sawyer
John F. Sawyer (VA Bar No. 65902)
WOLCOTT RIVERS GATES
Convergence Center V
200 Bendix Road, Suite 300
Virginia Beach, VA 23452
Telephone: 757-554-0249
Facsimile: 757-497-7267
sawyer@wolriv.com

*Local Counsel for Burlington Drug Company, Inc., Dakota Drug, Inc., J M Smith Corporation d/b/a Smith Drug Company, Louisiana Wholesale Drug Co., Inc., North Carolina Mutual Wholesale Drug Company, Prescription Supply, Inc., and Value Drug Company, and Giant Eagle, Inc.*

Bruce E. Gerstein (*pro hac vice*)
Kimberly Hennings (*pro hac vice*)
David B. Rochelson (*pro hac vice*)
GARWIN GERSTEIN & FISHER LLP
88 Pine St., 10th Floor
New York, NY 10005
Telephone: (212) 395-0055
bgerstein@garwingerstein.com
khennings@garwingerstein.com
drochelson@garwingerstein.com

Susan Segura
David Raphael
SMITH SEGURA RAPHAEL & LEGER LLP
221 Ansley Blvd.
Alexandria, LA
Telephone: (318) 445-4480
ssegura@ssrllp.com
draphael@ssrllp.com

Stuart E. Des Roches
ODOM & DES ROCHES LLC
650 Poydras Street, Suite 2020
New Orleans, LA 70130
Telephone: (504) 522-0077
stuart@odrlaw.com

*Counsel for Burlington Drug Company, Inc., Dakota Drug, Inc., J M Smith Corporation d/b/a Smith Drug Company, Louisiana Wholesale Drug Co., Inc., North Carolina Mutual Wholesale Drug Company, Prescription Supply, Inc., and Value Drug Company*

Scott E. Perwin
Lauren C. Ravkind
Anna T. Neill
KENNY NACHWALTER P.A.
Four Seasons Tower
1441 Brickell Avenue, Suite 1100
Miami, FL 33131
Telephone: 305-373-1000
Facsimile: 305-372-1861
sperwin@knpa.com
lravkind@knpa.com
aneill@knpa.com

Bernard D. Marcus
Moira Cain-Mannix
Brian C. Hill
Erin Gibson Allen
MARCUS & SHAPIRA LLP
301 Grant Street
One Oxford Centre, 35th Floor
Pittsburgh, PA 15219-6401
Telephone: 412-471-3490
Facsimile: 412-391-8758
marcus@marcus-shapira.com
cain-mannix@marcus-shapira.com
hill@marcus-shapira.com
allen@marcus-shapira.com

*Counsel for Giant Eagle, Inc.*

**CERTIFICATE OF SERVICE**

I, William H. Monroe, Jr., certify that, on this date, the foregoing document was filed

electronically via the Court's CM/ECF system, which will send notice of the filing to all counsel

of record, and parties may access the filing through the Court's system.

Dated: September 14, 2022                          /s/ William H. Monroe, Jr.
                                                   William H. Monroe, Jr. (VSB No. 27441)