UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

In re ZETIA (EZETIMIBE) ANTITRUST
LITIGATION

MDL No. 2:18-md-2836

THIS DOCUMENT RELATES TO:

No. 2:20-cv-01005

No. 2:21-cv-01006

No. 2:21-cv-01007

No. 2:21-cv-01008

<u>OPINION AND ORDER</u>

In this multidistrict case, Lead Counsel[1] for the End Payor Plaintiffs ("EPPs") and Direct Purchaser Plaintiffs ("DPPs") moved for entry of a set-aside order, (ECF No. 1566), requesting a framework through which they may seek compensation from various tag-along plaintiffs for common benefit work. Mem. Sup. Mot. Entry Set-Aside Order ("Mem. Supp.") (ECF No. 1567, at 5). Specifically, Lead Counsel request that any defendant that reaches a settlement with — or is subject to a judgment in favor of — any tag-along plaintiff pay 12.5% of the tag-along plaintiff's recovery into an escrow account. Id. at 5-7. The account would then be available

---

[1] This court appointed class counsel for the EPPs and DPPs in Pretrial Order No. 3, (ECF No. 105, at 4-10). The EPPs were subsequently granted class certification. Mem. Order (ECF No. 1316). Although the DPPs have not obtained class certification, many DPPs later joined the litigation and are represented by the DPPs' appointed class counsel. See Order Granting Motion for Joinder (ECF No. 1630). For the purposes of this opinion, "Lead Counsel" means counsel for the EPP class and counsel for the collectively litigating DPPs, as appointed in Pretrial Order No. 3.

1

to pay those who can demonstrate that they performed work that benefitted the recovering tag-along plaintiff. Id. at 5. Tag-along plaintiffs Kaiser Foundation Health Plan, Inc. ("Kaiser"), Humana Inc. ("Humana"), and Centene Corp. ("Centene")[2] (collectively, "Insurer Plaintiffs") jointly opposed the set-aside motion. ("Ins. Pls.' Opp'n") (ECF No. 1604). Tag-along plaintiff United Healthcare Services, Inc. ("United") also opposed the motion separately.[3] ("United's Opp'n") (ECF No. 1605). Lead Counsel replied. (ECF No. 1614). For the reasons discussed below, Lead Counsel's motion is GRANTED in part and DENIED in part.

## I. BACKGROUND

This multidistrict litigation involves claims by a class of EPPs, jointly litigating DPPs, and several large insurance companies and pharmaceutical retailers (collectively, "Plaintiffs"). Plaintiffs allege Defendants Merck and Glenmark[4] conspired to delay generic competition for Merck's cholesterol-

---

[2] Centene collectively includes Centene Corporation, WellCare Health Plans, Inc., New York Quality Healthcare Corporation, and Health Net LLC. Compl., Centene Corp. v. Merck & Co., Inc., No. 2:18-cv-01008 (ECF No. 1, at 3).

[3] Retailer Plaintiffs also filed an opposition brief but conceded that Lead Counsel's motion is not directed at them. Retailer Pls.' Opp'n Mot. Set-Aside (ECF No. 1597, at 1 n.1). Defendants take no position on this motion. Defs.' Resp. Mot. Set-Aside ("Defs.' Resp.") (ECF No. 1603).

[4] Merck consists of Merck & Co., Inc.; Merck Sharp & Dohme Corp.; Schering-Plough Corp.; Schering Corp.; and MSP Singapore Co. LLC. Defs.' Resp. (ECF No. 1603). Glenmark consists of Glenmark Pharmaceuticals Limited and Glenmark Pharmaceuticals Inc., USA. Pretrial Order No. 1 (ECF No. 20, at 4 n.4).

2

lowering medication, Zetia. The various complaints, all materially identical with respect to liability, allege antitrust and consumer protection claims flowing from a 2010 Settlement Agreement resolving patent litigation Merck brought against Glenmark after Glenmark filed an abbreviated new drug application seeking to make a generic form of Zetia. This MDL has been pending over four years.[5] Over that time, Lead Counsel have expended significant time and money developing the case for Plaintiffs. Their present filing summarizes their work to date, which has included taking and defending more than three dozen fact-witness depositions, retaining and preparing 16 experts, deposing 12 of Defendants' 15 experts, reviewing millions of pages of documents, and significant motions practice. See Mem. Supp. (ECF No. 1567, at 9-10). Access to, use of, and benefits conferred by the work product generated from these efforts is at issue in the instant motion.

The four tag-along plaintiffs identified above (collectively, "Tag-Along Plaintiffs") joined this MDL after it was significantly advanced. United filed its action in the District of Minnesota in

---

[5] Direct Purchaser Plaintiff FWK Holdings, LLC filed the first Zetia complaint in this court on January 16, 2018. Compl., FWK Holdings, LLC v. Merck & Co., Inc., No. 2:18-cv-00023 (ECF No. 1). Similar actions were subsequently filed in this court and elsewhere by additional DPPs, EPPs, and Retailer Plaintiffs. In June 2018, these actions were transferred to this court by the Judicial Panel on Multidistrict Litigation ("JPML") for consolidated proceedings. Transfer Order (ECF No. 1).

September 2020. Compl., <u>United HealthCare Servs., Inc. v. Merck & Co., Inc.</u>, No. 2:20-cv-01005 (ECF No. 1). The case was then transferred to this court on October 5, 2020, as part of these consolidated proceedings. Conditional Transfer Order, <u>United HealthCare Servs., Inc.</u>, No. 2:20-cv-01005 (ECF No. 6). The Insurer Plaintiffs' cases were filed and transferred to this MDL in September and October 2021. Compl., <u>Kaiser Found. Health Plan Inc. v. Merck & Co., Inc.</u>, No. 2:21-cv-01006 (ECF No. 1-1); Compl., <u>Humana Inc. v. Merck & Co., Inc.</u>, No. 2:21-cv-01007 (ECF No. 1); Compl., <u>Centene Corp. v. Merck & Co., Inc.</u>, No. 2:21-cv-01008 (ECF No. 1).

Tag-Along Plaintiffs assert they did not file their actions earlier because, when the EPPs moved for class certification in 2019, they defined the class to include United and the other Tag-Along Plaintiffs. (ECF No. 729). EPP class counsel later moved to amend the class definition definitively excluding these parties as class members. Although not conceded by Lead Counsel's motion, the nature of the amendment suggests it was due to perceived difficulties certifying the class in light of claims that United and other large insurers had bargaining power which left them differently situated than other EPP class members. Mem. Supp. Mot. to Modify Class Def. (ECF No. 810). The amended definition excluded certain Medicare Part D plans and insurers using a particular pharmacy benefit manager. This court granted that

4

motion on August 20, 2021, (ECF No. 1316), prompting the most recent Tag-Along Plaintiffs to file their individual complaints.[6]

Following its exclusion from the EPP class, United reached out to Lead Counsel "in an effort to coordinate with them in the prosecution of their respective cases, share costs, and generally demonstrate their willingness to work together cooperatively." United's Opp'n (ECF No. 1605, at 10). These efforts were not completely successful, leading United to expend its own time and money developing its case. Id. (ECF No. 1605, at 11). The Insurer Plaintiffs report similar issues. In December 2021,[7] Insurer Plaintiffs sought discovery of the MDL record from Defendants.[8] Ins. Pls.' Opp'n EPPs' Mot. Protective Order ("Opp'n Prot. Order") (ECF No. 1479, at 8). In response, EPPs moved for a protective order to prevent Defendants from producing the record until common benefit issues were resolved. (ECF No. 1459). The court denied

---

[6] Upon filing their individual complaints, the Tag-Along Plaintiffs added new claims seeking recovery for overcharges allegedly paid on a separate branded drug marketed by Merck called Vytorin. See, e.g., Compl. ¶¶ 227, 242, United HealthCare Servs., Inc., No. 2:20-cv-01005 (ECF No. 1, at 81, 85); Compl. ¶¶ 135-39, Humana Inc. v. Merck & Co., Inc., No. 2:21-cv-01007 (ECF No. 1, at 41-43).

[7] The Insurer Plaintiffs also sought discovery from Defendants in other jurisdictions before their cases were consolidated here, Opp'n Prot. Order (ECF No. 1479, at 6), which prompted the EPPs to move for a similar protective order in this court, (ECF No. 1297). That motion was ultimately terminated as moot when the JPML transferred Kaiser's action to this MDL. Opp'n Prot. Order (ECF No. 1479, at 7).

[8] It does not appear that United made a similar request, although the company admitted that it has received "some materials," is "interested in receiving all the materials," and has been "accessing the record directly." Hr'g Tr. 46:11-19 (ECF No. 1493).

5

this motion. Order (ECF No. 1492). Then, after joining the MDL, Insurer Plaintiffs reached out to Lead Counsel "to determine if there was a way to work together, conserve resources, and . . . buy into a discovery database and otherwise share costs with Lead Counsel." Ins. Pls.' Opp'n (ECF No. 1604, at 8). Those efforts were also unsuccessful. Id. In spite of these difficulties, the Tag-Along Plaintiffs have received a voluminous discovery record compiled in the litigation before they filed. In addition, the court has decided multiple motions to dismiss (ECF Nos. 212, 489), a motion for partial summary judgment on the relevant market (ECF No. 1518), and issued detailed recommended findings on Defendant's motion for summary judgment on the merits (ECF No. 1717). On June 3, 2022, Lead Counsel filed the instant motion requesting a set-aside order that would provide a system through which they could be compensated for any of this work which benefits Tag-Along Plaintiffs in the event they prevail by judgment or settle in their own cases. (ECF No. 1566).

## II.  ANALYSIS

"In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247 (1975). This well-established legal principle stands for the proposition that, "absent statute or enforceable contract," each litigant is generally responsible for bearing

their own costs. Id. at 257. However, the Supreme Court has developed a long-recognized exception to this "American Rule" in litigation which confers third party benefits — the common benefit doctrine. See id. at 257-58 (collecting cases). Under the common benefit doctrine, "courts have the right and power to require those who benefit from a lawsuit to share in the costs of the litigation which benefitted them." In re Linerboard Antitrust Litig., 292 F. Supp. 2d 644, 654 (E.D. Pa. Sept. 5, 2003); see Cent. R.R. & Banking Co. of Ga. v. Pettus, 113 U.S. 116 (1885); Sprague v. Ticonic Nat'l Bank, 307 U.S. 161 (1939). The doctrine is based on the idea that "persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense." Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980).

In complex aggregate litigation, the common benefit doctrine provides that "attorneys designated with responsibilities for actions beyond those in which they are retained may be compensated for their work not only by their own clients, but also by those other parties on whose behalf the work is performed and on whom a benefit has been conferred." In re Gen. Motors LLC Ignition Switch Litig., 477 F. Supp. 3d 170, 179 (S.D.N.Y. 2020) (quoting In re Worldcom, Inc. Sec. Litig., No. 02-CV-3288, 2004 WL 2549682, at *2 (S.D.N.Y. Nov. 10, 2004)). In an MDL, the authority to establish a common benefit fund to compensate class counsel derives from the

court's managerial power over the consolidated litigation.[9]  Id.
at 190.

Tag-Along Plaintiffs do not dispute this authority, or the
court's power — in an appropriate case — to create a common benefit
fund.  The issue is whether the facts warrant that action in this
case, at this stage of the proceedings.[10]  I conclude that they do,
but also that the requested set-aside of 12.5% of recoveries is
greater than necessary to protect Lead Counsel's ability to obtain
fair compensation from any successful Tag-Along Parties.
Accordingly, as set out below, the court will Order a 5% set-
aside.

---

[9] Parties may debate the court's jurisdiction and authority to establish a
common fund that will apply if the Insurer Plaintiffs return to their original
jurisdictions to litigate.  The Fourth Circuit has previously struck orders
requiring state court and untransferred federal cases, as well as unfiled cases,
to contribute to a common fund.  In re Showa Denko K.K., 953 F.2d 162, 166 (4th
Cir. 1992) (finding the order impermissibly broad).  But see Gen. Motors, 477
F. Supp. 3d at 184-85 (citing cases).  However, the Tag-Along Plaintiffs "are
not 'total strangers to the litigation.'"  Gen. Motors, 477 F. Supp. 3d at 190
(quoting In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig., 617 F. App'x
136, 141 (3d Cir. 2015)).  Rather, they "have . . . been brought in by process"
for at least the pre-trial proceedings.  Showa Denko, 953 F.2d at 166.
[10] United's briefing takes specific issue with use of the common benefit line
of authority, arguing that Lead Counsel have not established the "threshold
requirement" of success on the merits.  United Opp'n (ECF No. 1605, at 30)
(quoting Allen v. Lloyd's of London, 975 F. Supp. 802, 807-08 (E.D. Va. 1997).
But this Order does not impose any fee obligation on Tag-Along Parties.  Instead,
it merely provides a framework for doing so if — and only if — they are
successful.

**A. A common benefit set aside from the Tag-Along Plaintiffs is appropriate given the risk of free riding in this complex litigation.**

The common benefit doctrine is most frequently applied in mass tort cases. Those cases "typically involve large numbers of claims asserted by individual plaintiffs who have separately retained counsel that might 'free-ride' off the work of designated lead counsel." In re Packaged Seafood Prods. Antitrust Litig., No. 3:15-md-2670, 2021 WL 5326517, at *2 (S.D. Cal. Nov. 16, 2021). Set-aside orders in such cases are appropriate to give class counsel a path to compensation for their efforts on behalf of the class and ensure that "high-quality legal work [is not] under-incentivized and, ultimately, under-produced." See In re Gen. Motors LLC Ignition Switch Litig., 477 F. Supp. 3d 170, 174 (S.D.N.Y. 2020).

Several courts have declined to enter set-aside orders outside of the mass tort context, see, e.g., Packaged Seafood Prods., 2021 WL 5326517, at *2; In re Generic Pharms. Pricing Antitrust Litig., No. 16-MD-2724, 2019 WL 6044308, at *1 (E.D. Pa. Oct. 7, 2019), while other courts have been willing to do so. Among the cases recognizing their utility are antitrust class actions like this one. See, e.g., Linerboard, 292 F. Supp. at 654-56; In re Lidoderm Antitrust Litig., No. 14-md-02521-WHO, 2017 WL 3478810, at *1 (N.D. Cal. Aug. 14, 2017); In re Aggrenox

Antitrust Litig., No. 14-md-2516, 2018 WL 10705542, at *5 (D. Conn. July 19, 2018).

In support of their motion for a set-aside order, Lead Counsel emphasize the free-rider problems that may arise in class action cases, particularly among large, well-resourced class members. Mem. Supp. (ECF No. 1567, at 10-11). Given the amount of work they have put into the case thus far and Tag-Along Plaintiffs' late entry to the MDL, Lead Counsel believe those free-rider concerns are evident here. Id. at 13-14. Without the entry of a set-aside order, Lead Counsel claim that the Tag-Along Plaintiffs will enjoy the benefits of Lead Counsel's work and litigation strategy, including "the Court's motion to dismiss ruling, the extensive fact and expert discovery . . ., the multiple successful discovery motions that have resulted in the production of key documents," and future favorable rulings. Id.

Tag-Along Plaintiffs argue that antitrust class actions, where lead counsel pursue claims on behalf of an entire class, do not present the same free-rider problems that exist in mass tort litigation, where hundreds or perhaps thousands of plaintiffs are each treated as individual claimants. Ins. Pls.' Opp'n (ECF No. 1604, at 14-17); United's Opp'n (ECF No. 1605, at 22-25). They observe that Lead Counsel already represent claimants seeking claims worth potentially hundreds of millions of dollars and thus face little risk of being undercompensated if they are successful.

See Ins. Pls.' Opp'n (ECF No. 1604, at 12); United's Opp'n (ECF No. 1605, at 27-29).

But Tag-Along Plaintiffs' narrow assessment of the incentives in class action suits overlooks the primary justification for the common benefit fund doctrine — namely ensuring those parties who benefit from counsel's efforts contribute to the costs. While the free-rider problem may be felt most acutely by class counsel in mass tort cases with hundreds or thousands of individual plaintiffs, the risk of free-riding in class actions is not non-existent, especially in complex, vigorously contested antitrust cases such as this one. Without a set-aside order, tag-along plaintiffs could file their individual cases at the last possible minute, request and rely on the record developed by class counsel, and reap the savings in legal fees. That situation presents a classic problem of unjust enrichment, which the common benefit doctrine is meant to remedy. See Boeing Co., 444 U.S. at 478.

The size of Lead Counsel's potential recovery in litigation by their own clients is not material to the question of whether they may seek compensation for the use of their work product in separate litigation filed by others. Their own recovery, if any, and the eventual compensation they receive will, of course, bear on the amount of compensation they eventually receive. But that is a question for later. Lead Counsel, at this stage, has demonstrated extensive effort and resulting work product which is

11

highly likely to benefit the Tag-Along Plaintiffs litigating identical claims. The degree of that benefit — relative to Tag-Along Palintiffs' own expenditures and effort in securing any eventual recovery — will be determined if and when that recovery is achieved. And in any event, Tag-Along Plaintiffs are themselves large, successful insurance companies which are well equipped to handle any financial burden of contributing to Lead Counsels' efforts in this case.

Tag-Along Plaintiffs next argue that imposing set-aside assessments in class action cases penalizes plaintiffs who exercise their right to opt out of the class, effectively requiring them to pay their own independently retained counsel and class counsel. Ins. Pls.' Opp'n (ECF No. 1604, at 16); United's Opp'n (ECF No. 1605, at 25). But class action set-aside orders would not unfairly burden class members' right to opt-out. Under the common benefit doctrine, opt-out plaintiffs would only be responsible for paying class counsel if they rely on and benefit from class counsel's work. See Boeing Co., 444 U.S. at 478. In other words, it is not the act of opting out that triggers the plaintiffs' responsibility to pay class counsel, but rather their beneficial use of class counsel's work. If class counsel perform no work benefiting the opt-out plaintiff — or if the opt-out plaintiff would rather forgo use of the class counsel's work — then the opt-out plaintiff will have no obligation to pay class

counsel. On the other hand, an opt-out plaintiff which relies on class counsel's work may have to pay for that use. But such a result is not inequitable given the incentives for free-riding discussed above, as well as the fact that the opt-out plaintiff's financial obligations to its own counsel will be lower than they would have been had class counsel not already expended resources developing the opt-out plaintiff's case.

Additionally, Tag-Along Plaintiffs go to great lengths to argue that they have received no benefit from Lead Counsels' work and have even been impeded in their litigation by Lead Counsels' refusal to cooperate on cost-sharing and record access. See Ins. Pls.' Opp'n (ECF No. 1604, at 10-12); United's Opp'n (ECF No. 1605, at 18-20). They note that they will be retaining their own experts and that much of the discovery and motions practice was devoted to class certification arguments which will have no benefit in their individually filed claims. These arguments are — to a degree — also premature. While the Tag-Along Parties will no doubt incur certain expenses in pursuing their own claims, they will unavoidably rely upon the work completed by Lead Counsel before they filed. According to Lead Counsel's motion, when Humana and Centene initially propounded discovery in their separately filed California action, they served only two document requests, seeking "all documents" produced in this MDL, and "all other discovery produced, served, or otherwise disclosed in the MDL," including

expert reports, deposition transcripts, and privilege logs. Reply
Mem. (ECF No. 1614, at 18).

Lead Counsel have not separately asserted any of the class
certification work to justify their request for a set-aside. And
this Order does not establish that Lead Counsel are entitled to
any specific compensation from Tag-Along Plaintiffs for specific
work from which the Tag-Alongs derived a common benefit. Instead,
the court will require set aside as an exercise of its broad
discretion to facilitate the efficient management of this MDL. In
re Genetically Modified Rice Litig., No. 4:06md1811, 2010 WL
716190, at *4 (E.D. Mo. Feb. 24, 2010), aff'd 764 F.3d 864 (8th
Cir. 2014) ("An MDL court's authority to establish a trust and
order contributions to compensate leadership counsel derives from
its 'managerial' power over the consolidated litigation."). That
exercise merely requires money be set aside from any actual
recovery — by settlement or judgment — so that compensation can be
awarded to those who can show they have performed common benefit
work — a determination that is not now before this court.

Tag-Along Plaintiffs also make several arguments claiming
that a set-aside order would be inequitable given their involuntary
exclusion from the EPP class. See Ins. Pls.' Opp'n (ECF No. 1604,
at 13-14); United's Opp'n (ECF No. 1605, at 13-17, 20-22). These
arguments are premature for the same reasons. Although excluded
from the class, Tag-Along Plaintiffs chose to file in other

14

jurisdictions and, after consolidation, negotiated a trial timeline that would lag significantly the joint effort to bring the Virginia consolidated cases to trial. While these decisions were entirely proper under the terms of the MDL, see Lexecon, Inc. v. Milberg, Weiss, Bershad, Hynes & Lerach, 523 U.S. 26, 40 (1998), they were not dictated by Lead Counsel, who have tried to keep the collective action moving forward here despite denial of the DPP class certification. Tag-Along Plaintiffs may raise concerns about their exclusion from the class if and when they obtain a recovery and Lead Counsel apply for compensation from the common benefit fund. But they have no bearing on whether a set-aside order should be entered in the first place. It is beyond dispute that all the Tag-Along Plaintiffs enjoyed a significant head start framing and litigating their claims as a result of more than two years of work Lead Counsel completed before their consolidation.

Finally, United's brief warns that entering a set-aside order will result in "administrative chaos" and prolong the litigation. United's Opp'n (ECF No. 1605, at 32-34). It urges the court to fix a sum-certain sufficient to proportionately compensate Lead Counsel for any benefits it may have derived from their work. Id. (ECF No. 1605, at 34-35). The Insurer Plaintiffs similarly argue that the requested 12.5% set-aside is excessive, and that the eventual calculation of sums due for such work would have to include an assessment of compensation already received by Lead

15

Counsel, not all of which may be subject to court scrutiny. Insurer's Opp'n (ECF No. 1604, at 18-20). It is true that this Order may result in additional litigation regarding the payment of fees from the common benefit fund. However, that is a burden the court and the litigants must bear to prevent unjust enrichment and ensure that attorneys remain incentivized to serve as class counsel in complex litigation, and that litigants benefiting from those efforts contribute proportionately. See Gen. Motors, 477 F. Supp. at 174. With only five months before trial there are only four Tag-Along cases represented by two legal teams. And while the Tag-Along Parties' claims vary somewhat due to the addition of claims for the separate drug Vytorin, the core facts underlying liability in each case are identical. I find that the entry of a set-aside order is appropriate in this case, and that — with appropriate modifications to the proposed set aside order — any "chaos" arising from post-resolution assessment of the few fee claims which might arise would be de minimis.

**B. The litigation is sufficiently advanced to make the entry of a set-aside order appropriate.**

Lead Counsel recognize that no settlements or judgments have yet been reached in this litigation. Mem. Supp. (ECF No. 1567, at 18). Nonetheless, they argue that "now is an appropriate time" to authorize the requested set-aside. Id. Lead Counsel highlight that waiting to enter a set-aside order could result in Tag-Along

16

Plaintiffs' actions being "dismissed after settlement or judgment, requiring lead counsel to pursue separate compensation claims in any number of jurisdictions around the country." Id. at 18–19 (quoting In re Worldcom, Inc. Sec. Litig., No. 02-cv-3288, 2004 WL 2549682, at *4 (S.D.N.Y. Nov. 10, 2004)). According to Lead Counsel, it is for this reason that MDL best practices call for the establishment of lead counsel compensation mechanisms "[e]arly in the litigation." Id. at 19 (quoting Manual for Complex Litigation (Fourth) § 14.215 (2004)).

Additionally, Lead Counsel highlight that courts "routinely enter set-aside orders 'prior to any recovery, as long as the litigation is significantly advanced.'" Id. (quoting Lidoderm, 2017 WL 3478810, at *2 (cleaned up); also citing Turner v. Murphy Oil USA, Inc., 422 F. Supp. 2d 676, 680 (E.D. La. 2006); In re Protogen Sling & Vesica Sys. Prod. Liab. Litig., No. 1387, 2002 WL 31834446, at *1 (D. Md. Apr. 12, 2002)). In Lead Counsels' view, "[t]his case is significantly advanced" and therefore warrants the entry of a set-aside order. Id.

The Tag-Along Plaintiffs do not meaningfully contest this point. Although they argue that any set-aside should await successful recovery, they do not dispute Lead Counsel's contention that the MDL is significantly advanced. Potential factors showing that litigation is sufficiently advanced include class certification, expiration of the EPP class opt-out period, and

evidence that identifiable non-class plaintiffs stand to benefit from class counsels' work. See generally In re Packaged Seafood Prods. Antitrust Litig., No. 3:15-md-2670, 2021 WL 5326517 (S.D. Cal. Nov. 16, 2021). In compelling set-aside for common benefit work the court does not determine "how much of the work performed by designated counsel benefitted" other plaintiffs, but it does establish "a framework to ensure that funds will be available to compensate them should the Court later determine such compensation is warranted." In re Linerboard Antitrust Litig., 292 F. Supp. 2d 644, 662 (E.D. Pa. Sept. 5, 2003).

The multi-district litigation has been ongoing for over four years. Discovery is now closed. Daubert rulings are complete. (ECF Nos. 1313, 1314, 1315, 1518, 1648, 1649, 1679). Plaintiffs have obtained partial summary judgment on the relevant market (ECF Nos. 1518) and Defendants' motion for summary judgment has been fully briefed and argued with a recommended disposition pending on fully briefed objections (ECF No. 1717). I, therefore, agree with Lead Counsel that the case is sufficiently advanced to warrant the entry of a set-aside order at this time. And as discussed elsewhere, the set aside order merely creates a framework for awarding compensation — it does not require payment of any fees or costs until Tag-Along Plaintiffs obtain a recovery — and then only to the degree they benefitted from Lead Counsel's work.

**C.  5% of any Tag-Along Plaintiff recovery, rather than 12.5%, is a proper amount to set-aside.**

Lead Counsel argue that 12.5% is an "eminently reasonable" amount to set aside, "as it falls in the middle range that courts have set aside in similar MDLs." Mem. Supp. (ECF No. 1567, at 16). On the other hand, Tag-Along Plaintiffs argue that 12.5% is too much to set aside and could lead to overcompensating any successful applicant to the fund. See Ins. Pls.' Opp'n (ECF No. 1604, at 17-19); United's Opp'n (ECF No. 1605, at 34-35). On this issue, I agree with the Tag-Along Plaintiffs and find a rate of 5% to be more appropriate on the facts presented.

Although it might be relevant to the question, no party briefed the issue of Tag-Along Plaintiffs' proportionate share of the potential damages in the case. Nevertheless, Tag-Along Plaintiffs note that on the Direct Purchaser side of the case alone three large wholesalers comprise more than 95% of the damages. All three are presently represented by Lead Counsel. Similarly, the Tag-Along Parties represent a small fraction of those entities originally identified as EPPs, and the time for opting out of the EPP class has expired. Thus, Lead Counsel presently represent claimants seeking the vast majority of damages related to claimed Zetia overcharge. The Tag-Along Parties likely have significant expenses of their own, given their confirmed intention to return to the filing jurisdictions for separate trials, and their plan to

19

engage new experts. Rubenstein Decl., United Opp'n, Ex. 2 (ECF No. 1605-2, at 14, n.22). In support of their request for a 12.5% rate, Lead Counsel cites a number of cases in which courts have awarded set-aside assessments between 9% and 17%. Mem. Supp. (ECF No. 1567, at 16 n.42). However, many of these cases are mass tort actions involving potentially hundreds of separately litigating plaintiffs, or are otherwise factually distinguishable. See Ins. Pls.' Opp'n (ECF No. 1604, at 18). And to the extent mass tort cases are relevant, the assessments awarded in the cases cited by Lead Counsel do not appear to be representative of the normal mass tort set-aside range, which is around 3% to 6%. Lidoderm, 2017 WL 3478810, at *3. Additionally, the three antitrust cases Lead Counsel cite all awarded set-aside assessments lower than the 12.5% requested here. Id. (10%); Aggrenox, 2018 WL 10705542, at *6 (10%); In re Linerboard Antitrust Litig., 333 F. Supp. 2d 343, 348 (E.D. Pa. 2004) (5%).

Lead Counsel also points the court to Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978), arguing that a 12.5% rate is reasonable under the factors identified in that case. Mem. Supp. (ECF No. 1567, at 17). However, as United points out, Barber involved a determination of reasonable attorneys' fees to a prevailing party under the Truth in Lending Act and did not address set-aside orders, or the degree to which common work conferred

benefit on other litigants.[11] United's Opp'n (ECF No. 1605, at 28 n.17).

While the case law and procedural posture of the cases do not support Lead Counsel's requested 12.5% assessment, the scale and duration of this litigation thus far must be considered. This MDL began over four years ago. Lead Counsel have expended significant resources developing the case. The burdens of discovery, motion practice, and expert preparation have not been light. See Mem. Supp. (ECF No. 1567, at 9-10). But the Tag-Along Plaintiffs have plans to litigate separately in their original jurisdictions, and to retain and compensate their own experts. United Opp'n (ECF No. 1605, at 11). And each Tag-Along Plaintiff has significant potential recoveries of their own. Imposing too large a set-aside is not without consequence even if the actual amount of compensation is determined later. The excess withholding may be an impediment to settlement of the Tag-Along cases, particularly

---

[11] In Barber, the Fourth Circuit endorsed use of the Johnson factors in determining what constitutes a reasonable attorney's fee. Barber, 577 F. 2d, at 226 (citing Johnson v. George Highway Express, Inc., 488 F. 2d 714 (5th Cir. 1974). As this court has noted, there are two methods for calculating reasonable attorneys' fees for class counsel: the percentage recovery method and the lodestar method. In re Mills Corp. Sec. Litig., 265 F.R.D. 246, 260 (E.D. Va. 2009); In re Microstrategy, Inc., 172 F. Supp. 2d 778, 786-88 (E.D. Va. 2001). The percentage recovery method "involves an award based on a percentage of the Class' recovery." Mills Corp., 265 F.R.D. at 260. The lodestar method "requires the multiplication of the number of hours worked by a reasonable hourly rate, the product of which the Court can then adjust by employing a 'multiplier.'" Id. (citing Jones v. Dominion Res. Servs., Inc., 601 F. Supp. 2d 756, 758 (S.D.W. Va. 2009)).

since no plaintiff has, as yet, obtained a successful recovery. Balancing those circumstances with the case law, I find that a 5% set-aside would be adequate to ensure Lead Counsel's ability to recover for common benefit work in this case.

### III. CONCLUSION

For the reasons set forth above, Lead Counsel's Motion for Entry of a Set-Aside Order is GRANTED in part and DENIED in part. The court hereby ORDERS the establishment of a common benefit fund as requested in Lead Counsels' proposed order, (ECF No. 1566-1), as modified by the court. The proposed 12.5% rate has been replaced with a 5% rate, and language added clarifying the scope of the court's ruling consistent with this Opinion. The Order, as modified, will issue.

IT IS SO ORDERED.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER,
UNITED STATES MAGISTRATE JUDGE

November 8, 2022