UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

In re:
ZETIA (EZETIMIBE) ANTITRUST
LITIGATION

MDL NO. 2:18md2836

MEMORANDUM ORDER

This matter comes before the court on the Merck and Glenmark Defendants'[1] ("Defendants") Objections under Rule 72(a) of the Federal Rules of Civil Procedure ("Objections"), ECF No. 1709, to Magistrate Judge Douglas E. Miller's Report and Recommendation ("R&R"), ECF No. 1693, regarding discovery from twenty-three (23) new plaintiffs to the case. The R&R was delivered as an oral ruling during an August 17, 2022, status hearing among the parties. See id. at 166-74. For the reasons explained below, Defendants' Objections are **OVERRULED**, and the Magistrate Judge's ruling is **AFFIRMED**.

I.

Defendants and Plaintiffs[2] have been engaged in extensive litigation concerning Defendants alleged violation of antitrust

---

[1] The Merck Defendants ("Merck") consist of Merck & Co., Inc.; Merck Sharp & Dohme Corp.; Schering-Plough Corp.; Schering Corp.; and MSP Singapore Co. LLC. The Glenmark Defendants ("Glenmark") consist of Glenmark Pharmaceuticals, Ltd. and Glenmark Pharmaceuticals Inc., USA.

[2] "Plaintiffs" refers to all plaintiffs in this multi-district litigation.

law through a settlement agreement that resolved Merck and Glenmark's earlier patent dispute ("Settlement Agreement"). That earlier dispute concerned Glenmark's introduction into the market of a generic version of Merck's cholesterol drug, Zetia. The terms of the Settlement Agreement allowed Glenmark to introduce its generic four months before Merck's patent expired.

Plaintiffs also claim that Merck agreed not to introduce its own generic version of Zetia (an "Authorized Generic" or "AG"), which would have competed with Glenmark's drug, during the one hundred eighty (180) days following Glenmark's introduction of its generic.[3] Plaintiffs argue that this aspect of the Settlement Agreement (the "No-AG Agreement") violated antitrust law, contending that, without the No-AG Agreement, Glenmark would have received more than the four months early entry established in the Settlement Agreement.[4]

---

[3] Title 21 U.S.C. § 355(j)(5)(B)(IV) provides for a 180-day exclusivity period for the first to file certain "abbreviated application[s] for the approval of a new drug." However, this statutory bar would not have applied to Merck, as it had an AG. See, e.g., Teva Pharm. Indus. Ltd. v. Crawford, 410 F.3d 51, 55 (D.C. Cir. 2005) (holding that § 355(j)(5)(B)(IV) does not bar a brand manufacturer from introducing "its own 'brand-generic' version of its drug."). Therefore, during this 180-day statutory period, Merck would have been the only other manufacturer permitted to bring a generic version of Zetia to market.

[4] See supra note 3 and accompanying text.

Three[5] (3) entities initially attempted to proceed against Defendants as named representatives of a class of Direct Purchaser Plaintiffs ("DPPs"). ECF No. 735. The undersigned district judge referred the DPPs' Motion for Class Certification to Magistrate Judge Miller on February 25, 2020. ECF No. 888. The court adopted Judge Miller's recommendation, ECF No. 967, granting class certification on August 21, 2020, ECF No. 1101. Defendants appealed, and on August 4, 2021, the Fourth Circuit vacated and remanded the certification Order. See In re Zetia (Ezetimibe) Antitrust Litig., 7 F.4th 227 (4th Cir. 2021).

Shortly thereafter, the named DPPs submitted a Renewed Motion for Class Certification on September 24, 2021. ECF No. 1354. The court again adopted Magistrate Judge Miller's recommendation, ECF No. 1480, yet this time denying class certification, on April 13, 2022, ECF No. 1537. On May 20, 2022, Judge Miller ordered any unnamed members of the unsuccessful DPP class to "file its claim or claims by way of Rule 3, Rule 15(a)(2), and/or Rule 20 of the Federal Rules of Civil Procedure," in order to proceed individually as part of the consolidated case. See ECF No. 1564 at 8.

---

[5] FWK Holdings, LLC; Rochester Drug Cooperative, Inc.; and Cesar Castillo, Inc.

In response to this Order, twenty-three (23) new DPPs joined individually in the MDL case,[6] including the so-called "Big Three" pharmaceutical wholesalers: McKesson, AmerisourceBergen, and Cardinal Health. Defendants and the twenty-three (23) new DPPs proposed a Joint Stipulation to the court "in an effort to conserve judicial resources and reduce the inefficiencies that would occur should the parties re-litigate issues that have already been decided . . . in the [MDL case]." ECF No. 1696 at 1. The court

---

[6] These twenty-three (23) new DPPs joined the case as set forth below.

The court granted the "Joinder Plaintiffs'" Motion to Intervene, ECF No. 1580, on July 22, 2022, ECF No. 1629. The "Joinder Plaintiffs" consist of McKesson Corp.; AmerisourceBergen Corp.; AmerisourceBergen Drug Corp.; H.D. Smith, LLC; Smith Medical Partners, LLC; Valley Wholesale Drug Co., LLC; Cardinal Health, Inc.; The Harvard Drug Grp., LLC; Cardinal Health P.R. 120, Inc.; Meijer, Inc.; Meijer Distrib., Inc.; SUPERVALU, Inc.; Wegmans Food Mkts., Inc.; KPH Healthcare Servs., Inc. a/k/a Kinney Drugs, Inc.; and MLI RX, LLC. The original three DPPs moved, pursuant to Fed. R. Civ. P. 15(a)(2), for leave to amend its Complaint to add the Joinder Plaintiffs. ECF No 1581. The court granted this motion on July 22, 2022, ECF No. 1630, and the Complaint was so amended, see ECF No. 1642.

The "Burlington Plaintiffs" filed their own complaint, see No. 2:22-cv-269 (E.D. Va. June 30, 2022) (ECF No. 1), which was consolidated with the MDL case by order of the court on July 25, 2022, ECF No. 1632. The "Burlington Plaintiffs" consist of Burlington Drug Co., Inc.; Dakota Drug, Inc.; JM Smith Corp. d/b/a Smith Drug Co.; Louisiana Wholesale Drug Co., Inc.; North Carolina Mutual Wholesale Drug Co.; Prescription Supply, Inc.; and Value Drug Co.

Finally, Giant Eagle, Inc., filed its own complaint, see No. 2;22-cv-268 (E.D. Va. June 30, 2022) (ECF No. 1), which was consolidated with the MDL case by order of the court on July 25, 2022, ECF No. 1631.

4

approved the Joint Stipulation, ECF No. 1730, binding the new DPPs to various prior and pending Orders of the court. Further, the Joint Stipulation limited the new DPPs' discovery rights, such that they:

> (i) shall seek no additional discovery of the defendants or non-parties in this matter, and;
> (ii) will not seek to serve additional expert reports in this matter other than supplemental damages reports.

ECF No. 1696 at 5.

On July 28, 2022, Defendants propounded on the new DPPs various discovery requests.[7] The requests included eighteen (18) requests for admission ("RFA"), ECF No. 1666 Ex. 1; twenty-one (21) interrogatories, id. Ex. 2; and wide-ranging requests for production ("RFP") from all new DPPs, id. Exs. 3-5. After the parties were unable to reach an agreement regarding the new discovery requests, a hearing was held on August 17, 2022, to resolve the dispute. See ECF No. 1693 ("Discovery Hearing Transcript"). At said hearing, Judge Miller heard argument from counsel for Defendants and the new DPPs and issued an oral ruling, the instant R&R, directing how discovery from the new DPPs should proceed.

The new DPPs were to respond to *all* RFAs; to seventeen (17) of the twenty-one (21) requested interrogatories; and to a limited

---

[7] See ECF No. 1665, 1666 (Defendant's declaration regarding discovery and brief in support); ECF No. 1667, 1668 (Plaintiff's declaration regarding discovery and brief in support).

5

selection of the propounded RPAs. Id. at 167 (emphasis added). The bulk of argument during the August 17 hearing related to the relevance and proportionality of the propounded RFPs. Judge Miller, after determining that the RFPs consisted of "really, really broad requests," limited their scope to "business forecasts related to the expected price of Zetia or generic Zetia after loss of exclusivity." Id. at 133-34, 169. Further, discovery limitation included the source of production to the Big Three Wholesalers and three other new DPPs (Giant, Myer, and KPH). Id. at 169. Finally, "[w]ith respect to new witnesses," Judge Miller noted that he "will certainly entertain a motion to compel a specific deposition," if Defendants identified a particular need following the new DPPs' production of discovery. Id. at 168.

On August 31, 2022, Defendants submitted their Objections to the R&R. ECF No. 1709. Plaintiffs responded on September 14, 2022, ECF No. 1731, and Defendants replied in turn on September 20, 2022, ECF No. 1734. Thus, having been fully briefed, this matter is now ripe for adjudication.

## II.

The court will not disturb a magistrate judge's ruling on non-dispositive pre-trial matters, unless the ruling is "clearly erroneous or is contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire

evidence is left with the definite and firm conviction that a mistake has been committed." United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948). When assessing whether a ruling is "contrary to law," a district court must review the magistrate judge's legal conclusions de novo. See 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3069 (3d ed. 2002) ("Regarding legal issues, the language 'contrary to law' appears to invite plenary review."); PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 15 (1st Cir. 2010) (accord); Bruce v. Hartford, 21 F. Supp. 3d 590, 593 (E.D. Va. 2014) (Cacheris, J.) (accord).

However, because of "the fact-specific character of most discovery disputes," the decisions of a magistrate judge concerning discovery disputes "should be afforded great deference." In re Outsidewall Tire Litig., 267 F.R.D. 466, 470 (E.D. Va. 2010) (Ellis, J.) (citing United States v. Abonce-Barrera, 257 F.3d 959, 969 (9th Cir. 2001); see In re Suboxone Antitrust Litig., 325 F.R.D. 551, 553 (E.D. Pa. 2016) ("Issues of relevancy are traditionally left to the discretion of the trial court, and, consequently, the standard of review in most instances is not the explicit statutory standard, but the clearly implicit standard of abuse of discretion.") (internal citations omitted); Malibu Media, LLC v. John Does 1-23, 878 F.Supp.2d 628, 629 (E.D. Va. 2012) (Hilton, J.). Ultimately, "altering a magistrate judge's

non-dispositive orders is extremely difficult to justify." CertusView Techs., LLC v. S&N Locating Servs., LLC, 107 F.Supp.3d 500, 504 (E.D. Va. 2015) (Davis, J.) (cleaned up); see also Wright & Miller, et al., supra, § 3069.

Finally, according to the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense and *proportional* to the needs of the case." Fed. R. Civ. P. 26(b)(1) (emphasis added). However, the scope of discovery may be "otherwise limited by court order," particularly if "the burden or expense of the proposed discovery outweighs its likely benefit." Id. Where parties joined in a case individually following the denial of class certification, those new parties remain subject to discovery pursuant to Rule 26. In re Modafinil Antitrust Litig., 837 F.3d 238, 256 (3d Cir. 2016). However, even if the existing parties to the litigation are entitled to discovery from the new entrants, the court may nevertheless, "in its discretion, limit discovery." Id. (citing Fed. R. Civ. P. 26(b)(2)(C)(i)).

### III.

Defendants contend in their Objections that the R&R bars them from conducting "virtually all discovery" requested from the new DPPs. ECF No. 1709 at 4. Defendants submit that their discovery requests are both relevant and proportional to the needs of the case and characterize Judge Miller's ruling as improperly relying

on "an MDL judge's case management power" to "trump Defendants' right . . . to obtain basic, non-duplicative discovery from entities that only recently became parties to this case." Id. at 3. Thus, Defendants argue that the R&R "constitutes clear error." Id. The court disagrees.

As an initial matter, Defendants' argument misconstrues the impact of the MDL device on a presiding judge's discretion to resolve non-dispositive matters. In their Objections, Defendants point to an opinion in the Sixth Circuit which emphasized that "the requirements of the Civil Rules in an MDL case . . . are the same as those for ordinary litigation on an ordinary docket." In re Nat'l Prescription Opiate Litig., 956 F.3d 838, 844 (6th Cir. 2020) ("In re Nat'l"). This proposition, Defendants argue, supports a finding that Judge Miller relied too heavily on his status as an MDL judge to "keep[] the train moving forward," despite that their discovery requests would otherwise be proportional in a non-MDL case. ECF No. 1709 at 4. Yet later, in the same opinion, the Sixth Circuit clarified that:

> None of this is to say that an MDL court lacks broad discretion to create efficiencies and to avoid unnecessary duplication in its management of pretrial proceedings in the MDL.

Id. at 845. The court simply stated the requirement that "an MDL court . . . find efficiencies *within* the Civil Rules, rather than *in violation* of them." Id. (emphasis added).

9

Defendants' reliance on In re Nat'l also overlooks that the case was not addressing a discovery matter, but rather a matter potentially fatal to one of the plaintiffs' claims: whether to grant leave to amend the complaint. Id. at 843. The MDL judge in In re Nat'l erred because he ran afield when deciding a matter that could have prevented the plaintiffs from bringing a claim in the first instance, not because of his exercise of discretion on a discovery matter. See id. This distinction becomes clear through analysis of a Ninth Circuit case, on which the In re Nat'l court itself relied:

> There is much, of course, that an MDL court can do in its sound discretion in order to manage multidistrict litigation effectively . . . . In discretionary matters going to the phasing, timing, and coordination of the cases, the power of the MDL court *is at its peak*. But when it comes to motions that can spell the life or death of a case, . . . such as a motion to amend pleadings, it is important for the district court to articulate and apply the traditional standards governing such motions.

In re Korean Air Lines Co., Ltd., 642 F.3d 685, 700 (9th Cir. 2011) (emphasis added); see In re Showa Denko K.K. L-Tryptophan Products Liab. Litig.-II, 953 F.2d 162, 165 (4th Cir. 1992) ("The multiplicity of suits requires that the district court be allowed to . . . *limit and manage discovery*, etc. to minimize expense to all litigants and provide judicial efficiency.") (emphasis added). Here, the court determines that the Magistrate Judge's discretion in this case, when "limit[ing] and manag[ing] discovery," 953 F.2d at 165, was "at its peak," 642 F.3d at 700.

With the weight of an MDL judge's discretion over this matter precisely defined, and in this case "at its peak," the court now turns to Defendants' Objections as they relate to the proportionality of their propounded discovery, pursuant to Rule 26. For the reasons stated below, the court **FINDS** that the R&R's limitations on discovery is not "clear error or [] contrary to law," 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). This finding is in careful consideration of the level of both the deference owed to a magistrate judge's R&R regarding discovery, and the heightened case management power of an MDL judge's exercise of discretion in discovery matters.

### A. Relevance of Defendants' Requests

At the August 17, 2022, hearing, Judge Miller appropriately analyzed the relevance of Defendants' proposed discovery. As Judge Miller pointed out, Defendants are not unaware of the facts relevant to the new DPPs. ECF No. 1693 at 130. Instead, the record in this case is "very, very well-developed" at this late stage of the litigation, since the original DPPs underwent extensive discovery of their own, and the new DPPs are simply "join[ing] in those [parties'] contentions." Id.

Defendants counter that the record as to the new DPPs is, in fact, not well-established because the new entrants "include the Big Three Wholesalers who account for more than 95% of the claimed damages in this case . . . ." ECF No. 1709 at 2. Further, Defendants

emphasize that the sophistication of the Big Three Wholesalers supports that they are the "most likely" DPPs to have "responsive materials." Id. at 13.

This point is well-taken, yet Judge Miller correctly identified several facts which reduce the likelihood that the full scope of Defendants RFPs would result in relevant evidence. Central to Judge Miller's analysis on this point was the fact that the new DPPs stipulated to be bound by numerous prior and pending Orders imposed on the original DPPs. See ECF Nos. 1696, 1701, 1730. As such, the new DPPs "do not get to relitigate a bunch of questions, including discovery . . . [and] privilege objections that have already been ruled on and decided." ECF No. 1693 at 127; see id. at 140, 146, 166. With these issues already resolved and binding on the new DPPs, counsel for Plaintiffs noted that they "don't intend to call an awful lot of representatives from [the new DPPs] at trial," instead, Plaintiffs intend to simply "prove up the scope of [the new DPPs'] damages by the extent of their purchases and leave it at that." Id. at 135. Therefore, at the hearing, Judge Miller expressed doubt that much new discovery would even be relevant to Defendants' case, considering that the new DPPs' purchases will be established at trial "based on sales data that the *Defendants* produce." Id. at 149-50 (emphasis added).

In their Objections to the R&R, Defendants directly reject this suggestion and contend that the new discovery requests are tailored to issues that "remain unsolved" after the stipulations. ECF No. 1709 at 14. Indeed, much of the hearing was spent attempting to identify what, exactly, Defendants expect to find through additional discovery that remains unresolved after the stipulations. ECF No. 1693 at 137-42. Eventually, Defendants clarified that they "believe there is an employee or two or three at the [Big Three Wholesalers]" who made forecasts predicting the outcome and impact of the litigation between Defendants, id. at 142-43, and that, if discovered, these documents would be "directly relevant" to potentially undermine the experts' opinions at trial, id. at 151-52.[8]

Notably, even though Judge Miller harbored significant doubt as to whether these forecasts would be relevant, unless they were part of the basis on which the experts' opinions relied, id. at 151, he ordered Plaintiffs to produce them, id. at 168-69.[9] Therefore, it is unclear at this point what Defendants contend

---

[8] Defendants' "suspicion" that the Big Three Wholesalers may have documents monitoring and forecasting the likely outcome and impact of the Merck-Glenmark litigation results from the existence of analogous documents not in this case, but uncovered in a similar case. See ECF No. 1693 at 156-57. Defendants continue to belabor "looking for a needle in a haystack," at great expense, assuming it exists.

[9] See supra note 8.

13

could be potentially relevant to their case that was actually truncated by the R&R. This conclusion is further supported by the fact that the extensive RFPs imposed upon the original DPPs, which used markedly similar terms, "didn't produce anything that [Defendants] apparently found valuable." Id. at 145-46.

To conclude, Judge Miller's assessment of relevance under Rule 26 fell within well his wide discretion as an MDL judge and was not "clearly erroneous or [] contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

### B. Proportionality of Defendants' Requests

Judge Miller correctly and appropriately analyzed the proportionality of Defendants' proposed discovery. To start, the "really, really broad requests," ECF No. 133-34, propounded on the new DPPs were unlikely to have been "blessed" by the court, even if the new entrants to the MDL had joined as individual parties from the start, id. at 139. As such, even without relying on the late stage of the litigation, it was appropriate to limit the extent of the propounded RFPs to not unnecessarily overburden the parties.

Accordingly, as discussed at length above, Judge Miller devoted significant time to carefully identify a proportionate level of RFPs, considering their likely relevance following the parties' stipulations. Beyond that, "it would be disproportionately burdensome to run searches through the files of

14

multiple custodians to seek what not only is a needle in a haystack, but also is remotely relevant." In re Loestrin 24 Fe Antitrust Litig., MDL No. 2472, 2017 WL 1491911, at *6 (D.R.I. March 15, 2017) (finding, in a reverse payment settlement case, that the parties should agree to limit the scope of discovery, where the defendants sought the plaintiff's internal, strategy documents).

Notwithstanding the significance of the RFPs ordered by Judge Miller, Defendants submit that the limitations on discovery at this juncture will force them to "proceed to trial . . . without any meaningful access to [the new DPPs'] documents and testimony." ECF No. 1709 at 6. The court continues to disagree. In addition to the RFPs, the new DPPs are still ordered to respond to *all* of the RFAs and to seventeen (17) of twenty-one (21) interrogatories. ECF No. 1693 at 167. Additionally, Defendants may depose any witnesses to be called by the new DPPs at trial, and they retain the right to compel additional depositions, should a sufficient showing be made following this production. Id. at 168.

Regarding Defendants' argument that the R&R was too heavily influenced by the close proximity to trial,[10] the court finds

---

[10] The court notes that trial is not scheduled to begin until April 17, 2023. See ECF No. 1765. This argument is becoming tiresome and is beginning "to ring hollow," after four years of extended litigation and extensive discovery. See generally infra text at 16-17.

persuasive Judge Miller's response that Defendants failed to seize the opportunity to request discovery from the new DPPs when they were "elephant[s] in the room" as absent class members. Id. at 163-64. ("[Defendants] certainly knew who it was selling Zetia and Ezetimibe to . . . ."). See Fed. R. Civ. P. 26(b)(2)(C)(ii) ("The court must limit the frequency or extent of discovery otherwise allowed by these rules . . . if it determines that . . . the party seeking discovery has had ample opportunity to obtain the information by discovery in the action."). Even so, despite this reasoning and its support in the Federal Rules, Defendants complain that it runs contrary to earlier comments by the court. ECF No. 1709 at 14-15.

In particular, Defendants claim, in this drawn-out litigation, that previous statements of the court acknowledging Defendants' higher burden to request discovery from absent class members explains their decision to wait until the new DPPs were added to the MDL to make their discovery requests. Id. (citing ECF No. 967 at 35-36). Yet, Defendants' emphasis now on the prejudice they face contradicts their point: If Defendants suffer such prejudice now, certainly Defendants would have met the higher burden to propound discovery on the new DPPs when they remained unnamed plaintiffs, and the court's previous statements would have been inapposite.

Additionally, Defendants point to the court's acknowledgement at the class certification stage that the new DPPs would be "subject to" discovery if they ultimately joined the MDL individually. Id. (quoting In re Modafinil Antitrust Litig., 837 F.3d at 257). Yet, that is precisely what the instant R&R orders. Nothing in the court's earlier comments nor in the In re Modafinil decision promises that Defendants would be "entitled" to any and all discovery requests from new entrants. ECF No. 1709 at 3.

Ultimately, the R&R ensures that Defendants will receive meaningful discovery from the new DPPs that is proportionate to their needs. When determining the appropriate limitations to impose on the propounded discovery, Judge Miller found efficiencies "*within* the Civil Rules, not *in violation* of them." In re Nat'l, 956 F.3d at 845 (emphasis added). Therefore, the Magistrate Judge's exercise of discretion was not "clearly erroneous or [] contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).

### IV. CONCLUSION

For the reasons stated above, Defendants' Objections are **OVERRULED**, and Magistrate Judge Miller's R&R at the August 17, 2022, hearing is **AFFIRMED**. Accordingly, the parties are **DIRECTED** to proceed with discovery pursuant to Judge Miller's well-reasoned R&R. See ECF No. 1693 at 166-178.

The Clerk is **DIRECTED** to send a copy of this Memorandum Order to counsel for all parties.

**IT IS SO ORDERED.**

/s/
Rebecca Beach Smith
Senior United States District Judge

Rebecca Beach Smith
Senior United States District Judge

November 18, 2022