UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| IN RE: ZETIA (EZETIMIBE) ANTITRUST LITIGATION | MDL No. 2:18-md-2836 |
| THIS DOCUMENT RELATES TO: ALL ACTIONS | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE NO. 13 TO EXCLUDE EVIDENCE AND ARGUMENT RELATING TO THEIR INVOCATION OF THE ATTORNEY-CLIENT PRIVILEGE AND WORK-PRODUCT DOCTRINE**

Pursuant to Rules 401, 402 and 403 of the Federal Rules of Evidence, Defendants Merck & Co., Inc., Merck Sharp & Dohme LLC (f/k/a Merck Sharp & Dohme Corp.), Schering-Plough Corp., Schering Corp., and MSP Singapore Co. LLC (collectively "Merck"), and Glenmark Pharmaceuticals Limited and Glenmark Pharmaceuticals Inc., USA, incorrectly identified as Glenmark Generics Inc., USA (collectively, "Glenmark") (together with Merck, "Defendants") hereby move in limine to preclude Plaintiffs from presenting evidence, argument or questions that seek to force Defendants to invoke the attorney-client privilege or attorney work product doctrine in front of the jury, or that invites the jury to draw adverse inferences from Defendants' invocations of any such privilege. Specifically, and without limitation, Defendants seek an order precluding Plaintiffs from: (1) informing the jury that Defendants have invoked the attorney-client privilege and attorney work product doctrine or suggesting that the jury draw an adverse inference from that invocation; (2) asking questions of witnesses or making arguments that are intended to lead to privilege or work product objections in the presence of the jury; (3) introducing Defendants' privilege logs into evidence; and (4) pointing to documents appropriately withheld from discovery by Defendants on privilege or work product grounds. In sum, Defendants ask the Court to preclude Plaintiffs from bringing to the jury's attention, in any way, Defendants' invocation of the attorney-client privilege and work product doctrine.

## I. ARGUMENT

The attorney-client privilege reflects "the imperative need for confidence and trust" between lawyer and client. *Trammel v. United States*, 445 U.S. 40, 51 (1980). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interest in observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The confidentiality of attorney-client communications is "not

only an interest long recognized by society but also one traditionally deemed worthy of maximum legal protection." *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 90 (3d Cir. 1992).

If the invocation of the privilege exposed litigants to an adverse inference about the content of privileged communications, then the privilege would be severely undermined. The only way to escape the inference would be to reveal the very communications that the privilege is designed to protect. For that reason, courts have long held that litigants may not seek, and juries may not draw, adverse inferences from the invocation of the privilege. *See, e.g.*, *In re Tudor Assocs., Ltd., II*, 20 F.3d 115, 120 (4th Cir. 1994) ("A negative inference should not be drawn from the proper invocation of the attorney-client privilege."); *Parker v. Prudential Ins. Co. of Am.*, 900 F.2d 772, 775 (4th Cir. 1990) (per curiam) ("a client asserting the privilege should not face a negative inference about the substance of the information sought"); *United States v. Foster*, 309 F.2d 8, 15 (4th Cir. 1962) (a party's "invocation of the privilege could not be the subject of debate before the jury. It is an ancient and venerated right."); *see also Freedom Card, Inc. v. JP Morgan Chase & Co.*, 432 F.3d 463, 479–80 n.25 (3d Cir. 2005) ("[I]t is improper to draw an inference of bad faith from the assertion of the attorney-client privilege."); *Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 226 (2d Cir. 1999) ("[T]he district court erred in drawing an adverse inference against Nabisco by reason of its invocation of the attorney-client privilege."), *abrogated on other grounds*, *Moseley v. V Secret Catalogue*, 537 U.S. 418 (2003). The principle applies to the invocation of the work product doctrine as well. *See, e.g.*, *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1344 (Fed. Cir. 2004) ("[N]o adverse inference shall arise from invocation of the attorney-client and/or work product privilege."); *United States v. One Tract of Real Prop.*, 95 F.3d 422, 428 (6th Cir. 1996) ("[A] court should not draw adverse inferences . . . if the work product privilege protects the information sought.").

Courts therefore routinely preclude litigants from introducing evidence or making statements intended to induce the jury to draw an adverse inference from their adversaries' invocation of privilege. *See Sharer v. Tandberg*, 2007 WL 983849, at *1–2 (E.D. Va. Mar. 27, 2007) (granting a motion in limine barring any reference at trial to the plaintiff's invocation of privilege); *see also Goldberg v. 401 N. Wabash Venture LLC*, 2013 WL 1816162, at *7 (N.D. Ill. Apr. 29, 2013) (granting motion in limine prohibiting the plaintiff both from "ask[ing] any question she reasonably expects will cause Defendants to assert the attorney-client privilege" and from mentioning at trial "that Defendants consulted with lawyers or previously invoked the attorney-client privilege"); *McKesson Info. Sols., Inc. v. Bridge Med., Inc.*, 434 F. Supp. 2d 810, 812 (E.D. Cal. 2006) (granting motion in limine and ordering that plaintiff "is precluded, in all respects, from introducing evidence or testimony pertaining to [defendant's] assertion of the attorney-client privilege over the opinion of counsel it received regarding the '716 patent"); *Williams v. Sprint/United Mgmt. Co.*, 464 F. Supp. 2d 1100, 1108 (D. Kan. 2006) (finding it inappropriate to force opponent "to either invoke the privilege in the jury's presence (creating the negative inference desired by plaintiffs) or waive the privilege by responding to the question"); *Beraha v. Baxter Healthcare Corp.*, 1994 WL 494654, at *3 (N.D. Ill. Sept. 6, 1994) (granting motion in limine where "the only purpose for which [plaintiff] seeks to admit evidence of the fact that these communications occurred is to enable the jury to draw an adverse inference therefrom. This is exactly what is prohibited.").

This principle has been applied in other reverse payment cases to preclude parties from asking questions that they would reasonably expect to lead to the invocation of privilege, from directing the jury to past assertions of the privilege, or from inviting the jury to draw an adverse inference from the invocation of privilege. For example, in *King Drug Co. of Florence, Inc. v.*

3

*Cephalon, Inc.*, 2016 WL 278054 (E.D. Pa. Jan. 22, 2016), the court held that, because any such inference by the jury would be "wholly improper," the "Plaintiffs may not mention or draw the jury's attention to Defendants' invocation of the attorney-client privilege or the work product doctrine." *Id.* at *2. The court also held that the plaintiffs "also may not ask any question of a defense witness where it would be reasonable to conclude that the question will elicit an invocation of the attorney-client privilege." *Id.*; *In re Lidoderm Antitrust Litig.*, 2018 WL 7814761, at *4 (N.D. Cal. Feb. 7, 2018) ("instruct[ing] plaintiffs not to elicit privilege objections for the sole purpose of invoking a privilege objection" in front of the jury).

This Court, too, should issue an order precluding Plaintiffs from asking questions reasonably likely to draw privilege or work-product objections and from suggesting that the jury draw an adverse inference from Defendants' invocation of the privilege or the work product doctrine. For example, Plaintiffs might try to draw the jury's attention to the communications between Defendants and their lawyers concerning, among other things, Merck's odds of prevailing in its patent dispute with Glenmark, the reasons why Merck and Glenmark entered into the challenged settlement, and any antitrust issues associated with that settlement. Defendants, who have not asserted an advice-of-counsel defense in this case, have properly invoked the attorney-client privilege and the work product doctrine and declined to produce such privileged communications in discovery. Plaintiffs should not be allowed to introduce evidence of or comment on these privilege invocations, nor should they be allowed to ask questions that they know or can reasonably anticipate will lead to privilege objections in the presence of the jury. The only purpose of such tactics would be to provoke the assertion of privilege and create the very negative inference that is not permitted under well-settled federal law, including in this Circuit.

Plaintiffs have already demonstrated a willingness to engage in such tactics. For example, in the deposition of Paul McCrorey, counsel for Plaintiffs repeatedly asked Mr. McCrorey whether Merck's lawyers directed him to perform certain financial analyses concerning Zetia. Counsel for Merck objected on privilege grounds and instructed Mr. McCrorey not to answer approximately 25 times. Ex. 6, McCrorey Dep. at 79–89, 97–102, 108, 113, 115, 121.[1] Even a much shorter version of the same line of questioning in front of the jury would impermissibly invite the jury to draw a negative inference and conclude that Defendants have something to hide. *See Broyles v. Cantor Fitzgerald & Co.*, 2016 WL 7656028, at *2 (M.D. La. Sept. 8, 2016) ("[C]alling the jury's attention to [the attorney-client] privilege would only serve to imply that the jury should draw an adverse inference, which this Court finds to be improper.").

Similarly, Plaintiffs should not be allowed to point to documents that Defendants appropriately withheld on grounds of privilege or work product in discovery. For example, Plaintiffs may try to point the jury to the existence of three privileged documents that were inadvertently produced, clawed back, and then returned to Merck after the Magistrate Judge conducted an in camera review and rejected Plaintiffs arguments that the documents were not privileged or that the privilege was waived. Dkt. 277, Pls' Mem. in Supp. of Mot. for an Order Compelling Production of Clawed Back Documents; Dkt. 296, Merck's Opp; Dkt 310 Pls' Reply; Dkt. 379, Mem. Order. Plaintiffs may do this so that they can argue to the jury that Merck analyzed certain issues and hope that the jury will speculate that such an analysis was favorable to Plaintiffs' case. This is entirely improper, particularly where the Court has reviewed the documents and confirmed that the assertion of privilege was proper and not waived. As another example, during

---

[1] All exhibits cited herein are attached to the Declaration of Samuel G. Liversidge, filed in support of Defendants' motions in limine.

5

the course of discovery, Plaintiffs moved to compel Defendants' employees' decade-old cellular-telephone records, including privileged text messages. Merck successfully opposed that effort, with the Court ordering Merck to produce only limited non-privileged information. Dkt. 529, Merck's Opp. to Pls.' Mot. to Compel; Dkt. 644, Order Granting Pls. Mot. to Compel in Part at 2. Plaintiffs should not be permitted to suggest that Defendants withheld key text messages from them when those messages were appropriately withheld on grounds of privilege or work product.

Nor should Plaintiffs be permitted to introduce Defendants' privilege logs in an effort to suggest to the jury that it should draw an adverse inference from the existence and timing of certain privileged communications. Plaintiffs have asked Defendants' witnesses, including Mr. McCrorey, about these privilege logs in deposition. Ex. 6, McCrorey Dep. at 89–99. Plaintiffs should not be permitted to use Defendants' privilege logs, which are not ordinary course business documents but rather are documents created by outside counsel to provide the basis for withholding listed documents from discovery to try mislead the jury into believing that Defendants inappropriately withheld information that might have supported Plaintiffs' case. *See Avocent Redmond Corp. v. Raritan Ams., Inc.*, 921 F. Supp. 2d 229, 236 (S.D.N.Y. 2012) (rejecting plaintiffs' assertion that a privilege log and certain invoices that showed "the existence of some correspondence" somehow "raise[d] an inference that the conversations were directed to the deliberate withholding of the [material] from the USPTO").

Any such effort would invite the jury to draw an impermissible negative inference from Defendants' invocation of the privilege. *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, 238 F. Supp. 3d 314, 337–38 (N.D.N.Y. 2017) (refusing to "make adverse inferences based on a party's assertion of the attorney-client privilege" on privilege-log entries purportedly demonstrating "ill motives"); *Galderma Labs. v. Paddock Labs.*, 2011 WL 1119700, at *4 (N.D. Tex. Mar. 28, 2011)

6

(same); *Anascape, Ltd. v. Microsoft Corp.*, 2008 WL 7182476, at *3 (E.D. Tex. Apr. 25, 2008) (same). Moreover, allowing Plaintiffs to use the privilege logs at trial would invite improper speculation by the jury based on the contents of privileged documents not in evidence and would be more prejudicial than probative. *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 2018 WL 3135847, at *13 (N.D.N.Y. June 27, 2018) (precluding admission of privilege log when defendant "has not identified any relevant, nonspeculative inferences that could be drawn from it"); *Old Republic Ins. Co. v. Ness*, 2006 WL 3782994, at *13 (N.D. Ill. Dec. 21, 2006) (finding a privilege log inadmissible because "any probative value is substantially outweighed by the probability of jury confusion"); *see also Citizens Union of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 147 (S.D.N.Y. 2017) ("It is difficult for this Court to ideate a use of the documents listed on the Privilege Log that would not require impermissible speculation or the consideration of hearsay"); *Wilson v. AM Gen. Corp.*, 1996 WL 599373, at *13 (N.D. Ind. Sep. 16, 1996) (inferences from privilege log based on "rank speculation that the document not produced on the basis of attorneyclient privilege somehow would show [an overall scheme] . . .").

## II.   CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court issue an order precluding Plaintiffs from:

1. Informing the jury that Defendants have invoked the attorney-client privilege or work product doctrine or introducing evidence or making argument suggesting to the jury that it should draw inferences adverse to Defendants because of Defendants' invocation of the attorney-client privilege or the work product doctrine;

2. Questioning witnesses or making an argument that is reasonably likely to draw a privilege or work-product objection in the presence of the jury, including by asking

7

questions relating to legal advice concerning the underlying patent litigation or the settlement at issue;

3. Introducing Defendants' privilege logs into evidence or otherwise pointing to documents withheld from discovery on privilege or work product grounds; or

4. In any other way calling attention to the existence of privileged communications or Defendants' invocation of the attorney-client privilege.

Dated:  January 17, 2023                         Respectfully submitted,


/s/ Stephen E. Noona
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510-1665
Telephone:  (757) 624-3239
Facsimile:  (888) 360-9092
senoona@kaufcan.com

Samuel G. Liversidge (*pro hac vice*)
Christopher D. Dusseault (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  (213) 229-7855
Facsimile:  (213) 229-6855
SLiversidge@gibsondunn.com
CDusseault@gibsondunn.com

Ashley Johnson (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX  75201-6912
Telephone:  (214) 698-3320
Facsimile:  (214) 571-2936
AJohnson@gibsondunn.com

Eric J. Stock (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY  10166
Telephone:  (212) 351-2301
Facsimile:  (212) 716-0801
estock@gibsondunn.com

Tarek Ismail (*pro hac vice*)
Jennifer L. Greenblatt (*pro hac vice*)
GOLDMAN ISMAIL TOMASELLI BRENNAN & BAUM LLP
200 South Wacker Drive, 22nd Floor
Chicago, IL  60606
Telephone:  (312) 681-6000

Facsimile: (312) 881-5191
tismail@goldmanismail.com
jgreenblatt@goldmanismail.com

*Counsel for Defendants Merck & Co., Inc.; Merck Sharp & Dohme Corp., now known as Merck Sharp & Dohme LLC; Schering-Plough Corp.; Schering Corp. and MSP Singapore Co. LLC*

<u>/s/ Richard H. Ottinger</u>
Richard H. Ottinger (VSB No.: 38842)
Dustin M. Paul (VSB No.: 75287)
Edward J. Powers (VSB No. 32146)
WOODS ROGERS VANDEVENTER BLACK
101 West Main Street, Suite 500
Norfolk, VA 23510
Telephone: (757) 446-8600
Facsimile: (757) 446-8670
rottinger@vanblacklaw.com
dpaul@vanblacklaw.com
epowers@vanblacklaw.com

Jay Philip Lefkowitz (*pro hac vice*)
Devora Whitman Allon (*pro hac vice*)
Kevin Michael Neylan, Jr. (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 390-4092
Facsimile: (212) 446-4900
lefkowitz@kirkland.com
devora.allon@kirkland.com
kevin.neylan@kirkland.com

*Counsel for Defendants Glenmark Pharmaceuticals Ltd. and Glenmark Pharmaceuticals Inc., USA, incorrectly identified as Glenmark Generics Inc., US*

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2023, I caused a true and correct copy of the foregoing to be filed on the Court's CM/ECF system, which serves copies of the same upon all counsel of record.

DATED:  January 17, 2023

/s/     Stephen E. Noona
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 W. Main Street, Suite 2100
Norfolk, VA 23510-1665
Telephone:  (757) 624-3239
Facsimile:  (888) 360-9092
senoona@kaufcan.com

*Counsel for Defendants Merck & Co., Inc., Merck Sharp & Dohme Corp., now known as Merck Sharp & Dohme LLC, Schering-Plough Corp., Schering Corp., MSP Singapore Co. LLC*