UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

IN RE: ZETIA (EZETIMIBE)          :
ANTITRUST LITIGATION              :
                                  :
                                  :     Case No. 2:18-md-2836
                                  :
This Document Relates to:         :
All Actions                       :

<u>OMNIBUS ORDER ON MOTIONS IN LIMINE</u>

In this multidistrict litigation, Plaintiffs allege that Defendants Merck[1] and Glenmark[2] (collectively "Defendants") conspired to delay generic competition for the branded cholesterol medication Zetia by artificially prolonging its patent protection. On March 22 and 23, 2023, the court held a final pretrial conference, at which twenty-one pending motions were argued. The argued motions included nineteen motions *in limine*, Purchasers' Motion for Live Trial Testimony Via Contemporaneous Video Transmission, (ECF No. 1931), and Purchasers' Motion to Allocate Trial Time, (ECF No. 1983).[3] For the reasons stated more fully on

---

[1] "Merck" consists of Merck & Co., Inc.; Merck Sharp & Dohme Corp.; Schering-Plough Corp.; Schering Corp.; and MSP Singapore Co. LLC.

[2] "Glenmark" consists of Glenmark Pharmaceuticals Limited and Glenmark Pharmaceuticals Inc., USA, the latter incorrectly identified as Glenmark Generics Inc., USA.

[3] Only seventeen pending motions *in limine* were set for argument at the conference. However, when deciding Purchasers' Motion to Allocate Trial Time, (ECF No. 1983), the court heard argument and ruled on two additional motions *in limine* subsumed by that motion.

the record during the two-day conference, the court issues the following rulings:

1)   Purchasers' Motion *in Limine* to Preclude Defendants from Challenging the Validity of Direct Purchasers' or Retailers' Assignments, (ECF No. 1804, at 1), is GRANTED IN PART and DENIED IN PART.  Defendants do not seek to argue the validity of the DPPs' or Retailer Plaintiffs' assignments to the jury or seek to challenge the assignments based on lack of consideration.  March 23, 2023, Hr'g Tr. 9:15-16 (ECF No. 2032).  Therefore, no such argument will be presented.  But Purchasers must still introduce the assignments by stipulation or through witnesses to establish their basis to recover.

2)   Purchasers' Motion for Live Trial Testimony Via Contemporaneous Video Transmission, (ECF No. 1931), is GRANTED IN PART.  In this motion, Purchasers ask the court to authorize live remote testimony from three key witnesses: Vijay Soni ("Soni"), Glenmark's lead negotiator in the Glenmark patent litigation underlying this MDL; Timothy Hester ("Hester"), the laywer who drafted the contested Settlement Agreement in the Glenmark litigation; and Paul Campanelli ("Campanelli"), the former CEO of Par Pharmaceuticals.  All three witnesses are located outside of the subpoena power of this court as circumscribed in Federal Rule of Civil Procedure 45(c)(1).

Defendants argue that this court cannot authorize these witnesses to testify live during trial via remote technology because to do so would contravene the court's Rule 45(c)(1) subpoena power. However, by their own account, Purchasers are not asking this court to compel these witnesses to testify live during trial. Rather, they are merely requesting that the court allow the witnesses to testify live via remote technology if they otherwise choose to testify or are compelled to do so by some other court.[4] Consequently, the court need not issue any subpoena or make any ruling under Federal Rule of Civil Procedure 45. The only determination before this court is whether it should allow these witnesses, if otherwise choosing or compelled to testify, to do so via remote technology -- a determination that is controlled by Federal Rule of Civil Procedure 43.

Rule 43 states that, "[f]or good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location." Fed. R. Civ. P. 43(a). Factors commonly used to evaluate whether "compelling circumstances" exist in a particular case are articulated in In re Vioxx Prods. Liab.

---

[4] Whether Rule 45(a)(2) would allow other courts to subpoena the witnesses to testify in this action in the Eastern District of Virginia is a matter for those courts to resolve -- not this one. See Fed. R. Civ. P. 45(a)(2) ("A subpoena must issue from the court where the action is pending."). As stated during the hearing, this court expressly declined to compel attendance of any witness outside the subpoena reach described in Rule 45.

Litig., 439 F. Supp. 2d 640, 643 (E.D. La. 2006). The factors include "(1) the control exerted over the witness by the defendant; (2) the complex, multi-party, multi-state nature of the litigation; (3) the apparent tactical advantage, as opposed to any real inconvenience to the witness, that the defendant is seeking by not producing the witness voluntarily; (4) the lack of any true prejudice to the defendant; and (5) the flexibility needed to manage a complex multi-district litigation." Id.

Here, the court finds that there are compelling circumstances that would justify the presentation of live testimony from the witnesses described above by remote means with appropriate safeguards. These witnesses' testimony is central to disputed issues in this highly complex MDL, which has been pending for over four years and is set for a single five-week trial. The jury would benefit from hearing this important and complicated evidence presented live, rather than through recorded deposition designations.

Additionally, there is the possibility of some prejudice or surprise to Purchasers given privilege assertions during these witnesses' depositions. Based on the way the evidence is eventually presented at trial, areas of inquiry may open which Purchasers were unable to fully explore with the witnesses because of those privilege assertions. Allowing the witnesses to testify live via remote technology gives Purchasers the opportunity to

4

challenge testimony that turns out to be different from what was expected given the limited inquiry permitted thus far. As such, Purchases' Motion for Live Trial Testimony Via Contemporaneous Video Transmission, (ECF No. 1931), is GRANTED IN PART.

3) Defendants' Motion *in Limine* No. 3 to Preclude Evidence and Argument Regarding Litigation, Government Investigations, and Alleged Anticompetitive Acts Involving Defendants or any of their Current or Former Employees that Are Unrelated to Zetia, (ECF No. 1822, at 2), is GRANTED. Of the four categories of cases identified by Defendants as the principal targets of this motion, Purchasers contest the exclusion of evidence relating to only one -- specifically, Merck's settlement in <u>In re Nexium (Esomeprazole) Antitrust Litig.</u>, No. 12-md-02409 (D. Mass. Oct. 20, 2014), another pay-for-delay case. Like this action, <u>Nexium</u> involved a complicated underlying settlement agreement that -- importantly, at least from Purchasers' point of view -- was also drafted by Hester.

However, the court does not find that the settlement agreement in <u>Nexium</u> is sufficiently similar to the Settlement Agreement underlying this case to warrant its presentation to the jury at trial. The Nexium agreement's definition of "authorized generic" -- which Purchasers' claim was imported into the alleged no-AG provision in the Merck-Glenmark settlement -- defines that term to include any drug sold under the Nexium New Drug Applications

5

("NDAs") "but not under the trade name Nexium." Hester Dep. 159:4–11 (ECF No. 1886-2, at 5). By contrast, the alleged no-AG provision in the Merck-Glenmark settlement defines "Generic Ezetimibe" to include any drug sold under Merck's NDA for Zetia that "is not sold under the trademark Zetia® or another trademark or trade name of Schering, MSP, or their affiliates." Settlement Agreement § 1.14 (ECF No. 398-21, at 6) (emphasis added). This difference is material because it expands the drugs covered by the generic drug definition, thereby changing the definition's possible exclusionary effect. Given this key difference, evidence of the Nexium settlement would likely only confuse the jury in their assessment of the Settlement Agreement underlying this case. This concern is especially warranted in light of other evidence that will be presented regarding Hester's role in drafting the Merck-Glenmark settlement. As such, Defendants' Motion *in Limine* No. 3, (ECF No. 1822, at 2), is GRANTED IN PART.

4) Defendants' Motion *in Limine* No. 5 to Preclude References to "Big Pharma" or Similar Pejorative Terms, (ECF No. 1822, at 2), is GRANTED IN PART and DENIED IN PART. Pejorative descriptions of any party or lawyer have no place in the practice of law, and as such, a motion *in limine* should not be necessary to enforce that fundamental concept. All parties are prohibited from using pejorative terms or disparaging their opponents, and to that extent, this motion is GRANTED. However, the motion is DENIED to

the extent it seeks to exclude argument regarding pharmaceutical policy and the benefits of generic competition.  That argument is part of the background of the case on which the jury will need to be educated, and allowing the jury to hear it will not prejudice the defense in any way.  Additionally, as encompassed by and explained in the court's ruling on Purchasers' Motion *in Limine* No. 9, this motion is also DENIED to the extent it seeks to exclude non-pejorative references to the size and financial condition of the parties.

     5) Purchasers' Motion *in Limine* No. 6 to Preclude Defendants from Playing Affirmative Deposition Clips During the Purchasers' Case-in-Chief, Unless Testimony is Cross-Examination or Necessary for Completeness, (ECF No. 1804, at 2), is GRANTED. There are two related issues raised in this motion: (1) whether Defendants may play affirmative deposition designations in the Purchasers' case-in-chief; and (2) whether the counter-designations and completeness designations Defendants have offered thus far are so broad in scope that they are more appropriately characterized as affirmative designations.  The court finds that basic fairness in the presentation of evidence forecloses Defendants from playing affirmative deposition designations in the Purchasers' case-in-chief and that any counter- or completeness designation must be just that -- a counter designation within the scope of Purchasers' offered testimony or a completeness

7

designation necessary for the jury to fairly interpret the offered testimony. As such, Purchasers' Motion *in Limine* No. 6 is GRANTED.

6) Purchasers' Motion *in Limine* No. 9 to Exclude Mention of Relative Size or Financial Condition of the Purchasers, (ECF No. 1804, at 3), is GRANTED IN PART and DENIED IN PART. The court finds that evidence of the Purchasers' size and financial condition is relevant to the issue of purchasing power -- and specifically, the cost at which Purchasers could buy branded Zetia, which bears on the existence and extent of Purchasers' alleged damages. Additionally, admitting this evidence will not severely prejudice Purchasers, notwithstanding the fact that Purchasers plan to make their identity and size known to the jury upfront at trial. Consequently, this motion is DENIED with respect to Purchasers' size and financial condition. However, the motion is GRANTED to the extent it also sought to exclude pejorative references based on size or financial condition. The court will rely on counsel to not use its ruling on the admissibility of size and financial condition evidence as an excuse to take pejorative shots at other parties or lawyers.

7) Defendants' Motion *in Limine* No. 9 to Preclude Plaintiffs from Characterizing Themselves as Consumers or Asserting Consumer Harm, (ECF No. 1822, at 2), is GRANTED IN PART and DENIED IN PART. The driving force behind this motion is Defendants' concern that Purchasers will attempt to assert that

this case is about consumer harm when there are no consumer parties. Purchasers are not individual consumers, nor is there a consumer class in this case. Consequently, to the extent Purchasers intend to characterize themselves as individual consumers or consumer entities, this motion is GRANTED. However, the motion is otherwise DENIED. The antitrust laws are intended to benefit consumers. In that sense, every antitrust case -- including this one -- is ultimately about consumer harm. Purchasers' have a right to make general policy arguments about antitrust protections, and Defendants are not prejudiced by the simple fact of having to respond.

8) Defendants' Motion *in Limine* No. 10 to Preclude the Direct Purchaser Plaintiffs and Their Experts from Referring to Overcharges as Financial or Economic Injury or Harm, (ECF No. 1822, at 2), is DENIED. Similar to the previous motion, the concern animating this motion is that the DPPs and Retailer Plaintiffs will attempt to argue that they were financially or monetarily harmed on account of the overcharges they allege to have paid. Defendants ask the court to preclude any such arguments to ensure the DPPs and Retailer Plaintiffs only characterize their injury as overcharges, consistent with the federal antitrust laws. However, the DPPs and Retailer Plaintiffs claim they have no intention of asserting that they experienced any kind of financial harm to their bottom line or lost money as a result of the alleged overcharges.

9

Additionally, to the extent this motion seeks to prevent Purchasers from characterizing the impact of those overcharges as "damages," "harm," or "injury," it is DENIED. The terms "injury" and "damages" are used in the statute creating the cause of action which the Purchasers have brought. Precluding them from calling their antitrust damages an "injury" is too broad a relief to grant. As such, Defendants' Motion *in Limine* No. 10, (ECF No. 1822, at 2), is DENIED.

9) Purchasers' Motion *in Limine* No. 12 to Exclude Argument or Evidence That Defendants Disclosed the Settlement to the FTC and the FTC Took No Action, (ECF No. 1806, at 1), is GRANTED IN PART and DENIED IN PART. This motion addresses two distinct pieces of evidence: (1) Defendants disclosure of the Settlement Agreement to the FTC; and (2) the lack of responsive action taken by the FTC. With respect to the former, the motion is DENIED. Purchasers' case revolves around the Merck-Glenmark settlement agreement, which includes a requirement that the agreement must be disclosed to the FTC. It would be misleading to the jury and unfair to Defendants to allow Purchasers to present evidence of that requirement but prevent Defendants from confirming to the jury that they complied. However, this motion is GRANTED as to evidence that the FTC took no action on Defendants' disclosure. I find that, contrary to Defendants' assertions, there is not a significant risk that excluding the lack-of-action evidence will

10

cause the jury to infer that this case somehow arose from Defendants' disclosure to the FTC.  To the extent that risk does exist, I conclude that allowing the evidence poses a countervailing -- and more harmful -- risk that the jury could infer that the Settlement Agreement is lawful because the FTC knew about it, must have investigated, yet took no action.

10) Purchasers' Motion *in Limine* No. 13 to Exclude the Opinions of Securities Analysts Regarding the Merits of the Glenmark Patent Litigation, (ECF No. 1806, at 1), is GRANTED.  The subjects of this motion are financial analysts' reports opining on the strength of Merck's position in the Glenmark litigation.  They were prepared as guidance for valuing the company's stock and without access to the complete record of the litigation.  I find that these reports, authored by various non-lawyers, are replete with double hearsay and do not fit within any hearsay exception. I also conclude that the reports constitute undisclosed expert opinion and are minimally useful for impeaching Purchasers' patent merits expert, Robert Hrubiec, Ph.D., J.D. ("Hrubiec").  The reports' *de minimis* impeachment value is especially pronounced in light of other extensive evidence in the record that can be used for that purpose -- and the fact that Hrubiec's opinion is based on the complete case record from the Glenmark litigation, whereas these reports are based on other, more limited information.  For

these reasons, Purchasers' Motion *in Limine* No. 13, (ECF No. 1806, at 1), is GRANTED.

11)   Defendants' Motion *in Limine* No. 13 to Exclude Evidence and Argument Relating to Their Invocation of the Attorney-Client Privilege and Work-Product Doctrine, (ECF No. 1832), is GRANTED IN PART and DENIED IN PART.   In this motion, Defendants ask the court to prevent Purchasers from (1) asking questions in front of the jury that they reasonably expect will lead to the invocation of privilege; (2) informing the jury of past invocations of privilege; and (3) introducing into evidence and questioning witnesses about privilege logs which describe privileged documents.

As to the first and second issues, the motion is GRANTED to the extent it seeks to preclude Purchasers from asking questions with the intention of causing Defendants to invoke privilege in front of the jury, or asking questions to elicit the fact that privilege was previously invoked.   Purchasers claim that they do not intend to ask such questions and do not dispute that such questions would be overly prejudicial to Defendants.   However, the motion is DENIED on these two issues to the extent it seeks to preclude Purchasers from asking any question that results in an invocation of privilege.   There are simply too many ways that privilege could become a relevant issue at trial -- or that Purchasers could unintentionally ask a question that results in an invocation of privilege -- for the court to deem, in advance, any

12

question resulting in the invocation of privilege improper.  This is particularly so given the many privilege assertions surrounding the crucial and highly disputed evidence of Merck's views about the pending Mylan litigation, and the strength of its ezetimibe patent, at the time of its settlement with Glenmark.

As to the third issue, the motion is GRANTED to the extent that Purchasers seek to use the privilege logs' document descriptors as a possible basis for impeaching Defendants' witnesses.  The descriptors were not written by the individuals whose communications are at issue in the privilege log documents and who Defendants might present at trial -- they were written by attorneys litigating this case who reviewed those documents as part of the discovery process.  As such, the descriptors have minimal value for impeaching witnesses.  However, the motion is DENIED to the extent that <u>the fact</u> or <u>timing</u> of a communication is at issue.  These facts can be ascertained from the document descriptors without contravening the privilege or misleading the jury about what was communicated.

12)  Purchasers' Motion *in Limine* No. 14 to Exclude Evidence or Argument That the Reverse Payment is Not Large in Relation to Merck's Sales or Profits or Under <u>Actavis</u>, (ECF No. 1806, at 2), is DENIED.  At issue in this motion are the benchmarks the parties may use to argue or contest that the alleged reverse payment in the Settlement Agreement is large.  Citing <u>FTC v. Actavis</u>, 570

U.S. 136 (2013), Purchasers suggest that large should be measured in relation to avoided litigation costs.  However, as Defendants correctly point out, Purchasers misread Actavis to say that avoided litigation costs (along with the value of services provided by the generic manufacturer) are the only benchmarks for assessing the size of the payment.  To the contrary, Actavis merely held that avoided litigation costs are one possible benchmark for that determination at the motion to dismiss stage -- which this action passed long ago.  Nothing in Actavis suggests that an avoided litigation costs benchmark alone would be sufficient to establish liability at trial for Purchasers' Clayton Act claims.

Just as importantly, Purchasers' argument puts the "cart before the horse."  See Order Re Trial Structure & Mots. Limine ("HIV Order"), In re HIV Antitrust Litig., 19-cv-02573-EMC (N.D. Cal. Mar. 19, 2023) (ECF No. 2005-1, at 12-14).  Purchasers are effectively claiming "that it would not be proper (or fair) for [Defendants] to say that a payment might seem large on its face but, in fact, is not that large, or is a fair payment, given the [monopoly] profits that [Defendants were] making from the FTC patents."  Id. at 13.  But as United States District Judge Edward M. Chen aptly noted when recently confronted with a similar motion in limine in another antitrust case pending in the Northern District of California, "that essentially assumes that [Defendants'] monopoly profits were not based on a lawful monopoly

14

arising from the patent but rather based on an unlawful monopoly because the patent is either invalid or not infringed." Id. at 13-14.  Before Purchasers can attempt to prove that the alleged payment was large, they must first prove to the jury that there was a payment at all -- and they cannot make that presumption themselves.  I follow and agree with the reasoning outlined in Judge Chen's order, and therefore Purchasers' Motion in Limine No. 14, (ECF No. 1806, at 2), is DENIED.

13) Defendants' Motion in Limine No. 14 to Preclude References to Other Potential Settlement Terms Glenmark Proposed as Being Part of the Claimed "Large and Unjustified Payment," (ECF No. 1834), is DENIED.  In this motion, Defendants seek to exclude evidence of other settlement terms and proposals that were discussed during settlement negotiations in the Glenmark litigation, but ultimately were not included in the final Settlement Agreement.  However, I find that this evidence bears on Merck and Glenmark's intent in forming the agreement that was eventually reached -- and particularly, whether Glenmark was demanding consideration from Merck to drop its patent challenge. Put another way, these terms are relevant to show that Glenmark had an expectation during settlement negotiations that consideration would flow from Merck to Glenmark -- a fact which, if proven, would bolster Purchasers' argument that the final Settlement Agreement did contain consideration from Merck to

Glenmark in the form of a no-AG agreement, and therefore constituted a reverse payment. As such, Defendants' Motion *in Limine* No. 14, (ECF No. 1834), is DENIED.

14) The court will take Purchasers' Motion *in Limine* No. 15 to Exclude Defendants' Claimed Procompetitive Justifications That Are Contrary to Law, (ECF No. 1806, at 2), under advisement and issue a separate, written order ruling on that motion in greater detail.

15) Defendants' Motion *in Limine* No. 15 to Preclude Plaintiffs from Presenting Evidence or Argument in Support of Their Abandoned Causation Theories or Presenting Evidence or Argument That the Anticompetitive Harm of the Settlement Was that Merck Avoided the Risk of Patent Invalidation by Obtaining Dismissal of Glenmark's Invalidity Challenge in the Settlement, (ECF No. 1837), is GRANTED IN PART and DENIED IN PART. This motion addresses two components. The first is whether Purchasers can offer evidence or argument in support of theories of causation they previously advanced, but have since dropped in favor of their single, alternative settlement theory. As to the abandoned theories and evidence offered for the purpose of supporting those theories, the motion is GRANTED. Purchasers have admittedly abandoned and do not intend to raise their former theories of causation, which this court has already addressed in its decision on the undersigned's Report and Recommendation on summary judgment. However,

16

notwithstanding this ruling, the motion is DENIED to the extent it seeks to preclude <u>the evidence underlying</u> Purchasers' abandoned theories of causation from being used for any purpose at trial. Although that underlying evidence may not be used to advance the abandoned theories, it may, if relevant and admissible, be used to advance other arguments, including the Purchasers' theory of liability, the alternative settlement model of causation, and damages.

The remaining portion of the motion asks the court to prevent Purchasers from presenting evidence or argument that Glenmark and Merck settled the Glenmark litigation to avoid the risk that they would lose at trial -- and on this issue, the motion is DENIED. The reason parties settle cases is to avoid the risk of losing and that is what the Settlement Agreement in this case accomplished. The question is whether that agreement contained a large and unjustified reverse payment in violation of the antitrust laws. In arguing that question to the jury, Purchasers are entitled to discuss the traditional motivations for -- and consequences of -- settlement, which were present in this case just like any other.

16) Purchasers' Motion *in Limine* No. 16 to Preclude Evidence or Argument That Authorized Generics Are Anticompetitive or That the Threat of Anti-AG Legislation Diminished the Value of the AGs or of No-AG Agreements, (ECF No. 1806, at 2), is DENIED. I do not find there is a sufficient basis to preclude any inquiry regarding

the existence of this legislation or the alleged underlying controversy at the time of the settlement over whether AGs were anticompetitive. This is especially so given that experts in this case were aware of and relied on the existence of this controversy when forming their opinions. It is presently unclear what the experts will say on this issue at trial, but given that this controversy was evidently generally known and understood among people in the pharmaceutical industry in 2010, I am not prepared to rule that that any such testimony the experts might offer would necessarily be, as Purchasers' suggest, subjective and informed by attorney-client privileged material. As such, Purchasers' Motion *in Limine* No. 16, (ECF No. 1806, at 2), is DENIED.

17) Defendants' Motion *in Limine* No. 16 to Preclude Plaintiffs from Offering Extrinsic Evidence to Modify or Contradict the Unambiguous Settlement Agreement, (ECF No. 1839), is DENIED. The first component of this motion asked the court to exclude extrinsic evidence of the settlement agreement because the agreement is unambiguous. That portion of the motion has been resolved in Purchasers' favor by this court's ruling on summary judgement, for the reasons explained more thoroughly therein. The only live issue remaining in this motion is whether post-hoc statements made by persons not involved in drafting the Settlement Agreement -- specifically, Defendants' business and marketing employees -- can be introduced to show the existence of the alleged

18

no-AG provision.  On this issue, I find that evidence of Merck and Glenmark's intent in negotiating the Settlement Agreement does not need to be limited to contemporaneous descriptions of the document itself.  Companies must understand their contractual obligations and convey them to their employees, who are also bound by those obligations and are often the ones tasked with facilitating compliance.  To that extent, evidence from Defendants' employees about their understanding of the Settlement Agreement and any alleged no-AG agreement are relevant to show what the agreement was intended to mean.  On that basis, Defendants' Motion *in Limine* No. 16, (ECF No. 1839), is DENIED.

18) Purchasers' Motion *in Limine* No. 17 to Preclude Defendants from Disparaging the Use of a Hypothetical to Address Antitrust Causation, (ECF No. 1815, at 1), is GRANTED IN PART and DENIED IN PART.  In antitrust cases, it is necessary to use a hypothetical, but-for world to prove causation because the very existence of the alleged anticompetitive conduct prevents antitrust plaintiffs from knowing what would have happened in a world without that conduct.  Given that Purchasers' must make a hypothetical argument on causation, I do not find it fair to allow Defendants to characterize Purchasers' hypothetical as -- in the words of defense counsel at the March 22, 2022, hearing -- "made up" or "imaginary."  However, there is a distinction between attacking the inherently hypothetical nature of the argument

19

Purchasers' <u>must</u> make and attacking the assumptions underlying that argument.  The former is not permissible, and to that extent, this motion is GRANTED.  The latter is permissible, and to that extent, this motion is DENIED.  Defendants have a right to point out assumptions underlying Purchasers' hypothetical that they believe to be flawed, but they may not disparage the inherently speculative nature of the hypothetical itself.

19)  Defendants' Motion *in Limine* No. 17 to Preclude Plaintiffs from Offering Evidence or Argument Regarding Unpleaded, Other Agreements, (ECF No. 1842), is DENIED.  In this motion, Defendants ask the court to prevent Purchasers from producing evidence or arguing that, notwithstanding the jury's determination about the Settlement Agreement -- the only agreement pled in the Purchasers' original complaint -- another, unpled agreement was reached that would entitle them to relief.  However, Defendants have failed to point to any such unpled agreement or articulated any basis for their concern that Purchasers' may introduce such an agreement at trial.  As such, the court declines to tie Purchasers' hands in proving or arguing that the pled Settlement Agreement is anticompetitive and Defendants' Motion *in Limine* No. 17, (ECF No. 1842), is DENIED.

20)  Purchasers' Motion *in Limine* No. 18 to Preclude Argument that the Purchasers Have the Burden to Prove the Teva and Sandoz Settlement Agreements Would (Still) Contain Acceleration Clauses

Absent the Challenged Conduct and That the Agreements Would Not
Have Included Acceleration Clauses, (ECF No. 1815, at 1), is
DENIED.   In this motion, Purchasers ask the court to prevent
Defendants from arguing that acceleration clauses in the Teva and
Sandoz settlement agreements would also be present in the but-for
world under their alternative settlement theory.   Both agreements,
like the Merck-Glenmark settlement, contained acceleration clauses
that would allow the generic manufacturer to enter the market
earlier than the negotiated entry date upon the happening of
certain triggering events -- specifically, successful challenges
to the brand manufacturer's patent.

    Purchasers have evidence of the existence of these
acceleration clauses in the actual world and the reason why
Defendants included them in the various settlement agreements.
Their experts are also prepared to testify that such clauses are
"standard practice" in brand-generic settlement agreements.  Pls.'
Mem. Supp. Mots. Limine Nos. 17 & 18 (ECF No. 1816, at 8).
Defendants acknowledge this evidence may be sufficient to satisfy
Plaintiffs burden that these clauses would also be present in the
but-for world.   But they argue this is still an insufficient basis
to preclude other evidence or argument on the issue.   I agree.
For this reason, Purchasers' Motion *in Limine* No. 18, (ECF No.
1815, at 1), is DENIED.  Defendants are not precluded from offering
evidence that the agreements would not include acceleration

clauses.  Absent such evidence at trial, Purchasers may renew their
request that argument on the topic be precluded, or address the
issue through appropriate instructions and counter-argument.

21) Purchasers' Motion to Allocate Trial Time, (ECF No.
1983), is GRANTED.  In this motion, Purchasers ask the court to
allocate the trial time unevenly between the parties and propose
a 60%/40% split, with Purchasers getting 60% of the trial time and
Defendants getting 40%.  Given the fact that Purchasers bear the
burden of proof on their claims -- and that they will have to give
the jury a lengthy and complex education on patents, pharmaceutical
competition, and antitrust laws to support those claims -- I
conclude that there is a basis in fairness to allow Purchasers
more time to present their case at trial than Defendants.  And
while concerns about being given inadequate time to present ones'
case can be dealt with at trial, I find that Purchasers' pre-trial
request for unequal time is reasonable and will allow the parties
to better plan for trial given the extensive evidence, expert
testimony, and scheduling concerns in this case.  An unequal
allocation is also warranted by the sheer number of Purchasers in
the case as compared to the two Defendants.  For those reasons,
Purchasers' Motion to Allocate Trial Time, (ECF No. 1983), is
GRANTED.  The court finds that allocating 57% of the trial time to
Purchasers and 43% to Defendants will ensure each side has a full
opportunity to present their case to the jury.

IT IS SO ORDERED.

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER,
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia

April 5, 2023

23