# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | |
|---|---|
| IN RE: ZETIA (EZETIMIBE) ANTITRUST LITIGATION | MDL No. 2836<br>No. 2:18-ind-2836-RBS-DEM |
| This Document Relates To: All End-Payor Actions | |

## DECLARATION OF MICHAEL M. BUCHMAN IN SUPPORT OF END-PAYOR CLASS PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND INCENTIVE AWARDS TO THE CLASS REPRESENTATIVE PLAINTIFFS

I, Michael M. Buchman, hereby declare as follows:

1.     Annexed hereto as Exhibit A is a true and correct copy of the Declaration of James A. Cales in support of the fee and expense application on behalf of Furniss, Davis, Rashkind, and Saunders, P.C. dated September 1, 2023.

2.     Annexed hereto as Exhibit B is a true and correct copy of the Declaration of Marvin A. Miller in support of the fee and expense application on behalf of Miller Law LLC dated September 1, 2023.

3.     Annexed hereto as Exhibit C is a true and correct copy of the Declaration of Michael M. Buchman in support of the fee and expense application on behalf of Motley Rice, LLC dated September 13, 2023.

4.     Annexed hereto as Exhibit D is a true and correct copy of the Declaration of Lee Albert on behalf of Glancy Prongay & Murray LLP dated May 5, 2023.

5.     Annexed hereto as Exhibit E is a true and correct copy of the Declaration of Mark H. Edelson on behalf of Edelson 86 Associates, LLC dated May 1, 2023.

6.     Annexed hereto as Exhibit F is a true and correct copy of the Declaration of Robert G. Eisler on behalf of Grant & Eisenhofer P.A. dated May 4, 2023.

7.     Annexed hereto as Exhibit G is a true and correct copy of the Declaration of Jonathan Gardner on behalf of Labaton Sucharow LLP dated August 23, 2023.

8.      Annexed hereto as Exhibit H is a true and correct copy of the Declaration of Karen

Hanson Riebel on behalf of Lockridge Grindal Nauen P.L.L.P. dated May 4, 2023.

9.      Attached hereto as Exhibit I is a true and correct copy of the Declaration of Peter

Safirstein on behalf of Safirstein Metcalf LLP dated May 5, 2023.

10.      Annexed hereto as Exhibit J is a true and correct copy of the Declaration of
Aaron

Anderson dated August 14, 2023.

11.      Annexed hereto as Exhibit K is a true and correct copy of the Declaration of Megan

Maciasz DiSanto dated September 12, 2023.

I declare under penalty of perjury pursuant to the laws of the United States that the

foregoing is true and correct. Executed September 13, 2023, in New York, New York.


*/s/ Michael M Buchman*

# EXHIBIT A

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| IN RE: ZETIA (EZETIMIBE) ANTITRUST LITIGATION | MDL No. 2836<br>No. 2:18-md-2836- RBS-DEM |

**DECLARATION OF JAMES A. CALES III IN SUPPORT OF
END-PAYOR CLASS'S MOTION FOR FINAL APPROVAL OF SETTLEMENT,
AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND
INCENTIVE AWARD**

I, James A. Cales III, declare as follows:

1.     I am an attorney licensed to practice before the courts of the Commonwealth of Virginia and the United States District Court for the Eastern District of Virginia; and, I am a member of the law firm of Furniss, Davis, Rashkind, and Saunders, P.C. ("FDRS"). I have personal knowledge of the facts stated in this Declaration and, if called as a witness, I would testify competently to them. I make this Declaration in support of FDRS's request for attorneys' fees and reimbursement of litigation expenses, as set forth in End-Payor Class's Motion For Preliminary Approval Of Proposed Settlement, Approval Of The Form And Manner Of Notice To The Class, and Proposed Schedule For A Fairness Hearing.  On August 15, 2018, this Court appointed Alan Brody Rashkind and myself as Interim Local Counsel for the End-Payor Plaintiff Class. (ECF No. 105.) On August 20, 2021, this Court appointed Alan Brody Rashkind and myself as Local Counsel for the End-Payor Plaintiff Class. (ECF Nos. 1094, 1316.).  Mr. Rashkind is the Senior Partner of Furniss, Davis, Rashkind and Saunders, P.C.

2.     A brief description of my firm, which includes a short summary of my and Mr. Rashkind's professional experience and credentials, is attached as Exhibit 1 and incorporated herein by reference.

3.      Throughout the course of this litigation, my firm kept files contemporaneously documenting all time spent, including tasks performed, and expenses incurred, and provided those reports to Marvin A. Miller, one of End-Payor Plaintiffs' ("EPP") Co-Lead Counsel. All the time and expenses reported by my firm advanced were reasonably necessary for the prosecution of this case in order to achieve the class-wide results obtained for the benefit of the EPP Class.

4.      As Local Counsel and Interim Local Counsel for the End Payor Class who, pursuant to the Local Rules of the United States District Court for the Eastern District of Virginia, may be called upon to try the case in its entirety, Mr. Rashkind and I worked closely and continuously with Co-Lead Counsel for the EPP Class to prepare all aspects of the case for trial. This included regular participation in strategy sessions, conference calls, in-person meetings, and virtual meetings among the other EPP Class counsel, as well as collectively with the Direct Purchaser and Retailer Plaintiff groups. The undersigned and members of his firm participated in preparation and of review of pleadings for filing and handled every filing on the voluminous docket of this complex, multi-district, antitrust litigation that was made by the EPP Class. This included detailed review of each pleading filed by the EPP class to ensure its compliance with the Federal Rules of Civil Procedure, the Local Rules of this Court, and the orders issued by the district judge and magistrate judge presiding over this litigation. The undersigned further reviewed pleadings filed by other parties and participated in the coordination of submissions when filings were made by or on behalf of multiple plaintiff groups. The undersigned and Mr. Rashkind also consulted and coordinated with other local counsel to ensure the effective and orderly organization of the case to allow for trial to be conducted in an expeditious and efficient manner. Detailed efforts were undertaken at the request of Co-Lead Counsel to familiarize them with the practice customs and expectations before this Court. As part of trial preparation, we participated in jury consultant

meetings, witness preparation, preparation of the final pretrial order, review of opening statements, coordination of the order of proof, and compliance with the Court's directives related to the conduct of the trial. At trial prior to settlement, the undersigned participated on behalf of the EPP Class in jury selection and voir dire. These efforts also included work on the independent effort by the EPP Class Co-Lead Counsel to be prepared to try the case as a sole plaintiff group in the event that other plaintiff groups did not participate in trial for any reason. This paragraph is intended only as a general overview of the work performed by FDRS on behalf of the EPP Class and detailed time entries fully summarizing the work performed by myself, Mr. Rashkind, other members and staff of my firm are available for the Court's review.

5.      The schedule attached as Exhibit 2, prepared from contemporaneous time records regularly prepared and maintained by my firm and incorporated herein, is a summary of the amount of time spent by my firm's partners, attorneys, and professional support staff who were involved in this litigation. It does not include any time devoted to preparing this Declaration or otherwise pertaining to the request for an award of attorney's fees and reimbursement of expenses. The lodestar calculation is based on my firm's historical billing rates agreed to by hourly-fee paying clients or submitted to other courts for which compensation was requested. The total number of hours reasonably expended on this litigation by my firm from inception through August 31, 2023, which does not include time spent preparing this Declaration or in preparation of fee application, is 1273.50 hours. The total lodestar for my firm at historic rates is $476,077.50. Expense items are billed separately and are not duplicated in my firm's lodestar. Those records have been provided to Class Counsel and I authorize them to be submitted for *in camera* inspection by the Court, if necessary.

6.    The expenses my firm incurred in litigating this action are reflected in the books and records of my firm. These books and records are prepared from expense vouchers, invoices, receipts, check records, and other source materials and accurately reflect the expenses incurred. My firm's expense records are available for inspection by the Court if necessary.

7.    My firm incurred a total of $1885.10 in unreimbursed expenses, all of which were reasonable and necessary for the prosecution of this litigation. Of this amount, none was for assessment payments for common litigation expenses or direct payments to experts or other venders made at the request of Co-Lead Counsel or as directed by me, but was exclusively for non-common litigation expenses incurred by my firm, such as filing fees, on-line PACER research, electronic legal research, meals, parking, copying, telephone, etc. A summary of those expenses by category is attached as Exhibit 3.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 1st day of September, 2023, in the City of Norfolk, Virginia.

*/s/ James A. Cales III*
James A. Cales III

# EXHIBIT 1

## FURNISS, DAVIS, RASHKIND and SAUNDERS, P.C.

Smithfield Building, Suite 341 B
6160 Kempsville Circle
Norfolk, Virginia   23502
Telephone (757) 461-7100
Facsimile (757) 461-0083
**www.furnissdavis.com**

Founded in 1964, the firm practices in all state and federal courts in southeastern Virginia representing businesses, cities, school boards and other government agencies, insurers, self-insured entities and individuals primarily in the defense of a broad range of civil matters at both the trial and appellate levels, including: insurance coverage, personal injury, property damage, products liability, professional malpractice, construction disputes, trucking claims, governmental liability, civil rights, discrimination, workers' compensation, commercial disputes, and breach of contract claims.

The firm has earned an "AV" Preeminent Peer Review Rating by Martindale-Hubbell Law Directory, its highest recognition for professionalism and ethics. The firm has also been named a Best Law Firm by U.S. News and World Report and the top small litigation firm in Virginia by Super Lawyers magazine.

Members:

**Alan B. Rashkind** (1947) Randolph-Macon College, B.A., 1969; University of Virginia, J.D., 1972; Randolph-Macon College, Hon. Doctor of Laws, 2021. Admitted to Bar, 1972. Member: Virginia State Bar; Virginia Bar Association; Federal Bar Association; Virginia Association of Defense Attorneys; Local Government Attorneys of Virginia; Federation of Defense & Corporate Counsel; Defense Research Institute; Norfolk-Portsmouth Bar Association; Virginia Beach Bar Association. Fellow, American College of Trial Lawyers; Fellow, Virginia Law Foundation; Fellow, American Bar Foundation. Rated "AV" Martindale-Hubbell Law Directory. Listed in The Best Lawyers in America, Virginia Super Lawyers, Who's Who in America, and Who's Who in American Law, and selected by his peers as a member of Virginia's Legal Elite. Named "Lawyer of the Year" for Personal Injury Litigation - Defendants (Norfolk) by Best Lawyers (2014, 2019, 2024). Norfolk Portsmouth Bar Assoc. Eggleston/I'Anson Professionalism Award (2019). Virginia Trial Lawyers Civility & Professionalism Award (2022). Co-Author:  Virginia Insurance Case Finder, Lexis Nexis Law Publishers, (First, Second, Third Editions and annual supplements). Co-Author and Lecturer: Insurance Law in the 90's (1989) and Insurance Law for Virginia Practitioners (1993); Co-Author, The New State Statute on Experts: Does Virginia Code Section 8.01-401.3 Really Allow Anything New?, The Journal of Civil Litigation, Vol. 9, No. 1 (1997); Co-Author and Lecturer, Reviewing Police Policy - Police Pursuits: Rationale, Policy and Liability, Local Government Attorneys of Virginia Fall Conference, 1999; Immunities of Governmental Entities and Attempts to Skirt Sovereign Immunity, Local Government Attorneys of Virginia Fall Conference, 2003; Defamation Of and By Public Officials, Local Government Attorneys of Virginia Fall Conference, 2004; How to Try a Case, Local Government Attorneys of Virginia Fall Conference, 2013; The

Manu Decision and Its Aftermath, VADA Annual Meeting, 2019. Lecturer: Top Ten Malpractice Traps, Norfolk-Portsmouth Bar Assoc. (2014) and subsequently at Chesapeake, Peninsula and Williamsburg-James City County Bar Associations. Adjunct Professor of Law, Marshall-Wythe School of Law, College of William and Mary (2003-2013); Third-party Neutral handling mediations and arbitrations. Faculty Member, Virginia State Bar Professionalism Course (1997-1999) and Professionalism Course for Law Students (2000-2010); Chairman: Civil Litigation Committee, Virginia Beach Bar Association (1985-1988). Member: Circuit Court Liaison Committee, Virginia Beach Bar Association (1989-1991); Chair of Board of Trustees of Randolph-Macon College (2009-2019); Master of the Bench (1987-1994) and member of the Executive Committee (1989-1994), I'Anson-Hoffman American Inn of Court; Member (1978-2010) and Chairman (1995-1997) of the Boyd-Graves Conference; Chair (2002-2008) of the Board of Trustees of Chesapeake Bay Academy. Email: arashkind@furnissdavis.com

**R. Craig Gallagher** (1960)  James Madison University, B.A., 1983; T. C. Williams School of Law, University of Richmond, J.D., 1986; Pi Sigma Alpha; Phi Delta Phi; Admitted to Bar, 1987. Rated "AV" Martindale-Hubbell Law Directory. Selected by peers for inclusion in *The Best Lawyers in America*. Member: American Bar Association, Tort and Insurance Practice Section; Virginia State Bar; Norfolk-Portsmouth Bar Association; Virginia Beach Bar Association; Virginia Association of Defense Attorneys; Local Government Attorneys of Virginia; Defense Research Institute. Co-Author: Virginia Insurance Case Finder, Lexis Nexis Law Publishers, (Second, Third Editions and annual supplements). Co-Author: The New State Statute on Experts: Does Virginia Code Section 8.01-401.3 Really Allow Anything New?, The Journal of Civil Litigation, Vol. 9, No. 1 (1997). Lecturer: A New UM/Subrogation World: Details & Practical Considerations (2015), VADA Annual Meeting; "Virginia UM/UIM Affecting The Liability of Local Governments", LGA Conference (2017). Email: cgallagher@furnissdavis.com

**James A. Cales III** (1972) James Madison University, *cum laude,* B.A.(1994); University of Virginia School of Law J.D. (1997). *Pro Se* Law Clerk to the United States District Court for the Eastern District of Virginia, Alexandria Division. (1997-1998). Member: Virginia State Bar; Norfolk-Portsmouth Bar Association; Portsmouth Bar Association; Federal Bar Association; Virginia Association of Defense Attorneys; Local Government Attorneys of Virginia; Defense Research Institute; James Kent American Inn of Court. Director Emeritus, Virginia Association of Defense Attorneys; Past Tidewater Regional Director and Past chair, Auto and Transportation Section, Current Executive Board Member and President-Elect, Virginia Association of Defense Attorneys. Rated "AV" Martindale-Hubbell Law Directory. Selected by peers for inclusion in *The Best Lawyers in America* and Super Lawyers. Co-author, "John Doe Pleadings: Not Just for the Uninsured Motorist Anymore?", The Journal of Civil Litigation (2011); Co-Author, "Qualified Immunity Yesterday, Today, and Tomorrow: A Review of the Defense's Origins, Current State, and Future" The Journal of Civil Litigation (2020). Lecturer: Developments in the Law (2012) and Preparing for Appeals (2014), Virginia Association of Assessing Officials; A Primer on the Public-Private Transportation Act of 1995, Hampton Roads Association of Commissioners of the Revenue (2014); Lights, Sirens, & Sovereign Immunity, VADA Spring Meeting 2019; Governmental Immunity: Yesterday, Today, and Tomorrow, LGA Fall Conference 2021;

Sovereign Immunity - Shifting Law, Facts, and Circumstances, VADA Fall Meeting 2022. Additional numerous seminars to Virginia assessing officials on matters related to local taxation and well as to other attorneys' groups on matters of civil procedure, police litigation, and trial practice. Email: jcales@furnissdavis.com

**Jonathan R. Hyslop** (1984) (Managing Partner) Wofford College, *summa cum laude*, B.A., 2006; William & Mary School of Law, J.D., 2009; Articles Editor, William and Mary Law Review; Admitted to Bar, 2009. Law Clerk to the Virginia Beach Circuit Court (2009-2010). Member: Virginia State Bar; Norfolk-Portsmouth Bar Association; Virginia Beach Bar Association; Virginia Association of Defense Attorneys. Tidewater Regional Director, Virginia Association of Defense Attorneys; Member: Virginia State Bar Standing Committee on Professionalism (2022 - ); Virginia State Bar Client Protection Fund Board (2022 - ). Rated "AV" Martindale-Hubbell Law Directory; Named a Rising Star by Virginia Super Lawyers magazine;; Co-author, "John Doe Pleadings: Not Just for the Uninsured Motorist Anymore?", The Journal of Civil Litigation (2011); Co-Author, How to Try a Case When All Else Fails, Local Government Attorneys of Virginia Fall Conference, 2013; Co-Author and Lecturer, 2016 Legislative Update, VADA Spring Conference, 2016; Co-Author and Lecturer, Jury Pool Investigation and Jury Selection, VADA Paralegal Seminar, 2017, 2022, 2023; Using Social Media in Discovery and at Trial, VADA Fall Conference 2021. Email: jhyslop@furnissdavis.com


Of Counsel:

**Richard A. Saunders** (1952) University of Virginia, B.A., "With Distinction," 1974; Marshall-Wythe School of Law, College of William & Mary, J.D., 1977. Admitted to Bar, 1977. Member: American Bar Association; Virginia State Bar; Virginia Bar Association; Virginia Association of Defense Attorneys; Local Government Attorneys of Virginia; Defense Research Institute; Norfolk-Portsmouth Bar Association; Virginia Beach Bar Association; Federal Bar Association. Rated "AV" Martindale-Hubbell Law Directory. Listed in The Best Lawyers in America, Virginia Super Lawyers and Who's Who in American Law, and selected by his peers as a member of Virginia's Legal Elite. Named "Lawyer of the Year" for Personal Injury Litigation - Defendants (Norfolk) by Best Lawyers (2021). Author and Lecturer: Creating the Record - How to Preserve your Objections at Trial (1997); Email: rsaunders@furnissdavis.com


**Robert M. Furniss, Jr.** (1923-1977)

**Donnell P. Davis** (1924-2000)

# EXHIBIT 2

EXHIBIT 2

In re Zetia Antitrust Litigation

Firm Name:  Furniss, Davis, Rashkind and Saunders, P.C.

ATTORNEY'S FEE REPORT

(Expenses incurred from inception through 8/31/23)

| Attorney/Staff | Rate | Hours | Lodestar |
|---|---|---|---|
| Alan Brody Rashkind | $375.00 | 153.1 | $57,412.50 |
| Richard A. Saunders | $375.00 | 18.8 | $7,050.00 |
| James A. Cales III | $375.00 | 1095.70 | $410,887.50 |
| Jonathan Hyslop | $375.00 | 0.5 | $187.50 |
| Laurie Corvello | $100.00 | 2.7 | $270.00 |
| Diane Furey | $100.00 | 2.7 | $270.00 |
| | Total: | 1273.50 | $476,077.50 |

# EXHIBIT 3

EXHIBIT 3

In re Zetia Antitrust Litigation

Firm Name:  Furniss, Davis, Rashkind and Saunders, P.C.

EXPENSE REPORT

(Expenses incurred from inception through 8/31/23)

| EXPENSE CATEGORY | AMOUNT |
|---|---|
| TRAVEL | $944.88 |
| COURT FEES | $722.85 |
| DELIVERY | $58.07 |
| COURT REPORTER | $159.30 |
| **TOTAL** | **$1,885.10** |

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| IN RE: ZETIA (EZETIMIBE) ANTITRUST LITIGATION | MDL No. 2836<br>No. 2:18-md-2836- RBS-DEM |

**DECLARATION OF MARVIN A. MILLER IN SUPPORT OF**
**END-PAYOR PLAINTIFFS' MOTION FOR FINAL APPROVAL OF**
**SETTLEMENTS, AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF**
**EXPENSES, AND INCENTIVE AWARDS**

I, Marvin A. Miller, declare as follows:

1.     I am an attorney admitted to practice before the courts of the State of Illinois and the State of New York and I am a member in the law firm of Miller Law LLC ("Miller Law"). I have personal knowledge of the facts stated in this Declaration and, if called as a witness, I would testify competently to them. I make this Declaration in support of Miller Law's request for attorneys' fees and reimbursement of litigation expenses, as set forth in End-Payor Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses and Incentive Awards for the Named Plaintiffs filed contemporaneously herewith.

2.     I am counsel of record in this case for plaintiff Painters District Council No. 30 Health & Welfare Fund ("PDC") and I was appointed Interim Co-Lead Counsel and Co-Lead Counsel for the End-Payor Class.

3.     A brief description of my firm, which includes a short summary of credentials and experience litigating similar complex antitrust pharmaceutical cases is attached as **Exhibit 1**.

4.     Throughout the course of this litigation, my firm kept files contemporaneously documenting all time spent, including tasks performed, and expenses incurred. All the time and expenses reported by my firm advanced the tremendous class-wide result achieved in this case.

5.     As Interim Co-Lead and Co-Lead Counsel for the End-Payor Class, my firm's

4

work includes research, drafting and oversight of every aspect of the litigation from inception through settlement with the Defendants. Rather than unnecessarily burden the Court with a complete duplicate recitation of my firm's work to achieve the benefits for the Class. I adopt and respectfully refer the Court to the details of my firm's work as set forth in ¶¶ 84 and 87 the Joint Declaration (ECF No. 2133), which I adopt as fully set forth herein.

6.      The schedule attached as **Exhibit 2**, and incorporated herein, is a summary of the amount of time spent by my firm's attorneys and professional support staff who were involved in this litigation. It does not include any time devoted to preparing this declaration. The lodestar calculation is based on my firm's historical billing rates. Exhibit 2 was prepared from contemporaneous time records regularly prepared and maintained by my firm. Those records, and those of other Plaintiff's counsel, have been maintained by my firm, and I authorize them to be submitted for inspection by the Court if necessary.

7.      The total number of hours reasonably expended and accrued on this litigation by my firm from inception through August 31, 2023, which does not include time spent preparing this Declaration, is 14,446.3 hours. The total lodestar for my firm at historic rates is $8,825,378.5. Expense items are billed separately and are not duplicated in my firm's lodestar.

8.      The expenses my firm incurred in litigating this action are reflected in the books and records of my firm. These books and records are prepared from expense vouchers, invoices, receipts, check records, and other source materials and accurately reflect the expenses incurred. My firm's expense records are available for inspection by the Court if necessary.

9.      My firm incurred or is obligated to pay a total of $2,135,032.60 in unreimbursed expenses, all of which were reasonable and necessary for the prosecution of this litigation. A summary of those expenses by category is attached as **Exhibit 3**.

I declare under penalty and perjury that the foregoing is true and correct. Executed

September 1, 2023, in Highland Park, Illinois.

/s/ *Marvin A. Miller*

Marvin A. Miller

# EXHIBIT 1



Miller Law LLC is a litigation boutique law firm which unites the talents of attorneys with combined experience in a wide array of complex civil litigation. The foundation of the firm is the ability to handle large complex litigation and sophisticated class actions in a variety of practice areas in federal and state courts across the country.

Our long history of class action litigation experience covers a varied and broad range of industries including pharmaceuticals, telecommunications, commodities and securities.

Miller Law LLC's fees are contingent on our success in achieving a favorable result for our clients and are reviewed and awarded by the court. Because we advance the costs of the litigation and our fees are earned on a predominately contingent basis, we continuously monitor and carefully evaluate each case throughout the litigation and understand the need to be efficient. This gives us the confidence and flexibility to employ creative thought in the decision-making process at every stage of the litigation. The skill and experience of the Miller Law attorneys has been recognized repeatedly by their peers, at whose request we have served as lead counsel, co-lead counsel, and *liaison*, and by courts, which have appointed our attorneys to leadership positions in complex multi-district or consolidated litigation in securities, commodities, consumer and antitrust class actions where we have been responsible for many outstanding recoveries and precedent-making decisions.

### *Some of the significant cases in which Miller Law attorneys have been prominently involved include:*

### ANTITRUST

***Bayside Rubber & Prods., Inc. v. Caleca et al.,*** 07-21784 (S.D. Fla.). This class action alleged that defendant-manufacturers of flexible rubber hose used to transport oil between ships, terminals, buoys and tanks, among other things, conspired to fix the prices of the marine hoses.

***Brand-Name Prescription Drug Indirect Purchaser Actions.*** Coordinated antitrust actions against the major pharmaceutical manufacturers in ten states and the District of Columbia. The actions were brought under state law on behalf of indirect purchaser consumers who obtained brand name prescription drugs from retail pharmacies. In 1998, the parties agreed to a multi-state settlement in the amount of $64.3 million, which was allocated among the actions.

***Caldwell v. Matsushita Elec. Indus. Co., Ltd.,*** 07-6303 (N.D. Cal.). Miller Law LLC[1], along with

---

1 Some attorneys were individually appointed to leadership positions when they were with another firm but maintained their position when joining Miller Law LLC.

co-counsel, represented a plaintiff who sought damages and injunctive relief for alleged antitrust violations relating to flat screens.

***Garabedian v. LASMSA Limited Partnership***, No. 721144 (Superior Court, Orange County, Cal.). Class action under California's Cartwright Act which alleged price-fixing of cellular telephone service in the Los Angeles area market. The court granted final approval to two settlements that provided $165 million of in-kind benefits.

***In re Aftermarket Filters Antitrust Litig.***, MDL No. 1957, 08-4883 (N.D. Ill.). The complaint alleged a conspiracy among the Defendants and their co-conspirators to fix prices and to engage in other unlawful practices intended to raise, maintain, and/or stabilize prices for replacement motor vehicle oil, fuel and engine air filters ("Filters"). The firm served as *liaison* counsel for the Indirect Purchasers. The Court has granted final approval of a settlement of Indirect Purchasers.

***In re Air Cargo Shipping Servs. Antitrust Litig.***, 06-MD-1775 (E.D. N.Y.). Miller Law LLC represents plaintiffs who ssought recovery from air cargo shipping provider-defendants that it is alleged participated in a global conspiracy to fix prices charged for these shipping services at *supra*-competitive levels, in violation of the federal antitrust laws.

***In re Airline Ticket Commission Antitrust Litig.***, MDL No. 1058 (D. Minn.). Antitrust class action on behalf of travel agents against the major airlines for allegedly fixing the amount of commissions payable on ticket sales. The action settled for $87 million. *See* 953 F. Supp. 280 (D. Minn. 1997).

***In re Automotive Parts Antitrust Litig.***, (***In re Instrument Panel Clusters Case***), 12-MD-02311 (E.D. MI). Miller Law LLC represents direct purchaser plaintiffs.

***In re Cellular Phone Cases***, Coordination Proceeding No. 4000 (Superior Court, San Francisco County, Cal.). Class action under California's Cartwright Act, which alleged price-fixing of cellular telephone service in the San Francisco area market. The $35 million in-kind benefits to the Class was granted final approval.

***In re Cathode Ray Tube (CRT) Antitrust Litig.***, MDL 1917, 07-5944-SC (N.D. Cal.). The antitrust class action complaint contains allegations of price fixing of Cathode Ray Tubes and Cathode Ray Tube Products including those used in televisions, computer monitors and other devices.

***In re Liquid Aluminum Sulfate Antitrust Litig.***, 16-MD-02687 (D. NJ). Marvin Miller, as court-appointed, co-lead counsel for a class of indirect purchasers, successfully obtained final approval of a $33 million settlement package for the class stemming from alleged price-fixing and bid-rigging of liquid aluminum sulfate, a water treatment chemical. The $33 million settlement likely exceeded one hundred percent of the estimated, aggregated treble damages sustained by the class.

***In re Lithotripsy Antitrust Litig.***, No. 98 C 8394 (N.D. Ill.). Antitrust class action arising out of alleged stabilization of urologist fees in the Chicago metropolitan area.

***In re: Polyurethane Foam Antitrust Litigation***, 10 MDL 2196 (NDOH). This antitrust class action sought damages sustained by indirect purchasers of polyurethane foam as a result of defendants' agreements to fix the prices and allocate customers for flexible polyurethane foam which is a major component of bedding, furniture and other products. Marvin Miller was appointed Lead Counsel for the Indirect Purchasers. On January 27, 2016, the Court granted final approval of nine settlements valued at $151,250,000.

***In re Potash Antitrust Litig. No. II***, MDL No. 1996, 08-6910 (N.D. Ill.). This case was brought on behalf of a class of plaintiffs who indirectly purchased potash products in the United States from one or more named Defendants. Plaintiff alleged, that in order to maintain price stability and increase profitability, Defendants conspired and combined to fix, raise, maintain, and stabilize the prices for potash that was sold in the United States and that the Defendants exchanged sensitive, non-public information about prices, capacity, sales volumes, and demand; allocated market shares, customers and volumes to be sold; and coordinated on output, including the limitation of production, to further and enact the price fixing conspiracy. On June 6, 2013, the Court granted final approval of class action settlement

***In re: Text Messaging Antitrust Litig.***, 08-7082 (N.D. Ill.). The Complaint in this Multidistrict Litigation seeks relief against the major cellular service providers because of alleged price fixing of text messaging charges. Mr. Miller was appointed to the Plaintiffs' Steering Committee.

***Kleen Products LLC, et al. v. Int'l Paper , et al.***, 10-5711 (N.D. Ill.). Nationwide Sherman Act class action for direct purchasers involving price-fixing and supply restriction claims against the major integrated producers of containerboard and corrugated products.

***Painters District Council No. 30 Health and Welfare Fund v. Evanston Northwestern Healthcare***, 08-2541 (N.D. Ill.). Defendant Evanston Northwestern Healthcare (now NorthShore University Health System) is being sued to recover inflated prices for healthcare services in violation of antitrust laws.

## PHARMACEUTICAL ANTITRUST

***In re Actos Antitrust Litig.***, 13-09244 (S.D.N.Y.) Miller Law LLC represents a Third-Party Payor Union Health and Welfare Fund in this indirect purchaser antitrust action.

***In re Aggrenox Antitrust Litig.***, MDL No. 02516 (D. Ct.) Miller Law LLC and the other co-lead counsel for the End Payor Class were granted final approval of a $54 million settlement, July 2018, thereby settling this antitrust action seeking treble damages arising out of the defendants' unlawful exclusion of generic substitutes from the market.

***In re Cardizem CD Antitrust Litig.***, MDL No. 1278 (E.D. Mich.). Multi-district class action on behalf of purchasers of Cardizem CD, a brand-name heart medication manufactured and marketed by Hoechst Marion Roussel, Inc. (now merged into Aventis Pharmaceuticals, Inc.) Plaintiffs alleged that an agreement between HMR and generic manufacturer Andrx Corp. unlawfully stalled generic

competition. The $80 million settlement for the benefit of third-party payors and consumers was granted final approval. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508 (E.D. Mich. 2003), *appeal dismissed*, 391 F.3d 812 (6th Cir. 2004).

***In re Effexor XR Antitrust Litig.***, 11-5590 (D.N.J.). Miller Law LLC, along with co-counsel, represents indirect purchaser opt-out plaintiffs in this antitrust action against Wyeth, Inc., Wyeth Pharmaceuticals, Inc., Wyeth-Whitehall Pharmaceuticals and Wyeth Pharmaceuticals Company.

***In re Flonase Antitrust Litig.***, 08-3301 (E.D. Pa.). Plaintiffs alleged that Defendants engaged in anticompetitive activities and abuse of the citizen petition process to maintain their monopoly profits in the fluticasone propionate market. Marvin Miller and Lori Fanning were appointed co-lead counsel for the Indirect Purchaser Class. An Indirect Purchaser Class was certified on June 18, 2012. Judge Brody granted final approval of a $35 million settlement.

***In re Lidoderm Antitrust Litig.***, 14-md-2521-WHO (N.D. Cal.). Miller Law served as an executive committee member of the End-Payor pharmaceutical antitrust litigation.

***In re Loestrin Antitrust Litig.***, MDL No. 2472 (D. R.I.). Miller Law LLC was co-lead counsel for Indirect Purchaser Plaintiffs in this antitrust action seeking damages arising out of the defendants' unlawful exclusion of generic substitutes from the market. A Third Party Payor Class was certified and the case was set for trial in January, 2020. Final approval of the $63.5 million settlement was granted by Judge William E .Smith.

***In re Lorazepam & Clorazepate Antitrust Litig.***, MDL 1290 (D.D.C.). This multi-district class action arose out of an alleged scheme to corner the market on the active pharmaceutical ingredients necessary to manufacture generic clorazepate and lorazepam tablets. After cornering the market on the supply, defendants raised prices for generic clorazepate and lorazepam tablets by staggering amounts (*i.e.*, 1,900% to over 6,500%) despite no significant increase in costs. On February 1, 2002, Judge Thomas F. Hogan approved a class action settlement on behalf of consumers, state attorneys general, and third-party payors in the aggregate amount of $135 million. *See* 205 F.R.D. 369 (D.D.C. 2002).

***In re Niaspan Antitrust Litig.***, MDL No. 2460 (E.D. Pa.) Mr. Miller is co-lead counsel for Indirect Purchaser Plaintiffs in this antitrust action seeking treble damages arising out of the defendants' unlawful exclusion of generic substitutes from the market for this cholesterol drug.

***In re Relafen Antitrust Litig.***, 01-12239 (D. Mass.). The United States District Court for the District of Massachusetts granted final approval to a $75 million class action settlement for the benefit of consumers and third-party payors who paid for branded and generic versions of the arthritis medication Relafen. Mr. Miller was one of the co-lead counsel for the Class.

***In re Solodyn Antitrust Litig.***, (D. Mass.). Mr. Miller was on the Executive Committee in this Indirect Purchaser antitrust action where a $40 settlement was approved in July 2018. The action arose out of the defendants' unlawful exclusion of generic substitutes from the market for oral antibiotics for the treatment of acne.

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, MDL No. 2445 (E.D. Pa.). In this Indirect Purchaser antitrust action seeking treble damages arising out of the defendants' unlawful exclusion of generic substitutes from the market, Mr. Miller serves as co-lead counsel for the putative Indirect Purchaser Class. A state antitrust/consumer protection class was certified on September 27, 2019.

*In re Synthroid Marketing Litig.*, MDL No. 1182 (N.D. Ill.). This seminal "pay-for-delay" multi-district action arose out of alleged unlawful activities with respect to the marketing of Synthroid, a levothyroxine product used to treat thyroid disorders. Final approval of a settlement in the amount of $87.4 million plus interest. *See* 188 F.R.D. 295 (N.D. Ill. 1999) was upheld on appeal. *See* 264 F.3d 712 (7th Cir. 2001).

*In re Warfarin Sodium Antitrust Litig.*, MDL 98-1232 (D. Del.). A multi-district class action on behalf of purchasers of Coumadin, the brand-name warfarin sodium manufactured and marketed by DuPont Pharmaceutical Company. Plaintiffs alleged that the defendant engaged in anticompetitive conduct that wrongfully suppressed competition from generic warfarin sodium. The case settled for $44.5 million which was affirmed on appeal. See *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002).

*In re Wellbutrin XL Indirect Purchaser Antitrust Litig.*, 08-2433 (E.D. Pa.), *Painters District Council No. 30 Health and Welfare Fund v. Biovail Corp.*, 08-2688 (E.D. Pa.). Plaintiff alleged that Defendants engaged in sham litigation and engaging in anticompetitive agreements to maintain their monopoly profits in the bupropion HCI extended release market.

*In re Zetia (Ezetimibe) Antitrust Litig.*, 2:18-md-02836 (E.D.Va.). Mr. Miller is co-lead counsel for the End-Payor Plaintiffs in this antitrust action seeking damages caused by defendants' unlawful exclusion of generic substitutes from the market.

*Ryan-House v. GlaxoSmithKline PLC*, No. 02-442 (E.D. Va.). Plaintiffs alleged that GSK, which makes Augmentin, misled the United States Patent Office into issuing patents to protect Augmentin from competition from generic substitutes. The case was resolved and the court approved a $29 million settlement for the benefit of consumers and third-party payors. *Ryan-House, et al v. GlaxoSmithKline, PLC, et al.*, No. 02-442, (January 10, 2005, E.D. Va.)

*In re Namenda Indirect Purchaser Antitrust Litig.*, No. 15-cv-6549 (S.D.N.Y.)(CM)(RWL) Mr. Miller and Ms. Fanning of Miller Law LLC are two of the co-lead counsel for the End-Payor Plaintiffs in this antitrust action seeking damages arising out of the defendants' unlawful exclusion of generic substitutes from the market through allegations of product hop and reverse payment. The $56,438,000 settlement is pending final approval.

## COMMODITIES

*In re Commodity Exchange, Inc., Silver Futures and Options Trading Litig.*, MDL. No. 2213 (S.D.N.Y.) This class alleges that the defendants intentionally manipulated the price of silver futures options contracts in violation of the Commodities Exchange Act.

*In re: Dairy Farmers Of America, Inc. Cheese Antitrust Litig.*, MDL No. 2031, Master File No. 09-03690 (N.D. Ill.) This action alleged that Defendants conspired and agreed to fix or manipulate the prices of Chicago Mercantile Exchange Class III milk futures contracts, CME Cheese Spot Call contract.

*In re First Commodity Corp. of Boston Customer Account Litig.*, MDL No. 713 (D. Mass). Class actions alleged violation of the anti-fraud provisions of the Commodity Exchange Act. The action settled for $5.3 million. *See* 119 F.R.D. 301 (D. Mass. 1987).

*In re Int'l Trading Group, Ltd. Customer Account Litig.*, No. 89-5545 RSWL (GHKx) (C.D. Cal.). Class action alleged violation of the anti-fraud provisions of the Commodity Exchange Act. The case settled with individual defendants and proceeded to a judgment against the corporate entity. In that phase, the Court awarded the Class a constructive trust and equitable lien over the corporation's assets and entered a $492 million judgment in favor of the Class. Mr. Miller served as Co-Lead Counsel for Plaintiffs

*In re Soybean Futures Litig.*, No. 89-7009 (N.D. Ill.). A commodities manipulation class action against Ferruzzi Finanziaria, S.p.A. and related companies for unlawfully manipulating the soybean futures market in 1989. In December 1996, the court approved a settlement in the amount of $21,500,000. *See* 892 F. Supp. 1025 (N.D. Ill. 1995). Mr. Miller served as Co-Lead Counsel for Plaintiffs.

*In re Sumitomo Copper Litig.*, 96- 4584(MP) (S.D.N.Y.). Class action arising out of manipulation of the world copper market. On October 7, 1999, the court approved settlements aggregating $134,600,000. *See* 189 F.R.D. 274 (S.D.N.Y. 1999). In awarding attorneys fees, Judge Milton Pollack noted that it was the largest class action recovery in the 75 plus year history of the Commodity Exchange Act. 74 F. Supp. 2d 393 (S.D.N.Y. Nov. 15, 1999). Additional reported opinions: 995 F. Supp. 451 (S.D.N.Y. 1998); 182 F.R.D. 85 (S.D.N.Y. 1998). Mr. Miller was appointed by Judge Pollack as Plaintiffs' Co-Lead Counsel.

*Dennison v. BP Corp.*, No. 06-3334 (N.D. Ill.). This class action was commenced to recover damages as a result of defendant's alleged improper conduct in manipulating the price of propane. On February 10, 2010, the Court granted final approval of the $15,250,000 cash settlement. Mr. Miller served as Co-Lead Counsel in this consolidated Plaintiffs' class action.

*Hershey, et al. v. Pacific Investment Management Co.*, No. 05-4681 (N.D. Ill.). This class action recovered for alleged violations of the Commodity Exchange Act when the Defendants improperly manipulated the Ten-Year Treasury bonds. On July 31, 2009, the Seventh Circuit Court of Appeals affirmed the decision that this case can proceed as a class action. On May 2, 2011, the Court entered a $118.75 million judgment in favor of the class. Mr. Miller, at the request of Lead Counsel, served as *liaison* counsel for the Plaintiffs.

*Smith v. Groover*, 77-2297 (N.D. Ill.). A commodities fraud and antitrust class action against the Chicago Board of Trade and several floor traders involving the manipulation of the soybean market through bucketing. The case established that, in the Northern District of Illinois, a plaintiff has an

13

implied private right of action under the Commodity Exchange Act and that an Exchange can be sued for negligence in failing to supervise its members. Mr. Miller was one of Plaintiff's counsel in this precedent making decision.

## CONSUMER PROTECTION

*Greene v. Sears Protection Company, et al.,* 15-cv-2546 (N.D. Ill.). Miller Law LLC is co-lead counsel in this consumer protection action against Sears for breach of their agreements, deceptive practices, and unjust enrichment in which a nationwide class was certified.

**Credit Protection Actions.** This group of class action complaints contained allegations regarding the activities undertaken by various banks throughout the country who market and sell products associated with their credit cards known as "Credit Protect," "Credit Protector," "Payment Protector," "PaymentAid," "PaymentAid Plus," and other monikers that all offer similar coverage that is indistinguishable from a contract of credit insurance but not sold as insurance.

*In re Mercedes Benz Tele-Aid Contract Litig.,* MDL No. 1914, No. 07-2720 (D.N.J.). Plaintiffs sought compensatory and other damages for allegations relating to Mercedes Benz's failure to inform Mercedes vehicle purchasers of Model Years 2002 through 2006 that their analog-only Tele Aid systems would become obsolete and would stop functioning after December 31, 2007. The court granted class certification on April 27, 2009, and approved a settlement on September 9, 2011.

## EMPLOYMENT

*Bergman v. Kindred Healthcare, Inc.,* 10-191 (N.D. Ill). The firm filed this action with co-counsel to recover overtime wages for employees.

*Camilotes v. Resurrection Healthcare and Saint Joseph Hospital,* 10-0366 (N.D. Ill.). This is a nationwide collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), brought on behalf of a class of plaintiffs whose pay was subject to an unpaid "meal break", and a statewide class action on behalf of all Illinois citizens to recover all unpaid wages under the Illinois Minimum Wage Law, ("IMWL").

*DeMarco v. Northwestern Memorial Healthcare and Northwestern Memorial Hospital,* 10-00397 (N.D. Ill.). This was a nationwide collective action under the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA"), brought on behalf of a class of plaintiffs whose pay was subject to an unpaid "meal break", and a statewide class action on behalf of all Illinois citizens to recover all unpaid wages under the Illinois Minimum Wage Law ("IMWL").

*Howard v. Securitas Sec. Servs.,* 08-2746 (N.D. Ill.). Miller Law and co-counsel sought to recover overtime wages for employees. The Court granted class certification in January 2009. Judge Feinerman granted final approval of class settlement in May 2014.

*King v. Heritage Enterprises, Inc.*, 10-3647 (N.D. Ill.). This collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), was brought on behalf of a class of plaintiffs whose pay was subject to an unpaid "meal break".

## SECURITIES

*City of Lakeland Employees Pension Plan v. Baxter Int'l Inc.*, 10-06016 (N.D. Ill.). Miller Law LLC served as liaison counsel in this securities fraud litigation that alleges defendants issued materially false and misleading statements regarding the Baxter's plasma-derivative products business.

*Lawrence E. Jaffe Pension Plan v. Household Int'l*, 02-5893 (N.D. Ill.). The firm served as *liaison* counsel and served on the trial team in this securities fraud litigation alleging that Household engaged in a variety of illegal sales practices and improper lending techniques to manipulate publicly reported financial statistics. Mr. Miller was a member of the trial team. The case was tried and the jury awarded a verdict in favor of plaintiffs. After appeal, the case settled for more than $1.5 billion.

*Abrams v. Van Kampen Funds*, Case No. 01-7538 (N.D. Ill.). A class action involving a mutual fund that was charged with improperly valuing its net asset value. After extensive discovery, the case settled for in excess of $31 million and was granted final approval.

*Central Laborers' Pension Fund v. Sirva, Inc.*, 04-7644 (N.D. Ill.). A $53 million settlement was approved in this national securities class action which sought recovery from the defendant for violations of the securities laws because of the alleged failure to disclose to the investing public the true financial condition of the company. Mr. Miller served as Plaintiff's *liaison* counsel at the request of Lead counsel.

*Danis v. USN Communications, Inc.*, No. 98-7482 (N.D. Ill.). Securities fraud class action arising out of the collapse and subsequent bankruptcy of USN Communications, Inc. The court approved a $44.7 million settlement with certain control persons and underwriters. Reported decisions: 73 F. Supp. 2d 923 (N.D. Ill. 1999); 189 F.R.D. 391 (N.D. Ill. 1999); 121 F. Supp. 2d 1183 (N.D. Ill. 2000). At the request of Co-Lead Counsel, Mr. Miller served as *liaison* counsel for Plaintiffs.

*In re Archer-Daniels-Midland, Inc. Sec. Litig.*, No. 95-2287 (C.D. Ill.). A class action arising out of the Archer-Daniels-Midland price-fixing scandal. Plaintiffs brought claims for securities law violations which settled for $30 million.

*In re Baldwin-United Corp. Sec. Litig.*, MDL-581 (S.D.N.Y.). In this early multi-district securities class action, Plaintiffs' counsel advanced the novel issue of whether Single Premium Deferred Annuities sold by the stock brokerage industry were securities and the sale of approximately $4.2 billion were in violation of the federal and state securities laws. A $180 million settlement was obtained and was one of the largest securities class action settlements at the time. In awarding interim counsel fees, Judge Charles Brieant commented "...that plaintiffs' attorneys [including Marvin A. Miller as co-lead counsel] had rendered extremely valuable services with diligence, energy and imagination, and are entitled to just compensation."

***In re Bank One Shareholders Class Actions***, No. 00-880 (N.D. Ill.). In this securities fraud class action against Bank One and certain officers, Judge Milton I. Shadur appointed Mr. Miller to draft the Consolidated Class Action Complaint. At the request of court-appointed lead counsel, Mr. Miller served as Plaintiffs' *liaison* counsel. Judge Shadur subsequently approved a $45 million settlement.

***In re Caremark Int'l. Inc. Sec. Litig.***, No. 94-4751 (N.D. Ill.). This action arose out of Caremark's allegedly improper financial arrangements with physicians. A $25 million settlement concluded the litigation.

***In re Nuveen Fund Litig.***, No. 94-360 (N.D. Ill.). Class action and derivative suit under the Investment Company Act arising out of coercive tender offerings in two closed-end mutual funds.

***In re Prudential Sec. Inc. Ltd. Partnerships Litig.***, MDL 1005 (S.D.N.Y.). A nationwide multi-district class action arising out of Prudential Securities Incorporated's marketing and sale of speculative limited partnership interests. The final settlements produced an aggregate of more than $132 million for injured investors.

***In re Salton/Maxim Sec. Litig.***, No. 91-7693 (N.D. Ill.). Class action arising out of public offering of Salton/Maxim Housewares, Inc. stock. On September 23, 1994, Judge James S. Holderman (former Chief Judge of the United States District Court for the Northern District of Illinois) approved a multi-million dollar settlement achieved for the class, commenting that "it was a pleasure to preside over [the case] because of the skill and the quality of the lawyering on everyone's part in connection with the case."

***In re Sears, Roebuck and Co. Sec. Litig.***, No. 02-07527 (N.D. Ill.). Sears settled a class action lawsuit for $215 million in a case brought by shareholders. The case alleged breach of fiduciary duty for failing to prevent improper bankruptcy collection practices under the company's debt reaffirmation agreements. Mr. Miller served as plaintiff's *liaison* counsel in this nationwide securities case.

***In re Telesphere Sec. Litig.***, 89-1875 (N.D. Ill.). In his opinion approving a class action settlement, Judge Milton I. Shadur referred to Marvin A. Miller as "...an experienced securities law class action litigator and who also has 20 years [now 52 years] practice under his belt. This Court has seen the quality of that lawyer's work in other litigation, and it is first-rate." 753 F.Supp. 716, 719 (N.D. Ill. 1990).

***In re VMS Sec. Litig.***, 89-9448 (N.D. Ill.). A securities fraud class action and derivative suit relating to publicly traded real estate investments. The court certified a plaintiff class and subclasses of approximately 100,000 members, 136 F.R.D. 466 (N.D. Ill. 1991) and approved a class and derivative settlement worth $98 million.

***Garden City Employees' Retirement System v. Anixter Int'l Inc.***, 09-5641 (N.D. Ill.). This is a securities class action on behalf of purchasers of Anixter common stock during the class period seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

*Horton v. Merrill Lynch, Pierce Fenner & Smith, Inc.*, No. 91-276-CIV-5-D (E.D.N.C.). A multi-million dollar settlement was approved in this securities fraud class action arising out of a broker's marketing of a speculative Australian security. The Court stated that "the experience of class counsel warrants affording their judgment appropriate deference in determining whether to approve the proposed settlement." 855 F. Supp. 825, 831 (E.D.N.C. 1994).

*Hoxworth v. Blinder Robinson & Co.*, 88-0285 (E.D. Pa.). A securities fraud and RICO class action resulting from alleged manipulative practices and boiler-room operations in the sale of "penny stocks." Judgment in excess of $70 million was entered and that judgment was affirmed by the Third Circuit Court of Appeals, 980 F.2d 912 (3rd Cir. 1992). *See also Hoxworth v. Blinder*, 74 F.3d 205 (10th Cir. 1996).

*Jones v. Corus Bancshares, Inc.*, 09-1538 (N.D. Ill.). Miller Law LLC served as *liaison* counsel in this securities fraud action against Corus.

*Makor Issues & Rights & Ltd. v. Tellabs*, 02-4356 (N.D. Ill.). This securities fraud action alleges that Tellabs, a global supplier of optical networking, broadband access and voice-quality enhancement solutions to telecommunications carriers and internet service providers engaged in wrongdoing concerning certain of its core products. Mr. Miller served as *liaison* counsel. The case was argued before the United States Supreme Court and created precedent for the pleading standard in securities cases. *Tellabs v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499 (2007). The court granted class certification on February 24, 2009. The court granted final approval of a settlement on July 26, 2011.

*Mirsky v. Ulta Salon, Cosmetics and Fragrance Inc.*, 07-7083 (N.D. Ill.). As alleged in the complaint, defendants issued materially false and misleading statements in connection with the IPO concerning ULTA's financial condition and the levels of its selling, general and administrative expenses inventories. The court approved settlement on November 16, 2009.

*Silverman v. Motorola*, 07-4507 (N.D. Ill.). Miller Law LLC served as *liaison* counsel in this securities fraud action against Motorola –one of the world's largest producers of wireless handsets. The court granted class certification on August 25, 2009. The court approved a $200 million settlement.

*Plumbers and Pipefitters Local Union No. 630 Pension-Annuity Trust Fund v. Allscripts-Misys Healthcare Solutions, Inc.*, 09-4726 (N.D. Ill.). This was a securities class action on behalf of purchasers of Allscripts-Misys Healthcare Solutions, Inc. common stock during the class period seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## INTELLECTUAL PROPERTY

*Acco Brands USA v. PC Guardian Anti-Theft Products, Inc.*, No. 06-7102 (N.D. Ill.). The firm represented one of the named defendants in this alleged patent infringement case.

*Baxter Int'l v. McGaw, Inc.*, (N.D. Ill.). Mr. Miller, together with co-counsel, successfully represented the Defendant in this patent infringement case and served as a member of the trial team

which won a jury verdict of non-infringement of three needleless injection sites and also obtained a finding that the Plaintiff had engaged in inequitable conduct on two of the patents. The decision was affirmed by the Court of Appeals Federal Circuit. (96-1329, -1342, 97-1331, -1350 decided June 30, 1998).

*Golden Bridge Technology v. AT&T Corp., et al.*, 10-428, 11-165 (consolidated) (D. Del.) represented plaintiff in this multi-defendant patent infringement litigation.

## SHAREHOLDER AND DERIVATIVE ACTIONS

*Kimberly Petersen, derivatively and on behalf of the Allstate Corp.*, No. 18-cv-03598 (N.D. Ill.) The firm serves as *liaison* counsel in this derivative action.

*Murphy v. CDW Corp.*, 07-3033 (N.D. Ill.). The firm represented a class of the public shareholders of CDW Corporation who sued the company and its directors for breach of fiduciary duties in connection with their acceptance of the $7.3 billion buyout. The complaint alleged, among other matters, that the price did not reflect the true value of the company to its shareholders. The firm had been appointed *liaison* counsel for the class. The Court entered an order approving the settlement on May 7, 2008.

*Scott Wells, derivatively on behalf of Treehouse Foods, Inc.*, 2016-CH-16359 (Circuit Court of Cook County, Ill.). The firm is *liaison* counsel in this derivative action.

## OTHER REPRESENTATIVE CASES

*In re: Ameriquest Mortgage Co. Mortgage Lending Practices Litig.*, MDL No. 1715 (N.D. Ill.). This large multidistrict national class action against this "subprime" lender, challenges Ameriquest's alleged predatory lending practices, "bait and switch", faulty appraisals, improper late fees and hidden costs, among other practices, and seeks damages and remedial relief on behalf of borrowers. At Plaintiffs' Co-lead counsel's request, Mr. Miller serves as *liaison* counsel.

*In re Sears, Roebuck and Co., ERISA Litig.*, 02-8324 (N.D. Ill.). Mr. Miller served as plaintiff's liaison counsel in this nationwide action. Sears settled this ERISA action for $14.5 million in cash. The case alleged breaches of fiduciary duties in contravention of the Employee Retirement Income Security Act of 1974. The plan participants will directly benefit from the resulting settlement.

*PrimeCo Personal Communications, L.P. v. Ill. Commerce Comm'n.*, No. 98 CH 5500 (Circuit Court of Cook County, Ill.). This class action sought recovery of an unconstitutional infra-structure maintenance fee imposed by municipalities on wireless telephone and pager customers in the State of Illinois. The court granted final approval to a settlement of more than $31 million paid by the City of Chicago. Subsequently, the court certified a settlement class of all wireless users in the State of Illinois and a Defendant Class of municipalities throughout the state which collected Infrastructure Maintenance Fees from wireless users and approved a settlement for the Class in excess of $11 million. Mr. Miller served as co-lead counsel for Plaintiffs in this novel class action.

*Rodriguez v. CenturyTel, Inc.*, 09-50006 (N.D. Ill.). In this FLSA action, Miller Law LLC recovered overtime and other wages for employees. The Court approved a settlement in September, 2009.

## DEFENDANT REPRESENTATIONS

In addition to our representation of plaintiffs, Miller Law attorneys have also represented defendants in complex class actions and derivative suits, including *In re Del-Val Financial Corp. Sec. Litig.*, MDL-872 (S.D.N.Y.); *In re Kenbee Limited Partnership Litig.*, No. 91-2174 (D.N.J.); *Weiss v. Winner's Circle of Chicago, Inc.*, No. 91-2780 (N.D. Ill.); *Levy v. Stern*, No. 11955 (New Castle County, Delaware). The court's decision in *In re Del-Val Financial Corp. Sec. Litig.*, 868 F. Supp. 547 (S.D.N.Y. 1994) resulted in a significant extension of the law concerning partial settlements of securities fraud class actions.

In the area of Intellectual Property, Miller Law attorneys represented McGaw, Inc. in an alleged patent infringement jury trial. The jury found in favor of our client and the decision was affirmed by the Federal Circuit. (96-1329, -1342, 97-1331, -1350 decided June 30, 1998); and represent Elizabeth Arden, Inc. for alleged violation of improperly extending patents, No. 10 C 3491) (N.D. Ill.). Mr. Miller also represents defendant PSMJ Resources, Inc. in the *Modern Trade Communications, Inc. v. PSMJ Resources, Inc.*, 10-5380 (N.D. Ill.)

## **Individual Biographies**

**KATHLEEN E. BOYCHUCK** focuses her practice on antitrust and consumer protection complex class litigation. Ms. Boychuck currently manages the electronic discovery review for document-intensive, multi-defendant antitrust class actions. She is active in the prosecution of a matter against a major U.S. pharmaceutical company relating to conduct which has caused generic delay into the market.

Ms. Boychuck graduated from The John Marshall Law School. While in law school, she appeared on the Dean's List. Ms. Boychuck also participated in a study abroad program with a concentration in international human rights in Salzburg, Austria, taught by the Honorable Anthony M. Kennedy, Associate Justice of the United States Supreme Court. Ms. Boychuck received her Bachelor of Arts in Political Science from the University of Wisconsin-Madison. She interned for the American Bar Association's Standing Committee on Law and National Security in Washington, D.C., in support of the legal response to terrorism, weapons of mass destruction and information warfare.

She is admitted to practice in the state of Illinois and the United States District Court for the Northern District of Illinois. Ms. Boychuck is a member of the American Bar Association.

**LORI A. FANNING** concentrates her practice on complex class litigation in a wide range of matters in federal and state court, primarily in the areas of consumer protection, antitrust, derivatives, and securities. She has prosecuted a variety of lawsuits involving the airline, banking, credit card, internet, pharmaceutical, and insurance industries. Ms. Fanning currently litigates antitrust claims in the pharmaceutical sector, including such cases as Effexor, Loestrin, Namenda, Niaspan, Suboxone, and Zetia, and previously in such actions as Aggrenox and Solodyn, and Ms. Fanning represented the End Payor Class in Flonase as co-lead counsel for the End Payor Class. She has also prosecuted

actions such as *In re: Polyurethane Antitrust Litigation* which settled for over $150 million; consumer protection actions, such as *Greene v. Sears Protection Company, et al.*, 15-cv-2546 (N.D. Ill.) where a nationwide class was certified and has defended patent litigation on behalf of Datamation Systems, Inc. Ms. Fanning actively participated in the trial preparations for *In re Visa Check/MasterMoney Antitrust Litigation,* a civil antitrust case that settled for in excess of $3 billion on the eve of trial. Prior to attending law school, she enjoyed a successful career as a logistician with the United States government at the Naval Sea Systems Command in the Washington, D.C. area in support of Foreign Military Sales, new ship construction, and naval equipment. For her dedication, the Department of the Navy honored her with the Meritorious Civilian Service medal.

Ms. Fanning received her law degree with honors and a Certificate in Litigation and Alternative Dispute Resolution from the Illinois Institute of Technology/Chicago-Kent College of Law. She also earned a Master of Science in Administration from Central Michigan University, and a B.A. from the University of Nebraska at Omaha. She is admitted to practice in the state of Illinois and the federal district courts for the Northern District of Illinois, the Eastern District of Wisconsin, and the United States Courts of Appeals for the Seventh and Ninth Circuits. Ms. Fanning is a member of the American Bar Association. Ms. Fanning also serves on the board of a non-profit, Intrigue Performance Dance Company. IPDC raises money for dance scholarships for dancers who could not otherwise afford to pursue their passion for dance.

**MARVIN A. MILLER** has 52 years of commercial and class action litigation experience. Mr. Miller has been lead or co-lead counsel across the full spectrum of industries (airline, cell and telephone, financial services, Internet and technology, manufacturing, pharmaceuticals, retailing, stock broker and exchange, and utilities) and practices (antitrust, consumer and investor fraud and protection, employment and employee benefits, insurance, shareholder derivative actions) that encompasses Miller Law LLC's practice. Mr. Miller holds an AV Pre-eminent (highest) rating from Martindale-Hubbell. Each year from January 2007 through 2013 and 2015, 2016, and 2017, Law & Politics and the publishers of Chicago Magazine named Mr. Miller an Illinois Super Lawyer. Super Lawyers are the top 5 percent of attorneys in Illinois, as chosen by their peers and through the independent research of Law & Politics. Mr. Miller has also served as a panelist for Practising Law Institute.

Prior to founding Miller Law LLC, Mr. Miller was a co-founder of another national class action law firm. Throughout his career in class action jurisprudence, Mr. Miller has represented shareholders and investors in high profile and precedent-setting class action litigation involving such companies as Continental Illinois National Bank and Trust and Baldwin United Corporation. He was lead attorney in *Smith v. Groover*, in which he represented clients against the Chicago Board of Trade and several of its traders; the decision in the case, later affirmed, *sub. nom.*, in *Curran v. Merrill Lynch Pierce Fenner & Smith*, by the U.S. Supreme Court, established the precedent that an individual has an implied private right of action to sue an Exchange for negligence in failing to supervise its members.

Mr. Miller has 52 years of commercial and class action litigation experience. He has been appointed lead counsel, co-lead counsel, or other leadership positions in class actions across the full spectrum of industries and practices, including antitrust, consumer and investor fraud and protection, employment and employee benefits, insurance, shareholder derivative actions. From January 2007 through 2023, Law & Politics and the publishers of Chicago magazine named Mr.

Miller an Illinois Super Lawyer. Super Lawyers are the top five percent of attorneys in Illinois, as chosen by their peers and through the independent research of Law & Politics. He also has been awarded an AV Preeminent Attorney by Martindale-Hubble.

Mr. Miller is a 1970 graduate from Illinois Institute of Technology-Chicago-Kent College of Law where he was a member of the Editorial Board of the Chicago-Kent Law Review. He received his undergraduate degree from Hofstra University 1967. He is admitted to the state bars of Illinois and New York, and numerous United States Courts and Courts of Appeals.

***ANDREW SZOT*** handles complex commercial litigation matters throughout the United States on behalf of individuals, organizations and companies, including the prosecution of class actions involving antitrust violations, commercial fraud, violations of the federal Motor Carrier Safety Administration Truth-in-Leasing statute and corresponding federal regulations, as well as actions brought pursuant to the federal False Claims Act (*qui tam* actions). Mr. Szot's advocacy has helped achieve significant victories for several indirect purchaser classes, such as in *In re: Polyurethane Antitrust Litigation* ($150 million class settlement for indirect purchasers); *In re: Potash Antitrust Litigation (II)* (N.D. Ill.) ($17.5 million class settlement for indirect purchasers); and *In re: Flonase Antitrust Litig.* (E.D. Pa.) ($46 million class settlement for indirect purchasers). Most recently, on behalf of a class of indirect purchasers, Mr. Szot successfully obtained final approval of a $33 million settlement package for the class stemming from alleged price-fixing and bid-rigging of liquid aluminum sulfate, a water treatment chemical. The $33 million settlement likely exceeded one hundred percent of the estimated, aggregated treble damages sustained by the class. Mr. Szot has been repeatedly selected as an Illinois *Rising Star* in litigation.

Mr. Szot received his Bachelor of Arts in History, with distinction, in 1997 from the University of Michigan in Ann Arbor, and earned his law degree from the University of Michigan Law School in 2000. He is a member of the Illinois State Bar (2001), the U.S. Court of Appeals for the Seventh Circuit (2001), the U.S. District Court for the Northern District of Illinois (2001), the U.S. District Court for the Eastern District of Wisconsin (2007), the U.S. District Court of Colorado (2011) and the Federal Trial Bar for the Northern District of Illinois (2007).

Before entering law school, Mr. Szot spent a year teaching and mentoring disadvantaged elementary school students as an AmeriCorps service volunteer, earning him a nomination for the Michigan Governor's Service Award. From June 2012 to June 2014, he served as co-chairperson of the Human Rights Committee of the Chicago Bar Association. He also served on the Advisory Board of Art Works Projects for Human Rights, and was a member of the legal advisory team for *The Prosecutors, a* documentary film about the prosecution of sexual crimes in conflict areas.

***MATTHEW E. VAN TINE*** focuses his practice on antitrust, securities fraud, and consumer protection matters. He has participated in the prosecution and defense of many securities, antitrust, and consumer class actions over the past two decades including securities litigation against Van Kampen Funds and Baxter International; antitrust class actions involving nurses' wages, the drug warfarin sodium (Coumadin), and an industry-wide effort to raise drug prices paid by retail drug stores (the Brand Name Prescription Drug Antitrust Litigation); and litigation on behalf of consumers challenging an unconstitutional fee imposed on wireless and landline phone customers. Before associating with Miller Law LLC, Mr. Van Tine was affiliated with two other class action boutique law firms for fourteen years. Mr. Van Tine has also practiced with large law firms in

Chicago and Boston and served as an Assistant Corporation Counsel for the City of Chicago Law Department.

Mr. Van Tine received his A.B. degree *cum laude* from Harvard College in 1980, and his J.D. degree *magna cum laude* from Boston University School of Law in 1983, where he served as an Executive Editor of the Law Review and was the author of Note, *Application of the Federal Parole Guidelines to Certain Prisoners: An Ex Post Facto Violation*, 62 B.U.L. Rev. 515 (1982). Following law school, Mr. Van Tine served as a law clerk to the Honorable Raymond J. Pettine of the United States District Court for the District of Rhode Island. Mr. Van Tine's practice admissions include the state bars of Illinois and Massachusetts, the Supreme Court of the United States, the United States Court of Appeals for the Seventh Circuit and the United States District Courts for the Northern District of Illinois and the District of Massachusetts. He is a member of the Chicago and American Bar Associations and served as a past President of the Abraham Lincoln Marovitz American Inn of Court.

# EXHIBIT 2

**Exhibit 2**
**In re Zetia Antitrust Litigation**
**MILLER LAW LLC**

| Attorney | Rate | Hours | Lodestar |
|---|---|---|---|
| Marvin A. Miller | 815 | 1.2 | $ 978.00 |
| Marvin A. Miller | 875 | 259.5 | $ 227,062.50 |
| Marvin A. Miller | 935 | 71.7 | $ 67,039.50 |
| Marvin A. Miller | 975 | 514.4 | $ 501,540.00 |
| Matthew E. Van Tine | 750 | 1549.4 | $ 1,162,050.00 |
| Matthew E. Van Tine | 785 | 418.1 | $ 328,208.50 |
| Matthew E. Van Tine | 850 | 1090 | $ 926,500.00 |
| Lori A. Fanning | 650 | 2001.4 | $ 1,300,910.00 |
| Lori A. Fanning | 685 | 202.8 | $ 138,918.00 |
| Lori A. Fanning | 785 | 1171.4 | $ 919,549.00 |
| Kathleen E. Boychuck | 475 | 2157.6 | $ 1,024,860.00 |
| Kathleen E. Boychuck | 525 | 80.9 | $ 42,472.50 |
| Kathleen E. Boychuck | 725 | 865.9 | $ 627,777.50 |
| Andrew Szot | 650 | 195.2 | $ 126,880.00 |
| Andrew Szot | 670 | 3.2 | $ 2,144.00 |
| Andrew Szot | 685 | 3.4 | $ 2,329.00 |
| Andrew Szot | 785 | 71.1 | $ 55,813.50 |
| Stacy Bond | 475 | 1294.4 | $ 614,840.00 |
| Stacy Bond | 525 | 9 | $ 4,725.00 |
| Jennifer Morante | 450 | 150.7 | $ 67,815.00 |
| Andrew Kanter | 475 | 29 | $ 13,775.00 |
| Anne Jewell | 250 | 73.2 | $ 18,300.00 |
| Anne Jewell | 285 | 18.9 | $ 5,386.50 |
| Anne Jewell | 475 | 42.5 | $ 20,187.50 |
| Dena Robinson | 250 | 931.6 | $ 232,900.00 |
| Dena Robinson | 285 | 11.7 | $ 3,334.50 |
| Dena Robinson | 375 | 319.2 | $ 119,700.00 |
| Jorge Ramirez | 220 | 491.4 | $ 108,108.00 |
| Jorge Ramirez | 255 | 102.5 | $ 26,137.50 |
| Jorge Ramirez | 325 | 317 | $ 103,025.00 |
| **TOTAL** | | **14,448.30** | **$ 8,825,378.50** |

# EXHIBIT 3

**EXHHIBIT 3**
**In re Zetia Antitrust Litigation**
**MILLER LAW LLC**
**EXPENSE REPORT**

| CATEGORY | | AMOUNT |
|---|---|---|
| Assessments (Litigation Fund Payment) | $ | 2,003,550.00 |
| Reproduction | $ | 8,246.75 |
| Court Fees (Filing, etc.) | $ | 755.05 |
| Database Hosting | $ | 12,952.28 |
| Delivery/Postage/Messenger | $ | 1,741.06 |
| Online Legal Research | $ | 29,382.86 |
| Transcripts (Hearing, Depositions, etc.) | $ | 254.70 |
| Travel (Airfare, Meals, Lodging) | $ | 77,335.20 |
| Trial Supplies | $ | 814.70 |
| **TOTAL** | $ | **2,135,032.60** |

# EXHIBIT C

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | |
|---|---|
| IN RE: ZETIA (EZETIMIBE) ANTITRUST LITIGATION<br><br>This Document Relates to: All End-Payor Actions | MDL No. 2836<br>No. 2:18-md-2836-RBS-DEM |

## DECLARATION OF MICHAEL M. BUCHMAN IN SUPPORT OF MOTLEY RICE LLC'S REQUEST FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

I, Michael M. Buchman, hereby declare as follows:

1.    I am an attorney admitted to practice before the courts of the State of New York and Connecticut and I am a member in the law firm of Motley Rice LLC ("Motley Rice"). I have personal knowledge of the facts stated in this Declaration and, if called as a witness, I would testify competently to them. I make this Declaration in support of Motley Rice's request for attorneys' fees and reimbursement of litigation expenses, as set forth in End-Payor Plaintiffs' Motion for Attorneys' Fees, Reimbursement of Expenses and Incentive Awards for the Class Representative Plaintiffs filed contemporaneously herewith.

2.    I am counsel of record in this case for plaintiff The City of Providence, Rhode Island ("Providence") and was appointed Interim Co-Lead Counsel and Co-Lead Counsel for the End-Payor Class.

3.    A brief description of my firm, which includes a short summary of credentials and experience litigating similar complex antitrust pharmaceutical cases is attached as **Exhibit 1.**

4.    Throughout the course of this litigation, my firm kept files contemporaneously documenting all time spent, including tasks performed, and expenses incurred. All the time and expenses reported by my firm advanced the tremendous class-wide result achieved in this case.

5.      As Interim Co-Lead Counsel and Co-Lead Counsel for the End-Payor Class, my firm's work includes research, drafting and oversight of every aspect of the litigation from inception through settlement with the Defendants. Rather than unnecessarily burden the Court with a complete duplicate recitation of my firm's work to achieve the benefits for the End-Payor Class, I adopt and respectfully refer the Court to the details of my firm's work as set forth in 84 and 87 the Joint Declaration (ECF No. 2133), which I adopt as fully set forth herein.

6.      The schedule attached as **Exhibit 2,** and incorporated herein, is a summary of the amount of time spent by my firm's attorneys and professional support staff who were involved in this litigation. It does not include any time devoted to finalizing the final approval and the fee application papers after August 31, 2023. Nor does it include time traveling to and attending the final approval hearing. The lodestar calculation is based on my firm's historical billing rates. Exhibit 2 was prepared from contemporaneous time records regularly prepared and maintained by my firm. I authorize them to be submitted for inspection by the Court, if necessary.

7.      The total number of hours reasonably expended on this litigation by my firm **from** inception through August 31, 2023, which does not include time spent preparing this Declaration, is 9,522.7 hours. The total lodestar for my firm at historic rates is $6,188,904.50. Expense items are billed separately and are not duplicated in my firm's lodestar.

8.      The expenses my firm incurred in litigating this action are reflected in the books and records of my firm. These books and records are prepared from expense vouchers, invoices, receipts, check records, and other source materials and accurately reflect the expenses incurred. My firm's expense records are available for inspection by the Court, if necessary.

9.      My firm incurred or is obligated to pay a total of $ 1,650,933.50 in unreimbursed expenses, all of which were reasonable and necessary for the prosecution of this litigation. Of

this amount, $ 1,535,500.00 was for assessment payments for common litigation expenses. A summary of those expenses by category is attached as Exhibit 3.

I declare under penalty and perjury that the foregoing is true and correct. Executed September 13, 2023, in New York, New York.

*s/Michael M Buchman*
Michael M. Buchman

# EXHIBIT 1



**FIRM RESUME**

MotleyRice LLC

## FIRM OVERVIEW



Motley Rice attorneys have been at the forefront of some of the most significant and monumental civil actions over the last 30 years. Our experience in complex trial litigation includes class actions and individual cases involving securities and consumer fraud, occupational disease and toxic tort, medical drugs and devices, environmental damage, terrorist attacks and human rights abuses.

### Tobacco Master Settlement Agreement
In the 1990s, Motley Rice attorneys and more than half of the states' attorneys general took on the tobacco industry. Armed with evidence acquired from whistleblowers, individual smokers' cases and tobacco liability class actions, the attorneys led the campaign in the courtroom and at the negotiation table to recoup state healthcare funds and exact marketing restrictions from cigarette manufacturers. The effort resulted in significant restrictions on cigarette marketing to children and culminated in the $246 billion Master Settlement Agreement, the largest civil settlement in U.S. history.

### Asbestos Litigation
From the beginning, our lawyers were integral to the story of how "a few trial lawyers and their asbestos-afflicted clients came out . . . to challenge giant asbestos corporations and uncover the greatest and longest business cover-up of an epidemic disease, caused by a product, in American history."[1] In addition to representing thousands of workers and family members impacted by asbestos, Motley Rice has represented numerous public entities, and litigated claims alleging various insurers of asbestos defendants engaged in unfair settlement practices in connection with the resolution of underlying asbestos personal injury claims. This litigation resulted in, among other things, an eleven-state settlement with Travelers Insurance Company.

### Anti-Terrorism and Human Rights
In *In re Terrorist Attacks on September 11, 2001*, Motley Rice attorneys brought a landmark lawsuit against the alleged private and state sponsors of al Qaeda and Osama bin Laden in an action filed on behalf of more than 6,600 family members, survivors, and those killed on 9/11—including the representation of more than 900 firefighters and their families. In prosecuting this action, Motley Rice has undertaken a global investigation into terrorism financing.

Our attorneys also initiated the *In re September 11 Litigation* and negotiated settlements for 56 families that opted out of the Victim Compensation Fund that far exceeded existing precedents at the time for wrongful death cases against the airline industry.

### BP PLC Oil Spill Litigation
In April 2010, the Deepwater Horizon disaster spilled approximately 4.9 million gallons of oil into the water, killed 11 oil rig workers, devastated the Gulf's natural resources and profoundly harmed the economic and emotional well-being of hundreds of thousands of people. The Deepwater Horizon Economic and Property Damages Settlement is the largest civil class action settlement in U.S. history. Motley Rice co-founder Joseph Rice is a Plaintiffs' Steering Committee member and

served as one of the primary negotiators of that Settlement and the Medical Benefits Settlement. In addition, Rice led negotiations in the $1.028 billion settlement between the PSC and Halliburton Energy Services for its alleged role in the oil spill. Motley Rice attorneys continue to hold leadership roles in the litigation and are currently working to ensure that all qualifying oil spill victims are fairly compensated.

### Volkswagen 'Clean Diesel' Litigation
In 2015, Volkswagen Group's admission that it had programmed more than 11 million vehicles to cheat emissions tests and bypass standards sparked worldwide outrage. Motley Rice co-founder Joe Rice served as one of the lead negotiators in the nearly $15 billion settlement deal reached in 2016 for U.S. owners and lessees of 2.0-liter TDI vehicles, the largest auto-related consumer class action settlement in U.S. history. Rice and other Motley Rice attorneys also helped recover up to $4.4 billion with regards to affected 3.0-liter vehicles.

### Transvaginal Mesh Litigation
Motley Rice attorneys represent thousands of women and have played a leading role in litigation alleging debilitating and life-altering complications caused by defective transvaginal mesh devices. In 2014, Joe Rice, with co-counsel, negotiated the original settlement deal reached in *In re American Medical Systems, Inc., Pelvic Repair Systems Products Liability Litigation* that numerous subsequent settlements with the manufacturer were modeled after.

### Opioid Litigation
Motley Rice is at the forefront of national opioid litigation and represents dozens of governmental entities, including states, cities, towns, counties and townships in ongoing investigations and litigations filed in both the National Prescription Opiate Litigation, as well as in state courts that allege deceptive marketing and/or overdistribution of opioids. Firm co-founder Joe Rice is one of three co-leads for the MDL coordinated in the Northern District of Ohio. Also holding leadership positions in the MDL are Motley Rice attorneys Linda Singer (DC, NY), co-chair of the Manufacturer/Marketing Committee, and Lou Bograd (DC, KY), co-chair of the Law & Briefing Committee. Joe Rice led negotiations for a proposed $26 billion settlement reached in July 2021 with Johnson & Johnson and the nation's "Big Three" opioid distributors, AmerisourceBergen, Cardinal Health and McKesson for the more than 3,000 litigating communities in the MDL. Motley Rice attorneys also led negotiations for the $260 million settlement that was reached on the eve of trial in 2019 to resolve the MDL's first track of claims filed by two Ohio subdivisions, Summit County, a Motley Rice client, and Cuyahoga County.

## LITIGATION PROFILES    *Motley Rice has held leadership roles in numerous cases. Highlights include:*

### DEFECTIVE DRUGS AND DEVICES

Plaintiffs' Executive Committee *In re Paragard IUD Products Liability Litigation*, MDL 2974 (N.D.Ga.)

Plaintiffs' Steering Committee and Co-Chair of Leadership Development Committee *In re: Zantac (Ranitidine) Products Liability Litigation*, No. 9:20-md-02924 (S.D. Fla.).

Plaintiffs' Steering Committee *In re Allergan Biocell Textured Breast Implant Products Liability Litigation*, No. 2:19-md-02921, (D.N.J.)

Bellwether Committee Co-Chair *In re Xarelto Products Liability Litigation*, MDL 2592

Plaintiffs' Steering Committee *In re Proton-Pump Inhibitor Prods. Liability Litigation* (No. II), D.N.J.

Plaintiffs' Steering Committee *In re Zimmer NexGen Knee Implant Products Liability Litigation*, N.D. Ill.

Plaintiffs' Steering Committee and Co-lead Counsel *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Products Liability Litigation*, MDL 2782

Lead Counsel; Plaintiffs' Executive Committee Essure Permanent Sterilization Device California State Court Consolidation

Lead counsel and Plaintiffs' Executive Committee in *In re Atrium Medical Corp. C-QUR Mesh Products Liability Litigation*, MDL 2753

Plaintiffs' Steering Committee, Co-lead Counsel and Liaison Counsel in *In re Davol/ C.R. Bard Hernia Mesh* (PC-2017-1929)

Plaintiffs' Steering Committee *In re Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Litigation, MDL No. 2738*

Co-lead counsel and Plaintiffs' Steering Committee *In re Zofran (Ondansetron) Products Liability Litigation*, MDL No. 2657

Plaintiffs' Executive Committee in *In re Viagra (Sildenafil Citrate) and Cialis (Tadalafil) Products Liability Litigation*, MDL 2691

Plaintiffs' Steering Committee in *In re Bard IVC Filters Products Liability Litigation*, MDL 2641

Plaintiffs' Steering Committee of *In re Lipitor® (Atorvastatin Calcium) Marketing, Sales Practices and Products Liability Litigation, MDL 2502.*

Co-lead plaintiffs' counsel and liaison counsel *In re Kugel Mesh Hernia Patch Products Liability Litigation*, MDL No. 07-1842 Rhode Island federal court's first consolidated MDL, on behalf of thousands of people alleging injury by the hernia repair patch manufactured by Davol, Inc., as well as liaison counsel for the nearly 2,000 lawsuits consolidated in Rhode Island state court.

Co-lead coordinating counsel of *In re Ethicon, Inc., Pelvic Repair Systems Products Liability Litigation*, MDL 2327 (S.D.W.Va.)

Co-lead counsel in *In re American Medical Systems, Inc., Pelvic Repair Systems Products Liability Litigation*, MDL 2325 (S.D.W.Va.)

Co-liaison counsel *In re C.R. Bard, Inc., Pelvic Repair Systems Products Liability Litigation*, MDL 2187 (S.D.W.Va.)

Co-lead counsel *In re Boston Scientific Corp., Pelvic Repair Systems Products Liability Litigation*, MDL 2326, (S.D.W.Va.)

Co-liaison counsel *In re Pelvic Mesh Litigation/Bard*, No. L-6339-10 in New Jersey state court.

State court liaison counsel of *In re Bard Litigation* in Massachusetts and Delaware

Co-lead counsel of the Mirena **MDL** (S.D.N.Y.)

Co-lead counsel in the *In re Mirena Product Liability* state court consolidation in New Jersey

Plaintiffs' Steering Committee of *In re Power Morcellator Products Liability Litigation*, MDL No. 2652

Plaintiffs' Steering Committee of *In re Zoloft (Sertraline Hydrochloride) Products Liability Litigation*, MDL 2342

Plaintiffs' Steering Committee of *In re NuvaRing Products Liability Litigation*, MDL 1964

Plaintiffs' Steering Committee of *In re DePuy Orthopaedics, Inc. ASR Hip Implant Products Liability Litigation*, MDL 2197

Plaintiffs' Steering Committee of *In re DePuy Orthopaedics, Inc. Pinnacle Hip Implant Products Liability Litigation*, MDL 2244

*In re A.H. Robins Co., Inc., "Dalkon Shield" IUD Products Liability Litigation* (No. II), MDL 631

Plaintiffs' Steering Committee of *In re Medtronic, Inc., Sprint Fidelis Leads Products Liability Litigation*, MDL 1905

Plaintiffs' Steering Committee of *In re Trasylol Products Liability Litigation*, MDL 1928

Plaintiffs' Steering Committee of *In re Levaquin Products Liability Litigation*, MDL 1943

Plaintiffs' Steering Committee and co-lead counsel of *In re Digitek Products Liability Litigation*, MDL 1968

Plaintiffs' Steering Committee of *In re Avandia Marketing, Sales Practices and Products Liability Litigation*, MDL 1871

Plaintiffs' Steering Committee of *In re Hydroxycut Marketing and Sales Practice Litigation*, MDL 2087

Plaintiffs' Steering Committee of *In re Zicam Cold Remedy Marketing, Sales Practices and Products Liability Litigation*, MDL 2096

Plaintiffs' Steering Committee and co-lead counsel of *In re Human Tissue Products Liability Litigation*, MDL 1763

*In re Temporomandibular Joint (TMJ) Implants Products Liability Litigation*, MDL 1001

*In re Abbott Laboratories Omniflox Products Liability Litigation*, MDL 1004

Plaintiffs' Steering Committee and liaison counsel of *In re Showa Denko K.K. L-tryptophan Products Liability Action*, MDL No. 865



## CONSUMER PROTECTION

Plaintiffs' Steering Committee *In re McKinsey & Co., Inc. National Prescription Opiate Consultant Litigation* No. 21-md-02996-CRB (N.D. Cal.)

Co-Lead Counsel *In re National Prescription Opiate Litigation*, No. 17-md-02804 (N.D. Ohio).

Co-Lead Counsel *In re Blackbaud, Inc., Customer Data Breach Litigation*, MDL 2972 (D.S.C)

Co-Lead Counsel on the Coordinating Committee for the Pennsylvania Coordinated Cases *County of Delaware v. Purdue Pharma L.P., et al.*

Plaintiffs' Steering Committee of *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 CRB (JSC)

Plaintiffs' Steering Committee of *In re Chrysler-Dodge-Jeep EcoDiesel Marketing, Sales Practices and Products Liability Litigation*, No. 17-md-02777-EMC (N.D. Calif.)

Co-liaison counsel and Plaintiffs' Steering Committee in *In re 21st Century Oncology Customer Data Security Breach Litigation*, MDL 2737 (M.D. Fla.)

## CATASTROPHIC INJURY AND WRONGFUL DEATH

Plaintiffs' Executive Committee of *In re General Motors LLC Ignition Switch Litigation*, MDL 2543

*Hoover, et al. v. NFL, et al.*, MDL #2:12-cv-05209-AB (E.D. Pa.).

Lead counsel in *Charleston Firefighter Litigation v. Sofa Super Store, Inc., et al.*, No. 07-CP-10-3186 (Ct. of Common Pleas, Ninth Jud. Cir.), consolidated complex litigation involving the families of nine firefighters who died in a furniture store disaster.

*Clifton Chesnut, a minor v. Waupaca Elevator Company, Inc., et al.*, No. 2013-CP-10-2060 (Ct. of Common Pleas, Ninth Jud. Cir.).

*Veronica Lynne Tario v. SOCO, Holding, LLC et al.*, No. 2013-cp-26-2499 (Ct. of Common Pleas, Fifteenth Jud. Cir.).

*Satterfield et al. v. Napa Home & Garden Inc., et al.*, No. 7:11-1514-JMC (D.S.C.).

Plaintiffs' Steering Committee and multiple plaintiffs' counsel, *In re San Juan DuPont Plaza Hotel Fire Litigation*, MDL 721 (D.P.R.).

*Strother v. John Wieland Homes and Neighborhoods of the Carolinas, et al.*, No. 09-CO-29-1783 (Ct. of Common Pleas, Sixth Jud. Cir.), an individual catastrophic personal injury/premise liability case involving life-altering brain injury.

Plaintiffs' Steering Committee and Discovery Committee in *In re Bridgestone/Firestone, Inc. Tires Products Liability Litigation*, MDL 1373 (S.D. Ind.).

*In re Ford Motor Co. E-350 Van Products Liability Litigation* (No. II), MDL 1687

Class counsel in *Carol Lee Whitfield, et al., v. Sangamo Weston*, No. 6:84-3184 (D.S.C.), a PCB personal injury and property damage class action settled while pending before U.S. District Court for the District of South Carolina, Greenville Division.

*In re Graniteville Train Derailment, No. 2006-CP-02-1032 (Ct. of Common Pleas, Second Jud. Cir.).* served in a leadership role for both individual and class action cases in connection with the January 2005 railroad derailment and chemical spill in Graniteville, S.C.

## SECURITIES FRAUD AND ERISA CLASS ACTIONS

Lead counsel in *Shenwick et al. v. Twitter Inc. et al.*, No. 3:16-cv-05314 (N.D. Cal.).

Co-lead counsel in *Hatamian v. Advanced Micro Devices, Inc.*, No. 14-cv-00226-JD (N.D. Cal.)

Lead counsel in *Bernacchi v. Investment Technology Group, Inc.*, No. 1:15-cv-06369-JFK (S.D.N.Y.).

Co-lead counsel in *Berry v. Wells Fargo & Co.*, No. 3:17-cv-00304 (D.S.C.)

Co-lead counsel *In re Intel Corp. Securities Litigation*, No. 5:20-cv-05194-EJD (N.D. Cal.)

Co-lead counsel in *In re 3M Co. Securities Litigation*, No. 2:19-cv-15982 (D.N.J.)

Lead counsel in *Takata v. Riot Blockchain, Inc., et al.*, No. 3:18-cv-02293 (D.N.J.)

Co-lead counsel in *Parchmann v. MetLife, Inc. et al*, No. 1:18-cv-00780-SJ-RLM (E.D.N.Y.)

Co-lead counsel in class action *Bennett v. Sprint Nextel Corporation*, No. 2:09-cv-02122-EFM-KMH (D. Kan.), representing the PACE Industry Union-Management Pension Fund (PIUMPF) and several other institutional investors.

Co-class counsel in *Alaska Electrical Pension Fund v. Pharmacia Corp.*, No. 03-1519 (D.N.J.). federal securities fraud litigation alleging that the defendants misrepresented clinical trial results of Celebrex® to make its safety profile appear better than rival drugs.

Lead counsel in *In re Barrick Gold Securities Litigation*, No. 1:13-cv-03851 (RPP) (S.D.N.Y.)

Lead counsel in *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST (N.D. Cal.)

Co-lead counsel in *Ross v. Career Education Corp.* No. 1:12-cv-00276 (N.D. Ill.).

Co-lead counsel representing a group of institutional shareholders *In re Allion Healthcare, Inc. Shareholders Litigation*, No. 5022-cc (Del. Ch.).

Co-lead counsel representing investors in *Robert Freedman v. St. Jude Medical, Inc.,* No. 0:2012cv03070 (D. Minn.).

Co-lead counsel representing investors in *In re Hewlett-Packard Co. Securities Litigation,* No. SACV 11-1404 AG (RNBx) (C.D. Cal.).

Co-lead counsel in *In re UBS AG Securities Litigation,* No.07 Cov. 11225 (RJS) (S.D.N.Y.).

Co-lead counsel representing institutional investors in *Hill v. State Street Corporation,* No. 09-cv-12146-NG (D. Mass.).

Sole lead counsel representing lead plaintiffs in *City of Brockton Retirement System v. Avon Products, Inc.,* No. 11 Civ. 4665 (PGG) (S.D.N.Y.).

Co-lead counsel on behalf of stockholders in *Marsden v. Select Medical Corporation,* No. 04-cv-4020 (E.D. Pa.).

Co-lead counsel on behalf of a class of investors in *South Ferry LP #2 v. Killinger,* No. C04-1599C-(W.D. Wash.) (regarding Washington Mutual).

Sole lead counsel representing the lead plaintiff in class action, *In re NPS Pharmaceuticals, Inc. Securities Litigation,* No. 2:06-cv-00570-PGC-PMW (D. Utah), concerning the drug PREOS.

Co-lead counsel for co-lead plaintiffs Drywall Acoustic Lathing and Insulation Local 675 Pension Fund and Metzler Investment GmbH in *In re Molson Coors Brewing Co. Securities Litigation,* No. 1:05-cv-00294 (D. Del.).

Co-lead plaintiffs' counsel in shareholder class action *In re The DirecTV Group, Inc. Shareholder Litigation,* No. 4581-VCP (Del. Ch.).

Sole lead counsel in *Manville Personal Injury Settlement Trust v. Gemunder,* No. 10-CI-01212 (Ky. Cir. Ct.) (regarding Omnicare, Inc.), a shareholder derivative complaint stemming from federal investigations into three kickback schemes.

Co-lead plaintiffs' counsel in *City of Sterling Heights General Employees' Retirement System v. Hospira, Inc., No. 11 C 8332 (N.D. Ill.),* a securities fraud class action.

Co-lead counsel in *In re Rehabcare Group, Inc. Shareholders Litigation,* No. 6197-VCL (Del. Ch.), merger litigation involving the acquisition of healthcare provider RehabCare Group, Inc., by Kindred Healthcare, Inc.

Class counsel in *Brown v. Charles Schwab & Co.,* No. 2:07-cv-03852-DCN (D.S.C.), one of the first cases to interpret the civil liabilities provision of the Uniform Securities Act of 2002.

Co-lead counsel in securities class action settlement *In re MBNA Corporation Securities Litigation,* No. 05-CV-00272-GMS (D.Del.).

Lead counsel for lead plaintiffs in a securities class action involving a group of shareholders who purchased publicly-traded Dell securities in *In re Dell, Inc. Securities Litigation,* No. A-06-CA-726-SS (W.D. Tex.).

Co-lead counsel in *Minneapolis Firefighters' Relief Association v. Medtronic, Inc.,* No. 08-6324 (PAM/AJB) (D. Minn.), representing a class of investors who purchased Medtronic common stock.

Co-lead counsel in *In re Synovus Financial Corporation,* No. 1:09-cv-01811 (N.D. Ga.), for co-lead plaintiff Sheet Metal Workers' National Pension Fund, investors in Georgia bank Synovus Financial Corp.

Plaintiffs' Steering Committee and plaintiffs' liaison counsel, *In re Policy Management Systems Corporation,* No. 3:93-0807-JFA (D.S.C.).

Sole lead counsel, *In re Coventry Health Care, Inc. Securities Litigation,* No. 7905-CS (Del. Ch. ), a shareholder class action challenging the $7.2 billion acquisition of Coventry Health Care, Inc., by Aetna, Inc.

Co-lead counsel in Louisiana class action *In re The Shaw Group, Inc. Shareholders Litigation,* No. 614399 (19th Jud. Dist. La.).

Co-lead counsel, *In re Atheros Communications Inc. Shareholder Litigation,* No. 6124-VCN (Del. Ch.), merger litigation involving Qualcomm Incorporated's proposed acquisition of Atheros Communications, Inc.

## ANTITRUST/COMPETITION LAW

Plaintiffs' Steering Committee *In re Juul Labs, Inc. Antitrust Litigation,* Case No. 20-cv-02345-WHO (N.D. Cal.)

Plaintiffs' Steering Committee *In re Chicago Board Options Exchange Volatility Index Manipulation Antitrust Litigation* No. 18 CV 4171 MDL No. 2842 (N.D. Ill. Eastern Division).

Co-Lead Counsel *In re Zetia (Ezetimibe) Antitrust Litigation,* MDL No. 2:18md2836 (E.D. Va Norfolk Division).

Plaintiffs' Steering Committee of *In re Digoxin & Doxycycline Antitrust Litigation,* 16 md 2724 (E.D. Pa.)

Interim Co-Lead Counsel of *In re Solodyn Antitrust Litigation,* 14 cv 2503 (D. Mass.)

Interim Co-Lead Counsel in antitrust class action *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation,* MDL No. 2542 (S.D.N.Y.).

Appointed to the Executive Committee in antitrust class action *In re Lidoderm Antitrust Litigation,* MDL No. 2521 (N.D.Cal.).

Interim Liaison Counsel *In Re Aggrenox Antitrust Litigation,* MDL No. 2516 (D.Conn.).

Co-lead counsel in antitrust class action *In re Loestrin 24 Fe Antitrust Litigation,* MDL 2472 (D.R.I.).

Co-lead counsel in antitrust class action *In re Suboxone (Bupreorphine Hydrochloride and Naloxone) Antitrust Litigation,* MDL 2445 (E.D. Pa.).

Co-lead counsel in antitrust class action *In re Niaspan Antitrust Litigation,* MDL 2460 (E.D. Pa.).

Co-lead counsel in antitrust class action *In re Effexor XR Antitrust Litigation,* No. 11-cv-05590 (D.N.J.).



Co-lead counsel for the end-payor antitrust class action *In re Actos Antitrust Litigation,* (S.D.N.Y.).

Co-lead counsel in antitrust class action *In re Lipitor Antitrust Litigation,* MDL 2332 (D.N.J.).

## TOXIC TORTS AND OCCUPATIONAL DISEASE

Co-lead Counsel in the PFAS contamination class action in the Western District of Michigan, *Beverly Zimmerman, et al., v. 3M Company, et al.,* (W.D. Mich., Southern Division) Case No. 1:17-cv-1062-HYJ-SJB (December 1, 2017).

Liaison Counsel for *In re Aqueous Film-Forming Foams Products Liability Litigation* (MDL 2873 D.S.C.) regarding a fire suppressant that is part of the PFAS chemical group that allegedly contaminated groundwater and harmed people.

Plaintiffs' Executive Committee in the Flint, MI lead contamination class action: *In re Flint Water Cases,* No. 5:16-cv-10444 (E.D. Mich.).

Plaintiffs' Steering Committee of *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010,* MDL 2179, (E.D. La.), and lead settlement negotiators of the two class action settlements reached with BP, one of which is the largest civil class action settlement in U.S. history.

Lead trial counsel in *The People of the State of California v. Atlantic Richfield Company, et al.* No. 1-00-CV-788657 (Santa Clara Cnty. Super. Ct.) Resulting in 2014 verdict holding Sherwin-Williams Company, ConAgra Grocery Products and NL Industries Inc. liable for creating a public nuisance and ordered abatement of lead paint from homes within 10 California cities and counties.

*Bongani Nkala & Others v. Harmony Gold Mining Company Limited & Others,* No. 48226/12 (South Gauteng High Court, Johannesburg). Motley Rice has been retained as a consultant by South African human rights lawyer Richard Spoor in his effort to take on leading global gold producers and seek justice for tens of thousands of exploited gold mine workers suffering from silicosis.

*Travelers Statutory Direct Action Settlement* (Bankr. Court, S.D.N.Y.), an eleven-state asbestos settlement with Travelers Insurance.

Co-lead and Liaison Counsel in *In re KBR, Inc., Burn Pit Litigation*

Chair, Plaintiffs' Steering Committee and liaison counsel for plaintiffs, *In re Asbestos Products Liability Litigation,* MDL 875 (E.D. Pa.).

Plaintiffs' Steering Committee and coordinating counsel, *Linscomb v. Pittsburgh Corning Corporation,* No. 1:90cv-05000 (E.D. Tex.), a national class action on behalf of asbestos victims nationwide.

*Michelle McMunn, et al. vs. Babcock & Wilcox Power Generation Group, Inc., et al.,* Civil Action No. 10-143 2:10-cv-00143-DSC-RCM

Lead plaintiffs' counsel in *Bates v. Tenco Services Inc.,* 132 F.R.D. 160 (D.S.C. 1990), a jet fuel pollution case involving the consolidated property damage and personal injury claims of multiple plaintiffs in the Gold Cup Springs subdivision.

Executive committee member in *In re Asbestos School Litigation,* No. 94-1494 (E.D. Pa.), a national school asbestos class action.

Lead plaintiffs' counsel in *Central Wesleyan College v. W.R. Grace & Co.,* No. 2:87-1860-8 (D.S.C.), a national asbestos property damage class action.

Lead plaintiffs' counsel in *In re Raymark Asbestos Exposure Cases,* No. 87-1016-K (D. Kan.), a national asbestos personal injury class action in which 19,684 claims were resolved.

Co-lead plaintiffs' counsel in *Cimino v. Pittsburgh Corning Corporation,* No. 1:85-CV-00676 (E.D. Tex.), an asbestos personal injury class action on behalf of approximately 2,300 plaintiffs.

Co-lead plaintiffs' counsel in *Chatham v. AC&S, et al.,* a consolidated asbestos personal injury action involving 300 plaintiffs in the Circuit Court of Harris County, Texas.

Co-lead plaintiffs' counsel in *Abrams v. GAF Corporation,* No. 88-5422(1) (Jackson Cty., Miss.), a consolidated asbestos personal action involving more than 6,000 plaintiffs.

Co-liaison plaintiffs' counsel in 3,000 asbestos personal injury cases in the Third Judicial Circuit of Illinois, Madison County, Illinois.

Co-lead plaintiffs' counsel in a consolidated asbestos personal injury action involving 540 plaintiffs pending in the Superior Court of Alameda County, California.

Counsel in numerous consolidated asbestos trials including 87 consolidated cases in Danville, Illinois; 300 consolidated cases in U.S. District Court, Western District of New York, Rochester, New York; 42 consolidated cases in State Court in Mississippi; and 315 consolidated cases in the Circuit Court of Kanawha County, West Virginia.

Plaintiffs' lead counsel in *In re Kansas Asbestos Cases* in U.S. District Court for the District of Kansas, *In re Madison County Illinois Asbestos Litigation*

Plaintiffs' lead counsel in *In re Wayne County Michigan Asbestos Cases.*

*John Schumacher v. Amtico, et al.,* No. 2:10-1627 (E.D.Pa.), the first federal court mesothelioma case to go to trial before Eduardo C. Robreno, the judge who oversees the entire Federal Asbestos MDL, in re Asbestos Products Liability Litigation, MDL 875.

Plaintiffs' Steering Committee of *In re Welding Fume Products Liability Litigation,* MDL 1535

## ANTI-TERRORISM AND HUMAN RIGHTS

Lead counsel in *In re Thomas E. Burnett, Sr., et al. v. Al Baraka Investment & Development Corp., et al.,* Case No. 03-CV-9849 (GBD); *In re Terrorist Attacks on September 11, 2001,* MDL 1570 (S.D.N.Y.), a landmark lawsuit against the alleged sponsors of al Qaeda and Osama bin Laden in an action filed on behalf of more than 6,500 family members, survivors, and those killed on 9/11.

*Linde et al. v. Arab Bank PLC,* No. 1:04-cv-02799 (E.D.N.Y.) and *Almog v. Arab Bank, PLC,* No. 1:04-cv-05564-NG-VVP (E.D.N.Y.), one of the first lawsuits brought against an international bank for its alleged role in financing terrorism.

*Mark McDonald, et al. vs. The Socialist People's Libyan Arab Jamahiriya, et al.;* No. 06-CV-0729-JR (DC 04/21/06), a high-profile case involving Libya's longtime alleged sponsorship of IRA acts of terror.

*Cummock, et al. v. Socialist People's Libyan Arab Jamahiriya, et al.,* No. 96-CV-1029 (D.D.C.). Victoria Cummock, Motley Rice's client, sought full accountability and a public trial as the only opt-out of the no-fault Pan Am 103/Lockerbie settlement.

*Krishanthi, et al. vs. Rajaratnam, et al.;* No. 09-CV-5395(D.N.J.), terrorist financing litigation against alleged financiers of the Tamil Tigers terrorist organization in Sri Lanka.

Plaintiffs' Steering Committee and lead counsel for Verizon plaintiffs in *In re National Security Agency Telecommunications Records Litigation,* MDL 1791

*Ng v. Central Falls Detention Facility Corporation, et al.,* No. 09-53 (D. R.I.), a human rights case that alleged the defendants subjected a Chinese immigration detainee to extreme physical and mental abuse and torture while in U.S. custody.

*Harris, et al. v. Socialist People's Libyan Arab Jamahiriya, et al.,* No. 1:06-cv-00732-RWR (D.D.C.), a case filed against Libya involving the 1986 bombing of Berlin's LaBelle Discotheque.

## AVIATION DISASTERS AND PASSENGER RIGHTS

Plaintiffs' liaison counsel in *In re September 11 Litigation,* No. 21-MC-97-AKH (S.D.N.Y), representing 56 of the 96 families that opted out of the no-fault federal September 11 Victim Compensation Fund in liability and damages cases claims against the airlines and aviation security companies for their alleged failure to implement basic security measures.

*Amanda Tuxworth v. Delta Air Lines, Inc.,* No. 2:10-cv-03212-RMG (D.S.C), an aviation passenger rights case involving a Delta passenger.

*Chris Turner, Individually and as Personal Representative of The Estate of Tracy Turner v. Ramo LLC, a Florida Limited Liability Company,* No. 11-14066 (Ct. of Appeals, 11th Cir.), an aviation case involving fraudulent transfer allegations in connection with a fatal plane crash.

Counsel for victims of Asiana Airlines Flight 214

Counsel for families of victims of Malaysia Airlines Flight MH370

## BANKRUPTCIES

Coalition of Abused Scouts for Justice in the **Boy Scouts of America and Delaware BSA, LLC Chapter 11 bankruptcy** proceedings (Case No. 20-10343), on behalf of a group of firms representing thousands of survivors

Claimants' committee in *In re A.H. Robins,* a Chapter 11 Reorganization involving Dalkon Shield victims nationwide

Claimants committee in the *Camall Chapter 11,* the first bankruptcy associated with the Fen-Phen litigation

Motley Rice attorneys currently serve as a member of the trust advisory committee for several of the asbestos bankruptcy trusts formed under 524(g) of the federal bankruptcy code:

*AC&S , Inc. Bankr.,* No. 02-12687 (D. Del.)

*Armstrong World Industries, Inc., Bankr.* No. 00-4471 (D. Del.)

*Babcock & Wilcox Co. Bankr.,* No. 00-10992 (E.D. La.)

*Celotex Corp. Bankr.,* Nos. 90-10016-8B1, 90-10017-8B1 (M.D. Fla.)

*Dresser II Bankr.,* No. 03-35592 (W.D. PA.)

*Federal Mogul Bankr.,* No. 01-10578 (D. Del)

*G-I Holdings Bankr.,* Nos. 01-30135 and 01-38790 (D.N.J.)

*Johns-Manville Corp.,* No.82-B11656 through 82 B 11676 (S.D.N.Y., E.D.N.Y.)

*Kaiser Aluminum Corp. Bankr.,* No.02-10429 (D. Del.)

*Keene Bankr.,* No. 93B 46090,96 CV 3492 (S.D.N.Y.)

*MH Detrick Bankr.,* No. 98 B 01004 (N.D. Ill.)

*Owens Corning Bankr.,* No. 00-03837 (D. Del.)

*Rock Wool Bankr.,* Nos. CV-99-J-I589-S.BK -96-08295-TBB-11 (N.D. Ala.)

*Rutland Fire Clay Bankr.,* No. 99-11390 (D. Vt.)

*Shook & Fletcher Bankr.,* No. 02-02771-BGc-11 (N.D. Ala.)

*United States Gypsum Corp. Bankr.,* No. 01-2094 (D. Del.)

*W.R. Grace Co. Bankr.,* No.s 01-1139, 01-1140 (D. Del.)

Motley Rice attorneys have served as lead or co-lead trial counsel on behalf of The Asbestos Claims Committee:

*Armstrong World Industries, Inc., Bankr.* No. 00-4471 (D. Del.) (estimation trial and plan confirmation trial)

*Federal Mogul Bankr.,* No. 01-10578 (D. Del.) (estimation trial and plan confirmation trial)

*Owens Corning Corp. Bankr.,* No. 00-03837 (D. Del.) (estimation trial and substantive consolidation trial)

*Pittsburgh Corning Corp. Bankr.,* No. 00-22876 (W.D. Pa.) (plan confirmation trial)

*W.R. Grace Co. Bankr.,* Nos. 01-1139, 01-1140 (D. Del.) (estimation trial and plan confirmation trial)

## ACCOLADES FOR THE FIRM



### Chambers USA
Product Liability: Plaintiffs – Nationwide, Band 1
2022 • 2021



### "Best Law Firm"
*U.S. News – Best Lawyers®*
Mass tort litigation / class actions–plaintiffs
2023 • 2022 • 2021 • 2020 • 2019 • 2018 • 2017 • 2016
• 2015 • 2014 • 2013 • 2012 • 2011 • 2010



### *The Legal 500 United States*
Litigation editions
Mass tort and class action: plaintiff
representation–toxic tort
2021 • 2020 • 2019 • 2018 • 2017 • 2016 • 2015 • 2014
2013 • 2012 • 2011 • 2009 • 2007



### "Elite Trial Lawyers"
*The National Law Journal* Law Firm of the Year
2021 Government Representation
2021 Mass Torts
2020 Pharmaceuticals Firm of the Year
2020 Insurance Liability Firm of the Year
2019 Bankruptcy Law *(finalist)*

 

### Practice Group of the Year
*Law360*
2021 Securities
2021 • 2020 • 2019 • 2015 Product Liability
2018 Consumer Protection Practice



### Securities Class Action Services Top 50
*International Securities Services*
2022 • 2017 • 2016 • 2015 • 2014 • 2011 • 2010 • 2009

*For full methodologies and selection criteria, visit www.motleyrice.com/award-methodology*

Please remember that every case is different. Although they endorse certain lawyers, *The Legal 500 United States* and *Chambers USA* and other similar organizations listed above are not Motley Rice clients. Any result we achieve for one client in one matter does not necessarily indicate similar results can be obtained for other clients.

## OUR LEGACY



### Ronald L. Motley (1944–2013)

EDUCATION:
J.D., University of South Carolina School of Law, 1971
B.A., University of South Carolina, 1966

Ron Motley fought for greater justice, accountability and recourse, and has been widely recognized as one of the most accomplished and skilled trial lawyers in the U.S. During a career that spanned more than four decades, his persuasiveness before a jury and ability to break new legal and evidentiary ground brought to justice two once-invincible giant industries whose malfeasance took the lives of millions of Americans—asbestos and tobacco. Armed with a combination of legal and trial skills, personal charisma, nose-to-the-grindstone hard work and record of success, Ron built Motley Rice into one of the nation's largest plaintiffs' law firms.

Noted for his role in spearheading the historic litigation against the tobacco industry, Ron served as lead trial counsel for 26 State Attorneys General in the lawsuits. His efforts to uncover corporate and scientific wrongdoing resulted in the Master Settlement Agreement, the largest civil settlement in U.S. history and in which the tobacco industry agreed to reimburse states for smoking-related health care costs.

Through his pioneering discovery and collaboration, Ron revealed asbestos manufacturers and the harmful and disabling effects of occupational, environmental and household asbestos exposure. He represented thousands of asbestos victims and achieved numerous trial breakthroughs, including the class actions and mass consolidations of *Cimino, et al. v. Raymark, et al.* (U.S.D.C. TX); *Abate, et al. v. ACandS, et al.* (Baltimore); and *In re Asbestos Personal Injury Cases* (Mississippi).

In 2002, Ron once again advanced cutting-edge litigation as lead counsel for *In re Terrorist Attacks on September 11, 2001*, MDL #1570, a lawsuit filed by more than 6,500 family members, survivors and those who lost their lives. The suit seeks justice and ultimately bankruptcy for al Qaeda's financiers, including many individuals, banks, corporations and charities that provided resources and monetary aid. He also served as lead counsel in numerous individual aviation security liability and damages cases under the *In re September 11 Litigation* filed against the aviation and aviation security industries by victims' families.

Ron brought the landmark case of *Oran Almog v. Arab Bank* against the alleged financial sponsors of Hamas and other terrorist organizations in Israel and was a firm leader in the BP Deepwater Horizon litigation and claims efforts involving people and businesses in Gulf Coast communities suffering as a result of the oil spill. Two settlements were reached with BP, one of which is the largest civil class action settlement in U.S. history.

Recognized as an AV®-rated attorney by Martindale-Hubbell®, Ron served on the AAJ Board of Governors from 1977 to 2012 and was chair of its Asbestos Litigation Group from 1978 to 2012. In 2002, Ron founded the Mark Elliott Motley Foundation,

Inc., in loving memory of his son to help meet the health, education and welfare needs of children and young adults in the Charleston, S.C. community.

PUBLICATIONS:
- Ron authored or co-authored more than two dozen publications, including:
- "Decades of Deception: Secrets of Lead, Asbestos and Tobacco" (*Trial Magazine*, October 1999)
- "Asbestos Disease Among Railroad Workers: 'Legacy of the Laggin' Wagon'" (*Trial Magazine*, December 1981)
- "Asbestos and Lung Cancer" (*New York State Journal of Medicine*, June 1980; Volume 80: No.7, New York State Medical Association, New York)
- "Occupational Disease and Products Liability Claims" (*South Carolina Trial Lawyers Bulletin*, September and October 1976)

FEATURED IN:
- Shackelford, Susan. "Major Leaguer" (*South Carolina Super Lawyers*, April 2008)
- Senior, Jennifer. "A Nation Unto Himself" (*The New York Times*, March 2004)
- Freedman, Michael. "Turning Lead into Gold," (*Forbes*, May 2001)
- Zegart, Dan. *Civil Warriors: The Legal Siege on the Tobacco Industry* (Delacorte Press, 2000)
- Ansen, David. "Smoke Gets in Your Eyes" (*Newsweek*, 1999)
- Mann, Michael & Roth, Eric. "The Insider" (Blue Lion Entertainment, November 5, 1999)
- Brenner, Marie. "The Man Who Knew Too Much" (*Vanity Fair*, May 1996)
- Reisig, Robin. "The Man Who Took on Manville" (*The American Lawyer*, January 1983)

AWARDS AND ACCOLADES:
Ron won widespread honors for his ability to win justice for his clients and for his seminal impact on the course of civil litigation. For his trial achievements, *BusinessWeek* characterized Ron's courtroom skills as "dazzling" and *The National Law Journal* ranked him, "One of the most influential lawyers in America."

**South Carolina Association for Justice**
2013 Founders' Award

**American Association for Justice**
2010 Lifetime Achievement Award
2007 David S. Shrager President's Award
1998 Harry M. Philo Trial Lawyer of the Year

*The Trial Lawyer Magazine*
2012 Inducted into Trial Lawyer Hall of Fame
2011 *The Roundtable: America's 100 Most Influential Trial Lawyers*

*The Best Lawyers in America*®
1993–2013 mass tort litigation/class actions – plaintiffs, personal injury litigation – plaintiffs product liability litigation – plaintiffs

## TEAM BIOGRAPHIES

## THE FIRM'S MEMBERS

*Best Lawyers®*
**2012** Charleston, SC "Lawyer of the Year" mass tort litigation/
class actions – plaintiffs
**2010** Charleston, SC "Lawyer of the Year" personal injury

*Benchmark Plaintiff*
**2012–2013** National "Litigation Star": civil rights/human rights,
mass tort/product liability, securities
**2012–2013** South Carolina "Litigation Star": human rights,
product liability, securities, toxic tort

*SC Lawyers Weekly*
**2011** Leadership in Law Honoree

*The Legal 500 United States*
**2011–2013** Mass tort and class action: plaintiff representation
– toxic tort

*Chambers USA*
**2007, 2010–2012** Product liability and mass torts: plaintiffs,
"...An accomplished trial lawyer and a formidable opponent."

**2008–2013** *South Carolina Super Lawyers®* list
**2008** *Top 10 South Carolina Super Lawyers* list
**2008, 2009, 2011, 2012** *Top 25 South Carolina Super Lawyers* list

*The Lawdragon™ 500*
**2005–2012** *Leading Lawyers in America* list – plaintiffs'

**National Association of Attorneys General**
**1998** President's Award—for his "courage, legal skills and
dedication to our children and the public health of our nation."

**The Campaign for Tobacco-Free Kids**
**1999** Youth Advocates of the Year Award

**ASSOCIATIONS:**
American Association for Justice
South Carolina Association for Justice
American Bar Association
South Carolina Bar Association
Civil Justice Foundation
Inner Circle of Advocates
International Academy of Trial Lawyers

*Although it endorses this lawyer, The Legal 500 United States is
not a Motley Rice client.

### Joseph F. Rice

LICENSED IN: DC, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court
U.S. Court of Appeals for the Third, Fourth and Fifth Circuits
U.S. District Court for the District of Nebraska and the District
of South Carolina
EDUCATION:
J.D., University of South Carolina School of Law, 1979
B.S., University of South Carolina, 1976

Motley Rice co-founder Joe Rice is recognized as a skillful
and innovative negotiator of complex litigation settlements,
having served as the lead negotiator in some of the largest civil
actions our courts have seen in the last 20 years. *Corporate
Legal Times* reported that national defense counsel and legal
scholars described Joe as one of the nation's "five most feared
and respected plaintiffs' lawyers in corporate America." As the
article notes, "For all his talents as a shrewd negotiator ... Rice
has earned most of his respect from playing fair and remaining
humble."

Joe was recognized by some of the nation's best-regarded
defense lawyers as being "the smartest dealmaker they ever
sat across the table from," *Thomson Reuters* has reported.
Professor Samuel Issacharoff of the New York University School
of Law, a well-known professor and expert in class actions and
complex litigation, has commented that he is "the best strategic
thinker on the end stages of litigation that I've ever seen."

Since beginning to practice law in 1979, Joe has continued
to reinforce his reputation as a skillful negotiator, including
through his involvement structuring some of the most
significant resolutions of asbestos liabilities on behalf of those
injured by asbestos-related products. He negotiates for the
firm's clients at all levels, including securities and consumer
fraud, anti-terrorism, human rights, environmental, medical
drugs and devices, as well as catastrophic injury and wrongful
death cases.

**NATIONAL PRESCRIPTION OPIATE MDL:**
Joe is co-lead counsel in the National Prescription Opiate
MDL aimed at combatting the alleged over-distribution and
deceptive marketing of prescription opioids. Joe, as Chair of
the opioid Negotiating Committee, worked with the committee
and the Attorney General Committee to reach over $50 billion in
settlements for communities nationwide with defendants in the
opioid supply chain. Motley Rice continues to represent dozens
of governmental entities, including the first jurisdictions to file
cases in the current wave of litigation.

**VEHICLE RECALLS:**
Joe served as one of the lead negotiators in the $15 billion
Volkswagen Diesel Emissions Fraud class action settlement
for 2.0-liter vehicles, the largest auto-related consumer
class action settlement in U.S. history, as well as the 3.0-liter



settlement. Under his leadership, Motley Rice also helped negotiate a pair of Takata bankruptcy resolutions that secured funds for victims who were harmed by the company's deadly, explosive airbags. Joe also serves as a member of the Plaintiffs' Executive Committee for *In re General Motors LLC Ignition Switch Litigation*, and was appointed to the Plaintiffs' Steering Committee for *In re Chrysler-Dodge-Jeep Ecodiesel Marketing, Sales Practices, and Products Liability Litigation*.

### MEDICAL DRUGS AND DEVICES:
Joe led negotiations on behalf of thousands of women who allege complications and severe health effects caused by transvaginal mesh and sling products, including litigation that has five MDLs pending in the state of West Virginia. He is also a member of the Plaintiffs' Steering Committee for the Lipitor® MDL, filed for patients who allege the cholesterol drug caused their Type 2 diabetes.

### BP OIL SPILL:
Joe served as a co-lead negotiator for the Plaintiffs' Steering Committee in reaching the two settlements with BP, one of which is the largest civil class action settlement in U.S. history. The Economic and Property Damages Rule 23 Class Action Settlement is estimated to make payments totaling between $7.8 billion and $18 billion to class members. Joe was also one of the lead negotiators of the $1.028 billion settlement reached between the Plaintiffs' Steering Committee and Halliburton Energy Services, Inc., for Halliburton's role in the disaster.

### 9/11:
Joe held a crucial role in executing strategic mediations and/or resolutions on behalf of 56 families of 9/11 victims who opted out of the government-created September 11 Victim Compensation Fund. In addition to providing answers, accountability and recourse to victims' families, the resulting settlements with multiple defendants shattered a settlement matrix developed and utilized for decades. The litigation also helped provide public access to evidence uncovered for the trial.

### TOBACCO:
As lead private counsel for 26 jurisdictions, including numerous State Attorneys General, Joe was integral to the crafting and negotiating of the landmark Master Settlement Agreement, in which the tobacco industry agreed to reimburse states for smoking-related health costs. This remains the largest civil settlement in U.S. history.

### ASBESTOS:
Joe held leadership and negotiating roles involving the bankruptcies of several large organizations, including AWI, Federal Mogul, Johns Manville, Celotex, Garlock, W.R. Grace, Babcock & Wilcox, U.S. Gypsum, Owens Corning and Pittsburgh Corning. He has also worked on numerous Trust Advisory Committees. Today, he maintains a critical role in settlements involving asbestos manufacturers emerging from bankruptcy and has been recognized for his work in structuring significant

resolutions in complex personal injury litigation for asbestos liabilities on behalf of victims injured by asbestos-related products. Joe has served as co-chair of Perrin Conferences' Asbestos Litigation Conference, the largest national asbestos-focused conference.

### SECURITIES AND CONSUMER FRAUD:
Joe is often sought by investment funds for guidance on litigation strategies to increase shareholder value, enhance corporate governance reforms and recover assets. He was an integral part of the shareholder derivative action against Omnicare, Inc., *Manville Personal Injury Settlement Trust v. Gemunder*, which resulted in a significant settlement for shareholders as well as new corporate governance policies for the corporation.

Joe serves on the Board of Advisors for Emory University's Institute for Complex Litigation and Mass Claims, which facilitates bipartisan discussion of ways to improve the civil justice system through the hosting of judicial seminars, bar conferences, academic programs, and research. In 1999 and 2000, he served on the faculty at Duke University School of Law as a Senior Lecturing Fellow, and taught classes on the art of negotiating at the University of South Carolina School of Law, Duke University School of Law and Charleston School of Law.

In 2013, he and the firm created the Ronald L. Motley Scholarship Fund at The University of South Carolina School of Law in memory and honor of co-founding member and friend, Ron Motley.

### AWARDS AND ACCOLADES:
*Chambers USA*
2019–2021 Product Liability: Plaintiffs – Nationwide, Band 1
2016, 2018 Product Liability: Plaintiffs – Nationwide, Band 2

*Best Lawyers®*
2013 "Lawyer of the Year" Charleston, SC: Mass tort litigation/ class actions – plaintiffs
2007–2023 Mass tort litigation/class actions – plaintiffs; Personal injury litigation – plaintiffs

*South Carolina Super Lawyers®* list
2008–2021 Class action/mass torts; Securities litigation; General litigation

*Lawdragon*
2016, 2018–2022 Lawdragon 500
2019–2023 Lawdragon 500 Plaintiff Consumer Lawyers
2019–2021 Lawdragon 500 Plaintiff Financial Lawyers

*South Carolina Association for Justice*
2018 Founders' Award

*Law360*
2015 "Product Liability MVP"

*Benchmark Litigation*
2012–2013 National "Litigation Star": mass tort/product liability
2012–2017 South Carolina "Litigation Star": environmental, mass tort/product liability

### Kimberly Barone Baden

LICENSED IN: CA, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the Third Circuit
U.S. District Court for the Central, Northern and Southern
Districts of California and District of South Carolina
EDUCATION:
J.D., California Western School of Law, 1999
B.A. *cum laude*, Clemson University, 1996
As a strong advocate for the most defenseless members of
society, Kimberly Barone Baden seeks accountability and
compensation for victims of corporate misconduct, medical
negligence and harmful medical drugs. She manages mass tort
pharmaceutical litigation through complex personal injury and
economic damages cases.

Kimberly represents children with birth defects allegedly caused
by antidepressants, including Zoloft®, Effexor® and Wellbutrin®;
as well as Zofran® which is used to prevent pregnancy-
related nausea and vomiting. She previously litigated against
GlaxoSmithKline in the Paxil® birth defect litigation. She serves
as co-lead counsel in *In re Zofran (Ondansetron) Products
Liability Litigation* MDL 2657 and is on the Plaintiffs' Executive
Committee for *In re Viagra (Sildenafil Citrate) Products Liability
Litigation* MDL 2691 and on the Plaintiffs' Steering Committee *In
re Zoloft (sertraline hydrochloride) Products Liability Litigation*
MDL 2342. She also manages the firm's pharmaceutical
litigation regarding Crestor®, Lipitor®, Actos®, Risperdal®,
incretin mimetics, and dialysis products GranuFlo® Powder and
NaturaLyte® Liquid acid concentrates.

Kimberly also represents elderly victims of abuse and neglect,
litigating cases for nursing home and assisted living facility
residents.

Kimberly has spoken at numerous seminars, legal gatherings,
CLEs and conferences across the U.S., including the American
Association for Justice, Mass Torts Made Perfect and the
National Business Institute. She has addressed a broad range of
topics related to pharmaceutical drugs and elder law litigation,
focusing on MDL procedures, birth defects, nursing home
litigation, discovery, trial strategy and mediation. Kimberly is
currently the Treasurer of the American Association for Justice's
Section on Toxic, Environmental and Pharmaceutical Torts.

Prior to joining Motley Rice, Kimberly worked on the Fen-Phen
diet drug litigation and served as an attorney with the California
District Attorney's Office in San Diego. Kimberly is recognized
as an AV® rated attorney by Martindale-Hubbell®.

#### AWARDS AND ACCOLADES:

**Best Lawyers®**
**2020–2023** Charleston, S.C. Personal Injury litigation –
plaintiffs: Product Liability Litigation – plaintiffs

**Lawdragon**
**2020–2023** Lawdragon 500 Plaintiff Consumer Lawyers

**Super Lawyers®**
**2013–2014** *South Carolina Super Lawyers Rising Stars* list
Personal Injury products: plaintiff; elder law

#### ASSOCIATIONS:

**American Association for Justice,** Treasurer – Section on Toxic,
Environmental and Pharmaceutical torts
**American Bar Association**
**South Carolina Association for Justice**

### Frederick C. Baker

LICENSED IN: NY, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the First, Second, Third, Fourth, Fifth,
Tenth and Eleventh Circuits
U.S. District Court for the Southern District of New York and
the District of South Carolina
EDUCATION:
J.D. / LL.M., Duke University School of Law, 1993
B.A., University of North Carolina at Chapel Hill, 1985
A veteran litigator with strong roots in complex litigation, Fred
Baker works on a broad range of environmental, medical costs
recovery, consumer and products liability cases and holds
numerous leadership roles within the firm. He represents
individuals, institutional investors, and governmental entities in
a wide variety of cases.

Fred leads the firm's tobacco litigation, and was a member
of the legal team that litigated the groundbreaking tobacco
litigation on behalf of several State Attorneys General. Fred has
also participated in the litigation of individual tobacco cases,
entity tobacco cases and a tobacco class action.

In addition to his tobacco casework, Fred is part of the opioid
litigation team which represents dozens of governmental
entities, including states, cities, towns, counties and townships
in litigation targeting the alleged misrepresentation and
fraudulent distribution of harmful and addictive opioids by
manufacturers and distributors.

Fred was also a key member of the firm's representation of
people and businesses in Gulf Coast communities suffering as
a result of the BP Deepwater Horizon oil spill. He held a central
role in the negotiation process involving the two settlements
reached with BP, one of which is the largest civil class action
settlement in U.S. history. In addition, his environmental
experience also includes representing a state government in
a case against poultry integrators that alleged poultry waste
polluted natural resources.

Fred has served as counsel in a number of class actions, including
the two class action settlements arising out of the 2005 Graniteville
train derailment chlorine spill. He was also closely involved in
the litigation surrounding the statutory direct action settlement
reached in the Manville bankruptcy court and a related West
Virginia unfair trade practices insurance class action.

Fred began practicing with Motley Rice attorneys in 1994 and
chairs the firm's attorney hiring committee.



**AWARDS AND ACCOLADES:**
**Best Lawyers®**
**2020–2023** Charleston, S.C. Mass tort litigation / class actions
– plaintiffs

**Lawdragon**
**2019** Lawdragon 500 Plaintiff Financial Lawyers

*South Carolina Lawyers Weekly*
**2016** Leadership in Law Honoree

## Esther E. Berezofsky

LICENSED IN: NJ, PA
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court; U.S. Court of Appeals for the Second and
Third Circuits; U.S. District Court for the District of New Jersey,
the Eastern District of Pennsylvania, the Eastern and Western
Districts of Michigan, and the Northern District of New York
EDUCATION:
J.D., Rutgers University School of Law, 1987
M.A., Wayne State University, 1982
B.A., Wayne State University, 1980
A trial lawyer with more than 35 years of experience litigating
complex mass torts, Esther Berezofsky has devoted her career
to representing communities impacted by environmental
contamination and fighting for the rights of consumers,
individuals and families impacted by fraud and misconduct
across a range of litigation areas.

Esther focuses her practice on protecting the rights and
seeking accountability for people harmed by toxic chemical
exposure—environmental and occupational—as well as patients
who suffer life-altering complications caused by dangerous
and defective medical drugs and devices. She serves on the
Executive Committee as class counsel for residents exposed
to lead contaminated water in the Flint Water Crisis litigation.
She also represents residents in other communities, as well as
governmental entities in the United States in PFAS litigation.
Esther is also a consultant to the Flemish Minister of Justice
and the Environment in Belgium in PFAS matters involving 3M
and working on environmental matters in the Netherlands.

She was lead counsel for a cancer cluster of children in Toms
River, N.J, the story of which is memorialized in the Pulitzer prize
winning book: *Toms River: A Story of Science and Salvation*.

Prior to becoming an attorney, Esther practiced as a clinical
psychologist and consultant for a national network of law firms
on post-traumatic stress and community trauma arising out
of environmental disasters such as Three Mile Island, Pa., and
Times Beach, Mo.

In addition to her environmental and toxic exposure work,
Esther has held numerous leadership positions and represented
clients in MDLs and other litigations involving medical drugs
and devices including Medtronic® Pain and Insulin Pumps,
DePuy ASR, Pinnacle and Stryker® Hip Implant cases, Benicar®,
Risperdal®, Xarelto®, Hormone Replacement Therapy (HRT),
Ortho Evra®, Rezulin, PPA, Invokana®, Taxotere®, among others.

She also represents plaintiffs in consumer class actions alleging
fraudulent student loan schemes and consumers in pay day
lending cases. She has litigated rent-to-own and option ARM
fraudulent mortgage claims, among other consumer protection
cases.

Prior to joining Motley Rice, Esther founded Berezofsky Law
Group in New Jersey where she pursued complex consumer
mass torts. Prior to that, she was a name partner in a plaintiffs'
law firm in Philadelphia for more than two decades. She has
been active in the legal community has held leadership roles at
several law firms in Philadelphia and New Jersey.

Active in the legal community, Esther previously served as
Board President of Public Justice, a national public interest law
firm, and continues to serve on its Board of Directors. She also
sits on the Board of Governors of the New Jersey Association
of Justice and was awarded the Gold Medal for Distinguished
Service in 2008.

She is a frequent speaker and lecturer on matters related to
environmental contamination and toxic exposure, product
liability and mass torts. She served as an adjunct professor on
trial advocacy at Rutgers Law School, her alma mater in 2014.
While completing her legal studies at Rutgers Law, Esther
served as an articles editor for the *Rutgers Law Journal*.

**SELECTED PUBLICATIONS:**
- Post- Traumatic Stress Disorder and the Technological
  Disaster, 18 *Rutgers Law Journal* 623 (1987), reprinted in *BNA
  Toxic Law Reporter*, Vol. 2 No. 11 (August 12, 1987)
- Toxic Tort Litigation the Future Impact of Current Legislation,
  *Trial Magazine* (October 1988), reprinted in The *Superfund
  Report*, Mealey Publications (December 1988)
- New Jersey Mass Torts & Class Action Treatise, Chapter 5
  *Environmental Torts* 2016
- Legal and Liability Considerations in Asbestos, Chapter in
  *The Hazardous Fiber*, CRC Press, Inc. *Trial Magazine* (January
  2012)

**AWARDS AND ACCOLADES:**
**New Jersey Association for Justice**
**2021** Gerald B. O'Connor Award
**2008** Gold Medal for Distinguished Service

**National Law Journal**
**2021** Elite Women of the Plaintiffs' Bar*
**2023** Plaintiffs' Lawyers Trailblazers

**Lawdragon**
**2020–2023** Lawdragon 500 Plaintiff Consumer Lawyers*

**Super Lawyers®**
**2007–2022** *New Jersey Super Lawyers list**

*No aspect of this advertisement has been approved by the
Supreme Court of New Jersey.*



- Louis M. Bograd, *W(h)ither Preemption?*, 45 TRIAL 24 (Nov. 2009)
- Louis M. Bograd, *Taking on Big Pharma- and the FDA*, 43 TRIAL 30 (Mar. 2007)

**ASSOCIATIONS:**
American Association for Justice Chair, Preemption Litigation Group; Member, Legal Affairs Committee

## James R. Brauchle

LICENSED IN: SC
EDUCATION:
J.D., Rutgers University School of Law, 2001
B.S., Lemoyne College, 1990
A former U.S. Air Force navigator, Jim Brauchle brings years of flying experience, leadership skills and knowledge of the aviation industry to his litigation work. Jim represents victims of aviation disasters and passenger rights violations in cases against the airline industry. With more than a decade of courtroom experience that includes both bench and jury trials, Jim has handled civil, domestic, and criminal defense cases from pre-trial practice through trial, post-trial motions and appeals. He not only works closely with clients and co-counsel but also with pilots, engineers and experts in such areas as wreckage inspection and flight reconstruction.

Jim had the honor of supporting the firm's work in *Bavis v. United Airlines Corporation et al.*, the last aviation security case to be resolved in the nearly decade-long consolidated litigation, *In re September 11 Litigation*, involving 56 of the 96 families who opted out of the Victim Compensation Fund in an effort to force accountability and generate answers related to the 9/11 terrorist attacks. He is an integral member of the aviation team representing the families of the five Italian tourists who lost their lives when a helicopter tour and small private plane collided in mid-air over the Hudson River on Aug. 8, 2009. Litigating multiple crash cases involving small private planes, he also represents the family of a pilot who was one of six people killed when a Cessna Citation 550 aircraft on a life-saving transplant mission crashed into Lake Michigan shortly after takeoff. He also represents the families of passengers who were killed in the July 7, 2013 DeHavilland DHC-3 Otter charter plane crash in Soldotna, Alaska.

An advocate for the rights of the traveling public, Jim took passenger rights case, *Amanda Tuxworth v. Delta Air Lines, Inc.*, to trial and, after a hung jury that was nine to one in his client's favor, used his negotiation skills to resolve the case in mediation prior to a re-trial. In another passenger rights case alleging negligence, breach of contract and negligent misrepresentation, *Sandie Mallard v. Airtran Airways, Inc.*, he played a central role in achieving a confidential settlement. The U.S. District Court for the Southern District of Florida ruled in favor of his client in *Chris Turner v. Ramo, LLC*, a case involving the crash of an international charter flight. This ruling was upheld by the U.S. Eleventh Circuit Court of Appeals in February

2012. Jim also represented numerous families of those who lost their lives in the 2009 Continental Airlines/Colgan Air Flight 3407 crash, which took the lives of all 49 passengers and crew, as well as one person on the ground.

Prior to joining Motley Rice, Jim worked for nearly a decade as a trial attorney representing clients injured or killed in vehicle collisions. His ability to present complex matters to a jury has served him in previous transportation cases.

Jim served as a navigator in the United States Air Force from 1991 to 2001. He was one of only five people in the entire Air Force simultaneously qualified as a C-141 Special Operations navigator, flight instructor and examiner, and was often selected to fly high visibility missions, both in the United States and abroad. Additionally, he was hand-selected to brief and demonstrate special operations capabilities to the Air Mobility Command's Director of Operations and represented the 437th Air Wing at RODEO 1996, the United States Air Force's airlift flying competition.

Jim is recognized as an AV® rated attorney by Martindale-Hubbell®.

**ASSOCIATIONS:**
American Association for Justice, Chair of Aviation Group
South Carolina Association for Justice
International Society of Air Safety Investigators, affiliate member
Law360 Transportation Editorial Advisory Board, 2020

## Michael M. Buchman

LICENSED IN: CT, NY
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court
U.S. Court of Appeals for the Second Circuit
U.S. District Court for the Districts of Connecticut and Southern and Eastern Districts of New York
U.S. Court of International Trade
EDUCATION:
LL.M., International Antitrust and Trade Law, Fordham University School of Law, 1993
J.D., The John Marshall Law School, 1992
B.A. *cum laude*, Alfred University, 1988
Michael Buchman leads Motley Rice's antitrust team. Prior to joining Motley Rice, Michael served as an Assistant Attorney General in the New York State Attorney General's Office, Antitrust Bureau. He also served as a co-managing partner of the antitrust department at a large New York-based class action law firm.

Michael has served as lead or co-lead counsel for a variety of plaintiff clients, including a Fortune 500 company, a foreign government, multiple states, a city and individual consumers in complex antitrust cases concerning restraint of trade, price-fixing, monopolization and other anticompetitive conduct. His more than 25 years of antitrust experience includes playing an active role in some of the largest antitrust class actions in the history of the Sherman Act, including *In re NASDAQ Market-*

Makers Antitrust Litigation ($1.027b settlement)*. Michael represented the largest retailer class representative in the $5.5 billion* In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation, MDL 1720.* Over the past 20 years, he has been a leader investigating and developing generic drug antitrust class actions.

He has consistently litigated these cases over the past two decades for self-insured health insurers, consumers, and governmental entities who are the intended victims of such anticompetitive schemes. Michael is one of a limited group of plaintiffs' antitrust class action lawyers who has served as lead trial counsel and tried a generic drug antitrust case. He has twice been selected as a co-chair of HarrisMartin's Antitrust Pay-For-Delay Litigation Conference (2014-2015). Some of the generic drug antitrust class actions he has been involved with include:

**MOTLEY RICE CASES:**
- In re Loestrin Antitrust Litigation ($63.5m settlement, 2020)*
- In re Aggrenox Antitrust Litigation ($54m settlement, 2018)*
- In re Solodyn Antitrust Litigation ($43m settlement, 2018)*

**PRIOR TO MOTLEY RICE:**
- In re Wellbutrin SR Antitrust Litigation ($21.5m settlement, 2013)*
- In re Flonase Antitrust Litigation ($46m settlement, 2012)*
- In re Metoprolol Succinate End-Payor Antitrust Litigation ($21m settlement, 2011)*
- In re Relafen Antitrust Litigation ($75m settlement, 2004)*
- In re Augmentin Antitrust Litigation ($29m settlement, 2004)*
- In re Buspirone Antitrust Litigation ($90m settlement, 2003)*

Additional cases he's actively involved in at Motley Rice include In re Actos Antitrust Litigation, In re Effexor Antitrust Litigation, In re Lipitor Antitrust Litigation, In re Niaspan Antitrust Litigation, In re Suboxone Antitrust Litigation, and In re Zetia Antitrust Litigation.

He also has experience litigating aviation matters, including a large antitrust dispute between carriers.

Michael completed the intensive two-week National Institute for Trial Advocacy National Trial Training program in Boulder, Colo., in 2002. An avid writer, he has authored and co-authored articles on procedure and competition law, including a Task Force on Dealer Terminations for The Association of the Bar of the City of New York, Committee on Antitrust and Trade Regulation, entitled Dealer Termination in New York dated June 1, 1998 and What's in a Name - the Diversity Death-Knell for Underwriters of Lloyd's of London and their Names; Humm v. Lombard World Trade, Inc., Vol. 4, Issue 10 International Insurance Law Review 314 (1996).

Michael has been active in his communities having served as a member of the Flood and Erosion Committee for the Town of Westport, Ct., and presently serves as pro bono counsel in actions involving the misappropriation of perpetual care monies. He has also coached youth ice hockey teams at Chelsea Piers in New York City.

**AWARDS AND ACCOLADES:**
**Best Lawyers®**
2017-2023 Mass tort litigation/class actions – plaintiffs

**Lawdragon**
2019-2021 Lawdragon 500 Plaintiff Financial Lawyers

**Super Lawyers®**
2014-2022 New York Metro Super Lawyers: Antitrust litigation

## Samuel B. Cothran Jr.
## General Counsel

LICENSED IN: NC, SC
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the Western District of North Carolina and District of South Carolina
EDUCATION:
J.D., cum laude, University of South Carolina School of Law, 1998
M.B.A., Duke University, 1994
B.S., summa cum laude, University of South Carolina, 1981
Since the firm's founding more than 20 years ago, Sam has led its in-house legal department and provided steady guidance in a dynamic environment as the firm has tripled in size.

Sam's practice encompasses a broad range of matters impacting the firm, including risk management, professional ethics, contracts, employment, regulatory compliance, tax, governance, financing, intellectual property, marketing, and operations. He regularly advises the firm's Executive Committee, Practice Group Leaders, and Directors of Accounting, Client Services, Human Resources, Information Technology, and Marketing.

Sam's early career included stints as a CPA with an international accounting firm and a financial manager with several Fortune 1000 companies. After returning to school to earn his MBA and JD, he began practicing law with Motley Rice attorneys.

Honored as a Carolina Legal Scholar, Sam was inducted into The Order of the Coif and The Order of the Wig and Robe. He served as Managing Editor of the South Carolina Law Review and authored Dischargeability of Consumer Credit Card Debt in Bankruptcy After Anastas v. American Savings Bank, 48 S.C.L. Rev. 915 (1997).

Active in his community, Sam served on the Board of Directors for the Dee Norton Child Advocacy Center.

**ASSOCIATIONS:**
American Bar Association
Association of Professional Responsibility Lawyers
American Institute of Certified Public Accountants
South Carolina Association of Certified Public Accountants

*Massachusetts Lawyers Weekly*
**2011** Lawyers of the Year

**Benchmark Plaintiff**
**2012–2014** Rhode Island "Litigation Star": human rights and product liability

*Providence Business News*
**2005** Forty Under 40

**ASSOCIATIONS:**
**Law360 Product Liability Editorial Advisory Board,** 2019, 2021
**American Association for Justice,** Board of Governors; former Executive Committee member
**American Bar Association**
**Rhode Island Association for Justice,** former President
**The Fellows of the American Bar Foundation**

## Christopher F. Moriarty

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the First, Second, Third, Fourth, Fifth, Ninth, and Tenth Circuits; U.S. District Court for the Northern District of Illinois, the Eastern District of Michigan, and the District of South Carolina
EDUCATION:
J.D., Duke University School of Law, 2011
M.A., Trinity College, University of Cambridge, 2007
Bar Vocational Course (Very Competent), Inns of Court School of Law, 2006
Graduate Diploma in Law (Commendation), BPP Law School, London, 2005
B.A., Trinity College, University of Cambridge, 2003
Christopher Moriarty litigates securities fraud and other complex litigation in the United States and consults institutional investors on opportunities to seek recovery in securities-related actions. His securities fraud class action practice encompasses every aspect of litigation, from case-starting to settlement. Notable securities fraud class actions in which he served as part of the lead counsel team include:

- *In re Twitter Inc. Securities Litigation*, No. 16-cv-05314-JST (N.D. Cal.) ($809.5 million recovery*);
- *In re Barrick Gold Securities Litigation*, No. 13-cv-03851 (S.D.N.Y.) ($140 million recovery*);
- *City of Brockton Retirement System v. Avon Products, Inc.*, 11 Civ. 4665 (PGG) (S.D.N.Y.) ($62 million recovery*);. *State Street Corp.*, No. 09-cv-12136-GAO (D. Mass.) ($60 million recovery*);
- *In re Hewlett-Packard Co. Securities Litigation*, No. 11-cv-1404 (RNBx) (C.D. Cal.) ($57 million recovery*)
- *KBC Asset Management NV v. 3D Systems Corp.*, No. 15-cv-02393-MGL (D.S.C.) ($50 million recovery*);
- *In re Medtronic, Inc. Securities Litigation*, No. 0:13-cv-0168 (D. Minn.) ($43 million recovery*);
- *Första AP-Fonden and Danske Invest Management A/S v. St. Jude Medical, Inc.*, Civil No. 12-3070 (JNE/HB) (D. Minn.) ($39.25 million recovery*);

- *Ross v. Career Education Corp.*, No. 12-cv-00276 (N.D. Ill.) ($27.5 million recovery*); and
- *KBC Asset Management NV v. Aegerion Pharmaceuticals, Inc.*, No. 14-cv-10105-MLW (D. Mass.) ($22.25 million recovery*).

Christopher has also represented investors in direct actions under federal securities laws, in shareholder derivative litigation, and in antitrust class actions; whistleblowers in proceedings before the U.S. Securities and Exchange Commission; and relators in qui tam litigation. In the international context, Christopher serves as U.S. counsel to the Stichting Petrobras Compensation Foundation in the Netherlands, which represents the interests of investors who traded in Petrobras securities outside the United States and who suffered losses as a result of an alleged long-running fraud and bribery scheme perpetrated by Petrobras and certain of its related entities and former executives.

In addition to his securities practice, Christopher represents dozens of governmental entities in litigation against several pharmaceutical drug manufacturers, distributors, and pharmacies in connection with the opioid epidemic. As part of that, he served as one of Washington State's litigation and trial counsel in its action against the "Big Three" distributors of prescription opioids that resulted in a $518 million settlement after trial. He also successfully briefed and argued the oppositions to numerous motions to dismiss in the State of Alaska's action against numerous opioid manufacturers.*

As part of his pro bono practice, Christopher has drafted *amicus curiae* briefs in approximately 20 constitutional law cases before the U.S. Supreme Court (which has cited his work) and the federal courts of appeal. Outside of his legal practice, Christopher serves on the Board of Directors of Operation Sight, a non-profit that provides free cataract surgery and other services to those in need.

Christopher was called to the Bar in England and Wales by the Honourable Society of the Middle Temple in 2008.

**SELECT PUBLICATIONS:**
Christopher F. Moriarty, *Supreme Court Rules That Securities Act Time Bar Is Not Subject to American Pipe Tolling*, Class Action & Derivative Suits Newsletter, American Bar Association (Oct. 3, 2017)

**SELECT PRESENTATIONS:**
Panelist, Experts: Communicating Complex Ideas and Issues in Litigation Consistent with Messaging Trends, American Bar Association Litigation Section Annual Conference (May 6, 2022)

**AWARDS AND ACCOLADES:**
*South Carolina Super Lawyers® Rising Stars* list
**2016–2021** Securities litigation

**ASSOCIATIONS:**
**South Carolina Association for Justice**
**American Bar Association**
**South Carolina Bar Association**
**Charleston County Bar Association**



## William H. Narwold

LICENSED IN: CT, DC, NY, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court, U.S. Court of Appeals for the First, Second, Third, Fourth, Fifth, Sixth, Eighth, Ninth, Tenth, Eleventh, D.C., and Federal Circuits, U.S. District Court for the District of Connecticut, Eastern District of Michigan, Eastern and Southern Districts of New York, District of South Carolina
EDUCATION:
J.D. cum laude, University of Connecticut School of Law, 1979
B.A., Colby College, 1974

Bill Narwold has advocated for corporate accountability and fiduciary responsibility for nearly 40 years, representing consumers, governmental entities, unions and institutional investors. He litigates complex securities fraud, shareholder rights and consumer fraud lawsuits, as well as matters involving unfair trade practices, antitrust violations and whistleblower/qui tam claims.

Bill leads Motley Rice's securities and consumer fraud litigation teams and False Claim Act practice. He is also active in the firm's appellate practice. His experience includes being involved in more than 200 appeals before the U.S. Supreme Court, U.S. Courts of Appeal and multiple state courts.

Prior to joining Motley Rice in 2004, Bill directed corporate, securities, financial, and other complex litigation on behalf of private and commercial clients for 25 years at Cummings & Lockwood in Hartford, Connecticut, including 10 years as managing partner. Prior to his work in private practice, he served as a law clerk for the Honorable Warren W. Eginton of the U.S. District Court, District of Connecticut from 1979-1981.

Bill often acts as an arbitrator and mediator both privately and through the American Arbitration Association. He is a frequent speaker on legal matters, including class actions. Named one of 11 lawyers "who made a difference" by *The Connecticut Law Tribune*, Bill is recognized as an AV® rated attorney by Martindale-Hubbell®.

Bill has served the Hartford community with past involvements including the Greater Hartford Legal Assistance Foundation, Lawyers for Children America, and as President of the Connecticut Bar Foundation. For more than twenty years, Bill served as a Director and Chairman of Protein Sciences Corporation, a biopharmaceutical company in Meriden, Connecticut.

### AWARDS AND ACCOLADES:
*Connecticut Law Tribune*
2022 Connecticut Legal Awards *"Distinguished Leaders"* list

**Best Lawyers®**
2013, 2015, 2017, 2019, 2023 Hartford, Conn. "Lawyer of the Year": Litigation–Banking and Finance
2005–2021, 2023 Antitrust Law; Litigation–Banking and finance, mergers and acquisitions, securities

**Super Lawyers®**
2009–2022 *Connecticut Super Lawyers and New England Super Lawyers®* lists
Securities litigation; Class action/mass torts

**Lawdragon**
2019–2021 Lawdragon 500 Plaintiff Financial Lawyers

**Connecticut Bar Foundation**
2008 Legal Services Leadership Award

### ASSOCIATIONS:
**American Bar Association**
**Connecticut Bar Foundation**, Past President
**Taxpayers Against Fraud**
**University of Connecticut Law School Foundation**, past Board of Trustees member

*For full Super Lawyers selection methodology visit: www.superlawyers.com/about/selection_process.html*
*For current year CT data visit: www.superlawyers.com/connecticut/selection_details.html*

## William S. Norton

LICENSED IN: MA, NY, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Supreme Court; U.S. Court of Appeals for the First, Second, Third, Fourth and Ninth Circuits; U.S. District Court for the District of Colorado, Northern District of Illinois, District of Massachusetts, Eastern and Southern Districts of New York, and District of South Carolina
EDUCATION:
J.D., Boston University School of Law, 2004
B.A./B.S. *magna cum laude*, University of South Carolina, 2001

Bill Norton litigates securities fraud, corporate governance, False Claims Act, SEC whistleblower and other complex class action, consumer, and commercial matters. Bill has represented institutional and individual investors in securities fraud and shareholders actions before federal, state, and appellate courts throughout the country. He has also represented whistleblowers before the U.S. Securities and Exchange Commission through the Dodd-Frank Whistleblower Program and *qui tam* relators in actions under the False Claims Act.

### SECURITIES FRAUD LITIGATION
Bill represents institutional investors as a member of the lead counsel teams in litigation involving Alexion Pharmaceuticals, Inc., Amazon.com, Inc., Intel Corporation, Qualcomm Inc., Riot Blockchain, Inc., and Sotera Health Company. His previous securities fraud matters include:

- *In re SCANA Corporation Securities Litigation* ($192.5 million recovery as Liaison Counsel*)
- *Bennett v. Sprint Nextel Corp.* ($131 million recovery*)
- *City of Brockton Retirement System v. Avon Products, Inc.* ($62 million recovery*)
- *Hill v. State Street Corporation* ($60 million recovery*)

- *City of Sterling Heights General Employees' Retirement System v. Hospira, Inc.* ($60 million recovery*)
- *In re Hewlett-Packard Company Securities Litigation* ($57 million recovery*)
- *In re Medtronic, Inc. Securities Litigation* ($43 million recovery*)
- *Hatamian v. Advanced Micro Devices, Inc.* ($29.5 million recovery*)
- *Ross v. Career Education Corporation* ($27.5 million recovery*)

### SHAREHOLDER DERIVATIVE LITIGATION

Bill has represented shareholders in derivative actions, including:

- *Manville Personal Injury Settlement Trust v. Gemunder* ($16.7 million payment and significant corporate governance reforms*)
- *In re Walgreen Co. Derivative Litigation* (corporate governance reforms concerning compliance with Controlled Substances Act*)

### MERGER AND ACQUISITION LITIGATION

Bill has represented institutional shareholders in corporate M&A litigation, including:

- *In re Allion Healthcare, Inc. Shareholders Litigation* ($4 million payment to shareholders*)
- *In re RehabCare Group, Inc., Shareholders Litigation* ($2.5 million payment, modification of merger agreement, and additional disclosures to shareholders*)
- *In re Atheros Communications Shareholder Litigation* (preliminary injunction delaying shareholder vote and requiring additional disclosures to shareholders in $3.1 billion merger*)
- *Maric Capital Master Fund, Ltd. v. PLATO Learning, Inc.* (preliminary injunction requiring additional disclosures to shareholders in $143 million private-equity buyout*)

### OTHER COMMERCIAL, CONSUMER FRAUD, AND WHISTLEBLOWER MATTERS

Bill has represented clients in a variety of commercial, consumer fraud, and whistleblower matters, including:

- Satellite retailers in class action against EchoStar Corporation ($83 million recovery*)
- Municipal bondholders in class action concerning alleged Ponzi scheme ($7.8 million recovery*)
- A *qui tam* whistleblower in appeal, resulting in reinstatement of claim for employment retaliation*
- Consumers in class action against DirecTV regarding early cancellation fees
- German bank in litigation concerning collateralized debt obligations
- Investors in actions concerning variable life insurance policies funneled to the Madoff Ponzi scheme

Before joining Motley Rice, Bill practiced securities and commercial litigation in the New York office of an international law firm. In law school, Bill served as an Editor of the *Boston University Law Review* and was a G. Joseph Tauro Distinguished Scholar. He worked as a law clerk in the United States Attorney's Office for the District of Massachusetts, represented asylum seekers at Greater Boston Legal Services, and studied law at the University of Oxford. Before law school, Bill worked for the United States Attorney's Office for the District of South Carolina and volunteered with the Neighborhood Legal Assistance Program of Charleston. He graduated Phi Beta Kappa from the University of South Carolina Honors College. Bill is recognized as an AV®-rated attorney by Martindale-Hubbell®.

### AWARDS AND ACCOLADES:

**Lawdragon**
2019 Lawdragon 500 Plaintiff Financial Lawyers

**Super Lawyers®**
2013–2019 *South Carolina Super Lawyers Rising Stars* list Securities litigation; Class action/mass torts; General litigation

### ASSOCIATIONS:

**Federal Bar Association**
**American Bar Association**
**American Association for Justice**
**New York State Bar Association**
**South Carolina Bar Association**
**Charleston County Bar Association**

## Lance Oliver

LICENSED IN: AL, DC, FL, SC
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the District of Columbia, Fifth and the Eleventh Circuits; U.S. District Court for the District of Columbia, Middle and Southern Districts of Florida, and the Northern District of Illinois
EDUCATION:
J.D., Duke University School of Law, 2004
B.A., Samford University, 2001

Lance Oliver is a trial lawyer who litigates class actions, mass torts, and other complex matters. He has experience with all phases of litigation from filing the complaint, trying the case, and pursuing appeals. His practice focuses on securities and consumer fraud class actions, tobacco litigation, and defective products.

Lance has recently acted as lead trial counsel in a number of *Engle* progeny cases in Florida, representing smokers and their families against tobacco manufacturers. He argued a successful appeal to the Fourth District Court of Appeals in Florida, securing a verdict for a smoker's widow in a wrongful death suit against tobacco giants Philip Morris and R.J. Reynolds in *Philip Morris USA Inc. et al. v. Marchese*. He also served as counsel in *Berger v. Philip Morris USA Inc.*, which resulted in a verdict for a client who fell victim at a young age to the manufacturer's marketing campaigns targeting children.



Lance has also devoted a substantial amount of time to litigating securities fraud class actions, and has served as co-lead counsel for the class in many securities fraud cases including *Alaska Electrical Pension Fund, et al. v. Pharmacia Corp., et al.*, a securities fraud class action that resulted in a settlement for plaintiffs. More recently, Lance selected the jury as co-trial counsel for the end-payor class in *In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation*, a pay-for-delay antitrust litigation.

Prior to joining Motley Rice in 2007, Lance served as an associate in the Washington, D.C., office of a national law firm, where he worked on complex products liability litigation at both the trial and appellate levels.

Lance is a member of the National Conference on Public Employee Retirement Systems (NCPERS) and the International Foundation of Employee Benefit Plans (IFEBP). After graduating from Duke Law School, he served as a law clerk to the Honorable James Hughes Hancock of the U.S. District Court, Northern District of Alabama. He is recognized as an AV® rated attorney by Martindale-Hubbell®. Lance is the Board of Directors Vice Chair of the Dee Norton Child Advocacy Center and the former Chair of the American Lung Association Local Leadership Board for Charleston.

**AWARDS AND ACCOLADES:**
**Benchmark Litigation**
**2022** Plaintiff Litigator of the Year
**2022** Impact Case Award

*South Carolina Lawyers Weekly*
**2021** Leadership in Law Honoree

**Lawdragon**
**2019–2021** Lawdragon 500 Plaintiff Financial Lawyers

*South Carolina Super Lawyers® Rising Stars* list
**2013–2018** Securities litigation; Class action/mass torts

**The National Trial Lawyers**
**2016** Top 100 Trial Lawyers™ South Carolina

**ASSOCIATIONS:**
**American Bar Association**

## Meghan S. B. Oliver

LICENSED IN: DC, SC, VA
ADMITTED TO PRACTICE BEFORE:
U.S. Court of Appeals for the Federal Circuit, U.S. District Court for the District of South Carolina
EDUCATION:
J.D., University of Virginia School of Law, 2004
B.A. with distinction, University of Virginia, 2000
Meghan Oliver's practice focuses on complex litigation and class actions, including work on securities fraud cases, general commercial litigation, and consumer fraud litigation.

She is actively involved in various class actions, including several against health insurers for drug and equipment overcharges, and one alleging that the Administrative Office of the U.S. Courts charges more for PACER services than is authorized by statute (*Nat'l Veterans Legal Services Program v. United States*, Case No. 16-745-ESH). She also represents large public pension funds, unions, and institutional investors in securities fraud class actions, including *In re Twitter, Inc. Securities Litigation*, No. 3:16-cv-05315-JST-SK and *In re Qualcomm Inc. Securities Litigation*, No. 17-CV-00121-JAH-WVG.

Additionally, Meghan helps to lead litigation filed for a class consisting of more than a million tax return preparers alleging the IRS charged unauthorized user fees for the issuance and renewal of preparer tax identification numbers, (*Steele v. United States*, Case No. 1:14-cv-1523-RCL).

She has also worked on several antitrust matters in the past, including *In re North Sea Brent Crude Oil Futures Litigation, In re Libor-Based Financial Instruments Antitrust Litigation*, and generic drug cases involving "reverse payment" agreements.

Prior to joining Motley Rice, Meghan worked as a business litigation and antitrust associate in Washington, D.C. There, she assisted in the trial of a multidistrict litigation antitrust case and assisted in multiple corporate internal investigations. She is a member of Phi Beta Kappa.

**AWARDS AND ACCOLADES:**
**National Law Journal**
**2022** Litigation Trailblazer

**Lawdragon**
**2019–2021** Lawdragon 500 Plaintiff Financial Lawyers

**ASSOCIATIONS:**
**American Bar Association**

A former collegiate athlete at the College of Charleston, Graham played baseball and proudly represented his school as a member of the All-Southern Conference Team in 2007.

**AWARDS AND ACCOLADES:**
Best Lawyers®
2021 –2023 *Ones to Watch* list: Product Liability Litigation – Plaintiffs

**ASSOCIATIONS:**
American Association for Justice
South Carolina Association for Justice
South Carolina Bar Association
Charleston Bar Association

## Jennie Scudder-Levin

LICENSED IN: CA, SC
EDUCATION:
J.D., Vanderbilt University School of Law, 1989
A.B. *cum laude*, Duke University, 1986
Jennie Scudder-Levin primarily represents clients harmed by environmental contaminants and is involved in the firm's medical device and opioid epidemic litigation.

Jennie has years of litigation experience and previously represented clients in bankruptcy matters, along with institutional investors in securities and consumer fraud litigation prior to joining Motley Rice.

Her current casework includes advocating for thousands of women who have suffered severe adverse effects allegedly caused by the permanent contraceptive device, Essure®. She served on the team litigating on behalf of 10 California cities and counties regarding harmful exposure to lead paint and continues that advocacy now on behalf of persons injured by white lead carbonate products in Wisconsin.

Jennie is active in her church and with the firm's charitable and community projects.

## Cindi A. Solomon

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE: U.S. District Court for the District of South Carolina, U.S. Supreme Court
EDUCATION:
J.D., University of South Carolina School of Law, 1996
B.A., Vanderbilt University, 1988
Cindi Solomon represents dozens of governmental entities, including states, cities, counties and other municipalities as part of Motley Rice's opioid litigation team.

Cindi contributes to the firm's intensive involvement in the National Prescription Opiate MDL, as well as similar cases filed in state court against manufacturers, distributors and other entities believed to have played a role in causing the opioid crisis. She has additional experience in pharmaceutical drug, defective medical device, and product liability cases, including working with Motley Rice attorneys in the 1990s on historic Big Tobacco litigation, which resulted in the largest civil settlement in U.S. history.

In addition to her legal career, Cindi has worked for several years to promote eye health in the Charleston, S.C., area. She served as a member of the Board of Directors for the Association for the Blind and Visually Impaired–Charleston from 2011 to 2016. She co-founded and served as Volunteer Executive Director of Operation Sight, a non-profit that provides free cataract surgery and other services to those in need. She is currently the Treasurer of Operation Sight.

Numerous other community positions she has held include:
**Kiawah Island Club** Board Member
**Spoleto Festival USA** Board Member
**Medical University of South Carolina** Women's Club President, 2009–2010
**Trident United Way**
- Community Impact Committee 2016–2022
- Board of Directors for Trident United Way 2004–2010, 2014–2015
- Women's Leadership Council President 2014–2015

**ASSOCIATIONS:**
American Association for Justice
South Carolina Women Lawyers



### Ashley J. Hornstein

LICENSED IN: RI
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the District of Rhode Island
EDUCATION:
J.D., Roger Williams University School of Law, 2012
B.A., University of Kansas, 2008
Ashley Hornstein represents people and families suffering from mesothelioma and other asbestos-related diseases caused by occupational, environmental and household asbestos exposure, as well as victims of lead poisoning and other toxic environmental exposures.

Ashley began working with Motley Rice as a law clerk in 2010, supporting various trial teams in their efforts to hold major corporations accountable. She contributed legal research and case preparation for litigation against C.R. Bard claiming defective medical devices, and Georgia-Pacific for claims of asbestos-related diseases caused by asbestos exposure.

In 2013, Ashley joined the firm as an attorney focusing on illnesses and injuries caused by toxic exposure.

**AWARDS AND ACCOLADES:**
**Best Lawyers®**
**2021–2023** *Ones to Watch* list: Product Liability Litigation – Plaintiffs

**The National Trial Lawyers**
**2022-2023** Civil Plaintiff–*Top 40 under 40 Trial Lawyer* list, Rhode Island

**ASSOCIATIONS:**
**American Association for Justice**
**Rhode Island Association for Justice**
**Rhode Island Bar Association**
**Rhode Island Women's Bar Association**

### Shalom D. Jacks

LICENSED IN: SC
EDUCATION:
J.D., University of South Carolina School of Law, 2015
B.B.A., Brenau University, 2007
Shalom Jacks seeks justice for workers and families who are battling debilitating occupational illnesses, including mesothelioma and other asbestos-related diseases, as well as severe workplace injuries caused by corporate negligence and malfeasance.

Specifically, Shalom advocates for victims of asbestos-related diseases by helping clients navigate requirements in complex bankruptcy claim audits.

Prior to joining Motley Rice, Shalom gained legal experience as an extern for the 11th Circuit Public Defender's Office in Lexington, S.C., where she performed legal research and discovery for a variety of criminal proceedings. She served as

an intern for U.S. District Judge Richard Gergel, for the District of South Carolina. Shalom also gained experience in matrimonial law as an intern with a law firm in Summerville, S.C.

While pursuing her legal studies, Shalom advocated for victims of domestic violence as a member of Voices Against Violence, an American Bar Association Young Lawyers Division program.

In addition to her work with Motley Rice, Shalom investigates claims of dishonest conduct as a member of the Lawyer's Fund for Client Protection of the South Carolina Bar and helps obtain compensation for victims. She also serves as an advocate for neglected and abused children as a Guardian Ad Litem.

**ASSOCIATIONS:**
**American Bar Association**
**South Carolina Bar Association**, Lawyer's Fund for Client Protection
**Charleston County Bar Association**

### Annie E. Kouba

LICENSED IN: SC
ADMITTED TO PRACTICE BEFORE:
U.S. District Court for the District of South Carolina
EDUCATION:
J.D., University of North Carolina School of Law, 2016
M.S.W., University of North Carolina School of Social Work, 2016
B.A., *magna cum laude*, Lenoir-Rhyne University, 2012
Annie Kouba is a trial lawyer with a diverse practice representing global terror victims, survivors of childhood sexual abuse, children and families coping with mental health challenges allegedly caused by social media platforms, as well as public clients and government entities.

She is a part of Motley Rice's team of attorneys that represents dozens of cities, towns, counties, and townships in the *National Prescription Opiate* MDL against opioid manufacturers, distributors, and pharmacies for alleged deceptive marketing, fraudulent distribution and other business practices that contributed to the opioid crisis. Annie also has experience in the courtroom as a part of the Motley Rice trial team representing individuals alleging harm by defective medical devices.

Prior to joining Motley Rice, Annie interned with the North Carolina Department of Justice in the Health and Human Services Division where she drafted criminal briefs for the N.C. Court of Appeals and N.C. Supreme Court and assisted the president of the American Association of Public Welfare Attorneys. She also interned with the EMILY's List Political Opportunity Program and has worked as a *voir dire* consultant.

Annie concentrated in Community, Management, and Policy Practice at the University of North Carolina's School of Social Work Master's program where she specialized in the intersection of public policy and the law. Through a practicum with the program, Annie interned with the Compass Center



## Miles Loadholt
### Of Counsel

LICENSED IN: SC
EDUCATION:
J.D., cum laude, University of South Carolina School of Law, 1968
B.S., University of South Carolina, 1965

Miles Loadholt has practiced law for over four decades in the areas of occupational disease, worker safety and business litigation. He has worked with Motley Rice attorneys on occupational injury and asbestos litigation since the early 1970s, representing victims of asbestos, radiation and beryllium exposure. He has also represented workers suffering from hearing loss caused by exposure to loud machinery on the job and managed hundreds of workers' compensation cases. Additionally, Miles has practiced business litigation including contract disputes and business torts.

A longtime advocate of higher education, Miles was elected chairman of the University of South Carolina Board of Trustees in January 2009. With more than 12 years of service on the Board, Miles is planning for the institution's future capital campaign and building endowments. His involvement with the University of South Carolina and higher education programs includes his appointment to the South Carolina Commission on Higher Education by Governor Jim Hodges, serving as a member of the Western Carolina Higher Education Commission and more than 20 years on the Executive Committee of the Gamecock Club.

For his contributions to education in South Carolina, Miles received the Order of the Palmetto in 2002, the highest civilian honor in the state. His portrait can be found in the law library of the University of South Carolina's School of Law as recognition for his generosity and service.

Miles earned a Bachelor of Science and Juris Doctor from the University of South Carolina. As a law student, he was on the editorial board of the *South Carolina Law Review* and was a member of Phi Delta Phi and the Society of Wig and Robe.

Miles is recognized as an AV® rated attorney by Martindale-Hubbell®.

**ASSOCIATIONS:**
**American Association for Justice**
**American Bar Association**
**Barnwell County Bar Association**
**South Carolina Association for Justice**

## Charlotte E. Loper

LICENSED IN: SC, TX, NC
EDUCATION:
J.D. cum laude, Wake Forest School of Law, 2019
B.A. magna cum laude, University of South Carolina, 2016

Charlotte Loper represents individuals and businesses in class actions and complex litigation involving consumer protection, general commercial issues, and securities fraud.

Her casework includes litigating on behalf of a class of more than a million tax return preparers who allege the IRS charged unauthorized user fees for the issuance and renewal of preparer tax identification numbers (*Steele v. United States*, Case No. 1:14-cv-1523-RCL). She also represents patients who allege their insurance provider engaged in a fraudulent scheme to overcharge for needed medical services and products while knowingly pocketing the difference.

Charlotte previously worked as an intern for South Carolina's 14th Circuit Solicitor's Office, assisting with trials and motions in General Sessions and Magistrate Court. While completing her legal studies, she worked as a research assistant for Wake Forest law professor Kami Chavis on topics including the intersection of technology and law, and racial bias in jury selection.

Charlotte served as the Executive Articles Editor for the *Wake Forest Journal of Business and Intellectual Property Law* and was a member of Moot Court, in addition to being a CALI Award recipient, and winner of the Dean Reynolds Award of Excellence, among other honors and recognitions.

**ASSOCIATIONS:**
**American Bar Association**
**South Carolina Bar Association**
**Charleston County Bar Association**

## Ridge Mazingo

LICENSED IN: SC
EDUCATION:
J.D., University of North Carolina School of Law, 2022
B.A. summa cum laude, North Carolina State University, 2018

Ridge represents institutional investors in complex securities fraud litigation. Since joining Motley Rice, he supported the securities litigation team with the judicial approval process of a $809.5 million dollar settlement in a case, against the social media company Twitter for misleading shareholders. Ridge is also involved in securities litigation against Chegg, Inc. and Abbott Laboratories. As the son of two retired public-school educators, Ridge understands the importance of protecting pension fund investments so that hard-working men and women can retire with the dignity they deserve.

Ridge has also worked on various matters outside of the securities context representing clients in cases involving data breaches, catastrophic injury claims and anti-trust matters.

Prior to law school, Ridge gained valuable experience in state government as a Legislative Aide in the North Carolina House of Representatives and worked with a lobbying and consulting firm. While attending law school, Ridge was a member of the *North Carolina Law Review*, and held legal internships with the N.C. Department of Justice Consumer Protection Division and a mid-size regional firm focusing on civil defense and transactional matters.

# EXHIBIT 2

*In re Zetia Antitrust Litigation*
Motley Rice LLC
TIME REPORT
Inception through August 31, 2023

| NAME AND STATUS | HOURS AT SPECIFIED RATE | SUM OF BILL FEE |
|---|---|---|
| **Andrews, Polly** | **3.50** | **1,050.00** |
| **Administration** | **3.50** | **1,050.00** |
| 300.00 | 3.50 | 1,050.00 |
| **Baker, Frederick C.** | **3.10** | **3,255.00** |
| **Member** | **3.10** | **3,255.00** |
| 1,050.00 | 3.10 | 3,255.00 |
| **Bivins, Dominique 'Dom'** | **0.40** | **76.00** |
| **Administration** | **0.40** | **76.00** |
| 190.00 | 0.40 | 76.00 |
| **Buchman, Michael M.** | **3,258.40** | **3,122,180.50** |
| **Member** | **3,258.40** | **3,122,180.50** |
| 925.00 | 1,700.30 | 1,572,777.50 |
| 950.00 | 693.00 | 658,350.00 |
| 1,030.00 | 865.10 | 891,053.00 |
| **Carr, Melissa A.** | **2.50** | **875.00** |
| **Paralegal** | **2.50** | **875.00** |
| 350.00 | 2.50 | 875.00 |
| **Clerkin, Michelle Zolnoski** | **1,652.90** | **976,560.00** |
| **Associate** | **1,652.90** | **976,560.00** |
| 550.00 | 424.60 | 233,530.00 |
| 600.00 | 1,134.10 | 680,460.00 |
| 650.00 | 80.80 | 52,520.00 |
| 750.00 | 13.40 | 10,050.00 |
| **Cornwall, Sarah** | **0.20** | **38.00** |
| **Administration** | **0.20** | **38.00** |
| 190.00 | 0.20 | 38.00 |
| **Durba, Erin** | **184.80** | **129,360.00** |
| **Associate** | **184.80** | **129,360.00** |
| 700.00 | 184.80 | 129,360.00 |
| **Fairman, Alon** | **244.75** | **79,543.75** |
| **Contract Attorney** | **244.75** | **79,543.75** |
| 325.00 | 244.75 | 79,543.75 |
| **Hack, Lisa M.** | **1.00** | **350.00** |
| **Paralegal** | **1.00** | **350.00** |

| | | |
|---|---|---|
| 350.00 | 1.00 | 350.00 |
| **Holms, Kiersten** | **366.80** | **229,250.00** |
| **Associate** | **366.80** | **229,250.00** |
| 216.00 | - | - |
| 625.00 | 366.80 | 229,250.00 |
| **Jacobs, Rebecca** | **0.20** | **80.00** |
| **Staff Attorney** | **0.20** | **80.00** |
| 400.00 | 0.20 | 80.00 |
| **Koenen, Ashley** | **0.10** | **53.50** |
| **Contract Attorney** | **0.10** | **53.50** |
| 535.00 | 0.10 | 53.50 |
| **Kouba, Annie** | **32.00** | **18,880.00** |
| **Associate** | **32.00** | **18,880.00** |
| 590.00 | 32.00 | 18,880.00 |
| **Krellenstein, Michael** | **378.40** | **113,520.00** |
| **Paralegal** | **378.40** | **113,520.00** |
| 300.00 | 378.40 | 113,520.00 |
| **Laico, Julia** | **21.70** | **6,510.00** |
| **Paralegal** | **21.70** | **6,510.00** |
| 300.00 | 21.70 | 6,510.00 |
| **Lawrimore, Kathryn 'Katy'** | **11.30** | **2,147.00** |
| **Paralegal** | **11.30** | **2,147.00** |
| 190.00 | 11.30 | 2,147.00 |
| **Madsen, Andrew "Park"** | **2.20** | **385.00** |
| **Administration** | **2.20** | **385.00** |
| 175.00 | 2.20 | 385.00 |
| **Mazingo, Ridge** | **24.40** | **11,834.00** |
| **Associate** | **24.40** | **11,834.00** |
| 485.00 | 24.40 | 11,834.00 |
| **McLaughlin, Lora L.** | **1.60** | **600.00** |
| **Paralegal** | **1.60** | **600.00** |
| 375.00 | 1.60 | 600.00 |
| **Moriarty, Christopher F.** | **1.30** | **780.00** |
| **Member** | **1.30** | **780.00** |
| 600.00 | 1.30 | 780.00 |
| **Narwold, Bill** | **91.10** | **106,895.00** |
| **Member** | **91.10** | **106,895.00** |
| 1,050.00 | 6.00 | 6,300.00 |
| 1,100.00 | 29.80 | 32,780.00 |
| 1,150.00 | 13.10 | 15,065.00 |
| 1,250.00 | 42.20 | 52,750.00 |

| | | |
|---|---|---|
| **Ng, Jonathan** | **256.00** | **71,035.00** |
| **Paralegal** | **256.00** | **71,035.00** |
| 275.00 | 230.60 | 63,415.00 |
| 300.00 | 25.40 | 7,620.00 |
| **Oliver, Lance** | **65.70** | **58,227.50** |
| **Member** | **65.70** | **58,227.50** |
| 825.00 | 42.70 | 35,227.50 |
| 1,000.00 | 23.00 | 23,000.00 |
| **Onile-Ere, Jacob** | **1,096.20** | **457,200.00** |
| **Associate** | **1,096.20** | **457,200.00** |
| 300.00 | 95.10 | 28,530.00 |
| 425.00 | 924.20 | 392,785.00 |
| 450.00 | 51.30 | 23,085.00 |
| 500.00 | 25.60 | 12,800.00 |
| **Poston, Heather** | **0.70** | **168.00** |
| **Administration** | **0.70** | **168.00** |
| 240.00 | 0.70 | 168.00 |
| **Quillin, Kelly** | **1.60** | **640.00** |
| **Staff Attorney** | **1.60** | **640.00** |
| 400.00 | 1.60 | 640.00 |
| **Reyes, Paul** | **925.50** | **495,142.50** |
| **Contract Attorney** | **925.50** | **495,142.50** |
| 535.00 | 925.50 | 495,142.50 |
| **Richards, Evelyn** | **3.30** | **1,290.00** |
| **Law Clerk** | **3.30** | **1,290.00** |
| 350.00 | 0.20 | 70.00 |
| 375.00 | 0.80 | 300.00 |
| 400.00 | 2.30 | 920.00 |
| **Seiden, Karen** | **2.55** | **1,467.75** |
| **Contract Attorney** | **2.55** | **1,467.75** |
| 535.00 | 0.25 | 133.75 |
| 580.00 | 2.30 | 1,334.00 |
| **Shaarda, Lynn** | **13.70** | **4,795.00** |
| **Paralegal** | **13.70** | **4,795.00** |
| 350.00 | 13.70 | 4,795.00 |
| **Shaw, Johnny** | **829.60** | **258,635.00** |
| **Associate** | **247.90** | **72,337.50** |
| 275.00 | 224.10 | 61,627.50 |
| 450.00 | 23.80 | 10,710.00 |
| **Law Clerk** | **227.90** | **82,755.00** |
| 300.00 | 132.00 | 39,600.00 |
| 450.00 | 95.90 | 43,155.00 |

| | | |
|---|---|---|
| **Paralegal** | **353.80** | **103,542.50** |
| 275.00 | 103.90 | 28,572.50 |
| 300.00 | 249.90 | 74,970.00 |
| **Solomon, Cindi** | **1.50** | **975.00** |
| **Senior Counsel** | **1.50** | **975.00** |
| 650.00 | 1.50 | 975.00 |
| **Weil, Katherine M** | **0.60** | **195.00** |
| **Paralegal** | **0.60** | **195.00** |
| 325.00 | 0.60 | 195.00 |
| **Zagnoli, Theresa** | **43.10** | **34,911.00** |
| **Other Legal Support** | **43.10** | **34,911.00** |
| 810.00 | 43.10 | 34,911.00 |
| **Grand Total** | **9,522.70** | **6,188,904.50** |

# **EXHIBIT 3**

*In re Zetia Antitrust Litigation*
Motley Rice LLC
EXPENSE REPORT
Inception through August 2023

| Category | Amount Incurred |
|---|---|
| Litigation Assessments | $1,535,500.00 |
| Transportation | $14,411.97 |
| Reproduction | $8,946.75 |
| Computer Research and Web Services | $8,526.64 |
| Hotels | $10,685.03 |
| Litigation Expenses and Supplies | $5,860.20 |
| File Management Costs | $2,517.68 |
| Court Costs | $228.00 |
| Beginning Balance Expense Migration | $44,842.07 |
| eTelephone/Long Distance | $496.00 |
| Meals | $2,499.14 |
| Postage & Delivery | $1,669.05 |
| Other Professionals | $13,225.53 |
| Miscellaneous and Tips/Gratuities | $1,525.48 |
| **TOTAL:** | **$1,650,933.50** |

# EXHIBIT D

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

| | |
|---|---|
| IN RE: ZETIA (EZETIMIBE) ANTITRUST LITIGATION | MDL No. 2836<br>No. 2:18-md-2836- RBS-DEM |

## DECLARATION OF LEE ALBERT IN SUPPORT OF
## END-PAYOR CLASS'S MOTION FOR FINAL APPROVAL OF SETTLEMENT,
## AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND
## INCENTIVE AWARD

I, Lee Albert, declare as follows:

1.       I am an attorney licensed to practice before the courts of Pennsylvania and New Jersey and am admitted Pro Hac Vice in the above case and I am a partner in the firm Glancy Prongay & Murray LLP ("GPM"). I have personal knowledge of the facts stated in this Declaration and, if called as a witness, I would testify competently to them. I make this Declaration in support of GPM's request for attorneys' fees and reimbursement of litigation expenses, as set forth in End-Payor Class's Motion For Preliminary Approval Of Proposed Settlement, Approval Of The Form And Manner Of Notice To The Class, and Proposed Schedule For A Fairness Hearing. I am counsel of record in this case for Plaintiff, Uniformed Firefighters' Association of Greater New York Security Benefit Fund and Retired Firefighters' Security Benefit Fund of the Uniformed Firefighters' Association ("UFA").

2.       A brief description of my firm, which includes a short summary of my experience and credentials, is attached as Exhibit 1 and incorporated herein by reference.

3.       Throughout the course of this litigation, my firm kept files contemporaneously documenting all time spent, including tasks performed, and expenses incurred, and provided those reports monthly to Marvin A. Miller, Esq. one of End-Payor Plaintiffs' ("EPP") Co-Lead Counsel.

1

All the time and expenses reported by my firm advanced were reasonably necessary for the prosecution of this case in order to achieve the class-wide results obtained for the benefit of the EPP Class.

4.     My firm has continuously devoted efforts and resources on behalf of members of the EPP Class in connection with litigating this action from inception through the settlement. The work GPM performed at the request of Co-Lead Counsel in this case up to the Final Settlement included: Preparation of Filing and filing UFA initial class action complaint; Reviewing client data and documents; Participating in defensive discovery by working with UFA to search for documents and reviewing documents for responsiveness; working with the Pharmacy Benefits Manager to gather UFA Documents and Transactions; preparing client for deposition and attending UFA's deposition; Reviewing case filings, including the motion to dismiss and its responses and the motion for class certification and its responses with UFA; provided multiple status updates to UFA; Participated in the review of Defendants' production of Documents; searching for relevant Glenmore/Merck Documents; creation of chronology of Defendants' actions based upon the reviews of documents; prepared evidentiary objections to evidence put forth by Defendants; assisted in preparing to depose witnesses with knowledge of Merck's willingness and ability to launch an Authorized Generic ("AG"), including David Pakula and Theresa Covert-Walker; prepared for and took the deposition of Joerg Liebel, another witness with knowledge of Merck's willingness and ability to launch an AG; assisted in supporting Luis Molina, the Plaintiffs' expert on the issue of Merck's willingness and ability to launch an AG, in the preparation of his expert report; assisted in preparing Mr. Molina for deposition and defending his deposition; assisted in preparing Mr. Molina for trial; assisted in all aspects of trial preparation relating to Merck's willingness and ability to launch an AG.

5.      The schedule attached as Exhibit 2, prepared from contemporaneous time records regularly prepared and maintained by my firm and incorporated herein, is a summary of the amount of time spent by my firm's partners, attorneys, and professional support staff who were involved in this litigation. It does not include any time devoted to preparing this Declaration or otherwise pertaining to the request for an award of attorney's fees and reimbursement of expenses. The lodestar calculation is based on my firm's historical billing rates agreed to by hourly-fee paying clients or submitted to other courts for which compensation was requested. The total number of hours reasonably expended on this litigation by my firm from inception through March 31, 2023, which does not include time spent preparing this Declaration, is 2,091.3 hours. The total lodestar for my firm at historic rates is $1,501,127.50. Expense items are billed separately and are not duplicated in my firm's lodestar. Those records have been provided to Class Counsel and I authorize them to be submitted for *in camera* inspection by the Court, if necessary.

6.      The expenses my firm incurred in litigating this action are reflected in the books and records of my firm. These books and records are prepared from expense vouchers, invoices, receipts, check records, and other source materials and accurately reflect the expenses incurred. My firm's expense records are available for inspection by the Court if necessary.

7.      My firm incurred a total of $22,193.81 in unreimbursed expenses, all of which were reasonable and necessary for the prosecution of this litigation. Of this amount, $20,000.00 was for assessment payments for common litigation expenses or direct payments to experts or other venders made at the request of Co-Lead Counsel or as directed by me, and an additional $2,193.81 was for non-common litigation expenses incurred by my firm, such as filing fees, on-line PACER research, electronic legal research, meals, parking, copying, telephone, etc. A summary of those expenses by category is attached as Exhibit 3.

3

I declare under penalty of perjury that the foregoing is true and correct. Executed this 5th day of May, 2023, in Lafayette Hill, Pennsylvania.

/s/Lee Albert
Lee Albert

# <u>EXHIBIT 1</u>

# GLANCY PRONGAY & MURRAY LLP
ATTORNEYS AT LAW

<table>
<tr><td>LOS ANGELES OFFICE</td><td>NEW YORK OFFICE</td></tr>
<tr><td>1925 CENTURY PARK EAST<br>SUITE 2100<br>LOS ANGELES, CALIFORNIA 90067<br>TELEPHONE (310) 201-9150<br>FACSIMILE (310) 201-9160</td><td>230 PARK AVENUE<br>SUITE 358<br>NEW YORK, NY 10169<br>TELEPHONE (212) 682-5340<br>FACSIMILE (212) 884-0988</td></tr>
</table>

## FIRM RESUME

**Glancy Prongay & Murray LLP** (the "Firm") has represented businesses, investors, and consumers for nearly 25 years. With offices in New York City and Los Angeles the Firm has successfully prosecuted class action cases and complex litigation in federal and state courts throughout the country. As Lead Counsel or as a member of Plaintiffs' Counsel Executive Committees, the Firm has recovered billions of dollars for parties wronged by corporate fraud and anti-competitive conduct. Indeed, the Institutional Shareholder Services unit of RiskMetrics Group has recognized the Firm as one of the top plaintiffs' law firms in the United States in its Securities Class Action Services report for every year since the inception of the report in 2003. The Firm's efforts have been publicized in major newspapers such as the *Wall Street Journal*, the *New York Times*, and the *Los Angeles Times*.

Glancy Prongay & Murray's commitment to high quality and excellent personalized services has boosted its national reputation, and we are now recognized as one of the premier plaintiffs' firms in the country. The Firm works tenaciously on behalf of clients to produce significant results and generate lasting corporate reform.

The Firm's integrity and success originate from our attorneys, who are among the brightest and most experienced in the field. Our distinguished litigators have an unparalleled track record of investigating and prosecuting corporate wrongdoing. The Firm is respected for both the zealous advocacy with which we represent our clients' interests as well as the highly-professional and ethical manner by which we achieve results. We are ideally positioned to pursue securities litigation, antitrust litigation, consumer litigation, and derivative and corporate takeover litigation. The Firm's outstanding accomplishments are the direct result of the exceptional talents of our attorneys and employees.

## SECURITIES GROUP

GLANCY PRONGAY & MURRAY LLP is a leader in obtaining relief for investors affected by corporate securities fraud.

GLANCY PRONGAY & MURRAY LLP and its lawyers have represented a variety of domestic and international public and private institutions, including West Virginia Investment Management Board, Deka Bank, Dyson Capital Management, City of Sterling Heights Police and Fire Retirement Fund, City of Dearborn Heights Police and Fire Retirement Fund, City of Livonia, City of Roseville Employee Retirement System, St. Clair Shores Police and Fire Retirement Fund, City of Westland Police and Fire Retirement Fund, Quaker Mutual, Saratoga Advantage Trust Energy & Basic Materials Portfolio, Saratoga Advantage Trust Mid Capitalization Portfolio, Pennsylvania Avenue Partners, Directors Financial, Sapphire & Winston Capital, City of Farmington, Palm Beach Capital, Nurol Menkol Kizmetler A.S., PELO a.s., Frankfurt Trust, Pioneer Investment Management SGR S.A., Goose Hill Capital LLC, First New York Securities LLC, Houlihan & Co. LLC, Camelot Event Driven Fund, Dios Asset Management PTE, and Quad Capital Portfolio.

The Firm's New York office is currently Co-Lead Counsel in *Official Committee of Unsecured Creditors of First NBC Bank Holding Co. v. Ryan* (E.D. La.), *In re XL Fleet Corp. Sec. Litig.* (S.D.N.Y.), and *Meyer v. Cabot Lodge*, No. 653746/2022 (N.Y. Sup.)  In addition, the Firm represents hedge funds in an opt-out action involving the failed AbbVie-Shire merger.

Appointed as Lead or Co-Lead  Counsel by judges throughout the United States, GLANCY PRONGAY & MURRAY LLP has achieved significant recoveries for class members, including:

### *In re Yahoo! Inc. Sec. Litig.*, N.D. Cal., Case No. 17-cv-373

In reaching an $80 million settlement for a class of stock purchasers, the firm achieved the first significant settlement in a suit brought by shareholders under Section 10(b) of the Securities Exchange Act of 1934 based on a company's alleged failure to disclose adequately cybersecurity risks and incidents.  GLANCY PRONGAY & MURRAY LLP was Co-Lead Counsel.

### *The City of Farmington Hills Employees Retirement System v. Wells Fargo Bank, N.A.*, D. Minn., Case No. 10-cv-04372

The Class's claims were for breaches of fiduciary duty, breaches of contract, and violations of the Minnesota Prevention of Consumer Fraud Act (Minn. Stat. § 325F.69).  The lawsuit alleged that through its administration of its securities lending program, Wells Fargo breached its contractual agreements with and fiduciary duties to the Class and violated the Minnesota Prevention of Consumer Fraud Act.  Specifically, the Class Action alleged that CFHERS and other Class members entered into securities lending agreements and other agreements with Wells Fargo.  Pursuant to such agreements, Wells Fargo loaned CFHERS's and Class members' securities to third party borrowers in return for cash collateral.  In its complaint, CFHERS alleged that Wells Fargo acted imprudently by investing and maintaining the securities

lending collateral in high risk, long-term securities on behalf of members of the Class, which violated the express terms and principle objectives of the securities lending agreements. The alleged high risk, long-term securities included, but were not limited to, structured investment vehicles, mortgage-backed securities, other asset-backed securities, and corporate bonds for such companies as Lehman Brothers and Bear Stearns. Finally, CFHERS alleged that Wells Fargo's improper conduct as the administrator of the securities lending program caused substantial losses to CFHERS and members of the Class. On the eve of trial, the case settled for $62.5 million.

### *Mercury Interactive Corporation Securities Litigation*, N.D. Cal., Case No. 5:05-cv-3395

Mercury made a series of public disclosures concerning possible unreported backdating of stock options. As these disclosures of potential wrongdoing at Mercury became more serious, it was announced that the CEO, CFO, and General Counsel would be resigning because they had been aware of, participated in, and benefitted from repeated instances of illegal stock options backdating. Mercury's stock price dropped significantly in reaction to these announcements and created a huge, unfair loss to investors. Serving as Co-Lead Counsel, GLANCY PRONGAY & MURRAY LLP achieved a recovery for investors of over $117 million.

### *Real Estate Associates Securities Litigation*, C.D. Cal., Case No. 98-cv-07035

In 1998 the individual defendants caused consent solicitation statements to be sent to the limited partners of each of the Real Estate Associates partnerships. The consent solicitations allegedly contained statements which were false and misleading and failed to disclose certain material information, violating Sections 14(a) and Rule 14a-9 of the Securities and Exchange Act of 1934. The complaint sought declaratory and injunctive relief for violations of federal and state law and compensatory and punitive damages for breach of common law fiduciary duties. A recovery of $83 million was achieved for investors.

### *Conseco, Inc. Securities Litigation*, S.D. Ind., Case No. 1:02-cv-1332

Plaintiffs claimed Conseco and its senior officers made material omissions and misleading statements concerning problems with Conseco's liquidity and the Company's manufactured-homes financing business in violation of sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and S.E.C. Rule 10b-5. Although defendants were in possession of materially adverse information about Conseco's liquidity problems and problems with the collectability of the Company's mobile home loans, they failed to fully disclose the information to investors, causing Conseco's stock price to become artificially inflated. GLANCY PRONGAY & MURRAY LLP achieved a $41.5 million recovery for investors.

### *Robb v. FitBit Inc.*, N.D. Cal., Case No. 16-cv-00151

In this securities fraud class action under section 10(b) of the Securities Exchange Act of 1934, GLANCY PRONGAY & MURRAY LLP served as Co-Lead Counsel for the Class and achieved a settlement of $33 million.

*Gilat Satellite Networks, Ltd. Securities Litigation*, E.D.N.Y., Case No. 02-cv-1510

This was a securities fraud class action in which GLANCY PRONGAY & MURRAY LLP served as Co-Lead Counsel for the Class and achieved a settlement of $20 million.

*Lapin v. Goldman Sachs*, S.D.N.Y., Case No. 04-cv-02236

The Complaint alleged violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and S.E.C. Rule 10b-5. This case stems from a financial securities firm's alleged conflicts of interest. GLANCY PRONGAY & MURRAY LLP served as Co-Lead Counsel for the Class and achieved a settlement of $29 million.

*Heritage Bond Litigation*, C.D. Cal., Case No. 02-ml-1475

The Firm recovered in excess of $28 million in a global settlement in 2005 for defrauded investors. The bond issues involved in this case included Danforth Health Facilities Corporation, Tarrant County Health Facilities Development Corporation, City of Mexico Beach, Florida, City of Chicago, Illinois and Desert Hot Springs Public Authority in California.

*Livent, Inc. Noteholders Litigation*, S.D.N.Y., Case No. 98-cv-7161

This was a securities class action in which GLANCY PRONGAY & MURRAY LLP served as Co-Lead Counsel for the class and achieved a settlement of $27 million.

*ECI Telecom Ltd. Securities Litigation*, E.D. Va., Case No. 01-cv-913

Plaintiffs alleged ECI fraudulently engaged in a premature revenue recognition scheme, which violated both Generally Accepted Accounting Principles and ECI's own accounting policies. Following the District Court's denial of the defendants' motions to dismiss, GLANCY PRONGAY & MURRAY LLP began extensive discovery and was able to negotiate a settlement of $21.75 million.

*Lumenis, Ltd. Securities Litigation*, S.D.N.Y., Case No. 02-cv-1989

GLANCY PRONGAY & MURRAY LLP served as Co-Lead Counsel and achieved a settlement valued at over $20 million.

*In re Penn West Petroleum Ltd. Securities Litigation*, S.D.N.Y., Case No. 14-cv-6046

GLANCY PRONGAY & MURRAY LLP served as Co-Lead Counsel on behalf of a class of investors of Penn West securities purchasers alleging claims under section 10(b) of the Securities Exchange Act of 1934. The case settled for $19.4 million.

***In Re Turkcell Iletisim A.S. Securities Litigation*, S.D.N.Y., Case No. 00-cv-08913**

Attorneys now at GLANCY PRONGAY & MURRAY LLP served as Lead Counsel and achieved a settlement of $19.2 million for a case against a Turkish telecom company involving its IPO on the NYSE.

***In re Deutsche Bank AG Securities Litigation*, S.D.N.Y., Case No. 09-cv-1714**

GLANCY PRONGAY & MURRAY LLP served as Co-Lead Counsel on behalf of a class of purchasers of Deutsche Bank Preferred Shares pursuant to section 10(b) of the Securities Exchange Act of 1934. The case settled for $18.5 million.

***Wilson v. LSB Indus. Securities Litigation*, S.D.N.Y., Case No. 15-cv-7614**

GLANCY PRONGAY & MURRAY LLP served as Lead Counsel on behalf of a class of purchasers of LSB securities pursuant to section 10(b) of the Securities Exchange Act of 1934. The case settled for $18.45 million.

***Infonet Services Corporation Securities Litigation*, C.D. Cal., Case No. 01-cv-10456**

The Complaint alleged defendants violated Sections 11, 12(a)(2), and 15 of the Securities Act of 1933, and Sections 10(b) and 20A of the Securities Exchange Act of 1934 and S.E.C. Rule 10b-5. Specifically, shortly before the Infonet IPO in December 1999, Infonet acquired AUCS. The acquisition transaction was disguised as a management agreement, which would allow Infonet to switch AUCS's clients over to Infonet without having to use the business assets of AUCS. As Co-Lead Counsel, GLANCY PRONGAY & MURRAY LLP achieved a settlement for investors of $18 million.

***ESC Medical Systems, Ltd. Securities Litigation*, S.D.N.Y., Case No. 98-cv-7530**

This was a securities fraud class action in which GLANCY PRONGAY & MURRAY LLP served as sole Lead Counsel for the damaged Class and achieved a settlement valued in excess of $17 million.

***In re Horsehead Holding Corp. Sec. Litigation*, D. Del., Case No. 16-cv-00292**

As Lead Counsel, the firm defeated a motion to dismiss and later settled the case for $14.75 million on behalf of a class of Horsehead stock and note purchasers. The Court, when approving the settlement, noted Lead Counsel was well-informed, qualified, and experienced.

***Musicmaker.com Securities Litigation*, C.D. Cal., Case No. 00-cv-02018**

The Complaint alleged Musicmaker violated Sections 10(b), 20A, and 20(a) of the Securities Exchange Act of 1934 and S.E.C. Rule 10b-5, as well as Sections 11, 12, and 15 of the Securities Act of 1933. After defeating defendants' motions to dismiss, the Firm, which was Lead Counsel, engaged in extensive settlement negotiations, which resulted in an almost $14 million recovery for the plaintiffs.

*Leap Securities Litigation*, **S.D. Cal., Case No. 07-cv-2245**

This was a securities class action in which GLANCY PRONGAY & MURRAY LLP served as Liaison Counsel for the class and achieved a settlement of $13.75 million for investors.

*Lason, Inc. Securities Litigation*, **E.D. Mich., Case No. 99-cv-76079**

This was a securities fraud class action in which GLANCY PRONGAY & MURRAY LLP served as Co-Lead Counsel and recovered almost $13 million for damaged shareholders.

*Inso Corp. Securities Litigation*, **D. Mass., Case No. 00-cv-10305**

This was a securities fraud class action in which GLANCY PRONGAY & MURRAY LLP served as Co-Lead Counsel for the Class and achieved a settlement valued in excess of $12 million.

*National Techteam Securities Litigation*, **E.D. Mich., Case No. 97-cv-74587**

This was a securities fraud class action in which GLANCY PRONGAY & MURRAY LLP served as Co-Lead Counsel for the Class and achieved a settlement valued in excess of $11 million.

*KPNQwest Securities Litigation*, **S.D.N.Y., Case No. 02-cv-07951**

This was a securities fraud class action in which GLANCY PRONGAY & MURRAY LLP served as Co-Lead Counsel for the Class and achieved a settlement for investors worth $11 million.

*Jenson v. First Trust Corporation*, **C.D. Cal., Case No. 05-cv-3124**

GLANCY PRONGAY & MURRAY LLP filed its complaint in 2005, was appointed sole lead counsel, and achieved an $8.5 million settlement in a very difficult case involving a trustee's potential liability for losses incurred by investors in a Ponzi scheme. Kevin Ruf of the Firm also successfully defended in the 9th Circuit Court of Appeals the trial court's granting of class certification in this case.

*Ramp Networks, Inc. Securities Litigation*, **N.D. Cal., Case No. 00-cv-3645**

This was a securities fraud class action in which GLANCY PRONGAY & MURRAY LLP served as Co-Lead Counsel for the Class and achieved a settlement valued in excess of $7 million.

## ANTITRUST PRACTICE GROUP

GLANCY PRONGAY & MURRAY LLP has established a significant antitrust practice. Anti-competitive behavior interferes with the operation of economic markets. The prevalence of price-fixing and market allocation cases has increased at both the national and international levels. As government criminal investigations increase, civil litigation increasingly becomes important as a supplement to redress such misconduct.

The Firm's Antitrust Practice Group focuses upon representing individuals and entities who have been victimized by unlawful monopolization, price-fixing, market allocation, and other anti-competitive conduct. The Firm has prosecuted significant antitrust cases and has helped individuals and businesses recover billions of dollars. The Firm's Antitrust Practice Group represents consumers, businesses, and Health and Welfare Funds while prosecuting civil antitrust cases under federal and state laws throughout the country. The Firm has served as lead or co-lead counsel in numerous multi-district litigation antitrust cases and has won substantial settlements for plaintiffs in such cases. For instance, the Firm filed the initial landmark antitrust lawsuit against all of the major NASDAQ market-makers and served on Plaintiffs' Counsel's Executive Committee in *In re Nasdaq Market-Makers Antitrust Litigation*, which recovered $900 million for investors. The Firm was Co-Lead Counsel in *In re Korean Ramen Direct Antitrust Litigation* in the Northern District of California which went to trial in November 2018.

The Firm also represents Institutional Taft Hartley Funds bringing legal actions on behalf of a number of funds to recover for excessive pricing of generic drugs. Such cases are often called "Pay for delay litigation." Some drug manufacturers have used a costly legal tactic that more and more branded drug manufacturers have been using to stifle competition from lower-cost generic medicines. These drug makers have been able to sidestep competition by offering patent settlements that pay generic companies not to bring lower-cost alternatives to market, after the brand named patent expires. These "pay-for-delay" patent settlements effectively block all other generic drug competition for a growing number of branded drugs. The Firm represents a number of Taft Hartley funds against drug manufacturers in conspiracy as part of these pay for delay agreements, costing fund members thousands of dollars.

GLANCY PRONGAY & MURRAY LLP and its antitrust lawyers have represented large and medium private corporations and health and welfare funds in both Direct and Indirect Purchaser Litigation, including Tiffin Motor Homes, Inc., The Rice Co., Inc., White Oak Fund, LLP, Plumbers & Pipefitters Local 178 Health & Welfare Fund, United Firefighters Assn., United Fire Officers Ass'n, Purdy Bros. Trucking Co., Inc., East Valley Water District, TC Construction Corp., AGS Devices Co., Ace Marine Rigging & Supply, Inc., Chandler Packaging, Inc., Trans Pak, Inc., Carleton Trucking Co., Inc., Teamsters Local 237 Welfare Fund, The Plaza Market, and OM Commercial Neenah Oil, Inc.

The Firm's major cases have included:

***Sullivan v. DB Investments***, in which the Firm served as settlement Co-Lead counsel. De Beers had exploited its market dominance to inflate the price of rough diamonds and inflated the price of diamonds down the line. De Beers suffered a default judgment and then negotiated with Plaintiff's Counsel to reach a settlement of $295 million.

*In re Korean Ramen Antitrust Litig.* **(13-cv-4115 N.D. Cal.).** The Firm was lead counsel for direct purchaser plaintiffs. After obtaining class certification and defeating defendants' summary judgment, a jury trial was held and tried to verdict.

*In re Korean Airlines Antitrust Litig.* **(MDL 1891 C.D. Cal.),** in which the Firm served as Lead Counsel for a class of purchasers of trans-pacific airline tickets to Korea. The case settled for $65 million.

*In re Urethane Chemical Antitrust Litig.* **(MDL 1616 D. Kan. ).** Antitrust price fixing case, in which the Firm served as Co-Lead counsel resulting in a settlement of $33 million.

*In re Western States Wholesale Natural Gas Litig.* **(MDL 1566 D. Nev.)** ($25 Million settlement).

*In re Fresh and Process Potatoes Antitrust Litig.* **(MDL 2186 D. Idaho),** where the Firm was Co-Lead counsel for indirect purchasers of potatoes. The case settled for $5.5 million.

*In re Playmobil Products Antitrust Litig.* **(95-cv-2896 E.D.N.Y.)** (attorneys at the Firm were Lead Counsel in case involving retail price maintenance agreements violating the Sherman Act).

*In re Disposable Contact Lens Litig.* **(BC113271 Cal.)** (attorneys at the Firm represented a class of purchasers of disposable contact lenses in California and obtained a reversal in the appellate court of a denial of class certification).

*In re Time Warner Antitrust Litig.* **(09-cv-7747 S.D.N.Y.)** (attorneys at the Firm were Co-Lead Counsel in case involving illegal tying of the products).

*In re Aggrenox Antitrust Litigation* **(14-cv-2516 D. Conn.)** (attorneys at the Firm  represented a class of Union Funds and Consumers in a generic drug settlement of $54,000,000.

*In re Solodyn* **(MDL 2503 D. Mass.)** (attorneys at the Firm represented a class of Union Funds and Consumers in a generic drug settlement of $43,000,000.

Currently, the Firm has Lead or Committee roles in many federal lawsuits prosecuted by plaintiffs seeking damages for antitrust violations in major industries and drug cases, including:

*In re Vascepa Antitrust Litig. Indirect Purchaser Plaintiffs* **(21-cv-12061 D.N.J.) (Co-Lead Counsel).**

*In re National Football League's "Sunday Ticket" Antitrust Litig.* **(15-ml-2668 C.D. Cal.) (Executive Committee).**

*In re Deere & Co. Repair Services Antitrust Litig.* **(MDL No. 3030 N.D. Ill.) (Steering Committee).**

The Firm is also active in case involving anti-competitive schemes to keep generic drugs off the market.  Currently the Firm is on the executive committee in *In re Actos End Payor Antitrust Litig.* **(13-cv-9244 S.D.N.Y.)** and *In re HIV Antitrust Litig.* **(19-cv-2573 N.D. Cal.).** The firm also represents class members in *In re Sensipar Antitrust Litig.* **(19-cv-2895 D. Del.);** *In re Seroquel Antitrust Litig.* **(20-cv-1076 D. Del.);** and *In re Zetia (Ezetimibe) Antitrust Litig.* **(18-md-2863- RBS-DEM).**

The Firm currently has a major role in a case involving a number of drug manufacturers in conspiracy to fix the price of generic drugs in *In re Generic Pharmaceuticals Pricing Antitrust Litig.* **(16-md-2427 E.D. Pa.).**

The Firm has been part of the prosecution of many market manipulation cases involving violations of antitrust and commodities laws, including *Sullivan v. Barclays PLC* (manipulation of Euribor rate); and *Ploss v. Kraft Foods Group* (manipulation of wheat prices)., and

In addition to the foregoing, the Firm also represents clients in on going cases in:

*In re Payment Card Interchange Fee and Merchant Discount Litig.* **(MDL 1720 E.D.N.Y);**
*In re Domestic Airline Travel Antitrust Litig.* **(15-MC-1404 D.D.C. );**
*In re Hard Disk Drive Suspension Assemblies Antitrust Litig.* **(19-cv-2918 N.D. Cal.).**

# CONSUMER LITIGATION

GLANCY PRONGAY & MURRAY LLP successfully litigated on behalf of consumers throughout the United States. Individuals in our society work hard to provide for their families and deserve to rely upon truthful information when purchasing products and services. Accordingly, we fight for consumers when corporations attempt to deceive or take advantage of customers. Consumer fraud occurs when a customer buys a product that does not perform as represented or advertised, or purchases services that are not the same as represented or advertised.

The Firm is committed to protecting and defending the rights of defrauded consumers. Our Consumer Practice Group focuses upon companies that reap millions of dollars in profits by misrepresenting their products or services. In many instances, class actions provide the only viable avenue to vindicate a person's rights as a consumer. Accordingly, the Firm has taken a leading role in many of the most significant federal and consumer fraud cases throughout the country. Indeed, the Firm's Consumer Practice Group has obtained outstanding results for consumers. For example, in *Pascussi v. Airtouch Communications*, a cellular phone service provider improperly charged all of its Michigan customers for certain calls. Through our class action lawsuit, the Firm recovered a settlement of $30 million for injured consumers. The Firm's Consumer Practice Group similarly represents consumers nationwide in a variety of important consumer cases and has achieved significant results through our efforts. The Firm is currently Co-Lead Counsel in *Goodman v. UBS Finan. Serv.*, 21-cv-18123 (D.N.J.) (alleging UBS incorrectly reported tax information to clients) and in a case brought pursuant to the Americans with Disabilities Act in *O'Garro v. City of New Jersey*, 20-cv-5282 (D.N.J.) (alleging American with Disabilities Act violations in Jersey City streets and curb cuts).

The Firm has also represented clients in many security breaches and breach of privacy cases, including *Gordon v. Chipotle Mexican Grill, Inc.* (D. Colo. 17-cv-1415); *Hameed-Bolden v. Forever 21 Retail* (C.D. Cal. 18-cv-3019); *In re Yahoo! Inc. Customer Data Breach Sec. Litig.* (N.D. Cal. 16-md-2752); *Brady v. Scotty's Holdings* (N.D. Ind. 19-cv-4782); *Whalen v. Sunrise Med. Labs.* (E.D.N.Y. 19-cv-4378); *In re Marriott Int'l Inc. Customer Data Sec. Breach Litig.* (D. Md. 19-md-2879); *In re Capital One Consumer Data Sec. Breach Litig.* (E.D. Va. 19-md-2915); *Beckett v. Aetna, Inc.* (E.D. Pa. 17-cv-3864); *In re Anthem, Inc. Data Breach Litig.* (N.D. Cal. 15-md-2617); *Adams v. Dickey's Barbeque Restaurants* (N.D. Tex. 20-cv-3424); *Biddle v. The Univ. of Pittsburgh Med Center* (W.D. Pa. 21-cv-815); *Smallman v. MGM Resorts Int'l* (D. Nev. 20-cv-376); *Granados v. Lending Tree LLC* (W.D.N.C. 22-cv-504); *In re Equifax Fair Credit Reporting Act Litig.* (N.D. Ga. 22-cv-3072); and *Colon v. Empress Ambulance Service* (S.D.N.Y. 22-cv-9322).

We have achieved many significant recoveries including:

### *Naevus Int'l v. AT&T Corp.*, N.Y. Supreme Court, Case No. 602191/1999

Attorneys now at the Firm represented a class of consumers who subscribed to AT&T's Digital One Rate wireless service. The case eventually settled for benefits worth $40 million.

*Pascussi v. Airtouch Communications*, **Wayne Co. (Mich.) Circuit Court, Case No. 99-cv-90969**

This was a consumer case against Airtouch Communications regarding claims against a cellular phone service provider improperly charging all of its Michigan customers for certain calls. GLANCY PRONGAY & MURRAY LLP recovered a settlement of $30 million for class members.

*Shin v. BMW of North America*, **C.D. Cal., Case No. 09-cv-398**

After GLANCY PRONGAY & MURRAY LLP defeated defendants' motion to dismiss, the case settled on very favorable terms for class members including free replacement of cracked wheels for their BMW vehicles.

*Esslinger v. HSBC Bank Nevada, N.A.*, **E.D. Pa., Case No. 10-cv-03213**

This case was on behalf of HSBC credit card holders who paid for "payment protection" services. A $23,500,000 settlement was approved in 2013.

*Villefranche v. HSBC Bank Nevada, N.A.*, **C.D. Cal., Case No. 09-cv-3639**

After defeating defendants' motion to dismiss, the case resulted in a 100% recovery to class members who were improperly charged a higher rate of interest on their credit cards.

*In Re Discover Payment Protection Plan Marketing and Sales Practices Litigation*, **N.D. Ill., Case No. 10-cv-06994**

Brought on behalf of Discovery credit card holders for deceptive sales and marketing practices. The case settled for $10,500,000.

## CORPORATE MERGERS & ACQUISITIONS LITIGATION

Through our Corporate Mergers & Acquisitions Litigation Practice Group, the Firm is heavily active in securities fraud prevention.  The Firm brings actions on behalf of shareholders of companies that have entered into management-led buyouts, mergers, tender-offers, or other business combinations.   Corporate director–who are required to act as fiduciaries for shareholders—sometimes breach their fiduciary duties because of material conflicts or other issues.  The Firm has litigated numerous cases on behalf of shareholders who have been treated unfairly or received inadequate consideration in a merger or business combination.  The Firm's efforts have resulted in millions of dollars in increased consideration for shareholders, the disclosure of material information enabling shareholders to better assess the fairness of proposed transactions, and significant structural changes to merger agreements designed to protect and maximize shareholder value.

Lawyers at GLANCY PRONGAY & MURRAY LLP have been active in scores of cases such as these, including litigation involving takeovers of Claire's Stores, Inc., Charlotte Russe Holding, Inc., BJ Services, Co., Hearst-Argyle Television, Inc., Medarex, Inc., Centerplate, Inc., Sirna Therapeutics, Inc., Chaparral Resources, Inc., The Topps Company, Inc., Genentech, Inc., Jacuzzi Brands, Inc., Burlington Northern Santa Fe, Black & Decker Inc., 3Com Corp., Alcon, Inc., XTO Energy, Inc., Continental Airlines, Inc., Facet Biotech Corp., Infogroup Inc., Double-Take Software, Inc., Iowa Telecom. Serv., Inc., Maine & Maritimes Corp., Millipore Corp., American Italian Pasta Corp., Argon ST. Inc., ATC Tech. Corp., Northstar Neuroscience, Inc., MSC Software Corp., Abraxis Bioscience Inc., Trubion Pharmaceuticals, Inc., Pactiv Corp., Polymer Group, Inc., Citadel Broadcasting Corp., Hewitt Associates, Inc., Thermadyne Holdings Corp., Wainwright Bank & Trust Co., Jo-Ann Stores, Inc., NYMagic, Inc., NYSE Euronext, Smurfit-Stone Container Corp., RAE Systems, Inc., Actel Corp., ArcSight, Inc., Pride Int'l Inc., Nat'l Semiconductor Corp., OptionsXpress Corp., LaBarge, Inc., K-Sea Trans. Partners, LLC, The Gymboree Corp., Frontier Oil Corp., Emergency Medical Services Corp., Tomotherapy Inc., Del Monte Foods Co., Warner Music Group Corp., Smart Modular Techs., Inc., Int'l Coal Group, Youbet.com, and Interactive Data Corp.

## DERIVATIVE & CORPORATE GOVERNANCE LITIGATION

GLANCY PRONGAY & MURRAY LLP has a robust Derivative & Corporate Governance Litigation Practice. Many corporate officers and directors engage in misconduct that wastes corporate assets, undermines faith in the financial markets, and diminishes the trust of shareholders. The Firm's fervent commitment to corporate accountability has enabled us to seek governance reforms that will align the interests of management with those of shareholders. Our efforts also serve to deter fraud and other corporate wrongdoing.

Throughout our Derivative & Corporate Governance Litigation Practice Group, the Firm is focused upon restoring accountability, preserving corporate assets, improving transparency, and protecting shareholder value. Because shareholder derivative actions often result in significant corporate governance reforms that have a positive impact on the long-term interests of shareholders, we utilize such litigation to demand accountability on behalf of our clients. Through these efforts, the Firm has worked to create important changes in corporate governance and to protect investors against future instances of securities fraud.

The Firm was involved in the News Corp. litigation, in the Delaware Chancery Court, in which News Corp. recovered $139 million in insurance proceeds.

The Firm has also been active in protecting shareholders from inadequate corporate governance. The Firm has successfully litigated cases challenging improper provisions for the removal of directors, resulting in the removal of the provisions. A representative list of these cases includes Viacom CBS, PhenixFin Corp., Vaxart Inc., DarioHealth Corp., and SiTime Corp.

Currently the Firm is litigating derivative cases on behalf of Inovio Pharmaceuticals, Inc., Vaxart Inc., and Docusign Inc.

## PARTNERS

**LIONEL Z. GLANCY**, a graduate of University of Michigan Law School, is the founding partner of the Firm. After serving as a law clerk for United States District Judge Howard McKibben, he began his career as an associate at a New York law firm concentrating in securities litigation. Thereafter, he started a boutique law firm specializing in securities litigation, and other complex litigation, from the Plaintiff's perspective. Mr. Glancy has established a distinguished career in the field of securities litigation over the last twenty-five years, having appeared and been appointed lead counsel on behalf of aggrieved investors in securities class action cases throughout the country. He has appeared and argued before dozen of district courts and a number of appellate courts. His efforts have resulted in the recovery of hundreds of millions of dollars in settlement proceeds for huge classes of shareholders. Well-known in securities law, he has lectured on its developments and practice, including having lectured before Continuing Legal Education seminars and law schools.

Mr. Glancy was born in Windsor, Canada, on April 4, 1962. Mr. Glancy earned his undergraduate degree in political science in 1984 and his Juris Doctor degree in 1986, both from the University of Michigan. He was admitted to practice in California in 1988, and in Nevada and before the U.S. Court of Appeals for the Ninth Circuit in 1989.

**BRIAN MURRAY** is admitted to the bars of Connecticut, New York, and the United States District Courts for the Southern, Eastern, Western, and Northern Districts of New York, the Eastern District of Michigan, the District of Connecticut, the District of Nebraska, the Eastern and Western Districts of Arkansas, the First, Second, Fifth, and Ninth Circuit Courts of Appeal, and the United States Supreme Court. He received Bachelor of Arts and Master of Arts degrees from the University of Notre Dame in 1983 and 1986, respectively. He received a Juris Doctor degree, *cum laude,* from St. John's University School of Law in 1990. At St. John's, he was the Articles Editor of the St. John's Law Review. Mr. Murray co-wrote: *Jurisdição Estrangeira Tem Papel Relevante Na De Fiesa De Investidores Brasileiros,* Espaca Juridico Bovespa (August 2008); *The Proportionate Trading Model: Real Science or Junk Science?,* 52 Cleveland St. L. Rev. 391 (2004-05); *The Accident of Efficiency: Foreign Exchanges, American Depository Receipts, and Space Arbitrage,* 51 Buffalo L. Rev. 383 (2003); *You Shouldn't Be Required To Plead More Than You Have To Prove,* 53 Baylor L. Rev. 783 (2001); *He Lies, You Die: Criminal Trials, Truth, Perjury, and Fairness,* 27 New England J. On Civil And Criminal Confinement 1 (2001); *Subject Matter Jurisdiction Under the Federal Securities Laws: The State of Affairs After Itoba,* 20 Maryland J. Of Int'l L. And Trade 235 (1996); *Determining Excessive Trading in Option Accounts: A Synthetic Valuation Approach,* 23 U. Dayton L. Rev. 316 (1997); *Catch-22 for Investors: Averaging Down Held to Preclude Fraud Remedies,* New York Law Journal (March 31, 2014); *Loss Causation Pleading Standard,* New York Law Journal (Feb. 25, 2005); *The PSLRA 'Automatic Stay' of Discovery,* New York Law Journal (March 3, 2003); and *Inherent Risk In Securities Cases In The Second Circuit,* New York Law Journal (Aug. 26, 2004). He also authored *Protecting The Rights of International Clients in U.S. Securities Class Action Litigation,* International Litigation News (Sept. 2007); Lifting the PSLRA "Automatic Stay" of Discovery, 80 N. Dak. L. Rev. 405 (2004); *Aftermarket Purchaser Standing Under § 11 of the Securities Act of 1933,* 73 St. John's L. Rev. 633 (1999); *Recent Rulings Allow Section 11 Suits By Aftermarket Securities Purchasers,* New York Law Journal (Sept. 24, 1998); and *Comment, Weissmann v. Freeman:*

*The Second Circuit Errs in its Analysis of Derivative Copyrights by Joint Authors*, 63 St. John's L. Rev. 771 (1989).

Mr. Murray was on the trial team that prosecuted a securities fraud case under Section 10(b) of the Securities Exchange Act of 1934 against Microdyne Corporation in the Eastern District of Virginia and he was also on the trial team that presented a claim under Section 14 of the Securities Exchange Act of 1934 against Artek Systems Corporation and Dynatach Group which settled midway through the trial.

Mr. Murray's major cases include:

*In re Horsehead Holding Corp. Sec. Litig.*, No. 16-cv-292, 2018 WL 4838234 (D. Del. Oct. 4, 2018) (recommending denial of motion to dismiss securities fraud claims where company's generic cautionary statements failed to adequately warn of known problems for zinc processing plant); *In re Deutsche Bank Sec. Litig.*, 328 F.R.D. 71 (S.D.N.Y. 2018) (granting class certification for Securities Act claims and rejecting defendants' argument that class representatives' trading profits made them atypical class members); *Robb v. Fitbit Inc.*, 216 F. Supp. 3d 1017 (N.D. Cal. 2016) (denying motion to dismiss securities fraud claims where confidential witness statements sufficiently established scienter; case subsequently settled for $33 million); *In re Eagle Bldg. Tech. Sec. Litig.*, 221 F.R.D. 582 (S.D. Fla. 2004), 319 F. Supp. 2d 1318 (S.D. Fla. 2004) (complaint against auditor sustained due to magnitude and nature of fraud; no allegations of a "tip-off" were necessary); *In re Turkcell Iletisim A.S. Sec. Litig.*, 209 F.R.D. 353 (S.D.N.Y. 2002) (defining standards by which investment advisors have standing to sue); *In re Turkcell Iletisim A.S. Sec. Litig.*, 202 F. Supp. 2d 8 (S.D.N.Y. 2001) (liability found for false statements in prospectus concerning churn rates); *Feiner v. SS&C Tech., Inc.*, 11 F. Supp. 2d 204 (D. Conn. 1998) (qualified independent underwriters held liable for pricing of offering); *Malone v. Microdyne Corp.*, 26 F.3d 471 (4th Cir. 1994) (reversal of directed verdict for defendants); and *Adair v. Bristol Tech. Systems, Inc.*, 179 F.R.D. 126 (S.D.N.Y. 1998) (aftermarket purchasers have standing under section 11 of the Securities Act of 1933). Mr. Murray also prevailed on an issue of first impression in the Superior Court of Massachusetts, in *Cambridge Biotech Corp. v. Deloitte and Touche LLP*, in which the court applied the doctrine of continuous representation for statute of limitations purposes to accountants for the first time in Massachusetts. 6 Mass. L. Rptr. 367 (Mass. Super. Jan. 28, 1997). In addition, in *Adair v. Microfield Graphics, Inc.* (D. Or.), Mr. Murray settled the case for 47% of estimated damages. In the *Qiao Xing Universal Telephone* case, claimants received 120% of their recognized losses.

Among his current cases, Mr. Murray is currently co-lead counsel *Official Committee of Unsecured Creditors of First NBC Bank Holding Co. v. Ryan* (E.D. La.); *Li v. Fleet New York Metropolitan Regional Center LLC* (E.D.N.Y.); and *Meyer v. Cabot Lodge Sec. LLC* (N.Y. Supreme). He also has major roles in *Smallman v. MGM Resorts Int'l* (D. Nev.), and *Springmeyer v. Marriott Int'l Inc.* (D. Md.).

Mr. Murray served as a Trustee of the Incorporated Village of Garden City (2000-2002); Commissioner of Police for Garden City (2000-2001); Co-Chairman, Derivative Suits Subcommittee, American Bar Association Class Action and Derivative Suits Committee (2007-2010); Member, Sports Law Committee, Association of the Bar for the City of New York, 1994-1997; Member, Litigation Committee, Association of the Bar for the City of New York, 2003-

2007; Member, New York State Bar Association Committee on Federal Constitution and Legislation, 2005-2008; Member, Federal Bar Council, Second Circuit Committee, 2007-2020.

Mr. Murray has been a panelist at CLEs sponsored by the Federal Bar Council and the Institute for Law and Economic Policy, the University of Notre Dame, and the German-American Lawyers Association Annual Meeting in Frankfurt, Germany, and is a frequent lecturer before institutional investors in Europe and South America on the topic of class actions.

**ROBERT V. PRONGAY** is a partner in the Firm's Los Angeles office where he focuses on the investigation, initiation, and prosecution of complex securities cases on behalf of institutional and individual investors. Mr. Prongay's practice concentrates on actions to recover investment losses resulting from violations of the federal securities laws and various actions to vindicate shareholder rights in response to corporate and fiduciary misconduct.

Mr. Prongay has extensive experience litigating complex cases in state and federal courts nationwide. Since joining the Firm, Mr. Prongay has successfully recovered millions of dollars for investors victimized by securities fraud and has negotiated the implementation of significant corporate governance reforms aimed at preventing the reoccurrence of corporate wrongdoing. Some recent cases in which the Firm was appointed as lead counsel that Mr. Prongay has worked on include:

- Representation of the lead plaintiffs in *Fuller v. Imperial Holdings*, a putative securities class action on behalf of investors alleging violations of the Securities Act of 1933 in connection with the company's $189 million initial public offering. The lawsuit relates to misrepresentations and omissions about the company's business practices and involvement in illegal stranger-originated life insurance transactions. This matter is ongoing;
- Representation of the lead plaintiffs in *Curry v. Hansen Medical*, a putative securities class action on behalf of investors alleging violations of the Securities Exchange Act of 1934. The case relates to the company's restatement of several quarters of financial statements as a result of, among other things, improper revenue recognition and accounting irregularities. The court recently upheld the sufficiency of the plaintiffs' allegations. This matter is ongoing;
- Representation of the lead plaintiffs in *Ho v. Duoyuan Global Water*, a putative securities class action on behalf of investors alleging violations of the Securities Act of 1933 and the Securities Exchange Act of 1934. The case relates to misrepresentations and omissions about the financial condition and operations of a Chinese company publicly traded in the United States. The court recently upheld the sufficiency of the plaintiffs' allegations. This matter is ongoing;
- Representation of the lead plaintiff in *Crotteau v. Addus Homecare*, a securities class action on behalf of investors alleging violations of the Securities Act of 1933 in connection with the company's initial public offering. The case settled for $3 million;
- Representation of the lead plaintiff in *Murdeshwar v. Search Media Holdings*, a securities class action alleging violations of the Securities Exchange Act of 1934. During the course of the litigation, the court found that the lead plaintiff had adequately alleged that the proxy materials provided to the investors of the special-purpose acquisition company

contained misstatements and omissions about the company being acquired. The case settled for $2.75 million;

- Representation of the lead plaintiffs in *Mishkin v. Zynex Inc.*, a securities class action on behalf of investors alleging violations of the Securities Exchange Act of 1934. The case related to the company's restatement of its financial results and involved allegations that the company had engaged in a systematic scheme to over-bill insurance companies from which the company had routinely sought payment for the sale and rental of its products. After the court found the lead plaintiffs had adequately alleged violations of the federal securities laws, the case settled for $2.5 million; and

- Representation of the plaintiff in *Binder v. Shacknai*, a shareholder derivative action alleging various breaches of fiduciary duty under state law by the board of directors of a publicly traded company in connection with the company's restatement of its historical financial results. The settlement of the action conferred substantial benefits on the corporation through the adoption of corporate governance reforms designed to protect the company and its shareholders against future instances of wrongdoing and broadly improve the corporate governance of the company.

Several of Mr. Prongay's cases have received national and regional press coverage. Mr. Prongay has been interviewed by journalists and writers for national and industry publications, ranging from *The Wall Street Journal* to the *Los Angeles Daily Journal*. Mr. Prongay recently appeared as a guest on Bloomberg Television where he was interviewed about the securities litigation stemming from the high-profile initial public offering of Facebook, Inc.

Mr. Prongay received his Bachelor of Arts degree in Economics from the University of Southern California and his Juris Doctor degree from Seton Hall University School of Law. Mr. Prongay is also an alumnus of the Lawrenceville School.

**LEE ALBERT** was admitted to the bars of Pennsylvania and New Jersey, and the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey in 1986. He received his B.S. and M.S. degrees from Temple University and Arcadia University in 1975. After teaching for 11 years in Philadelphia, he received his J.D. degree from Widener University School of Law in 1986. Upon graduation from law school, Mr. Albert spent several years working as a civil litigator in Philadelphia, PA. Mr. Albert has extensive litigation and appellate practice experience having argued before the Supreme Court of Pennsylvania and intermediate Pennsylvania Appellate Courts and has over twenty years of trial experience in both jury and non-jury cases and arbitrations. Mr. Albert has represented a national health care provider at trial obtaining injunctive relief in federal court to enforce a five-year contract not to compete on behalf of a national health care provider and injunctive relief on behalf of an undergraduate university. Additionally, Mr. Albert has held the position previously as Party Chair of his local Township.

Currently, Mr. Albert represents Taft Hartley funds in the E.D. Pa. and the D.N.J. in generic drug and antitrust matters, as well as having clients in all types of complex litigation including matters concerning violations of federal and state antitrust and securities laws, mass tort/product liability, and unfair and deceptive trade practices. Mr. Albert was also on the trial team that tried the case to verdict in *In re Korean Ramen Direct Antitrust Litig.* in the Northern District of California. Mr. Albert's current major cases include *In re Generic Pharmaceuticals Pricing Antitrust Litig.*

(16-md-2427 E.D. Pa.); *In re Vascepa Antitrust Litig.* (21-cv-12061 D.N.J.) (Co-Lead Counsel); *O'Garro v. City of New Jersey*, 20-cv-5282 (D.N.J.) (alleging Americans with Disabilities Act violations in Jersey City streets and curb cuts); *In re National Football League Sunday Ticket Antitrust Litig.* (C.D. Cal.); and *In re HIV Antitrust Litig.* (N.D. Cal.) (Executive Committee).

Previously, Mr. Albert had significant roles in *Marine Products Antitrust Litig.* (C.D. Cal.) (Executive Committee); *Baby Products Antitrust Litig.* (E.D. Pa.); *In Re Automotive Wire Harness Systems Antitrust Litig.* (E.D. Mich.); *In Re Heater Control Panels Antitrust Litig.* (E.D. Mich.); *Kleen Products v. Packaging Corp. of Amer.* (N.D. Ill.); *In re ATM Fee Litig.* (N.D. Cal.); *In re Canadian Car Antitrust Litig.* (D. Me.); *In re Broadcom Sec. Litig.* (C.D. Cal.); and has worked on *In re Avandia Marketing, Sales Practices and Products Liability Litig.* (E.D. Pa.); *In re Ortho Evra Birth Control Patch Litig.* (N.J. Super. Ct., Middlesex County); and *In re Microsoft Corp. Massachusetts Consumer Protection Litig.* (Mass. Super. Ct.).

**KEVIN F. RUF** graduated from the University of California at Berkeley in 1984 with a Bachelor of Arts in Economics and earned his Juris Doctor degree from the University of Michigan in 1987. Mr. Ruf was admitted to the State Bar of California in 1988. Mr. Ruf was an associate at the Los Angeles firm Manatt Phelps and Phillips from 1988 until 1992, where he specialized in commercial litigation and was a leading trial lawyer among the associates there. In 1993, he joined the firm Corbin & Fitzgerald in order to gain experience in criminal law. There, he specialized in white collar criminal defense work, including matters related to National Medical Enterprises, Cynergy Film Productions, and the Estate of Doris Duke. Mr. Ruf joined the Firm in 2001 and has taken a lead trial lawyer role in many of the Firm's cases. In 2006, Mr. Ruf argued before the California Supreme Court in the case *Smith v. L'Oreal* and achieved a unanimous reversal of the lower court rulings; the case established a fundamental right of all California workers to immediate payment of all earnings at the conclusion of employment. In 2007, Mr. Ruf took an important case before the Ninth Circuit Court of Appeals, convincing the Court to affirm the lower court's certification of a class action in a fraud case (fraud cases have traditionally faced difficulty as class actions because of the requirement of individual reliance). Mr. Ruf has extensive trial experience, including jury trials, and considers his courtroom and oral advocacy skills to be his strongest asset as a litigator. Mr. Ruf currently acts as the Head of the Firm's Labor and Consumer Practice, and has extensive experience in securities cases as well. Mr. Ruf also has experience in real estate law and has been a Licensed California Real Estate Broker since 1999.

**GREGORY B. LINKH** works out of the New York office, where he concentrates on antitrust, securities, shareholder derivative, and consumer litigation. Greg graduated from the State University of New York at Binghamton in 1996 and from the University of Michigan Law School in 1999. While in law school, Greg externed with United States District Judge Gerald E. Rosen of the Eastern District of Michigan. Greg was previously associated with the law firms Dewey Ballantine LLP, Pomerantz Haudek Block Grossman & Gross LLP, and Murray Frank LLP.

Mr. Linkh is the co-author of *Inherent Risk In Securities Cases In The Second Circuit*, NEW YORK LAW JOURNAL (Aug. 26, 2004); *Staying Derivative Action Pursuant to PSLRA and SLUSA*, NEW YORK LAW JOURNAL, P. 4, COL. 4 (Oct. 21, 2005) and the SECURITIES REFORM ACT LITIGATION REPORTER, Vol. 20, No. 3 (Dec. 2005).

Mr. Linkh was one of the lead trial counsel in *In re Korean Ramen Direct Antitrust Litig.*, which was one of the rare antitrust class action cases to be tried to a jury verdict. Currently his major cases include *In re Horsehead Holding Corp. Sec. Litig.*; and *In re Heating Control Panel Direct Purchaser Action* (12-md-02311 E.D. Mich.).

**BRIAN D. BROOKS** joined the New York office of Glancy Prongay & Murray LLP in 2019, specializing in antitrust, consumer, and securities litigation. Prior to joining the firm, Mr. Brooks was an active member of the trial team for the class in *In re: Nexium Antitrust Litigation*, the first post-*Actavis* reverse-payment case to be tried to verdict. He was also an active member of the litigation team in the *In re: Provigil*, *In re: Prograf*, and *In re: Miralax* antitrust matters, which collectively settled for more than $600 million, as well as the *In re: Suboxone* and *In re: Niaspan* antitrust matters, which are still pending. Mr. Brooks has been actively participating in *In re HIV Antitrust Litig.* (19-cv-2573 N.D. Cal.); *In re Zetia (Ezetimibe) Antitrust Litig.* (18-md-2863-RBS-DEM); and *In re Actos End Payor Antitrust Litig.* (13-cv-9244 S.D.N.Y.). Mr. Brooks received his B.A. from Northwestern State University of Louisiana in 1998 and his J.D. from Washington and Lee School of Law in 2002, and is admitted to practice in New York and Louisiana.

**KARA M. WOLKE**'s practice spans consumer, labor, securities, and other complex class action prosecution. She has extensive experience in written appellate advocacy in both State and Federal Circuit Courts of Appeals, and has successfully argued before the Court of Appeal for the State of California.

Ms. Wolke graduated *summa cum laude* with a B.S.B.A. in Economics from The Ohio State University in 2001, and subsequently earned her J.D. (with honors) from Ohio State, where she was active in Moot Court and received the Dean's Award for Excellence during each of her three years. In 2005, she was a finalist in a national writing competition co-sponsored by the American Bar Association and the Grammy® Foundation. (published at 7 VAND. J. ENT. L. & PRAC. 411). Ms. Wolke is admitted to the State Bar of California, the Ninth Circuit Court of Appeals, as well as the United States District Courts for the Northern, Southern, and Central Districts of California.

**JONATHAN M. ROTTER** leads the Firm's intellectual property litigation practice. He recently served for three years as the first Patent Pilot Program Law Clerk at the United States District Court for the Central District of California. There, he assisted the Honorable S. James Otero, Andrew J. Guilford, George H. Wu, John A. Kronstadt, and Beverly Reid O'Connell with hundreds of patent cases in every major field of technology, from complaint to post-trial motions. Before his service to the court, Mr. Rotter practiced at an international law firm, where he argued appeals at the Federal Circuit, Ninth Circuit, and California Court of Appeal, as well as tried cases, argued motions, and managed all aspects of complex litigation. His cases involved diverse technologies in both "wet" and "dry" disciplines, and he excels at the critical skill of translating complex subject matter into a coherent story that can be digested by judges and juries.

In addition to intellectual property matters, Mr. Rotter has handled cases involving antitrust, securities, banking, real estate, government, business disputes, product liability, and professional liability. Mr. Rotter served as a law clerk to the Honorable Milan D. Smith, Jr., at the United

States Court of Appeals for the Ninth Circuit. He also served as a volunteer criminal prosecutor for the Los Angeles City Attorney's Office.

Mr. Rotter graduated with honors from Harvard Law School in 2004. He served as an editor of the Harvard Journal of Law & Technology, and was selected to be a Fellow in Law and Economics at the John M. Olin Center for Law, Economics, and Business, and a Fellow in Justice, Welfare, and Economics at the Weatherhead Center For International Affairs. He graduated with honors from the University of California, San Diego in 2000 with a B.S. in molecular biology and a B.A. in music.

Mr. Rotter is admitted to practice before the United States Patent & Trademark Office, the United States Courts of Appeals for the Ninth and Federal Circuits, and the United States District Courts for the Northern, Central, and Southern Districts of California. He has written extensively on intellectual property issues, and has been honored for his work with legal service organizations.

**DAVID J. STONE** has a broad background in complex commercial litigation, with particular focus on litigating corporate fiduciary claims, securities, and contract matters. Mr. Stone maintains a versatile practice in state and federal courts, representing clients in a wide-range of matters, including corporate derivative actions, securities class actions, litigating claims arising from master limited partnership "drop down" transactions, litigating consumer class actions (including data breach claims), litigating complex debt instruments, fraudulent conveyance actions, and appeals. Mr. Stone also has developed a specialized practice in litigation on behalf of post-bankruptcy confirmation trusts, including investigating and prosecuting D&O claims and general commercial litigation. In addition, Mr. Stone counsels clients on general business matters, including contract negotiation and corporate organization.

Mr. Stone graduated from Boston University School of Law in 1994 and was the Law Review Editor. He earned his B.A. at Tufts University in 1988, graduating *cum laude*. Following law school, Mr. Stone served as a clerk to the Honorable Joseph Tauro, then Chief Judge of the U.S. District Court for the District of Massachusetts. Prior to joining GPM, Mr. Stone practiced at international law firms Cravath, Swaine & Moore LLP, Morrison & Foerster LLP, and Greenberg Traurig LLP.

Mr. Stone is a member of the bar in New York and California, and is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York, the Northern, Southern, and Central Districts of California, and the Court of Appeals for the Second and Third Circuits.

**SUSAN G. KUPFER** is a partner in the Firm's Berkeley office. Ms. Kupfer joined the Firm in 2003 and received her A.B. degree from Mount Holyoke College in 1969 and her Juris Doctor degree from Boston University School of Law in 1973. She did graduate work at Harvard Law School and, in 1977, was named Assistant Dean and Director of Clinical Programs at Harvard, supervising and teaching in that program of legal practice and related academic components.

For much of her legal career, Ms. Kupfer has been a professor of law. Her areas of academic expertise are Civil Procedure, Federal Courts, Conflict of Laws, Constitutional Law, Legal

Ethics, and Jurisprudence. She has taught at Harvard Law School, Hastings College of the Law, Boston University School of Law, Golden Gate University School of Law, and Northeastern University School of Law. From 1991 through 2002, she was a lecturer on law at the University of California, Berkeley, Boalt Hall, teaching Civil Procedure and Conflict of Laws. Her publications include articles on federal civil rights litigation, legal ethics, and jurisprudence. She has also taught various aspects of practical legal and ethical training, including trial advocacy, negotiation, and legal ethics, to both law students and practicing attorneys.

Ms. Kupfer previously served as corporate counsel to The Architects Collaborative in Cambridge and San Francisco, and was the Executive Director of the Massachusetts Commission on Judicial Conduct. She returned to the practice of law in San Francisco with Morgenstein & Jubelirer and Berman DeValerio LLP before joining the Firm.

Ms. Kupfer's practice is concentrated in complex antitrust litigation. She has served as Co-Lead Counsel in several multidistrict antitrust cases: *In re Photochromic Lens Antitrust Litig.* (MDL 2173, M.D. Fla. 2010); *In re Fresh and Process Potatoes Antitrust Litig.* (D. Id. 2011); *In re Korean Air Lines Antitrust Litig.* (MDL No. 1891, C.D. Cal. 2007); *In re Urethane Antitrust Litig.* (MDL 1616, D. Kan. 2004); *In re Western States Wholesale Natural Gas Litig.* (MDL 1566, D. Nev. 2005); and *Sullivan v. DB Investments* (D.N.J. 2004). She has been a member of the lead counsel teams that achieved significant settlements in: *In re Sorbates Antitrust Litig.* ($96.5 million settlement); *In re Pillar Point Partners Antitrust Litig.* ($50 million settlement); and *In re Critical Path Sec. Litig.* ($17.5 million settlement).

Ms. Kupfer is a member of the bars of Massachusetts and California, and is admitted to practice before the United States District Courts for the Northern, Central, Eastern, and Southern Districts of California, the District of Massachusetts, the Courts of Appeals for the First and Ninth Circuits, and the U.S. Supreme Court.

**MARC L. GODINO** has extensive experience successfully litigating complex, class action lawsuits as a plaintiffs' lawyer. Mr. Godino has played a primary role in cases resulting in settlements of more than $100 million. He has prosecuted securities, derivative, merger & acquisition, and consumer cases throughout the country in both state and federal court, as well as represented defrauded investors at FINRA arbitrations. Mr. Godino manages the Firm's consumer class action department.

While an associate with Stull Stull & Brody, Mr. Godino was one of the two primary attorneys involved in *Small v. Fritz Co.*, 30 Cal. 4th 167 (2003), in which the California Supreme Court created new law in the State of California for shareholders that held shares in detrimental reliance on false statements made by corporate officers. The decision was widely covered by national media including *The National Law Journal*, the *Los Angeles Times*, the *New York Times*, and the *New York Law Journal*, among others, and was heralded as a significant victory for shareholders.

Recent successes with the Firm include: *In re Magma Design Automation, Inc. Sec. Litig.*, Case No. 05-2394 (N.D. Cal.) ($13,500,000 cash settlement for shareholders); *In re Hovnanian Enterprises, Inc. Sec. Litig.*, Case No. 08-cv-0099 (D.N.J.) ($4,000,000 cash settlement for shareholders); *In re Skilled Healthcare Group, Inc. Sec. Litig.*, Case No. 09-5416 (C.D. Cal.)

($3,000,000 cash settlement for shareholders); *Kelly v. Phiten USA, Inc.*, Case No. 11-67 (S.D. Iowa) ($3.2 million dollar cash settlement in addition to injunctive relief); *Shin v. BMW of North America*, 2009 WL 2163509 (C.D. Cal. July 16, 2009) (free replacement of cracked wheels); *Payday Advance Plus, Inc. v. MIVA, Inc.*, Case No. 06-1923 (S.D.N.Y.) ($3,936,812 cash settlement for class members); *Villefranche v. HSBC Bank Nevada, N.A.*, Case No. 09-3693 (C.D. Cal.) (100% recovery to class members); *Esslinger v. HSBC Bank Nevada, N.A.*, Case No. 10-03213 (E.D. Pa.) ($23.5 million settlement pending final approval); *In re Discover Payment Protection Plan Marketing and Sales Practices Litig.*, Case No. 10-06994 ($10.5 million settlement).

Other published decisions include: *In re 2TheMart.com Sec. Litig.*, 114 F. Supp. 2d 955 (C.D. Cal. 2002) (motion to dismiss denied); *In re Irvine Sensors Sec. Litig.*, 2003 U.S. Dist. LEXIS 18397 (C.D. Cal. 2003) (motion to dismiss denied); *Shin v. BMW of North America*, 2009 WL 2163509 (C.D. Cal. July 16, 2009) (motion to dismiss denied); *In re Toyota Motor Corp. Hybrid Brake Marketing, Sales, Practices and Products Liability Litig.*, 2011 WL 6189467 (C.D. Cal. Dec. 13, 2011) (motion to compel arbitration denied).

Mr. Godino received his undergraduate degree from Susquehanna University with a Bachelor of Science degree in Business Management. He received his Juris Doctor degree from Whittier Law School in 1995.

Mr. Godino is admitted to practice before the State of California, the United States District Courts for the Central, Northern, and Southern Districts of California, the District of Colorado, and the Ninth Circuit Court of Appeals.

**EX KANO S. SAMS II** earned his Bachelor of Arts degree in Political Science from the University of California Los Angeles.  Mr. Sams earned his Juris Doctor degree from the University of California Los Angeles School of Law, where he served as a member of the *UCLA Law Review*. After law school, Mr. Sams practiced class action civil rights litigation on behalf of plaintiffs. Subsequently, Mr. Sams was a partner at Coughlin Stoia Geller Rudman & Robbins LLP where his practice focused on securities and consumer class actions on behalf of investors and consumers.

Mr. Sams has served as lead counsel in dozens of securities class actions, shareholder derivative actions, and complex litigation cases throughout the United States.  In conjunction with the efforts of co-counsel, Mr. Sams briefed and successfully obtained the reversal in the Ninth Circuit of an order dismissing class action claims brought pursuant to Sections 11 and 15 of the Securities Act of 1933.  *Hemmer Group v. SouthWest Water Co.*, No 11-56154, 2013 WL 2460197 (9th Cir. June 7, 2013).  Mr. Sams assisted in a successful appeal before a Fifth Circuit panel in which the court unanimously vacated the lower court's denial of class certification, reversed the lower court's grant of summary judgment, and issued an important decision on the issue of loss causation in securities litigation: *Alaska Electrical Pension Fund v. Flowserve Corp.*, 572 F.3d 221 (5th Cir. 2009).  The case settled for $55 million.

Mr. Sams has also obtained other significant results. Notable examples include: *Forbush v. Goodale*, No. 33538/2011, 2013 WL 582255 (N.Y. Sup. Feb. 4, 2013) (denying motions to dismiss in a shareholder derivative action); *Curry v. Hansen Med.*, No. C 09-5094 CW, 2012 WL

3242447 (N.D. Cal. Aug. 10, 2012) (upholding securities fraud complaint; case settled for $8.5 million); *Wilkof v. Caraco Pharm. Labs.*, 280 F.R.D. 332 (E.D. Mich. 2012) (granting class certification); *Puskala v. Koss Corp.*, 799 F. Supp. 2d 941 (E.D. Wis. 2011) (upholding securities fraud complaint); *Mishkin v. Zynex Inc.*, Civil Action No. 09-cv-00780-REB-KLM, 2011 WL 1158715 (D. Colo. Mar. 30, 2011) (denying defendants' motion to dismiss securities fraud complaint); *Wilkof v. Caraco Pharm. Labs.*, No. 09-12830, 2010 WL 4184465 (E.D. Mich. Oct. 21, 2010) (upholding securities fraud complaint and cited favorably by the Eighth Circuit in *Public Pension Fund Grp. v. KV Pharm. Co.*, 679 F.3d 972, 981-82 (8th Cir. 2012)); and *Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-02204-PHX-FJM, 2009 WL 2151838 (D. Ariz. July 17, 2009) (granting class certification; case settled for $10 million).

Additionally, Mr. Sams has successfully represented consumers in class action litigation. Mr. Sams worked on nationwide litigation and a trial against major tobacco companies, and in statewide tobacco litigation that resulted in a $12.5 billion recovery for California cities and counties in a landmark settlement. He also was a principal attorney in a consumer class action against one of the largest banks in the country that resulted in a substantial recovery and a change in the company's business practices. Mr. Sams also participated in settlement negotiations on behalf of environmental organizations along with the United States Department of Justice and the Ohio Attorney General's Office that resulted in a consent decree requiring a company to perform remediation measures to address the effects of air and water pollution.

Mr. Sams is a member of the Los Angeles County Bar Association, the John M. Langston Bar Association, the Consumer Attorneys of California, the Association of Business Trial Lawyers, and Public Justice. Mr. Sams regularly volunteers at the Brookins Legal Clinic at Brookins Community A.M.E. Church to provide pro bono legal services to low-income and underrepresented individuals in South Central Los Angeles. Mr. Sams also serves as a mentor to law students through the John M. Langston Bar Association.

**CASEY E. SADLER** graduated from the University of Southern California, Gould School of Law and joined the Firm in 2010. While attending law school, Mr. Sadler externed for the Enforcement Division of the Securities and Exchange Commission, spent a summer working for P.H. Parekh & Co. -- one of the leading appellate law firms in New Delhi, India -- and was a member of USC's Hale Moot Court Honors Program.

Mr. Sadler is a partner in the Firm's Los Angeles office and he concentrates in securities and consumer litigation. Mr. Sadler is admitted to the State Bar of California, and the United States District Courts for the Northern, Southern, and Central Districts of California.

**JOSEPH D. COHEN** has extensive complex civil litigation experience, and currently oversees the firm's settlement department, negotiating, documenting, and obtaining court approval of the firm's securities, merger, and derivative settlements.

Prior to joining the firm, Mr. Cohen successfully prosecuted numerous securities fraud, consumer fraud, antitrust and constitutional law cases in federal and state courts throughout the country. Cases in which Mr. Cohen took a lead role include: *Jordan v. California Dep't of Motor Vehicles*, 100 Cal. App. 4th 431 (2002) (complex action in which the California Court of Appeal held that California's Non-Resident Vehicle $300 Smog Impact Fee violated the

Commerce Clause of the United States Constitution, paving the way for the creation of a $665 million fund and full refunds, with interest, to 1.7 million motorists); *In re Geodyne Res., Inc. Sec. Litig.* (Harris Cty. Tex.) (settlement of securities fraud class action, including related litigation, totaling over $200 million); *In re Cmty. Psychiatric Centers Sec. Litig.* (C.D. Cal.) (settlement of $55.5 million was obtained from the company and its auditors, Ernst & Young, LLP); *In re McLeodUSA Inc., Sec. Litig.* (N.D. Iowa) ($30 million settlement); *In re Arakis Energy Corp. Sec. Litig.* (E.D.N.Y.) ($24 million settlement); *In re Metris Cos., Inc., Sec. Litig.* (D. Minn.) ($7.5 million settlement); *In re Landry's Seafood Rest., Inc. Sec. Litig.* (S.D. Tex.) ($6 million settlement); and *Freedman v. Maspeth Fed. Loan and Savings Ass'n,* (E.D.N.Y.) (favorable resolution of issue of first impression under RESPA resulting in full recovery of improperly assessed late fees).

Mr. Cohen was also a member of the teams that obtained substantial recoveries in the following cases: *In re: Foreign Exchange Benchmark Rates Antitrust Litig.* (S.D.N.Y.) (partial settlements of approximately $2 billion); *In re Washington Mutual Mortgage-Backed Sec. Litig.* (W.D. Wash.) (settlement of $26 million); *Mylan Pharm., Inc. v. Warner Chilcott Public Ltd.* (E.D. Pa.) ($8 million recovery in antitrust action on behalf of class of indirect purchasers of the prescription drug Doryx); *City of Omaha Police and Fire Ret. Sys. v. LHC Group* (W.D. La.) (securities class action settlement of $7.85 million); and *In re Pacific Biosciences of Cal., Inc. Sec. Litig.* (Cal. Super. Ct.) ($7.6 million recovery).

In addition, Mr. Cohen was previously the head of the settlement department at Bernstein Litowitz Berger & Grossmann LLP. While at BLB&G, Mr. Cohen had primary responsibility for overseeing the team working on the following settlements, among others: *In Re Merck & Co., Inc. Sec., Deriv. & "ERISA" Litig.* (D.N.J.) ($1.062 billion securities class action settlement); *New York State Teachers' Ret. Sys. v. General Motors Co.* (E.D. Mich.) ($300 million securities class action settlement); *In re JPMorgan Chase & Co. Sec. Litig.* (S.D.N.Y.) ($150 million settlement); *Dep't of the Treasury of the State of N.J. and its Division of Inv. v. Cliffs Natural Res. Inc.* (N.D. Ohio) ($84 million); *In re Penn West Petroleum Ltd. Sec. Litig.* (S.D.N.Y.) ($19.76 million settlement); and *In re BioScrip, Inc. Sec. Litig.* ($10.9 million settlement).

**MATTHEW M. HOUSTON**, a partner in the firm's New York office, graduated from Boston University School of Law in 1988. Mr. Houston is an active member of the Bar of the State of New York and an inactive member of the bar for the Commonwealth of Massachusetts. Mr. Houston is also admitted to the United States District Courts for the Southern and Eastern Districts of New York and the District of Massachusetts, and the Second, Seventh, Ninth, and Eleventh Circuit Courts of Appeals of the United States. Mr. Houston repeatedly has been selected as a New York Metro Super Lawyer.

Mr. Houston has substantial courtroom experience involving complex actions in federal and state courts throughout the country. Mr. Houston was co-lead trial counsel in one the few ERISA class action cases taken to trial asserting breach of fiduciary duty claims against plan fiduciaries, *Brieger v. Tellabs, Inc.*, No. 06-CV-01882 (N.D. Ill.), and has successfully prosecuted many ERISA actions, including *In re Royal Ahold N.V. Securities and ERISA Litig.*, Civil Action No. 1:03-md-01539. Mr. Houston has been one of the principal attorneys litigating claims in multi-district litigation concerning employment classification of pickup and delivery drivers and primarily responsible for prosecuting ERISA class claims resulting in a $242,000,000 settlement;

*In re FedEx Ground Package Inc. Employment Practices Litig.*, No. 3:05-MD-527 (MDL 1700). Mr. Houston recently presented argument before the Eleventh Circuit Court of Appeals on behalf of a class of Florida pickup and delivery drivers obtaining a reversal of the lower court's grant of summary judgment.  Mr. Houston represented the interests of Nevada and Arkansas drivers employed by FedEx Ground obtaining significant recoveries on their behalf. Mr. Houston also served as lead counsel in multi-district class litigation seeking to modify insurance claims handling practices; *In re UnumProvident Corp. ERISA Benefits Denial Actions*, No. 1:03-cv-1000 (MDL 1552).

Mr. Houston has played a principal role in numerous derivative and class actions wherein substantial benefits were conferred upon plaintiffs: *In re: Groupon Deriv. Litig.*, No. 12-cv-5300 (N.D. Ill. 2012) (settlement of consolidated derivative action resulting in sweeping corporate governance reform estimated at $159 million); *Bangari v. Lesnik*, No. 11 CH 41973 (Illinois Circuit Court, County of Cook) (settlement of claim resulting in payment of $20 million to Career Education Corporation and implementation of extensive corporate governance reform); *In re Diamond Foods, Inc. Shareholder Litig.*, No. CGC-11-515895 (California Superior Court, County of San Francisco) ($10.4 million in monetary relief including a $5.4 million clawback of executive compensation and significant corporate governance reform); *Pace Amer. Shareholder Litig.*, 94-92 TUC-RMB (securities fraud class action settlement resulting in a recovery of $3.75 million); *In re Bay Finan. Sec. Litig.*, Master File No. 89-2377-DPW (D. Mass.) (settlement of action based upon federal securities law claims resulting in class recovery in excess of $3.9 million); and *Goldsmith v. Tech. Solutions Co.*, 92 C 4374 (N.D. Ill. 1992) (recovery of $4.6 million as a result of action alleging false and misleading statements regarding revenue recognition).

In addition to numerous employment and derivative cases, Mr. Houston has litigated actions asserting breach of fiduciary duty in the context of mergers and acquisitions. Mr. Houston has been responsible for securing millions of dollars in additional compensation and structural benefits for shareholders of target companies: *In re Instinet Group, Inc. Shareholders Litig.*, C.A. No. 1289 (Del. Ch.); *Jasinover v. The Rouse Co.*, Case No. 13-C-04-59594 (Maryland Circuit Court); *McLaughlin v. Household Int'l, Inc.*, Case No. 02 CH 20683 (Ill. Circuit Court); *Sebesta v. The Quizno's Corp.*, Case No. 2001 CV 6281 (Col. District Court); *Crandon Capital Partners v. Kimmel*, C.A. No. 14998 (Del. Ch.); and *Crandon Capital Partners v. Kimmel*, C.A. No. 14998 (Del. Ch. 1996) (settlement whereby acquiring company provided an additional $10.4 million in merger consideration).

**DANIELLA QUITT**, a partner in the firm's New York office, graduated from Fordham University School of Law in 1988, is a member of the Bar of the State of New York, and is also admitted to the United States District Courts for the Southern and Eastern Districts of New York and the United States Courts of Appeals for the Second, Fifth, and Ninth Circuits.

Ms. Quitt has extensive experience in successfully litigating complex class actions from inception to trial and has played a significant role in numerous actions wherein substantial benefits were conferred upon plaintiff shareholders, such as *In re Safety-Kleen Corp. Stockholders Litig.* (D.S.C.) (settlement fund of $44.5 million); *In re Laidlaw Stockholders Litig.* (D.S.C.) (settlement fund of $24 million); *In re UNUMProvident Corp. Sec. Litig.* (D. Me.) (settlement fund of $45 million); *In re Harnischfeger Ind.* (E.D. Wisc.) (settlement fund of $10.1

million); *In re Oxford Health Plans, Inc. Deriv. Litig.* (S.D.N.Y.) (settlement benefit of $13.7 million and corporate therapeutics); *In re JWP Inc. Sec. Litig.* (S.D.N.Y.) (settlement fund of $37 million); *In re Home Shopping Network, Inc., Deriv. Litig.* (S.D. Fla.) (settlement benefit in excess of $20 million); *In re Graham-Field Health Products, Inc. Sec. Litig.* (S.D.N.Y.) (settlement fund of $5.65 million); *Benjamin v. Carusona* (E.D.N.Y.) (prosecuted action on behalf of minority shareholders which resulted in a change of control from majority-controlled management); *In re Rexel Shareholder Litig.* (Sup. Ct. N.Y. County) (settlement benefit in excess of $38 million); and *Croyden Assoc. v. Tesoro Petroleum Corp.* (Del. Ch.) (settlement benefit of $19.2 million).

In connection with the settlement of *Alessi v. Beracha*, (Del. Ch.), a class action brought on behalf of the former minority shareholders of Earthgrains, Chancellor Chandler commented: "I give credit where credit is due, Ms. Quitt. You did a good job and got a good result, and you should be proud of it."

Ms. Quitt has focused her practice on shareholder rights and ERISA class actions but also handles general commercial and consumer litigation. Ms. Quitt serves as a member of the S.D.N.Y. ADR Panel and has been consistently selected as a New York Metro Super Lawyer.

**BENJAMIN I. SACHS-MICHAELS**, a partner in the firm's New York office, graduated from Benjamin N. Cardozo School of Law in 2011. His practice focuses on shareholder derivative litigation and class actions on behalf of shareholders and consumers.

While in law school, Mr. Sachs-Michaels served as a judicial intern to Senior United States District Judge Thomas J. McAvoy in the United States District Court for the Northern District of New York and was a member of the Cardozo Journal of Conflict Resolution.

Mr. Sachs-Michaels is a member of the Bar of the State of New York. He is also admitted to the United States District Courts for the Southern and Eastern Districts of New York and the United States Court of Appeals for the Second Circuit.

**SENIOR COUNSEL**

**JASON L. KRAJCER** is senior counsel in the firm's Los Angeles office. He specializes in complex securities cases and has extensive experience in all phases of litigation (fact investigation, pre-trial motion practice, discovery, trial, and appeal).

Prior to joining Glancy Prongay & Murray LLP, Mr. Krajcer was an associate at Goodwin Procter LLP where he represented issuers, officers, and directors in multi-hundred million and billion dollar securities cases. He began his legal career at Orrick, Herrington & Sutcliffe LLP, where he represented issuers, officers, and directors in securities class actions, shareholder derivative actions, and matters before the SEC.

Mr. Krajcer is admitted to the State Bar of California, the Bar of the District of Columbia, the United States Supreme Court, the Ninth Circuit Court of Appeals, and the United States District Courts for the Central and Southern Districts of California.

## ASSOCIATES

**GARTH A. SPENCER** joined the firm in 2016 and is based in the Los Angeles office. His work includes securities, antitrust, and consumer litigation. Mr. Spencer also works on whistleblower matters. Mr. Spencer received his B.A. in Mathematics from Grinnell College in 2006. He received his J.D. in 2011 from Duke University School of Law, where he was a staff editor on the Duke Law Journal. From 2011 until 2014 he worked in the tax group of a large, international law firm. Since 2014 he has worked on tax whistleblower matters. Immediately prior to joining Glancy Prongay & Murray, Mr. Spencer attended New York University where he received an LL.M. in Taxation.

**THOMAS J. KENNEDY** works out of the New York office, where he concentrates on securities, antitrust, and consumer litigation. He received a Juris Doctor degree from St. John's University School of Law in 1995. At St. John's, he was a member of the ST. JOHN'S JOURNAL OF LEGAL COMMENTARY. Mr. Kenned graduated from Miami University in 1992 with a Bachelor of Science degree in Accounting and has passed the CPA exam. Mr. Kennedy was previously associated with the law firm Murray Frank LLP.

**LEANNE HEINE SOLISH** joined Glancy Prongay & Murray LLP in 2012. Ms. Solish graduated *summa cum laude* from Tulane University with a B.S.M. in Accounting and Finance in 2007, and she received her J.D. from the University of Texas School of Law in 2011. While attending law school, Ms. Solish was an editor for the Texas International Law Journal, a student attorney for the Immigration and Worker Rights Clinics, and she externed with MALDEF and the Texas Civil Rights Project. Ms. Solish is a member of the Beta Gamma Sigma Business Honors Society. She is a registered CPA in Illinois and was admitted to the California State Bar in 2011.

**CHRISTOPHER FALLON** joined the firm in 2013 specializing in securities, consumer, and anti-trust litigation. Prior to joining the firm, Mr. Fallon was a contract attorney with O'Melveny & Myers LLP working on anti-trust and business litigation disputes. He is a Certified E-Discovery Specialist through the Association of Certified E-Discovery Specialists (ACEDS).

Mr. Fallon earned his J.D. and a Certificate in Dispute Resolution from Pepperdine Law School in 2004. While attending law school, Mr. Fallon worked at the Pepperdine Special Education Advocacy Clinic and interned with the Rhode Island Office of the Attorney General. Prior to attending law school, he graduated from Boston College with a Bachelor of Arts in Economics and a minor in Irish Studies, then served as Deputy Campaign Finance Director on a U.S. Senate campaign.

**CHARLES H. LINEHAN** joined the Firm in 2015. Mr. Linehan graduated *summa cum laude* from the University of California, Los Angeles with a Bachelor of Arts degree in Philosophy and a minor in Mathematics. Mr. Linehan received his Juris Doctor degree from the UCLA School of Law, where he was a member of the UCLA Moot Court Honors Board. While attending law school, Mr. Linehan participated in the school's First Amendment Amicus Brief Clinic (now the

Scott & Cyan Banister First Amendment Clinic) where he worked with nationally recognized scholars and civil rights organizations to draft amicus briefs on various Free Speech issues.

**MELISSA WRIGHT** joined the Firm in 2014. Melissa received her J.D. from the UC Davis School of Law in 2012, where she was a board member of Tax Law Society and externed for the California Board of Equalization's Tax Appeals Assistance Program focusing on consumer use tax issues. Melissa also graduated from NYU School of Law, where she received her LL.M. in Taxation in 2013.

**NATALIE S. PANG** is an associate in the firm's Los Angeles office. Ms. Pang has advocated on behalf of thousands of consumers during her career. Ms. Pang has extensive experience in case management and all facets of litigation: from a case's inception through the discovery process–including taking and defending depositions and preparing witnesses for depositions and trial–mediation and settlement negotiations, pretrial motion work, trial and post-trial motion work.

Prior to joining the firm, Ms. Pang lead the mass torts department of her last firm, where she managed the cases of over two thousand individual clients. There, Ms. Pang worked on a wide variety of complex state and federal matters which included cases involving pharmaceutical drugs, medical devices, auto defects, toxic torts, false advertising, and uninhabitable conditions. Ms. Pang was also trial counsel in the notable case, *Acosta et al. v. City of Long Beach et al.* (BC591412) which was brought on behalf of residents of a mobile home park built on a former trash dump and resulted in a $39.5 million verdict after an eleven-week jury trial in Los Angeles Superior Court.

Ms. Pang received her J.D. from Loyola Law School. While in law school, Ms. Pang received a Top 10 Brief Award as a Scott Moot Court competitor, was chosen to be a member of the Scott Moot Court Honor's Board, and competed as a member of the National Moot Court Team. Ms. Pang was also a Staffer and subsequently an Editor for Loyola's Entertainment Law Review as well as a Loyola Writing Tutor. During law school, Ms. Pang served as an extern for: the Hon. Rolf Treu (Los Angeles Superior Court), the Los Angeles City Attorney's Office, and the Federal Public Defender's Office. Ms. Pang obtained her undergraduate degree from the University of Southern California and worked in the healthcare industry prior to pursuing her career in law.

**PAVITHRA RAJESH** is a litigation associate in the firm's Los Angeles office. She specializes in fact discovery, including pre-litigation investigation, and develops legal theories in securities, derivative, and privacy-related matters.

Ms. Rajesh has unique writing experience from her judicial externship for the Patent Pilot Program in the United States District Court for the Central District of California, where she worked closely with the Clerk and judges in the program on patent cases. Drawing from this experience, Ms. Rajesh is passionate about expanding the firm's Intellectual Property practice, and she engages with experts to understand complex technology in a wide range of patents, including network security and videogame electronics.

Ms. Rajesh graduated from University of California, Santa Barbara with a Bachelor of Science degree in Mathematics and a Bachelor of Arts degree in Psychology. She received her Juris Doctor degree from UCLA School of Law. While in law school, Ms. Rajesh was an Associate Editor for the UCLA Law Review.

**RAY D. SULENTIC** prosecutes complex class actions for GPM. He enjoys advocating for investors because he used to be one. Before law school, Mr. Sulentic worked on Wall Street for roughly a decade—on both the buy-side, and the sell-side. His experience includes working as a former Director of Investments for a private equity fund; a special situations analyst for a $10.0 billion multi-asset class hedge fund; and as a sell-side equity and commodity analyst for Bear Stearns & Co. Inc. While at Bear Stearns, Mr. Sulentic's investment analysis was featured in Barron's.

Since leaving the investment world, Mr. Sulentic received his early legal training from one of the largest law firms in the world, where he defended multinational corporations in securities suits and government investigations.

While in law school, Mr. Sulentic authored several seminar papers on securities law topics including on: whether SLUSA conferred exclusive jurisdiction to federal courts deciding cases under the Securities Act of 1933; how to overcome a corporation's unilaterally adopted bylaw amendment purporting to confer exclusive forum in Delaware; and on the proliferation of appraisal arbitrage actions and whether public policy supports the Delaware Court of Chancery's role as an arbiter of market value.

He holds a B.S.M. in Finance from Tulane University; an M.B.A. with a concentration in Finance from Georgetown University; and a J.D. from the UCLA School of Law. The synergy of his finance and legal education and experience makes him well-suited for disputes related to complex accounting frauds, market manipulation matters, valuation disputes, and damages.

**OF COUNSEL**

**PETER A. BINKOW** has prosecuted lawsuits on behalf of consumers and investors in state and federal courts throughout the United States. He served as Lead or Co-Lead Counsel in many class action cases, including: *In re Mercury Interactive Sec. Litig.* ($117.5 million recovery); *Schleicher v. Wendt* (Conseco Securities litigation - $41.5 million recovery); *Lapin v Goldman Sachs* ($29 million recovery); *In re Heritage Bond Litigation* ($28 million recovery); *In re National Techteam Sec. Litig.* ($11 million recovery for investors); *In re Lason Inc. Sec. Litig.* ($12.68 million recovery), *In re ESC Medical Systems, Ltd. Sec. Litig.* ($17 million recovery); and many others. In *Schleicher v Wendt*, Mr. Binkow successfully argued the seminal Seventh Circuit case on class certification, in an opinion authored by Chief Judge Frank Easterbrook. He has argued and/or prepared appeals before the Ninth Circuit, Seventh Circuit, Sixth Circuit, and Second Circuit Courts of Appeals.

Mr. Binkow joined the Firm in 1994, became a partner in 2002, and took Of Counsel status in 2015. Mr. Binkow obtained a Bachelor of Arts degree from the University of Michigan in 1988 and a Juris Doctor degree from the University of Southern California in 1994.

**MARK S. GREENSTONE** concentrates on consumer, financial fraud, and employment-related class actions. Possessing significant law and motion and trial experience, Mr. Greenstone has represented clients in multi-million dollar disputes in California state and federal courts, as well as the Court of Federal Claims in Washington, D.C.

Mr. Greenstone received his training as an associate at Sheppard, Mullin, Richter & Hampton LLP where he specialized in complex business litigation relating to investment management, government contracts and real estate. Upon leaving Sheppard Mullin, Mr. Greenstone founded an internet-based company offering retail items on multiple platforms nationwide. He thereafter returned to law bringing a combination of business and legal skills to his practice.

Mr. Greenstone graduated Order of the Coif from the UCLA School of Law. He also received his undergraduate degree in Political Science from UCLA, where he graduated Magna Cum Laude and was inducted into the Phi Beta Kappa honor society.

Mr. Greenstone is a member of the Consumer Attorneys Association of Los Angeles, the Santa Monica Bar Association and the Beverly Hills Bar Association. He is admitted to practice in state and federal courts throughout California.

**ROBERT I. HARWOOD** graduated from William and Mary Law School in 1971, and has specialized in securities law and securities litigation since beginning his career in 1972 at the Enforcement Division of the New York Stock Exchange. Mr. Harwood was a founding member of Harwood Feffer LLP. He has prosecuted numerous securities, class, derivative, and ERISA actions. He is a member of the Trial Lawyers' Section of the New York State Bar Association and has served as a guest lecturer at trial advocacy programs sponsored by the Practicing Law Institute. In a statewide survey of his legal peers published by Super Lawyers Magazine, Mr. Harwood has been consistently selected as a "New York Metro Super Lawyer." Super Lawyers are the top five percent of attorneys in New York, as chosen by their peers and through the independent research. He is also a Member of the Board of Directors of the MFY Legal Services Inc., which provides free legal representation in civil matters to the poor and the mentally ill in New York City. Since 1999, Mr. Harwood has also served as a Village Justice for the Village of Dobbs Ferry, New York.

Commenting on Mr. Harwood's abilities, in *In re Royal Dutch/Shell Transport ERISA Litig.*, (D.N.J.), Judge Bissell stated: "the Court knows the attorneys in the firms involved in this matter and they are highly experienced and highly skilled in matters of this kind. Moreover, in this case it showed. Those efforts were vigorous, imaginative and prompt in reaching the settlement of this matter with a minimal amount of discovery . . . . So both skill and efficiency were brought to the table here by counsel, no doubt about that."

Likewise, Judge Hurley stated in connection with *In re Olsten Corp. Sec. Litig.*, No. 97 CV-5056 (E.D.N.Y. Aug. 31, 2001), wherein a settlement fund of $24.1 million was created: "The quality of representation here I think has been excellent." Mr. Harwood was lead attorney in *Meritt v. Eckerd*, No. 86 Civ. 1222 (E.D.N.Y. May 30, 1986), where then-Chief Judge Weinstein observed that counsel conducted the litigation with "speed and skill" resulting in a settlement having a value "in the order of $20 Million Dollars." Mr. Harwood prosecuted the *Hoeniger v. Aylsworth* class action litigation in the United States District Court for the Western District of Texas (No.

SA-86-CA-939), which resulted in a settlement fund of $18 million. Mr. Harwood served as co-lead counsel in *In Re Interco Inc. Shareholders Litig.*, Consolidated C.A. No. 10111 (Del. Ch.) (May 25, 1990), resulting in a settlement of $18.5 million, where V.C. Berger found, "This is a case that has an extensive record that establishes it was very hard fought. There were intense efforts made by plaintiffs' attorneys and those efforts bore very significant fruit in the face of serious questions as to ultimate success on the merits."

Mr. Harwood served as lead counsel in *Morse v. McWhorter* (M.D. Tenn.), in which a settlement fund of $49.5 million was created for the benefit of the Class, as well as *In re Bank One Sec. Litig.*, (N.D. Ill.), which resulted in the creation of a $45 million settlement fund. Mr. Harwood also served as co-lead counsel in *In re Safety-Kleen Corp. Stockholders Litig.* (D.S.C.), which resulted in a settlement fund of $44.5 million; *In re Laidlaw Stockholders Litig.* (D.S.C.), which resulted in a settlement fund of $24 million; *In re AIG ERISA Litig.* (S.D.N.Y.), which resulted in a settlement fund of $24.2 million; *In re JWP Inc. Sec. Litig.* (S.D.N.Y.), which resulted in a $37 million settlement fund; *In re Oxford Health Plans, Inc. Deriv. Litig.* (S.D.N.Y.), which resulted in a settlement benefit of $13.7 million and corporate therapeutics; and *In re UNUMProvident Corp. Sec. Litig.* (D. Me.), which resulted in the creation of settlement fund of $45 million. Mr. Harwood was also one of the lead attorneys in litigating claims in *In re FedEx Ground Package Inc. Employment Practices Litig.*, No. 3:05-MD-527 (MDL 1700), a multi-district litigation concerning employment classification of pickup and delivery drivers which resulted in a $242,000,000 settlement.

# **EXHIBIT 2**

**Exhibit 2**

In re Zetia Antitrust Litigation

**GLANCY PRONGAY & MURRAY LLP**

| Attorney | Rate | Hours | Lodestar |
|---|---|---|---|
| Brian Murray | 925 | 0.8 | 740 |
| Lee Albert | 925 | 87.3 | 80752.5 |
| Greg Linkh | 800 | 205.5 | 164400 |
| Brian Brooks | 800 | 1,391.20 | 1112960 |
| Jared Pitt | 350 | 207.7 | 72695 |
| William Burakoff | 350 | 198.8 | 69580 |
| Totals | | **2091.3** | **1501128** |

# **<u>EXHIBIT 3</u>**

EXHIBIT 3

In re Zetia Antitrust Litigation

GLANCY PRONGAY & MURRAY LLP

EXPENSE REPORT

Inception through March 31, 2023

| CATEGORY | AMOUNT INCURRED |
|---|---|
| Assessments (Litigation Fund Payment) | $20,000 |
| Court Fees (Filing, etc.) | $644 |
| Experts/Consultants | $ |
| Delivery/Postage/Messenger | $0.47 |
| Transcripts (Hearing, Depositions, etc.) | $ |
| Travel (Airfare, Meals, Lodging) | $226.50 |
| Online Research | $1,322.84 |
| **TOTAL** | **$22,193.81** |

# EXHIBIT E

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | |
|---|---|
| IN RE: ZETIA (EZETIMIBE) ANTITRUST LITIGATION | MDL No. 2836<br>No. 2:18-md-2836- RBS-DEM |

## DECLARATION OF MARC H. EDELSON IN SUPPORT OF
## END-PAYOR CLASS'S MOTION FOR FINAL APPROVAL OF SETTLEMENT, AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARD

I, Marc H. Edelson, declare as follows:

1.       I am an attorney licensed to practice before the courts of the State Of New York and the Commonwealth of Pennsylvania, and am a partner at Edelson & Associates, LLC ("Edelson" or the "Firm"). I have personal knowledge of the facts stated in this Declaration and, if called as a witness, I would testify competently to them. I make this Declaration in support of Edelson's request for attorneys' fees and reimbursement of litigation expenses, as set forth in End-Payor Class's Motion for Preliminary Approval Of Proposed Settlement, Approval Of The Form And Manner Of Notice To The Class, and Proposed Schedule For A Fairness Hearing. I am counsel of record in this case for Plaintiff, Philadelphia Federation of Teachers Health & Welfare Fund ("PFTHW").

2.       A brief description of my firm, which includes a short summary of my experience and credentials, is attached as Exhibit 1 and incorporated herein by reference.

3.       Throughout the course of this litigation, my firm kept files contemporaneously documenting all time spent, including tasks performed, and expenses incurred, and provided those reports monthly to Marvin A. Miller, one of End-Payor Plaintiffs' ("EPP") Co-Lead Counsel. All

1

the time and expenses reported by my firm advanced were reasonably necessary for the prosecution of this case in order to achieve the class-wide results obtained for the benefit of the EPP Class.

0.      The Firm performed extensive document review, drafted discovery responses on behalf of PFTHW and prepared and attended the deposition of the corporate designee for PFHTW.

1.      The schedule attached as Exhibit 2, prepared from contemporaneous time records regularly prepared and maintained by my firm and incorporated herein, is a summary of the amount of time spent by my firm's partners, attorneys, and professional support staff who were involved in this litigation. It does not include any time devoted to preparing this Declaration or otherwise pertaining to the request for an award of attorney's fees and reimbursement of expenses. The lodestar calculation is based on my firm's historical billing rates agreed to by hourly-fee paying clients or submitted to other courts for which compensation was requested. The total number of hours reasonably expended on this litigation by my firm from inception through March 31, 2023, which does not include time spent preparing this Declaration, is 1575.8 hours. The total lodestar for my firm at historic rates is $614,245.00. Expense items are billed separately and are not duplicated in my firm's lodestar. Those records have been provided to Class Counsel and I authorize them to be submitted for *in camera* inspection by the Court, if necessary.

2.      The expenses my firm incurred in litigating this action are reflected in the books and records of my firm. These books and records are prepared from expense vouchers, invoices, receipts, check records, and other source materials and accurately reflect the expenses incurred. My firm's expense records are available for inspection by the Court if necessary.

3.      My firm incurred a total of $20,214.00 in unreimbursed expenses, all of which were reasonable and necessary for the prosecution of this litigation. Of this amount, $20,000.00 was for assessment payments for common litigation expenses or direct payments to experts or other

venders made at the request of Co-Lead Counsel or as directed by me, and an additional $214.00 was for non-common litigation expenses incurred by my firm, such as filing fees, on-line PACER research, electronic legal research, meals, parking, copying, telephone, etc. A summary of those expenses by category is attached as Exhibit 3.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 1st day of May, 2023, in Newtown, Pennsylvania.

s/

Marc H.Edelson

# EXHIBIT 1

**EXHIBIT 1**

**BIOGRAPHY OF & EDELSON & ASSOCIATES, LLC**

Edelson & Associates, LLC has been engaged in the practice of complex and class action

litigation since 2003.  Prior to forming Edelson & Associates, LLC, Marc H. Edelson was the

founder and managing partner of Hoffman & Edelson, LLC which focused on class action

litigation exclusively since its formation in 1990.

As a partner at Hoffman & Edelson, LLC, Marc Edelson has served as lead counsel or as a

member of the Executive Committee in numerous important cases including:

> In re Pharmaceutical Industry Average Wholesale Price Litigation: MDL 1456,
> Civil Action No. 01-CV-12257, United States District Court for the District of
> Massachusetts (co-lead counsel)
>
> In re Copper Antitrust Litigation: MDL Docket No. 1303
> United States District Court for the Western District of Wisconsin (member of executive
> committee)
>
> In re Western States Wholesale Natural Gas Antitrust Litigation, MDL-1566, Civil Action
> No. 2:03-cv-01431 United States District Court for the District of Nevada (co-lead
> counsel)
>
> In re Ciprofloxacin Hydrochloride Antitrust Litigation
> MDL-001383, United States District Court
> Eastern District of New York (co-lead counsel)
>
> In re Premarin Antitrust Litigation Civil Action No. 1:01cv447
> United States District Court for the Southern District of Ohio
> Western Division at Cincinnati (co-lead counsel)
>
> Elizabeth Blevins v. Wyeth-Ayerst Laboratories, Inc., No. 324380,
> Superior Court of the State of CA, County of San Francisco (co-lead counsel)
>
> Denise Roberts v. Fleet Bank (RI), National Association and
> Fleet Credit Card Services, L.P., Civil Action, No. 00-CV-6142.
> In the United States District Court for the Eastern District of PA
> United States Court of Appeals for the Third Circuit, No. 01-442 (co-lead counsel)
>
> Jason Tesauro and Elizabeth Eley v. The Quigley Corporation,
> No. 00-1011, Philadelphia County, Court of Common Pleas (co-lead counsel)

Lyndah Wise v. Union Acceptance Corporation, No. 01-C-8479
United States District Court for the Northern District of Illinois (co-lead counsel)

Rudi Rodriguez v. Ford Motor Credit Company, Case No. 01-C 8526
United States District Court for the Northern District of Illinois (co-lead counsel)

Joseph and Cynthia Papa v. General Electric Capital Mortgage Services, Inc.,
Superior Court of New Jersey, Camden County, Docket No. L-5311-97 (co-lead counsel)

Renee C. Pegram et al. v. Beneficial Corp., Superior Court of New Jersey-Law
Division-Camden County, Docket No. L-8308-97 (co-lead counsel)

Karen and Barry Gartland v. Beneficial Corp., Beneficial Management Corp.
Of America, and Beneficial Consumer Discount Company, Court of Common
Pleas, Philadelphia County, No. 1535 (co-lead counsel)

Eric Schonning v. Abit (USA) Computer Corporation, Superior Court of the State of
California, County of Alameda, Case No. RGO3109308 (co-lead counsel)

Edelson & Associates, LLC has served as lead counsel in the following cases:

New England Carpenters Health Benefits Fund et al. v. First DataBank, Inc. and Mckesson
Corp., Civil Action No. 1:05-cv-11148, United States District Court for the District of
Massachusetts (settled for $350 million) (co-lead counsel)

Electronic Connections Services, Corp. v. MSI Computer Corp., et al., Superior Court of
the State of California, County of Los Angeles, Case No. BC316232 (settled) (lead
counsel)

Eric Schonning v. Jetway Computer Corp., Superior Court State of California, County of
Alameda, Case No.: RG05-214870 (settled) (lead counsel)

Electronic Connection Services Corp. v. MSI Computer Corp., Superior Court of the
State of California, County of Los Angeles, Case No.: RG316232 (settled) (lead counsel)

Gerald J. Normandin, Jr. v. Soyo Group, Inc., Superior Court of the State of California,
County of San Bernandino, Rancho Cucomonga, Case No.: RCV082128 (settled) (lead
counsel)
In Re HELOC Minimum Payment Calculation Litigation, Case No. 15-cv-00267, United
States District Court Eastern District of Pennsylvania (settled) (co-lead counsel)

Edelson & Associates, LLC has served on the Executive Committee of the following

cases:

In re Certainteed Corp. Roofing Shingle Product Liability Litigation, United States
District Court Eastern District of Pennsylvania, MDL Docket No. 1817 (settled)

In re HP Inkjet Printer Litigation, United States District Court Northern District of California (San Jose Division) Case No.: C053580JF (settled)

In addition to the above, Edelson & Associates, LLC is involved in numerous other cases in which it has no defined official title.

Marc H. Edelson is the founder of Edelson & Associates, LLC. Mr. Edelson is a graduate of The Wharton School of The University of Pennsylvania (B.S. 1984 cum laude) and The University of California, Los Angeles School of Law (J.D. 1987). Mr. Edelson is admitted to practice in New York (admitted 1988) and Pennsylvania (admitted 1988).

Liberato P. Verderame is the senior associate at Edelson & Associates, LLC. Mr. Verderame attended Villanova University (B.A., 1994) and Villanova University School of Law (J.D., 1997). Since then he has litigated cases in Federal Courts nationwide and has litigated successful appeals in both Pennsylvania's Commonwealth and Superior Courts and New Jersey's Appellate Division.

Since joining Edelson and Associates in 2005, he has represented plaintiffs in several national class action cases including:

In Re: Generic Pharmaceuticals Pricing Antitrust Litigation, MDL No. 2724 (E.D. Pa.)

Pharmaceutical Industry Average Wholesale Price Litigation, MDL No. 1456 (D. Mass.)

In Re: Refrigerant Compressors Antitrust Litigation, MDL 2042 (E.D. Mich.)

In Re: Western Areas Wholesale Natural Gas Antitrust Litigation, MDL-1566 (D. Nev.) In Re: Yahoo! Litigation, 06-cv-2737 (C.D. Cal.)

Kent v. Hewlett-Packard Company, 5:09-cv-05341 (N.D. Cal.)

New England Carpenters Health Benefits Fund v. First Databank, Inc., 1:05-cv-11148 (D. Mass.)

OSB Antitrust Litigation, 06-CV-00826 (E.D. Pa.)

<u>In re Certainteed Corp. Roofing Shingle Product Liability Litigation</u>, MDL Docket No.
1817 (E.D. Pa.)

<u>Morris v. ADT Security Services, Inc.</u>, No. 07-cv-80950 (S.D. Fla.)

<u>Nygren et al. v. Hewlett-Packard Company</u>, No. 07-5793 (N.D. Cal.)

and

<u>Leeds v. IKO Manufacturing, Inc.</u>, No: 2:17-cv-00339 (E.D. Pa.).


Mr. Verderame also represents individual plaintiffs with regard to insurance coverage,
breach of contract and bad faith claims, personal injury and other matters.  He serves as lead trial
counsel and recently obtained a jury verdict which was the largest insurance coverage claim
reported in VerdictSearch, Pennsylvania, during 2016.

Sati Gibson is an associate at the firm since 1999. Ms. Gibson attended Oberlin College
(B.A. 1999) and Boston College School of Law (J.D. 2002). Ms. Gibson concentrates her practice
in antitrust and consumer matters.

# EXHIBIT 2

**EXHIBIT 2**

*In re Zetia Antitrust Litigation*
Edelson & Associates, LLC
Time Report
Inception through 4/19/2023

| Attorney | Rate | Hours | Lodestar |
|---|---|---|---|
| Marc Edelson | $900.00 | 0.9 | $810.00 |
| Marc Edelson | $850.00 | 3.9 | $3,315.00 |
| Marc Edelson | $800.00 | 123.1 | $98.480.00 |
| Liberato Verderame | $600.00 | 19.5 | $11,700.00 |
| Charles Mangan | $350.00 | 1428.4 | $499,940.00 |
| | | | |
| **Totals** | | 1575.8 | $614,245,00 |

# **<u>EXHIBIT 3</u>**

**EXHIBIT 3**

*In re Zetia Antitrust Litigation*
Edelson & Associates, LLC
Expense Report
Inception through 4/19/2023

| Category | Amount Incurred |
|---|---|
| Assessments (Litigation Fund Payment) | $20,000.00 |
| Court Fees (Filing, etc). | $150.00 |
| Experts/Consultants | $0.00 |
| Delivery/Postage/Messenger | $0.00 |
| Transcripts (Hearing, Depositions, etc). | $0.00 |
| Travel (Airfaire, Meals, Lodging) | $64.99 |
| Other | $0.00 |
| **Total** | **$20,214.00** |

# **EXHIBIT F**

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | |
|---|---|
| IN RE: ZETIA (EZETIMIBE) ANTITRUST LITIGATION | MDL No. 2836 <br> No. 2:18-md-2836- RBS-DEM |

### DECLARATION OF ROBERT G. EISLER IN SUPPORT OF
### END-PAYOR CLASS'S MOTION FOR FINAL APPROVAL OF SETTLEMENT,
### AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

I, Robert G. Eisler, declare as follows:

1.      I am an attorney licensed to practice before the courts of the Commonwealth of Pennsylvania and the State of New York, and am a member of the firm of Grant & Eisenhofer P.A. I have personal knowledge of the facts stated in this Declaration and, if called as a witness, I would testify competently to them. I make this Declaration in support of Grant & Eisenhofer's request for attorneys' fees and reimbursement of litigation expenses, as set forth in End-Payor Class's Motion For Preliminary Approval Of Proposed Settlement, Approval Of The Form And Manner Of Notice To The Class, and Proposed Schedule For A Fairness Hearing.  I am counsel of record in this case for Plaintiff, Law Enforcement Health Benefits, Inc.

2.      A brief description of my firm, which includes a short summary of my experience and credentials, is attached as Exhibit 1 and incorporated herein by reference.

3.      Throughout the course of this litigation, my firm kept files contemporaneously documenting all time spent, including tasks performed, and expenses incurred, and provided those reports monthly to Marvin A. Miller, one of End-Payor Plaintiffs' ("EPP") Co-Lead Counsel. All the time and expenses reported by my firm advanced were reasonably necessary for the prosecution of this case in order to achieve the class-wide results obtained for the benefit of the EPP Class.

4.      My Firm researched and drafted an initial Complaint in this action, worked with our client on obtaining relevant transactional data and worked on a response to motions to dismiss.

5.      The schedule attached as Exhibit 2, prepared from contemporaneous time records regularly prepared and maintained by my firm and incorporated herein, is a summary of the amount of time spent by my firm's partners, attorneys, and professional support staff who were involved in this litigation. It does not include any time devoted to preparing this Declaration or otherwise pertaining to the request for an award of attorney's fees and reimbursement of expenses. The lodestar calculation is based on my firm's historical billing rates agreed to by hourly-fee paying clients or submitted to other courts for which compensation was requested. The total number of hours reasonably expended on this litigation by my firm from inception through March 31, 2023, which does not include time spent preparing this Declaration, is 472.80 hours. The total lodestar for my firm at historic rates is $309,709.50. Expense items are billed separately and are not duplicated in my firm's lodestar. Those records have been provided to Class Counsel and I authorize them to be submitted for *in camera* inspection by the Court, if necessary.

6.      The expenses my firm incurred in litigating this action are reflected in the books and records of my firm. These books and records are prepared from expense vouchers, invoices, receipts, check records, and other source materials and accurately reflect the expenses incurred. My firm's expense records are available for inspection by the Court if necessary.

7.      My firm incurred a total of $2,831.21 in unreimbursed expenses, all of which were reasonable and necessary for the prosecution of this litigation. These expenses were for non-common litigation expenses incurred by my firm, such as filing fees, on-line PACER research, electronic legal research, meals, parking, copying, telephone, etc. A summary of those expenses by category is attached as Exhibit 3.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 4th

day of May, 2023 in Wilmington, Delaware.

Robert G. Eisler

# **EXHIBIT 1**

 Grant & Eisenhofer

## FIRM BIOGRAPHY

Grant & Eisenhofer P.A. ("G&E") concentrates on federal securities and corporate governance litigation and other complex class litigation. With approximately 70 attorneys, G&E primarily represents domestic and foreign institutional investors, both public and private, who have been damaged by corporate fraud, greed and mismanagement. The Firm was named to The National Law Journal's "Plaintiffs' Hot List" for more than a decade and is listed as one of America's Leading Business Law Firms by Chambers & Partners, who reported that G&E "commanded respect for its representation of institutional investors in shareholder and derivative actions, and in federal securities fraud litigation." Based in Delaware, New York, Chicago and San Francisco, G&E routinely represents clients in federal and state courts throughout the country. G&E's clients include the California Public Employees' Retirement System, New York State Common Retirement Fund, Ohio Public Employees' Retirement System, State of Wisconsin Investment Board, Teachers' Retirement System of Louisiana, PIMCO, Trust Company of the West, The Capital Guardian Group and many other public and private U.S. and international institutions.

G&E was founded in 1997 by Jay W. Eisenhofer and Stuart M. Grant, former litigators in the Wilmington office of the nationally prominent firm of Skadden, Arps, Slate, Meagher & Flom LLP. Over the years, the Firm's principals have gained national reputations in securities and corporate litigation. In fact, G&E was the first law firm in the country to argue the provisions of the Private Securities Litigation Reform Act ("PSLRA") allowing an institutional investor to be appointed as lead plaintiff in a securities class action. The Firm has gone on to build a national and international reputation as a leader in securities litigation. In both class action and "opt-out" cases, G&E has attracted widespread recognition for protecting investors' rights and recovering their damages. RiskMetrics Group has twice recognized G&E for securing the highest average investor recovery in securities class actions.

G&E has served as lead counsel in many of the largest securities class action recoveries, including:

> $3.2 billion settlement from Tyco International Ltd. and related defendants
> $486 million settlement from Pfizer
> $448 million settlement in Global Crossing Ltd. securities litigation
> $422 million total class recovery for investors in the stock and bonds of Refco
> $400 million recovery from Marsh & McLennan
> $325 million from Delphi Corp.
> $303 million settlement from General Motors
> $300 million settlement from DaimlerChrysler Corporation
> $300 million recovery from Oxford Health Plans
> $276 million judgment & settlement for Safety-Kleen bond investors

G&E has also achieved landmark results in corporate governance litigation, including:

> *In re UnitedHealth Group Inc. Shareholder Derivative Litigation*: G&E
> represented the Ohio Public Employees Retirement System, State



Grant & Eisenhofer

Teachers Retirement System of Ohio, and Connecticut Retirement Plans and Trust Funds as lead plaintiffs in a derivative and class action suit in which G&E successfully challenged $1.2 billion in back-dated options granted to William McGuire, then-CEO of health care provider UnitedHealth Group ("UHG"). This was among the first – and most egregious – examples of options backdating. G&E's case against UHG produced a settlement of $922 million, the largest settlement in the history of derivative litigation in any jurisdiction.

*In re Digex, Inc. Shareholders Litigation* – G&E initiated litigation alleging that the directors and majority stockholder of Digex, Inc. breached fiduciary duties to the company and its public shareholders by permitting the majority shareholder to usurp a corporate opportunity that belonged to Digex. G&E's efforts in this litigation resulted in an unprecedented settlement of $420 million, the largest settlement in the history of the Delaware Chancery Court.

*Caremark / CVS Merger* - G&E represented two institutional shareholders in this derivative litigation challenging the conduct of the board of directors of Caremark Rx Inc. in connection with the negotiation and execution of a merger agreement with CVS, Inc., as well as the board's decision to reject a competing proposal from a different suitor. Through the litigation, Caremark's board was forced to renegotiate the terms of the merger agreement with CVS. The settlement ensured statutory rights of Caremark shareholders, providing an additional $3.19 billion in cash consideration.

*Teachers' Retirement System of Louisiana v. Greenberg, et al. and American International Group, Inc.*: In what was, at the time, the largest settlement of shareholder derivative litigation in the history of the Delaware Chancery Court, G&E reached a $115 million settlement in a lawsuit against former executives of AIG for breach of fiduciary duty. The case challenged hundreds of millions of dollars in commissions paid by AIG to C.V. Starr & Co., a privately held affiliate controlled by former AIG Chairman Maurice "Hank" Greenberg and other AIG directors. The suit alleged that AIG could have done the work for which it paid Starr, and that the commissions were simply a mechanism for Greenberg and other Starr directors to line their pockets.

*AFSCME v. AIG* – This historic federal appeals court ruling in favor of G&E's client established the right, under the then-existing proxy rules, for shareholders to place the names of director candidates nominated by shareholders on corporate proxy materials – reversing over 20 years of adverse rulings from the SEC's Division of Corporate Finance and achieving what had long been considered the "holy grail" for investor activists. Although the SEC took nearly immediate action to reverse the

 Grant & Eisenhofer

decision, the ruling renewed and intensified the dialogue regarding proxy access before the SEC, ultimately resulting in a new rule currently being considered by the SEC that, if implemented, will make proxy access mandatory for every publicly traded corporation.

*Unisuper Ltd. v. News Corp., et al.* – G&E forced News Corp. to rescind the extension of its poison pill on the grounds that it was obtained without proper shareholder approval.

*Teachers' Retirement System of Louisiana v. HealthSouth* – G&E negotiated a settlement which ousted holdover board members loyal to indicted CEO Richard Scrushy and created mechanisms whereby shareholders would nominate their replacements.

*Carmody v. Toll Brothers* – This action initiated by G&E resulted in the seminal ruling that "dead-hand" poison pills are illegal.

In addition, the Firm's lawyers are often called upon to testify on behalf of institutional investors before the SEC and various judicial commissions, and they frequently write and speak on securities and corporate governance issues. G&E managing director Jay Eisenhofer and principal Michael Barry are co-authors of the *Shareholder Activism Handbook*, and in 2008, Jay Eisenhofer was named by *Directorship Magazine* as one of the "100 Most Influential People in Corporate Governance and the Boardroom."

G&E is proud of its success in fighting for institutional investors in courts and other forums across the country and throughout the world.

 Grant & Eisenhofer

G&E's ATTORNEYS

**Jay W. Eisenhofer**

Jay Eisenhofer, co-founder and managing principal of Grant & Eisenhofer P.A., has been counsel in more multi-hundred million dollar cases than any other securities litigator, including the $3.2 billion settlement in the Tyco case, the $922 million UnitedHealth Group settlement, the $486 million settlement with Pfizer, the $450 million settlement in the Global Crossing case, a $400 million settlement with Marsh & McLennan, a $303 million settlement with General Motors and a $300 million settlement with DaimlerChrysler. Internationally, Mr. Eisenhofer has organized cases on behalf of investors leading to substantial recoveries, including the $1.5 billion settlement with Fortis in the Netherlands, the $1 billion recovery against Royal Bank of Scotland in the United Kingdom, and the historic $450 million pan-European settlement in the Royal Dutch Shell case in the Netherlands. Mr. Eisenhofer was also the lead attorney in the seminal cases of *American Federation of State, County & Municipal Employees, Employees Pension Plan v. American International Group, Inc.*, where the U.S. Court of Appeals required shareholder proxy access reversing years of SEC no-action letters, and *Carmody v. Toll Brothers*, wherein the Delaware Court of Chancery first ruled that so-called "dead-hand" poison pills violated Delaware law.

Mr. Eisenhofer has served as litigation counsel to many public and private institutional investors, including, among others, Amalgamated Bank, APG Asset Management, California Public Employees Retirement System, California State Teachers Retirement System, Colorado Public Employees Retirement Association, the Florida State Board of Administration, John Hancock, Louisiana State Employees Retirement System, New York City Retirement Funds, Inc., and Service Employees International Union.

Mr. Eisenhofer is consistently ranked as a leading securities and corporate governance litigator and he has been named by Lawdragon to its annual list of the top 500 lawyers in America for several consecutive years. He is also recognized by Benchmark Litigation as one of the Top 100 Trial Lawyers. *The National Law Journal* has selected Grant & Eisenhofer to its "Plaintiffs' Hot List" as one of the top plaintiffs' law firms in the country since the List's inception, earning the firm a place in *The National Law Journal's* "Plaintiffs' Hot List Hall Of Fame" in 2008, as well as to its list of "Elite Trial Lawyers: The 50 Leading Plaintiffs Firms in America" since commencement of the list. The firm has been selected as a "Most Feared Plaintiffs Firm" by *Law360* as "one of the most high-profile shareholder and whistleblower advocates in the country, securing record-high cash settlements." *U.S. News & World Report* has also repeatedly named Grant & Eisenhofer to its list of "Best Law Firms" in the fields of Securities Litigation, Commercial Litigation, and Corporate Law. Mr. Eisenhofer is rated AV by Martindale-Hubbell.

Mr. Eisenhofer has written and lectured widely on securities fraud and insurance coverage litigation, business and employment torts, directors' and officers' liability coverage, and the Delaware law of shareholder rights and directorial responsibilities. Among the publications he has authored: "The Shareholders Activism Handbook" Aspen Publishers; "Proxy Access Takes Center Stage – The Second Circuit's Decision in *AFSCME Employees Pension Plan v. American International Group, Inc.*" *Bloomberg Law Reports*, Vol. 1, No. 5; "Investor Litigation in the



Grant & Eisenhofer

U.S. - The System is Working" *Securities Reform Act Litigation Reporter*, Vol. 22, #5; "*In re Walt Disney Co. Deriv. Litig.* and the Duty of Good Faith Under Delaware Corporate Law" *Bank & Corporate Governance Law Reporter*, Vol. 37, #1; "Institutional Investors As Trend-Setters In Post-PSLRA Securities Litigation" *Practising Law Institute*; "*In re Cox Communications, Inc.*: A Suggested Step in the Wrong Direction," *Bank and Corporate Governance Law Reporter,* Vol. 35, #1; "Does Corporate Governance Matter to Investment Returns?" *Corporate Accountability Report*, Vol. 3, No. 37; "Loss Causation in Light of Dura: Who is Getting it Wrong?" *Securities Reform Act Litigation Reporter*, Vol. 20, #1; "Giving Substance to the Right to Vote: An Initiative to Amend Delaware Law to Require a Majority Vote in Director Elections," *Corporate Governance Advisor*, Vol. 13, #1; "An Invaluable Tool in Corporate Reform: Pension Fund Leadership Improves Securities Litigation Process," *Pensions & Investments*; and "Securities Fraud, Stock Price Valuation, and Loss Causation: Toward a Corporate Finance-Based Theory of Loss Causation," *Business Lawyer*. Mr. Eisenhofer has also authored a number of articles on illiquid and rouge hedge funds, including "Time for Hedge Funds to Become Accountable to Fiduciary Investors," *Pensions & Investments*; and "Hedge Funds of the Living Dead," *New York Times Dealbook.*

Mr. Eisenhofer serves as a member of the NYU Law School Advisory Board for the Center on Civil Justice. He is a graduate of the University of Pittsburgh, and a 1986 *magna cum laude* graduate of Villanova University School of Law, Order of the Coif. He was a law clerk to the Honorable Vincent A. Cirillo, President Judge of the Pennsylvania Superior Court and thereafter joined the Wilmington office of Skadden Arps Slate Meagher & Flom. Mr. Eisenhofer was a partner in the Wilmington office of Blank Rome Comisky & McCauley until forming Grant & Eisenhofer P.A. in 1997.

**Jeff A. Almeida**

Jeff Almeida is a principal at Grant & Eisenhofer practicing in the areas of Delaware corporate litigation and both domestic and international securities litigation.

Mr. Almeida has a wide breadth of complex commercial litigation experience, with over 22 years of practice. He has primarily represented domestic and foreign institutional investors in prominent securities fraud class actions and opt-out cases, including *In re JPMorgan Chase & Co. Securities Litigation (London Whale)* (S.D.N.Y.); *In re Medtronic Securities Litigation* (D. Minn.); *In re Refco Inc. Securities Litigation* (S.D.N.Y.); *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation* (D.N.J.); *In re Bank of America/Merrill Lynch Securities Litigation* (S.D.N.Y.); *In re Pfizer Inc. Securities Litigation* (S.D.N.Y.); *In re Global Cash Access Holdings Securities Litigation* (D. Nev.); and *In re Career Education Corp. Securities Litigation* (S.D. Ill.). In addition, Mr. Almeida has played prominent roles in international securities cases involving RBS (U.K.), Volkswagen (Germany), and Danske Bank (Denmark).

Mr. Almeida has also been actively engaged in derivative, class, and appraisal litigation in the Delaware Court of Chancery, including the matters *In re Tyson Foods, Inc. Consolidated Shareholder Litigation*, which resulted in historic rulings clarifying the fiduciary duties of corporate directors in connection with the administration of stock option plans; *Louisiana Municipal Police Employees' Retirement System v. Crawford (Caremark)*, a well-publicized derivative action challenging the terms

 Grant & Eisenhofer

of the Caremark and CVS merger that resulted in a $3.2 billion settlement; and *In re Genentech Inc. Shareholder Litigation*, where he successfully represented Genentech minority stockholders in controlling stockholder Roche's attempt to squeeze out the minority to seize full control of Genentech.

Grant & Eisenhofer currently leverages Mr. Almeida's broad experience and success in stockholder litigation to manage the firm's investigation and development of new cases. In this role, Mr. Almeida conducts in-depth investigations into dozens of potential securities fraud claims, and other derivative and corporate governance matters, in order to develop the legal theories that support Grant & Eisenhofer's litigation efforts.

Prior to joining Grant & Eisenhofer in August 2004, Mr. Almeida was affiliated for six years as an attorney with a major Philadelphia defense firm, where he practiced in the areas of complex commercial litigation and class action defense.

Mr. Almeida is a 1994 graduate of Trinity College in Hartford, Connecticut, where he captained the varsity basketball team and achieved election to Phi Beta Kappa, and a 1997 graduate of William and Mary Law School in Williamsburg, Virginia. Mr. Almeida is admitted to practice in Delaware, Pennsylvania, and New Jersey, along with several federal courts.

**Edward J. Aucoin**

Edward Aucoin is a principal at Grant & Eisenhofer, where his primary area of practice is representing families and children in birth injury and birth trauma litigation. Prior to joining G&E, Mr. Aucoin worked at several medical negligence defense firms in the Chicago area, focusing on medical malpractice and professional liability as well as commercial litigation. He also was a senior trial attorney at a national insurance company.

Mr. Aucoin has successfully litigated hundreds of cases and has served as first and second chair trial attorney. He has handled every aspect of medical negligence cases, from pleadings and discovery to experts and trial. Mr. Aucoin has litigated birth injury cases in Illinois, Louisiana, Wisconsin, Missouri, Florida, Georgia, South Carolina, North Carolina, Texas, Mississippi, Kentucky, Maryland, New York, North Dakota, South Dakota, Arkansas, Nevada, Michigan, Ohio and Indiana.

In 2023, Mr. Aucoin was selected as one of the "Top 100 - Civil Plaintiff" by the National Trial Lawyers for the second year in a row. Mr. Aucoin previously served as co-chair of the American Association for Justice Medical Negligence Information Exchange Group and is currently a Co-editor of the Journal for the American Association for Justice Birth Trauma Litigation Group. He previously authored an article for that Journal, titled *Helping to Improve Your Client's Life Outside the Courtroom*, which focused on governmental and private programs in education, nutrition, finance, health insurance, and housing that are available to persons with disabilities.

Mr. Aucoin received his J.D. from Loyola University New Orleans School of Law and his B.A. in Broadcast Journalism and Political Science from Loyola University of New Orleans. He is licensed in Illinois, Louisiana and North Carolina, and is admitted to numerous Federal District Courts in the United States.

 Grant & Eisenhofer

### Michael J. Barry

Michael Barry is a principal at Grant & Eisenhofer focusing on corporate governance and securities litigation. For over thirteen years, he has represented institutional investors in litigation relating to securities fraud, corporate fiduciary responsibilities, shareholder proposals under SEC Rule 14a-8, and corporate governance generally. As a foremost practitioner in these areas, Mr. Barry has been significantly involved in groundbreaking class action recoveries, corporate governance reforms and shareholders rights litigation.

He has been instrumental in landmark corporate governance cases, including *AFSCME v. AIG*, which recognized shareholders' right to introduce proxy access proposals; *Bebchuk v. CA, Inc.,* which allowed shareholders to introduce proposals restricting a board's ability to enact poison pills; and *CA, Inc. v. AFSCME,* a historic decision of the Delaware Supreme Court regarding the authority of shareholders to adopt corporate bylaws. His casework includes the Genentech Shareholder Litigation, resulting in an increase of $3 billion in value for shareholders arising from a corporate merger; a $922 million settlement in the UnitedHealth Group derivative litigation, resolving one of the most egregious examples of options backdating; an $89.4 million recovery for stockholders of Del Monte Foods Co. in a case that exposed significant conflicts of interest in staple financing in corporate mergers; and a $153.75 million recovery in a derivative action on behalf of Freeport-McMoRan Corporation shareholders, which included, for the first time in derivative litigation, a provision that the entire cash portion of the recovery—$147.5 million—be distributed to shareholders in the form of a special dividend.

Mr. Barry has spoken widely on corporate governance and related matters. In addition to having served as a guest lecturer at Harvard Law School, he speaks at numerous conferences each year. Mr. Barry has authored several published writings, including the *Shareholder Activism Handbook,* a comprehensive guide for shareholders regarding their legal rights as owners of corporations, which he co-authored. In 2015, Mr. Barry was selected to the Markets Advisory Council for the Council of Institutional Investors.

Prior to joining Grant & Eisenhofer, Mr. Barry practiced at a large Philadelphia-based firm, where he defended the Supreme Court of Pennsylvania, the Pennsylvania Senate and Pennsylvania state court judges in a variety of trial and appellate matters. He is a 1990 graduate of Carnegie Mellon University and graduated *summa cum laude* in 1993 from the University of Pittsburgh School of Law, where he was an Executive Editor of the *University of Pittsburgh Law Review* and a member of the Order of the Coif.

### Daniel L. Berger

Daniel Berger is a principal at Grant & Eisenhofer. Prior to joining the firm, Mr. Berger had been a partner at two major plaintiffs' class action firms in New York, where he litigated complex securities and discrimination class actions for twenty-two years.

Mr. Berger's experience includes trying three 10b-5 securities class actions to jury verdicts, which are among very few such cases ever tried, as well as conducting trials in Delaware


Grant & Eisenhofer

Chancery Court and other state courts. Mr. Berger served as principal lead counsel in many of the largest securities class action cases in history, achieving successful recoveries for classes of investors in *In re JPMorgan Chase & Co. Securities Litigation* ($150 million); *In re Merck Vytorin/Zetia Securities Litigation* ($215 million); *In re Cendant Corp. Securities Litigation* ($3.3 billion); *In re Lucent Technologies, Inc. Securities Litigation* ($675 million); *In re Bristol-Myers Squibb Securities Litigation* ($300 million); *In re Daimler Chrysler A.G. Securities Litigation* ($300 million); *In re Conseco, Inc. Securities Litigation* ($120 million); *In re Symbol Technologies Securities Litigation* ($139 million); and *In re OM Group Securities Litigation* ($92 million).

Mr. Berger has successfully argued several appeals that made new law favorable to investors, including *In re Suprema Specialties, Inc. Securities Litigation,* 438 F.3d 256 (3d Cir. 2005); *McCall v. Scott,* 250 F.3d 997 (6th Cir. 2001) and *Fine v. American Solar King Corp.,* 919 F.2d 290 (5th Cir. 1990.) In addition, Mr. Berger was lead class counsel in many important discrimination class actions, in particular *Roberts v. Texaco, Inc.*, where he represented African-American employees of Texaco and achieved the then largest settlement ($175 million) of a race discrimination class action.

Mr. Berger is a member of the faculty of Columbia University School of Law, where he is a Lecturer in Law. He also serves on the Board of Visitors of the Law School. Previously, Mr. Berger was a member of the Board of Managers of Haverford College from 2000-2003. He is a member of the Board of Directors (and was Board co-Chair) of the GO Project, a not-for profit organization that provides academic support for New York City public school students. He also serves on the Board of the Madison Square Park Conservancy, a public-private partnership that operates and preserves one of New York City's great parks.

Mr. Berger is a 1976 graduate of Haverford College, and graduated in 1979 from Columbia University School of Law.

**Sindhu S. Daniel**

Sindhu Daniel is a principal at Grant & Eisenhofer where she focuses on complex and mass tort litigation. Ms. Daniel has been handling pharmaceutical drug and device cases for over 20 years.

Prior to G&E, Ms. Daniel was a Shareholder at a national plaintiffs' law firm managing the Pharmaceutical Litigation Group. She has served in leadership on multiple MDLs and currently serves on the Plaintiffs' Steering Committee for the 3M Combat Arms Earplug Products Liability Litigation, the Elmiron MDL, the Talc and Proton Pump Inhibitor MDLs, the Gilead Tenofovir JCCP, and the Essure JCCP, which resulted in a $1.6 billion settlement in overall compensation to injured women.

Ms. Daniel previously served as co-lead negotiator on behalf of a large group of plaintiffs in a case involving severe and permanent injuries caused by transvaginal mesh implants. Additionally, Ms. Daniel played roles in the settlements for Vioxx, Fresenius Granuflo/Naturalyte dialysis products, DePuy Orthopaedics, and was previously appointed to the Plaintiffs' Steering Committee in the Xarelto and Ethicon Power Morcellator MDLs.

 Grant & Eisenhofer

Ms. Daniel earned her J.D. from Temple University James E. Beasley School of Law, and her B.A. from Temple University. Ms. Daniel is a member of the American Association for Justice and Women En Masse. She is also a member of The National Trial Lawyers Top 100 Civil Plaintiff Lawyers, and was selected to the Lawdragon 500 Leading Plaintiff Consumers Lawyers Guide for 2022 and 2023.

**Robert G. Eisler**

Robert Eisler is a principal at Grant & Eisenhofer and leads the firm's antitrust practice. Mr. Eisler has been involved in many significant antitrust class action cases over the course of his career. He is experienced in numerous industries, including pharmaceuticals, paper products, construction materials, industrial chemicals, processed foods, securities, and consumer goods.

Mr. Eisler is currently serving as co-lead counsel in several cases, *including In re Seroquel Antitrust Litigation, In re London Silver Fixing, Ltd. Antitrust Litigation* and *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litigation*. He has served as lead or co-lead counsel in many other significant antitrust cases, including *In re Buspirone Antitrust Litigation* (which led to a $90 million settlement in which presiding Judge Koeltl stated that the plaintiffs' attorneys had done "a stupendous job"), *In re Ciprofloxacin Hydrochloride Antitrust Litigation, In re Flat Glass Antitrust Litigation*, and *In re Municipal Derivatives Antitrust Litigation.*

Mr. Eisler has played major roles in a number of other significant antitrust cases, including *In re Polyurethane Foam Antitrust Litigation, In re Blue Cross/Blue Shield Antitrust Litigation, In re Containerboard Antitrust Litigation* and *In re Linerboard Antitrust Litigation.* He also has significant experience litigating antitrust matters in the UK and the Netherlands including cases concerning cartels in a number of industries, such as air cargo services, air passenger services, automotive glass, medium and heavy trucks and pharmaceuticals, among others.

In addition to his antitrust work, Mr. Eisler has extensive experience in securities, derivative, complex commercial and class action litigation at the trial and appellate levels. He has been involved in numerous securities and derivative litigation matters on behalf of public pension funds, municipalities, mutual fund companies and individual investors in state and federal courts.

Mr. Eisler graduated from LaSalle University in 1986, and in 1989, from Villanova University School of Law.

**Adam J. Gomez**

Adam Gomez is a principal at Grant & Eisenhofer where he focuses on complex and mass tort litigation as well as environmental litigation. Prior to joining G&E, Mr. Gomez was an associate at a national defense litigation firm where he defended clients in catastrophic personal injury, products liability, professional liability, and civil rights litigation.

Mr. Gomez currently serves as Chair of the Insurance Committee representing residents and businesses harmed by the catastrophic gas explosions in Merrimack Valley of Massachusetts



Grant & Eisenhofer

caused by the negligence of Columbia Gas and NiSource. He also serves as a Chair of the Discovery Committee in the *Gilead Tenofovir* Cases, California Judicial Council Coordinated Proceeding (JCCP) No. 5043, representing members of the HIV community injured by Gilead Sciences, Inc.'s negligent design of tenofovir-based antiretroviral medications. He is the Co-Chair of the American Association for Justice Tenofovir Litigation Group. Additionally, Mr. Gomez represents victims of the Paradise, California Camp Fire—the deadliest in the state's history—where plaintiffs allege that fires were sparked by aging, unsafe electrical infrastructure maintained by Pacific Gas & Electric.

Mr. Gomez earned his J.D. from Temple University James E. Beasley School of Law in 2013, where he was a Beasley Scholar and received awards for excellence in Constitutional Law and Outstanding Oral Advocacy in the Integrated Trial Advocacy Program. He received his B.A. in Government from Wesleyan University in 2010 where he served as Chair of the Student Judicial Board and President of Delta Kappa Epsilon.

Mr. Gomez is a member of the American Association for Justice, Hispanic Bar Association of Pennsylvania and Philadelphia Trial Lawyers Association. He was selected for inclusion in the 2018 list of "Rising Stars" in Pennsylvania *Super Lawyers*.

**Elizabeth (Beth) Graham**

Elizabeth ("Beth") Graham is a principal at Grant & Eisenhofer. She leads the firm's complex and mass tort litigation practice and serves as a member of the firm's Executive Committee. Ms. Graham has spent most of her career as a plaintiffs' lawyer advocating for the rights of individuals, families and small businesses harmed by large corporations.

Ms. Graham's expertise spans the practice areas of mass tort, consumer fraud, product liability, environmental, business torts, and sexual assault and retaliation claims. She has served as Lead Counsel in multi-million dollar cases, has acted as a member of various Plaintiffs' Executive Committees in complex actions, and has prior experience as national defense coordination counsel in product liability and environmental litigation.

Ms. Graham is actively representing thousands of injured victims in various cases against corporations, including pharmaceutical companies, medical device manufacturers, public utility and tech companies. Ms. Graham is Liaison Counsel, a member of the Executive Committee, Chair of the Law & Briefing Committee, and was a lead negotiator in the *In re Essure Product Cases* (JCCP 4887) settlement, which provided $1.6 billion in overall compensation to injured women. She was also Co-Lead class counsel in the *In re Columbia Gas Explosion Cases* (Mass. Sup. Ct.) where she was a principal negotiator of the recent $143 million class action settlement.

Currently, Ms. Graham serves in leadership as Liaison Counsel in California's *Gilead Tenofovir Cases and Coordinated Actions,* JCCP No. 5043, representing thousands of people harmed by certain HIV drugs manufactured by California biotech giant Gilead Sciences. She serves as Co-Lead on the Plaintiffs' Executive Committee and as Chair of the Law & Briefing Committee in *In re Zofran (Ondansetron) Products Liability Litigation* (MDL No. 2657). Ms. Graham is a PSC member in *In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Products*

 Grant & Eisenhofer

*Liability Litigation* (MDL No. 2775), where she was also appointed to the Settlement Committee by the court. She previously has served on the Plaintiffs' Steering Committee in *In re Power Morcellator Products Liability Litigation* (MDL No. 2652); as a member of the Plaintiffs' Steering Committee in *In re Stryker LFIT V40 Femoral Head Products Liability Litigation* (MDL No. 2768); and as co-chair of the Law & Briefing Committee for *In re Xarelto Products Liability Litigation* (MDL No. 2592). Additionally, Ms. Graham represents victims of the Paradise, California Wildfires (2018), victims of sexual assault, and families suffering as a result of environmental contamination and disasters.

Ms. Graham additionally represents a former female executive of dating app Tinder in her sexual assault and retaliation claims, including litigation of forced arbitration provisions.

Prior to joining G&E, Ms. Graham served on the Plaintiffs' Executive Committee and represented victims in the *In re Sulzer Hip Prosthesis and Knee Prosthesis Liability Litigation* (California JCCP No. 4165). She has served as Lead Counsel on the Plaintiffs' Executive Committee in high profile class actions such as *Borman Automotive v. American Honda Motor Corp.* (MDL No. 1069), which resulted in a $435 million settlement; and litigation against Chrysler based on its Minivan Doorlatch failures and ABS brake defects. She has also represented hundreds of families injured by environmental contaminants, including radon, arsenic and rocket fuel, resulting in confidential settlements in excess of $25 million. Ms. Graham also has vast experience as a consultant to other mass tort firms that seek her advice in structuring their cases.

Ms. Graham is an accomplished speaker, often presenting at educational programs sponsored by the American Association for Justice (AAJ); Mass Torts Made Perfect; Harris Martin; and Masters of Mass Tort. Additionally, Ms. Graham is Co-Chair of the AAJ Zofran Litigation Group, and is a member of AAJ's Publications Committee. She is the author of "Navigating Drug & Device Settlements," published in the May 2023 issue of *Trial* magazine, and co-author of "Medical Monitoring," published in the July 2018 issue of *Trial* as well as "Overcome the Clear Evidence Defense," published in *Trial*'s July 2016 issue.

In 2021, Ms. Graham was named to Law360's annual "Titans of the Plaintiffs Bar." In 2018, Ms. Graham was selected to receive the Lifetime Achievement award by America's Top 100 Attorneys®.

Prior to her representation of injured individuals, Ms. Graham worked for large product liability defense firms as national defense counsel and was a partner at prominent San Francisco Bay area law firms.

**Olav A. Haazen**

Olav Haazen, PhD, is a principal at Grant & Eisenhofer. His areas of practice include cross-border securities fraud and antitrust litigation.

Mr. Haazen has significant experience representing foreign and domestic plaintiffs in a variety of antitrust and fraud actions. Notably, he successfully represented a class of Fortis investors for

 Grant & Eisenhofer

whom he helped negotiate a record-high $1.5 billion settlement of all investment fraud claims in the Netherlands and Belgium. Other representations, past and present, include:

- nearly 300 institutional investors from around the world seeking recovery from Volkswagen in German court in connection with its well-publicized manipulation of emissions controls;
- a large group of Laiki and Bank of Cyprus bondholders and depositors with ICSID arbitration claims against Cyprus, whose interests were wiped as part of the 2013 Cyprus bank bail-out;
- foreign Madoff investors on fraud and negligence claims against feeder fund defendants and their auditors, custodians, and administrators;
- a French *qui tam* plaintiff in litigation arising out of the sale of Executive Life Insurance Company; and
- a large regional bakery in its successful monopolization suit against a competitor.

Mr. Haazen has also represented two classes of professional fashion models in price-fixing and consumer fraud actions, which resulted in a virtually unprecedented 100% recovery of all claimants' losses, as well as substantial injunctive relief, which Justice Ramos of the New York Supreme Court lauded as a model for legislative reform.

Prior to joining G&E, Mr. Haazen was counsel at a prominent national law firm, where he successfully represented major corporate clients and individuals in several high-profile RICO, securities, and government investigation matters and commercial disputes, including a well-known playwright against a civil forfeiture claim arising out of Kenneth Starr's "Ponzi" scheme; a utilities company in a significant contract dispute with Enron; and one of the largest franchisors in professional sports in a $1.2 billion monopolization suit. He has also represented several government entities and officials, including a Westchester County municipality in a $600 million lawsuit by Donald Trump's Seven Springs LLC, as well as the City and Mayor of Amsterdam, and a foreign country's former Secretary of State.

From 2010-2011, Mr. Haazen served on the American Bar Association's seven-member Standing Committee for Amicus Curiae briefs and the Third-Party Litigation Funding Study Group. From 1996-2001, he served as a Country Reporter for the Netherlands for the European Restatement of Torts, and recently as a Netherlands Reporter to the 17th International Congress of Comparative Law. Mr. Haazen is a former professor of civil procedure and cross-border litigation at Leiden University in the Netherlands, and also previously taught at Harvard, Stanford, and Oxford. He has written several books and over 40 articles and case notes. He is admitted as solicitor in England and Wales, and as arbitrator at the Netherlands Arbitration Institute and at the Center for Dispute Resolution (CEDIRES) in Belgium.

**Barbara Hart**

Barbara Hart is a principal at Grant & Eisenhofer and serves on the firm's Executive Committee. Ms. Hart has nearly three decades of experience as a leader in plaintiffs' litigation. She has represented institutional investors, including many public pension funds, in securities and


Grant & Eisenhofer

antitrust litigation and served as lead counsel in 4 of the top 100 securities class action settlements. Ms. Hart has also achieved substantive antitrust and False Claims Act/*Qui Tam* settlements on behalf of her clients.

In addition, Ms. Hart currently represents approximately 45 adult survivors of sexual abuse who are bringing claims against the Roman Catholic Archdiocese of New York, Maryknoll, Rockefeller University Hospital and the Boy Scouts of America. Ms. Hart is pioneering these claims in light of a change in New York law known as The Child Victims Act.

Prior to joining G&E, Ms. Hart was President and CEO of a firm focusing on securities and antitrust litigation, and before that, she spent 17 years representing plaintiffs at the New York office of a complex financial litigation firm. Notably, Ms. Hart obtained a $219 million recovery for investors, including New York trade unions, who fell victim to the Madoff Ponzi scheme. Judge McMahon praised the "unprecedented global settlement" and recognized that Ms. Hart "carried the laboring oar." Judge McMahon continued: "Your clients – all of them – have been well served . . . rarely has there been a more transparent settlement negotiation. It could serve as a prototype."

Other representative casework includes a $457 million securities recovery serving the Office of the Treasurer of the State of Connecticut as lead plaintiff; a $285 million settlement in the El Paso securities litigation; a $169 million settlement in securities class litigation against Juniper Networks involving options backdating; a $53 million securities class action settlement on behalf of shareholders of Community Health Systems Inc.; and a $22.4 million settlement on behalf of a whistleblower who alleged false Medicaid billing, among many others. Ms. Hart is also co-lead counsel in an antitrust class action representing a putative end-user class of indirect purchasers claiming that the county's major chemical manufacturers schemed to inflate the price of caustic soda.

Ms. Hart is a member of Thirty Percent Coalition, a group representing many trillions of dollars of assets under management advocating for diversity on corporate boards. In March 2020, Ms. Hart received the EPIQ award for the Coalition's advocacy for the advancement of women. Ms. Hart also currently serves, at the behest of the Westchester County Executive, on the Police Reform & Reinvention Task Force preparing a report due to the State of New York. She additionally serves as a director on the Westchester Medical Center Foundation Board.

Widely-spoken and published on various topics in securities and antitrust law, Ms. Hart also co-edited the "New York Antitrust and Consumer Protection Law" handbook. She is a Member of the New York State Bar Antitrust Executive Committee as to which she served as the 2014 Section Chair. Ms. Hart has also successfully represented institutional investor clients as *amici curiae* on various matters, including on New York's Martin Act.

Ms. Hart was selected to the Lawdragon 500 Leading Plaintiff Consumers Lawyers Guide for 2022 and 2023. She has also been selected for inclusion to the list of New York *Super Lawyers* for nine years. She received her undergraduate degree from Vanderbilt University, her M.A. from University of North Carolina at Chapel Hill, and her J.D. from Fordham University School of Law where she was on the Dean's List and a member of the *Fordham Law Review*.

 Grant & Eisenhofer

### Christine M. Mackintosh

Christine Mackintosh is a principal at Grant & Eisenhofer, practicing in the areas of corporate and securities litigation. She has represented institutional investors, both public and private, in corporate cases in the Delaware Court of Chancery and in securities fraud class actions in federal courts throughout the country.

Ms. Mackintosh's practice primarily focuses on litigation in the Delaware Court of Chancery, where she has played significant roles in several landmark actions challenging mergers and acquisitions (including *In re Del Monte Foods Company Shareholder Litigation*, which resulted in an $89.4 million recovery for the class, and *In re El Paso Corporation Shareholder Litigation*, which resulted in a $110 million recovery for the class) and in several successful shareholder derivative actions (including *In re American International Group, Inc. Consolidated Derivative Litigation*, which resulted in a $90 million recovery, one of the largest recoveries in a shareholder derivative action in the history of the Delaware Court of Chancery). Ms. Mackintosh's litigation successes include securing a $300 million settlement of a derivative action brought on behalf of Renren, Inc. relating to a spin-off transaction orchestrated by Renren's controlling stockholder, Joseph Chen, which is the largest-ever direct cash payment in a shareholder derivative action; a $175 million settlement of a derivative action brought on behalf of McKesson Corporation relating to the company's failure to adequately oversee its sales of opioid drugs in an action in the United States District Court for the Northern District of California; a $167.5 million settlement of a derivative and class action in *In re CBS Corporation Stockholder Class Action and Derivative Litigation* challenging CBS Corporation's acquisition of Viacom, Inc. (approval pending); a $60 million partial settlement of a derivative and class action challenging the acquisition of SolarCity Corporation by Tesla Motors, Inc., and a $48.5 million settlement of a class action in *In re MSG Networks, Inc. Stockholders Class Action Litigation* challenging Madison Square Garden Entertainment Corporation's acquisition of MSG Networks, Inc. (approval pending).

Ms. Mackintosh has extensive experience trying cases before the Court of Chancery. In 2021, Ms. Mackintosh secured an injunction of an unduly restrictive poison pill in the highly publicized *The Williams Companies Stockholder Litigation* and was a leading member of trial teams in *In re BGC Partners, Inc. Derivative Litigation*, *Dieckman v. Regency Group LP*, and *In re Tesla Motors, Inc, Stockholder Litigation*. Ms. Mackintosh has also tried a number of appraisal cases, including *In re Appraisal of Dell, Inc.*, *In re Appraisal of Solera Holdings, Inc.*, and *Verition Partners Master Fund Ltd. v. Aruba Networks, Inc.* Following a closely watched Delaware Supreme Court argument in the *Aruba* appraisal, Ms. Mackintosh obtained a reversal of the Chancery Court's decision that Aruba's fair value equaled its unaffected stock price.

Outside of the United States, Ms. Mackintosh recently represented a number of institutional investors pursuing their appraisal rights against Nord Anglia Education in the Grand Court of the Cayman Islands; following a three-week trial, the Grand Court of the Cayman Islands, Financial Services Division ruled in favor of G&E's client, finding that Nord Anglia's fair value was nearly 16% higher than the deal price. Ms. Mackintosh is currently representing institutional investors pursuing appraisal rights against 58.com in the Grand Court of the Cayman Islands.

 Grant & Eisenhofer

In addition to her Chancery Court practice, Ms. Mackintosh has played a significant role in a number of securities fraud class actions that have achieved substantial recoveries for classes of investors, including *In re JP Morgan Chase & Co. Securities Litigation* ($150 million recovery), *In re Refco Securities Litigation* ($400 million recovery), and *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation* ($215 million recovery), and on behalf of individual and institutional investors who have opted out of class actions to pursue individual suits, including representation of investors who opted out of *In re Bank of America Corporation Securities, Derivative & ERISA Litigation*. Outside of the United States, Ms. Mackintosh was a member of the team that secured the historic $450 million pan-European settlement in the *Royal Dutch Shell* case in the Netherlands and the $1 billion settlement in the *Royal Bank of Scotland* case in the United Kingdom. She is currently representing institutional investors in connection with litigation against Volkswagen AG in Germany.

In 2022, Ms. Mackintosh was named to the list of Elite Women of the Plaintiffs' Bar by *The National Law Journal*—one of only 15 women who received this honor. She was also highly ranked by Chambers & Partners in the Delaware Chancery: Mainly Plaintiff category. Ms. Mackintosh is a member of the Advisory Board of the John L. Weinberg Center for Corporate Governance.

A *magna cum laude* graduate of St. Joseph's University, Ms. Mackintosh earned her law degree at the University of Pennsylvania Law School. She is the co-author of two articles published by the Practising Law Institute's *Corporate Law & Practice Course Handbook Series*. "Ethical Issues and Their Impact on Securities Litigation," published in September-October, 2003, was co-authored with Marc J. Sonnenfeld, Viveca D. Parker and Marisel Acosta. "Lessons From Sarbanes-Oxley: The Importance of Independence In Internal Corporate Investigations," published in July, 2003, was co-authored with Alfred J. Lechner, Jr.

**Kyle J. McGee**

Kyle McGee is a principal at Grant & Eisenhofer. Mr. McGee is the head of G&E's Environmental Litigation Group, focusing on sovereign and public entity representation. Mr. McGee also regularly represents state and municipal clients in consumer protection matters, as well as relators or whistleblowers in *qui tam* litigation. In addition to environmental litigation, Mr. McGee partners with state Attorneys General and municipalities pursuing consumer protection actions against manufacturers of dangerous products, including pharmaceuticals.

Mr. McGee currently serves as special counsel to several state Attorneys General and municipalities in actions against Monsanto Co. arising out of that company's production, marketing, and sale of toxic PCBs, which now contaminate natural resources throughout the nation, and against 3M Co., DuPont, Chemours, and other manufacturers of toxic PFAS chemicals and products containing PFAS, which now contaminate groundwater, drinking water, and other public resources. Mr. McGee also represents state agencies in hazardous site litigation arising out of historic disposal practices and emissions of contaminants such as lead and arsenic. Mr. McGee was named to the Environmental Trial Lawyers Association Top 10 for Delaware, and serves on the Executive Committee for the ETLA.

 Grant & Eisenhofer

Mr. McGee also represents numerous relators in confidential whistleblower actions under the federal and various state False Claims Acts, pursuing misconduct in diverse fields including medical and mental healthcare, residential mortgage lending, defense contracting, retail, and finance, as well as the whistleblower programs managed by the Securities & Exchange Commission and Commodity Futures Trading Commission.

Representative actions in which Mr. McGee played a principal role include:
- *State of New Mexico v. Monsanto Co.* (1st Jud. Dist.), an environmental protection action on behalf of New Mexico against Monsanto for damages resulting from PCB contamination of state waters and other natural resources, resulting in a $23.6 million recovery.
- *District of Columbia v. Monsanto Co., et al.* (D.C. Super.), an environmental protection action on behalf of the D.C. government against Monsanto for damages resulting from PCB contamination of major waterways and other natural resources, resulting in a $52 million recovery.
- *State of Mississippi ex rel. Jim Hood, Attorney General v. GlaxoSmithKline LLC* (Miss. Ch.), a consumer protection action on behalf of Mississippi against pharmaceutical company GSK for allegedly unfair and deceptive marketing practices, resulting in a $25 million recovery.
- *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation* (D.N.J.), a major securities fraud action against pharmaceutical industry titan Merck & Co., Inc. that settled for $215 million, jointly prosecuted with a related action, *In re Schering-Plough Corp. ENHANCE Securities Litigation* (D.N.J.), resulting in a $688 million total recovery—together, the largest securities class action recovery against a pharmaceutical company at the time, and among the top securities settlements with any issuer.
- *In re JP Morgan Chase & Co. Securities Litigation* (S.D.N.Y.), a securities fraud action against investment bank JP Morgan and its leadership arising out of the "London Whale" scandal, resulting in a $150 million settlement.
- *Champs Sports Bar & Grill Co. v. Mercury Payment Systems, LLC, et al.* (N.D. Ga.), a class action on behalf of small merchants against card processing companies Mercury Payment Systems and Global Payments Direct, which resulted in a settlement worth over $70 million.
- *In re MyFord Touch Consumer Litigation* (N.D. Cal.), a consumer class action on behalf of owners of Ford vehicles equipped with allegedly defective infotainment units, which resulted in monetary and other relief valued at over $33 million.
- *T.S. Kao, Inc. v. North American Bancard, LLC, et al.* (N.D. Ga.), a class action on behalf of small merchants against card processing companies North American Bancard and Global Payments Direct, which resulted in a settlement worth $15 million.
- *Des Roches, et al. v. Blue Shield of California, Inc., et al.* (N.D. Cal.), an ERISA class action brought by three parents of minors denied coverage for mental health and/or substance use disorder treatment by Blue Shield of California and its mental health services administrator, Human Affairs International of California (a subsidiary of Magellan Health, Inc.), based on allegedly faulty criteria, which resulted in the defendants' inability to resume use of the challenged criteria and other significant

 Grant & Eisenhofer

injunctive relief, as well as a $7 million fund for payment of allegedly improperly denied claims.

- *In re New Oriental Education & Technology Group Securities Litigation* (S.D.N.Y.), a securities fraud action against China-based New Oriental Education & Technology Group relating to alleged accounting manipulations, which settled for $4.5 million.
- *In re Miller Energy Resources, Inc. Securities Litigation* (E.D. Tenn.), a securities fraud action against oil and gas firm Miller Energy regarding alleged accounting manipulations, which settled for approximately $3 million.
- *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation* (N.D. Cal.), a consumer class action against Volkswagen, Audi, Porsche, and Robert Bosch LLC, arising out of the "Dieselgate" scandal, which resulted in an unprecedented vehicle buyback program and other relief valued at approximately $15 billion.
- *British Coal Staff Superannuation Scheme, et al. v. American International Group, Inc.* (S.D.N.Y.), a securities fraud action brought by a number of public pension and retirement funds and other institutional investors against AIG in relation to its alleged concealment of toxic assets during the 2008 financial crisis, which resulted in a substantial investor recovery.
- *Stichting Pensioenfonds ABP, et al. v. Merck & Co., Inc., et al.* (D.N.J.), a securities fraud action brought by a number of public pension and retirement funds and other institutional investors against Merck & Co., Inc., and its former leadership, in relation to the company's allegedly false statements concerning Vioxx, which resulted in a substantial investor recovery.

Mr. McGee earned a postgraduate research degree, with honors, in the history and philosophy of law from the University of Edinburgh. In 2009, he received his J.D., *cum laude*, from Villanova University, where he was a Dean's Merit scholar. In 2005, he received a B.A. in philosophy as well as media technologies from the University of Scranton.

### Caitlin M. Moyna

Caitlin Moyna is a principal at Grant & Eisenhofer, with over 15 years of experience in US and foreign securities fraud class action and opt-out litigation, shareholder derivative actions, merger litigation, and international arbitration. Ms. Moyna is also Co-Director of the Grant & Eisenhofer ESG Institute.

Currently, Ms. Moyna represents lead plaintiffs in securities class actions against General Electric, ProPetro, Block.one, Portland General Electric, and Exxon. She previously helped achieve significant recoveries against Santander Consumer USA, Camping World, Career Education and Miller Energy Resources, and prior to her time at G&E, against The Blackstone Group, among many others. She has also represented investors who opt out of securities class actions, including those against Valeant, Merck and Citigroup.

Ms. Moyna also has significant experience in litigating contractual disputes. She represented investors who challenged an early redemption of bonds issued by AgriBank and CoBank. She also represents textbook authors in an action against McGraw Hill challenging a new royalty

 Grant & Eisenhofer

payment plan which significantly reduces their royalty payments.  Her experience also includes representing investors challenging mergers and other corporate actions in the Delaware Court of Chancery.

Additionally, Ms. Moyna has international arbitration experience, including  achieving a landmark award on jurisdiction that allowed the claims of nearly 1,000 Greek investors to proceed in a single proceeding against Cyprus in an ICSID proceeding, and representing investors proceeding against Petrobras and Brazil before the Market Arbitration Chamber.

With Managing Director Jay W. Eisenhofer, Ms. Moyna co-authored two articles concerning alternative entities: "What is the State of Delaware Law as It Relates to the Scope of Fiduciary Duties Owed to Investors in So-Called Alternative Entities?", *Bloomberg BNA*, Corporate Accountability Report (Dec. 5, 12, and 19, 2014); and "What Is the Current State of Delaware Law on the Scope of Fiduciary Duties Owed by Hedge Fund Managers to Their Funds and Investors?", *The Hedge Fund Law Report*, Vol. 6, Nos. 26 and 27 (Sept. 19 and 26, 2013).

Prior to joining G&E, Ms. Moyna was associated with Cravath, Swaine & Moore and Ropes and Gray, where she represented corporations in securities fraud class actions and government investigations, as well as a boutique litigation firm specializing in investor representation.

Ms. Moyna is a *cum laude graduate* of Northwestern University School of Law, where she was elected to the Order of the Coif and served on the *Journal of Criminal Law and Criminology*. Ms. Moyna received her A.B. from Dartmouth College.

**Rebecca A. Musarra**

Rebecca Musarra is a principal at Grant & Eisenhofer.  Ms. Musarra's practice includes securities, corporate governance, and consumer protection litigation, and other complex class actions.

Ms. Musarra has helped achieve significant recoveries for investors and consumers.  In Delaware Chancery Court, she has participated in a number of consequential derivative and shareholder class action cases.  She also has considerable experience pursuing successful books-and-records investigations on behalf of stockholders pursuant to 8 *Del C.* § 220.  Ms. Musarra's practice has also included appraisal actions in Chancery Court, including as a member of the trial team in *In re Appraisal of Dell Inc.*  In federal court, she has litigated stockholder securities cases and class action cases on behalf of investors and consumers.  As a member of the Co-Lead Counsel team representing a class of insurance beneficiaries, Ms. Musarra litigated claims against health insurers in federal court for ERISA violations relating to coverage for treatments for mental health and substance use disorders; settlement of the matter resulted in a $7 million fund for payment of allegedly improperly denied claims and barred defendants from resuming use of challenged medical necessity criteria. She also played a principal role in pursuing fiduciary claims against entities and individuals associated with Cantor Fitzgerald, L.P. on behalf of investors.

# GE Grant & Eisenhofer

As part of her *pro bono* activities, Ms. Musarra represents juvenile immigrants in court and before federal agencies, and volunteers with the Medical Reserve Corps of Philadelphia.

Prior to joining G&E, Ms. Musarra worked as an appellate law clerk to the Chief Justice of the Supreme Court of the Virgin Islands in St. Thomas, Virgin Islands.

Ms. Musarra received her J.D. degree from American University Washington College of Law in 2009, where she served as a member of the *American University Law Review*, was elected to Order of the Coif, and graduated *summa cum laude*. She obtained a B.A. in international relations from the College of William and Mary in 2003. Between college and law school, Ms. Musarra served as a Peace Corps Volunteer in Chad, Central Africa.

**Gordon Z. Novod**

Gordon Novod heads Grant & Eisenhofer's bankruptcy and distressed litigation practice. He has 20 years of experience representing *ad hoc* and official committees, distressed investors, lenders, litigation trustees, indenture trustees, trade creditors, and other parties in some of the most complex landmark restructurings and in litigation matters.

Mr. Novod's practice focuses on representing litigation trustees as well as institutional investors in litigation matters involving, among other things, bankruptcy avoidance, as well as non-bankruptcy fraudulent transfer, fiduciary duty, unlawful dividend, and corporate governance. He has extensive experience litigating issues related to corporate debt securities in default and distressed situations, including exchange transactions, redemptions, and the Trust Indenture Act. In the bankruptcy context, he has litigated all aspects of Chapter 11 plans of reorganization, valuation, and plan confirmation proceedings, contested debtor-in-possession financing and cash collateral use, the pursuit of fraudulent transfer actions, and other matters involving bankruptcy-related litigation.

Mr. Novod prides himself on providing high quality advocacy to clients, keeping their business objectives in mind. He is able to grasp complex legal and business issues in order to craft and implement innovative yet practical solutions to maximize value for clients.

Mr. Novod has been acknowledged for his work as a restructuring attorney on numerous occasions. In 2011, he was named on Law360's list of "Rising Stars" in restructuring, recognizing him as "one of the five bankruptcy attorneys under 40 to watch." He was also named a finalist in the M&A Advisor's "40 under 40." The following year, he was recognized as a winner of the 2012 40 Under 40 East M&A Advisor Recognition Awards and selected for inclusion to the New York *Super Lawyers* list of "Rising Stars" for Bankruptcy. From 2013 to 2021, he was selected to New York Metro *Super Lawyers'* list for Bankruptcy. In addition, he has served on the New York City Bar Association's Committee on Bankruptcy and Corporate Reorganization.

Mr. Novod's "first chair" trial and appellate work have resulted in opinions of high precedential value, including (among numerous others):

- ***Halperin v. Richards, et al.,*** 7 F.4th 534, Case No. 20-2793, 2021 WL 3184305 (7th Cir. July 28, 2021). Mr. Novod represented *Halperin and Gene Davis*, as the Co-Trustees of the Appvion Liquidating Trust, securing reversal of the District Court's dismissal of the liquidating trustee's claims against the Appvion debtors' former directors and officers. Significantly, the Seventh Circuit held that ERISA does not preempt claims asserted by a liquidating trustee against a debtor's former directors and officers for damages for harm to the debtor's corporate enterprise and its creditors.
- ***AMCO Insurance Company, et al. v. CoBank, ACB,*** No. 16-cv-4422-LTS-SLC, 2021 WL 4340540 (S.D.N.Y. Sept. 22, 2021). Mr. Novod secured a win on summary judgement as to liability in a breach of contract action brought by G&E's thirty-seven (37) institutional investor clients regarding their $304 million principal amount (constituting 75%) of 7.875% Subordinated Notes issued by CoBank following CoBank's redemption of those notes prior to maturity. This victory is significant insofar as it permitted institutional investors to recover damages from a bond issuer that breached the contractual terms upon which the bonds were issued. Mr. Novod subsequently achieved a confidential resolution of the dispute on behalf of G&E's clients.
- ***Diverse Partners, LP and Troy Bank & Trust Company v. AgriBank, FCB,*** No. 16-CV-9526, 2017 WL 4119649 (S.D.N.Y. Sept. 14, 2017). Mr. Novod secured the denial of AgriBank's motion to dismiss a breach of contract action brought by the proposed class plaintiff arising from AgriBank's redemption of $500 million principal amount of 9.125% Subordinated Notes issued by AgriBank following AgriBank's redemption of those notes prior to maturity. Mr. Novod ultimately achieved a confidential resolution of the dispute on behalf of the Plaintiffs as well as an *ad hoc* group collectively holding $329 million (constituting 66%) of the 9.125% Notes. This decision is significant insofar as the Court refused to dismiss the action because Plaintiffs were the beneficial owner of 9.125% Notes and not the holder of the Global Note.
-

Mr. Novod's bankruptcy and distressed litigation highlights include:

- ***In re Caesars Entertainment Operating Company, et al.; Danner v. Caesars Entertainment Corporation, et al.,*** Mr. Novod represented the lead plaintiff in a proposed class action against Caesars Entertainment Corp., et al., relating to a series of transactions that attempted to eliminate a parent guarantee. Mr. Novod was deeply involved in the bankruptcy proceedings and related litigation in furtherance of the interests of its client and the class of noteholders. Mr. Novod ultimately achieved a settlement that provided improved bankruptcy plan treatment for the lead plaintiff and absent class members totaling between $14.7 million and $33 million.
- Mr. Novod also represented the litigation trustee of ***Refco Group Ltd.*** in litigation against Cantor Fitzgerald, LP, et al. That litigation involved allegations that Cantor Fitzgerald deprived Refco of assets under a partnership interest. G&E ultimately achieved a confidential settlement of the action.
- In ***In re Exco Resources, Inc., et al.,*** Mr. Novod represented Highbridge Capital Management; MSF International Ltd. and 1992 Tactical Credit Master Fund, L.P. as 1.75 Lien Lenders and 2nd Lien Lenders in the Exco Resources bankruptcy cases. Mr. Novod

 Grant & Eisenhofer

represented Highbridge in the bankruptcy court in connection with plan of
reorganization- related matters and at plan-related mediation. Highbridge ultimately
supported Exco's plan of reorganization, resolving the dispute for Highbridge.

Mr. Novod's prominent engagements include:

- The Appvion Liquidating Trust (in litigation against the debtors' former directors,
  officers and others)
- The GCX Limited Liquidating Trust (in litigation against the debtors' former directors
  and officers)
- The High Ridge Brands Liquidating Trust (in litigation against the debtors' former
  directors, sponsor, and sponsor-affiliated lender)
- The GBG USA Litigation Trust
- The Refco Litigation Trust
- The Synergy Pharmaceuticals Litigation Trust
- *Diverse Partners LP, et al. v. AgriBank, FCB* (plaintiffs and *ad hoc* noteholder
  committee)
- *AMCO Ins. Co., et al v. CoBank, ACB* (plaintiffs and *ad hoc* noteholder committee)
- Caesars Entertainment Operating Company, Inc. (unsecured noteholder and proposed
  class representative)
- Erin Energy Corp. (state court litigant and special counsel to a Chapter 7 trustee)
- Exco Resources, Inc. (secured lender)
- ShengdaTech, Inc. (*ad hoc* noteholder committee)
- Chesapeake Energy Corp. (unsecured noteholders and proposed class representatives)
- Cliffs Natural Resources (unsecured noteholders and proposed class representatives)
- Vanguard Natural Resources (unsecured noteholders and proposed class representatives)
- Alpha Natural Resources, Inc. (state court litigant)
- CJ Holding, Co. (state court litigant)
- SunEdison, Inc. (state court litigant)
- Tribune Company** (indenture trustee and member of the creditors' committee)
- Central European Distribution Corporation** (*ad hoc* committee of convertible
  noteholders)
- Lyondell Chemical Company** (creditors' committee)
- Herbst Gaming, Inc.** (creditors' committee)
- Lehman Brothers** (*ad hoc* consortium of claimholders of Lehman Brothers Special
  Financing, Inc.)
- Green Valley Ranch Gaming, LLC** (*ad hoc* committee of second lien lenders)
- Palm Harbor Homes, Inc.** (indenture trustee and member of the creditors' committee)
- Equisearch Services, Inc.** (trade creditor)
- General Motors Corporation** (n/k/a Motors Liquidation Company) (creditors'
  committee)
- Charter Communications, Inc.** (*ad hoc* first lien lenders)
- Bridgeport Holdings, Inc.** (f/k/a Micro Warehouse, Inc.) (debtors)
- Midway Games, Inc.** (secured lender)
- Bethlehem Steel Corp.** (creditors' committee)

G|E  Grant & Eisenhofer

- WCI Steel, Inc.** (*ad hoc* noteholders' committee and indenture trustee)
- Delphi Corp.** (trade creditor and member of the creditors' committee)
- Grace Industries, Inc.** (creditors' committee)
- Wave Wireless Corp.** (secured lender)
- Diomed, Inc.** (licensor and chairman of the creditors' committee)
- TransCare Corp.** (creditors' committee)
- Buffets Holdings, Inc.** (ad hoc noteholders' committee)
- ASARCO LLC** (majority noteholders)
- WestPoint Stevens, Inc.** (second lien agent)

** denotes Mr. Novod's representations prior to joining G&E

Mr. Novod has been a featured panelist and/or moderator on topics involving distressed situations, indenture litigation, indenture analysis, and fraudulent conveyance litigation, including:

- Panelist, "Making the Most of a Litigation Trust's Retained Causes of Action," American Bankruptcy Institute's Annual Winter Leadership Conference (December 9, 2022)
- Discussion Leader, "U.S. Insolvency Trends and the Offshore Impact" and "International Litigation Update," Institutional Investor Educational Foundation – Grand Cayman Roundtable (November 17, 2022)
- Presenter, "Decoding the Texas Two-Step from a Plaintiff's Perspective," Grant & Eisenhofer Webinar (May 3, 2022)

- Presenter, "Business Interruption Insurance Claims in Bankruptcy; An Unappreciated Asset Class for Debtors and Creditors," Grant & Eisenhofer Webinar (March 9, 2021)
- Presenter, "Current Issues in Fraudulent Transfer Law," Grant & Eisenhofer Webinar (October 14, 2020)
- Discussion Leader, "In Pari Delicto under U.S. Law," Institutional Investor Educational Foundation – Grand Cayman Roundtable (February 12, 2020)
- Discussion Leader, "Minority Rights: Strategies for Protecting your rights with respect to Loans, Bonds and Common Shares," Institutional Investor Educational Foundation – Bankruptcy Litigation Roundtable (October 25, 2019)
- Discussion Leader, "In Pari Delicto," Institutional Investor Educational Foundation – Bankruptcy Litigation Roundtable (October 25, 2019)
- Discussion Leader, "Director Duties in Restructurings," Institutional Investor Educational Foundation – Bankruptcy Litigation Roundtable (November 30, 2018)
- Moderator, "Current Issues in Bankruptcy & Antitrust," Institutional Investor Educational Foundation – 17us Global Shareholder Activism Conference (November 30 - December 1, 2017)
- Speaker, "Out-of-Court Restructuring and the Trust Indenture Act," Institutional Investor Legal Forum Fall 2016 Roundtable (October 28, 2016)
- Discussion Leader, "E&P Restructurings - A Landscape Unlike Traditional Restructurings," Institutional Investor Educational Foundation - Bankruptcy Litigation Roundtable (October 6, 2016)

G&E  Grant & Eisenhofer

- Discussion Leader, "Fraudulent Conveyance Actions, the Trust Indenture Act and No Action Clauses - New Rights for Bondholders?" Institutional Investor Educational Foundation - Bankruptcy Litigation Roundtable (October 21, 2015)

Mr. Novod's select publications include:

- "ERISA Pre-Emption Does Not Offer a "Get Out of Jail Free Card" for an ESOP's D&Os," *American Bankruptcy Institute Journal*, November 2021
- "The Next Chapter; When a defendant files for bankruptcy, it triggers a unique set of procedures, standards, and deadlines. Here's an overview of how the bankruptcy system works and where your client's claim fits in," *Trial Magazine*, May 2021

Prior to joining G&E, Mr. Novod was a partner in the bankruptcy & corporate restructuring group at Brown Rudnick in New York. He also formerly practiced in the corporate restructuring and bankruptcy group at Kramer Levin Naftalis & Frankel LLP.

Mr. Novod received his J.D. from the Benjamin N. Cardozo School of Law at Yeshiva University, and his B.A. from Emory University.

**Kelly L. Tucker**

Kelly Tucker is a principal at Grant & Eisenhofer, where she focuses her practice on environmental, consumer, and securities litigation and corporate governance.

Ms. Tucker has played a significant role in G&E's corporate governance and appraisal practices, trying numerous cases in the Court of Chancery, including *In re Ebix, Inc. Stockholder Litigation*, challenging an alleged excessive executive compensation plan for the company's chief executive officer. Following trial, the parties settled including a renegotiation of the CEO's bonus plan, which the Court valued at over $53 million. Ms. Tucker also was an integral part of the trial team in *In re The Williams Companies, Inc. Stockholder Litigation*, which resulted in a landmark judgment following an expedited trial in favor of plaintiffs enjoining the company's poison pill. In *In re Tesla Motors, Inc. Stockholder Litigation*, Ms. Tucker represented institutional plaintiffs in achieving a $60 million partial settlement with several defendants in an action on behalf of Tesla stockholders regarding the Company's acquisition of SolarCity Corporation.

Prior to joining G&E, Ms. Tucker worked at a Philadelphia area law firm practicing antitrust, consumer protection, and products liability litigation. She received her J.D. from Fordham University School of Law in 2010, where she was the Executive Notes and Articles Editor of the *Fordham Journal of Corporate and Financial Law* and a member of the Executive Board of Fordham Law Moot Court. She received her B.A. in international politics from American University in 2003.

**Viola Vetter**


Grant & Eisenhofer

Viola Vetter is a principal at Grant & Eisenhofer where she focuses on sovereign and public entity representation, primarily in matters seeking to redress environmental contamination.

Ms. Vetter currently represents several state Attorneys General and municipalities in environmental litigation. In that role, she is prosecuting claims against Monsanto Co. arising out of that company's production, marketing, and sale of toxic PCBs, which now contaminate natural resources throughout the nation, and against 3M Co., DuPont, Chemours, and other manufacturers of toxic PFAS chemicals and PFAS-laced products, which now contaminate groundwater, drinking water, and other public resources. Ms. Vetter is also involved in a number of site-specific investigations and litigations concerning the historic disposal and emissions of environmental contaminants.

Ms. Vetter also represents investors in corporate governance and securities litigation, including in cross-border disputes.

Prior to joining Grant & Eisenhofer, Ms. Vetter was an associate at an international law firm, resident in Philadelphia, representing corporate clients in complex commercial, consumer and qui tam matters in state and federal courts.

Ms. Vetter earned her J.D. from Temple University Beasley School of Law in 2007, where she was a member of the *Temple Political & Civil Rights Law Review*. She received her B.S. in International Business and Political Philosophy, *magna cum laude*, from Elizabethtown College in 2004.

Ms. Vetter was selected to the 2015-2016 Pennsylvania *Super Lawyers* Rising Stars list for Business Litigation. She is fluent in English and German.

**Lisa B. Weinstein**

Lisa Weinstein is a principal at Grant & Eisenhofer and leads the firm's birth injury litigation division. Her practice primarily focuses on representing women and children in birth injury and birth trauma litigation.

Prior to joining G&E, Ms. Weinstein founded The Weinstein Law Group, where she represented children who were victims of medical malpractice and birth injuries. In her practice as a plaintiffs' trial lawyer, Ms. Weinstein has successfully litigated personal injury, medical malpractice and birth injury matters resulting in over $330 million in settlements and verdicts. Representative of Ms. Weinstein's work is a $12.5 million settlement in which her client's child suffered brain damage due to lack of oxygen during the labor and delivery process, and over 25 other seven-figure settlements.

In 2022, Ms. Weinstein was selected as one of the "Top 100 - Civil Plaintiffs" by the National Trial Lawyers for the second year in a row. For the past four years, Ms. Weinstein was selected for inclusion to the Illinois *Super Lawyers* list. For eight years prior, she was selected to Illinois *Super Lawyers'* list of Rising Stars. Ms. Weinstein was also named to the National Law Journal's list of Plaintiffs' Lawyers Trailblazers for 2020. She has also been honored by The National Trial

 Grant & Eisenhofer

Lawyers in the "Top 40 Under 40" for the past seven years. In 2018, Ms. Weinstein was named to the list of Law360's Personal Injury & Medical Malpractice Rising Stars and was selected to receive the Lifetime Achievement award by America's Top 100 Attorneys®. In May 2017, Ms. Weinstein authored "Understanding Newborn Strokes," published in *Trial* magazine.

In 2018, Ms. Weinstein spoke at the American Association for Justice Annual Convention covering "The Initial Intake and Investigation of Birth Injury Cases - An Approach to Managing Risk," and presented at the American Conference Institute Obstetric Malpractice Claims forum speaking on "Induced Labor Malpractice: Exploring Pitocin Complications and Injuries." Ms. Weinstein spoke at the 2016 North American Brain Injury Society's annual conference, covering "Representing Children with Acquired TBI," and at the 2015 New Jersey Association for Justice seminar covering "When Medical Malpractice and Mass Tort Overlap."

Ms. Weinstein is a member of the Women's Bar Association of Illinois and Board Member of the Illinois Trial Lawyers Association. She is a member of the Million Dollar Advocates Forum as well as the Multi-Million Dollar Advocates Forum, recognized for her work in obtaining several notable settlements and verdicts. Additionally, she served as co-chair of the American Association for Justice Birth Trauma Litigation Group and an Arbitrator for the Circuit Court of Cook County.

Ms. Weinstein earned an undergraduate degree from the University of Michigan and graduated *cum laude* from DePaul University College of Law.

**Cynthia A. Calder**

Cynthia Calder is of counsel at Grant & Eisenhofer. She concentrates her practice in the areas of corporate governance and securities litigation. She has represented shareholders in such seminal cases in the Delaware Court of Chancery as *UniSuper Ltd. v. News Corp.*, vindicating the shareholders' right to vote; *Carmody v. Toll Brothers*, finding the dead-hand poison pill defensive measure was illegal under Delaware law, *Jackson National Life Insurance Co. v. Kennedy*, breaking new ground in the interpretation of fiduciary duties owed to preferred shareholders; *Haft v. Dart Group Corp.*, resolving a contest for control of a significant public corporation; and *Paramount Communications Inc. v. QVC Network*, obtaining an injunction preventing the closing of a merger to force the board of directors to appropriately consider a competing bid for the corporation. More recently, Ms. Calder prosecuted a derivative suit on behalf of American International Group, Inc. shareholders against the company's former CEO, Maurice Greenberg, and other former AIG executives. The action was concluded for a settlement of $115 million – one of the largest such settlements in the history of the Delaware Court of Chancery. Ms. Calder was also the Court-appointed representative on the shareholder counsel's committee in the *UnitedHealth Group* derivative litigation, which was settled for more than $900 million – the largest known derivative settlement in any court system. Ms. Calder also prosecuted a shareholder class action, *In re ACS Shareholder Litigation*, which resulted in one of the largest class recoveries in the history of the Court of Chancery.

Ms. Calder has co-authored numerous articles on corporate governance and securities litigation, including "Options Backdating from the Shareholders' Perspective" *Wall Street Lawyer*, Vol. 11, No. 3; "Securities Litigation Against Third Parties: Pre-Central Bank Aiders and Abettors

 Grant & Eisenhofer

Become Targeted Primary Defendants" *Securities Reform Act Litigation Reporter*, Vol. 16, No. 2; and "Pleading Scienter After Enron: Has the World Really Changed?" *Securities Regulation & Law*, Vol. 35, No. 45.

Ms. Calder graduated *cum laude* from the University of Delaware in 1987 and graduated from the Villanova University School of Law in 1991. Upon graduating from law school, Ms. Calder served as a Judicial Law Clerk in the Delaware Court of Chancery to the Honorable Maurice A. Hartnett, III. Prior to joining Grant & Eisenhofer, Ms. Calder was an associate at Blank, Rome, Comisky & McCauley.

**Karin E. Fisch**

Karin Fisch is of counsel at Grant & Eisenhofer, and has over 28 years of litigation experience. Prior to joining G&E, Ms. Fisch was a partner at the New York office of a national law firm where she focused on complex class action litigation, including securities, antitrust, ERISA and employment matters. Ms. Fisch also has significant experience representing individuals and funds, both domestic and foreign, seeking to recover investment losses.

Ms. Fisch earned her J.D. from Fordham University School of Law and received her undergraduate degree from Cornell University.

**John C. Kairis**

John Kairis is of counsel at Grant & Eisenhofer, where he represents institutional investors in class action litigation, individual "opt-out" securities litigation, and derivative, corporate governance, and appraisal litigation in the Delaware Chancery Court and other courts throughout the country. He has been a leader of G&E teams that have achieved some of the largest recoveries in securities class action history, and played major roles in the *Tyco, Parmalat, Marsh & McLennan, Hollinger International* and *Dollar General* securities class actions, and opt-out actions in *AOL Time Warner* and *Telxon Corporation.*

Among his Delaware Chancery Court litigation experience is a landmark case against HealthSouth, involving a books and records trial under Section 220 of the Delaware General Corporations Law, to obtain certain documents that the corporation refused to produce, which led to a settlement implementing corporate governance improvements, such as HealthSouth's agreement to replace its conflicted directors with independent directors approved by a committee which included the institutional investor plaintiff; and a settlement of litigation against Oracle Corporation, Larry Ellison and the other members of Oracle's board, whereby plaintiffs alleged that Ellison's control over Oracle and Pillar Data Systems led to an unfair process resulting in Oracle's agreement to pay a grossly excessive and unfair price for Pillar in the form of a novel "earn out." The settlement provided a monetary benefit of approximately $440 million resulting from a required reduction in the purchase price for Pillar.  More recently, Mr. Kairis represented the class of shareholders of Starz against cable mogul John Malone and other Starz directors alleging their breaches of fiduciary duty in negotiating and approving the sale of Starz to Lions Gate Entertainment Corp. for an unfair price.   That case resolved with a $92.5 million cash payment to the shareholder class.

 Grant & Eisenhofer

Mr. Kairis has also been instrumental in prosecuting consumer class actions involving unfair competition and false marketing claims against various companies for misrepresentations relating to cosmetics and against both Johnson & Johnson and Bausch & Lomb for misrepresentations relating to contact lenses and solutions. He has represented the lead plaintiffs and the class in a securities fraud suit against Merck & Co. and certain of its officers and directors relating to the defendants' alleged suppression of test results of Merck's cholesterol medication Vytorin.

Mr. Kairis has also represented petitioners in several appraisal actions and currently represents the lead plaintiffs in various breach of fiduciary duty cases pending in the Delaware Chancery Court.

Mr. Kairis has authored articles including "Shareholder Proposals For Reimbursement Of Expenses Incurred In Proxy Contests: Recent Guidance From The Delaware Supreme Court," *PLI*, What All Business Lawyers Must Know About Delaware Law Developments 2009 (New York, NY May 21, 2009) (co-authored with Stuart Grant); "Challenging Misrepresentations in Mergers: You May Have More Time Than You Think," *Andrews Litigation Reporter*, Vol. 12, Issue 3, June 14, 2006; "Disgorgement Of Compensation Paid To Directors During The Time They Were Grossly Negligent: An Available But Seldom Used Remedy," *Delaware Law Review*, Vol. 13, #1, 2011; and was the principle writer of an *amicus* brief to the United States Supreme Court on behalf of various public pension funds in the *Merck* case involving the standard for finding that a plaintiff is on "inquiry notice" of potential claims such that the limitations period for pleading securities fraud has commenced.

Mr. Kairis has served on the boards of several nonprofit organizations, including the West-End Neighborhood House, Inc., the Cornerstone West Development Corporation, and the board of the Westover Hills Civic Association. He has also served on the Delaware Corporation Law Committee, where he evaluated proposals to amend the Delaware General Corporation Law.

Mr. Kairis is a 1984 graduate of the University of Notre Dame and a 1987 graduate of the Ohio State University Moritz College of Law, where he was Articles Editor of the *Ohio State Law Journal* and recipient of the American Jurisprudence and John E. Fallon Memorial Awards for scholastic excellence. He is a member of the Delaware and American Bar Associations and the Delaware Trial Lawyers Association.

**Nadia Klein**

Nadia Klein is of counsel at Grant & Eisenhofer. Her practice focuses on representing investors and other plaintiffs in high-stakes commercial, complex financial products and securities litigation in state and federal court, as well as claimants in U.S. domestic and international arbitration. Based in London, England, she works with G&E's institutional investor clients in the U.K. and Europe.

Prior to joining Grant & Eisenhofer, Ms. Klein was of counsel at a U.S. litigation boutique. Prior to that, she was a senior associate at a leading New York litigation firm, where she spent almost

 Grant & Eisenhofer

seven years representing various plaintiffs in multiple residential mortgage-backed securities actions together seeking more than $6 billion.

Ms. Klein received her B.A. from Cornell University in 2003 and her J.D. from Fordham University School of Law in 2011. She also attended the London School of Economics & Political Science and the International Academy for Arbitration Law in Paris, France.

**Richard S. Schiffrin**

Richard S. Schiffrin is of counsel at Grant & Eisenhofer. He has represented institutional investors and consumers in securities and consumer class actions worldwide. In 2008, Mr. Schiffrin retired as a founding partner of Schiffrin Barroway Topaz & Kessler, LLP.

Mr. Schiffrin has been recognized for his expertise in many prominent cases, including *In re Tyco International Ltd. Securities Litigation*, the most complex securities class action in history, which resulted in a record $3.2 billion settlement. The $2.975 billion payment by Tyco represents the single largest securities class action recovery from a single corporate defendant in history, while the $225 million settlement with PricewaterhouseCoopers (PwC) represents the largest payment PwC has ever paid to resolve a securities class action and is the second-largest auditor settlement in securities class action history; *In re AremisSoft Corp. Securities Litigation*, a complex case involving litigation in four countries, resulting in a $250 million settlement providing shareholders with a majority of the equity in the reorganized company after embezzlement by former officers; *In re Tenet Healthcare Corp.*, resulting in a $216.5 million settlement and which led to several important corporate governance improvements; *Henry v. Sears, et al.*, one of the largest consumer class actions in history which resulted in a $156 million settlement distributed without the filing of a single proof of claim form by any class member; *Wanstrath v. Doctor R. Crants, et al.*, a derivative action filed against the officers and directors of Prison Realty Trust, Inc., challenging the transfer of assets to a private entity owned by company insiders, resulting in corporate governance reform in addition to the issuance of over 46 million shares to class members; *Jordan v. State Farm Insurance Company*, resulting in a $225 million settlement and other monetary benefits for current and former State Farm policy-holders; and *In re Sotheby's Holdings, Inc. Derivative Litigation*, resulting in a multi-million dollar settlement and significant governance changes.

Mr. Schiffrin is an internationally renowned speaker and lectures frequently on corporate governance and securities litigation. His lectures include: the MultiPensions Conference in Amsterdam, Netherlands; the Public Funds Symposium in Washington, D.C.; the European Pension

Symposium in Florence, Italy; and the Pennsylvania Public Employees Retirement Summit (PAPERS) in Harrisburg, Pennsylvania. Mr. Schiffrin has also taught legal writing and appellate advocacy at John Marshall Law School and served as a faculty member at legal seminars, including the Annual Institute on Securities Regulation, NERA: Finance, Law & Economics - Securities Litigation Seminar, the Tulane Corporate Law Institute, and the CityBar Center for CLE (NYC): Ethical Issues in the Practice of Securities Law.

 Grant & Eisenhofer

Mr. Schiffrin is a graduate of DePaul Law School and received a Master's degree in Political Science from the University of Chicago. After protecting the civil rights of clients for seven years as an Assistant Public Defender with the Office of the Public Defender of Cook County, where he tried hundreds of cases, Mr. Schiffrin founded Schiffrin & Craig, Ltd., representing consumers and individual investors in actions brought against public companies. He is licensed to practice law in Pennsylvania and Illinois and has been admitted to practice before numerous United States District Courts.

**David Wissbroecker**

David Wissbroecker is of counsel at Grant & Eisenhofer where he focuses on corporate governance and securities litigation in Delaware Chancery Court.

Prior to joining G&E, Mr. Wissbroecker was a partner at national law firm where he practiced securities class action litigation concerning mergers and acquisitions, representing institutional investors as well as individual shareholders. His casework includes litigating several matters in Delaware and other jurisdictions, including shareholder class actions against Dole, Kinder Morgan, Del Monte Foods, Scana, Websense, Harman, Precision Castparts, Dollar General, Onyx, and Gardner Denver, among other high-profile matters.

Mr. Wissbroecker was recognized by *Lawdragon* as a Leading Plaintiff Financial Lawyer (2020-2021), honored by *The Legal 500* as a Recommended Lawyer (2019), and selected for inclusion to *SuperLawyers' list of* Rising Stars (2015).

Mr. Wissbroecker earned his J.D. from University of Illinois College of Law, and his B.A. from Arizona State University.

**Paige J. Alderson**

Paige Alderson is senior counsel at Grant & Eisenhofer where she focuses her practice on complex and mass tort litigation as well as sexual assault and retaliation claims. Ms. Alderson is a zealous advocate for the rights of individuals and families harmed by large corporations as well as survivors of sexual assault, discrimination and harassment.

Ms. Alderson actively represents thousands of injured victims in nationally coordinated litigations against major pharmaceutical companies, including:

- *Gilead Tenofovir Cases* (JCCP No. 5043), representing members of the HIV community injured by Gilead Sciences, Inc.'s negligent design of tenofovir-based antiretroviral medications;

- *Baby Formula Cases*, representing infants and their families injured by Mead Johnson and Abbott Laboratories' failure to warn that their cow's milk-based formulas can cause serious injury and even death when fed to pre-term babies;

 Grant & Eisenhofer

- *In re: Philips Recalled CPAP, Bi-Level PAP, and Mechanical Ventilator Products Litigation* (MDL. No. 3014), representing individuals suffering respiratory injuries, cancer and death as a result of Philips' negligence and failure to warn of the potentially life-threatening risks that polyester-based polyurethane sound abatement foam used in the device can degrade, break down, and release toxic particulates and VOCs into the airway of the user;

- *In re Smith & Nephew Birmingham Hip Resurfacing (BHR) Hip Implant Products Liability Litigation* (MDL No. 2775); and *In re Stryker LFIT V40 Femoral Head Products Liability Litigation* (MDL No. 2768), representing individuals injured by Metal-on-Metal hip devices.

Ms. Alderson also played an integral role in the *In re Essure Product Cases* (JCCP 4887) settlement, which provided $1.6 billion in overall compensation to women suffering severe injuries from the permanent birth control device Essure.

Prior to joining G&E, Ms. Alderson gained valuable litigation experience at a regional defense litigation firm where she focused her practice in the areas of toxic tort and products liability.

A former G&E law clerk, Ms. Alderson completed a number of legal clerkships and internships while completing her law degree, including an internship with Exelon's General Counsel, and several regional defense firms. Immediately following law school, Ms. Alderson served as a judicial law clerk to The Honorable William C. Carpenter, Jr. of the Complex Commercial Litigation Division in the Superior Court of Delaware.

Ms. Alderson earned her J.D. from Villanova University School of Law in 2014, where she advocated for low-income clients in their struggle with Social Security, Medicare/Medicaid and Insurance benefits through her work with the Health Law Clinic. She received her B.S. in Leadership from the University of Delaware in 2009.

**Charles C. Bletsas**

Charles Bletsas is senior counsel at Grant & Eisenhofer, where his primary area of practice is representing families and children in birth injury and birth trauma litigation.

Prior to joining G&E, Mr. Bletsas was a partner at a Chicago firm focusing on medical malpractice defense and general civil litigation. With a record of trial success spanning over 20 years, Mr. Bletsas' entire career has been heavily focused on birth trauma cases, having litigated traumatic birth injury claims such as hypoxic ischemic injuries, brachial plexus injuries, and neonatal complications.

Mr. Bletsas is also skilled in attorney malpractice claims involving fiduciary issues, litigating complex financial fraud claims, commercial contracts, and construction negligence disputes.

 Grant & Eisenhofer

Mr. Bletsas received his J.D., *cum laude*, from Wayne State University, where he served as a Senior Articles Editor of the *Wayne Law Review*. He received his B.A. in economics from the University of Michigan.

**Alice Cho Lee**

Alice Cho Lee is senior counsel at Grant & Eisenhofer, where she works on securities fraud class actions and international litigation and arbitration cases.

Ms. Cho Lee is part of G&E's international litigation team that represents institutional investor plaintiffs in securities class actions and investment arbitrations in many countries around the world. Current cases include actions against:

- Danske Bank, in a securities litigation in Denmark based on Danske Bank's massive money-laundering scheme and subsequent cover-up
- Republic of Cyprus, in an international investment arbitration before the Wordlbank on behalf of almost one thousand Greek investors
- Petróleo Brasileiro ("Petrobras"), in an international securities litigation before Brazil's leading arbitration chamber
- Volkswagen and Porsche, in securities actions in Germany
- Banco Espirito Santo/Novo Banco, in several proceedings in Portugal
- Mitsubishi, in a securities litigation in Japan
- Postbank, in a securities action in Germany
- Steinhoff, in a securities damages action before the Amsterdam District Court and an Inquiry proceeding before the Netherlands' Enterprise Chamber
- BHP, in an Australian class action in which our class/group includes the class representative
- Toshiba, in a securities litigation in Japan

At G&E, Ms. Cho Lee served as a member of the co-lead counsel litigation team for several of the largest securities class actions in the United States including:

- Marsh & McLennan, a U.S. securities class action, settled for $400M
- Merck (Vytorin), a U.S. securities class action that settled for $215M
- JP Morgan Chase & Co., a U.S. securities class action that settled for $150M

Ms. Cho Lee served on the board of the Korean American Lawyers Association of Greater New York (KALAGNY) for seven years and is an active member of the National Asian Pacific American Bar Association (NAPABA), the Asian American Bar Association of New York (AABANY), and KALAGNY. During law school, Ms. Cho Lee interned as a law clerk for the Honorable Frederic Block, U.S. District Court, Eastern District of New York. She has also worked at the New York City Human Rights Commission and the Asian American Legal Defense and Education Fund.

 Grant & Eisenhofer

Ms. Cho Lee graduated from Brooklyn Law School in 2004 and received a B.A. in English from the University at Albany.

**Jonathan Davenport**

Jonathan Davenport is senior counsel at Grant & Eisenhofer, focusing his practice on securities fraud class actions and international litigation and arbitration cases.

Prior to joining G&E, Mr. Davenport was counsel in the New York office of a large national law firm concentrating on complex commercial and regulatory litigation and investigations in the U.S. and internationally.

Prior to becoming an attorney, Mr. Davenport served as an Inspector in the Royal Hong Kong Police and served in the British Army.

Mr. Davenport earned his LLB from the University of London. He took the Legal Practice Course at the College of Law and trained at one of the leading firms in London before qualifying as a Solicitor of the Supreme Court of England and Wales.

**Frank "T.J." Griffin**

TJ Griffin is senior counsel at Grant & Eisenhofer where he focuses his practice on bankruptcy litigation. Mr. Griffin has over 20 years of litigation experience in complex commercial litigation and government investigations. Prior to joining G&E, Mr. Griffin was counsel at the Philadelphia office of a national law firm, where he represented clients in bankruptcy litigation, and regularly advised clients on antitrust matters and international arbitrations.

Mr. Griffin earned his J.D. from The George Washington University Law School, where he earned High Honors and was a member of *The George Washington Law Review*. He received his B.S. in Biology from Washington and Lee University.

**Laina M. Herbert**

Laina Herbert is senior counsel at Grant & Eisenhofer focusing her practice on  sovereign and public entity representation, and consumer protection litigation.  She also provides litigation services to public entities to pursue actions concerning the marketing and sale of dangerous products, such as Zantac/ranitidine.

In addition, Ms. Herbert represents numerous relators in confidential whistleblower actions under the federal and various state False Claim Acts, pursuing misconduct in diverse fields including medical and mental healthcare, residential mortgage lending, defense contracting, retail, and other industries.

Prior to Joining G&E, Ms. Herbert was senior counsel practicing complex ligation at a Delaware law firm. Ms. Herbert also has extensive experience representing corporations, their directors and stockholders in corporate and commercial ligation relating to fiduciary duties, mergers and

 Grant & Eisenhofer

acquisitions, corporate governance, and other issues concerning Delaware law. Her experience also includes federal patent infringement and intellectual property litigation in the U.S. District Court for the District of Delaware.

Ms. Herbert is the Content Editor of *The Journal of The Delaware State Bar Association* and served on the ACLU of Delaware's Kandler Committee.

Ms. Herbert earned her J.D. *with honors* from the University of Maryland Francis King Carey School of Law in December 2004 where she served as an Associates Articles Editor of *The Business Lawyer*. She earned a B.S. in Biology, B.A. in Leadership Studies and minor in Women's Studies from the University of Richmond in 2000.

**Chad B. Holtzman**

Chad Holtzman is senior counsel at Grant & Eisenhofer, focusing his practice on recovering damages for businesses and consumers harmed by violations of the federal and state antitrust laws, including price-fixing and monopolization.

Currently, Chad is a member of leadership teams representing clients in high-profile antitrust cases in the pharmaceutical, financial services, and commodities industries, including: *In re Blue Cross Blue Shield Antitrust Litigation*, *In re London Silver Fixing, Ltd. Antitrust Litigation*, *In re Generic Pharmaceuticals Pricing Antitrust Litigation*, *In re Novartis and Par Antitrust Litigation (Exforge)*, *In re: Humira (Adalimumab) Antitrust Litigation,* and *In re: Lipitor Antitrust Litigation*, among others.

Prior to joining Grant & Eisenhofer, Mr. Holtzman worked as an associate at the Philadelphia office of a national Am Law 100 law firm where he defended corporate defendants in antitrust and other complex commercial litigation.

Mr. Holtzman is a member of the Committee to Support the Antitrust laws (COSAL), established to preserve and enhance the private enforcement of strong antitrust laws. He is a member of the American Antitrust Institute and the American Bar Association's Antitrust Division. Finally, Chad serves on the National Board for the Jewish National Fund Young Professionals Division as its Vice President. He is also a Board Member of the International Alliance for Child Literacy, a non-profit charity that empowers children by establishing libraries at orphanages.

Mr. Holtzman earned his J.D., *cum laude*, from Villanova University School of Law in 2009 where he was the Associate Editor for the *Villanova Environmental Law Journal*. Mr. Holtzman earned his B.S. in economics from Hamilton College in 2006.

**Maram M. Jafar**

Maram Jafar is an associate at Grant & Eisenhofer where her practice is focused on complex litigation matters.

 Grant & Eisenhofer

Prior to joining G&E, Ms. Jafar had a solo practice in Bensalem, PA where she handled personal bankruptcies and immigration matters. Ms. Jafar also worked at a small boutique firm in Philadelphia, PA where she handled personal injury cases.

Ms. Jafar earned her J.D. from Widener University Delaware Law School and her B.A. in Political Science from Temple University.

**Irene R. Lax**

Irene Lax is senior counsel at Grant & Eisenhofer, focusing her practice on civil rights litigation. Ms. Lax is a vigorous advocate for survivors of sexual assault and victims of discrimination, wrongful incarceration, and other forms of harassment. Ms. Lax also litigates Title IX sexual assault actions and matters related to federal detention reform. Her current representations include:

- *Soenen et al. v. Brown University* (D. R.I.), a proposed class action on behalf of current and former Brown students, alleging Title IX and other violations resulting from the University's systemic failure to adequately respond to and prevent incidents of sexual harassment and assault on campus.

- *Romero-Garcia v. CoreCivic, Inc.* (M.D. Ga.), a wrongful death action also alleging Section 504 and other state law related claims against CoreCivic, Inc. for its role in the death of Efrain Romero de la Rosa, a 38-year-old man who lived with acute schizophrenia and died by suicide while detained in solitary confinement at Stewart Detention Center as a means to control his mental illness. Efrain's suicide was the second death by suicide of a mentally-ill detainee at this facility in just over one year.

- *Aguirre-Jarquin v. Hemmert et al.* (M.D. Fla.), an action alleging Section 1983 and related claims against defendants relating to the investigation leading to plaintiff's death row sentence and 14 years of wrongful incarceration for two murders that he did not commit.

- *Youngers v. LaSalle Corrections Transport LLC, et al.* (D.N.M.), a wrongful death action also alleging violations of Section 504 and other state law claims against the United States of America and its government contractors for their role in the death of Roxsana Hernandez, a transgender Honduran asylum-seeker who died while in ICE custody.

Ms. Lax was previously in-house counsel at a real estate company in New York City assisting with litigation and transactional legal business matters.
She also worked as an associate at a well-known Philadelphia-area law firm, where she assisted clients in civil litigation brought under federal and state securities laws, as well as federal antitrust laws. Upon graduating from law school, Ms. Lax served as law clerk for the Honorable Carolyn Berger, Supreme Court of the State of Delaware, from 2012-2013.

 Grant & Eisenhofer

Ms. Lax earned her J.D. from Temple University Beasley School of Law in 2012 where she was an Editor of the *Temple Law Review* and President of the Phillip C. Jessup International Law Moot Court team. Ms. Lax received a joint honors B.A. in political science and international development studies from McGill University in Montreal, Quebec in 2009.

In September 2022, Ms. Lax co-authored "Failure on Campus—Litigating Title IX," published in *Trial* magazine. Ms. Lax has also co-authored several publications relating to Delaware law and securities litigation.

In 2023, Ms. Lax was selected as one of the "Top 100 for Civil Plaintiffs" by the National Trial Lawyers in the state of New York. For the past two years, Ms. Lax was selected for inclusion to *Super Lawyers*' list of Rising Stars for Civil Rights Litigation, New York Metro region.

**Samantha R. Mertz**

Samantha Mertz is senior counsel at Grant & Eisenhofer, where her primary area of practice is complex and mass tort litigation.  She handles all phases of mass tort and personal injury litigation from commencement through trial.

Ms. Mertz has focused much of her practice on manufacturers of pharmaceuticals and medical devices that have harmed women and children, including Risperdal, Zofran, Transvaginal Mesh, and Essure, and represents victims of the PG&E Camp Wildfire. She is adept at caring for clients who are at their most vulnerable. Ms. Mertz serves on the Law and Briefing Committee for the Plaintiffs' Steering Committee in the Gilead Tenofovir Cases, California Judicial Council Coordinated Proceeding (JCCP) No. 5043, and served on the Law and Briefing Committee and Discovery Committee for the Plaintiffs' Steering Committee in the Essure Cases, California Judicial Council Coordinated Proceeding (JCCP) No. 4887.

Ms. Mertz served as the mass tort law clerk for the Complex Litigation Center under the Honorable Judge Arnold New and the Honorable Judge Sandra Mazer Moss for the First Judicial District of Pennsylvania from 2010-2013. Prior to joining G&E, Ms. Mertz worked at a Philadelphia law firm as a pharmaceutical mass tort litigation attorney, and was selected for inclusion in the Pennsylvania *Super Lawyers* "Rising Star" list for 2014 and 2015.  Ms. Mertz earned her J.D. from Temple University Beasley School of Law in 2010 where she received awards for excellence in Constitutional Law and Outstanding Oral Advocacy in the Integrated Trial Advocacy Program and the Crossen Award at graduation.

Ms. Mertz is a member of and serves on the Executive Committee for the Louis D. Brandeis Law Society.

**Suzanne Sangree**

Suzanne Sangree is senior counsel at Grant & Eisenhofer, focusing her practice on the representation of state and local governments in complex litigation matters stemming from environmental damage and consumer protection.

 Grant & Eisenhofer

Prior to joining Grant & Eisenhofer, Ms. Sangree worked for the City of Baltimore Department of Law for 13 years. She served as the Director of Affirmative Litigation, pursuing environmental, False Claims Act, antitrust, products liability, and consumer-related cases, among other types of litigation. She also held roles as Senior Public Safety Counsel/Chief, Legal Affairs Division; and Chief Solicitor & Director of Training. She additionally served as a member of the Settlement Committee and Executive Committee for the Department of Law.

In 2020, *Bloomberg Law* recognized Ms. Sangree as a Key Player in 2020 Environmental Litigation. In 2015 the International Municipal Lawyers Association awarded Ms. Sangree its distinguished public service award, and she was named a Top 40 Maryland Lawyer in 2014.

Ms. Sangree served as clerk for Judge Andre M. Davis, U.S. District Court, District of Maryland.  Ms. Sangree earned her LL.M. from Harvard Law School and her J.D. from City University of New York Law School at Queens. She received her B.A., *cum laude*, from Wesleyan University.

**Vivek Upadhya**

Vivek Upadhya is senior counsel at Grant & Eisenhofer, focusing on securities, appraisal, whistleblower/*qui tam* and complex pharmaceutical and medical device litigation.

Mr. Upadhya is currently representing clients in a derivative suit against Tesla's board of directors and has previously represented investors challenging mergers, including an action against Regency Energy Partners pending in the Delaware Court of Chancery. Mr. Upadhya was also involved in *In re JPMorgan Chase & Co Securities Litigation* (S.D.N.Y.), which resulted in a $150 million settlement. His other recent work includes Delaware Chancery Appraisal cases *In re Appraisal of Jarden Corporation* and *In re Appraisal of Solera Holdings, Inc.* Additionally, Mr. Upadhya worked on multi-district litigation involving prescription drugs such as Xarelto and Zofran.

Mr. Upadhya received his J.D. from Emory University School of Law, where he served as a managing editor for the *Emory Law Journal*. He received his B.A. in law and political science from the University of Utrecht in the Netherlands, and was born and raised in India.

**Jason H. Wilson**

Jason Wilson is senior counsel at Grant & Eisenhofer where he focuses on sovereign and public entity representation, primarily in matters to address the systemic environmental contamination of public resources. Currently, Mr. Wilson is prosecuting claims against Monsanto Co. arising out of that company's production, marketing, and sale of toxic PCBs, which now contaminate natural resources and municipal stormwater systems throughout the nation, and against 3M Co. and other manufacturers of toxic PFAS chemicals, which contaminate groundwater, drinking water, and other public resources. Mr. Wilson also represents investors and whistleblowers in corporate governance and securities litigation.


Grant & Eisenhofer

Prior to joining Grant & Eisenhofer, Mr. Wilson was an associate at an international law firm, resident in Philadelphia, defending shareholder disputes, consumer class actions, antitrust, bankruptcy, environmental litigation, and government investigations related to the False Claims Act, Anti-Kickback Act and Foreign Corrupt Practices Act. Regarding his experience in shareholder disputes, Mr. Wilson defended numerous securities class actions, derivative suits and various shareholder requests for books and records. Before that, he spent three years in the litigation department of a large New York law firm. Mr. Wilson also served as a law clerk to Judge William H. Walls of the US District Court for the District of New Jersey.

Mr. Wilson earned his J.D. from Columbia Law School in 2004 where he was a Harlan Fisk Stone Scholar, was awarded the Alfred S. Forsyth Prize for dedication to the advancement of environmental law, and served as Editor-in-Chief of the *Columbia Environmental Law Journal*. He received his B.A. in History and a concentration in Environmental Science from Williams College in 1999.

**Carla Agbiro**

Carla Agbiro is an associate at Grant & Eisenhofer, where she focuses on civil rights litigation. Prior to joining G&E, Ms. Agbiro worked as an Assistant District Attorney in the Juvenile Unit of the Philadelphia District Attorney's Office.

Ms. Agbiro earned her J.D. from Northwestern Pritzker School of Law, where she was the Membership & Comment Editor for the *Northwestern Journal of Human Rights*. She triple-majored in Philosophy, Psychology and Political Science at West Chester University. Prior to graduating law school, Ms. Agbiro was a Law Clerk for an employment discrimination firm in Chicago, and a Law Clerk for the Lawyers' Committee for Civil Rights of San Francisco Bay Area. Ms. Agbiro is a native Spanish speaker.

**Jason M. Avellino**

Jason Avellino is an associate at Grant & Eisenhofer where his practice is focused on corporate governance and securities litigation.

Prior to joining G&E, Mr. Avellino spent more than a decade representing product manufacturers, contractors, marine terminal operators, retail establishments, sports venues, and major insurance carriers/brokers (including several Fortune 500 companies) in the defense and evaluation of commercial matters and other civil lawsuits involving severe and catastrophic personal injury or property damage. During that time, he was a member of the International Association of Defense Counsel (IADC); a group of approximately 2,500 invitation-only, peer-reviewed members comprised of the world's leading corporate and insurance lawyers and insurance executives.

Mr. Avellino is licensed to practice in Pennsylvania, New Jersey, and Delaware. He earned his J.D. from Villanova University School of Law and his B.S. in Business Administration, *magna cum laude,* from Bloomsburg University.

 Grant & Eisenhofer

**Simona L. Bonifacic**

Simona Bonifacic is an associate at Grant & Eisenhofer, where her focus is on complex and mass tort litigation. Prior to joining Grant & Eisenhofer, Ms. Bonifacic worked as corporate counsel on commercial real estate and contracts.

Ms. Bonifacic received her J.D. from Syracuse University College of Law in 1998. She is also a 1998 *magna cum laude* graduate of Maxwell School of Citizenship and Public Affairs where she obtained her M.S. in international relations. She received a bachelor's degree in 1994 from East Stroudsburg University in political science and philosophy.

**Samantha L. Breitner**

Samantha Breitner is an associate at Grant & Eisenhofer, where she focuses on civil rights litigation.

Prior to joining G&E, Ms. Breitner worked at a complex litigation law firm in New York practicing securities litigation and representing adult survivors of sexual abuse.

Ms. Breitner graduated from Benjamin N. Cardozo School of Law in 2015, where she was an active member of the *Journal of Law and Gender* and served as Articles Editor. Ms. Breitner received her B.A. from Syracuse University in 2011.

**Leanne P. Brown-Pasquarello**

Leanne Brown-Pasquarello is an associate at Grant & Eisenhofer where she focuses on sovereign and public entity representation, primarily in matters to redress systemic environmental contamination. She currently represents several state Attorneys General and municipalities in environmental litigation. In that role, she is prosecuting claims against Monsanto Co. arising out of that company's production, marketing, and sale of toxic PCBs, which now contaminate natural resources and municipal storm water systems throughout the nation; and against 3M Co. and other manufacturers of toxic firefighting foam laced with toxic PFAS chemicals, which now contaminate groundwater, drinking water, and other public resources. Mrs. Brown-Pasquarello also has experience in securities class actions, shareholder derivative actions, antitrust actions, and appraisal rights.

During her time with Grant & Eisenhofer, she has worked on litigation teams whose efforts resulted in significant awards for their clients, including the following:

- *In re Pfizer, Inc. Securities Litigation*, class action securities litigation, wherein it was alleged that Pfizer misrepresented the cardiovascular safety of its multi-billion-dollar arthritis drugs, and resulted in a $486 million recovery.
- *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*, a major securities fraud action against pharmaceutical industry titan, Merck & Co., Inc., that settled for $215 million.



Grant & Eisenhofer

- *In re MyFord Touch Consumer Litigation*, a consumer class action on behalf of owners of Ford vehicles equipped with allegedly defective infotainment units, which resulted in relief valued at over $33 million.

Prior to joining Grant & Eisenhofer, Ms. Brown-Pasquarello worked at a Philadelphia law firm on mass tort and complex civil litigation matters. She received her law degree from Widener University School of Law, where she wrote on The Law Forum, and was a member of ATLA. She received her B.A. degree in Political Science from University of Delaware, where she was a member of *Phi Sigma Pi* National Honor Society, and *Pi Sigma Alpha* National Political Science Honor Society. She served as Vice President of a political organization on campus.

**Juliana Carter**

Juliana Carter is an associate in Grant & Eisenhofer's environmental protection and consumer protection litigation groups.

Ms. Carter focuses on sovereign and public entity representation, primarily in matters to address the systemic environmental contamination of public resources. Currently, Ms. Carter is prosecuting claims against Monsanto arising out of that company's production, marketing, and sale of toxic PCBs, which now contaminate natural resources and municipal stormwater systems throughout the nation. In addition to environmental litigation, Ms. Carter partners with state Attorneys General and municipalities pursuing consumer protection actions against manufacturers of dangerous products.

Prior to joining G&E, Ms. Carter was a litigation associate at an Am Law 100 law firm headquartered in Philadelphia defending chemical and pharmaceutical manufacturers, financial institutions, universities, and other companies in connection with government investigations and civil actions filed in state and federal court. Ms. Carter also served as a judicial law clerk to the Honorable Paul S. Diamond of the U.S. District Court for the Eastern District of Pennsylvania.

Ms. Carter graduated *magna cum laude*, Order of the Coif, from Temple University Beasley School of Law, where she served as a staff editor of the *Temple Law Review* and as the Director of Advocacy of the School Discipline Advocacy Service, and was awarded the recognition of Fellow of the Rubin Public Interest Law Honor Society. She earned her B.A. in Law and Policy from Dickinson College.

**Mica Cocco**

Mica Cocco is an associate at Grant & Eisenhofer where she focuses on securities litigation. Ms. Cocco joined the firm as an intern, working with the G&E ESG Institute and the firm's corporate litigation practice groups. Prior to joining G&E, Ms. Cocco was a legal intern at an immigration law firm in New York.

Ms. Cocco earned her J.D. from New York Law School and her B.S. in marketing and psychology from the University of Maryland. During law school, Ms. Cocco was the Treasurer of the Jewish Law Student Association.

 Grant & Eisenhofer

**Michelle Cooper**

Michelle Cooper is an associate at Grant & Eisenhofer where she focuses on securities litigation. Previously, Ms. Cooper worked with the firm as a summer associate and an extern for the G&E ESG Institute.

Prior to joining Grant & Eisenhofer, Ms. Cooper was a compliance intern at the Bank of Nova Scotia and a legal intern at Clearpool Group. During her undergraduate studies, Ms. Cooper had the privilege of participating in the J.P. Morgan Chase & Co. Smart Start Scholarship Program where she held positions in Human Resources, Consumer Business Banking Expense Management, Government Investigations and Regulatory Enforcement Legal, and Commercial Banking's Oversight and Control.

Ms. Cooper earned her J.D. from Brooklyn Law School and her B.B.A. from Pace University. Ms. Cooper holds a Business Certificate with Distinction from Brooklyn Law School and received the CALI Excellence for the Future Award in Trial Advocacy.

**Romina Corral**

Romina Corral is an associate at Grant & Eisenhofer, where she focuses on U.S. and international securities litigation and arbitration.

Prior to joining G&E, Ms. Corral worked as an associate for firms in the United States, Belgium, France and Romania. Most recently, she practiced complex class action litigation in the areas of antitrust and consumer protection at a New York law firm.

Ms. Corral graduated from Alexandru Ioan Cuza University, School of Law in 2008 and earned her LL.M. degrees from Fordham University School of Law, College of Europe and Montesquieu Bordeaux IV University School of Law.

**Abigail F. Coster**

Abigail Coster is an associate in Grant & Eisenhofer's securities litigation group. Her practice focuses on representing investors in securities class actions and other high-stakes commercial and financial products litigation in state and federal court.

Before joining G&E, Ms. Coster was an associate at a nationally ranked litigation firm representing clients in a range of complex commercial disputes. Prior to that, she was a litigation associate at an AmLaw 100 firm headquartered in New York, where she spent seven years defending corporate and individual clients in securities litigation, shareholder derivative suits, and proxy fights/proxy litigation, as well as in white-collar criminal proceedings and regulatory enforcement actions involving charges of insider trading, market manipulation, financial fraud, and public corruption.

Ms. Coster was selected for inclusion in *Best Lawyers in America*'s "Best Lawyers: Ones to Watch" list in both 2021 and 2022.

 Grant & Eisenhofer

Ms. Coster earned her J.D. from Columbia Law School, where she was a Harlan Fiske Stone Scholar. She earned her undergraduate degree from the University of Virginia, where she was awarded her B.S., with distinction, from the McIntire School of Commerce.

**Daniel T. Craig**

Daniel Craig is an associate at Grant & Eisenhofer where he focuses his practice on complex and mass tort litigation.

Prior to joining G&E, Mr. Craig worked at a Philadelphia law firm representing clients in catastrophic personal injury, medical malpractice, and civil rights matters.

Mr. Craig earned his J.D. from Temple University's Beasley School of Law in 2021, where he was a member of the school's nationally renowned trial team, and received his B.A. from Temple University in 2014.

**Marc E. Davies**

Marc Davies is an associate at Grant & Eisenhofer. Prior to joining G&E, Mr. Davies was a shareholder at a Philadelphia law firm practicing environmental litigation involving PCBs.

He is currently an adjunct professor at Rutgers University School of Law, teaching environmental litigation, environmental business, and writing.

Mr. Davies earned his J.D. from Temple University's Beasley School of Law in 1997, where he was an Associate Member of *Temple Environmental Law and Technology Journal*. He received his M.A. in environmental science from University of Pennsylvania, where he also earned his B.A.

**Andrew N. Dodemaide**

Andrew Dodemaide is an associate at Grant & Eisenhofer. Prior to joining G&E, Mr. Dodemaide worked at a law firm in Philadelphia where he practiced domestic and international securities litigation. Mr. Dodemaide also worked for a large complex litigation firm as an associate on the new matter development team.

Mr. Dodemaide received his B.A. from Rutgers University and earned his J.D. from Rutgers University School of Law, where he was the Editor-in-Chief of the *Rutgers Journal of Law and Public Policy*. While a law student, Mr. Dodemaide taught Constitutional Law at a high school in Camden, New Jersey through the Marshall Brennan Constitutional Literacy Project. Upon graduation, Mr. Dodemaide clerked for the Honorable Jack M. Sabatino at the New Jersey Superior Court, Appellate Division.

**Caley DeGroote**

 Grant & Eisenhofer

Caley DeGroote is an associate at Grant & Eisenhofer, where her focus is on complex and mass tort litigation as well catastrophic personal injury litigation. She handles matters from client intake through resolution, including trial.

Prior to joining G&E, Ms. DeGroote advocated for plaintiffs injured in personal injury and medical malpractice cases. Ms. DeGroote also served as law clerk to the honorable Judge Frank K. Friedman on the Court of Appeals of Virginia and to the 23rd Judicial Circuit of Virginia.

Ms. DeGroote received her J.D. from Washington and Lee University School of Law, where she was the Executive Editor for the *Journal of Civil Rights and Social Justice*. She received her B.A. from Furman University, where she majored in Political Science as well as Communication Studies and received a minor in Ancient Greek and Roman Studies.

**Kerry A. Dustin**

Kerry Dustin is an associate at Grant & Eisenhofer, focusing on corporate securities, corporate governance, appraisal, antitrust, and consumer litigation.

Prior to joining Grant & Eisenhofer, Ms. Dustin focused her practice on intellectual property and patent and employment law. Ms. Dustin served as a law clerk for Onondaga County Resource Recovery Agency (OCRRA). She also did an internship at the Ontario County Attorney's Office where she was involved in drafting labor contracts and research.

Ms. Dustin is a Certified Mediator and holds a certificate in Conflict Management Strategies for the Workplace. Ms. Dustin received her law degree from Syracuse University College of Law where she was a member of the Community Law Development Clinic and Corporate Law Society. She received her B.S. in business administration with a marketing concentration from Le Moyne College in 2000.

**Tudor I. Farcas**

Tudor Farcas is an associate at Grant & Eisenhofer where he focuses his practice on complex and mass tort litigation. Prior to joining Grant & Eisenhofer, Mr. Farcas was an associate at the Philadelphia office of a national defense litigation law firm defending general liability claims including mass tort, products liability, and personal injury. He also was a law clerk to the Honorable Mark I. Bernstein, assisting with complex proceedings in national mass tort cases regarding pharmaceutical products and medical devices.

Mr. Farcas earned his J.D. from Drexel University Thomas R. Kline School of Law in 2013, where he was a member of the Drexel Transactional Law Team. Mr. Farcas received his B.A. from Pennsylvania State University in 2008.

**David Felderman**

David Felderman is an associate at Grant & Eisenhofer. Prior to joining G&E, Mr. Felderman worked at several Philadelphia-area law firms focusing on securities and antitrust class action


Grant & Eisenhofer

litigation, *qui tam* matters, medical malpractice and product liability litigation, and other areas of law. He has also counseled clients with respect to international securities litigation and corporate governance.

Mr. Felderman earned his J.D., *cum laude*, from Temple University Beasley School of Law. He earned his B.A. in economics from University of Pennsylvania, and is currently a member of the Penn Alumni Interview Program.

**Lisa K. Grumbine**

Lisa Grumbine is an associate at Grant & Eisenhofer where she focuses on sovereign and public entity representation, primarily in matters seeking to redress environmental contamination. Ms. Grumbine currently represents several state Attorneys General and municipalities in environmental litigation. In that role, she is prosecuting claims against 3M Co. and other manufacturers of toxic firefighting foam laced with toxic PFAS chemicals, which now contaminate groundwater, drinking water, and other public resources. Ms. Grumbine also handles a wide range of securities and commercial litigation actions on behalf of institutional investors and consumers.

Prior to her legal career, Ms. Grumbine worked in the banking industry with a primary focus in ERISA and Defined Contribution Plan compliance and administration. Ms. Grumbine is a graduate of ABA National Employee Benefit Trust School.

Ms. Grumbine earned her J.D. from Temple University, Beasley School of Law in 1997 and her B.S. in Consumer Economics, *cum laude*, from University of Delaware in 1990.

**Lorin Huerta**

Lorin Huerta is an associate at Grant & Eisenhofer where her practice is focused on complex and mass tort litigation.

Ms. Huerta earned her J.D. from Widener University Delaware Law School and her B.S. from University of Delaware.

**Lawrence P. Kempner**

Lawrence Kempner is an associate at Grant & Eisenhofer, focusing on litigation related to corporate governance, securities fraud and consumer protection. Prior to joining Grant & Eisenhofer, Mr. Kempner was engaged in private practice with a concentration in civil litigation.

Mr. Kempner's efforts at Grant & Eisenhofer have helped to achieve substantial recoveries in a number of class action cases, including *In re Tyco International, Ltd. Securities Litigation* ($3.2 billion recovery), *In re Refco Securities Litigation* ($422 million recovery), *In re Pfizer Inc. Securities Litigation* ($486 million recovery), *In re JP Morgan Chase & Co. Securities Litigation* ($150 million recovery) and *In re Starz Stockholder Litigation* ($92.5 million recovery).

 Grant & Eisenhofer

Mr. Kempner has also authored numerous legal publications, including books on evidence, discovery practice and consumer law. He is a 1988 graduate of Lehigh University and received his J.D. from George Washington University in 1991.

**Peter L. LeGrand**

Peter LeGrand is an associate at Grant & Eisenhofer, where his primary area of practice is representing children and families in birth injury and birth trauma litigation.

Prior to joining G&E, Mr. LeGrand worked at a Chicago-area law firm for several years, focusing on medical malpractice, legal malpractice, personal injury and product liability litigation.

Mr. LeGrand received his J.D. from University of Illinois College of Law and his B.A. from University of Missouri.

**Jason W. Lawlor**

Jonathan Lawlor is an associate at Grant & Eisenhofer. Mr. Lawlor has over seven years of legal experience focusing on securities, mergers & acquisitions, product liability, and other complex litigation.

Mr. Lawlor earned his J.D. from Widener University School of Law and his B.A. from Gettysburg College.

**Edward M. Lilly**

Edward Lilly focuses on Chancery litigation and corporate governance matters, intellectual property litigation, and securities fraud and anti-trust class action litigation as an associate at Grant & Eisenhofer. He has additional experience in consumer mass tort litigation, product liability litigation, and derivative class actions.

Mr. Lilly graduated in 1996 from Cornell Law School and served as an editor for the *LII Bulletin-NY* and *Cornell Journal of Law & Public Policy*. He received his M.S. in social psychology in 1993 from Purdue University and graduated *magna cum laude* from DePauw University with a B.A. in economics.

Mr. Lilly served as a clerk for the Honorable Thomas J. McAvoy of the U.S. District Court in Binghamton, New York.

**Ken S. Massey**

Ken Massey is an associate at Grant & Eisenhofer, focusing on corporate governance, securities, and civil rights litigation. Prior to joining G&E, Mr. Massey practiced consumer financial


Grant & Eisenhofer

services, and commercial litigation at a leading financial services defense boutique and the Philadelphia office of a national law firm.

Mr. Massey serves on the board of directors of the Asian Pacific American Bar Association of Pennsylvania and has previously served as its President. He has also previously served on the executive board of the Temple Law Alumni Association. He was selected for inclusion three times to the Pennsylvania Super Lawyers list of "Rising Stars" and listed on the Pro Bono Roll of Honor for the First Judicial District of Pennsylvania.

Mr. Massey earned his J.D. from Temple University Beasley School of Law in 2004 and his B.A. in History from the University of Pennsylvania in 1999.

**Steven A. Medina**

Steven Medina is an associate at Grant & Eisenhofer where he focuses his practice on complex and mass tort litigation, medical malpractice, and environmental litigation. His experience extends to all phases of litigation, from initial consultation through trial.

Prior to joining G&E, Mr. Medina represented both plaintiffs and defendants in catastrophic personal injury matters at several Philadelphia-based litigation firms. He has helped recover numerous multi-million dollar settlements and jury awards for clients.

Mr. Medina earned his J.D. from Temple University's Beasley School of Law in 2014, where he was a staff editor of the *Temple Political and Civil Rights Law Review*. Mr. Medina received his B.A. from the State University of New York at Albany in 2010.

**Pooja Mehta**

Pooja Mehta is an associate at Grant & Eisenhofer, where her focus is on civil rights litigation. She zealously advocates for survivors of sexual assault and victims of discrimination and retaliation. Ms. Mehta litigates Title IX sexual assault and harassment actions, as well as matters related to federal detention reform.

Prior to joining G&E, Ms. Mehta was an associate attorney handling coverage disputes on behalf of insurance companies at a major Philadelphia-area law firm. She also worked as an Assistant District Attorney for the Philadelphia District Attorney's Office, where she upheld convictions on appeal and argued before the Pennsylvania Superior Court.

Ms. Mehta earned her J.D. from Boston College Law School. During law school, she served as the Executive Treasurer for the North American South Asian Law Students Association. She earned her master's and undergraduate degrees in English from Emory University.

**Jonathan C. Mills**

 Grant & Eisenhofer

Jonathan Millis is an associate at Grant & Eisenhofer, focusing his practice on corporate governance and securities litigation.

Prior to joining G&E, Mr. Millis worked at a regional law firm based in Philadelphia, where he represented major insurance carriers in property damage matters.

After graduating law school, Mr. Millis clerked for the Honorable Nelson C. Johnson (ret.) in the Superior Court of New Jersey.

Mr. Millis earned his J.D. from Villanova University School of Law and his B.A. in History, *cum laude*, from the University of Massachusetts.


**William F. Moore**

William Moore is an associate at Grant & Eisenhofer where he focuses on representing families and children in birth injury and birth trauma litigation. Prior to joining G&E, Mr. Moore was an associate attorney at a civil litigation firm practicing personal injury, wrongful death, and other liability claims.

From 2015-2018, Mr. Moore was selected for inclusion to *Leading Lawyers'* list of Emerging Lawyers. In 2010 and 2011, Mr. Moore was selected to Illinois *Super Lawyers'* list of Rising Stars. He is a member of the Chicago Bar Association and a Claims and Litigation Management Alliance Fellow.

Mr. Moore earned his J.D. from The John Marshall Law School and his B.S. from Northern Michigan University.

**Cindy Morgan**

Cindy Morgan is an associate at Grant & Eisenhofer, where her focus is on civil rights litigation. Ms. Morgan is a zealous advocate for survivors of sexual assault and victims of sexual harassment, discrimination, and retaliation. Ms. Morgan also litigates Title IX sexual assault and harassment actions and matters related to federal detention reform.

Prior to joining G&E, Ms. Morgan represented institutional and individual clients in complex litigation matters and employment disputes at a Pennsylvania law firm. She also worked as an Assistant District Attorney for the Chester County District Attorney's Office, where she prosecuted several jury trials to verdict, including homicides and sexual assaults. Ms. Morgan also served as a law clerk for the Honorable Michael Erdos, Philadelphia Court of Common Pleas, from 2013-2014.

Ms. Morgan earned her J.D. from Temple University Beasley School of Law, where she was a member of both the *Temple Law Review* and the National Trial Team, for which she won several awards, including the *Andrew Gay Award for Excellence in Trial Advocacy*. She also earned her undergraduate degree from Temple University, where she earned her B.A. in Political Science.

 Grant & Eisenhofer

In 2021, Ms. Morgan was selected for inclusion to *Super Lawyers'* list of Rising Stars.

**Samuel Mukiibi**

Samuel Mukiibi is an associate at Grant & Eisenhofer, where he focuses on civil rights litigation. Prior to joining G&E, Mr. Mukiibi worked as an associate attorney at the Philadelphia office of a regional law firm practicing various product, commercial, and premises liability litigation matters.

Mr. Mukiibi's current representations include, among others:

- *Soenen et al. v. Brown University* (D. R.I.), a proposed class action on behalf of current and former Brown students, alleging Title IX and other violations resulting from the University's systemic failure to adequately respond to and prevent incidents of sexual harassement and assault on campus.

- *Romero-Garcia v. CoreCivic, Inc.* (M.D. Ga.), a wrongful death action also alleging Section 504 and other state law related claims against CoreCivic, Inc. for its role in the death of Efrain Romero de la Rosa, a 38-year-old man who lived with acute schizophrenia and died by suicide while detained in solitary confinement at Stewart Detention Center as a means to control his mental illness. Efrain's suicide was the second death by suicide of a mentally-ill detainee at this facility in just over one year.

In September 2022, Mr. Mukiibi co-authored "Failure on Campus—Litigating Title IX," published in *Trial* magazine.

Mr. Mukiibi earned his J.D. from Drexel University Thomas R. Kline School of Law, where was an Adjunct Professor of Law from 2019 to 2022, teaching a Justice Lawyering Seminar on issues of Cross-Cultural Competence, Trauma Informed Lawyering, Access to Justice, Implicit Bias, Client Interviewing, Right to Counsel, The Public Role of Lawyers, and Social Justice Lawyering. Mr. Mukiibi earned his B.A. from University of Maryland, College Park.

**Kevin M. Nadolny**

Kevin Nadolny is an associate at Grant & Eisenhofer, focusing on securities litigation, antitrust matters, and consumer litigation.

Mr. Nadolny's casework includes representing shareholders in such actions as: *In re Pfizer Inc. Securities Litigation* ($486 million settlement); *In re News Corporation Shareholder Derivative Litigation* ($139 million settlement); *In re Kinder Morgan Energy Partners, L.P. Derivative Litigation* ($27.5 million settlement). He has also represented plaintiffs in antitrust matters such as: *In re Aggrenox Antitrust Litigation*; and *Alaska Electrical Pension Fund v. Bank of America* (concerning ISDA-fix price-fixing). Mr. Nadolny's consumer litigation experience includes working as a member of the team prosecuting consumer protection claims against General Motors in relation to its allegedly faulty ignition switches.

 Grant & Eisenhofer

He currently represents plaintiffs in *In re Blue Cross Blue Shield Antitrust Litigation* and *In re Generic Pharmaceuticals Pricing Antitrust Litigation*.

Mr. Nadolny is a 1998 graduate of the University of Minnesota. He received his J.D. and LL.M. (Transnational Law) from Temple University, Beasley School of Law.

**Vincent J. Pontrello**

Vincent Pontrello is an associate at Grant & Eisenhofer where he focuses on securities litigation.

Prior to joining G&E, Mr. Pontrello was an associate attorney at a New York firm practicing insurance fraud litigation.

Mr. Pontrello earned his J.D. from Brooklyn Law School, where he was a member of the Moot Couty Honor Society, Appellate Division and the Associate Managing Editor of the *Journal of Law & Policy*. Mr. Pontrello received his B.S. in finance and marketing from the University of Delaware.

**James B. Puritz**

James Puritz is an associate at Grant & Eisenhofer where he focuses on representing families and children in birth injury and birth trauma litigation.

Prior to joining G&E, he was a trial attorney focusing on medical malpractice and catastrophic loss litigation. He also was an Assistant District Attorney in Massachusetts and an Assistant Corporation Counsel for the City of Boston.

Mr. Puritz earned his J.D. from Albany Law School and his B.A. from Brandeis University.

**Nathan B. Reeder**

Nathan Reeder is an associate at Grant & Eisenhofer, focusing his practice on antitrust litigation.

Prior to joining G&E, Mr. Reeder was an associate at the Philadelphia office of an international law firm representing clients in antitrust and commercial matters.

Mr. Reeder earned his J.D. from University of Virginia School of Law where he was the Production Editor for *The Journal of Law and Politics*, and received his B.A. from Emory University.

**William C. Runzer**

William Runzer is an associate at Grant & Eisenhofer where his practice is focused on corporate governance, consumer protection, and other complex class actions.

Before joining G&E, Mr. Runzer worked with several major Philadelphia law firms on complex litigation matters including pharmaceutical class actions, securities litigation, and commercial


Grant & Eisenhofer

contract disputes. Prior to his legal career, Mr. Runzer worked in operations and construction management.

Mr. Runzer earned his J.D. from Temple University Beasley School of Law and his B.S. in Business Administration from Saint Joseph's University.

### Lauren J. Salamon

Lauren Salamon is an associate at Grant & Eisenhofer where she practices securities litigation.

Prior to joining G&E, Ms. Salamon was an associate at a national law firm where she focused on class action securities litigation. She also previously practiced international arbitration, intellectual property litigation, and other types of civil litigation at international firms.

Ms. Salamon graduated from Yale Law School where she was an editor at the *Yale Journal of International Law*. She earned her B.A. in Japanese from the University of Rochester and was elected to Phi Beta Kappa

### Raymond F. Schuenemann III

Raymond Schuenemann III is an associate at Grant & Eisenhofer. Representative of Mr. Schuenemann's casework includes participation in securities class action *In re Pfizer Inc. Securities Litigation*, alleging Pfizer misrepresented the cardiovascular safety of its multi-billion-dollar arthritis drugs, resulting in a $486 million settlement; and securities class action *In re Marsh & McLennan Consolidated Securities Litigation*, alleging that Marsh & McLennan and its officers, directors, auditors, and underwriters participated in a fraudulent scheme involving bid-rigging and secret agreements to steer business to certain insurance companies in exchange for kick-back commissions, resulting in a $400 million settlement. Mr. Schuenemann was also involved in antitrust class action *In re Titanium Dioxide Antitrust Litigation*, where direct purchasers of Titanium Dioxide alleged that E.I. DuPont de Nemours and Company, Huntsman International and other defendants conspired to fix prices at which the chemical powder was sold in the United States, resulting in a series of settlements with defendants totaling $163 million.

After graduating from law school, Mr. Schuenemann was an associate attorney at a central Pennsylvania law firm where he worked on matters related to employment, real estate, tax, and healthcare law. Prior to his legal career, Mr. Schuenemann was an investment accountant in the mutual fund sector where he provided accounting services for numerous bond and equity funds. Mr. Schuenemann was also employed as an internal auditor in both the finance and banking sectors.

Mr. Schuenemann is active in his community and spent many years as a volunteer pro-bono attorney at Mid Penn Legal Services where he defended low-income clients from debt collection actions. Additionally, Mr. Schuenemann spent four years as the Chairman of the Board of the Reading Area Water Authority, two years as an Executive Board Member of the Reading Redevelopment Corporation, and two years as the Vice President of The City of Reading Charter Board.

 Grant & Eisenhofer

Mr. Schuenemann received his J.D. from Widener University School of Law in 2005 and is a 1999 graduate of West Chester University where he earned a B.S. in Finance.

**Kimberly B. Schwarz**

Kimberly Schwarz is an associate at Grant & Eisenhofer. She focuses her practice on complex and mass tort litigation. Ms. Schwarz earned her law degree from Rutgers School of Law in 2010. She graduated with high honors from Rutgers University School of Business in 2002 where she received her B.S. in Business Management.

**Shannon T. Somma**

Shannon Somma is an associate at Grant & Eisenhofer, focusing on securities litigation, appraisal rights, and antitrust litigation. Prior to joining Grant & Eisenhofer, Ms. Somma worked on cases in intellectual property, pharmaceutical, and environmental litigation.

Ms. Somma graduated in 1999 from the University of Delaware with a B.A. degree in psychology, and thereafter received her J.D. degree from Widener University School of Law in 2005.

**Cecilia E. Stein**

Cecilia Stein is an associate at Grant & Eisenhofer where she focuses her practice on securities litigation.

Prior to joining Grant & Eisenhofer, Ms. Stein interned for Legal Services NYC, the NYC Human Rights Commission and the G&E ESG institute.

Ms. Stein earned her J.D. from Benjamin N. Cardozo School of Law and B.A. in International Relations from State University of New York New Paltz. During law school, she was a staff editor of the *Cardozo Arts & Entertainment Law Journal* and practiced in the Bet Tzedek Civil Litigation Clinic.

**Adam Stoltz**

Adam Stoltz is an associate at Grant & Eisenhofer where he focuses on complex and mass tort litigation as well as environmental litigation. Prior to joining G&E, Mr. Stoltz was an associate at the New York office of a national litigation firm where he represented individuals and municipalities in products liability, personal injury, and civil rights litigation.

In addition to representing victims of human trafficking, Mr. Stoltz has also worked to hold corporate wrongdoers accountable for their role in the opioid epidemic, including conducting depositions of key corporate executives at the nation's fourth largest drug distributor.



Grant & Eisenhofer

Mr. Stoltz earned his J.D. from Tulane University and B.A. in History as well as Languages and Cultures of Asia from University of Wisconsin-Madison.

**Thomas Walsh**

Thomas Walsh is an associate at Grant & Eisenhofer where he focuses on securities, bankruptcy, and civil rights litigation.

Prior to joining G&E, Mr. Walsh was an intern for the Honorable Judge Casey at the Norfolk County Probate and Family Court located in Canton, Massachusetts.

Mr. Walsh earned his B.A. in Legal Studies from the University of Massachusetts, Amherst and his J.D. from Suffolk University Law School in 2019.

**Cheron D. Wardlaw**

Cheron Wardlaw focuses on securities, antitrust, and complex pharmaceutical and medical device litigation as an associate at Grant & Eisenhofer. Ms. Wardlaw is a 2007 graduate of the Widener University School of Law and a 2001 *magna cum laude* graduate from Temple University with a degree in journalism and public relations. She was a recipient of the Chadwick Memorial Scholarship and a Fred G. Dibona Moot Court participant.

Prior to joining Grant & Eisenhofer, Ms. Wardlaw's focus was on pharmaceutical and securities litigation as well as workmen's compensation.

**Deborah Scheinbach Weiss**

Deborah Scheinbach Weiss is an associate at Grant & Eisenhofer, focusing on securities and antitrust litigation. As a contract attorney with G&E for several years, Ms. Weiss was part of G&E teams whose efforts resulted in significant awards for clients, including *In re London Silver Fixing, Ltd. Antitrust Litigation*, a case involving the manipulation of currency markets; *In re Starz Stockholder Litigation,* a class action by stockholders of Starz against Starz directors alleging breach of fiduciary duty in negotiating and approving the sale of Starz to Lions Gate Entertainment Corp.; and the $1 billion settlement in the *Royal Bank of Scotland* case in the United Kingdom, involving mortgage-backed securities that was a case of first impression in the UK.

Prior to joining G&E, Ms. Weiss practiced law in Philadelphia, where she worked on commercial litigation matters on behalf of national franchise systems and other clients, and provided operational counsel to various businesses. She has served as a lecturer to the Pennsylvania Bar Institute, speaking on franchise matters.

Ms. Weiss was graduated from Villanova Law School, where she was an Associate Editor of the *Villanova Law Review*, and from the State University of New York, College at Buffalo, where she received a B.A. in journalism.

 Grant & Eisenhofer

**Ivan B. Woods**

Ivan Woods is an associate at Grant & Eisenhofer, focusing on securities, appraisal and environmental litigation. He was part of G&E teams whose efforts resulted in significant awards for their clients, including *In re JP Morgan Chase & Co. Securities Litigation* ($150 million recovery) and the $1 billion settlement in the *Royal Bank of Scotland* case in the United Kingdom.

Prior to joining Grant & Eisenhofer, Mr. Woods worked as a consultant for several national law firms and was on the claim management and legal staff of several New Jersey insurance companies where he supervised fraud and training divisions as well as focused on corporate law and regulatory compliance.

Mr. Woods earned his J.D. from Rutgers School of Law, Newark in 1997 and his B.S. in education from Auburn University in 1976. Mr. Woods is a member of the New Jersey State Bar Association.

Grant & Eisenhofer

**Selected Institutional Client Representations**

G&E has represented or is currently representing a number of institutional investors in major securities fraud actions, shareholder derivative suits, other breach-of-fiduciary-duty cases and related ancillary proceedings around the country. Some of the Firm's cases include:

**(A)    In Securities Fraud Litigation:**

**(1)    CellStar**

In one of the earliest cases filed after the enactment of PSLRA, the State of Wisconsin Investment Board ("SWIB") was designated lead plaintiff and G&E was appointed lead counsel in *Gluck v. CellStar Corp.,* 976 F.Supp. 542 (N.D.Tex. 1997). The cited opinion is widely considered the landmark on standards applicable to the lead plaintiff/lead counsel practice under PSLRA. (See, especially, *In re Cendant Corp. Litig.,* 2001 WL 980469, at *40, *43 (3d Cir. Aug. 28, 2001), citing the CellStar case.) After the CellStar defendants' motion to dismiss failed and a round of discovery was completed, the parties negotiated a $14.6 million settlement, coupled with undertakings on CellStar's part for significant corporate governance changes as well. With SWIB's active lead in the case, the class recovery, gross before fees and expenses, was approximated to be 56% of the class' actual loss claims, about 4 times the historical 14% average gross recovery in securities fraud litigation. Because of the competitive process that SWIB had undertaken in the selection of counsel, resulting in a contingent fee percentage significantly less than the average 31% seen historically, the net recovery to the class after all claims were submitted came to almost 50% of actual losses, or almost 5 times the average net recovery.

**(2)    Pfizer**

G&E was class counsel in a certified federal securities class action against Pfizer and certain of its former officers and directors. Plaintiffs alleged that Pfizer affirmatively misrepresented the cardiovascular safety of its multi-billion-dollar arthritis drugs, Celebrex and Bextra, and actively concealed adverse safety information concerning the products in order to win market share from Merck's competing Cox-2 drug, Vioxx. In 2004 and 2005, when the truth about the cardiovascular risks of Celebrex and Bextra was finally revealed, Pfizer shareholders collectively lost billions of dollars. Plaintiffs also alleged that certain former officers and directors of Pfizer illegally sold shares of Pfizer stock during the class period while in possession of material, non-public information concerning the drugs.

The case was extensively litigated for nearly 10 years, with millions of pages of documents produced and more than 50 depositions taken. Prior to the beginning of merits discovery, the parties engaged in a Daubert proceeding in which Pfizer argued that there was no scientific basis for a claim that Celebrex and Bextra were

 Grant & Eisenhofer

associated with adverse cardiovascular effects. Both sides submitted extensive expert reports and, after a 5 day trial, the Court completely rejected Pfizer's challenges to Plaintiffs' expert testimony. Defendants' motion for summary judgment was denied in most respects, although the Court held that Pfizer could not be held liable for a few statements made by its co-promoters concerning the drugs. In 2014, however, the Court granted Defendants' motion to exclude the testimony of Plaintiffs' expert concerning damages and causation, Professor Daniel Fischel, and thereafter granted summary judgment for Defendants because without Fischel's testimony, Plaintiffs could not prove damages or loss causation. Plaintiffs appealed to the United States Court of Appeals for the Second Circuit, and on April 12, 2016, the Court of Appeals reversed. The Court of Appeals held that the District Court abused its discretion in excluding Fischel's testimony and further held that the District Court's erred in granting summary judgment to Defendants concerning the statements made by Pfizer's co-promoter. Defendants moved in the Court of Appeals for rehearing *en banc*. While that motion was pending, the parties agreed on a settlement of the litigation providing for a cash payment by Pfizer of $486 million. The parties then jointly moved, and the Court of Appeals agreed, to hold the rehearing petition in abeyance pending the District Court's consideration of the proposed settlement. The District Court held a conference on September 13, 2016 to consider whether to grant preliminary approval to the settlement and authorize the transmission of notice of the settlement to class members. The settlement was preliminarily approved on September 16, 2016, and on December 21, 2016, final approval was obtained. *In re Pfizer Inc. Securities Litigation,* SD-NY, No. 04-9866.

**(3)   DaimlerChrysler**

Florida State Board of Administration was appointed lead plaintiff and G&E co-lead counsel in the PSLRA class action on behalf of shareholders of the former Chrysler Corporation who exchanged their shares for stock in DaimlerChrysler in Chrysler's 1998 business combination with Daimler-Benz AG which was represented at the time as a "merger of equals." Shortly before trial, the defendants agree to a $300 million cash settlement, among the largest securities class action settlements since the enactment of the PSLRA. *In re DaimlerChrysler Securities Litigation,* D. Del., C.A. No. 00-0993.

**(4)   Oxford Health Plans**

Public Employees' Retirement Association of Colorado ("ColPERA") engaged G&E to represent it to seek the lead plaintiff designation in the numerous securities fraud actions that were consolidated into *In re Oxford Health Plans, Inc., Securities Litig.,* S.D.N.Y., MDL Docket No. 1222 (CLB). The court ordered the appointment of ColPERA as a co-lead plaintiff and G&E as a co-lead counsel. G&E and its co-leads filed the Consolidated Amended Complaint. Memorandum opinions and orders were entered denying defendants' motions to dismiss (see 51 F.Supp. 2d 290 (May 28, 1999) (denying KPMG motion) and 187



Grant & Eisenhofer

F.R.D. 133 (June 8, 1999) (denying motion of Oxford and individual director defendants)). The case settled for $300 million, another settlement negotiated by G&E that is among the largest settlements since the enactment of the PSLRA.

(5)    **Dollar General**

The U.S. District Court for the Middle District of Tennessee ordered the appointment of Florida State Board of Administration and the Teachers' Retirement System of Louisiana as lead plaintiffs and G&E as co-lead counsel in a PSLRA and Rule 10b-5 case against the defendant company, its accountants, and individual insiders who allegedly issued false and misleading statements over an alleged 3-year Class Period and failed to disclose adverse facts about the company's financial results. Settlements were approved involving a cash payment of $162 million from the company and the individual defendants, an additional $10.5 million from Deloitte & Touche, LLP (Dollar General's accountants), and beneficial governance reforms for Dollar General. *In re Dollar General Securities Litigation*, M.D. Tenn., No. 3:01-0388, orders dated July 19, 2001 and September 29, 2003.

(6)    **Just For Feet**

G&E represented the State of Wisconsin Investment Board ("SWIB") in a federal securities class action against certain officers and directors of Just For Feet, Inc., and against Just For Feet's auditors, in the Northern District of Alabama. That action arose out of the defendants' manipulation of the company's accounting practices to materially misstate the company's financial results. Having been appointed co-lead plaintiff, SWIB, with G&E as its counsel, took primary responsibility for the case. (*SWIB v. Ruttenberg, et al.*, N.D. Ala., CV 99-BU-3097-S and 99-BU-3129-S, 102 F. Supp. 2d 1280 (N.D. Ala. 2000)). SWIB obtained a policy limits settlement with the individual defendants' D&O carrier and an additional $7.4 million from Just For Feet's auditor, for a recovery totaling approximately $32 million.

(7)    **Waste Management**

G&E filed a non-class federal securities action against Waste Management, Inc., its former and current directors, and the company's accountants in the Northern District of Florida, on behalf of Lens Investment Management, LLC and Ram Trust Services, Inc. The complaint alleged that Waste Management had, over a five-year period, issued financial statements and other public statements that were materially false and misleading due to the defendants' fraudulent and improper accounting manipulations. G&E also filed non-class actions in Illinois state court, asserting similar claims on behalf of the Florida State Board of Administration ("FSBA") and the Teachers' Retirement System of Louisiana. After G&E successfully defeated the defendants' motions to dismiss FSBA's complaint in state court, FSBA's cause of action was transferred to the Northern District of



Grant & Eisenhofer

Florida.  At the point where there were competing motions for summary judgment pending, G&E successfully negotiated a settlement pursuant to which each plaintiff received several times what it would have received in the class action. *Florida State Board of Administration, Ram Trust Services, Inc. and Lens Investment Management, LLC v. Waste Management, Inc., et al.*, N.D.Fla., No. 4:99CV66-WS, amended complaint filed June 21, 1999; and *Teachers' Retirement System of Louisiana v. Waste Management, Inc., et al.*, Circuit Ct., Cook Co. [Ill.], No. 98 L 06034, complaint filed May 18, 1999.

(8)    **Total Renal Care**

In June 1999, the Louisiana State Employees' Retirement System and Teachers' Retirement System of Louisiana were appointed as Lead Plaintiffs in a federal securities class action against Total Renal Care ("TRC") and certain of its officers and directors, in the U.S. District Court for the Central District of California. G&E served as Plaintiffs' Lead Counsel.  Plaintiffs filed their Corrected Consolidated Amended Complaint against the defendants, alleging, *inter alia*, that the defendants manipulated TRC's financial statements so as to materially overstate TRC's revenues, income and assets and to artificially inflate TRC's stock price.  G&E negotiated a settlement requiring TRC's payment of $25 million into a settlement fund for the class and the company's adoption of certain internal corporate governance policies and procedures designed to promote the future accountability of TRC's management to its stockholders.  At the time of the settlement, this amount represented 33% of the value of the Company's shares. *In re Total Renal Care Securities Litigation*, C.D. Cal., Master File No. CV-99-01745 CBM.

(9)    **Safety-Kleen**

G&E was sole lead counsel for the plaintiffs in a federal securities class action and a series of related individual actions against former officers, directors, auditors and underwriters of Safety-Kleen Corporation, who are alleged to have made false and misleading statements in connection with the sale and issuance of Safety-Kleen bonds. *In re Safety-Kleen Corp. Bondholders Litig.*, D.S.C., No. 3:00-CV-1145-17, consolidated complaint filed January 23, 2001.  In March of 2005, after a jury had been selected for trial, the auditor defendant settled with the class and individual claimants for $48 million.  The trial then proceeded against the director and officer defendants.  After seven weeks of trial, the director defendants settled for $36 million, and the court entered judgment as a matter of law in favor of the class and against the company's CEO and CFO, awarding damages of $192 million.

(10)    **Styling Technology Corporation**

G&E represented funds managed by Conseco Capital Management, Inc., Credit Suisse Asset Management, Pilgrim American Funds and Oppenheimer Funds, Inc.

Grant & Eisenhofer

in a securities action brought in May 2001, asserting both federal (1933 Act) and state claims brought in the Superior Court of California. The suit alleged that certain former officers, as well as the independent auditors, of Styling Technology Corporation made false and misleading statements in connection with the sale and issuance of Styling Technology bonds. Styling Technology filed for bankruptcy protection under Chapter 11 in August 1999. In October 2000, discovery of accounting irregularities and improperly recognized revenue forced the Company to restate its financial statements for the years 1997 and 1998. Plaintiffs, owning $66.5 million of the total $100 million in bonds sold in the offering, settled the case for a recovery representing approximately 46% of the losses suffered by the client funds that they manage. *Franklin High Income Trust, et al. v. Richard R. Ross, et al.*, Cal. Super., San Mateo Co. [Calif.], Case No: 415057, complaint filed November 28, 2000.

(11)     **Tyco**

G&E served as co-lead counsel representing co-lead plaintiffs Teachers' Retirement System of Louisiana and Louisiana State Employees' Retirement System in a securities class action against Tyco International Ltd. and PricewaterhouseCoopers LLP. The complaint alleged that the defendants, including Tyco International, Dennis Kozlowski, and other former executives and directors of Tyco and PricewaterhouseCoopers, made false and misleading public statements and omitted material information about Tyco's finances in violation of Sections 10(b), 14, 20A and 20(a) of the Securities Exchange Act of 1934. Tyco agreed to fund $2.975 billion in cash to settle these claims, representing the single largest payment from any corporate defendant in the history of securities class action litigation. PricewaterhouseCoopers also agreed to pay $225 million to settle these claims, resulting in a total settlement fund in excess of $3.2 billion.

(12)     **Global Crossing**

Ohio Public Employees' Retirement System and the Ohio Teachers' Retirement System were appointed lead plaintiff and G&E was appointed sole lead counsel in a securities class action against Global Crossing, Ltd. and Asia Global Crossing, Ltd. *In re Global Crossing, Ltd. Securities & "ERISA" Litig.*, MDL Docket No. 1472. In November 2004, the Court approved a partial settlement with the Company's former officers and directors, and former outside counsel, valued at approximately $245 million. In July 2005, the Court approved a $75 million settlement with the Citigroup-related defendants (Salomon Smith Barney and Jack Grubman). In October 2005, the Court approved a settlement with Arthur Andersen LLP and all Andersen-related defendants for $25 million. In October 2006, the Court approved a $99 million settlement with various financial institutions. In total, G&E recovered $448 million for investors in Global Crossing.

(13)     **Telxon Corporation**



Grant & Eisenhofer

G&E filed a federal securities and common law action against Telxon Corporation, its former officers and directors and its accountants in the Northern District of Ohio on behalf of Wyser-Pratte Management Co., Inc., an investment management firm. Following mediation, G&E negotiated a settlement of all claims. *Wyser-Pratte Management Co., Inc. v. Telxon Corp., et al.,* N.D. Ohio, Case No. 5:02CV1105.

**(14)    Hayes Lemmerz**

G&E served as lead counsel to plaintiffs and class members who purchased or acquired over $1 billion in bonds issued by Hayes Lemmerz International, Inc. G&E negotiated a settlement worth $51 million. *Pacholder High Yield Fund, Inc. et al. v. Ranko Cucoz et al.,* E.D. Mich., C.A. No. 02-71778.

**(15)    Asia Pulp and Paper**

On behalf of bondholders of various subsidiaries of Indonesian paper-making giant Asia Pulp and Paper ("APP"), G&E filed an action alleging that the bondholders were defrauded by APP's financial statements which were inflated by nearly $1 billion in fictitious sales. Defendants' motions to dismiss were denied. *Franklin High Income Trust, et al. v. APP Global Ltd., et al.,* N.Y. Sup. Ct., Trial Div., Index No. 02-602567. The matter was resolved through a confidential settlement.

**(16)    Alstom**

Louisiana State Employees' Retirement System was appointed as co-lead plaintiff and G&E was appointed co-lead counsel in a class action against Alstom SA, a French corporation engaged in power generation, transmission and distribution in France. The suit alleges that Alstom and other defendants made false and misleading statements concerning the growth and financial performance of its transportation subsidiary. G&E achieved a settlement in the amount of $6.95 million. *In re Alstom SA Sec. Litig.,* S.D.N.Y. 03-cv-6595.

**(17)    Parmalat**

G&E was co-lead counsel in this securities class action arising out of a multi-billion dollar fraud at Parmalat, which the SEC described as "one of the largest and most brazen corporate financial frauds in history." Settlements exceeding $110 million were reached. *In re Parmalat Sec. Litig.,* S.D.N.Y. 04-MDL-1653.

**(18)    Marsh & McLennan**

G&E was co-lead counsel for the class of former Marsh & McLennan shareholders in this federal securities class action alleging that the company, its

Grant & Eisenhofer

officers, directors, auditors, and underwriters participated in a fraudulent scheme involving, among other things, bid-rigging and secret agreements to steer business to certain insurance companies in exchange for "kick-back" commissions. After five years of litigation, G&E achieved a $400 million settlement on behalf of the class. *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, S.D.N.Y. 04-cv-8144.

**(19)    Hollinger International**

G&E was co-lead counsel in this securities class action arising out of a company scandal at Hollinger International, Inc. which involves payment of millions of dollars to certain executives, including the company's former CEO, Lord Conrad Black, relating to sales of company assets. G&E negotiated a settlement with Hollinger in the amount of $37.5 million. *In re Hollinger International Inc. Securities Litigation*, N.D. Ill. 04-C-0834.

**(20)    General Motors**

G&E served as co-lead counsel in a securities class action against GM, arising from alleged false statements in GM's financial reports. After about two and a half years of litigation, a settlement was reached with GM for $277 million, with GM's auditor, Deloitte & Touche contributing an additional $26 million. The combined $303 million settlement ranked among the largest shareholder recoveries of 2008. *In re General Motors Corp. Sec. Litig.*, E.D. Mich., MDL No. 1749.

**(21)    Delphi**

Delphi is an automotive company that was spun off of General Motors. The company failed as a stand-alone entity, but concealed its failure from investors. G&E's client, one of the largest pension funds in the world, served as a lead plaintiff, and G&E served as co-lead counsel in this securities class action, which produced settlements totaling $325 million from Delphi, its auditor and its director and officers liability insurer. *In re Delphi Corporation Securities Derivative & ERISA Litigation*, E.D. Mich., MDL No. 1725.

**(22)    Refco**

A mere two months after going public, Refco admitted that its financials were unreliable because the company had concealed that hundreds of millions of dollars of uncollectible receivables were owed to the company by an off-balance sheet entity owned by the company's CEO. G&E served as a co-lead counsel and G&E's client, PIMCO, was a co-lead plaintiff. The case resulted in recoveries totaling $422 million for investors in Refco's stock and bonds (including $140


Grant & Eisenhofer

million from the company's private equity sponsor, over $50 million from the underwriters, and $25 million from the auditor). *In re Refco, Inc. Securities Litigation*, S.D.N.Y., No. 05 Civ. 8626.

**(23)**    **Sprint**

G&E represented lead plaintiff institutional investor Carlson Capital, L.P. in this class action suit against Sprint Corporation and its former CEO and directors for breach of fiduciary duty in the consolidation of two separate tracking stocks. In December 2007, a $57.5 million settlement was approved. *In re Sprint Corporation Shareholder Litigation*, D. Kan., No. 04 CV 01714.

**(B)**    **In Derivative and Other Corporate Litigation:**

**(1)**    **Digex**

This case resulted in a settlement of over $400 million, the largest reported settlement in the history of Delaware corporate litigation. G&E represented the lead plaintiff, TCW Technology Limited Partnership, in alleging that Digex, Inc.'s directors and majority stockholder (Intermedia, Inc.) breached their fiduciary duties in connection with WorldCom's proposed $6 billion acquisition of Intermedia. Among other issues, WorldCom was charged with attempting to usurp a corporate opportunity that belonged to Digex and improperly waiving on Digex's behalf the protections of Delaware's business combination statute. Following G&E's argument on a motion to preliminarily enjoin the merger, the Court issued an opinion declining to enjoin the transaction but acknowledging plaintiffs' likelihood of success on the merits. *In re Digex, Inc. Shareholders Litigation*, C.A. No. 18336, 2000 WL 1847679 (Del. Ch. Dec. 13, 2000). The case settled soon thereafter.

**(2)**    **UnitedHealth Group**

G&E represented the Ohio Public Employees Retirement System, State Teachers Retirement System of Ohio, and Connecticut Retirement Plans and Trust Funds as lead plaintiffs in a derivative and class action suit in which G&E successfully challenged $1.2 billion in back-dated options granted to William McGuire, then-CEO of health care provider UnitedHealth Group. This was among the first – and most egregious – examples of options backdating. G&E's case produced a settlement of $922 million, the largest settlement in the history of derivative litigation in any jurisdiction. *In re UnitedHealth Group Inc. Shareholder Derivative Litig.*, C.A. No. 06-cv-1216 (D. Minn.)

**(3)**    **AIG**

In what was, at the time, the largest settlement of derivative shareholder litigation in the history of the Delaware Chancery Court, G&E reached a $115 million

 Grant & Eisenhofer

settlement in a suit against former executives of AIG for breach of fiduciary duty. The case challenged hundreds of millions of dollars in commissions paid by AIG to C.V. Starr & Co., a privately held affiliate controlled by former AIG Chairman Maurice "Hank" Greenberg and other AIG directors. The suit alleged that AIG could have done the work for which it paid Starr, and that the commissions were simply a mechanism for Greenberg and other Starr directors to line their pockets. *Teachers' Retirement System of Louisiana v. Greenberg, et al.*, C. A. No. 20106-VCS (Del. Ch.).

### (4)    Genentech

When Swiss healthcare company Roche offered to buy out biotech leader Genentech Inc. for $43.7 billion, or $89 per share, G&E filed a derivative claim on behalf of institutional investors opposed to the buyout. With the pressure of the pending litigation, G&E was able to reach a settlement that provided for Roche to pay $95 per share, representing an increase of approximately $3 billion for minority shareholders. *In re Genentech, Inc. Shareholders Litig.*, C.A. No. 3911-VCS (Del. Ch.).

### (5)    Willamette

In January 2002, at the request of Wyser-Pratte Management Co., Inc. and others, G&E filed a shareholder derivative action in Oregon state court claiming that the board of Willamette Industries, Inc. breached its fiduciary duties by attempting to cause Willamette to acquire the asbestos-ridden building products division of Georgia-Pacific Company as part of a scorched-earth effort to defeat a hostile takeover of Willamette by its chief competitor, Weyerhaeuser Company. G&E obtained an expedited hearing on its motion for a preliminary injunction and obtained an agreement from Willamette at the hearing not to consummate any deal with Georgia-Pacific without providing prior notice to G&E. Almost immediately thereafter, and after years of fighting against Weyerhaeuser's take-over attempts, the Willamette board relented and agreed to sell the company to Weyerhaeuser. *Wyser-Pratte Management Co., Inc. & Franklin Mutual Advisors v. Swindells, et al.*, No. 0201-0085 (Ore. Cir. Ct.).

### (6)    Medco Research

 Grant & Eisenhofer

In January 2000, G&E filed a shareholder derivative action on behalf of State of Wisconsin Investment Board against the directors of Medco Research, Inc. in Delaware Chancery Court. The suit alleged breach of fiduciary duty in connection with the directors' approval of a proposed merger between Medco and King Pharmaceuticals, Inc. G&E was successful in obtaining a preliminary injunction requiring Medco to make supplemental and corrective disclosures. Because of G&E's efforts, the consideration to Medco's stockholders increased by $4.08 per share, or $48,061,755 on a class-wide basis. *State of Wisconsin Investment Board v. Bartlett, et al.,* C.A. No. 17727, 2000 WL 193115 (Del. Ch. Feb. 9, 2000).

(7)    **Occidental Petroleum**

G&E represented Teachers' Retirement System of Louisiana and served as co-counsel in a shareholders' derivative suit against the directors of Occidental Petroleum Corporation, challenging as corporate waste the company's excessive compensation arrangements with its top executives. Filed in California state court, the case settled when the company agreed to adopt California Public Employees' Retirement System's model principles of corporate governance and undertook to reconstitute its key committees so as to meet the tests of



Grant & Eisenhofer

independence under those principles. *Teachers' Retirement System of Louisiana v. Irani et al.,* No. BC1850009 (Cal. Super.).

**(8)**   **Staples, Inc.**

On behalf of Teachers' Retirement System of Louisiana, G&E challenged Staples, Inc.'s proposed "recapitalization" plan to unwind a tracking stock, Staples.com, which it created in 1998.  G&E obtained a preliminary injunction against the deal and the deal terms were ultimately altered resulting in a $15-$20 million gain for shareholders. Additional disclosures were also required so that shareholders voted on the challenged transaction based on a new proxy statement with substantial additional disclosures. *In re Staples, Inc. Shareholders Litigation,* C.A. No. 18784, 2001 WL 640377 (Del. Ch. June 5, 2001).

**(9)**   **SFX/Clear Channel Merger**

G&E filed a class action on behalf of stockholders of SFX, challenging the merger between SFX and Clear Channel.  While the SFX charter required that in any acquisition of SFX all classes of common stockholders be treated equally, the merger, as planned, provided for approximately $68 million more in consideration to the two Class B stockholders (who happened to be the senior executives of SFX) than to the public stockholders.  The merger was structured so that stockholders who voted for the merger also had to vote to amend the Charter to remove the non-discrimination provisions as a condition to the merger.  G&E negotiated a settlement whereby $34.5 million more was paid to the public stockholders upon closing of the merger.  This was more than half the damages alleged in the Complaint. *Franklin Advisers, Inc., et al. v. Sillerman, et al.,* C.A. No. 17878 (Del. Ch.).

**(10)**   **Lone Star Steakhouse & Saloon**

G&E filed a derivative lawsuit on behalf of California Public Employees' Retirement System ("CALPERS") against Lone Star's former CEO, Jamie Coulter, and six other Lone Star directors.  The suit alleged that the defendants violated their fiduciary duties in connection with their approval of the company's acquisition of CEI, one of Lone Star's service providers, from Coulter, as well as their approvals of certain employment and compensation arrangements and option repricing programs.  Before filing the suit, G&E had assisted in CALPERS in filing a demand for books and records pursuant to Section 220 of the Delaware General Corporation Law.  The company's response to that demand revealed the absence of any documentation that the board ever scrutinized transactions between Lone Star and CEI, that the board negotiated the purchase price for CEI, or that the board analyzed or discussed the repricing programs.  In August 2005, the Court approved a settlement negotiated by G&E whereby Lone Star agreed to a repricing of options granted to certain of its officers and directors, payments from certain of the officers and directors related to option grants, and a $3 million

 Grant & Eisenhofer

payment from Lone Star's director and officer insurance policy. Lone Star further acknowledged that the lawsuit was one of the significant factors considered in its adoption of certain corporate governance reforms. *California Public Employees' Retirement System v. Coulter, et al.,* C.A. No. 19191 (Del. Ch.).

**(11)    Siebel**

The issue of excessive executive compensation has been of significant concern for investors, yet their concerns have remained largely unaddressed due to the wide discretion afforded corporate boards in establishing management's compensation. G&E effected a sea change in the compensation policies of Siebel Systems, a leading Silicon Valley-based software developer long considered to be an egregious example of executive compensation run amok, and caused Thomas Siebel, the company's founder and CEO, to cancel 26 million options with a potential value of $54 million. Since the company's founding in 1996, Siebel Systems had paid Mr. Siebel nearly $1 billion in compensation, largely in the form of lavish stock options that violated the shareholder-approved stock option plan. In addition, the company had paid its directors millions of dollars for their service on the board, also in the form of stock options, at levels exponentially higher than that paid to directors on the boards of similar companies. G&E, on behalf of Teachers' Retirement System of Louisiana, commenced a derivative action challenging the company's compensation practices in September of 2002 even though a prior, similar lawsuit had been dismissed. Following a hard-fought and acrimonious litigation, G&E successfully negotiated a settlement that, in addition to the options cancellation, included numerous corporate governance reforms. The company agreed to, *inter alia*, restructure its compensation committee, disclose more information regarding its compensation policies and decisions, cause its outside auditor to audit its option plans as part of the company's annual audit, and limit the compensation that can be paid to directors. The Siebel Systems settlement generated considerable favorable press in the industry, as investors and compensation experts anticipated that the reforms adopted by Siebel Systems could affect how other companies deal with compensation issues. *Teachers' Retirement System of Louisiana v. Thomas M. Siebel, et al.,* C. A. No. 425796 (Cal. Super.).

**(12)    HealthSouth Corporation**

G&E filed a derivative and class action lawsuit on behalf of Teachers' Retirement System of Louisiana against HealthSouth Corporation, its auditors, certain individual defendants, and certain third parties seeking, *inter alia,* an order forcing the HealthSouth board of directors to hold an annual shareholder meeting for the purpose of electing directors, as no such meeting had been held for over thirteen months. Following a trial, G&E negotiated a settlement of part of its claims, pursuant to which five of the defendant directors who were alleged to have engaged in improper self-dealing with the company agreed to resign and be replaced by directors selected by a committee comprised in part by institutional

 Grant & Eisenhofer

investors of HealthSouth. *Teachers' Retirement System of Louisiana v. Scrushy*, Del. Ch., C.A. No. 20529 (March 2, 2004).

**(13)  NYSE/Archipelago**

G&E served as co-lead counsel in a class action in New York state court, brought on behalf of a class of seat holders of the New York Stock Exchange ("NYSE") challenging the proposed merger between the NYSE and Archipelago Holdings, LLC. The complaint alleged that the terms of the proposed merger were unfair to the NYSE seat holders, and that by approving the proposed merger, the NYSE board of directors had violated their fiduciary duties of care, loyalty and candor, because the transaction was the result of a process that was tainted by conflicts of interest and the directors failed adequately to inform themselves of the relevant facts. The court denied the defendants' motion to dismiss, and after expedited discovery, including over 30 depositions in a five week period, a preliminary injunction evidentiary hearing was held, in which plaintiffs sought to postpone the vote on the merger until a new, current fairness opinion was obtained from an independent financial advisor. On the second day of the hearing, the defendants agreed to the relief being sought, namely that they would obtain a new, current fairness opinion from an independent financial advisor. *In re New York Stock Exchange/Archipelago Merger Litig.*, No. 601646/05 (Sup. Ct. N.Y. Co.)

**(14)  Caremark / CVS**

G&E represented institutional shareholders in this derivative litigation challenging the conduct of the board of directors of Caremark Rx Inc. in connection with the negotiation and execution of a merger agreement with CVS, Inc., as well as that board's decision to reject a competing proposal from a different suitor. Ultimately, through the litigation, G&E was able to force Caremark's board not only to provide substantial additional disclosures to the public shareholders, but also to renegotiate the terms of the merger agreement with CVS to provide Caremark shareholders with an additional $3.19 billion in cash consideration and to ensure Caremark's shareholders had statutory appraisal rights in the deal. *Louisiana Municipal Police Employees' Retirement System, et al. v. Crawford, et al.*, C.A. No. 2635-N (Del. Ch.).

**(15)  AIG**

G&E achieved a settlement of derivative claims against former American International Group, Inc. ("AIG") CEO Hank Greenberg and other officers of the insurer in connection with a well-documented bid-rigging scheme used to inflate the company's income. The scheme — which included an array of wrongful activities, such as sham insurance transactions intended to deceive shareholders and illegal contingent commissions which amounted to kickbacks to obtain

 Grant & Eisenhofer

business — caused billions of dollars' worth of damage to AIG, and ultimately led to the restatement of years of financial statements.

In approving a settlement that returned $90 million to AIG, the Court said the settlement was "an incentive for real litigation" with "a lot of high-quality lawyering." *In re American International Group, Inc., Consolidated Derivative Litigation.* Delaware Chancery Court, 769-VCS

**(16)    Del Monte Foods**

G&E served as lead counsel in shareholder litigation in which the Firm obtained an $89.4 million settlement against Del Monte Foods Co. and Barclays Capital. On February 14, 2011, the Delaware Chancery Court issued a ground-breaking order enjoining not only the shareholder vote on the merger, but the merger agreement's termination fee and other mechanisms designed to deter competing bids. As a result of plaintiff's efforts, the Board was forced to conduct a further shopping process for the company. Moreover, the opinion issued in connection with the injunction has resulted in a complete change on Wall Street regarding investment banker conflicts of interests and company retention of investment bankers in such circumstances. *In re Del Monte Shareholder Litigation*, C.A. No. 6027-VCL (Del. Ch).

**(17)    Facebook**

G&E served as co-lead counsel for plaintiffs, alleging that Facebook Chairman and CEO Mark Zuckerberg, as well as other officers and directors, breached their fiduciary duties to the class by approving the reclassification of Facebook stock. The reclassification, if implemented, would have allowed Mark Zuckerberg to maintain majority voting control while reducing his economic stake in the Company by over 65%. Just days before the trial was set to begin with Mark Zuckerberg's testimony, the Facebook Board of Directors met and decided to abandon the reclassification. Because G&E was seeking to enjoin the reclassification, the Board's abandonment of it was a complete win for the plaintiffs and the class. *In re Facebook Class C Reclassification Litigation*, C.A. No. 12286 (Del Ch).

**(C)    In Securities Class Action Opt-Out Litigation**

**(1)    AOL Time Warner, Inc.**

G&E filed an opt-out action against AOL Time Warner, its officers and directors, auditors, investment bankers and business partners. The case challenged certain transactions entered by the company to improperly boost AOL Time Warner's financials. G&E was able to recover for its clients more than 6 times the amount that they would have received in the class case.

 Grant & Eisenhofer

**(2)** **BankAmerica Corp.**

G&E filed an individual action seeking to recover damages caused by the
defendants' failure to disclose material information in connection with the
September 30, 1998 merger of NationsBank Corporation and BankAmerica
Corporation. G&E was preparing the case for trial when it achieved a settlement
whereby the firm's client received more than 5 times what it would have received
in the related class action. Those proceeds were also received approximately one
year earlier than the proceeds from the class action settlement.

**(3)** **Bristol-Myers Squibb**

G&E filed an opt-out action against Bristol-Myers Squibb, certain of its officers
and directors, its auditor, and Imclone, Inc., alleging that Bristol-Myers had
falsified billions of dollars of revenue as part of a scheme of earnings
management.  While the federal class action was dismissed and eventually settled
for only 3 cents on the dollar, G&E's action resulted in a total settlement
representing approximately 10 times what the firm's clients likely would have
received from the class action.

**(4)** **Petrobras**

G&E filed securities fraud actions in Manhattan federal court on behalf of several
U.S. and European public and private institutional investors against Petrobras, the
Brazilian oil conglomerate, arising out of a decade-long bribery and kickback
scheme that has been called the largest corruption scandal in Brazil's history.  The
action alleged that Petrobras concealed bribes to senior officers and government
officials and improperly capitalized these bribes as assets on its books in order to
inflate the value of the company's refineries.  Many of these officers and officials
have pled guilty before the Brazilian courts to charges stemming from their
participation in the alleged scheme. G&E settled the action before the class action
was resolved, and our clients received 2-3 times more than they would have had
they stayed in the class, and received their share of the settlement at least two
years before a class distribution.

**(5)** **Qwest Communications**

G&E filed an individual action against Qwest, its accountant (Arthur Andersen
LLP), Solomon Smith Barney, and current and former officers and directors of
those companies. The case alleged that Qwest used "swap deals" to book fake
revenue and defraud investors.  G&E was able to recover for its clients more than
10 times what they would have recovered had they remained members of the
class.

**(6)** **WorldCom**

 Grant & Eisenhofer

G&E filed an opt-out action against former senior officers and directors of WorldCom, including former CEO Bernard Ebbers, and Arthur Andersen LLP (WorldCom's former auditor), among others. The case stemmed from the widely-publicized WorldCom securities fraud scandal that involved false and misleading statements made by the defendants concerning WorldCom's financials, prospects and business operations. G&E recovered for its clients more than 6 times what they would have received from the class action.

# EXHIBIT 2

**Exhibit 2**
In re Zetia Antitrust Litigation
**Grant & Eisenhofer. P.A.**

| Attorney | Rate | Hours | Lodestar |
|----------|------|-------|----------|
| A. McCowan | 450.00 | 49.90 | 22,455.00 |
| A. McCowan | 475.00 | 39.00 | 18,525.00 |
| C. Holtzman | 540.00 | 15.00 | 8,100.00 |
| C. Holtzman | 565.00 | 53.20 | 30,058.00 |
| D. Elman | 720.00 | 92.40 | 66,528.00 |
| D. Elman | 750.00 | 40.60 | 30,450.00 |
| D. Elman | 775.00 | 20.50 | 15,887.50 |
| R. Eisler | 940.00 | 60.10 | 56,494.00 |
| R. Eisler | 985.00 | 51.00 | 50,235.00 |
| T. Saviano | 210.00 | 26.50 | 5,565.00 |
| T. Saviano | 220.00 | 24.60 | 5,412.00 |
| **Totals** | | **472.80** | **309,709.50** |

# EXHIBIT 3

**EXHIBIT 3**
In re Zetia Antitrust Litigation
**Grant & Eisenhofer P.A.**
EXPENSE REPORT
30-Apr

| CATEGORY | AMOUNT INCURRED | |
| --- | --- | --- |
| Assessments (Litigation Fund Payment) | $ | |
| Court Fees (Filing, etc.) | $ | 400.00 |
| Experts/Consultants | $ | |
| Delivery/Postage/Messenger | $ | |
| Transcripts (Hearing, Depositions, etc.) | $ | 90.00 |
| Travel (Airfare, Meals, Lodging) | $ | 529.34 |
| Electronic Research | $ | 1,109.92 |
| Other | $ | 701.95 |
| **TOTAL** | **$** | **2,831.21** |

# **<u>EXHIBIT G</u>**

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

| | |
|---|---|
| IN RE: ZETIA (EZETIMIBE) ANTITRUST LITIGATION | MDL No. 2836 No. 2:18-md-2836- RBS-DEM |

### DECLARATION OF JONATHAN GARDNER IN SUPPORT OF
### END-PAYOR CLASS'S MOTION FOR FINAL APPROVAL OF SETTLEMENT,
### AWARD OF ATTORNEYS' FEES, PAYMENT OF EXPENSES,
### AND INCENTIVE AWARDS

I, JONATHAN GARDNER, declare as follows:

1.      I am an attorney admitted to practice before the courts of New York State and numerous District Courts nationwide, and am a member of the law firm of Labaton Sucharow LLP ("Labaton Sucharow"). I make this Declaration in support of End-Payor Plaintiffs' ("EPP") Co-Lead Counsel's request for attorneys' fees and payment of litigation expenses.

2.      Labaton Sucharow was counsel of record in this case for Plaintiff United Food and Commercial Workers Local 1500 Welfare Fund ("UFCW Local 1500 Welfare Fund") from inception of the litigation to March 2022, when the firm's primary attorneys appearing in this matter, Robin van der Meulen, Gregory Asciolla, Matthew Perez, and Karin Garvey, switched law firm affiliations and joined DiCello Levitt LLC.  Accordingly, this Declaration is based on communications with my former colleagues, as well as review by me, and others at my direction, of Labaton Sucharow's business records, including contemporaneous time records and expense reports.

3.      With respect to the standing of my firm, attached hereto as Exhibit 1 is a brief description of the firm during the time period covered by this Declaration, including biographies of the firm's partners and of counsels.

4.      Throughout the course of its involvement, my firm kept files contemporaneously documenting all time spent, including tasks performed, and expenses incurred, and provided those reports monthly to Marvin A. Miller, one of EPP Co-Lead Counsel. All of the time and expenses reported by my firm were reasonably necessary for the prosecution of this case in order to achieve the class-wide results obtained for the benefit of the EPP Class.

5.      Lawyers at my firm investigated the claims, participated in the early stages of the litigation, assisted in the review of Defendants' document productions; worked with the firm's client UFCW Local 1500 Welfare Fund to collect and produce responsive documents and answer Defendants' interrogatories; and prepared for and defended Local 1500's Rule 30(b)(6) deposition.

6.      The schedule attached as Exhibit 2, prepared from contemporaneous time records regularly prepared and maintained by my firm and incorporated herein, is a summary of the amount of time spent by my firm's partners, attorneys, and professional support staff who were involved in this litigation. It does not include any time devoted to preparing this Declaration or otherwise pertaining to the request for an award of attorney's fees and payment of expenses. The lodestar calculation is based on my firm's historical hourly rates submitted to other courts for which compensation was requested. The total number of hours reasonably expended on this litigation by my firm from inception through March 4, 2022, which does not include time spent preparing this Declaration, is 1,776.6 hours. The total lodestar for my firm at historic rates is $796,113.00. Expense items are recorded separately and are not duplicated in my firm's lodestar. Those records have been provided to EPP Co-Lead Counsel and I authorize them to be submitted for *in camera* inspection by the Court, if necessary.

7.      The expenses my firm incurred in litigating this action are reflected in the books and records of my firm. These books and records are prepared from expense vouchers, invoices,

2

receipts, check records, and other source materials and accurately reflect the expenses incurred. My firm's expense records are available for inspection by the Court if necessary.

8.    My firm incurred a total of $44,951.40 in unreimbursed expenses, all of which were reasonable and necessary for the prosecution of this litigation. Of this amount, $31,814.65 was for assessment payments for common litigation expenses or direct payments to vendors made with the approval of EPP Co-Lead Counsel or as directed by my former colleagues, and an additional $13,136.75 was for non-common litigation expenses incurred by my firm, such as filing and service fees, on-line PACER research, electronic legal research, work-related transportation and meals, postage and overnight mail, work-related parking, duplicating, conference calling and long distance telephone. A summary of those expenses by category is attached as Exhibit 3.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of August, 2023, in Weehawken, New Jersey.

JONATHAN GARDNER

# EXHIBIT 1

**Labaton Sucharow**

# Labaton Sucharow Credentials

## 2022

**Labaton Sucharow**

# TABLE OF CONTENTS

About the Firm .................................................................................. 1

Multi-District Litigation Experience ................................................ 3

Reputation and Leadership in the Antitrust Bar ............................ 10

Pro Bono and Community Involvement .......................................... 14

Commitment to Diversity, Equity, and Inclusion .......................... 16

Antitrust Team .................................................................................. 18



# ABOUT THE FIRM

## *Labaton Sucharow has recovered billions of dollars for investors, businesses, and consumers*

Founded in 1963, Labaton Sucharow LLP has earned a reputation as one of the leading plaintiffs' firms in the United States. For more than half a century, Labaton Sucharow has successfully exposed corporate misconduct and recovered billions of dollars in the United States and around the globe on behalf of investors and consumers. Our mission is to continue this legacy and to continue to advance market fairness and transparency in the areas of securities, antitrust, corporate governance and shareholder rights, and data privacy and cybersecurity litigation, as well as whistleblower representation. Our Firm has recovered significant losses for investors and secured corporate governance reforms on behalf of the nation's largest institutional investors, including public pension, Taft-Hartley, and hedge funds, investment banks, and other financial institutions.

Along with securing newsworthy recoveries, the Firm has a track record for successfully prosecuting complex cases from discovery to trial to verdict. As *Chambers and Partners* has noted, the Firm is *"considered one of the greatest plaintiffs' firms,"* and *The National Law Journal* "Elite Trial Lawyers" recently recognized our attorneys for their *"cutting-edge work on behalf of plaintiffs."* Our appellate experience includes winning appeals that increased settlement values for clients and securing a landmark U.S. Supreme Court victory in 2013 that benefited all investors by reducing barriers to the certification of securities class action cases.

Our Firm provides global securities portfolio monitoring and advisory services to more than 250 institutional investors, including public pension funds, asset managers, hedge funds, mutual funds, banks, sovereign wealth funds, and multi-employer plans—with collective assets under management (AUM) in excess of $2.5 trillion. We are equipped to deliver results due to our robust infrastructure of more than 70 full-time attorneys, a dynamic professional staff, and innovative technological resources. Labaton Sucharow attorneys are skilled in every stage of business litigation and have challenged corporations from every sector of the financial market. Our professional staff includes financial analysts, paralegals, e-discovery specialists, certified public accountants, certified fraud examiners, and a forensic accountant. We have one of the largest in-house investigative teams in the securities bar.



WITH OFFICES IN NEW YORK, DELAWARE, AND WASHINGTON, D.C., LABATON SUCHAROW IS ON THE GROUND IN KEY JURISDICTIONS FOR PROTECTING INVESTORS



**ANTITRUST AND COMPETITION:** Labaton Sucharow has a well-earned reputation for successfully investigating and litigating complex antitrust multi-district litigation class actions. Regularly appointed lead counsel by courts throughout the nation, we have led the charge in some of the most significant private antitrust litigation in recent years challenging national and international price-fixing cartels, including *In re Air Cargo Shipping Services Antitrust* Litigation ($1.2+ billion in settlements from over 30 global airlines). In particular, we are at the forefront in challenging anticompetitive conduct in the financial and pharmaceutical industries. Whether a case involves complex financial instruments and commodities or branded and generic drugs, Labaton Sucharow has the industry-specific expertise to achieve positive results for the class.

**SECURITIES LITIGATION:** As a leader in the securities litigation field, the Firm is a trusted advisor to more than 250 institutional investors with collective assets under management in excess of $2.5 trillion. Our practice focuses on portfolio monitoring and domestic and international securities litigation for sophisticated institutional investors. Since the passage of the Private Securities Litigation Reform Act of 1995, we have recovered more than $12.5 billion in the aggregate. Our success is driven by the Firm's robust infrastructure, which includes one of the largest in-house investigative teams in the plaintiffs' bar.

**CORPORATE GOVERNANCE AND SHAREHOLDER RIGHTS LITIGATION:** Our breadth of experience in shareholder advocacy has also taken us to Delaware, where we press for corporate reform through our Wilmington office. These efforts have already earned us a string of enviable successes, including one of the largest derivative settlements ever achieved in the Court of Chancery, a $153.75 million settlement on behalf of shareholders in *In re Freeport-McMoRan Copper & Gold Inc. Derivative Litigation*.

**CONSUMER, CYBERSECURITY, AND DATA PRIVACY PRACTICE:** Labaton Sucharow is dedicated to putting our expertise to work on behalf of consumers who have been wronged by fraud in the marketplace. Built on our world-class litigation skills, deep understanding of federal and state rules and regulations, and an unwavering commitment to fairness, our Consumer, Cybersecurity, and Data Privacy Practice focuses on protecting consumers and improving the standards of business conduct through litigation and reform. Our team achieved a historic $650 million settlement in the *In re Facebook Biometric Information Privacy Litigation* matter—the largest consumer data privacy settlement ever, and one of the first cases asserting biometric privacy rights of consumers under Illinois' Biometric Information Privacy Act (BIPA).

**WHISTLEBLOWER LITIGATION:** Our Whistleblower Representation Practice leverages the Firm's securities litigation expertise to protect and advocate for individuals who report violations of the federal securities laws.

*"Labaton Sucharow is 'superb' and 'at the top of its game.' The Firm's team of 'hard-working lawyers...push themselves to thoroughly investigate the facts' and conduct 'very diligent research.'"*

*– The Legal 500*

**Labaton
Sucharow**

# MULTI-DISTRICT LITIGATION EXPERIENCE

*Due to our record of success, the Firm is regularly appointed lead or co-lead
counsel in major multi-district litigation involving complex antitrust claims.*

Labaton Sucharow's Antitrust and Competition Litigation Practice is highly-regarded for its record of
success in challenging global anticompetitive conduct. The Firm regularly litigates large, complex,
multi-district litigations involving antitrust claims. Recognizing our expertise in antitrust law, multi-
district litigation, and class actions, courts throughout the nation have appointed Labaton Sucharow
as lead or co-lead counsel in some of the most significant antitrust cases to date. Notably, the Firm
has recovered nearly $3 billion on behalf of consumers injured by antitrust and commodities law
violations, including price-fixing, price manipulation, and monopolization.

The Firm secured its leadership in the plaintiffs' antitrust bar through pioneering work against
monopolists in the pharmaceutical industry in the 1990s. More than two decades later, we continue
to break new ground by filing novel cases under federal and state antitrust laws involving
pharmaceutical products. We continue to challenge anticompetitive conduct by the world's largest
pharmaceutical companies, including agreements to delay the entry of lower cost generic drugs (pay-
for-delay), price-fixing, monopolization, sham litigation and fraud on the U.S. Patent & Trademark
Office.

More recently, we've developed expertise in antitrust cases involving complex financial products.
We have led the charge in investigating and filing high-profile price-fixing and manipulation cases
involving financial derivative products, including U.S. treasury securities, foreign currencies, interest
rate swaps, and precious metals such as gold, platinum, and palladium.

Our ability to investigate markets and unearth anticompetitive conduct is unmatched. Regulators
have even followed our lead by conducting subsequent government investigations stemming from
our cases. In addition, the Firm has a woman-led, in-house team of private investigators and
financial analysts that assist our group in investigating antitrust claims. In 2020 alone, the team
developed over 200 confidential witnesses that were pled in state and federal complaints.

The practice is led by Chair Gregory Asciolla, a longtime leader in the antitrust bar with significant
government, defense, plaintiff, and trial experience. The diverse and specialized backgrounds of our
attorneys offer invaluable prosecutorial insight, as demonstrated by the noteworthy settlements
we've achieved.

Labaton Sucharow has a distinguished record of success in prosecuting multi-district litigation
involving international price-fixing cartels (detailed below). Notably, as co-lead counsel (2006-2013)
in *In re Air Cargo Shipping Services Antitrust Litigation*, we secured more than $1.2 billion in
recoveries from nearly 30 global airlines for price-fixing air cargo shipping services worldwide. In *In
re Automotive Lighting Products Antitrust Litigation*, our antitrust attorneys demonstrated their



willingness to litigate a global price-fixing conspiracy involving automotive lighting products all the way to trial.  Our unwavering advocacy secured a settlement of more than $50 million on the eve of trial.

The antitrust practice group boasts a sophisticated client base that includes pension and labor funds, health and welfare funds, managed care organizations/insurers, municipalities and related quasi-government agencies, small businesses, large corporations, and individual consumers.

# NOTABLE SUCCESSES

Labaton Sucharow has achieved many outstanding results on behalf of its clients.  Key highlights include:

### *In re Air Cargo Shipping Services Antitrust Litigation,* MDL No. 1775 (E.D.N.Y.)

Served as co-lead counsel (2006-2013) and obtained more than $1.2 billion in settlements from over 30 international airlines to resolve claims alleging a global conspiracy to fix surcharges for air cargo shipping services.

### *Alaska Electrical Pension Fund v. Bank of America, Corp.,* No. 14-cv-7126 (S.D.N.Y.)

Served as class counsel and secured $504.5 million in settlements from the major dealer banks to resolve claims alleging a conspiracy to manipulate ISDAFIX, a key benchmark for valuing various interest rate derivatives, including swaps and swaptions.

### *In re Aftermarket Automotive Lighting Products Antitrust Litigation,* No. 09-ml-02007 (C.D. Cal.)

Served as co-lead counsel and obtained more than $50 million in settlements to resolve claims alleging that several manufacturers participated in an international conspiracy to fix the prices of aftermarket automotive lighting products.

### *In re Foreign Exchange Benchmark Rates Antitrust Litigation,* No. 13-cv-07789 (S.D.N.Y.)

Serves as class counsel and appointed allocation counsel and obtained more than $2.3 billion in settlements to date from the major FX dealer banks to resolve claims alleging a conspiracy to fix the prices of foreign exchange transactions.

### *In re Lidoderm Antitrust Litigation,* No. 14-md-02521 (N.D. Cal.)

Served as class counsel for end-payors and secured $104.75 million in settlements to resolve claims alleging that certain brand and generic pharmaceutical manufacturers agreed to delay the launch of a cheaper generic version of the drug Lidoderm.



### *In re Aggrenox Antitrust Litigation,* No. 14-md-02516 (D. Conn.)

Served as class counsel for end-payors and secured $54 million in settlements to resolve claims alleging that certain brand and generic pharmaceutical manufacturers agreed to delay the launch of a cheaper generic version of the drug Aggrenox.

### *In re Railway Industry Employee No-Poach Antitrust Litigation,* No. 18-mc-00798 (W.D. Pa.)

Served as class counsel and obtained $49 million in settlements in a lawsuit alleging that Knorr-Bremse AG, Westinghouse Air Brake Technologies Corp., and their wholly owned subsidiaries entered into a series of unlawful agreements to restrain competition in the rail industry labor market.

### *Monroe County Health Care Authority d/b/a Monroe County Hospital v. General Electric Company, Inc.,* No. 19-cv-10485 (D. Mass.)

Served as class counsel and resolved this lawsuit against General Electric and two of its healthcare subsidiaries, arising from the companies' alleged freeze-out of independent competitors who service and maintain GE gas anesthesia machines.

### *In re Natural Gas Commodity Litigation,* No. 03-cv-06186 (S.D.N.Y.)

Served as co-lead counsel and obtained more than $100 million in settlements to resolve claims alleging that dozens of large energy companies manipulated the price of natural gas futures contracts traded on the New York Mercantile Exchange (NYMEX).  The settlement was the second largest class action recovery under the Commodity Exchange Act in its 85-year history.

### *In re Credit Default Swaps Antitrust Litigation,* No. 13-md-2476 (S.D.N.Y.)

Served as class counsel and secured nearly $1.9 billion in settlements from the major CDS dealer banks to resolve claims alleging a conspiracy prevent the development of an exchange-based CDS trading platform so that they could maintain artificially high prices for credit default swaps.

### *In re Puerto Rican Cabotage Antitrust Litigation,* No. 08-md-01960 (D.P.R.)

Served as co-lead counsel and obtained $52 million in settlements to resolve claims alleging that several major shipping companies participated in a conspiracy to fix the prices of ocean freight services between the continental United States and Puerto Rico.

### *In re Marine Hose Antitrust Litigation,* No. 08-md-1888 (S.D. Fla.)

Served as co-lead counsel and obtained $31.7 million in settlements to resolve claims alleging that several marine products manufacturers participated in a conspiracy to fix the prices of and allocate markets for marine hose products.

### *In re Flat Glass Antitrust Litigation (II),* No. 08-mc-00180 (W.D. Pa.)

Served as co-lead counsel and obtained more than $22 million in settlements to resolve claims alleging that several major glass manufacturers conspired to fix the prices of construction flat glass.



### *In re Aftermarket Filters Antitrust Litigation*, No. 08-cv-4883. (N.D. Ill.)

Served as co-lead counsel and obtained nearly $18 million in settlements to resolve claims alleging that numerous automotive parts manufacturers participated in a conspiracy to fix the prices of aftermarket automotive filters (oil, air, and fuel).

### *In re Abbott Labs Norvir Antitrust Litigation*, No. 04-cv-01511 (N.D. Cal.)

Served as co-lead counsel and obtained a $10 million settlement to resolve claims alleging that Abbott Laboratories unlawfully raised the price of Norvir, a critical HIV medication that is used in conjunction with other medications, in an attempt to limit competitors in the HIV drug market.

### *Ace Marine Rigging & Supply, Inc. v. Virginia Harbor Services, et al.*, No. 11-cv-00436 (C.D. Cal.) and *Board of Trustees of Commissioners of the Port of New Orleans v. Virginia Harbor Services, et al.*, No. 11-cv-00437 (C.D. Cal.)

Served as lead counsel and obtained more than $5 million in settlements in two related class actions to resolve claims alleging that a number of marine product manufacturers conspired to fix the prices of various marine products (foam-filled fenders and buoys and plastic marine pilings).

### *Sandhaus v. Bayer AG*, No. 00-cv-6193 (Dist. Ct. of Kansas, Johnson County)

Served as co-lead counsel on behalf of a class of Kansas end-payors and obtained a $9 million settlement to resolve claims that certain brand and generic pharmaceutical manufacturers agreed to delay the launch of a cheaper generic version of the drug Cipro. The settlement is the largest ever for Kansas end-payors in a pay-for-delay litigation.

### *In re Amaranth Natural Gas Commodities Litigation*, No. 07-cv-6377 (S.D.N.Y.)

Served as class counsel and obtained a $77.1 million settlement to resolve allegations that several energy trading firms manipulated the prices of NYMEX natural gas futures contracts.

### *In re Optiver Commodities Litigation*, No. 08-cv-06842 (S.D.N.Y.)

Served as class counsel and obtained a $16.7 million settlement to resolve claims alleging that Optiver Holding BV manipulated oil and gasoline futures contracts over a 24-day period in 2007.

### *In re Lorazepam and Clorazepate Antitrust Litigation*, No. 99-cv-01082 (D.D.C.)

Served as co-lead counsel and obtained $135.4 million in settlements to resolve claims alleging that Mylan Laboratories monopolized the supply of an active ingredient for the anti-anxiety drugs Lorazepam and Clorazepate and implemented anticompetitive price increases for those drugs.

### *In re Municipal Derivatives Antitrust Litigation*, MDL No. 1950, 08-cv-2516 (S.D.N.Y.)

Served as class counsel and obtained more than $275 million in settlements to resolve claims alleging that major financial institutions and brokers conspired to rig bids for investment contracts solicited by municipalities across the United States.



### *In re TriCor Indirect Purchaser Antitrust Litigation,* No. 05-cv-00360 (D. Del.)

Served as co-lead counsel and obtained a $65.7 million settlement to resolve claims that certain drug manufacturers engaged in anticompetitive sham litigation to avoid competition on its cholesterol lowering drug, TriCor.

### *In re Warfarin Sodium Antitrust Litigation,* Nos. 02-3603, 02-3755, 02-3757, 02-3758 (D. Del.)

Served as co-lead counsel and obtained a $44.5 million settlement to resolve claims alleging that DuPont engaged in campaign of falsely disparaging its competitors' cheaper generic products for purposes of restraining competition in the warfarin sodium market. Labaton Sucharow successfully defended the settlement on appeal to the Third Circuit.

### *In re Imprelis Herbicide Marketing, Sales Practices and Products Liability Litigation,* No. 11- md-02284 (E.D. Pa.)

Served as co-lead counsel and obtained a settlement calling for significant additional relief in the form of improved appeals process, increased warranty, and improved notice to resolve claims that DuPont misled consumers about the safety and effectiveness of Imprelis, an herbicide.

### *National Metals, Inc. v. Sumitomo Corporation et al.,* No. GIC 734001 (Cal. Super. Ct., San Diego County)

Served as class counsel and obtained more than $90 million in settlements to resolve claims alleging that Sumitomo Corporation participated in a conspiracy to manipulate copper prices on the London Metals Exchange.

### *In re Buspirone Antitrust Litigation,* No. 01-md-01413 (S.D.N.Y.)

Served as class counsel and obtained a $90 million settlement to resolve claims alleging that Bristol-Myers Squibb engaged in monopolistic and other anticompetitive conduct in marketing BuSpar, an anti- anxiety drug.

### *In re Stock Exchanges Options Trading Antitrust Litigation,* No. 99-cv-00962 (S.D.N.Y.)

Served as class counsel and obtained $47 million in settlements to resolve claims alleging that five stock exchanges and 28 market makers conspired to restrict listing of equity options on national exchanges.

## ONGOING LITIGATION

### *In re Treasury Securities Auction Antitrust Litigation,* No. 15-md-2673 (S.D.N.Y.)

Serves as co-lead counsel and represents a class of U.S. Treasuries investors in class action alleging that the major primary dealers of U.S. Treasury securities conspired to fix prices for U.S. Treasuries and Treasuries-linked derivatives. Labaton Sucharow conducted its own independent investigation and filed the first case in the nation.



### *In re Generic Pharmaceuticals Pricing Antitrust Litigation,* No. 16-md-02724 (E.D. Pa.)

Serves on the Plaintiffs' Steering Committee on behalf of end-payors in a major multi-district litigation class action alleging over 35 pharmaceutical manufacturers conspired to fix the prices of and allocate customers and markets for nearly 200 generic drugs.

### *In re Platinum and Palladium Antitrust Litigation,* No. 14-cv-9391 (S.D.N.Y.)

Serves as co-lead counsel in class action alleging that the major platinum and palladium dealers conspired to manipulate the prices of platinum and palladium during the London Platinum and Palladium Fixings. Labaton Sucharow conducted its own independent investigation based on non-public information and filed the first case in the nation.

### *In re Opana ER Antitrust Litigation,* No. 14-cv-10150 (N.D. Ill.)

Serves as co-lead counsel in class action alleging that certain brand and generic drug manufacturers entered into an anticompetitive pay-for-delay agreement for the pain reliever drug, Opana ER.

### *In re Humira (Adalimumab) Antitrust Litigation,* No. 19-cv-01873 (N.D. Ill.)

Serves as co-lead counsel in a lawsuit alleging drugmaker AbbVie colluded with a group of global rivals to divide the market for AbbVie's blockbuster drug Humira between the U.S. and Europe, and that AbbVie used a "patent thicket" to illegally maintain a monopoly on Humira.

### *In re Novartis and Par Antitrust Litigation,* 18-cv-04361 (S.D.N.Y.)

Serves as lead counsel in class action alleging that Novartis Pharmaceuticals and Par Pharmaceuticals entered into unlawful pay-for-delay agreement that restrained competition for Novartis' high blood pressure drug Exforge.

### *In re European Government Bonds Antitrust Litigation,* No. 19-cv-2601 (S.D.N.Y.)

Serves as co-lead counsel in a class action lawsuit alleging that several global financial institutions manipulated the price of Euro-denominated bonds issued by sovereign European governments.

### *In re Sensipar (Cinacalcet HCl Tablets) Antitrust Litigation,* C.A. No. 19-md-02895

Serves as co-lead counsel in a lawsuit alleging that Amgen and Teva Pharmaceuticals entered into an anticompetitive agreement to eliminate competition for sales of Amgen's branded drug, Sensipar.

### *In re Surescripts Antitrust Litigation,* No. 19-cv-06627 (N.D. Ill.)

Serves as co-lead counsel in a class action brought on behalf of a group of pharmacies that alleges that health information technology company Surescripts, which provides e-prescription routing and eligibility services, monopolized the market for e-prescription services and, along with two other defendants, RelayHealth and Allscripts, conspired to monopolize that market.



### *In re Bystolic Antitrust Litigation,* No. 20-cv-05735 (S.D.N.Y)

Serves as co-lead counsel in class action alleging that a number of drug manufacturers entered into unlawful pay-for-delay agreement that restrained competition for Forest Laboratories and its successors' high blood pressure drug Bystolic.

### *Fusion Elite All Stars v. Varsity Brands, LLC,* No. 2:20-cv-2600 (W.D. Tenn.)

Serves as co-lead counsel in a class action alleging monopolization and conspiracy to monopolize against the largest competition producer and apparel manufacturer in the market for All Star Cheer, Varsity Brands, LLC, and its affiliates, and the allegedly independent oversight body for the sport, U.S. All Star Federation, Inc.

### *In re Xyrem (Sodium Oxybate) Antitrust Litigation,* No. 5:20-md-02966 (N.D. Cal.)

Serves as a member of the Plaintiffs' Steering Committee in a lawsuit alleging that drugmaker Jazz Pharmaceuticals entered into reverse payment agreements with generic competitors to delay the launch of generic Xyrem. Plaintiffs also allege the Jazz sought to thwart generic competition by (i) obtaining and seeking to enforce bogus patents, (ii) failing to negotiate a Risk Evaluation Mitigation Strategy (REMS) with would-be generic competitors in good faith and (iii) filing baseless citizen petitions with the FDA.

### *Ionsouth-Mobile LLC, et al. v. Jubilant DraxImage, Inc.,* No. 19-cv-518 (S.D. Ala.)

Serves as sole class counsel in this lawsuit alleging that Jubilant DraxImage, one of the largest radiopharmaceutical manufacturers in the United States, unlawfully maintained a monopoly for two critical radiopharmaceutical products.

### *In re Chicago Board Options Exchange Volatility Index Manipulation Antitrust Litigation,* No. 18-cv- 4171 (N.D. Ill.)

Serves as class counsel in a lawsuit alleging manipulation of Cboe Global Markets Inc.'s volatility index.

### *In re Zetia (Ezetimibe) Antitrust Litigation,* No. 18-md-2836 (E.D. Va.)

Serves as class counsel in a lawsuit alleging pharmaceutical company Merck & Co. of conspiring with generic drug makers to delay the entry of rivals to its cholesterol drug Zetia.

### *In re Capacitors Antitrust Litigation,* No. 14-cv-03264 (N.D. Cal.)

Serves as class counsel and helped to secure $99.5 million in partial settlements to resolve claims alleging that the major capacitor manufacturers participated in an international conspiracy to fix the prices of aluminum, tantalum, and film capacitors.

### *In re Commodity Exchange, Inc. Gold Futures and Options Trading Litigation,* No. 14-md-2548 (S.D.N.Y.)

Serves as class counsel and helped to secure $60 million in partial settlements in class action alleging that the major gold dealers conspired to manipulate the prices of gold during the London Gold Fixings.



# REPUTATION AND LEADERSHIP IN THE ANTITRUST BAR

## COURT COMMENDATIONS

Many judges have remarked favorably on the Firm's experience and results achieved in class action litigation.

- *"I do want to just make the point that the advocacy has really been remarkable both on the papers and in the arguments today – I really appreciate it. It's been a pleasure to hear so many good litigators advocate their positions. So thank you."*

    – Judge Viktor V. Pohorelsky (remarking on advocacy at hearing on the defendants' motions to dismiss) in *In re Air Cargo Shipping Services Antitrust Litigation*, MDL 1775 (E.D.N.Y.)

- *"I trust you will give yourselves and each other well deserved pats on the back for the high level of professional skills, acumen and collegial relationships displayed throughout this litigation. It was a pleasure to be the presiding judge, and I look forward to future opportunities to work with you."*

    – Judge Gene E.K. Pratter in *In re Imprelis Herbicide Marketing Sales Practices and Products Liability Litigation*, MDL 2284 (E.D. Pa.)

- *"I want to thank you all for your professionalism in this . . . very lengthy and complicated matter . . . I appreciate your cooperation and the manner in which all of the attorneys conducted themselves in this litigation . . . It makes our job much easier when we have fine lawyers representing their clients in a professional manner."*

    – Judge Donald L. Graham in *In re Marine Hose Antitrust Litigation*, No. 08-md-01888 (S.D. Fla.)

- *"The Labaton firm is very well known to the courts for the excellence of its representation."*

    – Judge Jed S. Rakoff (appointing Labaton Sucharow as Lead Counsel) in *Middlesex County Retirement System v. Monster Worldwide, Inc.*, No. 07-cv-2237(S.D.N.Y.)



- *"Let me say that the lawyers in this case have done a stupendous job. They really have."*

  – Chief Judge John Koeltl (approving $90 million settlement with Bristol-Myers Squibb) in *In Re Buspirone Antitrust Litigation*, MDL No. 1413 (S.D.N.Y.)

- *"The class counsel are well-qualified to litigate this type of complex class action, and they showed their effectiveness in the case at bar through the favorable cash settlement they were able to obtain."*

  – Judge Chief Judge Sue L. Robinson (approving $44.5 million cash settlement) in *In re Warfarin Sodium Antitrust Litigation, MDL* No. 1232 (D. Del.)

## AWARDS AND ACCOLADES

Industry publications and peer rankings consistently recognize the Firm as a respected leader in antitrust and securities litigation.

### *Benchmark Litigation*

- Top 10 Plaintiff Firms in United States (2017-2021)
- Recognized in Antitrust Litigation (2012-2016)
- *"Clearly living up to its stated mission 'reputation matters' . . . consistently earning mention as a respected litigation-focused firm fighting for the rights of institutional investors"*

### *Chambers & Partners USA*

- Top rankings in Antitrust: Plaintiff (2014-2021)
- Gregory Asciolla defined as an attorney who *"knows how to cut the defense"*

### *The Legal 500*

- Recognized in Antitrust Civil Litigation/Class Action (2010-2021)
- Gregory Asciolla, Karin Garvey, Robin van der Meulen, and Matthew Perez recommended
- *"Zealous advocate for clients"* and *"they set the tone of strong advocacy that is balanced with true assessments of the risks that clients face in litigation"*

### *The National Law Journal*

- Hall of Fame Honoree and Top Plaintiffs' Firm (2006-2016)



- Elite Trial Lawyer Winner (2014-2015, 2021)

- *"Definitely at the top of their field on the plaintiffs' side"*

### Law360

- Class Action Practice Group of the Year (2012, 2014-2019)

- "Most Feared Plaintiffs" Firm (2013-2015)

- Gregory Asciolla named "Titan" and one of the most admired attorneys of the plaintiffs' bar (2014)

- *"Known for thoroughly investigating claims and conducting due diligence before filing suit, and for fighting defendants tooth and nail in court"*

### Global Competition Review

- Gregory Asciolla recognized as leading competition (U.S. plaintiff) lawyer (2014-2021)

### Thomson Reuters' Super Lawyers

- Gregory Asciolla (2013-2019)

## BAR ACTIVITIES AND APPOINTMENTS

Along with their active caseloads, Chair Gregory Asciolla makes substantial contributions to the antitrust bar.

### Gregory Asciolla

- Member of the Executive Committee of the Antitrust Law Section of the New York State Bar Association

- Co-Chairman of the Antitrust and Trade Regulation Committee of the New York County Lawyers' Association

- Membership Chair of the Committee to Support the Antitrust Laws of the New York County Lawyers' Association

- U.S. Representative to the Banking Litigation Network

- Advisory Board Member of the American Antitrust Institute

- Former Chairman of the Horizontal Restraints Committee of the New York State Bar Association Antitrust Committee

- Member of the *Law360* Competition Editorial Advisory Board from 2013-2015



# THOUGHT LEADERSHIP

Mr. Asciolla is recognized for his experience and involvement in high-profile cases and frequently sought after by the media, including *The Wall Street Journal*, *Financial Times*, and *Law360* for commentary on global antitrust developments.

He also regularly organizes and facilitates panels and lectures discussing the latest developments and trends in antitrust law and frequently publishes work in national publications. Recent publications include:

- "Blowing the Whistle on the Lack of Antitrust Whistleblower Protection," *CPI Antitrust Chronicle*, October 12, 2019

- "The Future Ain't What It Used to Be," *NYLitigator*, Spring 2019

- "The Beast of Algorithmic Pricing," *CPI Antitrust Chronicle*, February 2019

- "Protecting Patents Through Tribal Sovereign Immunity: A Failed Experiment," *Antitrust Advisor,* February 2019

- "An Update on Anti-Poach Enforcement and Class Actions," *Law360*, July 11, 2018

- "FDA Risk-Evaluation Guidance Unlikely to Help Generics," *Law360*, June 12, 2018

- "Arbitration Rule Repeal Will Adversely Affect Consumers," *Law360*, November 2, 2017

- "Creating a Partial Solution to Delayed Generic Competition," *Law360*, June 24, 2016

- "Cash or No Cash — That is No Longer the Question!" *ABA Antitrust Health Care Chronicle*, April 22, 2016

- "Shall We Dance? — Biologic-Biosimilar Competition Under the Biologics Price Competition and Innovation Act," *CPI Antitrust Chronicle*, December 14, 2015



# PRO BONO AND COMMUNITY INVOLVEMENT

It is not enough to achieve the highest accolades from the bench and bar, and demand the very best of our people. At Labaton Sucharow, we believe that community service is a crucial aspect of practicing law and that pursuing justice is at the heart of our commitment to our profession and the community at large. As a result, we shine in pro bono legal representation and as public and community volunteers.

Our Firm has devoted significant resources to pro bono legal work and public and community service. In fact, our Pro Bono practice is recognized by *The National Law Journal* as winner of the **"Law Firm of the Year"** in Immigration for 2019 and 2020. We support and encourage individual attorneys to volunteer and take on leadership positions in charitable organizations, which have resulted in such honors as the Alliance for Justice's **"Champion of Justice"** award, a tenant advocacy organization's **"Volunteer and Leadership Award,"** and board participation for the Ovarian Cancer Research Fund.

Our continued support of charitable and nonprofit organizations, such as the Legal Aid Society, City Bar Justice Center, Public Justice Foundation, Change for Kids, Sidney Hillman Foundation, and various food banks and other organizations, embodies our longstanding commitment to fairness, equality, and opportunity for everyone in our community, which is manifest in the many programs in which we participate.

## Immigration Justice Campaign

Our attorneys have scored numerous victories on behalf of asylum seekers around the world, particularly from Cuba and Uganda, as well as in reuniting children separated at the border. Our Firm also helped by providing housing, clothing, and financial assistance to those who literally came to the U.S. with only the clothes on their back.

## Advocacy for the Mentally Ill

Our attorneys have provided pro bono representation to mentally ill tenants facing eviction and worked with a tenants' advocacy organization defending the rights of city residents.

## Federal Pro Se Legal Assistance Project

We represented pro se litigants who could not afford legal counsel through an Eastern District of New York clinic. We assisted those pursuing claims for racial and religious discrimination, helped navigate complex procedural issues involving allegations of a defamatory accusation made to undermine our client's disability benefits, and assisted a small business owner allegedly sued for unpaid wages by a stranger.

## New York City Bar Association Thurgood Marshall Scholar

We are involved in the Thurgood Marshall Summer Law Internship Program, which places diverse New York City public high school students with legal employers for the summer. This program runs



annually, from April through August, and is part of the City Bar's continuing efforts to enhance the diversity of the legal profession.

## Diversity Fellowship Program

We provide a fellowship as a key component of the Firm's objective to recruit, retain, and advance diverse law students.  Positions are offered to exceptional law students who can contribute to the diversity of our organization and the broader legal community.

## Brooklyn Law School Securities Arbitration Clinic

Our Firm partnered with Brooklyn Law School to establish a securities arbitration clinic.  The program, which ran for five years, assisted defrauded individual investors who could not otherwise afford to pay for legal counsel and provided students with real-world experience in securities arbitration and litigation.

## Change for Kids

We support Change for Kids (CFK) as a strategic partner of P.S. 182 in East Harlem.  One school at a time, CFK rallies communities to provide a broad range of essential educational opportunities at under-resourced public elementary schools, as well as enables students to discover their unique strengths and develop the requisite confidence to achieve.

## Lawyers' Committee for Civil Rights Under Law

We are long-time supporters of the Lawyers' Committee for Civil Rights Under Law, a nonpartisan, nonprofit organization formed in 1963 at the request of President John F. Kennedy. The Lawyers' Committee involves the private bar in providing legal services to address racial discrimination.  We have been involved at the federal level on U.S. Supreme Court nominee analyses and national voters' rights initiatives.  Edward Labaton is a member of the Board of Directors.

## Sidney Hillman Foundation

Our Firm supports the Sidney Hillman Foundation.  Created in honor of the first president of the Amalgamated Clothing Workers of America, Sidney Hillman, the foundation supports investigative and progressive journalism by awarding monthly and yearly prizes.



# COMMITMENT TO DIVERSITY, EQUITY, AND INCLUSION



*"In the legal industry and private practice in particular, diversity is a challenge. At Labaton Sucharow, there is undeniable strength, limitless creativity, and steadfast momentum for diversity and inclusion. We believe a multitude of perspectives, backgrounds, and points of view improves the quality of our work and makes us better advisers to those we serve." – Gregory Asciolla, Partner and Chair of the Diversity, Equity, and Inclusion Committee*

Over half a century, Labaton Sucharow has earned global recognition for its success in securing historic recoveries and reforms for investors and consumers. We strive to attain the same level of achievement in promoting fairness and equality within our practice and throughout the legal profession and believe this can be realized by building and maintaining a team of professionals with a broad range of backgrounds, orientations, and interests.

As a national law firm serving a global clientele, diversity is vital to reaching the right result and provides us with distinct points of view from which to address each client's most pressing needs and complex legal challenges. Problem solving is at the core of what we do...and equity and inclusion serve as a catalyst for understanding and leveraging the myriad strengths of our diverse workforce.

Research demonstrates that diversity in background, gender, and ethnicity leads to smarter and more informed decision-making, as well as positive social impact that addresses the imbalance in business today—leading to generations of greater returns for all. We remain committed to developing initiatives that focus on tangible diversity, equity, and inclusion goals involving recruiting, professional development, retention, and advancement of diverse and minority candidates, while also raising awareness and supporting real change inside and outside our Firm.

In recognition of our efforts, we have been honored and shortlisted by *Chambers & Partners* as Inclusive Firm of the Year and by *Euromoney* as the Best National Firm for Women in Business Law, Best Gender Diversity Initiative, and Best for Talent Management, as well as for *The National Law Journal* "Elite Trial Lawyers" inaugural Diversity Initiative Award. Our Firm understands the importance of extending leadership positions to diverse lawyers and is committed to investing time and resources to develop the next generation of leaders and counselors. We actively recruit, mentor, and promote to partnership minority and female lawyers.

   



**Labaton Sucharow**

## WOMEN'S INITIATIVE

### Women's Networking and Mentoring Initiative

Labaton Sucharow is the first securities litigation firm with a dedicated program to foster growth, leadership, and advancement of female attorneys. Established more than a decade ago, our Women's Initiative has hosted seminars, workshops, and networking events that encourage the advancement of female lawyers and staff, and bolster their participation as industry collaborators and celebrated thought innovators. We engage important women who inspire us by sharing their experience, wisdom, and lessons learned. We offer workshops on subject matter that ranges from professional development, negotiation, and public speaking, to business development and gender inequality in the law today.

### Institutional Investing in Women and Minority-Led Investment Firms

Our Women's Initiative hosts an annual event on institutional investing in women and minority-led investment firms that was shortlisted for a *Chambers & Partners'* Diversity & Inclusion award. By bringing pension funds, diverse managers, hedge funds, investment consultants, and legal counsel together and elevating the voices of diverse women, we address the importance and advancement of diversity investing. Our 2018 inaugural event was shortlisted among *Euromoney's* Best Gender Diversity Initiative.

## MINORITY SCHOLARSHIP AND INTERNSHIP

To take an active stance in introducing minority students to our practice and the legal profession, we established the Labaton Sucharow Minority Scholarship and Internship years ago. Annually, we present a grant and Summer Associate position to a first-year minority student from a metropolitan New York law school who has demonstrated academic excellence, community commitment, and unwavering personal integrity. Several past recipients are now full-time attorneys at the Firm. We also offer two annual summer internships to Hunter College students.

## WHAT THE BENCH SAYS ABOUT US

On October 13, 2020, the Honorable Judge Lewis Liman of the Southern District of New York, upon appointing Labaton Sucharow as co-lead counsel (with two female lawyers) to the end-payor class in the pay-for-delay case involving the drug Bystolic, noted:

**"Historically, there has been a dearth of diversity within the legal profession. Although progress has been made…still just one tenth of lawyers are people of color and just over a third are women. A firm's commitment to diversity…demonstrate[s] that it shares with the courts a commitment to the values of equal justice under law…[and] is one that is able to attract, train, and retain lawyers with the most latent talent and commitment regardless of race, ethnicity, gender, or sexual orientation."**

**Labaton Sucharow**

# ANTITRUST TEAM

The attorneys who are involved in the prosecution of antitrust and commodities litigation include former state and federal government enforcers, former in-house counsels, and former members of the defense bar.

The practice is led by Chair Gregory Asciolla. Other attorneys who are members of this practice are Partners Karin E. Garvey, Robin A. van der Meulen; Of Counsel Matthew J. Perez; and Associates Veronica Bosco and Jonathan S. Crevier.





# Gregory Asciolla   Partner

140 Broadway
New York, NY 10005
212.907.0827
gasciolla@labaton.com

Gregory Asciolla is a Partner in the New York office of Labaton Sucharow LLP, where he serves as Chair of the Firm's Antitrust and Competition Litigation Practice, a member of the Firm's Executive Committee, and Chair of the Firm's Diversity, Equity, & Inclusion Committee. Greg focuses on representing businesses, public pension funds, and health and welfare funds in complex antitrust and commodities class actions.

Lawdragon named him one of the "Leading Plaintiff Financial Lawyers in America" and Benchmark Litigation named him a "Litigation Star."

Named a "Titan of the Plaintiffs Bar" by *Law360* as well as a leading plaintiffs' competition lawyer by *Global Competition Review* and *Chambers & Partners USA*, Greg is often recognized for his experience and involvement in high-profile cases. He has been named one of the "Leading Plaintiff Financial Lawyers in America" by *Lawdragon,* a "Litigation Star" by *Benchmark Litigation,* and a "Leading Lawyer" and a "Next Generation Lawyer" by *The Legal 500*, with sources describing him as "very effective plaintiffs' counsel" and "always act[ing] with a good degree of professionalism." Noting, "Asciolla shines in representing both business and public pensions funds in antitrust as well as commodities class actions." As a result, Greg is also frequently sought after by the media, including *The Wall Street Journal*, *The New York Times*, *Financial Times*, *CNN Business*, and *Global Competition Review*, for commentary on global antitrust developments.

Greg currently represents clients in antitrust matters involving price-fixing, monopolization, benchmark and commodities manipulation, pay-for-delay agreements, and other anticompetitive practices. Greg also represents pro bono clients in matters involving the arts and immigration/asylum of LGBT+ individuals.

Prior to joining Labaton Sucharow, Greg practiced antitrust litigation and counseling on behalf of clients worldwide at Morgan Lewis & Bockius LLP and Schulte Roth & Zabel LLP. He began his career as an attorney at the U.S. Department of Justice's Antitrust Division, where he focused on anticompetitive conduct in the healthcare industry.

Greg also makes substantial contributions to the antitrust bar. In 2016, he was elected to the Executive Committee of the New York State Bar Association (NYSBA) Antitrust Law Section, where he formerly served as the Chairman of the Horizontal Restraints Committee. He also currently serves as Co-Chairman of the Antitrust and Trade Regulation Committee of the New York County Lawyers' Association and Membership Chair of the Committee to Support the Antitrust Laws.

Greg regularly organizes and sits on panels and lectures discussing the latest developments and trends in antitrust law and frequently publishes work in national publications such



as *The National Law Journal*, *New York Law Journal*, and *Law360*. In addition, Greg serves as the U.S. Representative to the Banking Litigation Network and is on the Advisory Board of the American Antitrust Institute.

Greg earned his Juris Doctor from Catholic University of America. As a law student at Catholic University, he served as a member of the *Catholic University Law Review* and was the co-founder and executive editor of the *CommLaw Conspectus: Journal of Communications Law & Policy*. He also earned a certificate after successfully completing the law school's Comparative and International Law Program. He received his bachelor's degree, *cum laude*, from Boston College.

He is admitted to practice in New York and Washington, D.C.

## PUBLICATIONS

- "Protecting Patents Through Tribal Sovereign Immunity: A Failed Experiment," *Antitrust Advisor*, 2/26/2019

- "FDA Risk-Evaluation Guidance Unlikely to Help Generics," *Law360*, 6/12/2018

- "Arbitration Rule Repeal Will Adversely Affect Consumers," *Law360*, 11/2/2017

- "Creating a Partial Solution to Delayed Generic Competition," *Law360*, 6/24/2016

- "'Shall We Dance?'— Biologic-Biosimilar Competition Under the Biologics Price Competition and Innovation Act," *CPI Antitrust Chronicle*, 12/14/2015

- "When Blue Turns to Grey: Grand Jury Subpoenas for Foreign Documents Produced in Civil Litigation," *NY Litigator*, 1/1/2014

- "Europe Advancing Victims' Rights in Antitrust Actions," *The National Law Journal*, 11/29/2013

- "Potash Case Brings FTAIA to the Limelight," *Global Competition Review*, 1/24/2013

- "Two New Court Rulings Say No Exception in Per Se Rule on International Price-Fixing," *NYSBA Bar News*, 12/1/2012

- "Recent Cases on Antitrust Implications of Petitioning Foreign Governments," *The National Law Journal*, 11/28/2011

- "Quantifying Antitrust Damages in Private Enforcement Actions Under European Union," *Westlaw Journal: Antitrust*, 5/1/2010

- "How Courts Analyze Guilty Pleas and Government Investigations When Considering the Plausibility of an Antitrust Conspiracy After Twombly," *Class Action Litigation Report*, 3/26/2010

- "Iqbal and the Twombly Pleading Standard," *Law360*, 6/15/2009



- "Analyzing Proper Pleading Standard for Commodity Manipulation Claims," *New York Law Journal*, 2/10/2009

# SPEAKING ENGAGEMENTS

- *2020 & Beyond: Diversity in the Legal Profession Forum*, Bookoff McAndrews, 11/10/2020

- "Recent Developments in Health Care & Pharmaceuticals Q3 2019," ABA Section of Antitrust Law, 10/17/2019

- "Antitrust Panel," *Class Action Mastery Forum*, Litigation Conferences, 1/15/2019-1/17/2019

- "Antitrust Enforcement in the Age of Tweets," PF2 Securities, 10/24/2017

- "Role of Authorized Generics in Enabling Pay for Delay Deals," *Competition Issues in Pharmaceuticals*, Center for Competition Policy, 6/22/2017

- *Banking and Financial Disputes Debate*, Collyer Bristow, 9/19/2016

- "Banks on Trial," *Sunday Extra Podcast*, Australian Broadcasting Network, 7/31/2016

- "The Promise and Pitfalls of Section 2: Recent Developments," *ABA Antitrust Panel*, American Bar Association, 10/27/2015

- "The Antitrust Implications of Conditional Sales," *Antitrust Law Section Annual Fall Symposium*, New York State Bar Association, 11/21/2014

- "Questioning the Integrity of Financial Benchmarks: Legal Tools and Practical Problems," American Bar Association, 1/23/2014

- "From Microsoft to Google: What Have We Learned About Antitrust in Technology Platform Markets?," *2013 Antitrust Spring Lecture*, New York State Bar Association, 5/30/2013

- "The FTAIA After 30 Years: What Does the Recent Potash Decision Mean for the Future?," *Antitrust Law Section Annual Meeting*, New York State Bar Association, 1/24/2013





# Karin E. Garvey   Partner

140 Broadway
New York, NY 10005
212.907.0844
kgarvey@labaton.com

Karin E. Garvey is a Partner in the New York office of Labaton Sucharow LLP and a member of the Antitrust and Competition Litigation Practice.  With more than two decades of litigation experience, Karin focuses on representing businesses and public pension funds in complex antitrust class actions.

Karin was recently appointed lead or co-lead counsel in the following antitrust class actions:

- *Fusion Elite All Stars v. Varsity Brands, LLC* (W.D. Tenn.) – alleging monopolization and conspiracy to monopolize against the largest competition producer and apparel manufacturer in the market for All Star Cheer and the sport's allegedly independent oversight body.

- *In re Humira (Adalimumab) Antitrust Litigation* (N.D. Ill.) – alleging that a brand drugmaker colluded with a group of global rivals to divide the market for the blockbuster drug Humira between the U.S. and Europe and that it used a "patent thicket" to illegally maintain its monopoly.

- *In re Sensipar (Cinacalcet HCl) Antitrust Litigation* (D. Del.) – alleging that a brand and a generic drug company entered into an anticompetitive agreement to eliminate competition for sales of Sensipar.

- *In re Surescripts Antitrust Litigation* (N.D. Ill.) – alleging that health information technology company Surescripts, which provides e-prescription routing and eligibility services, monopolized the market for e-prescription services and, along with two other defendants, conspired to monopolize the market.

Karin was also appointed to the Plaintiff's Steering Committee in *In re Xyrem (Sodium Oxybate) Antitrust Litigation* (N.D. Cal.) a class action alleging, *inter alia*, that a brand drugmaker entered into anticompetitive pay-for-delay agreements with generic competitors and *In re Crop Inputs Antitrust Litigation* (E.D. Mo.) a class action alleging, *inter alia*, that major manufacturers of crop inputs (*e.g.*, seeds and pesticides) conspired to suppress competition and to fix prices.

Karin is recommended by *Chambers & Partners USA* and *The Legal 500* for excellence in the Antitrust practice.  She has also been recognized by *Lawdragon* as one of the "500 Leading Plaintiff Financial Lawyers in America."

Karin brings significant experience to managing complex, multi-jurisdictional cases from initial case development through resolution and appeal.  In addition to deposing top



executives, Karin has also prepared and defended company executives for deposition, hearing, and trial. Karin has significant experience working with experts—including economists, regulatory experts, patent experts, medical experts, toxicologists, materials scientists, valuation experts, foreign law experts, and appraisers—developing reports and testimony, preparing for and defending depositions, as well as taking depositions of opponents' experts. In addition, Karin has engaged in all phases of trial preparation and trial and has briefed and argued appeals. Karin also has significant experience with arbitration and mediation.

Prior to joining Labaton Sucharow, Karin practiced antitrust and general litigation at Arnold & Porter (then Kaye Scholer LLP), representing and counseling clients from a wide spectrum of industries including pharmaceuticals, cosmetics, building materials, film, finance, and private equity.

Karin is an Antitrust Section Member of the American Bar Association.

Karin obtained her Juris Doctor, *cum laude*, from Northwestern University School of Law, where she was a Note and Comment Editor for the *Journal of Criminal Law and Criminology*. She earned her bachelor's degree, *cum laude*, from Harvard University.

She is admitted to practice in New York.

## PUBLICATIONS

- "1st Circ. Generic-Delay Ruling Isn't Popular with Lower Courts," *Law360*, 6/12/2020

- "A Turning of the Tide: Victim Redress Through Private Antitrust Litigation," *Competition Policy International*, 7/18/2016

- "Is any Consideration a 'Payment'? The Continuing Struggle over How to Interpret FTC v. Actavis," *Bloomberg BNA Antitrust & Trade Regulation Report*, 1/9/2015

- "Indirect Purchasers Face a High Bar in Certifying Class Actions Involving Claims of Delayed Generic Entry in the Pharmaceutical Industry in the Wake of Recent U.S. Supreme Court Decisions," *Antitrust Health Care Chronicle*, 1/1/2015

## SPEAKING ENGAGEMENTS

- "Recent Developments in Antitrust Law," *3rd Annual Class Action Law Forum*, Western Alliance Bank, 4/21/21

- "Antitrust: Class Actions & Emerging Issues Panel," *Class Action Law Forum*, Western Alliance Bank, 3/4/2020

- "Antitrust," *Class Action Mastery Forum*, 1/16/2019





# Robin A. van der Meulen   Partner

140 Broadway
New York, NY 10005
212.907.0754
rvandermeulen@labaton.com

Robin A. van der Meulen is a Partner in the New York office of Labaton Sucharow LLP, where she represents clients in complex antitrust litigation. Robin has over a decade of experience litigating a wide variety of antitrust matters, including price-fixing, monopolization, benchmark and commodities manipulation, pay-for-delay agreements, and other anti-competitive practices.

*Euromoney's* Women in Business Law Awards selected Robin as a finalist for Antitrust and Competition Lawyer of the Year. *The Legal 500* recommends Robin for excellence in the field of Antitrust Civil Litigation and Class Actions, describing her as "persistent, persuasive, and well-respected by peers and opponents alike" and naming her a "Next Generation Partner." She has been recognized as "Up and Coming" by *Chambers & Partners USA* and as a "Future Star" by *Benchmark Litigation.* She has also been selected to *Benchmark's* "40 & Under Hot List" as one of "the best and brightest law firm partners" and someone who is "ready to take the reins." Additionally, Robin was recognized by *The Best Lawyers in America*® in the Antitrust Law category.

Robin was recently appointed to lead a class of end-payor plaintiffs in *In re Bystolic Antitrust Litigation,* a pay-for-delay case pending in the Southern District of New York. Robin is also currently representing end-payor plaintiffs in *In re Generic Pharmaceuticals Pricing Antitrust Litigation,* a massive case against some of the biggest drug companies in the world alleging price-fixing and anticompetitive conspiracies. Robin is leading another pay-for-delay case, *In re Novartis and Par Antitrust Litigation,* seeking to recover millions of dollars in overcharges relating to hypertension drug Exforge on behalf of end-payor plaintiffs.

Prior to joining Labaton Sucharow, Robin was a Litigation Associate at Willkie Farr & Gallagher LLP, where she practiced antitrust and commercial litigation. She also served as a judicial intern in the United States Bankruptcy Court for the Eastern District of New York for the Honorable Elizabeth S. Stong.

Robin is an active member of the antitrust bar. She is a member of the Executive Committee of the Antitrust Law Section of the New York State Bar Association (NYSBA) and a member of NYSBA House of Delegates. Robin is also a Vice Chair of the Antitrust Section's Health Care & Pharmaceutical Committee of the American Bar Association (ABA) and the Executive Editor of that Committee's *Antitrust Health Care Chronicle.* Since 2012, Robin has been an editor of the *Health Care Antitrust Week-In-Review,* a weekly publication that summarizes antitrust news in the health care industry.

Robin earned her Juris Doctor from Brooklyn Law School. While in law school, Robin served as an Associate Managing Editor of the *Journal of Law and Policy* and was a member of the



Moot Court Honor Society.  She earned her Bachelor of Arts from Columbia University where she competed as a Division I athlete on Columbia's track and field team.

She is admitted to practice in New York.

## PUBLICATIONS

- "How I Made Partner: 'It Takes a Well-Rounded Attorney to Make Partner,' Says Labaton Sucharow's Robin van der Meulen," *Law.com*, 2/22/2021

- "An Update On Anti-Poach Enforcement and Class Actions," *Law360*, 7/11/2018

- "Cash or No Cash – That is No Longer the Question!," *Antitrust Health Care Chronicle*, 4/22/2016

- "What's Located in Washington, Part of the Government and Rolling in Dough?," *Bloomberg BNA Daily Report for Executives*, 3/12/2014

## SPEAKING ENGAGEMENTS

- "Strategies for Handling Virtual Depositions," Fundamentals of Taking and Defending Depositions 2021, Practising Law Institute, 3/4/2021

- "What's New in Reverse Payment Litigation," ABA Sections of Antitrust Law & Health Law, 2/12/21

- "Recent Developments in Health Care & Pharmaceuticals Q3 2019," ABA Section of Antitrust Law, 10/17/2019

- *Fundamentals of Taking and Defending Depositions 2019*, Practising Law Institute, 3/7/2019

- "Recent Issues in Reverse Payments Litigations," ABA, 9/14/2017





# Matthew Perez   Of Counsel

140 Broadway
New York, NY 10005
212.907.0776
mperez@labaton.com

Matthew Perez is Of Counsel in the New York office of Labaton Sucharow LLP. Matthew focuses on representing businesses and public pension funds in complex antitrust class actions.

Matthew has been named a "Rising Star" by *The Legal 500*.

Matthew joined Labaton Sucharow from the New York State Attorney General's office, where he served as a Volunteer Assistant Attorney General in the Antitrust Bureau. While there, he received the Louis J. Lefkowitz Memorial Award for his work investigating bid rigging and other illegal conduct in the municipal bond derivatives market, resulting in more than $260 million in restitution to municipalities and nonprofit entities. He also investigated pay-for-delay matters involving multinational pharmaceutical companies. Prior to that, he served as an intern for the Honorable Richard B. Lowe III at the New York Supreme Court, Commercial Division.

Matthew earned his Juris Doctor from Benjamin N. Cardozo School of Law School, where he was executive editor of the *Cardozo Journal of Conflict Resolution* and received the Jacob Burns Medal for Outstanding Contribution to the Law School. He received his bachelor's degree from Swarthmore College.

He is admitted to practice in New Jersey and New York.

## PUBLICATIONS

- "Blowing the Whistle on the Lack of Antitrust Whistleblower Protection," *CPI Antitrust Chronicle*, 8/31/2019

- "Protecting Patents Through Tribal Sovereign Immunity: A Failed Experiment," *Antitrust Advisor*, 2/26/2019

- "FDA Risk-Evaluation Guidance Unlikely to Help Generics," *Law360*, 6/12/2018

- "Creating a Partial Solution to Delayed Generic Competition," *Law360*, 6/24/2016

- "'Shall We Dance?'— Biologic-Biosimilar Competition Under the Biologics Price Competition and Innovation Act," *CPI Antitrust Chronicle*, 12/14/2015

- "Whistle While You Work—For a Cartelist: Whistleblower Protection and Antitrust," *NYSBA NYLitigator*, 10/1/2015



## SPEAKING ENGAGEMENTS

- "NY and Federal Antitrust Law Looking 'Across the Atlantic': What Will U.S. Antitrust Law Look Like in 2021 and Beyond?" Annual Meeting 2021, NYSBA Antitrust Law Section, 1/25/2021

- "These Unprecedented Times: Impact of COVID-19 on Antitrust Litigation," New York State Bar Association, 6/17/2020

- "Recent Developments in Health Care & Pharmaceuticals Q3 2019," ABA Section of Antitrust Law, 10/17/2019

- "Don't Be Afraid of the DARC (the Donnelly Act Revision Committee, that is)," *2019 Annual Meeting*, NYSBA Antitrust Law Section, 1/17/2019

- "Pushing Forward or Staying the Course?: Product Hopping, Exclusionary Conduct, and the Recent Suboxone MTD Ruling," ABA Section of Antitrust Law, 10/16/2017

# EXHIBIT 2

*IN RE: ZETIA ANTITRUST LITIGATION*

**EXHIBIT 2**

**LODESTAR REPORT**

FIRM: LABATON SUCHAROW LLP
REPORTING PERIOD:  INCEPTION THROUGH MARCH 4, 2022

| PROFESSIONAL | STATUS | HISTORICAL HOURLY RATES | HOURS | LODESTAR |
|---|---|---|---|---|
| Asciolla, Gregory | (P) | $1,025 | 1.4 | $1,435.00 |
| | | $995 | 1.0 | $995.00 |
| | | $950 | 5.8 | $5,510.00 |
| | | $900 | 47.4 | $42,660.00 |
| Himes, Jay | (P) | $975 | 8.8 | $8,580.00 |
| Garvey, Karin | (P) | $925 | 0.4 | $370.00 |
| | | $875 | 0.3 | $262.50 |
| | | $775 | 15.7 | $12,167.50 |
| Minerva, Domenico | (OC) | $750 | 15.8 | $11,850.00 |
| Van Der Meulen, Robin | (OC) | $625 | 63.3 | $39,562.50 |
| | | $600 | 266.1 | $159,660.00 |
| Perez, Matthew | (OC) | $675 | 1.3 | $877.50 |
| | | $575 | 26.4 | $15,180.00 |
| | | $525 | 9.1 | $4,777.50 |
| Cividini, Derick | (A) | $625 | 3.8 | $2,375.00 |
| | | $585 | 2.1 | $1,228.50 |
| Morrison, Brian | (A) | $475 | 42.8 | $20,330.00 |
| Crevier, Jonathan | (A) | $475 | 0.1 | $47.50 |
| | | $400 | 26.3 | $10,520.00 |
| | | $375 | 4.9 | $1,837.50 |
| | | $275 | 27.0 | $7,425.00 |
| Merlo, Lorenzo | (SA) | $375 | 1,124.3 | $421,612.50 |
| Redman, Stacy | (PL) | $335 | 0.7 | $234.50 |
| | | $325 | 77.3 | $25,122.50 |
| Pina, Euterpe | (PL) | $335 | 3.0 | $1,005.00 |
| | | $325 | 1.5 | $487.50 |
| **TOTALS** | | | **1,776.6** | **$796,113.00** |

| | | | |
|---|---|---|---|
| Partner | (P) | Law Clerk | (LC) |
| Of Counsel | (OC) | Paralegal | (PL) |
| Associate | (A) | | |
| Staff Attorney | (SA) | | |

4

# EXHIBIT 3

*IN RE: ZETIA ANTITRUST LITIGATION*

**EXHIBIT 3**

**<u>EXPENSE REPORT</u>**

FIRM: LABATON SUCHAROW LLP
REPORTING PERIOD:  INCEPTION THROUGH MARCH 4, 2022

| CATEGORY | | TOTAL AMOUNT |
|---|---|---|
| Court/Service Fees | | $1,520.75 |
| Duplicating | | $6,601.50 |
| B/W (20,950 pages at $0.20 per page) | $4,190.00 | |
| Color (9,646 pages at $0.25 per page) | $2,411.50 | |
| Electronic Research Fees | | $3,710.20 |
| Litigation Support Vendor for Electronic Discovery | | $11,814.65 |
| Postage / Overnight Delivery Services | | $566.58 |
| Long Distance Telephone/Conference Calling | | $80.54 |
| Work-Related Transportation / Meals | | $657.18 |
| Assessments (Litigation Fund Payment) | | $20,000.00 |
| **TOTAL** | | **$44,951.40** |

# EXHIBIT H

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | |
|---|---|
| IN RE: ZETIA (EZETIMIBE) ANTITRUST LITIGATION | MDL No. 2836<br>No. 2:18-md-2836- RBS-DEM |

## DECLARATION OF KAREN HANSON RIEBEL IN SUPPORT OF END-PAYOR CLASS'S MOTION FOR FINAL APPROVAL OF SETTLEMENT, AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND <u>INCENTIVE AWARD</u>

I, Karen Hanson Riebel, declare as follows:

1.      I am an attorney licensed to practice before the courts of Minnesota, and I am a member in the firm Lockridge Grindal Nauen P.L.L.P. ("LGN"). I have personal knowledge of the facts stated in this Declaration and, if called as a witness, I would testify competently to them. I make this Declaration in support of LGN's request for attorneys' fees and reimbursement of litigation expenses, as set forth in End-Payor Class's Motion For Preliminary Approval Of Proposed Settlement, Approval Of The Form And Manner Of Notice To The Class, and Proposed Schedule For A Fairness Hearing.  I am counsel of record in this case for Plaintiff International Union of Operating Engineers Local 49 Health and Welfare Fund.

2.      A brief description of my firm, which includes a short summary of my experience and credentials, is attached as Exhibit 1 and incorporated herein by reference.

3.      Throughout the course of this litigation, my firm kept files contemporaneously documenting all time spent, including tasks performed, and expenses incurred, and provided those reports monthly to Marvin A. Miller, one of End-Payor Plaintiffs' ("EPP") Co-Lead Counsel. All the time and expenses reported by my firm advanced were reasonably necessary for the prosecution of this case in order to achieve the class-wide results obtained for the benefit of the EPP Class.

4.      LGN drafted an initial complaint for Plaintiff International Union of Operating Engineers Local 49 Health and Welfare Fund, assisted it with responding to initial and supplemental discovery, and prepared it for and defended its deposition. In addition, at the request of Co-Lead Counsel, LGN attorneys did extensive research and drafting responding to Defendants' motion to dismiss, also at the request of Co-Lead Counsel, LGN assisted with the review of documents produced by Defendants.

5.      The schedule attached as Exhibit 2, prepared from contemporaneous time records regularly prepared and maintained by my firm and incorporated herein, is a summary of the amount of time spent by my firm's partners, attorneys, and professional support staff who were involved in this litigation. It does not include any time devoted to preparing this Declaration or otherwise pertaining to the request for an award of attorney's fees and reimbursement of expenses. The lodestar calculation is based on my firm's historical billing rates agreed to by hourly-fee paying clients or submitted to other courts for which compensation was requested. The total number of hours reasonably expended on this litigation by my firm from inception through March 31, 2023, which does not include time spent preparing this Declaration, is 626.40 hours. The total lodestar for my firm at historic rates is $370,186.50. Expense items are billed separately and are not duplicated in my firm's lodestar. Those records have been provided to Class Counsel and I authorize them to be submitted for *in camera* inspection by the Court, if necessary.

6.      The expenses my firm incurred in litigating this action are reflected in the books and records of my firm. These books and records are prepared from expense vouchers, invoices, receipts, check records, and other source materials and accurately reflect the expenses incurred. My firm's expense records are available for inspection by the Court if necessary.

2

7.    My firm incurred a total of $17,036.63 in unreimbursed expenses, all of which were reasonable and necessary for the prosecution of this litigation. Of this amount, $10,000 was for assessment payments for common litigation expenses or direct payments to experts or other venders made at the request of Co-Lead Counsel or as directed by me, and an additional $7,036.63 was for non-common litigation expenses incurred by my firm, such as filing fees, on-line PACER research, electronic legal research, meals, parking, copying, telephone, etc. A summary of those expenses by category is attached as Exhibit 3.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 4th day of May, 2023, in Minneapolis, MN.

_____
Karen H. Riebel

3

# Exhibit
# 1



# Lockridge Grindal Nauen P.L.L.P.

For more than 40 years, Lockridge Grindal Nauen P.L.L.P. has served clients throughout the Midwest and in Washington, D.C. Our attorneys and lobbyists have extensive experience in local, state, and federal government relations as well as antitrust, business, campaign finance, consumer, data breach, governmental, health care, employment, environmental, ERISA, intellectual property, real estate, securities, and tribal law and litigation.

Our firm represents clients of all shapes and sizes, taking the time to understand each client's goals and aspirations before tailoring our representation to meet their individual needs, whether they be in the courtroom, the halls of Congress, city hall, or in their state capitol.

Our clients include local and tribal governments, health care professionals and organizations, real estate developers, energy companies, telecommunications providers, casualty insurers, trade and industry associations, health and pension funds, unions, as well as issue-based coalitions.

Lockridge Grindal Nauen's attorneys and government relations professionals are assisted by an extensive support staff. The firm has offices in Minneapolis, Minnesota, Bismarck, North Dakota, and Washington, D.C.

## Cases

**The firm has served or serves as Lead or Co-Lead counsel in several prominent cases in Minnesota:**

- *In re Target Corporation Customer Data Security Breach Litigation*, No. 14-02522 (D. Minn.)
- *In re EpiPen ERISA Litigation*, No. 17-1884 (D. Minn.)
- *Judith Thorkelson, et al. v. Publishing House of the Evangelical Lutheran Church in America, et al.*, Court File 10-01712 (D. Minn.)
- *Johannessohn et al. v. Polaris Industries, Inc.* No. 16-03348 (D. Minn.)
- *Beck v. Austin*, No. 19-01453 (D. Minn.)
- *Peterson v. BASF Corp.*, Civil No. C2-97-295 (Norman County District Court, Minn.)
- *In Re Baycol Products Litig.*, MDL No. 1431 (D. Minn.)
- *In re Beef Purchasers Antitrust Litig. (aka Peterson v. JBS USA Food Co. Holdings et al.)* No. 19-cv-01129 (D. Minn)
- *Benacquisto, et al. v. American Express Financial Corp. et al.*, Master File No. 00-1980 (D. Minn.), Civil Action No. 96-18477 (Henn. Cty. Dist. Ct.) (insurance class action)
- *In Re HardiePlank Fiber Cement Siding Litig.*, MDL No. 2359 (D. Minn.)
- *In Re Lutheran Brotherhood Variable Insurance Products Co. Sales Practices Litig.*, MDL No. 1309 (D. Minn.)
- *In Re Monosodium Glutamate Antitrust Litig.*, MDL No. 1328 (D. Minn.)
- *In Re Netgain Technology, LLC Consumer Data Breach Litigation*, No. 21-cv-01210 (D. Minn.)
- *In Re Northstar Education Finance, Inc. Contract Litig.*, MDL 08-1990 (D. Minn.)
- *In Re Piper Funds, Inc. Institutional Government Income Portfolio Litig.*, Master File No. 3-94-587 (D. Minn)
- *In re Pork Antitrust Litig.*, No. 18-cv-01776 (D. Minn)
- *Zimmerman v. Riverplace Counseling Center, Inc.*, No. 19-6522 (Anoka Cty. Dist. Ct.)

- *Lutzke v. Metropolitan Council et al*, No. 27-cv-19-14453 (Henn. Cty. Dist. Ct. and A22-0194 (Minn. App.)

**In other District Courts, Lockridge Grindal Nauen served or serves as Lead or Co-Lead Counsel in the following cases, among others:**

- *In re Yahoo! Inc. Customer Data Security Breach Litigation*, No. 16-02752 (N.D. Cal.)
- *In re Arby's Restaurant Group, Inc. Data Security Litigation*, No. 17-00514 (N.D. Ga.)
- *In re Broiler Chicken Antitrust Litig.*, No. 16-cv-08737 (N.D. Ill.)
- *In re: Capital One Consumer Data Security Breach Litigation*, No. 19-md-02915 (E.D. Va.)
- *In Re Catfish Antitrust Litig.*, MDL No. 928 (N.D. Miss.)
- *In Re CertainTeed Corp. Roofing Shingle Products Liability Litig.*, MDL 1817 (E.D. Pa.)
- *In re: Community Health Systems, Inc., Customer Security Data Breach Litig.*, No. 15-00222-KOB (N.D. Ala.)
- *In re: Crop Inputs Antitrust Litigation*, No. 21-02993 (E.D. Mo.)
- *D&M Farms et al. v. Birdsong Corp. et al*, No. 19-cv-0463 (E.D. Va.)
- *In re: FedLoan Student Loan Servicing Litigation*, No. 18-02833 (E.D. Pa)
- *In re Freight Forwarders Antitrust Litigation (Precision Associates, Inc. v. Panalpina World Transport (Holding) Ltd. et al.)* No. 08-cv-42 (E.D.N.Y.)
- *In re GEICO Customer Data Breach Litigation*, No. 21-02210 (E.D.N.Y.)
- *George Guenther, et al. v. Cooper Life Sciences, et al. (Cooper Life Sciences Securities Litig.)*, No. C 89-1823 MHP (N.D. Cal.)
- *Greater Chautauqua Federal Credit Union, et al. v. Kmart Corp. et al.*, No. 15-02228 (N.D. Ill.)
- *Holmes v. Elephant Insurance Co. et al.*, No 22-cv-487 (E.D. Va.)
- *In Re IKO Roofing Shingle Products Liability Litig.*, MDL No. 2104 (C.D. Ill.)
- *In Re Kitec Plumbing Systems Products Liab. Litig.* MDL No. 2098 (N.D. Tex.)
- *Meyers v. The Guardian Life Insurance Company of America, Inc. Litig.*, Civil No. 2:97CV35-D-B (N.D. Miss.)
- *Olean Wholesale Grocery Cooperative, et al. v Agri Stats, Inc. et al.*, No. 19-cv-08318 (N.D. Ill.)
- *In Re Polypropylene Carpet Antitrust Litig.*, MDL No. 1075 (N.D. Ga.)
- *In Re: Potash Antitrust Litigation (II)*, MDL No. 1996 (N.D. Ill.)
- *In Re Residential Doors Antitrust Litig.*, MDL No. 1039 (E.D. Pa.)
- *Gary G. Smith, et al. v. Little Caesar Enterprises, Inc., et al. (Little Caesar Franchise Litig.)*, Civil No. 93 CV 74041 DT (E.D. Mich.)
- *In re Surescripts Antitrust Litig.*, No. 19-cv-06627 (N.D. Ill.)
- *In re Turkey Antitrust Litig.*, No. 19-08318 (N.D. Ill.)
- *In Re Unisys Savings Plan Litig.*, Master File No. 91-3067 (E.D. Pa.)
- *Wood Mountain Fish LLC, et al., v. Mowi ASA (f/k/a Marine Harvest ASA), et al.*, No. 19-22128 (S.D. Fla.)

**LGN also had substantial involvement in the following litigation:**

- *Adkins v. Facebook, Inc.*, No. 18-cv-05982 (N.D. Cal.)
- *In re Facebook, Inc. Customer Privacy User Profile Litig.*, No. 18-02843 (N.D. Cal.)
- *In re Packaged Seafood Products Antitrust Litigation*, No. 15-2670 (S.D. Cal.)
- *In Re Air Cargo Shipping Services Antitrust Litig.*, Civil No. 1:06-md-1775-CBA-VVP (E.D.N.Y.)
- *American Telephone and Telegraph Antitrust Litig.*, Civil Action No. 81-2623 (D.D.C.)
- *In Re AOL Time Warner Securities Litig.*, MDL No. 1500 (S.D.N.Y.)
- *Baker v. ParkMobile, LLC*, No. 21-2182 (N.D. Ga.)
- *Bellwether Community Credit Union v. Chipotle Mexican Grill, Inc.*, No. 17-01102 (D. Co.)
- *In Re Blue Cross Blue Shield Subscriber Litig.*, Master File No. 19-C3-98-7780 (Dakota County District Court, Minn.)
- *In Re Connecticut General Life Insurance Co. Premium Litig.*, MDL No. 1336 (C.D. Cal.)

- *Davenport, et al. v. Illinois Farmers Insurance Company, et al.*, Case No. CIV-03-158-F (W.D. Ok.)
- *In Re Delphi Corporation Securities, ERISA, and Shareholder Derivative Litig.*, Master Case No. 05-md-1725 (E.D. Mich.)
- *In Re Domestic Air Transportation Antitrust Litig.*, MDL No. 861 (N.D. Ga.)
- *Eliason v. Gentek Building Products, Inc., et al.*, Civ. No. 10-cv-2093 (N.D. Ohio) (Executive Committee)
- *In re Equifax, Inc. Customer Data Security Breach Litigation*, No. 17-02800 (N.D. Ga.)
- *In Re Federal National Mortgage Association Securities, Derivative and ERISA Litig.*, MDL No. 1668 (D.D.C.)
- *First Choice Federal Credit Union et al., v. The Wendy's Company et al.*, No. 16-00506 (W.D. PA)
- *In Re Flat Glass (1) Antitrust Litig.*, MDL No. 1200 (W.D. Pa.)
- *In re Generic Pharmaceuticals Pricing Antitrust Litig.*, No. 16-02724 (E.D. Penn.)
- *In Re Guidant Corp. Implantable Defibrillators Products Liability Litig.*, MDL No. 1708 (DWF/AJB)(D. Minn.)
- *Haritos, et al. v. American Express Financial Advisors, Inc.*, 02-2255-PHX-PGR (D. Ariz.)
- *In re Home Depot, Inc., Customer Data Security Breach Litigation*, No. 14-02583 (N.D. GA)
- *In Re ICN/Viratek Securities Litig.*, 87 Civ. 4296 (S.D.N.Y.)
- *In Re iPhone Application Litig.*, Civil No. 10-CV-05878-LHK (N.D. Calif.)
- *Kirk Dahl, et al. v. Bain Capital Partners, LLC, et al.* No. 07-12388 (D. Mass.)
- *In Re Lease Oil Antitrust Litig.*, MDL No. 1166 (S.D. Tex.)
- *In Re Medtronic, Inc. Implantable Defibrillator Products Liability Litig.*, MDL No. 1726 (JMR/AJB) (D. Minn.)
- *In Re Medtronic, Inc. Sprint Fidelis Leads Products Liability Litig.*, MDL 08-1905 (D. Minn.) (Liaison Counsel)
- *In Re Merck & Co., Inc., Securities, Derivative & ERISA Litig.*, No. 3:05-cv-1151 (D.N.J.)
- *In Re Meridia Products Liability Litig.*, MDL No. 1481 (N. D. Ohio)
- *In Re Nasdaq Market-Maker Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.)
- *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, MDL No. 1720 (E.D.N.Y.)
- *In re: Peanut Farmers Antitrust Litigation*, No. 19-00463 (E.D. Va.)
- *Ohio Public Employees Retirement System, et al. v. Freddie Mac, et al.*, MDL No. 1584 (S.D.N.Y.)
- *In Re Propulsid Products Liability Litig.*, MDL No. 1355 (E.D. La.)
- *In Re Rezulin Litig.*, MDL No. 1348 (S.D.N.Y.)
- *Shores et al v. Premera Blue Cross*, No. 15-01268 (D. Or.)
- *Staley v. Gilead Sciences, Inc.*, No. 19-cv-02573 (N.D. Ca.)
- *Veridian Credit Union v. Eddie Bauer LLC*, No. 17-00356 (E.D. Wa.)
- *In Re Vioxx Product Liability Litig.*, MDL No. 1657 (E.D. La.)
- *In Re Vytorin/Zetia Marketing, Sales Practices, and Products Liability Litig.*, MDL 1938 (D.N.J.)
- *In Re Worldcom, Inc. Securities Litig.*, No. 02-CV-3288 (S.D.N.Y.)



**LOCKRIDGE GRINDAL NAUEN**
P.L.L.P.
Attorneys at Law

**Karen Hanson Riebel**
*Partner*
612-596-4097
khriebel@locklaw.com

## Practices
Securities Litigation
Antitrust Law
Data Breach Litigation

## Education
Boston University School of Law, 1991
  J.D., B.A., *cum laude*

## Bar Admissions
1991, Minnesota

## Court Admissions
Minnesota
U.S. District Court, District of Minnesota
Third Circuit Court of Appeals
Eighth Circuit Court of Appeals

# Karen Hanson Riebel

Karen Hanson Riebel concentrates her practice in the areas of data breach, antitrust, and securities litigation. She has litigated a number of complex class action matters and represented numerous pension funds and other institutional investors in cases involving corporate fraud. Recently, she has been on the forefront of international data breach litigation, representing financial institutions against such retailers as Target and Home Depot.

Ms. Riebel began her career by spending seven months in Anchorage, Alaska as a member of the trial team that secured a jury verdict for punitive damages in the amount of $5 billion for a mandatory punitive damages class in In re The Exxon Valdez, Case No. A89-0095-CV (D. Alaska). For their efforts, Ms. Riebel and the other members of the trial team were awarded the Trial Lawyers' For Public Justice Trial Lawyers of the Year award in 1994.

## Cases with Leadership Roles

- *In re: Capital One Consumer Data Security Breach Litigation,* No. 19-md-02915 (E.D. Va.) – Co-Lead Counsel
- *In re: Community Health Systems, Inc., Customer Security Data Breach Litig.,* No. 15-00222-KOB (N.D. AL) – Co-Lead Counsel – Settled
- *In re Yahoo! Inc. Customer Data Security Breach Litigation,* No. 16-02752 (N.D. CA) – Member of four-person Plaintiffs' Executive Committee – Settled
- *In re: FedLoan Student Loan Servicing Litigation,* No. 18-02833 (E.D. Pa) – Plaintiffs' Executive Committee
- *Shores et al v. Premera Blue Cross,* No. 15-01268 (D. Or.) – Plaintiffs' Steering Committee – Settled
- *Greater Chautauqua Federal Credit Union, et al. v. Kmart Corp. et al.,* No. 15-02228 (N.D. IL) – Co-Lead Counsel for Financial Institutions – Settled
- *In re Target Corporation Customer Data Security Breach Litigation,* No. 14-02522 (D. MN) – Liaison Counsel for the Financial Institution Plaintiffs and member of Plaintiffs' Leadership Committee – Settled
- *In re Arby's Restaurant Group, Inc. Data Security Litigation,* No. 17-00514 (N.D. Ga.) – Co-Lead Counsel for Financial Institutions – Settled
- *In re Home Depot, Inc., Customer Data Security Breach Litigation,* No. 14-02583 (N.D. GA) – Financial Institution Plaintiffs' Steering Committee – Settled

From the Courtroom to the Capitol®

© Lockridge Grindal Nauen P.L.L.P. | Minneapolis, MN (612) 339–6900 | Washington, D.C. (202) 544–9840 | Bismarck, ND (701) 426-7940 | LOCKLAW.COM

## Professional Associations

- Federal Bar Association
- Ms. Riebel served as an officer of the National Association of Shareholder & Consumer Attorneys (NASCAT) from 2007-2018
- Ms. Riebel was appointed to the Advisory Board for the Loyola University Chicago School of Law Institute for Consumer Antitrust Studies in 2018

## Professional Recognition

- Named a Minnesota Super Lawyer® from 2015-2022
- Named one of Minnesota's Top 50 Women Super Lawyers® -from 2017-2022
- Named by Best Lawyers® to their 2020 & 2022 Best *Lawyers in America* list

## Community Involvement

- Page Education Fund Board of Advisors
- Project for Pride in Living Board of Directors

- *Bellwether Community Credit Union v. Chipotle Mexican Grill, Inc.* No. 17-01102 (D. Co.) – Financial Institution Plaintiffs' Executive Committee – Settled
- *Veridian Credit Union v. Eddie Bauer LLC,* No. 17-00356 (W.D. Wa.) – Financial Institution Plaintiffs' Executive Committee – Settled
- *First Choice Federal Credit Union et al., v. The Wendy's Company et al.,* No. 16-00506 (W.D. PA) – Financial Institution Plaintiffs' Executive Committee – Settled
- *In re Equifax, Inc. Customer Data Security Breach Litigation,* No. 17-02800 (N.D. Ga) – Financial Institution Plaintiffs' Executive Committee – Settled

## Securities Litigation Cases

- *In re AOL Time Warner Securities Litigation,* MDL No. 1500 (S.D.N.Y.)
- *In re Bristol-Myers Squibb Co. Securities Litigation,* No. 07-7867 (S.D.N.Y.)
- *In re Countrywide financial Securities Litigation,* No. 07-05295 (C.D. Cal.)
- *In re Credit Suisse – AOL Securities Litigation,* No. 02-12146 (D. Mass.)
- *In re Citi-Equity Group, Inc. Securities Litigation,* No. 3-94-1024 (D. Minn.)
- *In re Delphi Corp. Securities, ERISA, and Shareholder Derivative Litigation,* No. 05-1725 (E.D. Mich.)
- *In re Digi International, Inc. Securities Litigation,* No. 97-5 (D. Minn.)
- *In re Federal National Mortgage Association Securities, Derivative and ERISA Litigation,* MDL No. 1668 (D.D.C.)
- *In re ICN.Viratek Securities Litigation,* No. 87-4296 (S.D.N.Y.)
- *In re Initial Public Offering Securities Litigation,* No. 21-92 (S.D.N.Y.)
- *Khoday et al. v. Symantec Corporation et al.,* No. 11-00180 (D. Minn.)
- *In re LaserMaster Technologies, Inc. Securities Litigation,* No. 95-631 (D. Minn.)
- *Little Gem Life Sciences LLC v. Orphan Medical, et al,* No. 06-1377 (D. Minn.)
- *In re Merck & Co., Inc. Securities, Derivative & ERISA Litigation,* No. 05-1151 (D. N.J.)
- *In re Select Comfort Corp. Securities Litigation,* No. 99-884 (D. Minn.)
- *In re Summit Medical Systems, Inc. Securities Litigation,* No. 97-558 (D. Minn.)
- *In re Telxon Securities Litigation,* No. 98-2876 (N.D. Ohio)

## Data Breach & Privacy Cases

- *Adkins v. Facebook, Inc.* No. 18-cv-05982 (N.D. Cal.)
- *In re Ashley Madison Customer Data Breach Security Litigation,* MDL N0. 2669 (E.D. Mo.)
- *In re Anthem, Inc. Data Breach,* No. 15-md-02617 (N.D. Cal.)
- *Baker v. ParkMobile, LLC,* No. 21-cv-2182 (N.D. Ga.)
- *In re Banner Health Data Breach Litigation,* No. 16-cv-02696 (D. Ariz)
- *Baysal v. Midvale Indemnity Company et al,* No. 21-cv-00394 (W.D. Wis.)
- *In re: Blackbaud, Inc. Customer Data Security Breach Litigation,* No. 20-mn-02972 (D.S.C.)
- *Duqum v. Scottrade, Inc.* No. 15-cv-01537 (E.D. Mo)
- *Fero et al., v. Excellus Health Plan, Inc. et al.,* No. 15-06569 (W.D.N.Y.)
- *In re GEICO Customer Data Breach Litigation,* No. 21-02210 (E.D.N.Y.)
- *Gitner v. U.S. Bank National Association et al.,* No. 20-cv-02101 (D. Minn)

From the Courtroom to the Capitol®

- *In re Google Android Consumer Privacy Litigation*, No. 11-md-2264 (N.D. Cal)
- *Greenstate Credit Union v. Hy-Vee, Inc.* No. 20-cv-00621 (D. Minn)
- *Greenstein et al. v. Noblr Reciprocal Exchange*, No. 21-04537 (N.D. Cal.)
- *In re iPhone Application Litigation*, No. 11-md-2250 (N.D. Cal)
- *In re Netgain Technology, LLC, Consumer Data Breach Litigation*, No. 21-cv-01210 (D. Minn.)
- *SELCO Community Credit union v. Noodles & Company*, No. 16-02247 (D. Colo.)
- *Springmeyer v. Marriott International, Inc.*, No. 20-cv-00867 (D. Md.)
- *Smallman, et al. v. MGM Resorts International*, No. 20-cv-00375 (D. Nev)
- *Stallone v. Farmers Group Inc. et al.*, No. 210cv001659 (D. Nev)
- *Storm et al. v. Paytime, Inc.* No. 14-01138 (M.D. Pa.)
- *In re: Supervalu, Inc., Customer Data Security Breach Litigation*, MDL No. 2586 (D. Minn)
- *Village Bank v. Caribou Coffee Company, Inc. et al.*, No. 19-cv-01640 (D. Minn)
- *In re Volkswagen Group of America, Inc. Data Breach Litigation*, No. 21-cv-09203 (N.D. Cal.)
- *In re Warner Music Group Data Breach*, No. 20-cv-07473 (S.D.N.Y)
- *In re WaWa, Inc. Data Security Litigation*, No. 19-cv-06019 (E.D. Pa)
- *Zimmerman v. Riverplace Counseling Center, Inc.*, No. 02-cv-19-6522 (Anoka Cty. Dist. Ct.)

## Other Cases

- *In re Facebook, Inc. Customer Privacy User Profile Litigation*, No. 18-02843 (N.D. Cal)
- *Kirk Dahl, et al., v. Bain Capital Partners, LLC, et al.*, (the Private Equity Antitrust Litigation), No. 07-CV-12388 (D. Mass.) – Resulted in recovery of $590.5 million for plaintiffs.
- *Johannessohn et al v. Polaris Industries, Inc.* No. 16-cv-03348 (D. Minn.)
- *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL No. 1720 (E.D. NY)
- *In re Worldcom, Inc. Securities Litigation* No. 02-CV-3288 (S.D. NY) – Securities class action, which resulted in recovery of $6.13 billion for plaintiffs
- Exxon *Valdez Oil Spill Litigation*, No. A89-0095 (D. Alaska)
- *In re Lutheran Brotherhood Variable Ins. Prod. Co. Sales Practices Litigation*, MDL No. 1309 (D. Minn)

## Presentations

- Fundamentals of Data Security at the Minnesota Building and Construction Trades Council (July 22, 2021)
- The Exxon Valdez Experience presented at Louisiana State Bar Associations Gulf Coast Oil Spill Symposium, May 25, 2010 in New Orleans.
- Pitfalls of Class Action Notice and Claims Administration presented at Practicing Law Institute's Class Action Litigation Conference, July 9, 2014 in New York City.

From the Courtroom to the Capitol®

- The Other Data Breach Cases: Medical Records Cases and Cases on Behalf of Banks and Others presented at HarrisMartin's Data Breach Litigation Conference, March 25, 2015 in San Diego.
- AAJ Education's Plaintiff-Only Hot Topics and Trends in Litigation Seminar, May 27, 2015 in Minneapolis.
- Class Actions: Where to Begin panel at HB Litigation Conferences' Mass Tort Med School + Class Actions, March 17, 2017 in Orlando.
- Presented at Practising Law Institute's Class Action Litigation 2017 program, June 21, 2017 in New York City.
- Privacy & Data Security: Navigating the Challenges of Emerging Technologies at the An Innovation Transformation: Navigating the Legal Risks and Business Opportunities of Disruptive Technologies conference, September 6, 2018.
- Data Breach/Privacy Class Actions at the Class Action Mastery Forum, January 16, 2019.
- Maryland & Other Potential Venues at the HarrisMartin's Data Breach Litigation Conference, January 29, 2019.
- Data Breach Roundup: What's Hot with current litigations; Standing Issues; Crossovers; and More, at the Mass Torts Made Perfect Conference in Las Vegas.
- Developments in Class Notion and Settlement Administration: Digital Notice & new Means of Distributions and Front-Loading the Class Cert Motion: Why Judges are Asking More of Lawyers Earlier and Earlier. Early Notice Plans, Damages Models, Science Days, and More at the Mass Torts Made Perfect Conference, October 22-23, 2019 in Las Vegas.



LOCKRIDGE
GRINDAL
NAUEN
P.L.L.P.
Attorneys at Law

From the Courtroom to the Capitol®

© Lockridge Grindal Nauen P.L.L.P. | Minneapolis, MN (612) 339–6900 | Washington, D.C. (202) 544–9840 | Bismarck, ND (701) 426-7940 | LOCKLAW.COM



## LOCKRIDGE GRINDAL NAUEN
### P.L.L.P.
*Attorneys at Law*

**Heidi M. Silton**
*Partner*
612-596-4092
hmsilton@locklaw.com

### Practices
Business Litigation
Antitrust Law

### Education
William Mitchell College of Law, 1995

### Bar Admissions
1995, Minnesota

### Court Admissions
Minnesota
U.S. District Court, District of Minnesota
Seventh Circuit Court of Appeals
Eighth Circuit Court of Appeals

# Heidi M. Silton

Heidi M. Silton is a partner in the firm's antitrust department and practices primarily in complex business litigation. Heidi represents mainly small and mid-sized businesses in complex litigation involving other businesses and litigates in Minnesota and throughout the United States. She and the firm are regularly appointed lead and co-lead plaintiffs' class counsel by courts in nationwide antitrust litigation.

## Representative Cases

- *In re: Generic Pharmaceuticals Pricing Antitrust Litig.*, No. 2:16-md-02724-CMR (E.D. Pa) – Member of End-Payer Plaintiffs Steering Committee

- *In re Google Digital Advertising Antitrust Litig.*, No. 1:21-md-03010 (S.D.N.Y.)

- *In re Google Play Consumer Antitrust Litig.*, No. 5:20-cv-05761 (N.D. Cal.)

- *In re Packaged Seafood Products Antitrust Litig.*, No. 15-MD-2670, (S.D. Cal.)

- *In re Seroquel XR (Extended Release Quetiapine Fumarate) Antitrust Litig.*, Nos. 20-cv-1076 and 20-cv-01090 (D. Del.)

- *Staley, et al., v. Gilead Sciences, Inc. et al*, No.: 3:19-cv-02573 (N.D. Cal.) – Member of Interim Executive Committee for End-Payor Class Plaintiffs

- *Wood Mountain Fish LLC, et al., v. Mowi ASA, f/k/a Marine Harvest ASA, et al. (S.D. Fla.)*, No. 19-022128-CIV – court-appointed interim Co-Lead Class Counsel for the Salmon Indirect Purchaser Class

- *In re Aggrenox Antitrust Litig.*, No. 3:14-md-02516-SRU (D. Conn.)

- *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No. 1426 (E.D. Pa.)

- *In re Celebrex (Celecoxib) Antitrust Litig.*, No. 2:14-cv-00395 (E.D. Va.)

- *In re Digital Music Antitrust Litig.*, No. 1:06-md-01780 (S.D.N.Y.)

- *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M:02-cv-1486 (N.D. Cal.)

- *El Jay Poultry v. Packaging Corporation of America, et al.*, No. 1:10-cv-5896 (N.D. Ill.)

- *In re Fasteners Antitrust Litig.*, MDL No. 1912, (E.D. Pa.)

- *In re Flat Glass (II) Antitrust Litig.*, No. 2:08-mc-180 (W.D. Pa.) – Plaintiffs' Co-Lead Counsel

- *In re Food Service Equipment Hardware Antitrust Litig.*, No. 1:10-cv-1849 (N.D. Ga.)

From the Courtroom to the Capitol®

© Lockridge Grindal Nauen P.L.L.P. | Minneapolis, MN (612) 339–6900 | Washington, D.C. (202) 544–9840 | Bismarck, ND (701) 426-7940 | LOCKLAW.COM

**Professional Associations**

- President of The Committee to Support the Antitrust Laws (COSAL)
- Advisory Board member of the American Antitrust Institute (AAI)
- Chair of AAI's Private Enforcement Awards Judging Committee
- Vice-Chair to the American Bar Association's Antitrust Section Membership and Diversity Committee
- Advisor to the American Bar Association's Global Private Litigation Committee
- Past chair & emeritus of the Minnesota State Bar Association Antitrust Law Section

**Professional Recognition**

- Named a Minnesota Super Lawyer® from 2003-2022
- Named one of Minnesota's Top 50 Women Super Lawyers® in 2012, 2015-2021
- Named one of Minnesota's Top 100 Women Super Lawyers® for 2007-2009
- Named a Top 100 Minnesota Super Lawyer® in 2017
- Named one of the Minneapolis/St. Paul Business Journal's "40 Under 40" in 2005
- Named a 2023 Layer of Distinction
- The National Trial Lawyers – Top 100 in the Civil Plaintiff Practice Area
- Recognized by Women We Admire as one of the Top 50 Women Leaders of Minnesota for 2022
- Presented with 2021 COSAL President's Award

**Community Involvement**

- Member of Twin Cities Diversity in Practice's Membership and Engagement Committee
- Member of the firm's Diversity and Inclusion Committee
- Serves on the board of Arete Academy
- Services on the board of Reader/Writer, also a writing coach for 8th graders
- Co-Chaired galas to support the Sanneh Foundation, the American Diabetes Association, and Second Harvest

- *In re Foundry Resins Antitrust Litig.*, No. 2:04-md-1638 (S.D. Ohio)
- *Funeral Consumers Alliance, Inc., et al. v. Serv. Corp. Int'l, et al.*, No. H-05-3394 (S.D. Tex.)
- *In re Hydrogen Peroxide Antitrust Litig.*, MDL No. 1682 (E.D. Pa.)
- *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, MDL No. 2542 (S.D.N.Y.)
- *Kleen Products LLC, et al. v. Packaging Corp. of Am., et al.*, No. 1:10-cv-5711 (N.D. Ill.)
- *In re Lidoderm Antitrust Litig.*, No. C-14-md-02521 (N.D. Cal.)
- *In re Monosodium Glutamate Antitrust Litig.*, MDL No. 1328 (D. Minn.) and *related Inquivosa et al. v. Ajinomoto Co., et al.*, No. 03-cv-2997 (D. Minn.) – Plaintiffs' Co-Lead Counsel
- *In re National Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig.*, MDL No. 2541 (N.D. Cal.)
- *In re Niaspan Antitrust Litig.*, No. 2:13-md-2460 (E.D. Pa.)
- *In re Packaged Ice Antitrust Litig.*, MDL No. 1952 (E.D. Mich.)
- *In re Parcel Tanker Shipping Antitrust Litig.*, MDL No. 1568 (D. Conn.)
- *In re Platinum and Palladium Antitrust Litig.*, No. 1:14-cv-09391 (S.D. N.Y.)
- *In re Potash Antitrust Litig. (II),* No. 1:08-md-06910 (N.D. Ill.) – Plaintiffs' Co-Lead Counsel
- *Freight Forwarders Antitrust Litig. (Precision Associates, Inc. v. Panalpina World Transport (Holding) Ltd., et al.),* No. 1:08-cv-42 (E.D.N.Y.) – Plaintiffs' Co-Lead Counsel
- *In re Pressure Sensitive Labelstock Antitrust Litig.*, MDL No. 1556 (M.D. Pa.) – Plaintiffs' Co-Lead Counsel
- *In re Publication Paper Antitrust Litig.*, No. 3:04-md-1631-SRU (D. Conn.)
- *In re Refrigerant Compressors Antitrust Litig.*, MDL No. 2042
- *In re Supervalu, Inc., Customer Data Security Breach Litig.*, MDL No. 2586 (D. Minn.)
- *In re Urethane Antitrust Litig.*, MDL No. 1616 (D. Kan.) - Plaintiffs' Co-Lead Counsel
- *Wallace, et al. v. Kraft Foods Group, Inc., et al.*, No. 1:15-cv-02937 (N.D. Ill)

## Presentations

- "Working with Experts: class certification trends, strategies and pitfalls related to different classes" at the COSAL Diversity, Equity, and Inclusion Summit (October 20, 2022)
- Panelists on the Diversity and Class Certification Panel at the American Antitrust Institute's 15th Annual Private Antitrust Enforcement Conference (November 10, 2021)

From the Courtroom to the Capitol®

- Guest participant on the AAI podcast Antitrust and Diversity in the Plaintiffs' Bar: A Conversation With Two Leading Private Enforcers to discuss insights and key aspects of the importance and role of women and diverse attorneys in antitrust, and in the plaintiff's bar (November 3, 2020)
- "Hot Topics in Obtaining Discovery in Foreign Countries," University of Minnesota Law School, Electronic Discovery Seminar (March 4, 2014)
- "Generational Issues in the Law," University of Minnesota Law School, MSBA and Women in the Legal Profession seminar series (April 2, 2013)
- "Hot Topis in Antitrust Law," Minnesota Women Lawyers CLE (January 18, 2012)
- "Hypotheticals for Practical Application," MSBA CLE on Antitrust Law Issues in Intellectual Property Litigation and Licensing (May 25, 2011)

## Publications

- Congressional Antitrust Bills Seek to Regulate a New Internet Era, Antitrust, Vol. 36, No. 2 (2022) (with Craig Davis and Halli Spraggins)
- Recent Developments in Discovery of European Commission Documents, Global Competition Litigation Review (2021) (with Craig Davis and Eura Chang)
- Fairness Requires the Elimination of Forced Arbitration, The Journal of the Antitrust and Unfair Competition Law Section of the California Lawyers Association (2021) (with Robert Kitchenoff, Pamela Gilbert, Nigar Shaikh, and Geoffrey Kozen)
- Forced Arbitration is a Bar to the Effective Enforcement of the Antitrust Laws; With Equal Right, the Official Journal of Minnesota Women Lawyers (2021) (with Jessica Servais)
- Animal Science: The US Supreme Court's Interpretation of Foreign Law Asserted by Foreign Governments in Competition Law Cases, 12 Global Competition Litigation Review no. 2, at 45 (2019) (with Craig Davis and Kasia Kokoszka)
- The Discovery Evolution of European Commission Competition Law Documents, 9 Global Competition Litigation Review no. 3, at 96 (2016) (with Craig Davis)
- Trending Methods of International Service of Process: @elusivedefendant#youcanrunbutyoucan'thide#HagueConvention; 31 No. 19 Westlaw Journal Computer and Internet 1 (February 2014)
- A Conspiracy of Note (and your withdrawal should be too); American Bar Association Journal — Law News Now (March 2013)
- Social Media Discovery: The Ongoing Struggle to "Update Status"; Bench & Bar of Minnesota (December 2012) (with Courtney Blanchard); republished in The Computer & Internet Lawyer (May 2013)
- Pfleiderer AG v. Bundeskartellamt: A Step Forward in Efforts to Obtain Discovery From European Commission Antitrust Proceedings, 19 No. 6 Westlaw Journal Antitrust 1 (September 2011) (with Craig S. Davis)



LOCKRIDGE
GRINDAL
NAUEN
P.L.L.P.

Attorneys at Law

From the Courtroom to the Capitol®

© Lockridge Grindal Nauen P.L.L.P. | Minneapolis, MN (612) 339–6900 | Washington, D.C. (202) 544–9840 | Bismarck, ND (701) 426-7940 | LOCKLAW.COM

# Exhibit
# 2

**EXHIBIT 2**

In re Zetia Antitrust Litigation

**FIRM NAME: Lockridge Grindal Nauen P.L.L.P.**

Inception through March 2023

| Attorney | Rate | Hours | Lodestar |
|---|---|---|---|
| Karen Hanson Riebel | $805.00 | 5.30 | $4,266.50 |
| Karen Hanson Riebel | $850.00 | 38.80 | $32,980.00 |
| Karen Hanson Riebel | $925.00 | 0.30 | $277.50 |
| Heidi M. Silton | $775.00 | 81.70 | $63,317.50 |
| Heidi M. Silton | $825.00 | 50.70 | $41,827.50 |
| Heidi M. Silton | $925.00 | 1.90 | $1,757.50 |
| Richard A. Lockridge | $925.00 | 0.20 | $185.00 |
| Brian D. Clark | $625.00 | 0.10 | $62.50 |
| Elizabeth R. Odette | $650.00 | 1.20 | $780.00 |
| Anna Horning Nygren | $600.00 | 8.00 | $4,800.00 |
| Craig S. Davis | $550.00 | 58.30 | $32,065.00 |
| Devona L. Wells | $500.00 | 65.00 | $32,500.00 |
| Devona L. Wells | $525.00 | 11.90 | $6,247.50 |
| Maureen Kane Berg | $625.00 | 152.50 | $95,312.50 |
| Rache A. Kitze Collins | $475.00 | 10.00 | $4,750.00 |
| Stephen M. Owen | $475.00 | 36.90 | $17,527.50 |
| Stacy L. Kabele | $375.00 | 48.10 | $18,037.50 |
| R. David Hahn | $200.00 | 10.50 | $2,100.00 |
| Derek C. Waller | $200.00 | 13.10 | $2,620.00 |
| **Paralegal** | **Rate** | **Hours** | **Lodestar** |
| Carey R. Johnson | $275.00 | 31.90 | $8,772.50 |
| **Totals** | | **626.40** | **$370,186.50** |

# Exhibit
# 3

**EXHHIBIT 3**

In re Zetia Antitrust Litigation

**FIRM NAME: Lockridge Grindal Nauen P.L.L.P.**

EXPENSE REPORT

Inception through March 2023

| CATEGORY | AMOUNT INCURRED |
|---|---|
| Assessments (Litigation Fund Payment) | $10,000.00 |
| Computer Research/Lexis/Westlaw | $6,499.58 |
| Court Fees (Filing, etc.) | $300.00 |
| Delivery/Postage/Messenger | $39.12 |
| Photocopies/Reproduction | $191.40 |
| Travel (Airfare, Meals, Lodging) | $5.45 |
| Telephone | $1.08 |
| **TOTAL** | **$17,036.63** |

# EXHIBIT I

**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| IN RE: ZETIA (EZETIMIBE) ANTITRUST LITIGATION | MDL No. 2836 <br> No. 2:18-md-2836- RBS-DEM |

**DECLARATION OF PETER SAFIRSTEIN IN SUPPORT OF
END-PAYOR CLASS'S MOTION FOR FINAL APPROVAL OF SETTLEMENT,
AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND
INCENTIVE AWARD**

I, Peter Safirstein, declare as follows:

1.     I am an attorney licensed to practice before the courts of the States of New York

and New Jersey and elsewhere, and was formerly a member in Safirstein Metcalf LLP (now in

dissolution) ("Safirstein Metcalf"). I have personal knowledge of the facts stated in this

Declaration and, if called as a witness, I would testify competently to them. I make this Declaration

in support of Safirstein Metcalf's request for attorneys' fees and reimbursement of litigation

expenses, as set forth in End-Payor Class's Motion For Preliminary Approval Of Proposed

Settlement, Approval Of The Form And Manner Of Notice To The Class, and Proposed Schedule

For A Fairness Hearing.  I am counsel of record in this case for Plaintiff Sergeants Benevolent

Association Health & Welfare Fund ("SBA").

2.     Throughout the course of this litigation, my firm kept files contemporaneously

documenting all time spent, including tasks performed, and expenses incurred, and provided those

reports monthly to Marvin A. Miller, one of End-Payor Plaintiffs' ("EPP") Co-Lead Counsel. All

the time and expenses reported by my firm advanced were reasonably necessary for the prosecution

of this case in order to achieve the class-wide results obtained for the benefit of the EPP Class.

1

3.     Safirstein Metcalf was involved from the inception of this litigation in the investigation and pleadings.  During the course of this litigation Safirstein Metcalf was primarily involved in reviewing discovery, both from defendants and from SBA. Safirstein Metcalf participated on one of the coordinated teams that was organized by the case leadership for the prosecution of this matter.  Safirstein Metcalf also prepared for and defended the deposition of SBA's witness.

4.     The schedule attached as Exhibit 1, prepared from contemporaneous time records regularly prepared and maintained by my firm and incorporated herein, is a summary of the amount of time spent by my firm's partners, attorneys, and professional support staff who were involved in this litigation. It does not include any time devoted to preparing this Declaration or otherwise pertaining to the request for an award of attorney's fees and reimbursement of expenses. The lodestar calculation is based on my firm's historical billing rates that is commensurate with the rates submitted to other courts for which compensation was requested. The total number of hours reasonably expended on this litigation by my firm from inception through March 31, 2023, which does not include time spent preparing this Declaration, is 221.85 hours.  The total lodestar for my firm at historic rates is $116,136.25. Expense items are billed separately and are not duplicated in my firm's lodestar. Those records have been provided to Class Counsel and I authorize them to be submitted for *in camera* inspection by the Court, if necessary.

5.     The expenses my firm incurred in litigating this action are reflected in the books and records of my firm. These books and records are prepared from expense vouchers, invoices, receipts, check records, and other source materials and accurately reflect the expenses incurred. My firm's expense records are available for inspection by the Court if necessary.

6.    My firm incurred a total of $10,033.40 in unreimbursed expenses, all of which were reasonable and necessary for the prosecution of this litigation. Of this amount, $10,000.00 was for assessment payments for common litigation expenses or direct payments to experts or other venders made at the request of Co-Lead Counsel or as directed by me, and an additional $33.40 was for the payment of lunch and beverages provided at the deposition of SBA that SBA hosted. A summary of those expenses by category is attached as Exhibit 2.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 5th day of May, 2023, in Ridgewood, New Jersey.

s/Peter Safirstein

# EXHIBIT 1

| Exhibit 1 | | | |
|---|---|---|---|
| In re Zetia Antitrust Litigation | | | |
| SAFIRSTEIN METCALF LLP (IN DISSOLUTION) | | | |
| | | | |
| **Attorney/Staff** | **Rate** | **Hours** | **Lodestar** |
| Peter Safirstein (Patner) | $850 | 42.40 | $36,040.00 |
| Elizabeth Metcalf (Partner) | $750 | 9.50 | $7,125.00 |
| Elizabeth Metcalf (Partner) | $375 | 108.35 | $40,631.25 |
| Sheila Feerick (Litigation Assistant) | $525 | 61.60 | $32,340.00 |
| | | | |
| Totals | | 221.85 | $116,136.25 |

# EXHIBIT 2

| EXHIBIT 2 | |
|---|---|
| In re Zetia Antitrust Litigation | |
| SAFIRSTEIN METCALF LLP (IN DISSOLUTION) | |
| EXPENSE REPORT | |
| Inception through 3/31/2023 | |
| | |
| CATEGORY | AMOUNT INCURRED |
| Assessments (Litigation Fund Payment) | $10,000.00 |
| Court Fees (Filing, etc.) | $ |
| Experts/Consultants | $ |
| Delivery/Postage/Messenger | $ |
| Transcripts (Hearing, Depositions, etc.) | $ |
| Travel (Airfare, Meals, Lodging) | $33.40 |
| Other | $ |
| **TOTAL** | $10,033.40 |

# EXHIBIT J

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## NORFOLK DIVISION

| | |
|---|---|
| IN RE: ZETIA (EZETIMIBE) ANTITRUST LITIGATION | MDL No. 2836<br>No. 2:18-md-2836- RBS-DEM |

## DECLARATION OF AARON ANDERSON IN SUPPORT OF
## END-PAYOR CLASS'S MOTION FOR FINAL APPROVAL OF SETTLEMENT,
## AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND
## INCENTIVE AWARD

I, Aaron Anderson , declare as follows:

1. I am the Trust Administrator of the Painters District Council No. 30 Health and Welfare Fund ("PDC 30") and I have personal knowledge of the facts stated in this Declaration. If called as a witness, I would testify competently to them. I make this Declaration in support of End-Payor Class's Motion For Final Approval Of Settlement, Award Of Attorneys' Fees, Reimbursement of Expenses, and Incentive Award.

2. PDC 30 is a Taft-Hartley plan which provides medical and perscription drug payment benefits to its members. As such, it is governed by a Board of Trustees which must approve of all actions taken by the fund, including litigation.

3. Over the past decade or more, PDC 30 has been an active Plaintiff in numerous class actions which relate to brand pharmaceutical companies engaging in conduct to prevent generic drug entry into the market.

4. PDC 30 was initially alerted by its outside General Counsel and the law firm which has represented PDC 30 in similar matters for more than a decade, to the potential class action involving the pharmaceutical, Zetia, manufactured by Merck, and its actions with Glenmark.

1

5. PDC 30 reviewed its purchase records and determined that it paid for or reimbursed members for their purchases of Zetia.

6. I reviewed the draft complaint with PDC 30's General Counsel and the Miller Law LLC firm and authorization to file the action was approved.

7. That filing put at risk PDC 30's reputation and resources. PDC 30 knew that it would be required to divert personnel time to gather documents, respond to written and oral discovery, monitor the litigation, direct aspects of the litigation, confer with counsel, and attend trial, if necessary.

8. Throughout the litigation, I was in contact with PDC's General Counsel and the Miller Law LLC firm in order to monitor the progress of the case.

9. As the PDC 30 Administrator, I oversaw the review, gathering, and production of documents requested by Defendants.

10. I prepared for and sat for a lengthy deposition requested by Defendants and was always prepared to appear as a witness at trial. The preparation for my deposition included review of the pleadings, documents, responses to interrogatories, and meeting with counsel. Then I reviewed the transcript of my deposition for accuracy.

11. As the case progressed, I worked with PDC 30's General Counsel and Marvin Miller, PDC 30's counsel who represents the fund in the pharmaceutical litigations. They informed me that late Friday, April 14th, the court where the Zetia case is pending, required a class representative with authority to attend the trial everyday throughout the scheduled five-weeks. Once I was advised that the Court required a representative to be present at trial, I worked with PDC 30's General Counsel and Marvin Miller to comply with the Court's direction I worked with them

2

to develop a plan to comply with the Court's direction that involved retaining separate and independent counsel to advise PDC and who would be given authority by PDC.

12. Monday, April 17, 2023, I received a telephone call from PDC 30's General Counsel and Marvin Miller that the Court had not accepted our designation of an attorney as PDC's representative.

13. At that time, it was approximately 3:30 p.m. Central time, and I immediately booked a flight that night to Norfolk.

14. Tuesday morning (April 18th) I was informed that the trial was rescheduled to start but that local counsel received a call that my attendance was not required in court that day.

15. I remained in Norfolk ready to appear at the trial on Wednesday but was again advised that my appearance wasn't necessary.

16. Throughout the day and into the evening I was in contact with PDC 30's General Counsel, Mr. Miller, Mr. Buchman, and Mr. Cales to monitor and participate in the settlement negotiations that were in progress.

17. Late in the evening on April 19th I reviewed a Settlement Term sheet for resolution of the PDC 30 and Class's claim against Merck and Glenmark. After consultation with counsel, I agreed that under the circumstances in the case, the benefits achieved for the Class were appropriate and supported their decision and authorized counsel to accept the terms.

18. Because, as mentioned above, on behalf of PDC 30, the Trustees needed to vote on such action, I convened a meeting and the following morning every Trustee voted in favor of the settlement proposal.

19. I appeared with counsel to inform the Court that PDC 30, as Class Representative, agreed to the Settlement Terms but was again informed that my appearance was not required.

3

20. In total, I and personnel at PDC 30 devoted approximately 60 hours to this matter.

21. I conferred with Co-Lead counsel concerning their request for attorneys' fees, reimbursement of expenses, and service awards for those Class Representative Plaintiffs which were active in assisting the prosecution of the Class' claims and helping to achieve the settlement.  I believe the requests are reasonable and approve those requests.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Aurora, Illinois this _14th_ day of August, 2023.

Aaron Anderson

4

# EXHIBIT K

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | |
|---|---|
| IN RE: ZETIA (EZETIMIBE) ANTITRUST LITIGATION<br><br>This Document Relates to: All End-Payor Actions | MDL No. 2836<br>No. 2:18-md-2836- RBS-DEM |

## DECLARATION OF MEGAN MACIASZ DISANTO IN SUPPORT OF END-PAYOR PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT, AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND INCENTIVE AWARDS

I, Megan Maciasz DiSanto, declare as follows:

1. I am a Senior Assistant City Solicitor for The City of Providence, Rhode Island, and I have personal knowledge of the facts stated in this Declaration. If called as a witness, I would testify competently to them. I make this Declaration in support of End-Payor Class's Motion For Final Approval Of Settlement, Award Of Attorneys' Fees, Reimbursement of Expenses, and Incentive Awards.

2. Providence is the capital and most populous city of the State of Rhode Island. Providence is also the county seat of Providence County, which is the most populous county in the state. The City of Providence, Rhode Island is a self-insured provider of medical, prescription drug, dental, life, and eye care insurance coverage for its employees.

3. Over the past decade or more, Providence has served as a Class Representative Plaintiff in a number of generic drug antitrust class actions which concern, *inter alia*, conduct by pharmaceutical companies to prevent or delay generic drug entry into the United States market.

4. In connection with this litigation, Providence reviewed its purchase records and determined that it paid or provided reimbursement for its employee's purchases of Zetia and generic Zetia.

1

5.      Providence reviewed the draft Complaint with Providence's counsel in this case, Motley Rice, LLC, and authorized counsel to file the action.

6.      Serving as a Class Representative Plaintiff in these types of cases requires Providence to divert personnel time to gather documents, respond to written and oral discovery, monitor the litigation, direct aspects of the litigation, confer with counsel, and attend trial, if necessary. It is a significant undertaking, but one which Providence performs in order to recoup the overcharge damages for it, and the Class as well, to reduce the overall operating costs for the benefit of Providence taxpayers.

7.      Throughout the litigation, I was in contact with Motley Rice LLC in order to supervise, direct, and monitor progress in this litigation.

8.      I oversaw the identification, gathering, and production of responsive documents requested by Defendants and worked with Motley Rice LLC to respond to all discovery issued by Defendants.

9.      Providence prepared and sat for a lengthy deposition requested by Defendants. The preparation for the deposition included review of the pleadings, documents, the Notice of Deposition topics for examination, purchase data, as well as several meetings with counsel. Providence also spent considerable time after the deposition arranging and preparing to have a witness appear at trial. Providence was the only Class Representative Plaintiff that Co-Lead Counsel selected and intended to actually provide testimony at trial.

10.     On April 19, 2023, Providence had arranged travel plans for and was fully prepared to have Ms. Margaret Wingate, the Providence witness deposed in this matter pursuant to Fed. R. Civ. P. 30(b)(6), travel to and appear as a witness at trial.

11.    Co-Lead Counsel announced the resolution and settlement of this matter to the Court the morning of April 20, 2023.

12.    The City of Providence approves of the Settlement and the request for attorneys' fees, expenses and incentive awards because it is a favorable result for all class members.

13.    While Providence does not maintain time records for litigation in the ordinary course of business, Providence reasonably estimates that at least six employees have collectively spent a minimum of seventy-five to eighty hours over the past five years performing work in connection with this matter. Approximately half of this time occurred during COVID-19. Despite the COVID-19 pandemic, Providence diligently continued to perform its duties and responsibilities as a Class Representative in this case, including preparation for trial.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12th day of September, 2023, in Providence, Rhode Island.

*/s/ Megan Maciasz DiSanto*
Megan Maciasz DiSanto